IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT COURT OF COLORADO

Civil Action Nos. 1:20-cv-01878-RBJ & 1:20-cv-01922-RBJ-MEH (consolidated)

BLACK LIVES MATTER 5280, *et al.*

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al*.,

Defendants,

---

## [PLAINTIFFS' PROPOSED] SCHEDULING ORDER

---

### 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

The Scheduling Conference is set for September 3, 2020 at 10:00 a.m. Parties present: Counsel for Plaintiffs Sara Fitouri, Jacquelyn Parkins, Youssef Amghar, Andy Sannier, Francesca Lawrence, Kelsey Taylor, Joe Deras, and Johnathen Duran; counsel for BLM 5280, Dr. Apryl Alexander, Elisabeth Epps, Ashlee Wedgeworth, Amanda Blasingame, Phillip Rothlein, Zach Packard, Hollis Lyman, Cidney Fisk, and Stanford Smith; counsel for Defendants City and County of Denver and Defendant Officers.

### 2. STATEMENT OF JURISDICTION

This court has jurisdiction of Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331.

### 3. STATEMENT OF CLAIMS AND DEFENSES

a.      **Plaintiffs:**

**Fitouri Plaintiffs:**

On behalf of themselves individually and putative class members, Plaintiffs Fitouri,

1

Parkins, Lawrence, Taylor, Duran, Deras, Amghar, and Sannier allege that Defendants violated their First and Fourth Amendment rights during the protests in Denver arising from the killing of George Floyd, beginning on May 28, 2020.

Plaintiffs allege that Defendant Officers used violent and unconstitutional crowd control tactics against peaceful protestors, including kettling, indiscriminate and unwarned launching of tear gas and flashbang grenades into crowds and at individuals, and shooting kinetic impact projectiles at protestors without lawful justification. Plaintiffs allege that these actions were taken to suppress and discourage First Amendment activity, and that these actions violated the First Amendment. None of the Defendant Officers (including any Doe Defendant Officers not yet identified) are entitled to qualified immunity for shooting projectiles at and/or using chemical weapons on peaceful protestors (including Plaintiffs) without justification or provocation.

In addition, Plaintiffs allege that the Emergency Curfew imposed by the Defendant City was unconstitutional on its face and as applied. Specifically, the Emergency Curfew was selectively enforced against protestors.

Plaintiffs allege that the Defendant City and County of Denver's policies, training, supervision (or lack thereof) of its police officers in the use of "less lethal" weapons, crowd control tactics, and the First Amendment rights of protestors and civilians were the moving force behind Plaintiffs' and class members' constitutional violations.

Plaintiffs seek a declaratory judgment in their favor.

The named Plaintiffs bring these claims on behalf of themselves as well as classes of individuals similarly situated. Plaintiffs seek damages on behalf of themselves and damages on behalf of proposed class members under Federal Rule of Civil Procedure 23(b)(3). They will

2

seek class certification and appointment as class representatives for two proposed classes: the Direct Force Class and the Arrest Class. The Direct Force Class consists of persons present at or during the aftermath of protests in the City and County of Denver, who were shot with so-called "less-lethal" weapons and/or inhaled an aerosolized chemical agent. The Arrest Class consists of persons present at or during the aftermath of protests in the City and County of Denver, who were arrested by the DPD on charges of violating curfew. The City has dismissed or has agreed to dismiss the charges of over 300 individuals who were arrested solely for violating curfew and failure to obey lawful order (the curfew).

Additionally, Plaintiffs seek injunctive relief on behalf of themselves individually and a class of individuals similarly situated pursuant to Rule 23(b)(2). The Court has indicated that injunctive relief beyond what was already stipulated and approved by the Court in *Abay, et al. v. City and County of Denver*, 1:20-cv-01616-RBJ, would be ordered only for exceptional reasons.

**BLM 5280 Plaintiffs:**

Plaintiffs BLM 5280, Alexander, Epps, Wedgeworth, Blasingame, Rothlein, Packard, Lyman, Fisk, and Smith allege that Defendants violated their First and Fourth and/or Fourteenth Amendment rights during the protests in Denver arising from the killing of George Floyd, beginning on May 28, 2020.

Plaintiffs allege that Defendant Officers used excessive force against individuals, including Plaintiffs, protesting peacefully in the City.  Those "less-lethal" police tactics employed included the use of crowd "kettling," and indiscriminate and unwarned launching of chemical, flash-bang, and kinetic impact grenades and projectiles at protestors without lawful justification.  Defendant Officers' use of those tactics amounted to an unconstitutional use of

force under the Fourth and/or Fourteenth Amendments.

Plaintiffs further allege that Defendant Officers' use of those tactics against Plaintiffs suppressed Plaintiffs' First Amendment activity, particularly their rights to peacefully assemble, petition for redress of grievances, and exercise freedom of speech. These actions violated the First Amendment.

