IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF COLORADO

Civil Action No. 1:20-cv-01878-RBJ
(consolidated with 1:20-cv-01922-RBJ-MEH)

BLACK LIVES MATTER 5280, *et al.*

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

Defendants.

---

**[DEFENDANTS' PROPOSED] WORKING DRAFT SCHEDULING ORDER FOR DISCUSSION ONLY**

---

**1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL AND PRO SE PARTIES**

The Scheduling Conference is set for September 3, 2020, at 10:00 a.m., to be conducted by Video Teleconference due to the ongoing pandemic that has required restrictions on in-court proceedings. The parties were expected to file a joint proposed Scheduling Order but did not. Rather, they filed a plaintiff's and a defendant's version. The Court is providing comments in advance of the Scheduling Conference to enable the parties to focus on some of the Court's concerns. This is a draft and is being prepared with Track Changes to facilitate candid discussion at the Scheduling Conference, and nothing provided in Track Changes is final or binding. The Court has used the defendant's proposed order as a template solely because it was the first filed in the electronic filing system and not because the Court necessarily preferred defendants' proposal to plaintiffs' proposal. The following counsel appeared for the parties:

Arnold & Porter Kaye Scholer LLP-Denver     Colin Michael O'Brien
Anya Amalia Havriliak                       Edward Packard Aro

1

| | |
|---|---|
| Matthew J. Douglas | ACLU of Colorado |
| Robert Reeves Anderson | Arielle Kay Herzberg |
| Timothy R. Macdonald | Mark Silverstein |
| 1144 Fifteenth Street, Suite 3100 | Sara R. Neel |
| Denver, CO 80202-2569 | 303 E. 17th Ave., Suite 350 |
| Telephone: 303.863.2380 | Denver, CO 80203 |

Counsel for Plaintiffs BLM 5280, Dr. Apryl Alexander, Elisabeth Epps, Ashlee

Wedgeworth, Amanda Blasingame, Phillip Rothlein, Zach Packard, Hollis Lyman, Cidney Fisk,

and Stanford Smith.

| | |
|---|---|
| Elizabeth Wang | Tara Elizabeth Thompson |
| Daniel M. Twetten | Loevy & Loevy-Chicago |
| Loevy & Loevy | 311 N. Aberdeen Street |
| 2060 Broadway, Suite 460 | Chicago, IL 60607 |
| Boulder, CO 80302 | |
| Telephone: 720.328.5642 | |

Counsel for Plaintiffs Sara Fitouri, Jacquelyn Parkins, Youssef Amghar, Andy Sannier,

Francesca Lawrence, Kelsey Taylor, Joe Deras, and Johnathen Duran.

Counsel for Defendants:

David C. Cooperstein, Assistant City Attorney
Denver City Attorney's Office
Civil Litigation Section
201 West Colfax Ave., Dept. 1108
Denver, CO 80202
Telephone: (720) 913-8414
Facsimile: (720) 913-3155
E-mail: david.cooperstein@denvergov.org

## 2. STATEMENT OF JURISDICTION

The parties agree that this court has jurisdiction over Plaintiffs' federal claims pursuant to

28 U.S.C. § 1331.

## 3. STATEMENT OF CLAIMS AND DEFENSES

**Fitouri Plaintiffs:**

On behalf of themselves individually and putative class members, Plaintiffs Fitouri, Parkins, Lawrence, Taylor, Duran, Deras, Amghar, and Sannier allege that Defendants violated their First and Fourth Amendment rights during the protests in Denver arising from the killing of George Floyd, beginning on May 28, 2020.

Plaintiffs allege that Defendant Officers used violent and unconstitutional crowd control tactics against peaceful protestors, including kettling, indiscriminate and unwarned launching of tear gas and flashbang grenades into crowds and at individuals, and shooting kinetic impact projectiles at protestors without lawful justification. Plaintiffs allege that these actions were taken to suppress and discourage First Amendment activity, and that these actions violated the First Amendment. None of the Defendant Officers (including any Doe Defendant Officers not yet identified) are entitled to qualified immunity for shooting projectiles at and/or using chemical weapons on peaceful protestors (including Plaintiffs) without justification or provocation.

In addition, Plaintiffs allege that the Emergency Curfew imposed by the Defendant City was unconstitutional on its face and as applied. Specifically, the Emergency Curfew was selectively enforced against protestors.

Plaintiffs allege that the Defendant City and County of Denver's policies, training, supervision (or lack thereof) of its police officers in the use of "less lethal" weapons, crowd control tactics, and the First Amendment rights of protestors and civilians were the moving force behind Plaintiffs' and class members' constitutional violations.

Plaintiffs seek a declaratory judgment in their favor.

