IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT COURT OF COLORADO

Civil Action Nos. 1:20-cv-01878-RBJ & 1:20-cv-01922-RBJ-MEH (consolidated)
BLACK LIVES MATTER 5280, *et al.*,     )
Plaintiffs                              )
v.                                      )   **FITOURI PLAINTIFFS' REPLY**
CITY AND COUNTY OF DENVER, *et al.*,  )   **IN SUPPORT OF CLASS**
Defendants                              )   **CERTIFICATION**

By proposing that potential class members could utilize collateral estoppel to preclude Defendants from raising the same issues in subsequent litigation, Defendants effectively concede commonality and typicality. Dkt. 113 at 18. After all, collateral estoppel requires that "the issue previously decided ***is identical with the one presented in the action in question***." *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009) (emphasis added). The liability issues in a subsequent case involving a putative class member would be identical to the issues decided here because each putative class member was subjected to the same alleged wrongful conduct as the Plaintiffs, for each of the events described in the five proposed Direct Force Classes. However, certifying the proposed classes is a better and more efficient option.[1]

DPD command staff have testified that in each of the distinct incidents that form the five proposed Direct Force Classes, the Incident Commander or other command staff directly ordered the use of tear gas—an indiscriminate weapon—to disperse groups of mostly peaceful protestors. DPD's own witnesses have testified that no individualized decisions were made during the five incidents comprising the proposed Direct Force Classes, and Defendants deployed force without prior warnings or orders to disperse. These facts are uncontested. Since Defendants also concede numerosity, Dkt. 113 at 8 n.7, the remaining issues are ascertainability, adequacy, and superiority. Each of these factors are satisfied, as discussed below.

---

[1] Proceeding as a class is superior because the class members are easily ascertainable, there are no issues of causation, and no individualized assessments are required to establish Defendants' liability.

I. **The Proposed Direct Force Classes Are Easily Ascertainable or Could Be Modified.**

Plaintiffs' proposed direct force classes are easily ascertainable because they are not seeking to certify a single class that covers multiple days and events as Defendants suggest. Instead, each of the proposed classes is a distinct incident, limited in time, location, and duration, thereby making it easy to identify potential class members. *See* Dkt. 91 at 2. There is not one Direct Force Class, but five discrete, separate classes. *Id.* Contrary to Defendants' argument otherwise, Plaintiffs' proposed classes are not fail-safe classes (classes that require a merits determination of each class member's claim).[2] Dkt. 113 at 6-7. It is undisputed that DPD used force indiscriminately against all persons at the locations and times identified in the classes, rather than against individual protestors where force could be justified.

Tear gas, a weapon that is indiscriminate by nature, was used against protestors in each Direct Force Class and command authorization was required to deploy tear gas because it is a serious use of force. Ex. 111 at 33:5-34:2, 39:2-47:5; Ex. 108 at 29:23-32:8 (same).[3] DPD used indiscriminate force on entire crowds to disperse peaceful protestors based on the conduct of a few individuals who could and should have been isolated, thereby violating protestors' rights. Even if DPD was justified in using this level of force on a small number of persons who were engaged in behavior such as throwing water bottles, it was not justified in using such force against the vast majority of peaceful protestors.

---

[2] A fail-safe class is defining a class where membership depends on the liability of the defendant. *Banks v. Cent. Refrigerated Servs., Inc.*, 2017 WL 1683056, at *6 (D. Utah May 2, 2017).

[3] Depositions submitted with this reply became available after Plaintiff's motion was filed. Commander Phelan and Lt. Canino ordered use of tear gas against Class 1. *See* Ex. 55 at DEN 2832; Ex. 110 at 159:17-160:14; Ex. 112. Phelan, Lt. Williams, and Lt. Pine ordered use of tear gas against Class 2. *See* Ex. 55 at DEN 3019; Ex. 110 at 161:16-25. Lt. Vince Porter ordered use of pepperballs against Class 3. Ex. 55 at DEN 3421, 3282, 3382, 3469. Phelan and command staff ordered the deployment of tear gas and other less lethal munitions against Class 4. Ex. 55 at DEN 3023, 3298-99; Ex. 108 at 120:21-123:6; Ex. 110 at 73:20-76:21. Phelan ordered the kettling and use of tear gas against Class 5. Dkt. 91 at 6-7; Ex. 111 at 189:11-191:15.

