IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Lead Civil Action No. 1:20-cv-01878-RBJ
*Consolidated with 1:20-cv-01992-RBJ-MEH and 1:20-cv-03155-RBJ*

BLACK LIVES MATTER 5280,
DR. APRYL ALEXANDER,
ELISABETH EPPS,
ASHLEE WEDGEWORTH,
AMANDA BLASINGAME,
PHILLIP ROTHLEIN,
ZACH PACKARD,
HOLLIS LYMAN,
CIDNEY FISK, and
STANFORD SMITH,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER,
JOHN AND JANE DOES 1-100,
JANE BOES 1-50,
DANIEL FELKINS in his individual capacity, and
DAVID ABEYTA in his individual capacity,

    Defendants.

## ORDER ON FITOURI PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### BACKGROUND

This case involves the allegedly unconstitutional use of force and unconstitutional arrests of individuals who peacefully protested the killing of George Floyd in late May and early June 2020. There are multiple groups of plaintiffs who bring claims against the City and County of Denver, particularly the Denver Police Department, as well as individual officers and government officials. One group, known as the "Fitouri plaintiffs," brought its claims as a putative class action. The Fitouri plaintiffs move to certify six different classes. ECF No. 91.

Defendants object. ECF No. 113. The Court held a hearing on the motion for class certification on June 25, 2021. ECF No. 123. After considering the parties' briefs, evidence, and arguments at the hearing, the motion is GRANTED in part and DENIED in part.

## ANALYSIS

Plaintiffs proposed six different classes—five are for "Direct Force," and one is the "Arrest Class." The Direct Force Classes are protesters who were at a specific place and time and against whom police used force (rubber bullets, tear gas, etc.). The Arrest Class is protestors who were arrested solely for violating the emergency curfew. More specifically, in their motion the Fitouri plaintiffs outlined their six proposed classes as follows:

- Direct Force Class 1: Protesters (1) present on May 28, 2020; (2) at N. Washington and E. Colfax Ave. or adjacent areas; (3) between 8:20 pm and 8:50 pm; (4) who did not pose an immediate or specific safety threat to police or others; and (5) who were shot by police with projectiles or inhaled aerosolized chemical agents.

- Direct Force Class 2: Protesters (1) present on May 28, 2020; (2) at E. 14th Ave. and Sherman St. or adjacent areas; (3) between 8:45 pm and 9:00 pm; (4) who did not pose an immediate or specific safety threat to police or others; and (5) who were shot by police with projectiles or inhaled aerosolized chemical agents.

- Direct Force Class 3: Protesters (1) present on May 30, 2020; (2) at the parking lot at the north intersection of 16th St. and Welton St. or adjacent areas; (3) between 4:40 pm and 4:55 pm; (4) who did not pose an immediate or specific safety threat to police or others; and (5) who were shot by police with projectiles or inhaled aerosolized chemical agents.

- Direct Force Class 4: Protesters (1) present on May 30, 2020; (2) at Lincoln St. and E. Colfax Ave. or adjacent areas; (3) between 6:00 pm and 8:00 pm; (4) who did not pose an immediate or specific safety threat to police or others; and (5) who were shot by police with projectiles or inhaled chemical aerosolized agents.

- <u>Direct Force Class 5:</u> Protesters (1) present on May 31, 2020; (2) at E. Colfax between Pennsylvania and Logan or adjacent areas; (3) between 9:30 pm and 9:45 pm; (4) who did not pose an immediate or specific safety threat to police or others; and (5) who were shot by police with projectiles or inhaled aerosolized chemical agents.
- <u>Arrest Class:</u> Protesters who (1) between May 30 and June 5, 2020; (2) were arrested for violation of D.R.M.C. 1-13 (emergency curfew) or D.R.M.C. 38-31(c) (failure to obey lawful order); (3) were not charged with any other violations; and (4) whose charges were dismissed.

### A. **Direct Force Classes**

In addition to meeting the explicit requirements of Rule 23, a party seeking to certify a class must satisfy certain threshold requirements. The most salient of these is ascertainability. A class is sufficiently ascertainable if "it is administratively feasible for the court to determine whether a particular individual is a member." *Davoll v. Webb*, 160 F.R.D. 142, 144 (D. Colo. 1995) (citation omitted). I find that plaintiffs' proposed Direct Force Classes fail because they are not sufficiently ascertainable.

