IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT COURT OF COLORADO

Civil Action Nos. 1:20-cv-01878-RBJ & 1:20-cv-01922-RBJ-MEH (consolidated)

ELISABETH EPPS, *et al.*

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

Defendants

---

## FITOURI PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

---

Now come the Fitouri Plaintiffs, through their counsel, and respectfully move this Court for entry of an order granting them leave to file the attached Second Amended Complaint. In support of their motion, Plaintiffs state as follows:

### Certificate of Conferral

Pursuant to D.C.COLO.LCivR. 7.1(a), Plaintiffs state that they conferred with Defendants about their proposed amended complaint in the following manner: Plaintiffs sent a draft redlined and clean copy of the Second Amended Complaint to Defendants on August 13, 2021, asking whether Defendants have any objection to a motion for leave to file it. Defendants responded via email on August 16, 2021 that they do not object to (1) changing Plaintiff Andrew Sannier's name to "Claire Sannier"—her present legal name, or (2) amending the class allegations so that they are consistent with the class certified by the Court. However, they object to (3) the naming of individual Defendants. Defendants did not state the basis for their objection.

1

**Background**

The Fitouri Plaintiffs filed their complaint on July 1, 2020. Dkt. 1 (No. 1-20-cv-0199-RBJ-MEH).  They filed an amended complaint on July 24, 2020, pursuant to Federal Rule of Civil Procedure 15(a)(1). Dkt. 19 (No. 1:20-cv-01922-RBJ-MEH).

Plaintiffs originally sued Doe Defendant Officers whom they believed were the agents, servants, and/or employees of the Denver Police Department (DPD) or officers of other jurisdictions who were acting with the authorization of the DPD. Plaintiffs did not know the names of the Defendant Officers. *See* Dkt. 19.

Throughout the course of discovery, Plaintiffs have been diligently working to identify the police officers responsible for violating their constitutional rights, including by propounding discovery requests asking Defendant City to identify the officers present at specific locations, dates, and times, and even providing screenshots from body-worn camera (BWC) video and other video in the hopes Defendant City would be able to better identify its own officers. Defendant City objected to Plaintiffs' interrogatories seeking the identities of the officers. Plaintiffs sought assistance from the Court with this discovery dispute. Dkt. 105.

During the hearing on the discovery dispute on May 20, 2021, the Court ordered the Defendant City to adequately respond to Plaintiffs' interrogatories asking for the identities officers at specific, dates, times and locations where excessive force was used. Dkt. 106. On June 11, 2021, Defendant City submitted a supplemental response providing identities for a few of the officers but failing to identify most of the others whose identities Plaintiff sought. Ex. 1 (Def. City's Supp. Resp. to Fitouri Pls.' Interrogatories).

Thus, in order to identify the officers responsible for using force on Plaintiffs, including the identities of supervisory officers who directly participated in or authorized subordinate

officers to use force and disperse protestors from their peaceful assemblies, Plaintiffs had to obtain the information through additional discovery, such as depositions of multiple officers and further review of video.

Plaintiff had to depose each of the supervisory officers who were present for specific incidents during the protest in order to determine which of them ordered, approved, directed, or authorized the use of force on Plaintiffs and other protestors. The depositions of these supervisory officers took place on these dates: Lieutenant Michael O'Donnell, August 4, 2021; Lieutenant Kevin Carroll, July 27, 2021; Lieutenant James D. Williams, June 24, 2021; Lieutenant Thomas Pine, June 22, 2021; Lieutenant Vincent Porter, June 22, 2021; Chief Pazen, June 17, 2021; Commander Patrick Phelan, May 25, 2021; Sergeant David Abeyta, May 21, 2021; Lieutenant Matthew Canino, April 28, 2021. Ex. 2 (cover sheets of these depositions). The deponents were able to provide at least some of the information that the City was unwilling to provide in an interrogatory response. This includes information such as the fact that there was a DPD sergeant at the intersection of Washington and Colfax at 8:30 p.m. on May 31, 2020, which is when Plaintiff Joe Deras was hit with three separate projectiles. Ex. 3 (Porter Dep.) at 86-89.

