IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01878-RBJ
(consolidated with 20-cv-01922-RBJ-MEH)

ELISABETH EPPS, *et al.*,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

    Defendants.

---

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO RECONSIDER DISCOVERY ORDER

---

Defendants, City and County of Denver, Chief of Police Paul Pazen, and Anthony Tak, through their undersigned counsel, hereby respectfully submit this Response to Plaintiffs' Motion to Reconsider Discovery Order, as follows:

### INTRODUCTION

Plaintiffs filed their Motion to Reconsider Discovery Order ("Plaintiffs' Motion") on July 27, 2021, seeking reconsideration from this Court of this Court's May 20, 2021, decision denying Plaintiffs' demand for unredacted interview memos prepared by the Office of Independent Monitor ("OIM") of the City and County of Denver ("Denver"). [ECF 135]. Defendants respectfully submit their Response to Plaintiffs' Motion.

Plaintiffs advance no legitimate basis for reconsideration of this Court's May 20, 2021, decision. Plaintiffs do not argue any change in applicable deliberative process law

occurred. Instead, Plaintiffs' justification for reconsideration is based on the deposition testimony of former Independent Monitor, Nicholas Mitchell, given during his deposition on June 25, 2021. Initially, the notion Mr. Mitchell's deposition testimony represents "new evidence previously unavailable" is inaccurate. On May 20, 2021, Plaintiffs chose to raise the deliberative process issue before this Court. Nothing prevented Plaintiffs from deposing Mr. Mitchell prior to the discovery dispute hearing. Plaintiffs' litigation strategy and decision to raise the issue earlier without the benefit of Mr. Mitchell's deposition is not a legitimate basis for reconsideration.

Further, Denver appropriately redacted the memos. Plaintiffs do not correctly recite or apply the deliberative process privilege. One of the central purposes of the deliberative process privilege is to allow candid internal government discussions before decisions are made. Here, senior leaders of the Denver Police Department ("DPD"), and others, were interviewed by OIM and provided their frank assessments and opinions to allow OIM to make its recommendations to DPD concerning policy and procedure improvements from the lessons learned. Allowing Plaintiffs access to such internal confidential discussions is inappropriate and would serve to undermine the fundamental purpose of the deliberate process privilege.

Moreover, Plaintiffs had every opportunity to ask witnesses during depositions the same questions asked by the OIM during its interviews. Instead, however, Plaintiffs asked questions about what each witness remembered telling the OIM. Denver would not have objected on deliberative process grounds to any question asking a witness what lessons were learned from the protests or anything else asked them by OIM.

Finally, Plaintiffs' claim the unredacted memos are central to their claims is illusory. Plaintiffs must prove specific violations of their constitutional rights. Nothing in the OIM report or the memos provides any direct evidence that could be used to meet Plaintiffs' burden of proof as Mr. Mitchell testified unequivocally during his deposition.

## ARGUMENT

### I. PLAINTIFFS DEMONSTRATE NO LEGITIMATE BASIS FOR RECONSIDERATION

While Plaintiffs are correct this Court possesses the discretion to reconsider its prior ruling, such discretion should only be exercised in specific circumstances. "Notwithstanding the district court's broad discretion to alter its interlocutory orders, the motion to reconsider 'is not at the disposal of parties who want to rehash old arguments.'" ***Nat'. Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.,*** 115 F.Supp.2d 1250, 1256 (D. Colo. 2000) (quoting ***Young v. Murphy,*** 161 F.3d 61, 62 (N.D. Ill. 1995)). "Such motions may not 'merely advance[] new arguments' or provide 'supporting facts which were available at the time of the original motion' ***Servants of the Paraclete v. Does,*** 204 F.3d 1005, 1012 (10th Cir. 2000). Instead, the court considers whether reconsideration is appropriate due to an intervening change in the controlling law, new evidence previously unavailable, or the need to correct a legal error." ***LNV Corp. v. Hook,*** 14-cv-00955-RM-CBS, 2015 U.S. Dist. LEXIS 143711 at *4 (D. Colo. Oct. 22, 2015). "Even under this lower standard, '[a] motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence.'" ***Hampden Auto Body Co. v. Auto-Owners Ins. Co.,*** 17-cv-1894-WJM-SKC, 2010 U.S. Dist. LEXIS

17552 at *5-6 (D. Colo. Feb. 4, 2020) (quoting **Sanchez v. Hartley,** 13-cv-1945-WJM-CBS, 2014 U.S. Dist. LEXIS 138680 at *2 (D. Colo. Sept. 30, 2014)).

