EXHIBIT A

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                OF THE DISTRICT COURT OF COLORADO
 2
      Civil Action Nos. 1:20-cv-01878-RBJ & 1:20-cv-01922-RBJ-MEH
 3    & 1:20-cv-03155-KLM (Consolidated)
      _____
 4
 5    BLACK LIVES MATTER 5280, et al.,
 6            Plaintiffs,
 7    vs.
 8    CITY AND COUNTY OF DENVER, et al.,
 9            Defendants.
      _____
10
              VIDEO VIDEOCONFERENCED DEPOSITION OF
11                   NICHOLAS ETHAN MITCHELL
                        June 25, 2021
12    _____
13    VIDEOCONFERENCED APPEARANCES:
14    ON BEHALF OF THE PLAINTIFFS BLACK LIVES MATTER 5280:
              MICHAEL J. SEBBA, ESQ.
15            Arnold & Porter Kaye Scholer LLP
              777 South Figueroa Street, 44th Floor
16            Los Angeles, California  90017
              Phone:  213-243-4229
17            Email:  michael.sebba@arnoldporter.com
18    ON BEHALF OF THE PLAINTIFFS BLACK LIVES MATTER 5280:
              EDWARD ARO, ESQ.
19            Arnold & Porter Kaye Scholer LLP
              1144 15th Street, Suite 3100
20            Denver, Colorado  80202
              Phone:  303-863-2380
21            Email:  ed.aro@arnoldporter.com
22    ON BEHALF OF THE PLAINTIFFS BLACK LIVES MATTER 5280:
              PATRICK C. REIDY, ESQ.
23            Arnold & Porter Kaye Scholer LLP
              70 West Madison Street, Suite 4200
24            Chicago, Illinois  60602
              Phone:  312-583-2424
25            Email:  patrick.reidy@arnoldporter.com
```

Page 8

1                THE VIDEOGRAPHER: We're back on the
2       record at 12:39 p.m.
3                Q.   (By Mr. Sebba)  Okay.  Mr. Mitchell, prior
4       to this -- prior to the role you just described, what was
5       your job?
6                A.   I was the independent monitor for the City
7       and County of Denver.
8                Q.   Okay.  And as the independent monitor, what
9       were your job responsibilities?
10               A.   So I provided oversight of the Denver
11      Police Department and Denver Sheriff's Department.  More
12      specifically, I oversaw all internal affairs
13      investigations.  And those agencies issued reports to the
14      mayor, the City Council, other municipal leaders, and the
15      public reflecting my assessments of policies and
16      practices and disciplinary outcomes in those agencies.
17      And I managed a team of employees in that office who
18      helped me to discharge those duties.
19               Q.   And how long were you in that role?
20               A.   About eight and a half years, maybe.
21      Somewhere -- north of eight years.
22               Q.   Starting -- okay.  Starting from about when
23      did you have that job?
24               A.   I was appointed to the role in
25      August 2012.

1   Q.   And you were there until when?
2   A.   I resigned in December of last year.
3   Q.   Okay.  That's December 2020?
4   A.   Correct.
5   Q.   Okay.  And did you review the Denver Police
6   Department in connection to its behavior during the George
7   Floyd protests?
8           MR. RINGEL:  Object to the form.
9   A.   I reviewed and issued a report consistent
10  with my duties as monitor the police response to the
11  George Floyd protest that took place in Denver in the
12  summer of 2020.
13  Q.   (By Mr. Sebba)  Okay.  And to be clear,
14  when you say "summer of 2020," you mean -- withdraw.
15          To be clear, when I say "the George Floyd
16  protests" today, I'm going to be referring to the protests
17  that occurred in Denver from May 28th through about June 6
18  of 2020.
19          Will you understand it if that's -- if I
20  refer to them that way?
21  A.   I will.  I mean, I think, you know,
22  whether June 6 was the ending date -- I may have a
23  different understanding of when they ended, precisely,
24  but I will understand that we're generally talking about
25  those protests that began on May 28th, 2020, and extended

Page 144

1                    EXAMINATION
2  BY MR. RINGEL:
3           Q.   Good afternoon, Mr. Mitchell.  How are you?
4           A.   I'm well.  Thank you.
5           Q.   I've got a few questions that I wanted to
6  ask you.
7                When was the last time that you reviewed an
8  unredacted version of any of the memos that you were shown
9  by Mr. Sebba this morning -- earlier in this deposition?
10          A.   Presumably -- sometime in the fall of
11 2020.  What the particular month was I don't remember.
12 Perhaps in October, maybe November.  But I think more
13 likely October 2020, as I was drafting this report.
14          Q.   Okay.  And you are not -- you were not
15 involved in any of the review of those memos for purposes
16 of making the redactions, correct?
17          A.   I was not.
18          Q.   And you understand that the
19 deliberative-process privilege, to the extent that it's
20 been asserted in this case, is asserted by the City and
21 County of Denver, right?
22               MR. MCNULTY:  Objection.  Calls for a
23 legal conclusion.
24          A.   I would presume that as counsel for the
25 City and County of Denver, to the extent that you or your

1  team have asserted the privilege, it is being asserted by
2  the City and County of Denver, yes.
3          Q.   (By Mr. Ringel)  And it's a privilege that
4  belongs to the City, not you, right?
5               MR. MCNULTY:  Objection.  Calls for a
6  legal conclusion.
7          A.   Yes.  That's my understanding of the
8  privilege.
9          Q.   (By Mr. Ringel)  And you don't have any
10 ability to waive that privilege, correct?
11              MR. MCNULTY:  Objection.  Calls for a
12 legal conclusion.
13         A.   Generally speaking, no.
14              You know, one of the interesting features
15 of the position of independent monitor is that the
16 monitor has to speak candidly in reports and City Council
17 meetings and presentations about disciplinary matters and
18 conclusions and evaluations and analysis of disciplinary
19 cases that could at times implicate the City's
20 deliberative-process privilege.
21              And so the way that that is worked out is
22 sort of an ongoing work in progress and dialog between,
23 you know, the City Attorney's Office and the independent
24 monitor, whoever that is.
25              In the context of a piece of litigation

