IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT COURT OF COLORADO

Civil Action Nos. 1:20-cv-01878-RBJ & 1:20-cv-01922-RBJ-MEH (consolidated)

ELISABETH EPPS, *et al.*

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al*.,

Defendants

_____

**FITOURI PLAINTIFFS' AMENDED MOTION FOR LEAVE
TO FILE SECOND AMENDED COMPLAINT**
_____

Now come the Fitouri Plaintiffs, through their counsel, and respectfully move this Court

for entry of an order granting them leave to file the attached revised Second Amended Complaint

(clean and redlined versions attached as Exhibits A and B). In support of their amended motion,

Plaintiffs state as follows:

**Certificate of Conferral**

Pursuant to D.C.COLO.LCivR. 7.1(a), Plaintiffs conferred with Defendants about filing a

proposed Second Amended Complaint via email and telephone. Defendants advised that they:

(1) do not oppose changing Plaintiff Andrew Sannier's name to "Claire Sannier"—her present

legal name; (2) do not oppose amending the class allegations so that they are consistent with the

class certified by the Court; (3) oppose the naming of individual DPD defendants on the ground

of "undue delay"; and (4) have no position on Plaintiffs' request to add outside law enforcement

agencies or an outside law enforcement officer as defendants. Defendants have concerns about

whether the additions of the outside agencies and officer would affect the current deadlines in the

1

case or the trial date. Plaintiffs' position is that allowing the addition of outside law enforcement agencies or officers should not affect the March 2022 trial date.

## RELEVANT FACTS

The Fitouri Plaintiffs filed their complaint on July 1, 2020. Dkt. 1 (No. 1-20-cv-0199-RBJ-MEH). They filed an amended complaint on July 24, 2020, pursuant to Federal Rule of Civil Procedure 15(a)(1). Dkt. 19 (No. 1:20-cv-01922-RBJ-MEH).

Plaintiffs originally sued Doe Defendant Officers whom they believed were the agents, servants, and/or employees of the Denver Police Department (DPD) or officers of other jurisdictions who were acting with the authorization of the DPD. Plaintiffs did not know the names of the Defendant Officers. *See* Dkt. 19.

Since the beginning of discovery, Plaintiffs have been diligently working to identify the police officers responsible for violating their constitutional rights. Plaintiffs' counsel have reviewed hundreds of hours of video and thousands of pages of documents in an effort to identify the specific officers responsible. Plaintiffs propounded discovery requests asking Defendant Denver to identify the officers present at specific locations, dates, and times, and even providing screenshots from body-worn camera (BWC) video and other video in the hopes Defendant Denver would be able to better identify its own officers, supervising officers, or identify which outside agencies were present.

On September 25, 2020, Fitouri Plaintiffs served interrogatories asking Defendant Denver to identify the officers and supervisors present at two specific incidents (on May 30 and May 31, 2020) in which Plaintiffs allege their constitutional rights were violated. Ex. 1 (Fitouri Pls.' First Set of Interrogatories) at Interrogatory Nos. 8 and 9. On October 20, 2020, Defendant Denver sought a 3-week extension to respond, to which Plaintiffs agreed. Ex. 2 (10/20/20

Cooperstein Email). On November 15, 2020, Defendant Denver provided the name of one lieutenant in response to Interrogatory No. 8 and objected to providing a substantive response to Interrogatory No. 9. Ex. 3 (Defs.' Resp. to Fitouri Pls.' First Set of Interrogatories) at 15-17.

On October 23, 2020, Fitouri Plaintiffs served Interrogatory No. 10 asking Defendant Denver to identify the officers and supervisors present at another incident at 14th & Sherman on May 28, 2020. Ex. 4 (Fitouri Pls.' Interrogatory No. 10). On October 29, 2020, Fitouri Plaintiffs served Interrogatory Nos. 11-20 asking Defendant Denver to identify officers and supervisors present at additional incidents in which Plaintiffs allege their rights were violated. Ex. 5 (Fitouri Pls.' Interrogatory Nos. 11-20).

