**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-01878-RBJ
(consolidated with 1:20-cv-01922-RBJ-MEH
and 1:20-cv-03155-KLM)

BLACK LIVES MATTER 5280, *et al.*,

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et. al.*,

Defendants.

---

**DEFENDANT CITY AND COUNTY OF DENVER'S RESPONSES TO**
**FITOURI PLAINTIFFS' SECOND SET OF INTERROGATORIES**

---

Defendant, City and County of Denver ("Denver"), through its undersigned counsel, submits the following objections and responses to Fitouri Plaintiffs' Second Set of Interrogatories as follows:

**OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS**

In response to Plaintiffs' incorporating by reference the Definitions and Instructions in the Fitouri Plaintiffs' Second Set of Interrogatories to Defendant City and County of Denver (Nos. 10-21), Denver objects as follows:

1.      Denver objects to Plaintiffs' "Definitions" and "Instructions" to the extent that such "Definitions" and "Instructions" attempt to impose obligations that are not required by the Federal Rules of Civil Procedure. Denver is only responsible for responding to Plaintiffs' written discovery to the extent required by Rules 26 and 33, and will respond to Plaintiffs' discovery in compliance

1

Exhibit 10

with such rules.

## INTERROGATORIES

10.     Please identify, by department, name, unit, and badge number, all the law enforcement officers who were present at the intersection of 14th Avenue and Sherman Street (south side of the Capitol building) between 9:00 p.m. and 9:15 p.m. on May 28, 2020, including but not limited to those who are depicted in these videos: videos from Colorado State Patrol named "05282020 v29.ave" and "05282020 v63.ave" between 9:00-9:15 p.m. This interrogatory includes the identities of the officers who used "less lethal" weapons on the protestors, including Plaintiff Taylor, that occurs at approximately 9:10 p.m. and the identity of all supervising or commanding officers who authorized the use of force.

**OBJECTION:** Denver objects to this request as overly broad, unduly burdensome and disproportional to the needs of the case for the following reasons: a response to this interrogatory alone would require an officer with the Denver Police Department to devote at least seventeen hours of time, removing them from their regular duties, to review the materials which have been previously provided to Plaintiffs' counsel to attempt to simply identify officers present at the scene. To locate information responsive to this request, those officers would be required to take the following steps: review the Records Management System maintained by the Denver Police Department to determine if arrest records from this date, time, and location existed which may help identify officers in that location at that time; review the Internal Affairs case tracking system to determine if a citizen complaint was made regarding an incident in that location, on that date and at that time, to determine if any officers that were present had been identified through the IA investigation; review the Denver Police Department Body Worn Camera storage system

(Evidence.com) by filtering the BWC footage based upon the requested date and time-frame, then visually reviewing-the footage to pinpoint the location of the officer who had activated his her camera, then further reviewing the footage to discern whether any additional officers' identities could be determined; finally, the officers would review and cross-reference HALO footage, Telestaff rosters, after action reports, and officer statements to further determine identities. Even after that time-consuming process, it is unlikely that Denver would be able to discern the identity of every officer that utilized less lethal weapons near protesters, particularly, which officer deployed less lethal munitions in the area of Plaintiff Taylor, as more than one officer utilized less lethal weapons in this area at the designated time. Considering the amount of time required to simply provide officer identities that could have—not definitively did—utilize force against Plaintiff Taylor, responding to this interrogatory is not proportional to the needs of this case.

Furthermore, Plaintiffs have not provided a definition of "law enforcement officers," which may include officers from entities other than the Denver Police Department and/or officers beyond those specifically named as Defendants in this matter or whose conduct is alleged to have been directed at the Plaintiffs, rendering this request "an impermissible 'blockbuster' interrogatory of a nature repeatedly condemned by trial courts." *Grynberg v. Total S.A.*, No. 03-CV-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006); *see also Hilt v. SFC, Inc*., 170 F.R.D. 182 (D. Kan. 1997). Further, retrospectively reviewing materials available is unlikely to identify all law enforcement officers who may have been present during this rapidly developing and evolving situation, let alone all officers who deployed less lethal munitions. This interrogatory separately requests identification of officers who used "less lethal" weapons and supervisors or commanding officers who authorized the use of force, making it an impermissible compound interrogatory that

"seek[s] information about discrete separate subjects." F.R.C.P. 33, Advisory Committee Notes, 1993 Amendment. Denver accordingly treats these as two discrete subparts that independently count toward the limit on the number of interrogatories allowed in this case.

      **RESPONSE:** Subject to the stated objections and without waiving the same, Denver has no reasonable and efficient way to retrospectively identify *all* officers who may have been present during this rapidly developing and evolving situation, and therefore, is unable to definitively identify "all law enforcement officers who were present at the intersection of 14th Avenue and Sherman Street . . . between 9 pm and 9:15 pm on May 28, 2020 . . . [including] identities of officers who used "less lethal" force." Denver has no way of identifying who is depicted in videos obtained from the Colorado State Patrol; who utilized less lethal weapons at all given times, and who "authorized the use of force" at non-specified moments during the course of fifteen minutes, as requested. Denver Police Officers are authorized to use force in conformity with Denver's Use of Force Policy, 105.00 [*See* DEN001119-1145], which speaks for itself. In specific response to the request to identify Denver Police Officers, Denver has already provided Plaintiffs with media, audio, reports, and other documents from which the identities of the officers potentially present at this location can be derived, including but not limited to the following: DEN000001-17 and DEN2028-2063 (CAD Reports from 5/28/2020); DEN002462 - DEN002462 (Telestaff Roster for 5/28/2020); DEN002777-3839 (Officer Statements from 5/28/2020); DEN4021-4040 (BWC from 5/28/20 at 14th Avenue and Sherman around 9:15PM); DEN4255-4286, DEN4724-4730, DEN4960-4964, DEN5205-5325, DEN6239-6244, DEN6383-6387, DEN6388-6404 (IA Files with Date of Incident 5/28/20). To the extent that Denver becomes aware of identities of officers

Case No. 1:20-cv-01878-RBJ   Document 142-12   filed 08/24/21   USDC Colorado   pg 5 of 39

that have not yet been disclosed that were in these locations and times, it will supplement this response.

11.      Please identify, by department, name, unit, and badge number, the law enforcement officer(s) who used less lethal weapon(s) on protestors, including Plaintiffs, who were on the Highland Bridge over I-25 in Denver, Colorado, on May 28, 2020 between approximately 7:03-7:10 p.m., including the identity of the commanding or supervising officer(s) who authorized the use of force.

**OBJECTION:** Denver objects to this request as overly broad, unduly burdensome and disproportional to the needs of the case for the following reasons: a response to this interrogatory alone would require an officer with the Denver Police Department to devote at least seventeen hours of time, removing them from their regular duties, to review the materials which have been previously provided to Plaintiffs' counsel to attempt to simply identify officers present at the scene. To locate information responsive to this request, those officers would be required to take the following steps: review the Records Management System maintained by the Denver Police Department to determine if arrest records from this date, time, and location existed which would help identify any involved officers; review the Internal Affairs case tracking system to determine if a citizen complaint was made regarding the incident to determine if any officers had been identified through the IA investigation; review the Denver Police Department Body Worn Camera storage system (Evidence.com), filtering the footage based upon the requested date and time-frame, then narrowing the potentially responsive body of information based upon a visual review of the footage to pinpoint the location at which the officer who had activated the footage was located, then reviewing the footage further to discern whether any additional officers' identities

could be determined; finally the officers would review and cross-reference HALO footage, Telestaff rosters, after action reports, and officer statements to further determine identities. Even after that time-consuming process, it is unlikely that Denver would be able to discern the identity of every officer that utilized less lethal weapons near protesters, particularly, which officer deployed chemical agents in the area of the unidentified Plaintiffs around the I-25 bridge, as more than one officer utilized chemical agents in this area at this time. Considering the amount of time required to simply provide officer identities that did not definitively utilize force against these unspecified Plaintiffs, responding to this interrogatory is not proportional to the needs of this case.