Plaintiffs further allege that the Defendant City and County of Denver's policies, practices, and customs caused Plaintiffs First and Fourth and/or Fourteenth Amendment rights to be violated. Specifically, the City's policy, practice, and custom of inadequate training and inadequate supervision of its police officers in the use of "less-lethal" weapons and other crowd control methods caused Plaintiffs' injuries. Further, the City's ratification of Defendant Officers' use of excessive force against peaceful protesters on the days of the protests caused Plaintiffs' injuries.

Plaintiffs seek a judgment declaring Defendants' acts to be in violation of the U.S. Constitution.

Plaintiffs seek compensatory damages as to Plaintiffs BLM 5280, Alexander, Epps, Wedgeworth, Blasingame, Rothlein, Packard, Lyman, Fisk, and Sanford Smith. Plaintiffs seek punitive damages to Alexander, Epps, Wedgeworth, Blasingame, Rothlein, Packard, Lyman, Fisk, and Smith. Plaintiffs seek nominal damages as to Plaintiff BLM 5280.

Additionally, Plaintiffs seek injunctive relief. The Court has indicated that injunctive relief beyond what was already stipulated and approved by the Court in *Abay, et al. v. City and County of Denver*, 1:20-cv-01616-RBJ, would be ordered only for exceptional reasons.

**b.    Defendants:**

Beginning on May 28, 2020 and continuing for several day thereafter, large crowds participated in demonstrations in Downtown Denver. The Denver Police Department made accommodations for the protests—including blocking traffic and allowing protests to continue in certain public streets.  Unfortunately, the demonstrations devolved into riots with violence directed at officers and property destruction. Further, demonstrators attempted to block traffic and tried to block Interstate 25, creating an extremely dangerous situation for traffic, protestors and the police.  Officers responded to these criminal actions by attempting to disperse the subject crowds using orders to disperse, various chemical agents, and other less lethal force options, depending upon the circumstances.

The violent, criminal acts were most often perpetrated at night and continued over the course of two nights, causing injuries to officers and substantial property damage. In response, the Mayor of the City and County of Denver ("Denver") issued a mandatory nighttime curfew beginning at 8:00 p.m. on May 30, which was extended through June 4 due to the continued violations of the curfew and other unlawful, destructive conduct.  In their two Complaints, Plaintiffs assert  similar claims for relief pursuant to U.S.C. 42 § 1983 alleging: (1) excessive force in violation of the Fourth and Fourteenth Amendments; (2) retaliation for the exercise of First Amendment rights; and (3) municipal liability against Denver for unconstitutional policies and practices and failing to properly train or supervise officers. In addition, in the Fitouri Complaint, the Plaintiffs contend that their First Amendment rights were violated by the enactment of the curfew and seek certification of a various classes with respect to the claims asserted therein.

With respect to the allegations against the individually named DPD officers, the officers

contend that they are entitled to qualified immunity from the claims asserted against them because they did not violate any of the Plaintiffs' constitutional rights—or the rights of any other individuals who were present or engaging in unlawful conduct—with respect to their dispersal of crowds or in response to the violent, criminal acts perpetuated by individuals in the crowd and their actions did not violate clearly established law.

Denver denies that it has any custom, policy or practice of violating individuals' constitutional rights or that it failed to train or supervise its officers who were involved in responding to these highly charged, difficult situations. With respect to the claims asserted by the Plaintiffs in the Fitouri case, Denver also asserts that the emergency curfew was a lawful restriction issued by the Mayor under his emergency powers both on its face and as enforced. Further, Denver's policies, training, and supervision of its officers were legally sufficient and did not cause any Plaintiff's constitutional rights to be violated.

Accordingly, Defendants assert the following defenses:

1.      The complaints fail to state a claim upon which relief may be granted, in whole or in part.

2.      The individually named Denver Police officer defendants, and any additional individual Denver Police Officers or Sheriff Deputies encompassed by Plaintiffs' "John Doe" and "Jane Doe" designations who might be named as defendants in the future, are entitled to qualified immunity.

3.      Plaintiffs' damages, if any, were proximately caused by their own conduct and not by reason of any unconstitutional conduct by Denver's employees.

4.      Plaintiffs may have failed to mitigate any damages they allegedly sustained as a result of the events described in the Complaint.

5.      Denver's policies were, at all relevant times, in conformance with established constitutional and statutory law with respect to all issues relevant to this action.

6.      Denver's training and supervision of its police officers met or exceeded constitutional and statutory standards with respect to all topics relevant to this action.

7.      The temporary nighttime curfew enacted by the Mayor was a lawful emergency regulation both on its face and as enforced by Denver Police officers.

### 4. UNDISPUTED FACTS

The following facts are undisputed:

1.      Demonstrations in Denver in response to the killing George Floyd began on May 28, 2020 and continued until, at least, June 2, 2020.