The named Plaintiffs bring these claims on behalf of themselves as well as classes of individuals similarly situated. Plaintiffs seek damages on behalf of themselves and damages on

3

behalf of proposed class members under Federal Rule of Civil Procedure 23(b)(3). They will seek class certification and appointment as class representatives for two proposed classes: the Direct Force Class and the Arrest Class. The Direct Force Class consists of persons present at or during the aftermath of protests in the City and County of Denver, who were shot with so-called "less-lethal" weapons and/or inhaled an aerosolized chemical agent. The Arrest Class consists of persons present at or during the aftermath of protests in the City and County of Denver, who were arrested by the DPD on charges of violating curfew. The City has dismissed or has agreed to dismiss the charges of over 300 individuals who were arrested solely for violating curfew and failure to obey lawful order (the curfew).

Additionally, Plaintiffs seek injunctive relief on behalf of themselves individually and a class of individuals similarly situated pursuant to Rule 23(b)(2). The Court has indicated that injunctive relief beyond what was already stipulated and approved by the Court in *Abay, et al. v. City and County of Denver*, 1:20-cv-01616-RBJ, would be ordered only for exceptional reasons.

**BLM 5280 Plaintiffs:**

Plaintiffs BLM 5280, Alexander, Epps, Wedgeworth, Blasingame, Rothlein, Packard, Lyman, Fisk, and Smith allege that Defendants violated their First and Fourth and/or Fourteenth Amendment rights during the protests in Denver arising from the killing of George Floyd, beginning on May 28, 2020.

Plaintiffs allege that Defendant Officers used excessive force against individuals, including Plaintiffs, protesting peacefully in the City.  Those "less-lethal" police tactics employed included the use of crowd "kettling," and indiscriminate and unwarned launching of chemical, flash-bang, and kinetic impact grenades and projectiles at protestors without lawful justification.  Defendant Officers' use of those tactics amounted to an unconstitutional use of

4

force under the Fourth and/or Fourteenth Amendments.

Plaintiffs further allege that Defendant Officers' use of those tactics against Plaintiffs suppressed Plaintiffs' First Amendment activity, particularly their rights to peacefully assemble, petition for redress of grievances, and exercise freedom of speech.  These actions violated the First Amendment.

Plaintiffs further allege that the Defendant City and County of Denver's policies, practices, and customs caused Plaintiffs First and Fourth and/or Fourteenth Amendment rights to be violated.  Specifically, the City's policy, practice, and custom of inadequate training and inadequate supervision of its police officers in the use of "less-lethal" weapons and other crowd control methods caused Plaintiffs' injuries.  Further, the City's ratification of Defendant Officers' use of excessive force against peaceful protesters on the days of the protests caused Plaintiffs' injuries.

Plaintiffs seek a judgment declaring Defendants' acts to be in violation of the U.S. Constitution.

Plaintiffs seek compensatory damages as to Plaintiffs BLM 5280, Alexander, Epps, Wedgeworth, Blasingame, Rothlein, Packard, Lyman, Fisk, and Sanford Smith.  Plaintiffs seek punitive damages to Alexander, Epps, Wedgeworth, Blasingame, Rothlein, Packard, Lyman, Fisk, and Smith.  Plaintiffs seek nominal damages as to Plaintiff BLM 5280.

Additionally, Plaintiffs seek injunctive relief.  The Court has indicated that injunctive relief beyond what was already stipulated and approved by the Court in *Abay, et al. v. City and County of Denver*, 1:20-cv-01616-RBJ, would be ordered only for exceptional reasons.  This Court drew the *Abay* case, and pursuant to discussions with other judges, the involved judges and I agreed that it made sense for the same judge to take these two cases.  It is true, as indicated, that

5

the injunctive relief initially imposed by the Court by means of a Temporary Restraining Order in *Abay* and later reduced to essentially permanent form by way of stipulation is likely to moot the need for much, if any, different or additional injunctive relief in the present two cases.

**Defendants:**

Beginning on May 28, 2020, and continuing for several days thereafter, large crowds participated in demonstrations in Downtown Denver. The Denver Police Department made accommodations for the protests—including blocking traffic and allowing protests to continue in certain public streets.  Unfortunately, the demonstrations devolved into riots with violence directed at officers and property destruction. Further, demonstrators attempted to block traffic and tried to block Interstate 25, creating an extremely dangerous situation for traffic, protestors and the police.  Officers responded to these criminal actions by attempting to disperse the subject crowds using orders to disperse, various chemical agents, and other less lethal force options, depending upon the circumstances.

The violent, criminal acts were most often perpetrated at night and continued over the course of two nights, causing injuries to officers and substantial property damage. In response, the Mayor of the City and County of Denver ("Denver") issued a mandatory nighttime curfew beginning at 8:00 p.m. on May 30, which was extended through June 4 due to the continued violations of the curfew and other unlawful, destructive conduct.  In their two Complaints, Plaintiffs assert  similar claims for relief pursuant to U.S.C. 42 § 1983 alleging: (1) excessive force in violation of the Fourth and Fourteenth Amendments; (2) retaliation for the exercise of First Amendment rights; and (3) municipal liability against Denver for unconstitutional policies and practices and failing to properly train or supervise officers. In addition, in the Fitouri Complaint, the Plaintiffs contend that their First Amendment rights were violated by the

enactment of the curfew and seek certification of a various classes with respect to the claims asserted therein.