Because DPD might have been justified in using force or arresting the small handful of people who were throwing objects, the class definitions exclude them. However, this is not a fail-safe class. *See* 1 *Newberg on Class Actions* § 3:6 (5th ed.). The proposed class definitions do not presuppose liability or success on the merits "because the liability standard [Plaintiffs assert] … require[s] class members to prove more facts to establish liability than are referenced in the class definition." *Meglar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017). Many ultimate liability questions are nowhere in the proposed class definitions (e.g., whether the wholesale force used was legal under the circumstances, whether DPD could use such force before dispersing mostly peaceful assemblies, and whether such dispersal of assemblies was proper or adequate). The class definitions merely exclude the handful of troublemakers against whom force may have been individually justified.

Further, the concern with fail-safe classes— "to avoid the problem where 'the defendant is forced to defend against the class, but if a plaintiff loses, she drops out and can subject the defendant to another round of litigation,'"—does not apply here. *Banks*, 2017 WL 1683056, at *6 (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015)). Just like in *Banks*, if Defendants show that a class member engaged in conduct that would justify the force used against them, that member would drop out of the class and could potentially subject Defendants to another litigation. However, "the plaintiff would lack standing in the new litigation" because he or she would not have suffered an injury. *Id.*

Alternatively, if the Court has concerns about the proposed classes, the class definitions can be easily modified. The Court could (1) either change the language "who were not engaged in any behavior that would pose an immediate and specific threat to the safety of officers or

others" to "who were not throwing objects at officers" (*see Puente*[4] ) or (2) remove that language entirely. *See McCaster v. Darden Rests., Inc.,* 845 F.3d 794, 800 (7th Cir. 2017) ("[T]he problem of a fail-safe class can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.") (internal quotes and citation omitted). Any concern that the second option would inappropriately include persons who have no claim "could be addressed by a claims procedure after the major, common issues are determined on a class-wide basis." *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 335 (W.D. Okla. 2018). Where the majority of people in these classes were peacefully protesting and posed no threat to officers, the more practical and appropriate result is to certify the classes and engage in any fact disputes about the few people who may not have standing to be in the class later on.[5] In sum, the classes are proper and easily ascertainable, and any concerns with the class definitions should be resolved through refining the class definitions instead of denying class certification.

## II. Defendants' Challenge to Plaintiffs' Substantial Evidence of Commonality, Typicality, and Predominance Is Factually Inaccurate and Legally Improper.

Whether common issues predominate is based on Plaintiffs' legal theories, not Defendants' version of them. Plaintiffs' theories are that the DPD command violated both the Fourth and First Amendments by (1) dispersing hundreds of lawful protestors by indiscriminately unleashing "area saturation" with pepperballs and tear gas, rather than engaging in targeted activity against a small number of troublemakers; (2) dispersing hundreds of lawful protestors by indiscriminately using tear gas on peaceful and non-peaceful protestors alike; and

---

[4] *Puente v. City of Phoenix*, 2019 WL 4849613, at *5 (D. Ariz. Sept. 30, 2019). The conduct the defendants identified as justifying the use of force was individuals throwing objects (just like in this case). *Id.* The court thus refined the class definition to focus on the individuals' conduct to allay any concerns about having to reach the merits.

[5] Video footage attached to Plaintiffs' motion demonstrate that most protestors were engaged in peaceful protest. And officers admitted that many of the protestors were peaceful. *See, e.g.*, Ex. 108 at 38:20-39:1, 121:8-20; Ex 20 at 53:7-24; Ex. 109 at 93:2-94:14, 97:1-15; Ex. 111 at 211:8-213:18, 214:19-215:9.