As I stated in the hearing on June 25, 2021, I cannot think of how putative class members would be identified as being present at the specific intersections on the specific dates and times without individualized factual inquiries. Further, to establish that each putative class member did not pose a specific or immediate threat to the safety of police officers or others—such as by throwing rocks or shaking fences—would also require individualized factual inquiries. Plaintiffs' counsel argued that just as named plaintiffs had produced affidavits asserting that they were present at the protests and had not engaged in any unlawful behavior, other putative class members could sign similar affidavits. Setting aside whether self-reported affidavits would be sufficient, the Fitouri plaintiffs have not established how they would identify potential class members to give them a chance to provide such affidavits. Plaintiffs' counsel suggested that

they could provide a notice mechanism, and that there are ways to identify whether people were or were not at a specific location using cell phone data and other data. Cell phone data could establish location once a person has been identified as potentially being a class member, but this still does not explain how potential class members could be found and notified in the first place.

In their motion the Fitouri plaintiffs argue that, in the alternative to certifying the Direct Force Classes as currently defined, the Court could modify the class definitions. The first proposed modification is to change the language of "who did not pose a safety threat" to "who were not throwing objects at officers." This does not solve the problem. Although it narrows the scope slightly, this definition still requires a factual inquiry to confirm each protester did not throw objects at officers, and it also potentially leaves within the proposed class individuals who engaged in *other* unsafe behavior. The second proposed modification is to remove the language regarding protestor conduct altogether. While this would make it easier to ascertain class members, it just kicks the question of each protestor's behavior down the road to commonality, another class certification requirement. The Court would still need to undertake an individualized factual inquiry to determine whether an officer's use of force against a given protester was justified.

Any way I look at it, it seems that ascertaining potential members for the Direct Force Classes would pose a substantial administrative burden on this Court. Because plaintiffs have not met this threshold requirement, I need not consider whether they meet the Rule 23(a) requirements. The motion for class certification is DENIED as to all five Direct Force Classes.

### B. Arrest Class

Unlike for the Direct Force Classes, I find that the Fitouri plaintiffs have established the threshold requirement of ascertainability for the proposed Arrest Class. Plaintiffs have pointed me to the Summons & Complaints for all individuals who would be in this class. The Court has

the names and other identifying information for all putative class members—they are thus already ascertained. *See* ECF Nos. 91-32, 91-33, 91-34, and 91-35 (plaintiffs' Exhibit 31).

A court may certify a class if all four "prerequisites" listed in Rule 23(a) and at least one of the additional factors set forth in Rule 23(b) have been met. I find that the Fitouri plaintiffs have established the Rule 23(a) prerequisites for the Arrest Class, and that they also meet the requirements of Rule 23(b)(3).

(1) Numerosity. The Court must find that the class is so numerous that joinder of all members is impractical. Though the exact number of class members has not been determined, counsel represents that the number is nearly three hundred. ECF No. 91 at 11. Defendants do not contest numerosity. ECF No. 113 at 8 n.7. Thus, the numerosity requirement is satisfied.

(2) Common Questions. The Court must find that there are questions of law or fact common to the class. Rule 23(a)(2) "requires only a single question of law or fact common to the entire class." *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). I find that there are numerous questions of fact common to all putative members of the Arrest Class, including the curfew ordinance and "failure to obey orders" ordinance under which protesters were charged; the identical wording of the probable cause statements; and the similar treatment of protesters by police, namely taking them to a local precinct and detaining them for some period of time. There are also common legal questions across class members, including whether the curfew order was facially constitutional; whether officers enforced the curfew only against protesters and not against other civilians out past curfew; whether any discriminatory enforcement was done pursuant to an official city policy; and whether the curfew arrests violated class members' First Amendment rights and rights to be free from unreasonable seizure. The commonality requirement is thus satisfied.