With respect to the individual officers Plaintiffs have identified as shooting Plaintiff Youssef Amghar with pepper balls on May 30, 2020—Defendants Eberharter, Cunningham, and Sampson—Defendant City had refused to identify them. It was only through depositions taken by Plaintiffs that they learned that it was DPD and Aurora police officers at the intersection of Lincoln and Colfax between 6:00 and 8:00 p.m. and that Aurora officers did not have any pepper ball guns, but DPD officers did. Ex. 4 (Shaker Dep.) at 18-19; Ex. 5 (Cunningham Dep.) at 65-66. After discovering this information, Plaintiffs still had to identify the officers involved. The BWC video shows that the four officers standing in the skirmish line closest to Plaintiff Amghar

were DPD Corporal Eberharter (yellow arrow), DPD Officer Espinosa (red arrow), DPD Officer

Sampson (purple arrow), and DPD Officer Cunningham (green arrow) (Plaintiff Amghar is

circled in blue in the second screenshot):





Plaintiffs have not yet deposed Eberharter, but his deposition is scheduled for August 24, 2021. At their depositions, Cunningham and Sampson denied shooting Plaintiff Amghar. Ex. 5 (Cunningham Dep.) at 103-05; Ex. 6 (Sampson Dep.) at 70-74, 155-57. But the body-worn camera video shows otherwise (Plaintiff Amghar is circled in blue):



Sampson BWC



Cunningham BWC

Likewise, the BWC of Aurora Captain Stephen Redfearn shows Corporal Eberharter (yellow arrow) apparently shooting Plaintiff Amghar (circled in blue):



Eberharter was either not wearing a BWC or he did not have it on, because the City has not provided any BWC from Eberharter. On the basis of the discovery obtained by Plaintiffs, Plaintiffs seek to name Eberharter, Sampson, and Cunningham as the individual officers who

shot Plaintiff Amghar on May 30, 2020. (After deposing Officer Espinosa on July 27, 2021, and reviewing his BWC video and other video, it does not appear to Plaintiffs that he is one of the officers who shot Amghar.)

Similarly, Plaintiffs had to conduct extensive discovery simply to determine which officer threw a flashbang grenade into the crowd of protestors at Lincoln and Colfax on May 30, 2020, which hit Plaintiff Fitouri's foot and injured Plaintiff Deras's eardrum. Plaintiffs learned from depositions that Aurora officers did not have flashbang grenades at that intersection at that time. Ex. 4 (Shaker Dep.) at 19. This meant that only DPD officers had flashbang grenades. But Plaintiffs still had to determine *which* DPD officers threw the flashbang grenade. Lieutenant Pine testified at his deposition that officers in DPD Metro/SWAT had flashbang grenades. Ex. 9 (Pine Dep.) at 58. According to the City's interrogatory response, Sergeant Martinez and Corporal Eberharter (both DPD Metro/SWAT officers) "were at the specified location on May 30, 2020, during the specified time period." Ex. 1 at 12. Martinez and Eberharter are also seen on BWC video throwing tear gas canisters around that time period:





Thus, based on the discovery Plaintiffs have obtained through depositions and review of

video, Plaintiffs' proposed second amended complaint alleges that either Defendant Martinez or

Eberharter threw the flashbang grenade that injured Plaintiffs Deras and Fitouri.

### Argument

In light of the material obtained during discovery, the Fitouri Plaintiffs seek leave to file a

Second Amended Complaint to name certain Defendant Officers that Plaintiffs have identified as

having direct personal involvement in the constitutional violations against Plaintiffs. These

proposed changes are opposed by Defendants. Defendants do not oppose Plaintiff's streamlining

of the class allegations to reflect the class the Court certified and the change in Plaintiff Sannier's

name. The redlined and clean versions are attached pursuant to D.C.COLO.LCivR 15.1, as

Exhibits 7 and 8.