### A. LEGAL PRINCIPLES OF THE DELIBERATIVE PROCESS PRIVILEGE

Both the United States District Court for the District of Colorado and other federal courts have recognized a federal common law deliberative process privilege. A Magistrate Judge from this District has specifically concluded "[f]ederal common law recognizes the deliberative process privilege." **EEOC v. Albertson's LLC,** 06-cv-01273-CMA-BNB, 2008 U.S. Dist. LEXIS 85136 at *2 (D. Colo. Nov. 12, 2008) (Boland, M.J.). *See also* **North Pacifica, LLC,** 274 F.Supp.2d 1118, 1120 (N.D. Cal. 2003) (concluding federal common law recognizes the deliberative process privilege). Federal courts utilize the Freedom of Information Act ("FOIA") exception for deliberative process documents including documents reflecting advisory opinions and deliberations comprising the process by which government formulates decisions and policies as providing content for the privilege. *See* 5 U.S.C. § 522(b). The deliberative process privilege has long been recognized by the Supreme Court and other federal courts. *See, e.g.,* **United States v. Fish & Wildlife Serv. v. Sierra Club, Inc.,** 131 S.Ct. 777, 785-86 (2001); **SEC v. Nacchio,** 05-cv-00480-MSK-CBS, 2009 U.S. LEXIS 8365 at *10 (D. Colo. Jan. 29, 2009) (Shaffer, M.J.) ("While the deliberative process privilege arises most frequently in the context of litigation under the Freedom of Information Act, 5 U.S.C. § 522(b)(5), the privilege has wider applicability.").

The deliberative process privilege applies to pre-decisional materials that are part of the give and take by which public decisions and recommendations are made. **Dept.**

4

*of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8-9 (2001); *Casad v. U.S. Dept. of Health & Human Servs.,* 301 F.3d 1247, 1252-53 (10th Cir. 2002); *City of Colorado Springs v. White,* 967 P.2d 1042, 1051 (Colo. 1998). The deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Klamath Water,* 532 U.S. at 1065-66 (citing *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975) (noting those that expect public dissemination of their remarks may well temper candor with a concern of appearances to the decision-making process)). To fall within the deliberative process privilege, documents or testimony must be pre-decisional. *Nacchio,* 2009 WL 211511 at *6; *Trentadue v. Integrity Comm.,* 501 F.3d 1225, 1227 (10th Cir. 2007).

Factual information is not privileged; however, if factual material is so "inextricably intertwined with the deliberative sections of the documents that its disclosure would inevitably reveal the government's deliberations" the privilege applies. *White,* 967 P.2d at 1052 (citing *EPA v. Mink,* 410 U.S. 73, 89 (1973)).; *In re Sealed Case,* 121 F.3d 729, 737 (D.C. Cir. 1997); *Wolfe v. Dept. of Health & Human Servs.,* 839 F.2d 768, 773 (D.C. Cir. 1997). "While the fact/opinion distinction is helpful in determining what is privileged, courts should not 'mechanically apply' the test in every case." *White,* 967 P.2d at 1052; *Schell v. Dept. of Health & Human Servs.,* 843 F.2d 933, 940 (6th Cir. 1988) (noting the fact/opinion distinction "should not serve as a talismanic incantation in every case."). Material is pre-decisional and deliberative and must be protected when the information is so candid and personal in nature that public disclosure is likely to stifle honest and frank

5

communication with the agency. ***Coastal States Gas Corp. v. Dept. of Energy,*** 617 F.2d 854, 886 (D.C. Cir. 1980); ***White,*** 967 P.2d at 1052 (employees' opinions as to the strengths and weaknesses of the industrial training division and its administrator were used to assist the decision-making process and privileged); ***In re Sealed Case,*** 121 F.3d at 737 (nothing the purpose of the privilege is to "prevent injury to the quality of agency decisions 'by allowing government officials freedom to debate alternative approaches in private.'"; citation omitted). "The key feature of a privileged document is the making of a recommendation, the statement of an opinion about the issues underlying the decision to be made, or the 'give-and-take' of the consultative process." ***Mohammed v. Holder,*** 07-cv-02697-MSK-BNB, 2014 U.S. Dist. LEXIS 35297, at *15-16 (D. Colo. Mar. 17, 2014); ***Confidential Informant 59-05071 v. U.S.,*** 108 Fed. Cl. 121, 135 (Fed. Cl. 2012).