```
                                                    Page 146
 1    like this one, yes, I have nothing to do with nor any
 2    authority over decisions about whether or not to waive
 3    the disciplinary -- deliberative-process privilege.
 4              Q.    (By Mr. Ringel)  I understand the
 5    distinction, Mr. Mitchell.  And I appreciate that.
 6                    Turning to your report that -- that both
 7    counsel asked you about.  There's no conclusion in your
 8    report that any particular action taken by the Denver
 9    Police Department violated anyone's constitutional rights,
10    correct?
11              A.    I think that's right.  Yeah.  We did not
12    comment -- or I did not comment on specific incidents or
13    specific uses of force as they related to potential
14    violations of constitutional rights.  So I think that's
15    right.
16              Q.    There's also no conclusion in your report
17    that any policy of the Denver Police Department was a
18    cause of a violation of anyone's constitutional rights,
19    correct?
20              A.    We did not draw that conclusion in the
21    report, no.
22              Q.    And that both of those sort of
23    constitutional questions -- and in this case, liability
24    questions -- are beyond the scope of what you were looking
25    at in your report, true?
```

Page 147

1      A.   I think it sounds accurate to say that to
2  the extent there were constitutional violations alleged
3  in this lawsuit, those are kind of jury questions.  Those
4  are not the questions that we were attempting to analyze
5  or resolve in that report.
6      Q.   Well, more broadly, separate from this
7  lawsuit, you weren't attempting to analyze whether
8  anyone's constitutional rights were violated by the Denver
9  Police Department as part of the George Floyd protests
10 response in your report, right?
11      A.   Not in the report, though certainly
12 in -- as I mentioned earlier, there was, you know, north
13 of 100 Internal Affairs investigations opened in response
14 to allegations of inappropriate force.  And we did, in
15 the context of all of that work, which we were doing
16 simultaneously as we were doing this investigation, we
17 were concerned with and looking at potential violations
18 of policy or potential constitutional violations that
19 arose in connection with individual incidents.
20           So for me, since I was doing both things
21 at the same time, they blend together a little bit.  But
22 in the report, I agree with you, those were not the
23 questions that we were evaluating.
24      Q.   Okay.  And someone in the Denver Police
25 Department is disciplined not because they violate

```
 1   someone's constitutional rights, but because they violate
 2   Denver Police Department policy, correct?
 3        A.   Correct.
 4        Q.   The standard that is imposed in the
 5   disciplinary process is whether the actions were in
 6   conformance with Denver Police Department policy, not
 7   whether the actions were in conformance with the United
 8   States Constitution, right?
 9             MR. MCNULTY:  Objection to form.
10        A.   Sorry.
11             That's right.  There may be, and often is,
12   overlap between those questions.  But you're -- you're
13   right.  The standard that we're using when evaluating
14   officer behavior in the disciplinary process is whether
15   or not officers complied with policy.
16        Q.   (By Mr. Ringel)  Right.
17             And during your conversation a little bit
18   ago with Mr. McNulty, you talked -- one of the areas that
19   he was asking you about was training.
20             There's nothing in your report that talks
21   about a deficiency in training being the moving force or
22   cause of the violation of anyone's constitutional rights,
23   correct?
24        A.   Correct.
25        Q.   Okay.  When did you leave -- I believe you
```