On November 19, 2020, the parties conferred telephonically about Plaintiffs' discovery requests and Defendants' responses. Defendant Denver stated that they would be producing documents that would provide the information requested in Interrogatory No. 8. Defendant Denver did not provide any more substantive information in response to Interrogatory No. 9. Defendant Denver then requested that Plaintiffs withdraw interrogatories 10-20 so that it would focus on producing the documents, video and audio that Plaintiffs requested. *See* Ex. 6 (11/20/20 Wang Ltr.) at 4-5. Out of a spirit of cooperation, and because Defendant Denver assured Plaintiffs that the forthcoming documents and video would provide the information Plaintiffs were seeking, Plaintiffs agreed to the request to withdraw those interrogatories at that time. However, with respect to Interrogatory No. 18, the Fitouri Plaintiffs agreed to limit their interrogatory at that time to the identities of the officer(s) who shot Plaintiff Youssef Amghar on May 30, 2020, at 7:09 p.m. Plaintiffs even provided specific videos and timestamps in which this incident can be seen. *Id.* at 5.

Defendant Denver responded that it could not agree to providing even that limited information, and requested that the interrogatory regarding the officers who shot Plaintiff Amghar be withdrawn until after Defendant Denver provided video and documents requested. Ex. 7 (11/20/20 Wang-Cooperstein Emails) at 3. In compromise, Plaintiffs agreed. *Id.* at 2.

Over the course of the next several months, Defendant Denver produced video and documents on a rolling basis. Although it produced officer statements in December, it was not until DPD Officer Bolton's deposition in April 2021 that Plaintiffs were alerted to the fact that Defendant Denver had not produced all of the officer statements relating to the protests.[1] The officer statements were important because they—along with BWC and other video—were among the few sources available for attempting to identify which officers were present at specific times, dates, and locations during the protests. It was not until June 18, 2021, that Defendant Denver finally produced all of the officer statements for the protests. Ex. 8 (Defs.' 27th Supplemental Rule 26(a)(1) Disclosures).

On February 4, 2021, the Fitouri Plaintiffs served amended versions of the interrogatories they had agreed to withdraw, seeking (again) the identities of officers and supervisors involved in specific incidents. Ex. 9 (Fitouri Pls.' Amd. Interrogatory Nos. 10-21). Between November 2020 and February 2021, Plaintiffs had reviewed the video and documents that Defendant Denver produced but discovered that there was still significant information missing. Some of the officer statements had helpful information, but the statements were mostly vague and incomplete. Frequently, officers did not even state exactly what location they were deployed to on a specific day, other than "downtown Denver" or "District 6." Defendant Denver did not even

---

[1] This came up during Bolton's deposition because it was revealed that he had been shown officer statements during his preparation for his deposition that Plaintiffs had never received.

keep rosters of which officers worked on which days and to which locations they were deployed. Yet, the information about the officers' and supervisors' identities was still information within Denver's control. Thus, Fitouri Plaintiffs renewed their interrogatories. *See* Ex. 9. On March 5, 2021, Defendant Denver responded with lengthy objections and refused to provide the name of *a single officer or supervisor*. Ex. 10 (Defs.' Resp. to Fitouri Pls.' Interrogatory Nos. 10-21). This included a complete refusal to identify the officer(s) involved in shooting Plaintiff Amghar on May 30, 2020 at 7:09 p.m. Ex. 10 at 22-25 (Defs.' Resp. to Fitouri Pls.' Interrogatory No. 17).

After lengthy conferrals, Plaintiffs sought assistance from the Court with this discovery dispute. Dkt. 105. Plaintiffs had narrowed their request for this dispute from what was originally asked in their interrogatories. During the hearing on the discovery dispute on May 20, 2021, the Court ordered Defendant Denver to adequately respond to Plaintiffs' interrogatories asking for the identities of officers at specific, dates, times and locations where excessive force was used. Dkt. 106. On June 11, 2021, Defendant Denver submitted a supplemental response providing identities for a few of the officers but failing to identify most of the others whose identities Plaintiff sought. Ex. 11 (Defs.' Supp. Resp. to Fitouri Pls.' Interrogatories).