Furthermore, Plaintiffs have not provided a definition of "law enforcement officers," which may include officers from entities other than the Denver Police Department and/or officers beyond those specifically named as Defendants in this matter or whose conduct is alleged to have been directed at the Plaintiffs, rendering this request "an impermissible 'blockbuster' interrogatory of a nature repeatedly condemned by trial courts." *Grynberg v. Total S.A.*, No. 03-CV-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006); *see also Hilt v. SFC, Inc.*, 170 F.R.D. 182 (D. Kan. 1997). Further, retrospectively reviewing materials available is unlikely to identify all law enforcement officers who may have been present during this rapidly developing and evolving situation, let alone all officers who deployed less lethal munitions. This interrogatory separately requests identification of officers who used "less lethal" weapons and supervisors or commanding officers who authorized the use of force, making it an impermissible compound interrogatory that "seek[s] information about discrete separate subjects." F.R.C.P. 33, Advisory Committee Notes, 1993 Amendment. Denver accordingly treats these as two discrete subparts that independently count toward the limit on the number of interrogatories allowed in this case.

**RESPONSE:** Subject to the stated objections and without waiving the same, Denver has no reasonable and efficient way to retrospectively identify *all* officers who may have been present during this rapidly developing and evolving situation, and therefore, is unable to definitively identify "all law enforcement officers who used less lethal weapons near protesters, including unspecified Plaintiffs, who were on the Highland Bridge over I-25 in Denver, Colorado, on May 28, 2020 between approximately 7:03-7:10 p.m." Because this Interrogatory does not identify which Plaintiffs were allegedly present at this location during this time period, it is impractical for Denver to respond to this question. Further, Denver has no reasonable way of identifying all officers who may have utilized less lethal weapons at this location, and/or which supervisors "authorized the use of force" during the course of time requested herein without undertaking a lengthy review of numerous sources of information as descried in Denver's objection to this interrogatory. Denver Police Officers are authorized to use force in conformity with Denver's Use of Force Policy, 105.00 [See DEN001119-1145], which speaks for itself. In specific response to the request to identify Denver Police Officers, Denver has already provided Plaintiffs with the media, audio, and documents that provide the identities of the officers potentially present at this location, including but not limited to the following: DEN000001-17 and DEN2028-2063 (CAD Reports from 5/28/2020); DEN002462 - DEN002462 (Telestaff Roster for 5/28/2020); DEN002777-3839 (Officer Statements from 5/28/2020); DEN3886-3892 (BWC from 5/28/20 at the Pedestrian Bridge over I-25 from 1840-1920); DEN4255-4286, DEN4724-4730, DEN4960-4964, DEN5205-5325, DEN6239-6244, DEN6383-6387, DEN6388-6404 (IA Files with Date of Incident 5/28/20). To the extent that Denver becomes aware of identities of officers that have not yet been disclosed that were in these locations and times, it will supplement this response.

7

12.     Please identify, by department, name, unit, and badge number, the law enforcement officer(s) who used less lethal weapon(s) on protestors, including Plaintiffs Fitouri, Parkins, and Sannier, who were on the south side of Colfax, on May 29, 2020 between approximately 8:00-8:45 p.m. at West Colfax Avenue between North Broadway and Lincoln Street, in Denver, Colorado, and identify the commanding or supervising officer(s) who authorized the use of force. This includes the officers depicted in DEN 3852.

**OBJECTION:** Denver objects to this request as overly broad, unduly burdensome and disproportional to the needs of the case for the following reasons: a response to this interrogatory alone would require an officer with the Denver Police Department to devote at least seventeen hours of time, removing them from their regular duties, to review the materials which have been previously provided to Plaintiffs' counsel to attempt to simply identify officers present at the scene. To locate information responsive to this request, those officers would be required to take the following steps: review the Records Management System maintained by the Denver Police Department to determine if arrest records from this date and time existed which would help identify any involved officers; review the Internal Affairs case tracking system to determine if a citizen complaint was made regarding the incident to determine if any officers had been identified; review the Denver Police Department Body Worn Camera storage system (Evidence.com), filtering the footage based upon the requested date and time-frame, then narrowing the potentially responsive body of information based upon a visual review of the footage to pinpoint the location at which the officer who had activated the footage was located, then reviewing the footage further to discern whether any other officers' identities could be determined; finally the officers would review and cross-reference HALO footage, Telestaff rosters, after action reports, and officer statements to

further determine identities. Even after that time-consuming process, it is unlikely that Denver would be able to discern the identity of every officer that utilized less lethal weapons near protesters, particularly, which officer deployed chemical agents or pepper balls in the area of these three Plaintiffs, as more than one officer utilized these less lethal munitions in this area at this time. Considering the amount of time required to simply provide officer identities that did not definitively utilize force against Fitouri, Parkins, and Sannier, responding to this interrogatory is not proportional to the needs of this case.

Furthermore, Plaintiffs have not provided a definition of "law enforcement officers," which may include officers from entities other than the Denver Police Department and/or officers beyond those specifically named as Defendants in this matter or whose conduct is alleged to have been directed at the Plaintiffs, rendering this request "an impermissible 'blockbuster' interrogatory of a nature repeatedly condemned by trial courts." *Grynberg v. Total S.A.*, No. 03-CV-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006); *see also Hilt v. SFC, Inc.*, 170 F.R.D. 182 (D. Kan. 1997). Further, retrospectively reviewing materials available is unlikely to identify all law enforcement officers who may have been present during this rapidly developing and evolving situation, let alone all officers who deployed less lethal munitions. This interrogatory separately requests identification of officers who used "less lethal" weapons and supervisors or commanding officers who authorized the use of force, making it an impermissible compound interrogatory that "seek[s] information about discrete separate subjects." F.R.C.P. 33, Advisory Committee Notes, 1993 Amendment. Denver accordingly treats these as at least four discrete subparts that independently count toward the limit on the number of interrogatories allowed in this case.

**RESPONSE:** Subject to the stated objections and without waiving the same, Denver has no reasonable way to retrospectively identify *all* officers who may have been present during this rapidly developing and evolving situation, and therefore, is unable to definitively identify "all law enforcement officers who used less lethal weapon(s) on protestors, including Plaintiffs Fitouri, Parkins, and Sannier, who were on the south side of Colfax, on May 29, 2020 between approximately 8:00-8:45 p.m. at West Colfax Avenue between North Broadway and Lincoln Street." Denver has no reasonable way of knowing the identity of all of its and other jurisdictions' officers that may have utilized less lethal weapons during the stated timeframe, and/or who "authorized the use of force" at any given time during the span of forty-five minutes requested herein without undertaking a lengthy review of numerous sources of information as descried in Denver's objection to this interrogatory. Denver Police Officers are authorized to use force in conformity with Denver's Use of Force Policy, 105.00 [See DEN001119-1145], which speaks for itself. In specific response to the request to identify Denver Police Officers, Denver has already provided Plaintiffs with the media, audio, and documents that provide the identities of the officers potentially present at this location, including but not limited to the following: DEN0000018-35 (CAD Reports from 5/29/2020); DEN002508 - DEN002549 (Telestaff Roster for 5/29/2020); DEN002777-3839 (Officer Statements from 5/29/2020); DEN004154-4231 (BWC from 5/29/20); DEN5626-5705, DEN6264-6366, DEN6388-6391 (IA files from 5/29/20). To the extent that Denver becomes aware of identities of officers that have not yet been disclosed that were in these locations and times, it will supplement this response.