2.      Denver Mayor Michael Hancock proclaimed an emergency curfew that was in place from 8:00 p.m. on May 30, 2020 until 5:00 a.m. on May 31; from 8:00 p.m. on May 31, 2020 until 5:00 a.m. June 1; from 9:00 p.m. on June 1, 2020, until 5:00 a.m. on June, 2; from 9:00 p.m. on June 2, 2020, until 5:00 a.m. on June 3; from 9:00 p.m. on June 3, 2020, until 5:00 a.m. on June 4, and; from 9:00 p.m. on June 4, 2020, until 5:00 a.m. on June 5.

### 5. COMPUTATION OF DAMAGES

**Fitouri Plaintiffs:**

Plaintiffs' and class members' damages include general and compensatory damages against Defendants on their federal claims, costs and attorneys' fees as allowed on federal claims, and pre- and post-judgment interest as allowed by law. Plaintiffs' and the Direct Force

7

Class members' damages include general damages for violation of their First Amendment rights, as well as damages for physical injury, pain and suffering, emotional distress, and medical treatment. The arrested Plaintiffs' and the Arrest Class members' damages also include time detained in jail and dealing with criminal charges for curfew violation before dismissal of charges. Damages will ultimately be determined by a jury, but Plaintiffs and class members estimate that classwide damages for the Arrest Class is in excess of $3,000,000 and for the Direct Force Class is in excess of $12,000,000. These are good faith estimates based on the Plaintiffs' current estimate of the size of the classes and settlements that have been obtained in other federal class action cases arising out of protests alleging First and Fourth Amendment claims (including both excessive force and unlawful arrests).

**BLM 5280 Plaintiffs:**

Plaintiffs' damages include nominal, compensatory, and punitive damages against Defendants on their federal claims, costs and attorneys' fees as allowed on federal claims, and pre- and post-judgment interest as allowed by law.

Plaintiffs' damages include, but are not limited to: physical injury; emotional distress; medical, psychologic, and/or psychiatric treatment related to their physical and emotional injuries; and damage to personal property.  Plaintiffs also suffered intangible injury to their First, Fourth, and/or Fourteenth Amendment rights.

**Defendants:**

Defendants object to Plaintiff's failure to describe any economic damages calculation or to, alternatively, indicate that they have no claim for such. Defendants have made no claim for damages but reserve the right to seek attorney fees and costs related to the defense of this matter

pursuant to law.

## 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING

## UNDER FED. R. CIV. P. 26(f)

a.      **Dates of Rule 26(f) meeting: August 12 and 20, 2020**

b.      **Names of each participant and party he/she represented:**

For Fitouri Plaintiffs:

Elizabeth Wang              Tara Thompson
Loevy & Loevy              Loevy & Loevy
2060 Broadway, Ste. 460    311 N. Aberdeen St.
Boulder, CO 80302          Chicago, IL 60607

For BLM 5280 Plaintiffs:

Timothy R. Macdonald         Mark Silverstein
Matthew J. Douglas           Sara Neel
Ed Aro                       Arielle Herzberg
Colin M. O'Brien             American Civil Liberties Union Foundation
Anya A. Havriliak            of Colorado
Arnold & Porter Kaye Scholer, LLP   303 E. Seventeenth Ave., Suite 350
1144 Fifteenth Street, Suite 3100   Denver, Colorado 80203
Denver, Colorado 80202

For Defendants:

David C. Cooperstein
Robert Huss
Emily Dreiling
Denver City Attorney's Office
Civil Litigation Section
201 West Colfax, Dept. 1108
Denver, CO 80202

c.      **Statement as to when Rule 26(a)(1) disclosures were made or will be made:**

Rule 26(a)(1) disclosures will be made on or before **September 4, 2020**. Defendants

intend to provide their Rule 26(a)(1) disclosures on August 28, 2020.

**d.      Proposed changes, if any, in timing or requirement of disclosures under Fed.**

**R. Civ. P. 26(a)(1):**

*See* section 6(c), above.

**e.      Statement concerning any agreements to conduct informal discovery:**

The parties have not made any agreements to conduct informal discovery.

**f.      Statement concerning any other agreements or procedures to**

**reduce discovery and other litigation costs, including the use of a unified exhibit numbering**

**system:**

The parties agree to use a unified exhibit numbering system for deposition exhibits and

where otherwise appropriate.

Plaintiffs disagree with Defendants' position that limiting production of "media and

Denver Police Department reports" to only the times and locations where the named Plaintiffs

suffered injury is necessary or proportionate to the needs of the case. Both sets of Plaintiffs

allege a *Monell* claim, which is significant given the uniform and coordinated way in which DPD

officers responded to (that is, used excessive force on) protestors throughout the protests,

especially from May 28 through June 2, 2020 (the first six days). Video recordings and DPD

reports (especially Use of Force reports and the attendant Supervisor's Cover Sheet to the Use of

Force reports) of use of force during the protests other than those in which the named Plaintiffs

were involved is relevant to the *Monell* claim as well as the Fitouri Plaintiffs' class allegations.