      With respect to the allegations against the individually named DPD officers, the officers contend that they are entitled to qualified immunity from the claims asserted against them because they did not violate any of the Plaintiffs' constitutional rights—or the rights of any other individuals who were present or engaging in unlawful conduct—with respect to their dispersal of crowds or in response to the violent, criminal acts perpetuated by individuals in the crowd and their actions did not violate clearly established law.

      Denver denies that it has any custom, policy or practice of violating individuals' constitutional rights or that it failed to train or supervise its officers who were involved in responding to these highly charged, difficult situations. With respect to the claims asserted by the Plaintiffs in the Fitouri case, Denver also asserts that the emergency curfew was a lawful restriction issued by the Mayor under his emergency powers both on its face and as enforced. Further, Denver's policies, training, and supervision of its officers were legally sufficient and did not cause any Plaintiff's constitutional rights to be violated.

      Accordingly, Defendants assert the following defenses:

      1.     The complaints fail to state a claim upon which relief may be granted, in whole or in part.

      2.     The individually named Denver Police officer defendants, and any additional individual Denver Police Officers or Sheriff Deputies encompassed by Plaintiffs' "John Doe" and "Jane Doe" designations who might be named as defendants in the future, are entitled to qualified immunity.

3.      Plaintiffs' damages, if any, were proximately caused by their own conduct and not by reason of any unconstitutional conduct by Denver's employees.

4.      Plaintiffs may have failed to mitigate any damages they allegedly sustained as a result of the events described in the Complaint.

5.      Denver's policies were, at all relevant times, in conformance with established constitutional and statutory law with respect to all issues relevant to this action.

6.      Denver's training and supervision of its police officers met or exceeded constitutional and statutory standards with respect to all topics relevant to this action.

7.      The temporary nighttime curfew enacted by the Mayor was a lawful emergency regulation both on its face and as enforced by Denver Police officers.

7.      In this Court's view, a problem that lies at the center of the disputes in this case and in *Abay* is the inability or unwillingness of the respective parties to understand and appreciate the other side's perspective.  On the one hand, there are good reasons why protests have taken place in Denver and many other cities in this country.  And, there is no doubt that some police officers here and elsewhere have gone overboard in their reaction to the protests.  That was squarely addressed in *Abay.*  No one can deny the right of citizens to engage in peaceful protests, and peaceful protests inevitably include yelling, screaming, gestures, profanity, fighting words, etc.  So be it.  The First Amendment protects those rights and thankfully so.  On the other hand, no one can reasonably dispute that some "protesters" here and elsewhere have gone overboard, engaging in destruction of property and threatening conduct.  The police have a job to do.  It is a difficult and dangerous job.  The job includes protecting persons and property from danger and destruction during protest events.  The notion that "police are bad" that seems to exist in some parts of our society this summer is grossly overstated and unfair.  The Court has no more

> **Formatted:** Normal,  No bullets or numbering

sympathy with those who abuse their constitutional rights and engage in destructive conduct than it does for police officers who unnecessarily resort to the use of chemical agents or non-lethal projectiles or, indeed, resort to lethal tactics without very good cause.  What we need, in my view, is more dialogue and less litigation.  So, the parties might as well face the fact that, for better or worse, that is the judge they have drawn in these cases.

**Formatted:** Font: (Default) Times New Roman, 12 pt

## 4. UNDISPUTED FACTS

1.      Demonstrations in Denver in response to the killing George Floyd began on May 28, 2020, and continued until, at least, June 2, 2020.

2.      Denver Mayor Michael Hancock proclaimed an emergency curfew that was in place from 8:00 p.m. on May 30, 2020, until 5:00 a.m. on May 31; from 8:00 p.m. on May 31, 2020, until 5:00 a.m. June 1; from 9:00 p.m. on June 1, 2020, until 5:00 a.m. on June, 2; from 9:00 p.m. on June 2, 2020, until 5:00 a.m. on June 3; from 9:00 p.m. on June 3, 2020, until 5:00 a.m. on June 4, and; from 9:00 p.m. on June 4, 2020, until 5:00 a.m. on June 5.