(3) failing to provide audible orders to disperse and adequate time to disperse before using indiscriminate force against protestors. *See generally* Dkt. 91. Understood this way, common questions predominate because the answers to these questions will resolve class liability.

Defendants state, without citing any evidence, that Plaintiffs' declarations show that each protestor's experience was different. Dkt. 113 at 9-11, 15. A review of Plaintiffs' and putative class members' declarations show that the experiences of the peaceful protestors in each class were identical; each person was subjected to Defendants' uniform, unlawful actions during the incidents that make up the five classes.[6] For example, Plaintiffs are all proposed class representatives for Class 4, Dkt. 91 at 16, their declarations detail nearly identical experiences (and any differences pertain to damages and not liability), and, when read in conjunction with putative class members' accounts, they show that Defendants' conduct was uniform against all persons in the crowd, regardless of the protestors' behavior. *See supra* n.10. While it may be true that certain protestors inhaled more gas than others, or that some protestors were hit with projectiles and others were not, that has no bearing on whether Defendants deployed tear gas indiscriminately into the crowd and without prior warning or orders to disperse. Commonality and typicality is established because all putative class members were exposed to Defendants' alleged unconstitutional actions.[7] *MIWON v. City of Los Angeles*, 246 F.R.D. 621, 631 (C.D. Cal.

---

[6] Class 1: *compare* Ex. 2 ¶¶ 5-7 *with* Ex. 69 ¶¶ 2-6, Ex. 98 ¶¶ 4-5; Class 2: *compare* Ex. 6 ¶¶ 4-8 *with* Ex. 89 ¶¶ 7-11, Ex. 95 ¶¶ 2-6, Ex. 93 ¶¶ 12-20, Ex. 107 ¶¶ 12-17; Class 3: *compare* Ex. 2 ¶¶ 10-11 *with* Ex. 88 ¶¶ 8-13, Ex. 92 ¶¶ 2-10; Class 4: *compare* Ex. 2 ¶¶ 12-14, Ex. 3 ¶¶ 11-13, Ex. 4 ¶¶ 11-13, Ex. 5 ¶¶ 12-18, Ex. 6 ¶¶ 9-13, Ex. 7 ¶¶ 4-5, Ex. 8 ¶¶ 5-9 *with* Ex. 69 ¶¶ 14-30, Ex. 88 ¶¶ 14-30, Ex. 89 ¶¶ 15-17, Ex. 90 ¶¶ 2-10, Ex. 92 ¶¶ 11-23, Ex. 93 ¶¶ 21-33, Ex. 94 ¶¶ 13-25, Ex. 95 ¶¶ 12-16, Ex. 98 ¶¶ 23-27; Class 5: *compare* Ex. 2 ¶¶ 15-27, Ex. 3 ¶¶ 21-37, Ex. 4 ¶¶ 21-37, Ex. 5 ¶¶ 27-35 *with* Ex. 90 ¶¶ 11-30, Ex. 91 ¶¶ 2-23, Ex. 92 ¶¶ 24-43.

[7] Defendants misunderstand First Amendment law when they argue that some Plaintiffs continued to protest so their speech was not chilled, and individualized inquiries would be required to examine if someone "left and never returned." Dkt. 113 at 9, 14. To start, Plaintiffs' claim is not only a retaliation claim, but that the Defendants stopped the First Amendment-protected activity that was occurring *during* the protests because they unlawfully dispersed peaceful assemblies with chemical weapons. *See* Dkt. 16 at 58-60. Regardless, retaliation claims utilize an objective standard: "[t]he harm must be of the type that would chill a person of ordinary firmness from continuing to engage in the protected speech." *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004). Most importantly, Defendants

2007); *Newberg*, § 22:71. And as described in Plaintiffs' motion, anything that requires a separate damages calculation could be determined after the liability determination. *See* Dkt. 91 at 19. Plaintiffs are seeking certification for liability purposes only. *Felps v. Mewbourne Oil Co., Inc.*, 336 F.R.D. 664, 678 (D.N.M. 2020) (noting the Tenth Circuit "has expressly recognized" certification of a class "for liability purposes only").