(3) Typicality. The Court must find that the claims or defenses of the representative parties are typical of the claims or defenses of the class. "[T]ypicality exists where, as here, all

class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *Stricklin*, 594 F.3d at 1199. The allegations by the City against the named plaintiffs in their Summons and Complaint forms are identical to those of other unnamed plaintiffs. Similarly, the allegations by a given named Arrest Class plaintiff against defendants—that the curfew order was enforced against them discriminatorily and in violation of their First and Fourth/Fourteenth Amendment rights—are identical. I find that named plaintiffs' claims are typical of the entire Arrest Class, and thus this requirement is met.

(4) <u>Representative</u>. The Court must find that the representative parties will fairly and adequately protect the interests of the class. This means, "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002). Defendants' counsel argued in the hearing that there may be conflicts of interest among class members if the evidence shows some members were not complying with dispersal orders or interfered with police officers' ability to deal with unlawful behavior. The Court finds this alleged conflict speculative. Furthermore, as plaintiffs pointed out, such protesters would likely have been arrested on different charges than merely the curfew violation. The Court thus does not find any apparent conflicts of interest. I also find that named plaintiffs and their counsel will prosecute this action vigorously on behalf of the class. They have already done so, as evinced by the thoughtful affidavits each named plaintiff has submitted, the care class counsel has taken in preparing the briefs, and the mounds of evidence they have sought to obtain through discovery and submitted to the Court in support of their motion. I thus conclude that this requirement is met.

With respect to the Rule 23(b) factors, the Fitouri plaintiffs seek to certify a class under Rule 23(b)(3). To certify a Rule 23(b)(3) class the court must find that

> [T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to

> other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> > (A) the class members interest in individually controlling the prosecution or defense of separate actions;
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> > (D) the likely difficulties in managing a class action.

The Fitouri plaintiffs have met these requirements as well. The common questions of fact and law that I discussed above predominate over any potential questions that would affect individual members, of which there are few (such as the exact date and time of each class member's arrest or the identity of the arresting officers).

Furthermore, a class action is superior to individual lawsuits for adjudicating the Arrest Class claims because the majority of evidence required to prove each claim is identical—such as the language of the Summons and Complaint forms, the Denver Mayor's order establishing emergency curfew, the internal police communications directing officers to only arrest protestors, and testimony from the handful of arresting officers. To repeat this evidence in hundreds of lawsuits would be burdensome and inefficient, and it could lead to inconsistent outcomes across plaintiffs. In addition, as discussed during the hearing, the damages for any given Arrest Class member would be small. Each potential plaintiff would thus have little incentive to bring his or her own lawsuit because of the high expense of litigation compared to any possible return. Justice is best served by permitting these potential plaintiffs to aggregate their claims and to determine liability and damages in a single suit with a single set of attorneys.

I find that the Fitouri plaintiffs have met all the requirements under Rule 23 as to the Arrest Class. I therefore GRANT the Fitouri plaintiffs' motion as to this class.

## ORDER

The Court GRANTS in part and DENIES in part the Fitouri plaintiff's motion as follows:

1. The Court does not certify any of the five Direct Force Classes.

2. The Court certifies the Arrest Class. Its scope is defined as follows:

   Those persons who were present at or during the protests in downtown Denver, Colorado, from May 30, 2020 through June 5, 2020, who were arrested for violation of emergency curfew (D.R.M.C. 1-13), and in some cases were also arrested on an accompanying charge of failure to obey a lawful order (D.R.M.C. 38-31(c)), who were taken into police custody and detained for some period of time,[1] but who were not charged with any other violations, and whose charges were dismissed.

3. The Court appoints Elizabeth Wang and Makeba Rutahindurwa of Loevy & Loevy as class counsel.

4. The Court requests that the parties submit a joint notice to potential class members by July 19, 2021. If the parties are unable to agree on a joint notice, they are instructed to inform the Court by that same date.

DATED this 28th day of June, 2021.

BY THE COURT:

*[signature: Brooke Jackson]*

_____
R. Brooke Jackson
United States District Judge

---

[1] During the class certification hearing plaintiffs' counsel indicated that every member of the Arrest Class was actually taken into custody, brought to a local police precinct, and detained for some amount of time (typically between eighteen and thirty-six hours). The Court therefore includes this in the Arrest Class definition.