Federal Rule of Civil Procedure 15 instructs courts to "freely give leave when justice so

requires." "Refusing leave to amend is generally only justified upon a showing of undue delay,

undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies

by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)). None of these bases for refusing leave to amend applies here, and Defendants have declined to specify the basis for partially opposing the motion for leave to amend.

There is no undue prejudice to Defendants, undue delay, bad faith or dilatory motive. Plaintiffs' proposed new allegations are based on the same core set of facts as their existing claims. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) (reiterating that "the district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim"); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) ("The purpose of [Rule 15(a)] is to provide litigants 'the opportunity for each claim to be decided on its merits rather than on procedural niceties."). Plaintiffs are simply seeking to name the individual Defendants who have now been identified through discovery.

Nor is there any futility to the amendments sought. "The futility question is 'functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright* 186 F.3d 1216, 1218 (10th Cir. 1999). With respect to the individual officers named in the proposed amended complaint, the complaint contains "'enough facts to state a claim to relief that is plausible on its face.'" *ClearCapital.com, Inc. v. Computershare, Inc.*, 2019 WL 1573300, at *2 (D. Colo.) (Jackson, J.) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)). Under the liberal Rule 15(a) standard, Plaintiffs only have to demonstrate that their proposed additional allegations are not "clearly frivolous or legally insufficient on [their] face … If the proposed claim sets forth facts and circumstances which may entitle the plaintiff to relief, then futility is not a proper basis on which to deny the amendment." *Gallegos v. Brandeis Sch*. 189 F.R.D. 256, 259 (E.D.N.Y. 1999) (internal quotation marks

omitted). The allegations that Officers Cunningham, Sampson, and Eberharter shot Plaintiff Amghar without justification and while they were standing on the sidewalk with their hands up would survive a motion to dismiss. *See* Ex. 7 ¶¶ 257, 261, 264, 266. (Indeed, based on the video and Plaintiff Amghar's testimony that they were shot by multiple officers, the allegations against these officers would survive summary judgment.) Plaintiffs' allegations against Sergeant Martinez and Corporal Eberharter for throwing tear gas canisters into the crowd of protestors without warning would also survive a motion to dismiss. Ex. 7 ¶¶ 143-45. Likewise, Plaintiffs' allegation that it was either Sergeant Martinez or Corporal Eberharter that threw a flashbang grenade that hit Plaintiff Fitouri's foot and injured Plaintiff Deras's eardrum would survive a motion to dismiss. Ex. 7 ¶ 138.

Similarly, the allegations against the supervisory officers, Ex. 7 ¶¶ 108-10, 113-14, 133, 146-48, 153-54, 166-67, 180-83, 219, 225-26, 243-44, 249, 284, 288, 292, 297, 299, 306, 309, 391, 399, 407, 414, are not futile and would survive a motion to dismiss. Plaintiffs have alleged direct personal involvement on the part of each of the DPD supervisors. *Id. See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (plaintiff must show an "affirmative link" between the supervisor and the constitutional violation, which requires personal involvement, causation, and culpable state of mind); *Cox v. Glanz*, 800 F.3d 1231, 1248-49 (10th Cir. 2015).

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for leave to file the proposed Second Amended Complaint. Plaintiffs "ought to be afforded an opportunity to test [their] claim on the merits" if "the underlying facts or circumstances relied

upon by a plaintiff may be a proper subject of relief[.]" *Foman v. Davis*, 371 U.S. 178, 182

(1962).

Respectfully submitted,

/s/ Elizabeth Wang

Elizabeth Wang                     Makeba Rutahindurwa
LOEVY & LOEVY                      LOEVY & LOEVY
2060 Broadway, Suite 460           311 N. Aberdeen St.
Boulder, CO 80302                  Chicago, IL 60607
O: 720.328.5642                    O: 312.243.5900
elizabethw@loevy.com               makeba@loevy.com
*Counsel for Plaintiffs*

### Certificate of Service

I, Elizabeth Wang, an attorney, hereby certify that on August 17, 2021, I served via CM/ECF the foregoing Motion, on all counsel of record.

/s/ Elizabeth Wang
One of Plaintiffs' Attorneys