### B.  INVESTIGATIONS OF THE OFFICE OF THE INDEPENDENT MONITOR ARE SUBJECT TO THE DELIBERATIVE PROCESS PRIVILEGE

OIM is specifically subject to the deliberative process privilege. Denver's Revised Municipal Code, Chapter 2 establishes the charter for the OIM and operating documents. Article XVIII, § 2-376(c) provides "[t]he monitor's office, the board, and all persons who participate in the department of safety, police, sheriff, or fire department's investigative and disciplinary processes are part of the city's deliberative process regarding investigative and disciplinary procedures for personnel. Furthermore, all deliberations and recommendations learned by any of those persons or groups during the exercise of their duties shall be protected by the deliberative process privilege. For purposes of this subjection (c), 'deliberative process privilege' has the same meaning as under Colorado law." *See* Denver Muni Ord 730-04, § 1, 10-4-04; 29-19, § 4 (Eff. 2-19-19).

## C.  PLAINTIFFS' INAPPROPRIATELY ATTEMPT TO NARROW THE SCOPE OF THE DELIBERATIVE PROCESS PRIVILEGE

Plaintiffs' Motion offers an incorrect, overly narrow interpretation of the deliberate process privilege and then mischaracterizes and/or dismisses the Denver's articulation of an important aspect of the deliberative process privilege.  [*See* Plaintiffs' Motion, at 5-12]. Plaintiffs' articulation of the scope of the deliberative process privilege ignores part of the content protected by the privilege is opinion information provided by the interviewees as part of the deliberation process.  Defendants request this Court review all the precedent cited in Section B above concerning the actual scope of the deliberative process privilege. However, the following two quotations underscore Defendants' point:

> To fall within the privilege, documents must be both "pre-decisional" and "deliberative."  "Pre-decisional" means that they were created prior to the adoption of an official agency policy or position on the matter in question, rather than being post-decisional explanations for the decision. "Deliberative" means that the documents were used to make recommendations or express opinions on legal or policy matters, and that the documents were created specifically for use during a decision-making process.  On the other hand, documents that simply recite factual information, summarize past events, or report on an investigation are not privileged unless the selection of the information reveals governmental decision-making.  The key feature of a privileged document is the making of a recommendation, the statement of an opinion about the issues underlying the decision to be made, or the "give-and-take" of the consultative process.

*Mohammed,* 2014 U.S. Dist. LEXIS 35297 at *15-16 (citations omitted).

> Finally, in addition to assessing whether the material is predecisional and deliberative, and in order to determine if disclosure of the material is likely to adversely affect the purposes of the privilege, courts inquire whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency.  As a consequence, the deliberative process privilege typically covers recommendations, advisory opinions, draft documents,

7

proposals, suggestions, and other subjective documents that reflect the personal opinions of the writer rather than the policy of the agency.

*White,* 967 P.2d at 1052-53 (citations and internal quotation marks omitted).

Thus, the deliberative process privilege applies to the subjective, personal opinions of the interviewees on the issues underlying the OIM report. It also applies to recommendations made to OIM by the interviewees. Plaintiffs' contention opinion information learned from the Chief of Police, the Deputy Chief of Police, a Division Chief of Police, the Incident Commander who oversaw the protests response, and other command officers of DPD did not form the basis of OIM's recommendations in its report is wrong. Ultimately, for OIM to create its report and recommendations it needed the ability to discuss with DPD decision-makers their candid and frank assessments of what occurred during the protests. Such communications, as reflected in the OIM memos, are protected by the deliberative process privilege.

### D. FORMER INDEPENDENT MONITOR NICHOLAS MITCHELL WAS NOT INVOLVED IN THE REDACTIONS OF THE MEMORANDA AND LAST REVIEWED THEM EIGHT MONTHS PRIOR TO HIS DEPOSITION

Nicholas Mitchell was formerly the Independent Monitor who resigned in December 2020. [*See* Deposition of Nicholas Mitchell, at 8:22-9:4, Exh. A]. As stated in his deposition, Mr. Mitchell last reviewed the unredacted memoranda in the Fall of 2020, most likely in October 2020. [*See* Mitchell Dep., at 144:7-13, Exh. A]. Mr. Mitchell was not involved in the review of the memos for the purpose of making any redactions. [*See* Mitchell Dep., at 144:14-17, Exh. A]. Mr. Mitchell also understands the deliberative process privilege is one asserted by Denver and is a privilege belonging to the City and not Mr. Mitchell. [*See* Mitchell Dep., at 144:18-145:8, Exh. A]. Mr. Mitchell's deposition

8

was conducted on June 25, 2021.  [*See* Mitchell Dep., at Cover, Exh. A].  As a result, Mr. Mitchell last reviewed an unredacted memo eight months or more prior to his deposition.