Thus, in order to identify the officers responsible for violating Plaintiffs' constitutional rights, including the identities of supervisory officers who directly participated in or authorized subordinate officers to use force and disperse protestors from their peaceful assemblies, Plaintiffs had to obtain the information through additional discovery, such as depositions of multiple officers and further review of video.

Plaintiff had to depose each of the supervisory officers who were present for specific incidents during the protests in order to determine which of them ordered, approved, directed, or authorized the use of force on Plaintiffs and other protestors. The depositions of these

supervisory officers took place on these dates: Lieutenant Michael O'Donnell, August 4, 2021;

Lieutenant Kevin Carroll, July 27, 2021; Lieutenant James D. Williams, June 24, 2021;

Lieutenant Thomas Pine, June 22, 2021; Lieutenant Vincent Porter, June 22, 2021; Chief Pazen,

June 17, 2021; Commander Patrick Phelan, May 25, 2021; Sergeant David Abeyta, May 21,

2021; Lieutenant Matthew Canino, April 28, 2021. Ex. 12 (cover sheets of these depositions).

The deponents were able to provide at least some of the information that Defendant Denver was

unwilling to provide in an interrogatory response. This includes information such as the fact that

there was a DPD sergeant at the intersection of Washington and Colfax at 8:30 p.m. on May 31,

2020, which is when Plaintiff Joe Deras was hit with three separate projectiles. Ex. 13 (Porter

Dep.) at 86-89. The information provided by these supervisory officers also included their

confirmation that they and their team members were present at specific incidents which took

place on specific dates, times, and locations.

With respect to the individual officers Plaintiffs have identified as shooting Plaintiff

Amghar with pepper balls on May 30, 2020 at 7:09 p.m.—Defendants Eberharter, Cunningham,

and Sampson—Defendant Denver has steadfastly refused to identify them (and to this day have

yet to confirm that these defendants are in fact the officers that shot Plaintiff Amghar). Plaintiffs

first asked for this information in *October 2020*. It was only through depositions taken by

Plaintiffs that they learned that: (1) it was DPD and Aurora police officers at the intersection of

Lincoln and Colfax between 6:00 and 8:00 p.m.; and (2) that Aurora officers did not have any

pepper ball guns, but DPD officers did, Ex. 14 (Shaker Dep.) at 18-19; Ex. 15 (Cunningham

Dep.) at 65-66, which eliminated Aurora officers as possibilities. After discovering this

information, Plaintiffs still had to identify the officers involved. Several of the officers deposed

refused to identify themselves in the BWC of other officers. For instance, Officer Cunningham

refused to confirm her identity when shown BWC depicting her. Ex. 15 at 111-13.[2] What

Plaintiffs have been able to determine, but only through multiple depositions and hours of video

review is that the four officers standing in the skirmish line closest to Plaintiff Amghar were

DPD Corporal Eberharter (yellow arrow), DPD Officer Espinosa (red arrow), DPD Officer

Sampson (purple arrow), and DPD Officer Cunningham (green arrow) (Plaintiff Amghar is

circled in blue in the second screenshot):



_____

[2] Based on subsequent testimony from other officers, the positioning of the officers in the
skirmish line, and the location of Cunningham based on her BWC, Plaintiffs are confident that
the female officer in the screenshots is Cunningham.



Plaintiffs was finally able to depose Corporal Eberharter today, August 24, 2021. He confirmed that he is the officer in the green fatigues shown in the first screenshot above, from Officer Altman's BWC (DEN 4976). Eberharter provided information that Defendant Denver *could have provided months ago* had they only investigated and talked to their own officers. It took *months* and multiple depositions for Plaintiffs to confirm information that Denver refused to provide. At their depositions, Cunningham and Sampson denied shooting Plaintiff Amghar. Ex. 15 (Cunningham Dep.) at 103-05; Ex. 16 (Sampson Dep.) at 70-74, 155-57. But the BWC video shows otherwise (Plaintiff Amghar is circled in blue):





Likewise, the BWC of Aurora Captain Stephen Redfearn shows Corporal Eberharter (yellow arrow) apparently shooting Plaintiff Amghar (circled in blue):



Eberharter was not wearing a BWC. On the basis of the discovery obtained by Plaintiffs, Plaintiffs seek to name Eberharter, Sampson, and Cunningham as the individual officers who shot Plaintiff Amghar on May 30, 2020.[3]

_____

[3] After deposing Officer Espinosa on July 27, 2021, and reviewing his BWC video and other video, it does not appear to Plaintiffs that he is one of the officers who shot Amghar.