13.     Please identify, by department, name, unit, and badge number, the law enforcement officer(s) who shot Plaintiff Sannier with a pepperball on May 29, 2020 at or about 9:47 p.m. while

she was standing on a sidewalk filming the officers on the 16th Street Mall at North Broadway and Cleveland Place, in Denver, Colorado, and identify the commanding or supervising officer(s) who authorized the use of force.

**OBJECTION:** Denver objects to this request as overly broad, unduly burdensome and disproportional to the needs of the case for the following reasons: a response to this interrogatory alone would require an officer with the Denver Police Department to devote at least seventeen hours of time, removing them from their regular duties, to review the materials which have been previously provided to Plaintiffs' counsel to attempt to simply identify officers present at the scene. To locate information responsive to this request, those officers would be required to take the following steps: review the Records Management System maintained by the Denver Police Department to determine if arrest records from this date and time existed which would help identify any involved officers; review the Internal Affairs case tracking system to determine if a citizen complaint was made regarding the incident to determine if any officers had been identified; review the Denver Police Department Body Worn Camera storage system (Evidence.com), filtering the footage based upon the requested date and time-frame, then narrowing the potentially responsive body of information based upon a visual review of the footage to pinpoint the location at which the officer who had activated the footage was located, then reviewing the footage further to discern whether any other officers' identities could be determined; finally the officers would review and cross-reference HALO footage, Telestaff rosters, after action reports, and officer statements to further determine identities. Even after that time-consuming process, it is unlikely that Denver would be able to discern the identity of every officer that utilized less lethal weapons near protesters, particularly, which officer deployed the pepper ball that is alleged to have hit Plaintiff

Sannier's chest, as more than one officer utilized pepper balls in this area at this time. Considering the amount of time required to simply provide officer identities that did not definitively utilize force against Sannier, responding to this interrogatory is not proportional to the needs of this case.

Furthermore, Plaintiffs have not provided a definition of "law enforcement officers," which may include officers from entities other than the Denver Police Department and/or officers beyond those specifically named as Defendants in this matter or whose conduct is alleged to have been directed at the Plaintiffs, rendering this request "an impermissible 'blockbuster' interrogatory of a nature repeatedly condemned by trial courts." *Grynberg v. Total S.A.*, No. 03-CV-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006); *see also Hilt v. SFC, Inc*., 170 F.R.D. 182 (D. Kan. 1997). Further, retrospectively reviewing materials available is unlikely to identify all law enforcement officers who may have been present during this rapidly developing and evolving situation, let alone all officers who deployed less lethal munitions. This interrogatory separately requests identification of officers who used "less lethal" weapons and supervisors or commanding officers who authorized the use of force, making it an impermissible compound interrogatory that "seek[s] information about discrete separate subjects." F.R.C.P. 33, Advisory Committee Notes, 1993 Amendment. Denver accordingly treats these as two discrete subparts that independently count toward the limit on the number of interrogatories allowed in this case.

**RESPONSE:** Subject to the stated objection and without waiving the same, Denver has no reasonable way to retrospectively identify all officers who may have been present during this rapidly developing and evolving situation, and therefore, is unable to definitively identify "who shot Plaintiff Sannier with a pepper ball on May 29, 2020 at or about 9:47 p.m. while she was standing on a sidewalk filming the officers on the 16th Street Mall at North Broadway and

Cleveland Place" Further, Denver has no reasonable way of identifying what officer's pepper ball impacted Plaintiff Sannier—as multiple officers utilized pepper balls at that location and time, and/or which supervisors "authorized the use of force" during the course of time requested herein without undertaking a lengthy review of numerous sources of information as described in Denver's objection to this interrogatory. Denver Police Officers are authorized to use force in conformity with Denver's Use of Force Policy, 105.00 [See DEN001119-1145], which speaks for itself. In specific response to the request to identify Denver Police Officers, Denver has already provided Plaintiffs with the media, audio, and documents that provide the identities of the officers potentially present at this location, including but not limited to the following: DEN0000018-35 (CAD Reports from 5/29/2020); DEN002508 - DEN002549 (Telestaff Roster for 5/29/2020); DEN002777-3839 (Officer Statements from 5/29/2020); DEN004154-4231 (BWC from 5/29/20); DEN5626-5705, DEN6264-6366, DEN6388-6391 (IA files from 5/29/20). To the extent that Denver becomes aware of identities of officers that have not yet been disclosed that were in these locations and times, it will supplement this response.

14.    Please identify, by department, name, unit, and badge number, the law enforcement officer(s) who used less lethal weapon(s) on protestors, including Plaintiff Sannier, on May 30, 2020 at approximately 4:48 p.m. at the 16th Street Mall between California Street and Welton Street, in Denver, Colorado, and identify the commanding or supervising officer(s) who authorized the use of force.

**OBJECTION:** Denver objects to this request as overly broad, unduly burdensome and disproportional to the needs of the case for the following reasons: a response to this interrogatory alone would require would require an officer with the Denver Police Department to devote at least

seventeen hours of time, removing them from their regular duties, to review the materials which have been previously provided to Plaintiffs' counsel to attempt to simply identify officers present at the scene. To locate information responsive to this request, those officers would be required to take the following steps: review the Records Management System maintained by the Denver Police Department to determine if arrest records from this date and time existed which would help identify any involved officers; review the Internal Affairs case tracking system to determine if a citizen complaint was made regarding the incident to determine if any officers had been identified through the IA investigation; review the Denver Police Department Body Worn Camera storage system (Evidence.com), filtering the footage based upon the requested date and time-frame, then narrowing the potentially responsive body of information based upon a visual review of the footage to pinpoint the location at which the officer who had activated the footage was located, then reviewing the footage further to discern whether any other officers' identities could be determined; finally the officers would review and cross-reference HALO footage, Telestaff rosters, after action reports, and officer statements to further determine identities. Even after that time-consuming process, it is unlikely that Denver would be able to discern the identity of every officer that utilized less lethal weapons near protesters, particularly, which officer deployed the pepper balls that Plaintiff Sannier observed to be used on other protesters, as more than one officer utilized pepper balls in this area at this time. Considering the amount of time required to simply provide officer identities that did not utilize force against Sannier, responding to this interrogatory is not proportional to the needs of this case.

Furthermore, Plaintiffs have not provided a definition of "law enforcement officers," which may include officers from entities other than the Denver Police Department and/or officers beyond

those specifically named as Defendants in this matter or whose conduct is alleged to have been directed at the Plaintiffs, rendering this request "an impermissible 'blockbuster' interrogatory of a nature repeatedly condemned by trial courts." *Grynberg v. Total S.A.*, No. 03-CV-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006); *see also Hilt v. SFC, Inc.*, 170 F.R.D. 182 (D. Kan. 1997). Further, retrospectively reviewing materials available is unlikely to identify all law enforcement officers who may have been present during this rapidly developing and evolving situation, let alone all officers who deployed less lethal munitions. This interrogatory separately requests identification of officers who used "less lethal" weapons and supervisors or commanding officers who authorized the use of force, making it an impermissible compound interrogatory that "seek[s] information about discrete separate subjects." F.R.C.P. 33, Advisory Committee Notes, 1993 Amendment. Denver accordingly treats these as two discrete subparts that independently count toward the limit on the number of interrogatories allowed in this case.