Moreover, given that there is one organizational plaintiff and 17 individual named plaintiffs in

this case, it is unlikely that there were any major use of force incidents involving protestors

during the first six days of protests for which these plaintiffs (or their members, for the

organizational plaintiff, BLM 5280) were not present.

Furthermore, the Fitouri Plaintiffs have alleged classwide damages on behalf of a Direct Force Class, and their best computation of damages for that class at this time is in excess of $12 million. The discovery that Plaintiffs will seek will be proportionate to the needs of the case.

And finally, Defendants have not explained why producing publicly available video footage of the protests which occurred in public spaces – such as from HALO cameras – would be unduly burdensome. The burden is on the Plaintiffs to review the footage; there is no discernable (and Defendants have not articulated any) reason why it would be unduly burdensome to *produce* the video footage of police use of force on protestors.

In any event, Defendants' concerns are premature at this time, given that the parties have not served any discovery requests yet and the parties are required to follow the Court's practice standards regarding any discovery disputes.

**g.     Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form:**

The parties anticipate that there may be discovery of electronically stored information such as cell phone data, e-mails, and social media posts, if any. The parties will work together to facilitate the discovery of such information and to produce it in the best format. Parties shall adhere to Sedona principles regarding electronic discovery disputes. Parties shall file a FRE 502(d) order by **September 3, 2020.**

The parties propose producing all video and audio recordings in native format and other documents in .pdf format whenever practicable.

11

**h.      Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case:**

The parties are willing to engage in a mediation with Magistrate Judge Hegarty after some exchange of discovery.

## 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

**a.      Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules:**

**Plaintiffs' position:**

**Depositions:** Due to the nature of the case and the number of named parties (currently 18 named plaintiffs and 11 defendants, with many Defendant Officers as-yet-unidentified), more than 10 depositions per side is reasonable, necessary, and proportionate to the needs of the case. The parties also anticipate several depositions of third-party witnesses such as witnesses to the protests and police officers (including supervising or commanding officers), as well as Rule 30(b)(6) depositions and expert witnesses. In addition, the identities of numerous Doe Defendant Officers are unknown at this time and there will be discovery to identify them. Once the identities of those officers can be ascertained, Plaintiffs will seek to amend their Complaints to add them as named Defendants and will take their depositions.

Thus, given the information that is unknown at this time, the parties cannot provide a firm number of anticipated depositions. However, as discussed in further detail below, the Plaintiffs propose an aggregate hour limit for depositions: 125 hours for the BLM 5280

12

Plaintiffs, 125 hours for the Fitouri Plaintiffs, and 250 hours for Defendants.

**Interrogatories:** Rule 33 provides that "a party may serve *on any other party* no more than 25 written interrogatories." Fed. R. Civ. P. 33(a)(1). Under Rule 33, the 18 plaintiffs (one organizational plaintiff and 17 individual plaintiffs) would be allowed to serve a total of 450 interrogatories on the Defendant City, and each of the Fitouri Plaintiffs, who have named 10 individual Defendant Officers, would be allowed to serve 25 interrogatories on each officer (total 200). Plaintiffs are seeking a limit on interrogatories below that allowed by Rule 33. Given the nature of this case (specifically, the number of parties, the *Monell* claim, the class allegations, and the scope of the protests, which occurred over several days), Plaintiffs propose the limits described below on interrogatories, which are appropriate given the nature of this case. For instance, Plaintiffs need to be able to seek the identities of officers involved in specific incidents through the use of interrogatories, for instance, by asking the City for the identities of certain officers in certain videos or photos or for the identities of officers present at certain locations or intersections at certain dates and times. Most of the named Plaintiffs attended the protests on multiple days, for many hours each day, and they were either teargassed or had projectiles shot at them on multiple different occasions. Interrogatories are a simpler and more efficient method of obtaining certain kinds of information in discovery, including (for instance) identities of unknown officers, information relevant to a plaintiff's *Monell* claim about the City's policies, practices, and training, and information relevant to class certification.

The Fitouri Plaintiffs may serve on Defendant City and County of Denver a total of 50 interrogatories and on each named Defendant Officer 25 interrogatories.

The BLM 5280 Plaintiffs may serve on Defendant City and County of Denver 50

interrogatories.

The Defendant City and County of Denver may serve on the Fitouri Plaintiffs 50 interrogatories. The Defendant Officers may serve on each Fitouri Plaintiff 25 interrogatories.

The Defendant City and County of Denver may serve on the BLM 5280 Plaintiffs 50 interrogatories.