## 5. COMPUTATION OF DAMAGES

**Fitouri Plaintiffs:**

Plaintiffs' and class members' damages include general and compensatory damages against Defendants on their federal claims, costs and attorneys' fees as allowed on federal claims, and pre- and post-judgment interest as allowed by law. Plaintiffs' and the Direct Force Class members' damages include general damages for violation of their First Amendment rights, as well as damages for physical injury, pain and suffering, emotional distress, and medical treatment. The arrested Plaintiffs' and the Arrest Class members' damages also include time detained in jail and dealing with criminal charges for curfew violation before dismissal of charges. Damages will ultimately be determined by a jury, but Plaintiffs and class members

estimate that classwide damages for the Arrest Class is in excess of $3,000,000 and for the Direct

Force Class is in excess of $12,000,000. These are good faith estimates based on the Plaintiffs'

current estimate of the size of the classes and settlements that have been obtained in other federal

class action cases arising out of protests alleging First and Fourth Amendment claims (including

both excessive force and unlawful arrests).  Rule 26(a)(1)(A)(iii) and (C) require plaintiff to

provide a computation of each category his or her damages within 14 days after the parties' Rule

26(f) conference unless a different time is set by stipulation or court order.  The Court applies the

rule to claims for economic damages.  The large round numbers provided in this paragraph do

not comply with the rule.  Any economic damages claimed by the individual named plaintiffs

must be disclosed in compliance with the rule or be waived.

> **Formatted:** Font: Times New Roman, 12 pt

**BLM 5280 Plaintiffs:**

Plaintiffs' damages include nominal, compensatory, and punitive damages against

Defendants on their federal claims, costs and attorneys' fees as allowed on federal claims, and

pre- and post-judgment interest as allowed by law.

Plaintiffs' damages include, but are not limited to: physical injury; emotional distress;

medical, psychologic, and/or psychiatric treatment related to their physical and emotional

injuries; and damage to personal property.  Plaintiffs also suffered intangible injury to their First,

Fourth, and/or Fourteenth Amendment rights.  Same comment.  This generic description of

damages does not comply with the rule.

**Defendants:**

Defendants object to Plaintiffs' failure to describe any economic damages calculation or to, alternatively, indicate that they have no claim for such. Defendants have made no claim for damages but reserve the right to seek attorney fees and costs related to the defense of this matter pursuant to law.  The Court has no idea what "right to seek attorney fees" the defendants think they are reserving.  This purported reservation accomplishes nothing.

## 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

**a.**     **Date of Rule 26(f) meetings:** August 12 and 20, 2020

**b.**     **Names of each participant and party he/she represented:**

**For Fitouri Plaintiffs:**

| | |
|---|---|
| Elizabeth Wang | Tara Thompson |
| Loevy & Loevy | Loevy & Loevy |
| 2060 Broadway, Ste. 460 | 311 N. Aberdeen St. |
| Boulder, CO 80302 | Chicago, IL 60607 |

**For BLM 5280 Plaintiffs:**

Timothy R. Macdonald
Matthew J. Douglas
Ed Aro
Colin M. O'Brien
Anya A. Havriliak
Arnold & Porter Kaye Scholer, LLP
1144 Fifteenth Street, Suite 3100
Denver, Colorado 80202

Mark Silverstein
Sara Neel
Arielle Herzberg
American Civil Liberties Union Foundation
of Colorado
303 E. Seventeenth Ave., Suite 350
Denver, Colorado 80203

**For Defendants:**

David C. Cooperstein
Robert Huss

Emily Dreiling
Denver City Attorney's Office
Civil Litigation Section
201 West Colfax, Dept. 1108
Denver, CO 80202

**c.      Statement as to when Rule 26(a)(1) disclosures were made or will be made.**

The parties agreed that Plaintiffs Rule 26(a)(1) disclosures will be made by September 4,

2020. Defendants intend to provide their Rule 26(a)(1) disclosures on August 28, 2020.

**d.      Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).**

*See* section 6(c), above.

**e.      Statement concerning any agreements to conduct informal discovery.**

The parties have not reached any agreements to conduct informal discovery.  To me this tends to reflect stubbornness.  At a minimum, it will increase litigation costs.

**f.      Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

The parties agree to use a unified exhibit numbering system for deposition exhibits and

where otherwise appropriate. The parties have not reached any further agreement.

It is Defendants' position that, due to the volume of materials attendant to the protests, proportionality of discovery will be an important issue, and that pinpointing the times and location of the incidents where Plaintiffs' claim to have been subjected to excessive force, and limiting the production of media and Denver Police Department reports to those times/locations will be necessary. Defendants acknowledge that the municipal liability claims will entail production of policy and training materials beyond the specific incidents described in the complaints.  Proportionality is always an issue and will apply to both sides

.

**g.      Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

12

The parties anticipate that there may be discovery of electronically stored information such as cell phone data, e-mails, and social media posts, if any. The parties will work together to facilitate the discovery of such information and to produce it in the best format. Parties shall adhere to Sedona principles regarding electronic discovery disputes. Parties shall file an FRE 502(d) order by September 3, 2020.

The Defendants propose producing all video and audio recordings in native format and other documents in .pdf format wherever practicable.