      Defendants argue that individual officers made their own judgments on when to deploy force. Dkt. 113 at 10; *see also id.* at 13. Not true, according to the testimony of the DPD Incident Commander and other DPD witnesses. Each of the direct force classes Plaintiffs have proposed in their motion for class certification involve a uniform decision created by, or authorized by, Commander Phelan and command staff, and thus involved no individualized determinations. *See* Dkt. 91 at 3-9. To start, the deployment of tear gas required authorization by a command officer. Ex. 110 at 35:22-37:1, 38:17-39:7; Ex. 108 at 29:23-30:9; Ex. 111 at 143:4-25. Phelan testified that as Incident Commander, he was authorized to make final decisions about how to respond to protests. Ex. 110 at 26:9-11, 27:11-19. He oversaw both DPD and outside agencies; he created and executed the Operations Plans, and while the Chief of Police would attend briefings, Phelan led those briefings. *Id.* at 29:23-24, 33:10-34:5, 41:9-19. Phelan was on the radio directing teams where to go and when to deploy gas. And, before Phelan's deposition on May 25, Plaintiffs believed that Lts. Williams and Pine ordered the use of force on Sherman and 14th; however, after Phelan's deposition, it became apparent that the orders came from Phelan himself.[8] *Id.* at 161:16-25. As the final policymaker during the protests, Phelan ordered or approved the uses of force at issue in each direct force class and did not tell officers to give warnings prior to

---

cannot seek to prevent class certification by arguing the merits of a First Amendment claim at this stage of the proceedings. These arguments are improper at this stage.

[8] Phelan can also be heard on the radio stating, "you're taking rocks and bottles, let's deploy some chemical agent at them please. Dump some gas on them." Ex. 112.

deploying gas. *Id.* at 155:11-156:2 (Class 1), 156:4-157:16, 160:5-14, 161:16-25 (Class 2). And, he knew "when officers were deployed, where they were deployed to, and what actions they took." Ex. 114 at 27:12-19. Accordingly, no individualized or "fact intensive" use of force determinations are necessary.[9] Instead, the answer to any of the common questions "would resolve an issue that is central to the validity of each one of the claims in one stroke." *Menocal v. GEO Grp., Inc.*, 320 F.R.D. 258, 264 (D. Colo. 2017), *aff'd*, 882 F.3d 905 (10th Cir. 2018). Further, while a merits inquiry is inappropriate at the class certification stage, it is well established that neither the use of force nor arresting protestors is lawful prior to an adequate warning and opportunity to disperse.[10] Accordingly, Plaintiffs satisfy the commonality, typicality, and predominance factors.[11]

### III. Plaintiffs Represent the Interests of The Classes.

Defendants argue, without citing any evidence, that conflicts of interest "are inevitable." Dkt. 113 at 11. Because Defendants offer no factual basis or legal authority to support its position that large class numbers will inevitably result in irreconcilable conflicts (which, in fact, is contrary to the purpose and use of class actions), the Court should not consider this argument. *See Morgan v. United Parcel Serv. (UPS), Inc.*, 2007 WL 4269050, at *1 (D. Colo. Nov. 29, 2007) (declining to consider "cursory, unsupported, or otherwise inadequately briefed arguments"); D.C.COLO.LCivR 7.1(d). Even if the Court were to consider it, each class has a proposed class representative(s), and, as stated, at this time there are no known conflicts between

---

[9] Abeyta referred to the force used at Sherman and 14th as "blanket use of force" that was deployed pursuant to an order and not any individualized fact determinations. *See* Ex. 111 at 142:5-144:11, 203:19-207:10.
[10] *E.g., Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008); *Edrei v. Maguire*, 892 F.3d 525, 541 (2d Cir. 2018); *Dellums v. Powell*, 566 F.2d 167, 184 (D.C. Cir. 1977); *Barham v. Ramsey*, 434 F.3d 565, 573 (D.C. Cir. 2006).
[11] Defendants also argue that class certification is improper "[d]ue to the individualized conduct at each different location on each different date and time, the force varied." Dkt. 113 at 13. But Plaintiffs are not seeking a single class that covers multiple incidents over multiple days. They have proposed separate classes, each of which concern single, discrete incidents that stand alone.