The eight month length of time from when Mr. Mitchell last reviewed unredacted memos and his memory of the contents is not, and cannot be, dispositive concerning the propriety of Denver's assertion of the deliberate process privilege.  Mr. Mitchell does not determine whether Denver should assert the deliberative process privilege and/or how such an assertion should be made.  Instead, it is up to counsel for Denver to determine the propriety of the assertion of the privilege and to redact the memos consistently with counsel's analysis and understanding of applicable deliberative process privilege law.  That is what occurred here.  Mr. Mitchell's opinions about what is underneath the redactions based on his own human memory from eight months previously is inapposite.

### F.  THE DELIBERATIVE PROCESS PRIVILEGE APPLIES TO THE REDACTED INFORMATION FROM THE OIM MEMOS

First, at the outset of each of the memos at issue, the memo specifically and unequivocally states the memo summarizes the interviewers' thought processes.  As an example, the first paragraph of the memo for Deputy Chief of Police Barb Archer states:

> On September 3, 2020, Office of the Independent Monitor ("OIM") Nicholas E. Mitchell and Deputy Monitor Kevin Strom interviewed Denver Police Department ("DPD") Deputy Chief Barb Archer. It was an in-person interview conducted in the DPD's headquarters building.  The interview was not recorded, ***and this memo summarizes the interviewers' thoughts and mental impressions of that interview***.  This memo was prepared by Kevin Strom with feedback from Mr. Mitchell.

[*See* Archer Memo, 9/4/20, Pl. Exh. 1 (ECF 135-1) (emphasis added)].  All the other OIM memos contain identical language.  [*See, e.g.,* Canino Memo, 9/2/20, Pl. Exh. 5 (ECF

9

135-5); Coppedge Memo, 9/9/20, Pl. Exh. 6 (ECF 135-6)]. Every OIM memo indicates the interviewers' thoughts and mental impressions are contained in the memos.

Second, OIM's role in investigating the police response to the protests and offering recommendations to the City, the Department of Safety, and DPD falls squarely within the scope of the privilege. The OIM's investigation reviewed and analyzed the response to the protests and evaluated the response in connection with best law enforcement practices. OIM offered recommendations to DPD for changes to some policies and practices in the event of future protests. OIM interviewed senior leaders of DPD to obtain information about what occurred during the protests, but also solicited these senior leaders' personal, subjective opinions about the response.

Third, the redacted information in the OIM memos falls within the scope of the deliberate process privilege as recognized by this Court and other federal courts. The redactions in the OIM memos fall into the following four categories: (1) the thoughts and mental impressions of the interviewers; (2) the subjective, personal opinions of the interviewees; (3) candid and frank assessments, opinions, and recommendations of the interviewees; and (4) factual information redacted because it was inextricably intertwined with one of the other categories of redacted information and could not be separated from it.[1] Counsel reviewed the OIM memos and redacted information falling into the above

---

[1] In the discussion in Section B above, Defendants cited precedent holding factual information inextricably intertwined with deliberative sections of a document are also appropriately redacted. *See, e.g.,* **In re Sealed Case,** 839 F.2d at 737 ("The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its

categories. Most of the redactions fall within categories two and three and because of the nature of the memos and how the information was presented in those memos, often any residual factual information contained in various sections was intertwined with opinion, recommendation and assessment information from the interviewees not severable from the deliberative information in the memos.

### G. PLAINTIFFS COULD HAVE OBTAINED THE INFORMATION SOUGHT BY ASKING APPROPRIATE QUESTIONS DURING DEPOSITIONS

Plaintiffs argue they tried and failed to gain information from the individuals interviewed by OIM during depositions citing the deposition of Commander Phelan. [*See* Plaintiffs' Motion, at 12-13]. However, Plaintiffs entirely miss the point. The issue was not what Commander Phelan told OIM about any particular subject. Plaintiffs were provided copies of the questions asked by OIM, and were fully capable of asking the same questions OIM asked Commander Phelan during his deposition to learn whatever information he had about those topics.