Similarly, Plaintiffs had to conduct extensive discovery simply to determine which officer threw a flashbang grenade into the crowd of protestors at Lincoln and Colfax on May 30, 2020, which hit Plaintiff Fitouri's foot and injured Plaintiff Deras's eardrum. Plaintiffs learned from depositions that Aurora officers did not have flashbang grenades at that intersection at that time. Ex. 14 (Shaker Dep.) at 19. This meant that only DPD officers had flashbang grenades. But Plaintiffs still had to determine *which* DPD officers threw the flashbang grenade. Lieutenant Pine testified at his deposition that officers in DPD Metro/SWAT had flashbang grenades. Ex. 17 (Pine Dep.) at 58. According to the City's interrogatory response, Sergeant Martinez and Corporal Eberharter (both DPD Metro/SWAT officers) "were at the specified location on May 30, 2020, during the specified time period." Ex. 11 at 12. Thus, Plaintiffs have named them in the proposed Second Amended Complaint.

In addition, at Eberharter's deposition on August 24, 2021, he identified DPD Metro/SWAT Sergeant Justin Dodge in a BWC video of DPD Officer McNabb from May 28, 2020. In that video, Sergeant Dodge tells McNabb to shoot pepperballs at the pedestrian bridge over I-25. McNabb does so. This released chemical irritants that Plaintiffs, including Fitouri, Parkins, and Deras, breathed in. They were not doing anything that warranted that use of force at that time, or that warranted their dispersal from the bridge. McNabb's officer statement does not indicate who the sergeant was; it said he did not recall. Sergeant Dodge did not complete an officer statement, and there was no BWC for Dodge. Thus, it was not until Eberharter's deposition today that Dodge was identified.

Furthermore, the Aurora Police Department recently completed a review of the use of force of its officers during the protests. Plaintiffs subpoenaed that information and Aurora produced it on August 17, 2021. The information that Aurora provided last week allowed

11

Plaintiffs to identify the officer who shot Plaintiff De La Vaca with a rubber bullet in the groin on May 31, 2020. Plaintiffs seek to name that officer as a defendant. (Plaintiffs also requested this information from Defendant Denver, and they refused to provide it. Ex. 10 at 28-31 (Resp. to Fitouri Pls.' Interrogatory No. 19). Plaintiffs also seek to add a *Monell* claim against Aurora, based on the documents received last week and Aurora's conclusion that its officers' use of force during the protests was consistent with APD policy.

And finally, during the deposition of Aurora Sergeant Patricio Serrant on July 16, 2021, Plaintiffs learned that the line of officers at the intersection of Washington and Colfax on May 31, 2020, at 8:30 p.m., was composed of Jefferson County Regional SWAT Team members, and not Aurora and Jefferson County. Ex. 18 (Serrant Dep. at 84-86, 90-91, 94-96. It was this line of officers who shot at and seriously injured Plaintiff Deras with three projectiles at 8:30 p.m. (And, at Lt. Porter's deposition, he provided information that a DPD sergeant was also present.) Before Serrant's deposition, it was not clear which agencies were in that line of officers; Defendant Denver refused to answer, the DPD officer statements were unclear, and there was no BWC video for the time the incident occurred (8:30 p.m.). *See* Ex. 10 at 25-28 (Defs.' Resp. to Fitouri Pls.' Interrogatory No. 18). Defendant Denver had refused to identify these officers even when Plaintiffs provided a screenshot. *See* Ex. 9 at 5 (Interrogatory No. 18).

## ARGUMENT

In light of the material obtained during discovery, the Fitouri Plaintiffs seek leave to file a Second Amended Complaint to name certain DPD Defendant Officers that Plaintiffs have identified as having direct personal involvement in the constitutional violations against Plaintiffs. These proposed changes are opposed by Defendants. Defendants have no position on the naming

of outside agencies or their officers. The redlined and clean versions are attached pursuant to D.C.COLO.LCivR 15.1, as Exhibits A and B.