  **RESPONSE:** Subject to the stated objections and without waiving the same, Denver has no reasonable way to retrospectively identify all officers who may have been present during this rapidly developing and evolving situation, and therefore, is unable to definitively identify "law enforcement officer(s) who used less lethal weapon(s) on protestors, including Plaintiff Sannier, on May 30, 2020 at approximately 4:48 p.m. at the 16th Street Mall between California Street and Welton Street." Further, Denver has no reasonable way of discerning the identity of all officers utilizing pepper balls at this location, and particularly what impact they had on Plaintiff Sannier, who is alleged to have merely observed pepper balls being utilized against others at this location and time, and/or which supervisors "authorized the use of force" during the course of time requested herein without undertaking a lengthy review of numerous sources of information as

described in Denver's objection to this interrogatory. Denver Police Officers are authorized to use
force in conformity with Denver's Use of Force Policy, 105.00 [See DEN001119-1145], which
speaks for itself. In specific response to the request to identify Denver Police Officers, Denver has
already provided Plaintiffs with the media, audio, and documents that provide the identities of the
officers potentially present at this location, including but not limited to the following:
DEN0000036-58 (CAD Reports from 5/30/2020); DEN002550 - DEN002601 (Telestaff Roster
for 5/30/2020); DEN002777-3839 (Officer Statements from 5/30/2020); DEN004232-4241 &
DEN004975-5076 (BWC from 5/30/20); DEN4243-4256, DEN4370-4402, DEN4731-4909,
DEN004744-4909, DEN4960-4974, DEN5190-5204, DEN5715-5901, DEN6222-6233 (IA files
from 5/30/20). To the extent that Denver becomes aware of identities of officers that have not yet
been disclosed that were in these locations and times, it will supplement this response.

15.     Please identify, by department, name, unit, and badge number, the law enforcement
officer(s) who shot Plaintiff Duran with pepperballs on May 30, 2020 between approximately
5:40-6:00 p.m. while he was standing in Liberty Park just south of West Colfax Avenue across
from Civic Center station (between Broadway and Lincoln), in Denver, Colorado, and identify the
commanding or supervising officer(s) who authorized the use of force.

**OBJECTION:** Denver objects to this request as overly broad, unduly burdensome and
disproportional to the needs of the case for the following reasons: a response to this interrogatory
alone would require an officer with the Denver Police Department to devote at least seventeen
hours of time, removing them from their regular duties, to review the materials which have been
previously provided to Plaintiffs' counsel to attempt to simply identify officers present at the scene.
To locate information responsive to this request, those officers would be required to take the

following steps: review the Records Management System maintained by the Denver Police Department to determine if arrest records from this date and time existed which would help identify any involved officers; review the Internal Affairs case tracking system to determine if a citizen complaint was made regarding the incident to determine if any officers had been identified through the IA investigation; review Denver Police Department Body Worn Camera storage system (Evidence.com), filtering the footage based upon the requested date and time-frame, then narrowing the potentially responsive body of information based upon a visual review of the footage to pinpoint the location at which the officer who had activated the footage was located, then reviewing the footage further to discern whether any other officers' identities could be determined; finally the officers would review and cross-reference HALO footage, Telestaff rosters, after action reports, and officer statements to further determine identities. Even after that time-consuming process, it is unlikely that Denver would be able to discern the identity of every officer that utilized less lethal weapons near protesters, particularly, which officer deployed the pepper ball that is alleged to have hit Plaintiff Duran, or which officers utilized chemical agents in this area, as more than one officer utilized pepper balls and chemical agents in this area at this time. Considering the amount of time required to simply provide officer identities that did not definitively utilize force against Duran, responding to this interrogatory is not proportional to the needs of this case.

Furthermore, Plaintiffs have not provided a definition of "law enforcement officers," which may include officers from entities other than the Denver Police Department and/or officers beyond those specifically named as Defendants in this matter or whose conduct is alleged to have been directed at the Plaintiffs, rendering this request "an impermissible 'blockbuster' interrogatory of a nature repeatedly condemned by trial courts." *Grynberg v. Total S.A.*, No. 03-CV-01280-WYD-

BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006); *see also Hilt v. SFC, Inc*., 170 F.R.D. 182 (D. Kan. 1997). Further, retrospectively reviewing materials available is unlikely to identify all law enforcement officers who may have been present during this rapidly developing and evolving situation, let alone all officers who deployed less lethal munitions. This interrogatory separately requests identification of officers who used "less lethal" weapons and supervisors or commanding officers who authorized the use of force, making it an impermissible compound interrogatory that "seek[s] information about discrete separate subjects." F.R.C.P. 33, Advisory Committee Notes, 1993 Amendment. Denver accordingly treats these as two discrete subparts that independently count toward the limit on the number of interrogatories allowed in this case.

**RESPONSE:** Subject to the stated objections and without waiving the same, Denver has no reasonable way to retrospectively identify all officers who may have been present during this rapidly developing and evolving situation, and therefore, is unable to definitively identify "law enforcement officer(s) who shot Plaintiff Duran with pepper balls on May 30, 2020 between approximately 5:40-6:00 p.m. while he was standing in Liberty Park." Further, Denver has no reasonable way of identifying which officer's pepper ball impacted Plaintiff Duran—as multiple officers utilized pepper balls at that location and time, and/or which supervisors "authorized the use of force" during the course of time requested herein without undertaking a lengthy review of numerous sources of information as described in Denver's objection to this interrogatory. Denver Police Officers are authorized to use force in conformity with Denver's Use of Force Policy, 105.00 [See DEN001119-1145], which speaks for itself. In specific response to the request to identify Denver Police Officers, Denver has already provided Plaintiffs with the media, audio, and documents that provide the identities of the officers potentially present at this location, including

but not limited to the following: DEN0000036-58 (CAD Reports from 5/30/2020); DEN002550 - DEN002601 (Telestaff Roster for 5/30/2020); DEN002777-3839 (Officer Statements from 5/30/2020); DEN004232-4241 & DEN004975-5076 (BWC from 5/30/20); DEN4243-4256, DEN4370-4402, DEN4731-4909, DEN004744-4909, DEN4960-4974, DEN5190-5204, DEN5715-5901, DEN6222-6233 (IA files from 5/30/20). To the extent that Denver becomes aware of identities of officers that have not yet been disclosed that were in these locations and times, it will supplement this response.

16.     Please identify, by department, name, unit, and badge number, the law enforcement officer(s) who used less lethal weapon(s) on protestors, including Plaintiffs Deras, Fitouri, and Sannier, at the intersection of Lincoln Street and West Colfax Avenue in Denver, Colorado, on May 30, 2020 between approximately 6:00-8:00 p.m., and identify the commanding or supervising officer(s) who authorized the use of force. This interrogatory includes the identification of any officers who used tear gas, as well as the officer(s) who threw a flashbang grenade that landed at Plaintiff Fitouri's foot and exploded near Plaintiff Deras's ear (between approximately 6:30-6:50 p.m.); the officer(s) who shot Plaintiff Deras with pepper balls and/or another kind of Kinetic Impact Projectile (KIP) (between approximately 6:30-6:50 p.m.); and the officer(s) who threw a flashbang grenade that exploded near Plaintiff Sannier (between 6:00-8:00 p.m.).