**b.    Limitations which any party proposes on the length of depositions:**

Excluding retained expert and Rule 30(b)(6) depositions, the Plaintiffs propose the following aggregate-hour limit on depositions:

125 hours for Fitouri Plaintiffs

125 hours for BLM 5280 Plaintiffs

250 hours for Defendants

**c.    Limitations which any party proposes on the number of requests for production and/or requests for admission:**

Rules 34 and 36 provide no limits on the number of requests for production or requests for admission that may be served, and the standard scheduling order provides for 25 requests for production and 25 requests for admission per party. Given the nature of this case (specifically, the number of parties, the *Monell* claim, the class allegations, and the scope of the protests, which occurred over several days), the Plaintiffs propose a limit of 50 requests for production in the aggregate per plaintiff group, and 50 requests for production in the aggregate by defendants to each plaintiff group, including requests to any individual member thereof. The Plaintiffs further propose a limit of 50 requests for admission in the aggregate per plaintiff group, and 50 requests for admission in the aggregate by defendants to each plaintiff group, including requests

to any individual member thereof.

      **d.**    **Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:**

33 days before the discovery cut-off.

      **e.**    **Other Planning or Discovery Orders:**

**Deadlines pertaining to class certification and discovery (see Section 11.a., below, for the parties' statements as to why a class action is or is not appropriate):**

1.    Deadline for expert witness disclosures pertaining to class certification, if any: **January 29, 2021**

2.    Deadline for discovery pertaining to the issue of class certification: **February 26, 2021**

3.    Deadline for motion for class certification: **March 26, 2021**

        Response due: **April 16, 2021**

        Reply due: **April 30, 2021**

**Fitouri Plaintiffs' response to Defendants' proposed deadline of November 2, 2020 for a motion for class certification:** It is well-established that "some discovery is necessary prior to a determination of class certification … [t]he discovery which is permitted should be sufficiently broad that the plaintiffs have a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23 …." *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 304 (D. Colo. 1998). Rule 23(c)(1)(A) states that a motion for class certification should be filed "at an early practicable time after a person sues …."" Fed. R. Civ. P. 23(c)(1)(A). This rule was revised in 2003 from "as soon as practicable," in recognition of the reality that some discovery

on class certification-related issues is necessary before a class certification motion can be filed.

Defendants state in their proposed scheduling order that there is no need for "special discovery" or "expert witness disclosures pertaining to the issue of class certification given the legal standard attendant to Plaintiffs' claims and the allegations contained in the complaints." Defs.' Proposed Scheduling Order at 12-13. However, Plaintiffs' position – as explained during the parties' Rule 26(f) conferences – is that the primary discovery relevant to class certification is discovery on the *Monell* claim, which goes to the merits of Plaintiffs' claim against the City. If the moving force behind the Defendant Officers' excessive use of force against the Plaintiffs' (and class members') actions was a City policy, practice, or custom (or even a centralized command decision or plan), then there will be both commonality and predominance. *See, e.g.*, *MIWON v. Los Angeles*, 248 F.R.D. 621, 635 (C.D. Cal. 2007). Thus, the discovery relevant to the merits of Plaintiffs' claims and to class certification substantially overlap. Similarly, expert witnesses on issues pertaining to class certification, such as commonality and predominance, may be necessary for Plaintiffs' motion for class certification.

Defendants' proposed deadline of November 2, 2020 or alternatively, January 11, 2021, for class certification is insufficient because it does not provide an adequate opportunity for discovery into the issues which will be central to class certification. Discovery is necessary because the Rule 23 requirements are fact-intensive in nature (e.g., typicality, commonality, predominance) – as Defendants themselves acknowledge in asserting that there are individual issues. "[D]iscovery may be required in either or both of two circumstances: 'when the facts relevant to any of the certification requirements are disputed or when the opposing party contends that proof of the claims or defenses unavoidably raises individual issues.'" 3 *Newberg*

*on Class Actions* § 7:15 (citations omitted). Here, Defendants claim that individual issues are more prevalent or important than the common issues, but there is no way of knowing that without discovery – including discovery into uses of force on putative class members and not only the named plaintiffs. *See Britton v. ServiceLink Field Servs.,* LLC, 2018 WL 4259239, at *4 (E.D. Wash. 2018); *Perez v. Safelite Group Inc.*, 553 F. Ap'x 667, 668-69 (9th Cir. 2014).

Furthermore, Defendants' position that they need 17 months for discovery if the Court proceeds with class action briefing but that Plaintiffs should file a motion for class certification by January 11, 2021 is internally inconsistent. They have not explained what that time would be needed for if they are demanding that Plaintiffs gather the evidence that the need for class certification in time to file a motion by January.

4.      Given the different claims in each case and the class action nature of one of the cases, the Plaintiffs intend to file a motion to sever the two consolidated cases at the close of discovery.