**h.      Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

The parties are willing to engage in a mediation with Magistrate Judge Hegarty after some exchange of discovery. Whether the Court will refer this matter to Judge Hegarty for mediation or require the parties to engage a professional mediator remains to be seen. The judges and magistrate judges in this district, as in other districts, are behind in their ability to conduct court proceedings due to pandemic restrictions, and judicial time going forward will be at something of a premium.

## 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

**a.      Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.**

The Plaintiffs will collectively be permitted to take 165 hours of deposition testimony comprised of no more than 35 depositions, not including depositions of retained experts. The Court's initial impression is that these numbers are grossly excessive.

The Defendants will collectively be permitted to take 165 hours of deposition testimony comprised of no more than 35 depositions, not including depositions of retained experts. Same comment.

Each Plaintiff group—the Fitouri Plaintiffs and BLM Plaintiffs—will be permitted 25 interrogatories (50 total).

Defendants will be permitted 25 interrogatories per Plaintiff group (50 total).

**b.      Limitations which any party proposes on the length of depositions.**

No deposition may exceed 7 hours absent agreement of the parties or by leave of the Court for good cause shown. The Court questions how the plaintiffs or the taxpayers can realistically afford the costs that will be run up with all this deposition-taking.

**c.      Limitations which any party proposes on the number of requests for production and/or requests for admission.**

Each Plaintiff group—the Fitouri Plaintiffs and BLM Plaintiffs—will be permitted a total of 25 requests for admission (50 total) and 40 requests for production (80 total).

Defendants will be permitted 25 requests for admission per Plaintiff group (50 total) and 40 requests for production per Plaintiff group (80 total).

**d.      Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions.**

33 days before close of discovery.

**e.      Other Planning or Discovery Orders.**

Deadlines pertaining to class certification and discovery (see Section 11.a., below, for the parties' statements as to why a class action is or is not appropriate):

1.      It is Defendants' position that the question of certification can be resolved without the need for special discovery or expert witness disclosures pertaining to the issue

of class certification given the legal standard attendant to Plaintiffs' claims and the allegations contained in the complaints.

2.      If the Court determines that discovery and expert witness disclosures directed at class certification are NOT warranted, any motion for class certification must be filed by November 2, 2020.

3.      Alternatively, If the Court determines that discovery and expert witness disclosures directed at class certification ARE warranted, any motion for class certification must be filed by January 11, 2020.

4.      Given the different claims in each case and the class action nature of one of the cases, the Plaintiffs intend to file a motion to sever the two consolidated cases at the close of discovery.

Quite frankly, this Court's impression is that it is unlikely that a class or classes will be certified under Rule 23. I will keep an open mind, as I have not yet received a motion, briefs or arguments. But, fundamentally, it seems to me that the effect of police activity during the protests on individual protesters will almost inevitably vary from person to person. Perhaps even more problematic, it strikes the Court as difficult to impossible to identify and to notify the members of the purported class or classes.

**Formatted:** Indent: First line: 0"

### 9. CASE PLAN AND SCHEDULE

a.      **Deadline for Joinder of Parties and Amendment of Pleadings:**

January 4, 2021

b.      **Discovery Cut-off:**

If the Court chooses NOT to proceed with class action briefing, Defendants propose a thirteen-month discovery period, with a discovery cutoff of October 4, 2021.

If the Court chooses TO proceed with class action briefing, Defendants propose a seventeen-month discovery period, with a discovery cutoff of February 9, 2022.

The Court is unlikely to approve a discovery cutoff of that length regardless of the class issues. The issues raised in this case, like the unrest in society from which the issues arise, need to be addressed and resolved and not drawn out by countless hours of discovery, motion practice, and other litigation delay. The Court's view is that any injuries and damages sustained by the individual plaintiffs should be promptly and honestly disclosed, promptly and honestly addressed by the defendants, and resolved. If there is any injunctive relief that is necessary and reasonable but not covered by the *Abay* stipulation, that should be negotiated or resolved by the Court promptly. Please bear in mind that *Abay* went from assignment to this Court to issuance of a Temporary Restraining Order in a matter of hours, and to the final stipulation in a matter of a few days. This Court will have no appetite for delay or stringing this case out over months upon months upon years to come.

c.    **Dispositive Motion Deadline:**

If the Court chooses NOT to proceed with class action briefing, dispositive motions will be due November 18, 2021.

If the Court chooses TO proceed with class action briefing, dispositive motions will be due March 28, 2022.

For the same reasons, these dates are unacceptable out of the box.

d.    **Expert Witness Disclosure**

1.    **The parties shall identify anticipated fields of expert testimony, if any.**

16

Medical, police practices (crowd management, use of force, less lethal munitions, chemical agents), forensic investigations, digital forensic analysis.