Plaintiffs and the proposed classes they represent. Plaintiffs' claims "are typical of those of the proposed class, and as such, they will directly benefit from a favorable resolution of the claims of the proposed class." *Lowery v. City of Albuquerque*, 273 F.R.D. 668, 685 (D.N.M. 2011).

Further, Defendants' unsupported contention that class certification is inappropriate in consolidated cases where other plaintiffs have not joined the motion for class certification has no merit. Dkt. 113 at 11-12. It is well established that a plaintiff may opt out of a class action litigation and bring a separate and individual claim. *See* Fed. R. Civ. P. 23(c)(2)(B); *Newberg on Class Actions* § 9.38 (5th ed.). But in order for a plaintiff to have the opportunity to opt out of a class, a class must first be certified. Accordingly, Plaintiffs had every right to move for class certification, despite other plaintiffs in the consolidated cases pursuing their own lawsuits.

### IV.   Plaintiffs Proposed Arrest Class Satisfies Rule 23's Requirements.

Defendants fail to present any arguments against the proposed arrest class, apart from arguing that it fails the predominance requirement because it will require a fact-intensive investigation related to the circumstances of each arrest. Thus, Defendants have conceded that the proposed arrest class satisfies the other Rule 23 factors.

Defendants' predominance argument ignores the facts and testimony of their own witnesses. Protestors who violated curfew were arrested *en masse*, using pre-printed summons/complaint forms. The statements of probable cause for the arrest class members were identical, and the probable cause statements contained all the information necessary that supported a person's arrest. Ex. 106 at 43:12-45:19, 46:22-49:22; Ex. 31. Defendants cannot, on the one hand, utilize a mass arrest approach such as the one conducted during the protests, and, on the other hand, claim that "a myriad of other factors likely drove each arrest decision." Dkt. 113 at 16. The City arrested protestors who were violating curfew, period. As to whether any of

8

the arrests were conducted specifically to target protestors, to the exclusion of those not engaged in protest, that goes to the merits of Plaintiffs' claims and is inappropriate at the class certification stage. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

## V. Defendants Do Not Meaningfully Challenge Predominance and Superiority.

Defendants ignore a fundamental part of Plaintiffs' classes: each class alleges a common policy or plan to use force indiscriminately on the crowd. Plaintiffs' classes are properly defined, and common questions predominate because they challenge a DPD policy or practice to which every proposed class member was exposed. *See Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1136-37 (9th Cir. 2016). Defendants contend that a class action is not the superior method of litigation given the individualized assessments required. Dkt. 113 at 17-18. But, as discussed above, individualized determinations, if any, do not predominate over common questions. Defendants do not rebut any of Plaintiffs' arguments concerning the fact that many potential plaintiffs would not and could not bring their own claims, and that inconsistent verdicts would result if class members are required to litigate their claims individually. Because Plaintiffs provide sound reasoning as to why proceeding as a class is the superior method, this Court should grant Plaintiffs' motion.

For the foregoing reasons, the Court should grant Plaintiff's motion for class certification.

|  | Respectfully submitted, |
|---|---|
|  | By: s/ Makeba Rutahindurwa |
| Elizabeth Wang, Loevy & Loevy | Makeba Rutahindurwa, Loevy & Loevy |
| 2060 Broadway, Ste. 460, Boulder, CO 80302 | 311 N. Aberdeen St., Chicago, IL 60607 |
| elizabethw@loevy.com; O: 720.328.5642 | makeba@loevy.com; O: 312.243.5900 |

## CERTIFICATE OF SERVICE

I, Makeba Rutahindurwa, an attorney, hereby certify that on June 9, 2021, I served via CM/ECF the foregoing Reply on all counsel of record.

s/ Makeba Rutahindurwa