For example, one subject addressed by OIM with the interviewees, including Commander Phelan, was lessons learned and takeaways. Rather than ask Commander Phelan the questions posed by OIM related to lessons learned and takeaways, Plaintiffs simply asked what Commander Phelan told OIM during his September 2020 interview. If

---

disclosure would inevitably reveal the government's deliberations."); *Mink,* 410 U.S. at 91 ("It appears to us that Exemption 5 contemplates that the public's access to internal memoranda will be governed by the same flexible, commonsense approach that has long governed private parties' discovery of such documents involved in litigation with Government agencies. And, as noted, that approach extended and continues to extend to the discovery of purely factual material appearing in those documents in a form that is severable without compromising the private remainder of those documents."); *Wolfe,* 839 F.2d at 773; *White,* 967 P.2d at 1052.

Plaintiffs really wanted to learn the content of information provided by Commander Phelan during this interview, Plaintiffs should have asked Commander Phelan what lessons he learned from his work in responding to the protests and what his takeaways were. Denver would not have objected on deliberative process grounds from any inquiry of Commander Phelan about what lessons he learned from responding to the protests. The deliberative process objection is not about factual or even opinion information of individual witnesses like Commander Phelan. Instead, the deliberative process objection concerns the opinion information provided in a protected environment between OIM and the interviewees, in this instance Commander Phelan, as the information allowed for the development of the recommendations made by OIM. Had Plaintiffs not myopically focused on questions about what Commander Phelan told OIM and instead actually asked questions designed to elicit information about what Commander Phelan knew, Plaintiffs could have readily attempted to replicate all or parts of the OIM interview of Commander Phelan during his deposition.

### H. THE INFORMATION IN THE OIM MEMOS IS NOT CENTRAL TO THE PLAINTIFFS' CLAIMS AND THE REPORT OF THE OFFICE OF THE INDEPENDENT MONITOR IS IRRELEVANT

Plaintiffs assert the information provided by individuals to OIM is central to their claims. [*See* Plaintiffs' Motion, at 10]. Plaintiffs are wrong. Plaintiffs' claims assert violations of Plaintiffs' constitutional rights either by individual officials or employees of Denver or by Denver itself. Mr. Mitchell specifically testified during his deposition the OIM report and his investigation reached no conclusions on the following actual liability issues: (1) whether any specific incident of use of force violated anyone's constitutional rights; (2)

whether any policy of the DPD caused any violation of anyone's constitutional rights; (3) whether any perceived deficiency in DPD training caused any violation of anyone's constitutional rights.  [*See* Mitchell Dep., at 146:6-148:24, Exh. A].  Mr. Mitchell's deposition testimony establishes the OIM report, and hence the OIM memos, fail to address the actual, central issue respecting Plaintiffs' claims.[2]

Second, OIM wanted to learn about the protest response not to address any specific incident factually, but rather to gather information allowing OIM to assess the DPD response and create recommended changes to policies and practices for future protests.  Such a policy making approach is entirely different from what Plaintiffs need to prove at trial.  Plaintiffs must establish that specific acts or omissions taken by individual DPD officers violated their constitutional rights.  Plaintiffs also must prove the constitutional violations occurred due to custom, policy or practice of Denver.  None of the redacted information contained in the OIM memos goes to these actual liability issues.  As Mr. Mitchell testified, OIM's assessment of any individual incident or event occurred in the context of recommending an investigation or as part of the investigation or disciplinary process followed by DPD based on the different standard of whether DPD policy was violated, not whether a constitutional violation occurred.  [*See* Mitchell Dep., at 146:6-148:24, Exh. A].

---

[2] The lack of relevant of the OIM Report is evident from a review of the report itself.  Defendants have not provided it as an exhibit to this Response because it is voluminous.  However, it may be reviewed at https://www.denvergov.org/Government/Departments/Office-of-the-Independent-Monitor/Reports-and-Letters in the section for reports from 2020.

Third, presumably Plaintiffs actually want the OIM memos to learn what individuals told OIM for admission and impeachment purposes. However, Plaintiffs have conducted depositions of many of the individuals who were interviewed by OIM. Vitiating Denver's deliberative process privilege based on these slender reeds of relevance is inappropriate. Plaintiffs have conducted extensive discovery in this matter, obtained thousands of pages of documents, hours and hours of video, and conducted numerous depositions. Plaintiffs clearly can present their case at trial without also obtaining the unredacted OIM memos. Whatever tangential or attenuated relevance Plaintiffs articulate, the OIM memos are simply not central to the Plaintiffs' claims. Under such circumstances, no legitimate basis exists to ignore the deliberative process nature of the redacted information.