Federal Rule of Civil Procedure 15 instructs courts to "freely give leave when justice so requires." "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)). None of these bases for refusing leave to amend applies here.

There is no undue prejudice to Defendants, undue delay, bad faith or dilatory motive. Plaintiffs' proposed new allegations are based on the same core set of facts as their existing claims. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) (reiterating that "the district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim"); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) ("The purpose of [Rule 15(a)] is to provide litigants 'the opportunity for each claim to be decided on its merits rather than on procedural niceties."). Plaintiffs are simply seeking to name the individual Defendants who have now been identified through discovery.

Further, "Rule 15(a)(2) does not restrict a party's ability to amend its pleadings to a specific stage in litigation" and the "Tenth Circuit 'focuses primarily on the reasons for the delay.'" *Mackey v. Watson*, 2019 WL 3543624, at \*6 (D. Colo. Aug. 5, 2019) (citation omitted). Here, as described in detail above, the Fitouri Plaintiffs have diligently sought to identify the individual officers responsible for violating their constitutional rights, with little to no assistance from Defendant Denver, despite this information being in its possession, custody, and control. Any delay was not "a result of gamesmanship or an attempt to 'salvage a lost case by untimely

suggestion of new theories.'" *Id.* at *7. Instead, the Fitouri Plaintiffs have sought leave to amend the complaint at the earliest possible time in which they feel confident that they have identified the proper individual officers. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206-07 (10th Cir. 2006) (Plaintiff had adequate explanation for delay where Plaintiff's attempt to assert a new claim was a response to the defendants' late disclosures).

Nor is there any futility to the amendments sought. "The futility question is 'functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright* 186 F.3d 1216, 1218 (10th Cir. 1999). With respect to the individual officers named in the proposed amended complaint, the complaint contains "'enough facts to state a claim to relief that is plausible on its face.'" *ClearCapital.com, Inc. v. Computershare, Inc.*, 2019 WL 1573300, at *2 (D. Colo.) (Jackson, J.) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)). Under the liberal Rule 15(a) standard, Plaintiffs only have to demonstrate that their proposed additional allegations are not "clearly frivolous or legally insufficient on [their] face … If the proposed claim sets forth facts and circumstances which may entitle the plaintiff to relief, then futility is not a proper basis on which to deny the amendment." *Gallegos v. Brandeis Sch*. 189 F.R.D. 256, 259 (E.D.N.Y. 1999) (internal quotation marks omitted).

The allegations that Officers Cunningham, Sampson, and Eberharter shot Plaintiff Amghar without justification and while they were standing on the sidewalk with their hands up would survive a motion to dismiss. *See* Ex. 7 ¶¶ 294-299. Plaintiffs' allegations against Sergeant Martinez and Corporal Eberharter would also survive a motion to dismiss. Ex. 7 ¶¶ 149, 154-155, 156, 290, 294-297, 440, 449, 458, 466.

Similarly, the allegations against the supervisory officers are not futile and would survive a motion to dismiss. Plaintiffs have alleged direct personal involvement on the part of each of the DPD supervisors. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (plaintiff must show an "affirmative link" between the supervisor and the constitutional violation, which requires personal involvement, causation, and culpable state of mind); *Cox v. Glanz*, 800 F.3d 1231, 1248-49 (10th Cir. 2015).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for leave to file the proposed Second Amended Complaint. Plaintiffs "ought to be afforded an opportunity to test [their] claim on the merits" if "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

> Respectfully submitted,
>
> /s/ Elizabeth Wang

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Suite 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com
*Counsel for Plaintiffs*

Makeba Rutahindurwa
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
O: 312.243.5900
makeba@loevy.com

## Certificate of Service

I, Elizabeth Wang, an attorney, hereby certify that on August 24, 2021, I served via CM/ECF the foregoing Motion, on all counsel of record.

> /s/ Elizabeth Wang
> One of Plaintiffs' Attorneys

15