**OBJECTION:** Denver objects to this request as overly broad, unduly burdensome and disproportional to the needs of the case for the following reasons: a response to this interrogatory alone would require an officer with the Denver Police Department to devote at least seventeen hours of time, removing them from their regular duties, to review the materials which have been previously provided to Plaintiffs' counsel to attempt to simply identify officers present at the scene.

To locate information responsive to this request, those officers would be required to take the following steps: review the Records Management System maintained by the Denver Police Department to determine if arrest records from this date and time existed which would help identify any involved officers; review the Internal Affairs case tracking system to determine if a citizen complaint was made regarding the incident to determine if any officers had been identified through the IA investigation; review the Denver Police Department Body Worn Camera storage system (Evidence.com), filtering the footage based upon the requested date and time-frame, then narrowing the potentially responsive body of information based upon a visual review of the footage to pinpoint the location at which the officer who had activated the footage was located, then reviewing the footage further to discern whether any other officers' identities could be determined; finally the officers would review and cross-reference HALO footage, Telestaff rosters, after action reports, and officer statements to further determine identities. Even after that time-consuming process, it is unlikely that Denver would be able to discern the identity of every officer that utilized less lethal weapons near protesters, particularly, which officers are alleged to have used tear gas, who threw a flashbang grenade that landed at Plaintiff Fitouri's foot and exploded near Plaintiff Deras's ear, whose pepper ball or other projectile impacted Plaintiff Deras, and which officer threw a flashbang grenade that exploded near Plaintiff Sannier, as more than one officer utilized these less lethal munitions in this area at this time. Considering the amount of time required to simply provide officer identities that did not definitively utilize force against these three plaintiffs alleging multiple different incidents at different times, responding to this interrogatory is not proportional to the needs of this case.

Furthermore, Plaintiffs have not provided a definition of "law enforcement officers," which may include officers from entities other than the Denver Police Department and/or officers beyond those specifically named as Defendants in this matter or whose conduct is alleged to have been directed at the Plaintiffs, rendering this request "an impermissible 'blockbuster' interrogatory of a nature repeatedly condemned by trial courts." *Grynberg v. Total S.A.*, No. 03-CV-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006); *see also Hilt v. SFC, Inc*., 170 F.R.D. 182 (D. Kan. 1997). Further, retrospectively reviewing materials available is unlikely to identify all law enforcement officers who may have been present during this rapidly developing and evolving situation, let alone all officers who deployed less lethal munitions. This interrogatory separately requests identification of officers who used "less lethal" weapons and supervisors or commanding officers who authorized the use of force, making it an impermissible compound interrogatory that "seek[s] information about discrete separate subjects." F.R.C.P. 33, Advisory Committee Notes, 1993 Amendment. Denver accordingly treats these as five discrete subparts that independently count toward the limit on the number of interrogatories allowed in this case.

**RESPONSE:** Subject to the stated objections and without waiving the same, Denver has no reasonable way to retrospectively identify all officers who may have been present during this rapidly developing and evolving situation, and therefore, is unable to definitively identify "law enforcement officer(s) who used less lethal weapon(s) on protestors, including Plaintiffs Deras, Fitouri, and Sannier, at the intersection of Lincoln Street and West Colfax Avenue in Denver, Colorado, on May 30, 2020 between approximately 6:00-8:00 p.m." Denver cannot reasonably know the identity of all officers who utilized less lethal weapons during this time against the stated plaintiffs, and/or who "authorized the use of force" at the times identified herein without

undertaking a lengthy review of numerous sources of information as described in Denver's objection to this interrogatory. Denver Police Officers are authorized to use force in conformity with Denver's Use of Force Policy, 105.00 [See DEN001119-1145], which speaks for itself. In specific response to the request to identify Denver Police Officers, Denver has already provided Plaintiffs with the media, audio, and documents that provide the identities of the officers potentially present at this location, including but not limited to the following: DEN0000036-58 (CAD Reports from 5/30/2020); DEN002550 - DEN002601 (Telestaff Roster for 5/30/2020); DEN002777-3839 (Officer Statements from 5/30/2020); DEN004232-4241 & DEN004975-5076 (BWC from 5/30/20); DEN4243-4256, DEN4370-4402, DEN4731-4909, DEN004744-4909, DEN4960-4974, DEN5190-5204, DEN5715-5901, DEN6222-6233 (IA files from 5/30/20). To the extent that Denver becomes aware of identities of officers that have not yet been disclosed that were in these locations and times, it will supplement this response.

17.     Please identify, by department, name, unit, and badge number, the law enforcement officer(s) who used less lethal weapon(s) on Plaintiff Amghar at the intersection of Lincoln Street and West Colfax Avenue in Denver, Colorado, on May 30, 2020 at 7:09 p.m., and identify the commanding or supervising officer(s) who authorized the use of force. This interrogatory includes the identification of the officer(s) who shot pepperball gun(s) at Plaintiff Amghar and/or threw tear gas or smoke canister(s) at or towards them. This includes the officers depicted in these photos,[1] which are screenshots from COABLM 294:

**OBJECTION:** Denver objects to this request as overly broad, unduly burdensome and disproportional to the needs of the case for the following reasons: a response to this interrogatory

---

[1] See photograph in original request.

alone would require an officer with the Denver Police Department to devote at least seventeen hours of time, removing them from their regular duties, to review the materials which have been previously provided to Plaintiffs' counsel to attempt to simply identify officers present at the scene. To locate information responsive to this request, those officers would be required to take the following steps: review the Records Management System maintained by the Denver Police Department to determine if arrest records from this date and time existed which would help identify any involved officers; review the Internal Affairs case tracking system to determine if a citizen complaint was made regarding the incident to determine if any officers had been identified through the IA investigation; review the Denver Police Department Body Worn Camera storage system (Evidence.com), filtering the footage based upon the requested date and time-frame, then narrowing the potentially responsive body of information based upon a visual review of the footage to pinpoint the location at which the officer who had activated the footage was located, then reviewing the footage further to discern whether any other officers' identities could be determined; finally the officers would review and cross-reference HALO footage, Telestaff rosters, after action reports, and officer statements to further determine identities. Even after that time-consuming process, it is unlikely that Denver would be able to discern the identity of every officer that utilized less lethal weapons near protesters, particularly, which officer deployed chemical agents or pepper balls in the area of Plaintiff Amghar, as more than one officer utilized pepper balls and chemical agents in this area at this time. Considering the amount of time required to simply provide officer identities that did not definitively utilize force against Amghar, responding to this interrogatory is not proportional to the needs of this case.

Furthermore, Plaintiffs have not provided a definition of "law enforcement officers," which may include officers from entities other than the Denver Police Department and/or officers beyond those specifically named as Defendants in this matter or whose conduct is alleged to have been directed at the Plaintiffs, rendering this request "an impermissible 'blockbuster' interrogatory of a nature repeatedly condemned by trial courts." *Grynberg v. Total S.A.*, No. 03-CV-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006); *see also Hilt v. SFC, Inc.*, 170 F.R.D. 182 (D. Kan. 1997). Further, retrospectively reviewing materials available is unlikely to identify all law enforcement officers who may have been present during this rapidly developing and evolving situation, let alone all officers who deployed less lethal munitions. This interrogatory separately requests identification of officers who used "less lethal" weapons and supervisors or commanding officers who authorized the use of force, making it an impermissible compound interrogatory that "seek[s] information about discrete separate subjects." F.R.C.P. 33, Advisory Committee Notes, 1993 Amendment. Denver accordingly treats these as two discrete subparts that independently count toward the limit on the number of interrogatories allowed in this case.