## 9. CASE PLAN AND SCHEDULE

**See preceding section for deadlines relating to class certification.

a.      **Deadline for Joinder of Parties and Amendment of Pleadings:**
         **January 29, 2021**. This date is longer than the presumptive 45 days after the scheduling conference due to the fact that there are numerous unknown defendant officers who must be identified during discovery.

b.      **Discovery Cut-off: June 25, 2021** (deadline for all discovery, including expert depositions)

c.      **Dispositive Motion Deadline: August 6, 2021**

Response: August 27, 2021

Reply: September 10, 2021

**d.    Expert Witness Disclosure**

1.    The parties shall identify anticipated fields of expert testimony, if any.

Plaintiffs anticipate disclosing expert witnesses in the fields of police practices;

the use of "less lethal" weapons, including kinetic impact projectiles and aerosolized

chemical agents; and damages.

2.    Limitations which the parties propose on the use or number of expert

witnesses.

Four (4) retained expert witnesses for Defendants; four (4) retained expert

witnesses for the BLM Plaintiffs; four (4) retained expert witnesses for the Fitouri

Plaintiffs. The BLM Plaintiffs and Fitouri Plaintiffs may jointly retain experts, which

would reduce the overall number of experts, but it is too early to make that determination

at this time. For clarity, the limit on expert witnesses shall not apply to any medical

expert endorsed to testify under Rule 702 concerning any person to whom the expert

rendered medical treatment.

3.    The parties shall designate all experts and provide opposing counsel and

any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:

**March 26, 2021**.

4.    The parties shall designate all rebuttal experts and provide opposing

counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on

or before:

**May 7, 2021**. (The expert deadlines in this paragraph and the preceding one include disclosure of information applicable to "Witnesses Who Must Provide a Written Report" under Rule 26(a)(2)(B) and information applicable to "Witnesses Who Do Not Provide a Written Report" under Rule 26(a)(2)(C).)

 e.  Identification of Persons to Be Deposed:

**Fitouri Plaintiffs:**

Chief of Police Paul Pazen

Mayor Michael B. Hancock

Defendant Officer Jacqueline Velasquez – 2-3 hours

Defendant Officer M. Davis – 2-3 hours

Defendant Officer Andrew Nielsen – 2-3 hours

Defendant Officer Zachary Moldenhauer – 2-3 hours

Defendant Officer Jacob Vaporis – 2-3 hours

Defendant Officer Kevin Beasley – 2-3 hours

Defendant Officer Chelsea Novotny – 2-3 hours

Defendant Officer Christopher Cochran – 2-3 hours

Defendant Officer Anthony Tak – 2-3 hours

Defendant Officer John Brinkers – 2-3 hours

Rule 30(b)(6) witnesses designated pursuant to Notice to be issued by Plaintiffs to Defendant City

Supervising/command officers involved in handling of protests (names unknown at this time)

Third-party officer witnesses involved in handling of protests (names unknown at this time)

City witnesses involved in the imposition of the Emergency Curfew and the State of Emergency

Declaration (names unknown at this time)

Unknown Doe Defendant Officers who used excessive force on Plaintiffs (once their identities are ascertained through discovery)

**BLM 5280 Plaintiffs:**

Chief of Police Paul Pazen

Mayor Michael B. Hancock

DPD Special Operations Division Commander Patrick Phelan

Rule 30(b)(6) witnesses designated pursuant to Notice to be issued by Plaintiffs to Defendant City

Supervising/command officers involved in handling of protests (names unknown at this time)

Supervising/command officers or other management involved in the development of the City's use-of-force policies (names unknown at this time)

Supervising/command officers involved in training of Officers on use-of-force policies (names unknown at this time)

Unknown Doe Defendant Officers who used excessive force on Plaintiffs (once their identities are ascertained through discovery)

Unknown Boe Defendant Officers who used excessive force on Plaintiffs (once their identities are ascertained through discovery)

Unknown witnesses who observed the use of excessive force on Plaintiffs

**Defendants:**

| BLM 5280 | 7 hrs |
|---|---|
| A. Alexander | 3.5 |
| E. Epps | 3.5 |
| A. Wedgeworth | 3.5 |
| A. Blasingame | 3.5 |
| P. Rothlein | 3.5 |
| Z. Packard | 3.5 |
| H. Lyman | 3.5 |
| C. Fisk | 3.5 |
| S. Smith | 3.5 |

| | |
|---|---|
| A. Cruz | 3.5 |
| S. Fitouri | 3.5 |
| J. Parkins | 3.5 |
| Y. Amghar | 3.5 |
| A. Sannier | 3.5 |
| F. Lawrence | 3.5 |
| K. Taylor | 3.5 |
| J. Deras | 3.5 |
| J. Duran | 3.5 |
| Other witnesses | tbd |

## 10. DATES FOR FURTHER CONFERENCES

a.     **Status conferences will be held in this case at the following dates and times:**

b.     **A final pretrial conference will be held in this case on _____ at o'clock _____m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.**