2. **Limitations which the parties propose on the use or number of expert witnesses.**

4 retained experts per side. In other words, a total of 4 retained experts for all Plaintiffs and a total of 4 retained experts for all Defendants.  Do you have any idea what these experts are going to cost?  And what impact they will or will not have on the ultimate resolution of the case?  The case will come down to basic issues of what is and is not reasonable police conduct in the various types of circumstances that police officers face during protests.  Maybe the plaintiffs could benefit a little if they could find a credible and persuasive expert to talk about when chemical agents and non-lethal projectiles should and should not be used. My guess is that the expert's opinions will not be greatly different from the adopted policies and procedures of the Denver Police Department.  It seems to me that the issue isn't whether the underlying procedures are so wrong (and to the extent they needed to be modified, the stipulation modified them), but whether they were reasonably enforced and applied in the field during the protests and, to the extent they were not, what injuries or damages resulted to the plaintiffs.

3. If the Court chooses NOT to proceed with class action briefing, the parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before June 30, 2021.

If the Court chooses TO proceed with class action briefing, the parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before November 2, 2021.

[This includes disclosure of information applicable to "Witnesses Who Must Provide a Written Report" under Rule 26(a)(2)(B) and information applicable to "Witnesses Who Do Not Provide a Written Report" under Rule 26(a)(2)(C).]

4.   If the Court chooses NOT to proceed with class action briefing, the parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before August 16, 2021.

If the Court chooses TO proceed with class action briefing, the parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before December 17, 2021.

[This includes disclosure of information applicable to "Witnesses Who Must Provide a Written Report" under Rule 26(a)(2)(B) and information applicable to "Witnesses Who Do Not Provide a Written Report" under Rule 26(a)(2)(C).]

**e.   Identification of Persons to Be Deposed:**

**Fitouri Plaintiffs:**

Chief of Police Paul Pazen
Mayor Michael B. Hancock
Defendant Officer Jacqueline Velasquez – 2-3 hours
Defendant Officer M. Davis – 2-3 hours
Defendant Officer Andrew Nielsen – 2-3 hours
Defendant Officer Zachary Moldenhauer – 2-3 hours
Defendant Officer Jacob Vaporis – 2-3 hours
Defendant Officer Kevin Beasley – 2-3 hours
Defendant Officer Chelsea Novotny – 2-3 hours
Defendant Officer Christopher Cochran – 2-3 hours
Defendant Officer Anthony Tak – 2-3 hours
Defendant Officer John Brinkers – 2-3 hours
Rule 30(b)(6) witnesses designated pursuant to Notice to be issued by Plaintiffs to Defendant City

18

Supervising/command officers involved in handling of protests (names unknown at this time)
Third-party officer witnesses involved in handling of protests (names unknown at this time)
City witnesses involved in the imposition of the Emergency Curfew and the State of Emergency Declaration (names unknown at this time)
Unknown Doe Defendant Officers who used excessive force on Plaintiffs (once their identities are ascertained through discovery)

**BLM 5280 Plaintiffs:**

Chief of Police Paul Pazen
Mayor Michael B. Hancock
DPD Special Operations Division Commander Patrick Phelan
Rule 30(b)(6) witnesses designated pursuant to Notice to be issued by Plaintiffs to Defendant City
Supervising/command officers involved in handling of protests (names unknown at this time)
Supervising/command officers or other management involved in the development of the City's use-of-force policies (names unknown at this time)
Supervising/command officers involved in training of Officers on use-of-force policies (names unknown at this time)
Unknown Doe Defendant Officers who used excessive force on Plaintiffs (once their identities are ascertained through discovery)
Unknown Boe Defendant Officers who used excessive force on Plaintiffs (once their identities are ascertained through discovery)
Unknown witnesses who observed the use of excessive force on Plaintiffs

**Defendants:**

| | |
|---|---|
| BLM 5280 | 7 hrs |
| A. Alexander | 3.5 |
| E. Epps | 3.5 |
| A. Wedgeworth | 3.5 |
| A. Blasingame | 3.5 |
| P. Rothlein | 3.5 |
| Z. Packard | 3.5 |
| H. Lyman | 3.5 |
| C. Fisk | 3.5 |
| S. Smith | 3.5 |
| A. Cruz | 3.5 |
| S. Fitouri | 3.5 |
| J. Parkins | 3.5 |
| Y. Amghar | 3.5 |
| A. Sannier | 3.5 |
| F. Lawrence | 3.5 |
| K. Taylor | 3.5 |
| J. Deras | 3.5 |
| J. Duran | 3.5 |

Other witnesses          tbd

First, witnesses will be deposed once, not separately for each case.  Second, if you cannot settle the case right out of the gate before proceeding with discovery, then you need to identify a small number of key depositions to be scheduled and taken promptly, and then reassess.  It might not, for example, be necessary to depose each named plaintiff.  As interesting as it might be, it might not be necessary to depose the Mayor or the Chief of Police.  Target key people, get the key information, then assess where you are.