Ultimately, the evidence for trial should be any video or other documentary evidence existing concerning what occurred related to any incident and the testimony of witnesses to and participants in the underlying events. Plaintiffs' anticipated effort to introduce into evidence Mr. Mitchell's testimony, the OIM report, and the OIM memos only relates to post-event assessments, analysis and opinions, not what actually happened on the ground at any given place and time and risks the introduction of irrelevant and prejudicial information at trial. *Compare* **Stump v. Gates,** 211 F.3d 527, 533-38 (10th Cir. 2000) (reversing jury verdict based on introduction into evidence of grand jury report and testimony from district attorney); **Goode v. City of Southaven,** 3:17-CV-60-MPM-RP, 2019 U.S. Dist. LEXIS 36838 at *11-14 (N.D. Miss. Mar. 7, 2019) (granting motion in limine concerning introduction of evidence of post-police use of force event governmental investigations).

## I. *IN CAMERA* REVIEW OF THE OIM MEMOS BY THIS COURT IS UNNECESSARY

Plaintiffs alternatively suggest this Court conduct an *in camera* review of the OIM memos. [*See* Plaintiffs' Motion, at 13]. "*In Camera* procedures should be a rare procedure in discovery disputes. Such a procedure requires a great deal of a court's time and energy . . ." ***Krenning v. Hunter Health Clinic,*** 166 F.R.D. 33, 35 (D. Kan. 1996). Here, during the May 20, 2021, discovery hearing, Plaintiffs asked this Court to review the OIM memos *in camera* and this Court declined to do so. [*See* Pl. Exh. 2, at page 8 (22:10-15) (ECF 135-2)]. Nothing has changed to make an *in camera* review necessary or appropriate. Because Plaintiffs could have obtained the information from the witnesses themselves through appropriate questioning in depositions, the information in the OIM memos is of at best tangential relevance, and because of the intertwined manner in which the information is presented in the OIM memos, any *in camera* review would be difficult and time consuming for this Court. Plaintiffs have not established a basis requiring *in camera* review of the OIM memos under these circumstances.

## CONCLUSION

In conclusion, based on the above arguments and authorities, Defendants respectfully request this Court deny Plaintiffs' Motion to Reconsider Discovery Order in its entirety, and for all other and further relief as this Court deems just and appropriate.

Dated this 24th day of August, 2021.

Respectfully submitted,

By: *s/ Andrew D. Ringel*
Andrew D. Ringel, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
Telephone: (303) 628-3453
Facsimile: (303) 628-3368
E-mail: ringela@hallevans.com

Hollie R. Birkholz, Assistant City Attorney
Robert Huss, Assistant City Attorney
Lindsay M. Jordan, Assistant City Attorney
Denver City Attorney's Office
Civil Litigation Section
201 West Colfax Ave., Dept. 1108
Denver, CO 80202
Telephone: (720) 913-3100
Facsimile: (720) 913-3155
E-mail: hollie.birkholz@denvergov.org
robert.huss@denvergov.org
lindsay.jordan@denvergov.org

*Counsel for the City and County of Denver and the individually named Denver Police Department Officers*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of August, 2021, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve the following:

Arnold & Porter Kaye Scholer LLP
Colin Michael O'Brien
Edward Packard Aro
Matthew J. Douglas
Timothy R. Macdonald
Patrick Reidy
Leslie Bailey
Gerardo Mihares-Shafai
Andreas Moffett
colin.obrien@arnoldporter.com
ed.aro@arnoldporter.com
matthew.douglas@arnoldporter.com
timothy.macdonald@arnoldporter.com
patrick.reidy@arnoldporter.com
leslie.bailey@arnoldporter.com
gerardo.mijares-shafai@arnoldporter.com
Andreas.moffett@arnoldporter.com

ACLU of Colorado
Arielle Kay Herzberg
Mark Silverstein
Sara R. Neel
aherzberg@aclu-co.org
msilverstein@aclu-co.org
sneel@aclu-co.org

Elizabeth Wang
Makeba Rutahindurwa
Loevy & Loevy
elizabethw@loevy.com
makeba@loevy.com

*s/Nicole Marion, Legal Assistant*
Nicole Marion
Hall & Evans, L.L.C.