**RESPONSE:** Subject to the stated objections and without waiving the same, Denver has no reasonable way to retrospectively identify all officers who may have been present during this rapidly developing and evolving situation, and therefore, is unable to definitively identify "law enforcement officer(s) who used less lethal weapon(s) on Plaintiff Amghar at the intersection of Lincoln Street and West Colfax Avenue in Denver, Colorado, on May 30, 2020 at 7:09 p.m." Denver has reasonable way of identifying all officers who utilized less lethal weapons at this location and time, and/or who "authorized the use of force" at the times identified herein without undertaking a lengthy review of numerous sources of information as described in Denver's

24

objection to this interrogatory. Denver Police Officers are authorized to use force in conformity with Denver's Use of Force Policy, 105.00 [See DEN001119-1145], which speaks for itself. In specific response to the request to identify Denver Police Officers, Denver has already provided Plaintiffs with the media, audio, and documents that provide the identities of the officers potentially present at this location, including but not limited to the following: DEN0000036-58 (CAD Reports from 5/30/2020); DEN002550 - DEN002601 (Telestaff Roster for 5/30/2020); DEN002777-3839 (Officer Statements from 5/30/2020); DEN004232-4241 & DEN004975-5076 (BWC from 5/30/20); DEN4243-4256, DEN4370-4402, DEN4731-4909, DEN004744-4909, DEN4960-4974, DEN5190-5204, DEN5715-5901, DEN6222-6233 (IA files from 5/30/20). To the extent that Denver becomes aware of identities of officers that have not yet been disclosed that were in these locations and times, it will supplement this response.

18. Please identify, by department, name, unit, and badge number, the law enforcement officer(s) who threw the tear gas or smoke canisters at protestors, including Plaintiffs Fitouri, Deras, and Parkins, at approximately 8:30 p.m. at the intersection of East Colfax Avenue and North Washington Street in Denver, Colorado, and identify the commanding or supervising officer(s) who authorized the use of force. This includes the officers depicted in this photo,[2] which is a screenshot from DEN 3871 at 8:30:37 p.m.

**OBJECTION:** Denver objects to this request as overly broad, unduly burdensome and disproportional to the needs of the case for the following reasons: a response to this interrogatory alone would require an officer with the Denver Police Department to devote at least seventeen hours of time, removing them from their regular duties, to review the materials which have been

---

[2] See photograph in original request.

previously provided to Plaintiffs' counsel to attempt to identify officers present at the scene. To locate information responsive to this request, those officers would be required to take the following steps: review the Records Management System maintained by the Denver Police Department to determine if arrest records from this date and time existed which would help identify any involved officers; review the Internal Affairs case tracking system to determine if a citizen complaint was made regarding the incident to determine if any officers had been identified through the IA investigation; review the Denver Police Department Body Worn Camera storage system (Evidence.com), filtering the footage based upon the requested date and time-frame, then narrowing the potentially responsive body of information based upon a visual review of the footage to pinpoint the location at which the officer who had activated the footage was located, then reviewing the footage further to discern whether any other officers' identities could be determined; finally the officers would review and cross-reference HALO footage, Telestaff rosters, after action reports, and officer statements to further determine identities. Even after that time-consuming process, it is unlikely that Denver would be able to discern the identity of every officer that utilized less lethal weapons near protesters, particularly, which officer deployed chemical agents or smoke canisters in the area of Plaintiffs Fitouri, Deras, and Parkins, as more than one officer utilized chemical agents in this area at this time. Considering the amount of time required to simply provide officer identities that did not definitively utilize force against these Plaintiffs, responding to this interrogatory is not proportional to the needs of this case.

Furthermore, Plaintiffs have not provided a definition of "law enforcement officers," which may include officers from entities other than the Denver Police Department and/or officers beyond those specifically named as Defendants in this matter or whose conduct is alleged to have been

directed at the Plaintiffs, rendering this request "an impermissible 'blockbuster' interrogatory of a nature repeatedly condemned by trial courts." *Grynberg v. Total S.A.*, No. 03-CV-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006); *see also Hilt v. SFC, Inc.*, 170 F.R.D. 182 (D. Kan. 1997). Further, retrospectively reviewing materials available is unlikely to identify all law enforcement officers who may have been present during this rapidly developing and evolving situation, let alone all officers who deployed less lethal munitions. This interrogatory separately requests identification of officers who used "less lethal" weapons and supervisors or commanding officers who authorized the use of force, making it an impermissible compound interrogatory that "seek[s] information about discrete separate subjects." F.R.C.P. 33, Advisory Committee Notes, 1993 Amendment. Denver accordingly treats these as two discrete subparts that independently count toward the limit on the number of interrogatories allowed in this case.

**RESPONSE:** Subject to the stated objections and without waiving the same, Denver has no reasonable way to retrospectively identify all officers who may have been present during this rapidly developing and evolving situation, and a review of the photograph provided has not assisted in the task because the officers pictured are unidentifiable. Therefore, Denver is unable to definitively identify "the law enforcement officer(s) who threw the tear gas or smoke canisters at protestors, including Plaintiffs Fitouri, Deras, and Parkins, at approximately 8:30 p.m. at the intersection of East Colfax Avenue and North Washington Street in Denver." It is not reasonable for Denver to know the identity of all officers utilized less lethal weapons at this time and locations, and/or who "authorized the use of force" at the times identified herein without undertaking a lengthy review of numerous sources of information as described in Denver's objection to this interrogatory. Denver Police Officers are authorized to use force in conformity with Denver's Use

of Force Policy, 105.00 [See DEN001119-1145], which speaks for itself. In specific response to the request to identify Denver Police Officers, Denver has already provided Plaintiffs with the media, audio, and documents that provide the identities of the officers potentially present at this location, including but not limited to the following: DEN0000036-58 (CAD Reports from 5/30/2020); DEN002550 - DEN002601 (Telestaff Roster for 5/30/2020); DEN002777-3839 (Officer Statements from 5/30/2020); DEN004232-4241 & DEN004975-5076 (BWC from 5/30/20); DEN4243-4256, DEN4370-4402, DEN4731-4909, DEN004744-4909, DEN4960-4974, DEN5190-5204, DEN5715-5901, DEN6222-6233 (IA files from 5/30/20). To the extent that Denver becomes aware of identities of officers that have not yet been disclosed that were in these locations and times, it will supplement this response.

19. Please identify, by department, name, unit, and badge number, the law enforcement officer(s) who shot Plaintiff Johnathen De La Vaca Duran with a foam baton (depicted in Fitouri 228 at 22:18) on May 31, 2020 at approximately 9:30 p.m. at or about the intersection of East Colfax Avenue and Pearl Street, in Denver, Colorado and identify the commanding or supervising officer(s) who authorized the use of force.