## 11. OTHER SCHEDULING MATTERS

a.     **Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.**

After conferrals on two separate dates, the parties have not been able to reach agreement on discovery and scheduling issues. Pursuant to the Court's order, the parties provide a statement indicating why a class action is or is not appropriate in this case:

**Fitouri Plaintiffs' Position:** The Plaintiffs have proposed a Direct Force Class and an Arrest Class, seeking damages. Their case is the only case that has been filed to date seeking

certification of Rule 23(b)(3) classes for classwide damages.[1] The Plaintiffs intend to move for class certification after an opportunity for discovery on class certification-related issues. Striking class allegations prior to discovery "is only warranted where defendants 'are able to show conclusively that plaintiffs will be unable to establish fact[s] that would make class treatment appropriate.'" *Scarlett v. Air Methods Corp.*, 2020 WL 2306853, at *6 (D. Colo. May 8, 2020).[2]

With respect to both proposed classes, the requirements likely to be contested are commonality and predominance. Plaintiffs anticipate they will be able to meet these requirements for both classes because both center around *Monell* liability. The Arrest Class members were all arrested solely for violation of the Emergency Curfew and failure to obey the curfew, which was an official policy of the City. The questions common to the Direct Force Class members include: whether the Defendants as a pattern and practice broke up protests through the use of force (namely, "less lethal" weapons) regardless of whether the individual against whom such force was used was engaged in conduct justifying such force, and without giving people adequate warning or opportunity to disperse; and whether the City's written or unwritten policies, practices or customs were the moving force behind the officers' use of force on protestors. If the actions of the officers were attributable to the City due to the City's policies, widespread customs or practice — as Plaintiffs allege under their *Monell* claim — then "a

---

[1] The *Abay* plaintiffs have not sought damages on behalf of any class members or certification of any Rule 23(b)(3) classes. *See* Dkt. 1, No. 20-cv-1616.

[2] *See also Friedman v. Dollar Thrifty Automotive Group, Inc.*, 2013 WL 5448078, at *2 (D. Colo. Sept. 13, 2013) (motion to strike should only be granted if "it will be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove"); *Francis v. Mead Johnson & Co.*, 2010 WL 3733023, at *1 (D. Colo. Sept. 16, 2010) (striking class allegations is even more disfavored than motions to strike generally because it requires a court to "preemptively terminate the class aspects of … litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.").

discrete legal or factual question common to the class must exist," *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010), and the class's "common contention … must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Other courts that have certified classes alleging Fourth Amendment claims have so found. *See, e.g.*, *MIWON v. Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007) (certifying Rule 23(a)(2) and 23(b)(3) classes in unlawful arrest and excessive force case involving protestors); *Ross v. Gossett*, 2020 WL 1472072, at *5 (S.D. Ill. Mar. 26, 2020) (certifying Rule 23(b)(3) classes alleging unlawful strip searches and explaining, "[i]n cases claiming the existence of widespread or uniform practices, courts have routinely found that common questions predominate.").

To the extent that the Court has concerns about commonality or predominance, those issues can be addressed through subclassing or revision of the class definition for the Direct Force Class to specific incidents of use of force on specific dates, times, and locations.

Superiority under Rule 23(b)(3) will also be met. Given the number of putative class members, and that common questions of law and fact predominate over individual issues, a class action will serve the economies of time, effort, and expense, and prevent possibly inconsistent results. Conversely, deciding each claim separately would be a very inefficient use of judicial and party resources. In sum, Defendants cannot demonstrate from the face of Plaintiffs' complaint that it will be "impossible" for Plaintiffs to obtain class certification.

**BLM 5280 Plaintiffs' Position:** BLM 5280 Plaintiffs have not asserted class allegations and take no position on the appropriateness of the certification of a class action relating to the

claims in the Fitouri matter.  While BLM 5280 Plaintiffs believe it is appropriate and would promote efficiency to consolidate the BLM 5280 and Fitouri cases for the purpose of discovery, BLM 5280 Plaintiffs intend to file a Motion to Sever the cases after discovery, and request a separate trial and dispositive motion track for the BLM 5280 case after the completion of discovery.

**Defendants' Position:** Plaintiffs in the *Fitouri* matter seek classification of one class pursuant to Rule 23(b)(2) and two classes pursuant to Rule 23(b)(3). Certification of the "Injunctive Relief Class" should be denied as it is duplicative of the class described in *Abay et al v. City & Cnty. of Denver*, 1:20-cv-01616-RBJ and for the reasons discussed below. Certification of the two proposed classes under Rule 23(b)(3)—the "Direct Force Class," and "Arrest Class"—should also be denied.[3]

Commonality and Typicality: Plaintiffs' assertion of common questions of law and fact is belied by the varied factual allegations the Complaints. With respect to the named Plaintiffs in *Fitouri* alone, the allegations demonstrate a wide variety of uses of force made by different officers at different times and locations.[4] The same is true of the arrest allegations.[5]

These widely varying factual circumstances foreclose the existence of the necessary "common contention . . . of such a nature that it is capable of classwide resolution," where the

---

[3] Only the most glaring reasons why certification is inappropriate are discussed herein. Defendants reserve their rights to set forth a more complete argument if subsequent briefing is ordered by the Court.