## 10. DATES FOR FURTHER CONFERENCES

a.      Status conferences will be held in this case at the following dates and times:

b.      A final pretrial conference will be held in this case on _____at o'clock _____m.

A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than

seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

a.      **Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.**

The parties have set forth their respective positions in separate proposed scheduling

orders. Pursuant to the Court's order, the parties provide a statement indicating why a class

action is or is not appropriate in this case:

**Fitouri Plaintiffs' Position:**

The Plaintiffs have proposed a Direct Force Class and an Arrest Class, seeking damages.

Their case is the only case that has been filed to date seeking certification of Rule 23(b)(3)

classes for classwide damages.[1] The Plaintiffs intend to move for class certification after an

opportunity for discovery on class certification-related issues. Striking class allegations prior to

---

[1] The *Abay* plaintiffs have not sought damages on behalf of any class members or certification of any Rule 23(b)(3) classes. *See* Dkt. 1, No. 20-cv-1616.

discovery "is only warranted where defendants 'are able to show conclusively that plaintiffs will be unable to establish fact[s] that would make class treatment appropriate.'" *Scarlett v. Air Methods Corp.*, 2020 WL 2306853, at *6 (D. Colo. May 8, 2020).[2]

        With respect to both proposed classes, the requirements likely to be contested are commonality and predominance. Plaintiffs anticipate they will be able to meet these requirements for both classes because both center around *Monell* liability. The Arrest Class members were all arrested solely for violation of the Emergency Curfew and failure to obey the curfew, which was an official policy of the City. The questions common to the Direct Force Class members include: whether the Defendants as a pattern and practice broke up protests through the use of force (namely, "less lethal" weapons) regardless of whether the individual against whom such force was used was engaged in conduct justifying such force, and without giving people adequate warning or opportunity to disperse; and whether the City's written or unwritten policies, practices or customs were the moving force behind the officers' use of force on protestors. If the actions of the officers were attributable to the City due to the City's policies, widespread customs or practice — as Plaintiffs allege under their *Monell* claim — then "a discrete legal or factual question common to the class must exist," *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010), and the class's "common contention … must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in

---

[2] *See also Friedman v. Dollar Thrifty Automotive Group, Inc.*, 2013 WL 5448078, at *2 (D. Colo. Sept. 13, 2013) (motion to strike should only be granted if "it will be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove"); *Francis v. Mead Johnson & Co.*, 2010 WL 3733023, at *1 (D. Colo. Sept. 16, 2010) (striking class allegations is even more disfavored than motions to strike generally because it requires a court to "preemptively terminate the class aspects of … litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.").

one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Other courts that have

certified classes alleging Fourth Amendment claims have so found. *See, e.g.*, *MIWON v. Los*

*Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007) (certifying Rule 23(a)(2) and 23(b)(3) classes in

unlawful arrest and excessive force case involving protestors); *Ross v. Gossett*, WL 1472072, at

*5 (S.D. Ill. Mar. 26, 2020) (certifying Rule 23(b)(3) classes alleging unlawful strip searches and

explaining, "[i]n cases claiming the existence of widespread or uniform practices, courts have

routinely found that common questions predominate.").

To the extent that the Court has concerns about commonality or predominance, those

issues can be addressed through subclassing or revision of the class definition for the Direct

Force Class to specific incidents of use of force on specific dates, times, and locations.

Superiority under Rule 23(b)(3) will also be met. Given the number of putative class

members, and that common questions of law and fact predominate over individual issues, a class

action will serve the economies of time, effort, and expense, and prevent possibly inconsistent

results. Conversely, deciding each claim separately would be a very inefficient use of judicial

and party resources. In sum, Defendants cannot demonstrate from the face of Plaintiffs'

complaint that it will be "impossible" for Plaintiffs to obtain class certification.

**BLM 5280 Plaintiffs' Position:**

BLM 5280 Plaintiffs have not asserted class allegations and take no position on the

appropriateness of the certification of a class action relating to the claims in the Fitouri matter.

While BLM 5280 Plaintiffs believe it is appropriate and would promote efficiency to consolidate

the BLM 5280 and Fitouri cases for the purpose of discovery, BLM 5280 Plaintiffs intend to file

a Motion to Sever the cases after discovery, and request a separate trial and dispositive motion

track for the BLM 5280 case after the completion of discovery.