**OBJECTION:** Denver objects to this request as overly broad, unduly burdensome and disproportional to the needs of the case for the following reasons: a response to this interrogatory alone would require would require an officer with the Denver Police Department to devote at least seventeen hours of time, removing them from their regular duties, to review the materials which have been previously provided to Plaintiffs' counsel to attempt to simply identify officers present at the scene. To locate information responsive to this request, those officers would be required to take the following steps: review the Records Management System maintained by the Denver Police

Department to determine if arrest records from this date and time existed which would help identify any involved officers; review the Internal Affairs case tracking system to determine if a citizen complaint was made regarding the incident to determine if any officers had been identified through the IA investigation; review the Denver Police Department Body Worn Camera storage system (Evidence.com), filtering the footage based upon the requested date and time-frame, then narrowing the potentially responsive body of information based upon a visual review of the footage to pinpoint the location at which the officer who had activated the footage was located, then reviewing the footage further to discern whether any other officers' identities could be determined; finally the officers would review and cross-reference HALO footage, Telestaff rosters, after action reports, and officer statements to further determine identities. Even after that time-consuming process, it is unlikely that Denver would be able to discern the identity of every officer that utilized less lethal weapons near protesters, particularly, which officer utilized a foam baton, as multiple officers were equipped with 40 mms at that time and location. Considering the amount of time required to simply provide officer identities that did not definitively utilize force against Plaintiff Duran, responding to this interrogatory is not proportional to the needs of this case.

Furthermore, Plaintiffs have not provided a definition of "law enforcement officers," which may include officers from entities other than the Denver Police Department and/or officers beyond those specifically named as Defendants in this matter or whose conduct is alleged to have been directed at the Plaintiffs, rendering this request "an impermissible 'blockbuster' interrogatory of a nature repeatedly condemned by trial courts." *Grynberg v. Total S.A.*, No. 03-CV-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006); *see also Hilt v. SFC, Inc.*, 170 F.R.D. 182 (D. Kan. 1997). Further, retrospectively reviewing materials available is unlikely to identify all

law enforcement officers who may have been present during this rapidly developing and evolving situation, let alone all officers who deployed less lethal munitions. This interrogatory separately requests identification of officers who used "less lethal" weapons and supervisors or commanding officers who authorized the use of force, making it an impermissible compound interrogatory that "seek[s] information about discrete separate subjects." F.R.C.P. 33, Advisory Committee Notes, 1993 Amendment. Denver accordingly treats these as two discrete subparts that independently count toward the limit on the number of interrogatories allowed in this case.

**RESPONSE:**   Subject to the stated objections and without waiving the same, Denver has no reasonable way to retrospectively identify all officers who may have been present during this rapidly developing and evolving situation, particularly because the video of Plaintiff Duran cuts back to the beginning at 19:50 minutes--before the time identified in the Interrogatory, and therefore, is unable to definitively identify "law enforcement officer(s) who shot Plaintiff Johnathen De La Vaca Duran with a foam baton (depicted in Fitouri 228 at 22:18) on May 31, 2020 at approximately 9:30 p.m. at or about the intersection of East Colfax Avenue and Pearl Street." It is not reasonable for Denver to identify all officers that utilized less lethal weapons during this time frame, and/or who "authorized the use of force" at the times identified herein without undertaking a lengthy review of numerous sources of information as described in Denver's objection to this interrogatory. Denver Police Officers are authorized to use force in conformity with Denver's Use of Force Policy, 105.00 [See DEN001119-1145], which speaks for itself. In specific response to the request to identify Denver Police Officers, Denver has already provided Plaintiffs with the media, audio, and documents that provide the identities of the officers potentially present at this location, including but not limited to the following: DEN0000059-67

(CAD Reports from 5/31/2020); DEN002602 - DEN002652 (Telestaff Roster for 5/31/2020); DEN002777-3839 (Officer Statements from 5/31/2020); DEN005077-5125 (BWC from 5/31/20); DEN004403-4575 (Duplicates marked 4584-4586), DEN4910-4959, DEN5326-5625, DEN5902-6221, DEN6234-6238, DEN6245-6258 (IA files from 5/31/20). To the extent that Denver becomes aware of identities of officers that have not yet been disclosed that were in these locations and times, it will supplement this response.

20. Please identify, by department, name, unit, and badge number, the law enforcement officer(s) who used "less lethal" weapons on protestors on May 31, 2020 between approximately 9:35-9:45 p.m. between Pennsylvania Avenue and Logan Street on East Colfax Avenue, in Denver, Colorado, and identify the commanding or supervising officer(s) who authorized the use of force. This incident is depicted in DEN 3873 and DEN 3874. This request includes a request to identify the commanding or supervising officer(s) at the Denver Police Department who served as the liaison(s) with or coordinated the actions of the Aurora police officers depicted in DEN 3874.

**OBJECTION:** Denver objects to this request as overly broad, unduly burdensome and disproportional to the needs of the case for the following reasons: a response to this interrogatory alone would require would require an officer with the Denver Police Department to devote at least seventeen  hours of time, removing them from their regular duties, to review the materials which have been previously provided to Plaintiffs' counsel to attempt to simply identify officers present at the scene. To locate information responsive to this request, those officers would be required to take the following steps: review the Records Management System maintained by the Denver Police Department to determine if arrest records from this date and time existed which would help identify any involved officers; review the Internal Affairs case tracking system to determine if a citizen

complaint was made regarding the incident to determine if any officers had been identified through the IA investigation; review the Denver Police Department Body Worn Camera storage system (Evidence.com), filtering the footage based upon the requested date and time-frame, then narrowing the potentially responsive body of information based upon a visual review of the footage to pinpoint the location at which the officer who had activated the footage was located, then reviewing the footage further to discern whether any other officers' identities could be determined; finally the officers would review and cross-reference HALO footage, Telestaff rosters, after action reports, and officer statements to further determine identities. Even after that time-consuming process, it is unlikely that Denver would be able to discern the identity of every officer that utilized unidentified less lethal weapons on unidentified protesters. Considering the amount of time required to simply provide officer identities that did not definitively utilize force against any of the Plaintiffs, responding to this interrogatory is not proportional to the needs of this case.

Furthermore, Plaintiffs have not provided a definition of "law enforcement officers," which may include officers from entities other than the Denver Police Department and/or officers beyond those specifically named as Defendants in this matter or whose conduct is alleged to have been directed at the Plaintiffs, rendering this request "an impermissible 'blockbuster' interrogatory of a nature repeatedly condemned by trial courts." *Grynberg v. Total S.A.*, No. 03-CV-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006); *see also Hilt v. SFC, Inc.*, 170 F.R.D. 182 (D. Kan. 1997). Further, retrospectively reviewing materials available is unlikely to identify all law enforcement officers who may have been present during this rapidly developing and evolving situation, let alone all officers who deployed less lethal munitions. This interrogatory separately requests identification of officers who used "less lethal" weapons and supervisors or commanding

officers who authorized the use of force, making it an impermissible compound interrogatory that "seek[s] information about discrete separate subjects." F.R.C.P. 33, Advisory Committee Notes, 1993 Amendment. Denver accordingly treats these as two discrete subparts that independently count toward the limit on the number of interrogatories allowed in this case.

**RESPONSE:** Subject to the stated objections and without waiving the same, Denver has no reasonable way to retrospectively identify all officers who may have been present during this rapidly developing and evolving situation, and therefore, is unable to definitively identify "law enforcement officer(s) who used "less lethal" weapons on protestors on May 31, 2020 between approximately 9:35-9:45 p.m. between Pennsylvania Avenue and Logan Street on East Colfax Avenue." It is not reasonable for Denver to identify all officers who utilized less lethal weapons at the stated time, and/or who "authorized the use of force" at the times identified herein without undertaking a lengthy review of numerous sources of information as described in Denver's objection to this interrogatory. Denver Police Officers are authorized to use force in conformity with Denver's Use of Force Policy, 105.00 [See DEN001119-1145], which speaks for itself. In specific response to the request to identify Denver Police Officers, Denver has already provided Plaintiffs with the media, audio, and documents that provide the identities of the officers potentially present at this location, including but not limited to the following: DEN0000059-67 (CAD Reports from 5/31/2020); DEN002602 - DEN002652 (Telestaff Roster for 5/31/2020); DEN002777-3839 (Officer Statements from 5/31/2020); DEN005077-5125 (BWC from 5/31/20); DEN004403-4575 (Duplicates marked 4584-4586), DEN4910-4959, DEN5326-5625, DEN5902-6221, DEN6234-6238, DEN6245-6258 (IA files from 5/31/20). To the extent that Denver becomes

aware of identities of officers that have not yet been disclosed that were in these locations and times, it will supplement this response.