[4] *E.g.*, use of pepper balls or foam munitions (*id.* ¶¶ 57, 134, 136, 141, 265, ), use of chemical gas or spray in a general location or directed at a specific person (*id.* ¶¶ 55, 57, 70, 78, 83, 93, 104–05, 113, 115, 128, 134), use of kettling or different crowd control techniques (*id.* ¶¶ 115, 130, 263, 268)), or physical contact such as tackling or baton use (*id.* ¶ 148, 167, 230).

[5] Some of the Plaintiffs were arrested seemingly by themselves (*id.* ¶¶ 107, 144), others were in groups (*id.* ¶¶ 94–96, 117–18), and it is not at clear what, if any First Amendment protected activity each were involved in at the time of their respective arrests. (*id.* ¶¶ 94–95, 107, 117–18, 139–44).

"determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see, e.g.*, *Shuford v. Conway*, 326 F.R.D. 321, 333–34 (N.D. Ga. 2018) (insufficient commonality for excessive force class because "each decision to restrain and use force against an inmate was individualized (case-by-case), based on the circumstances present" and "not all restraints or uses of force were approved by the same supervisor.").

Plaintiffs' attempt to rely on Denver policies to establish commonality is misplaced. Given the diversity of force and arrest allegations there is no basis to infer that any one Denver policy or custom is common to all of the class members, particularly in that many non-DPD officers used force during the course of the protests against the putative class members. Rather Plaintiff complains of a hodgepodge of allegedly deficient policies/customs and unlawful actions, none of which could be said to apply to each and every member of the proposed classes.

Predominance and Superiority: Plaintiffs, likewise, cannot demonstrate that class questions predominate over individual questions and that a class action is superior to other methods for adjudicating the claims. *See Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914–15 (10th Cir. 2018). Here, issues of whether a particular use of force against a particular Direct Force Class member was or was not pursuant to Denver policy or was or was not a constitutional violation, where that force was allegedly used over multiple days and under varying circumstances, will necessarily predominate over any common questions, requiring mini trials as to each discrete incident.[6] In seeking Rule 23(b)(3) certification, Plaintiff would have every use

---

[6] *See, e.g.*, *Shuford*, 326 F.R.D. at 338 (the totality of the circumstances standard "require[s] distinctly case-specific inquiries into the facts surrounding each alleged incident of excessive force.") (citation omitted)

of force made during the course of the protest declared unconstitutional and compensable—an untenable result. The same is true of the Arrest Class—the circumstances attendant to each arrest, and whether such could support arrest on some other charge (such as, for example, obstructing traffic or failing to obey a lawful order), will necessarily require mini trials attendant to each incident.[7]  Finally, the BLM 5280 Plaintiffs' decision not to join any putative class militates against class certification.

      **b.**      **Anticipated length of trial and whether trial is to the court or jury.**

The Fitouri Plaintiffs anticipate that a jury trial in their case, whether or not any classes are certified, will take approximately 8-10 trial days.

BLM 5280 Plaintiffs anticipate that a jury trial in their case will take approximately 10 days.

      **c.**      **Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, La Plata County Courthouse 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.**

Not applicable.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with

---

[7] *See, e.g.*, *McCarthy v. Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1984) (class action deemed inappropriate in action challenging arrests made during mass demonstration because liability turned upon highly individualized facts: "arrests were made in numerous locations in the District of Columbia" and "the duration and conditions of confinement varied greatly"); *United States v. Sanchez*, 89 F.3d 715, 717 (10th Cir. 1996).

D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of good cause.


DATED at Denver, Colorado, this 3rd day of September, 2020.


BY THE COURT:

_____
United States District Judge

APPROVED:

For Fitouri Plaintiffs:

/s/ Elizabeth Wang

| | |
|---|---|
| Elizabeth Wang | Tara Thompson |
| Loevy & Loevy | Loevy & Loevy |
| 2060 Broadway, Ste. 460 | 311 N. Aberdeen St. |
| Boulder, CO 80302 | Chicago, IL 60607 |

For BLM 5280 Plaintiffs:

/s/ Timothy R. Macdonald

Timothy R. Macdonald
Matthew J. Douglas
Ed Aro
Colin M. O'Brien
Anya A. Havriliak
Arnold & Porter Kaye Scholer, LLP
1144 Fifteenth Street, Suite 3100
Denver, Colorado 80202

Mark Silverstein
Sara Neel
Arielle Herzberg
American Civil Liberties Union Foundation
of Colorado
303 E. Seventeenth Ave., Suite 350
Denver, Colorado 80203