**Defendants' Position:**

Plaintiffs in the *Fitouri* matter seek classification of one class pursuant to Rule 23(b)(2) and two classes pursuant to Rule 23(b)(3). Certification of the "Injunctive Relief Class" should be denied as it is duplicative of the class described in *Abay et al v. City & Cnty. of Denver*, 1:20-cv-01616-RBJ and for the reasons discussed below. Certification of the two proposed classes under Rule 23(b)(3)—the "Direct Force Class," and "Arrest Class"—should also be denied.[3]

<u>Commonality and Typicality</u>: Plaintiffs' assertion of common questions of law and fact is belied by the varied factual allegations the Complaints. With respect to the named Plaintiffs in *Fitouri* alone, the allegations demonstrate a wide variety of uses of force made by different officers at different times and locations.[4] The same is true of the arrest allegations.[5]

These widely varying factual circumstances foreclose the existence of the necessary "common contention . . . of such a nature that it is capable of classwide resolution," where the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see, e.g.*, *Shuford v. Conway*, 326 F.R.D. 321, 333–34 (N.D. Ga. 2018) (insufficient commonality for excessive force class because "each decision to restrain and use force against an inmate was individualized (case-by-case), based on the circumstances present" and "not all restraints or uses of force were approved by the same supervisor.").

---

[3] Only the most glaring reasons why certification is inappropriate are discussed herein. Defendants reserve their rights to set forth a more complete argument if subsequent briefing is ordered by the Court.

[4] *E.g.*, use of pepper balls or foam munitions (*id.* ¶¶ 57, 134, 136, 141, 265, ), use of chemical gas or spray in a general location or directed at a specific person (*id.* ¶¶ 55, 57, 70, 78, 83, 93, 104–05, 113, 115, 128, 134), use of kettling or different crowd control techniques (*id.* ¶¶ 115, 130, 263, 268)), or physical contact such as tackling or baton use (*id.* ¶ 148, 167, 230).

[5] Some of the Plaintiffs were arrested seemingly by themselves (*id.* ¶¶ 107, 144), others were in groups (*id.* ¶¶ 94–96, 117–18), and it is not at clear what, if any First Amendment protected activity each were involved in at the time of their respective arrests. (*id.* ¶¶ 94–95, 107, 117–18, 139–44).

Plaintiffs' attempt to rely on Denver policies to establish commonality is misplaced. Given the diversity of force and arrest allegations there is no basis to infer that any one Denver policy or custom is common to all of the class members, particularly in that many non-DPD officers used force during the course of the protests against the putative class members. Rather Plaintiff complains of a hodgepodge of allegedly deficient policies/customs and unlawful actions, none of which could be said to apply to each and every member of the proposed classes.

Predominance and Superiority: Plaintiffs, likewise, cannot demonstrate that class questions predominate over individual questions and that a class action is superior to other methods for adjudicating the claims. *See Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914–15 (10th Cir. 2018). Here, issues of whether a particular use of force against a particular Direct Force Class member was or was not pursuant to Denver policy or was or was not a constitutional violation, where that force was allegedly used over multiple days and under varying circumstances, will necessarily predominate over any common questions, requiring mini trials as to each discrete incident.[6] In seeking Rule 23(b)(3) certification, Plaintiff would have every use of force made during the course of the protest declared unconstitutional and compensable—an untenable result. The same is true of the Arrest Class—the circumstances attendant to each arrest, and whether such could support arrest on some other charge (such as, for example, obstructing traffic or failing to obey a lawful order), will necessarily require mini trials attendant to each incident.[7] Finally, the BLM 5280 Plaintiffs' decision not to join any putative class militates against class certification.

---

[6] *See, e.g.*, *Shuford*, 326 F.R.D. at 338 (the totality of the circumstances standard "require[s] distinctly case-specific inquiries into the facts surrounding each alleged incident of excessive force.") (citation omitted)

[7] *See, e.g.*, *McCarthy v. Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1984) (class action deemed inappropriate in action challenging arrests made during mass demonstration because liability turned upon highly individualized facts: "arrests were made in numerous locations in the District of Columbia" and "the duration and conditions of confinement varied greatly"); *United States v. Sanchez*, 89 F.3d 715, 717 (10th Cir. 1996).

**b.**   **Anticipated length of trial and whether trial is to the court or jury.**

Defendants propose a single trial of 15 trial days. However, the Plaintiff groups have indicated that they will seek separate trials before separate juries. If the Court proceeds in this manner, Defendants propose the following.

The BLM Action: 12 trial days

The Fitouri Action: 12 trial days

It is unlikely that the Court will hold two trials, and I suspect that it is unlikely that a trial would take either 12 or 15 days.

**c.**   **Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, , La Plata County Courthouse 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.**

Not Applicable

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon good cause.

BY THE COURT:

_____
United States District Judge

**Formatted:** Indent: Left:  3"

APPROVED:

By:  _s/ David C. Cooperstein_
David C. Cooperstein, Assistant City Attorney
Denver City Attorney's Office
Civil Litigation Section
201 West Colfax Ave., Dept. 1108
Denver, CO 80202
Telephone: (720) 913-3100
Facsimile: (720) 913-3155
E-mail: david.cooperstein@denvergov.org
*Attorney for Defendants*