21. Please identify, by department, name, unit, and badge number, the law enforcement officer(s) who used "less lethal" weapons on protestors on May 30, 2020 at approximately 3:50-4:00 p.m., at or about the intersection of East Colfax Avenue and North Washington Street, in Denver, Colorado, and identify the commanding or supervising officer(s) who authorized the use of force. This includes the officers depicted in these photos[3], which is a screenshot from DEN 3865 at 3:53 p.m. and 4:01 p.m.

**OBJECTION:** Denver objects to this request as overly broad, unduly burdensome and disproportional to the needs of the case for the following reasons: a response to this interrogatory alone would require an officer with the Denver Police Department to devote at least seventeen hours of time, removing them from their regular duties, to review the materials which have been previously provided to Plaintiffs' counsel to attempt to simply identify officers present at the scene. To locate information responsive to this request, those officers would be required to take the following steps: review the Records Management System maintained by the Denver Police Department to determine if arrest records from this date and time existed which would help identify any involved officers; review the Internal Affairs case tracking system to determine if a citizen complaint was made regarding the incident to determine if any officers had been identified through the IA investigation; review the Denver Police Department Body Worn Camera storage system (Evidence.com), filtering the footage based upon the requested date and time-frame, then narrowing the potentially responsive body of information based upon a visual review of the footage

---

[3] See photographs in original requests.

to pinpoint the location at which the officer who had activated the footage was located, then reviewing the footage further to discern whether any other officers' identities could be determined; finally the officers would review and cross-reference HALO footage, Telestaff rosters, after action reports, and officer statements to further determine identities. Even after that time-consuming process, it is unlikely that Denver would be able to discern the identity of every officer that utilized unidentified less lethal weapons on unidentified protesters. Considering the amount of time required to simply provide officer identities that did not definitively utilize force against any of the Plaintiffs, responding to this interrogatory is not proportional to the needs of this case.

Furthermore, Plaintiffs have not provided a definition of "law enforcement officers," which may include officers from entities other than the Denver Police Department and/or officers beyond those specifically named as Defendants in this matter or whose conduct is alleged to have been directed at the Plaintiffs, rendering this request "an impermissible 'blockbuster' interrogatory of a nature repeatedly condemned by trial courts." *Grynberg v. Total S.A.*, No. 03-CV-01280-WYD-BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006); *see also Hilt v. SFC, Inc.*, 170 F.R.D. 182 (D. Kan. 1997). Further, retrospectively reviewing materials available is unlikely to identify all law enforcement officers who may have been present during this rapidly developing and evolving situation, let alone all officers who deployed less lethal munitions. This interrogatory separately requests identification of officers who used "less lethal" weapons and supervisors or commanding officers who authorized the use of force, making it an impermissible compound interrogatory that "seek[s] information about discrete separate subjects." F.R.C.P. 33, Advisory Committee Notes, 1993 Amendment. Denver accordingly treats these as two discrete subparts that independently count toward the limit on the number of interrogatories allowed in this case.

**RESPONSE:** Subject to the stated objections and without waiving the same, Denver has no reasonable way to retrospectively identify all officers who may have been present during this rapidly developing and evolving situation, and a review of the photograph provided has not assisted in the task because the officers pictured are unidentifiable. Therefore, Denver is unable to definitively identify "the law enforcement officer(s) who used "less lethal" weapons on protestors on May 30, 2020 at approximately 3:50-4:00 p.m., at or about the intersection of East Colfax Avenue and North Washington Street" Denver is not reasonably able to identify all officers who utilized less lethal weapons at any given time, and/or who "authorized the use of force" at the times identified herein without undertaking a lengthy review of numerous sources of information as described in Denver's objection to this interrogatory. Denver Police Officers are authorized to use force in conformity with Denver's Use of Force Policy, 105.00 [See DEN001119-1145], which speaks for itself. In specific response to the request to identify Denver Police Officers, Denver has already provided Plaintiffs with the media, audio, and documents that provide the identities of the officers potentially present at this location, including but not limited to the following: DEN0000036-58 (CAD Reports from 5/30/2020); DEN002550 - DEN002601 (Telestaff Roster for 5/30/2020); DEN002777-3839 (Officer Statements from 5/30/2020); DEN004232-4241 & DEN004975-5076 (BWC from 5/30/20); DEN4243-4256, DEN4370-4402, DEN4731-4909, DEN004744-4909, DEN4960-4974, DEN5190-5204, DEN5715-5901, DEN6222-6233 (IA files from 5/30/20). To the extent that Denver becomes aware of identities of officers that have not yet been disclosed that were in these locations and times, it will supplement this response.

DATED this 5th day of March, 2021.

Respectfully submitted,

By: _s/ Hollie R. Birkholz_
Hollie R. Birkholz, Assistant City Attorney
Robert Huss, Assistant City Attorney
Denver City Attorney's Office
Civil Litigation Section
201 West Colfax Ave., Dept. 1108
Denver, CO 80202
Telephone: (720) 913-3100
Facsimile: (720) 913-3155
E-mail:  hollie.birkholz@denvergov.org
E-mail:  robert.huss@denvergov.org
*Counsel for the City and County of Denver and the individually named Denver Police Department Officers*

## CERTIFICATE OF SERVICE

I hereby certify that on this <u>5th</u> day of March, 2021, the foregoing **DEFENDANT'S RESPONSE TO FITOURI PLAINTIFFS' SECOND SET OF INTERROGATORIES** was served on the following via email:

Arnold & Porter Kaye Scholer LLP-Denver
Colin Michael O'Brien
Edward Packard Aro
Matthew J. Douglas
Robert Reeves Anderson
Timothy R. Macdonald
Colin.obrien@arnoldporter.com
Ed.aro@ arnoldporter.com
Matthew.douglas@ arnoldporter.com
Reeves.anderson@arnoldporter.com
Timothy.Macdonald@arnoldporter.com


ACLU of Colorado
Arielle Kay Herzberg
Mark Silverstein
Sara R. Neel
aherzberg@aclu-co.org
msilverstein@aclu-co.org
sneel@aclu-co.org

Loevy & Loevy
Elizabeth Wang
Daniel M. Twetten
elizabethw@loevy.com
dan@loevy.com

Loevy & Loevy-Chicago
Tara Elizabeth Thompson
Makeba Rutahindurwa
tara@loevy.com
makeba@loevy.com

Killmer, Lane & Newman
Andrew McNulty
Reid Allison
amcnulty@kln-law.com
ralison@kln-law.com
*Counsel for Plaintiffs*


<u>s/ Sarah Peasley</u>
Denver City Attorney's Office

**VERIFICATION**

I declare under penalty of perjury that the foregoing City and County of Denver's Responses to Fitouri Plaintiffs' Second Set of Interrogatories are true and accurate to the best of my knowledge and information.

_____   95066

Denver Police Department Lieutenant
Steven Addison

3/5/21
Date

39