IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-01878-RBJ
(consolidated with 1:20-cv-01922-RBJ-MEH)

ELISABETH EPPS, *et al.*

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

Defendants.

---

### DEFENDANT'S MOTION TO PRECLUDE FORMER INDEPENDENT MONITOR NICHOLAS E. MITCHELL AS A WITNESS FOR PLAINTIFFS AND OFFICE OF INDEPENDENT MONITOR INTERVIEW MEMOS AS EVIDENCE

---

Defendant City and County of Denver ("Denver"), through its undersigned counsel, respectfully submits this Motion to Preclude Former Independent Monitor Nicholas E. Mitchell as a Witness for Plaintiffs and Office of Independent Monitor Interview Memos as Evidence, as follows:

### CERTIFICATE OF CONFERRAL

Pursuant to D.C.Colo.LCiv.R. 7.1(a), prior to filing the instant Motion, the undersigned counsel for Denver conferred with counsel for the Plaintiffs  Counsel for the Epps Plaintiffs, Timothy McDonald, Esq., and counsel for the Fitouri Plaintiffs, Elizabeth Wang, Esq., indicated the Plaintiffs oppose this Motion.

# INTRODUCTION

Nicolas E. Mitchell is the former Independent Monitor for Denver. Counsel for the Plaintiffs had multiple *ex parte* communications with Mr. Mitchell. During the *ex parte* communications, discussion occurred concerning the contents of the redacted portions of the Office of the Independent Monitor ("OIM") Memos ("OIM Memos"). Regardless of whether the *ex parte* contact with Mr. Mitchell itself was appropriate, any discussion with Mr. Mitchell concerning the deliberative process privilege, its assertion by Denver respecting the OIM Memos, the redactions made by Denver, and the discovery dispute before this Court concerning the issue was not appropriate. This Court must impose a sanction for the inappropriate *ex parte* communications with Mr. Mitchell. Under the circumstances of this case, an appropriate sanction is the exclusion of Mr. Mitchell as a witness for Plaintiffs and preclusion of Plaintiffs using of the OIM memos as evidence.[1]

# FACTS RELEVANT TO THE MOTION

1. Mr. Mitchell was formerly the Independent Monitor of Denver. [*See* Deposition of Nicholas E. Mitchell, at 8:3-7, Exh. A].

2. Mr. Mitchell held his position for approximately eight and a half years

---

[1] Denver does not believe Mr. Mitchell has any relevant and admissible testimony to provide. Mr. Mitchell and OIM investigated the police response to the protests after the fact and neither he nor anyone else working at OIM have any personal knowledge about what occurred during the protests. Denver reserves all rights to seek the exclusion of Mr. Mitchell as a witness and the OIM Memos as evidence under all applicable provisions of the Federal Rules of Evidence. This Motion raises a specific issue different from the admissibility of witness testimony and evidence generally and Denver believes it is appropriate to raise this issue by Motion because this Court's ruling may obviate the need for consideration of the evidentiary issues concerning Mr. Mitchell's potential witness testimony and the OIM as potential evidence.

serving in the role from August 2012 until December 2020. [*See* Mitchell Dep., at 8:19-9:4, Exh. A].

3. Mr. Mitchell reviewed the Denver Police Department ("DPD") response to the George Floyd protests in the Summer of 2020 and issued a report. [*See* Mitchell Dep., at 9:5-12, Exh. A].

4. Mr. Mitchell had communications with counsel for the Plaintiffs in this matter several times since he resigned his position as Independent Monitor. Mr. Mitchell talked on the telephone with Tim McDonald "a couple of times." [*See* Mitchell Dep., at 149:4-15, Exh. A].

5. Mr. Mitchell also met by video conference with several counsel for the Plaintiffs. [*See* Mitchell Dep., at 149:9-150:5, Exh. A].

6. Mr. Mitchell described his memory of the video conference meeting in the following terms:

> Q. Okay. And what do you remember about what was discussed during the meeting?
>
> A. I remember that there were questions about the report, questions about the investigation that I conducted. I remember there were particular questions about body-worn cameras and conclusions that I drew about body-worn cameras, and maybe some of the interview memos or sort of interview process. And the process for creating interview memos may have come up, or maybe I talked about that with Tim on the phone at a different point.

[*See* Mitchell Dep., at 150:20-151:5, Exh. A].

7. During his conversation with counsel for the Plaintiffs about the OIM Memos, Mr. Mitchell concluded counsel had seen the redacted OIM Memos. [*See* Mitchell Dep., at 152:6-153:15 & 154:13:19, Exh. A].

3

8.  Mr. Mitchell described his memory of the discussion about the OIM Memos as follows:

> Q.  And put the conversation where you reached the conclusion about— or put that conversation with Mr. McDonald in a time frame in relationship to the meeting that we've already been discussing.
>
> A.  I'm not sure that I can. I remember talking with Mr. McDonald after that meeting, and it was clear that he had viewed the redacted memos. And it was clear that there was a discovery dispute, you know, related to the material contained in those memos.
>
> But I – you know, so he described that. He was very clear about that. I don't remember if we talked about that at the meeting also, but in subsequent conversation, it was very clear that there was a live discovery dispute related to the memos.

[*See* Mitchell Dep., at 154:20-155:9, Exh. A].

9.  Mr. Mitchell further explained he understood the discovery dispute related to the OIM Memos concerning the deliberative process privilege, as follows:

> Q.  Okay. And you understood that the discovery dispute related to the assertion by the City of the deliberative-process privilege?
>
> A.  I do.
>
> Q.  Okay. Did you subsequently discuss the deliberative-process privilege with Mr. McDonald?
>
> A.  I can't really remember. I mean, we –
>
> . . . .
>
> A.  I think we may have, you know, discussed the privilege in general, but I don't remember. He described for me that the memos had been very heavily redacted and that his team was concerned about that. Whether we got into the specific contours of the privilege or not, I'm not sure.

[*See* Mitchell Dep., at 155:10-156:5, Exh. A].

4

10. Mr. Mitchell indicated there may have also been a discussion of the deliberative-process privilege during the video conference meeting. [*See* Mitchell Dep., at 156:6-18, Exh. A].

11. Mr. Mitchell understands the deliberative process privilege belongs to Denver and not the Independent Monitor and as the Independent Monitor he has no authority to waive the deliberative process privilege in the context of litigation involving Denver. [*See* Mitchell Dep., at 144:18-146:3, Exh. A].

12. Mr. Mitchell was not involved in any of the redactions of the OIM Memos in this matter. [*See* Mitchell Dep., at 144:14-17, Exh. A].

## ARGUMENT

### A. ETHICAL PRINCIPLES PRECLUDE DISCUSSION OF PRIVILEGED MATTERS WITH A FORMER OFFICIAL LIKE MR. MITCHELL

This Court possesses supervisory authority over the attorneys practicing before it. **EEOC v. Orson H. GYGI Co., Inc.,** 749 F.2d 620, 621 (10th Cir. 1984); **Sequa Corp. v. Lititech, Inc.,** 807 F.Supp. 653, 659 (D. Colo. 1992). The United States District Court for the District of Colorado has adopted the Colorado Rules of Professional Conduct with two exceptions as the Standards for Professional Conduct for attorneys practicing before the District Court. See D.Colo.L.AttyR 2(a) and (b); **Sequa Corp.,** 807 F.Supp. at 659;

5

***Gianzero v. Wal-Mart Stores, Inc.,*** 09-cv-00656-REB-BNB, 2011 U.S. Dist. LEXIS 50630 at *5 (D. Colo. May 5, 2011).

The Colorado Rules of Professional Conduct ("Colo. RPC"), Rule 4.2 addresses "Communication with Person Represented by Counsel," stating:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order.

Colo. RPC, Rule 4.2.  Comment [7] of Rule 4.2 provides guidance for communications with a represented organization, as follows:

> In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.  Consent of the organization's lawyer is not required for communication with a former constituent. If a constituent of the organization is represented in the matter by his or her own counsel, consent by that counsel to a communication will be sufficient for purposes of this Rule.   Compare Rule 3.4(f).  ***In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization***.  See Rule 4.4

Colo. RPC, Rule 4.2, Comment [7] (emphasis added).  Colorado Formal Ethics Opinion 69, "Propriety of Communicating with Employee or Former Employee of An Adverse Party Organization," provides the following guidance on the issue of communicating with former constituents on privileged issues:

> The need to inquire into the responsibilities and authority of a constituent does not apply to an organization's former constituents. Comment [7] provides explicitly that "[c]onsent of the organization's lawyer is not required for communication with a former constituent." However, as discussed above, Colo. RPC 4.2 is designed in part to preserve the

6

>confidentiality of privileged attorney-client communications. Accordingly, the inquiring attorney may not, while communicating with the organization's former constituent, inquire into privileged attorney-client communications; nor may the inquiring attorney listen while the former constituent attempts to divulge privileged communications voluntarily. The organization's privilege belongs to the organization, not the constituent, and can be waived only by the organization.

Colorado Formal Ethics Opinion 69, at 4-120, Exh. B.

Denver recognizes Rule 4.2 and Colorado Formal Ethics Opinion 69 suggest there is no general ethical prohibition against opposing counsel communicating with former government officials. Denver strongly maintains contact with Mr. Mitchell as the former Independent Monitor is qualitatively different than what is contemplated by the Rule or the Opinion. Mr. Mitchell's role under the Denver Charter and in the Denver system of government makes him a high-level former government official. Effectively, if Mr. Mitchell may be contacted by opposing counsel on an *ex parte* basis, nothing would preclude opposing counsel from similarly contacting a former Chief of Police, a former official in the Mayor's Cabinet, or a whole host of other former senior government leaders. Nothing in Rule 4.2, Ethics Opinion 69, or any precedent discovered by the undersigned counsel addresses any such situation.[2]

However, this Court need not address the general propriety of counsel for the Plaintiffs contacting and interviewing Mr. Mitchell to decide this Motion. Instead, this Court can decide this Motion based on the content of the communications between

---

[2] Denver reserves the right to revisit the propriety of counsel for the Plaintiffs' *ex parte* contact with Mr. Mitchell at all in the event Plaintiffs take certain positions in this litigation. For example, should Plaintiffs assert Mr. Mitchell is a final policymaker for Denver or attempt to admit any statement from Mr. Mitchell as an admission against interest against Denver the analysis would differ.

counsel for the Plaintiffs and Mr. Mitchell as reflected by Mr. Mitchell's deposition testimony. As established in the above Relevant Facts to the Motion, counsel for the Plaintiff inquired of Mr. Mitchell concerning the deliberative-process privilege and the OIM Memos, complained about the extent of Denver's redactions to the OIM Memos, and informed Mr. Mitchell concerning the discovery dispute concerning the deliberative-process privilege concerning the OIM Memos. Such communications are inappropriate with a former official under the Colorado Rules of Professional Conduct. Specifically, Colorado Ethics Opinion 69 precludes communications with former officials concerning matters subject to privilege. While the Opinion references the attorney-client privilege, no basis exists to differentiate between the attorney-client privilege and any other applicable privilege belonging to an organization. The logic of the Opinion as a whole supports an interpretation of the Colorado Rules of Professional Conduct as precluding *ex parte* communications by opposing counsel with former officials on any privileged-related matter regardless of the specific privilege involved.

Here, counsel for the Plaintiffs specifically raised the issue of the deliberative-process privilege for the OIM Memos with Mr. Mitchell after Denver asserted the privilege and while the issue was the subject of a discovery dispute. Any discussion with Mr. Mitchell about the contours of the deliberative-process privilege, its applicability to the OIM Memos, or anything along those lines at all is not appropriate under the Rules and the Opinion. Presumably, counsel for the Plaintiffs will argue they only discussed in "general terms" the deliberative-process privilege, the discovery dispute, and the redactions made in the OIM Memos with Mr. Mitchell and therefore somehow did not learn

anything from Mr. Mitchell that invaded Denver's unambiguously asserted privilege. Such an argument, however, misses the point of this ethical prohibition. Because this is an *ex parte* communication with a former official, it was counsel for the Plaintiffs' ethical duty and responsibility not to discuss anything related to the deliberative-process privilege with Mr. Mitchell at all. Unlike a communication in the presence of Denver's counsel, no check exists on the contents of the discussion between Mr. Mitchell and counsel for the Plaintiffs other than their own ethical responsibilities. Denver simply had no ability at all to monitor the propriety of communications to which it was not privy. No doubt exists from Mr. Mitchell's deposition testimony provided to this Court that a robust and extended discussion on these issues occurred between counsel for the Plaintiffs and Mr. Mitchell likely on more than one occasion. Applicable Colorado ethical precepts demonstrate such an *ex parte* communication with a former governmental officials is inappropriate.

B.   **THE SANCTION OF PRECLUDING MR. MITCHELL AS A WITNESS FOR THE PLAINTIFFS AND EXCLUDING THE OIM MEMOS FROM EVIDENCE IS APPROPRIATE UNDER THESE CIRCUMSTANCES**

Denver recognizes the traditionally requested relief for an ethical violation involving inappropriate *ex parte* contact is the disqualification of counsel. *See, e.g.,* **Weeks v. Ind. Sch. Dist. No. I-89,** 230 F.3d 1201 (10th Cir. 2000); **McCallum v. CSC Transp. Inc.,** 149 F.R.D. 104, 107 (M.P.N.C. 1993); **Inorganic Coatings v. Falberg,** 926 F.Supp. 517 (E.D. Pa. 1995); **Sequa Corp.,** 807 F.Supp. at 659. However, under the circumstances of this case, Denver does not believe disqualification represents an appropriate sanction. Denver reaches this conclusion after careful consideration. Denver's conclusion is based on the status of this matter, the amount of discovery that has occurred, and the fact that

because this Court has granted class certification and appointed some of Plaintiffs' counsel as class counsel a disqualification of counsel would be difficult and potentially problematic to implement.

However, Denver strongly believes some sanction for the inappropriate conduct by counsel for the Plaintiffs is warranted. Denver arrives at the sanction of precluding Mr. Mitchell from being a witness for the Plaintiffs and excluding the OIM Memos as evidence based on the notion counsel for the Plaintiffs, incorrectly in Denver's view, believe the OIM Investigation's conclusions and the OIM Memos are important evidence and Mr. Mitchell's role as the Independent Monitor overseeing the investigation and reaching the conclusions also has evidentiary significance.[3] Other courts have excluded witnesses as a sanction for ethical violations. *See, e.g.,* ***Patel v. 7-Eleven, Inc.,*** CV 14-00019 PSG (DTBx), 2015 U.S. Dist. LEXIS 92696 at *22-24 (C.D. Cal. Apr. 14, 2015) (considering exclusion of witness as a lesser sanction than disqualification of counsel); ***Golden Door Jewelry Creations v. Lloyds Underwriters Non-Marine Ass'n,*** 865 F.Supp. 1516, 1526-27 (S.D. Fla. 1994) (excluding witnesses who received monetary compensation for testimony as a sanction for ethical violation). Fed. R. Civ. P. 37 contemplates exclusion of evidence for discovery violations and the circumstances here are analogous to such an issue. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii); ***Lee v. Max Int'l, LLC,*** 638 F.3d 1318, 1320-21 (10th Cir. 2011); ***MacDougall v. Health,*** 19-cv-03456-PAB-SKC, 2011 U.S. Dist. LEXIS 180685 at *1-6 (D. Colo. Sept. 21, 2021). The exclusion of Mr. Mitchell as a witness

---

[3] Denver will address the relevance and admissibility of the OIM report in an appropriate manner before this Court consistently with this Court's Practice Standards assuming Plaintiffs list it as a trial exhibit.

for the Plaintiffs and the exclusion of the OIM Memos as evidence in this matter represents a proportional sanction given the ethical violations that occurred here. A serious and meaningful sanction needs to occur here or other counsel litigating before this Court will feel free to violate ethical rules in communicating with former government high-ranking public officials.

**C.  IF THIS COURT REJECTS DENVER'S PROPOSED SANCTION, DENVER REQUESTS THIS COURT CONSIDER ALTERNATIVE APPROPRIATE SANCTIONS AS DETERMINED BY THIS COURT**

Denver recognizes this Court has the discretion to determine an appropriate sanction under these circumstances if this Court concludes the multiple improper *ex parte* communications with Mr. Mitchell were improper. In this Motion, Denver has presented the sanction it believes appropriate. However, if this Court rejects Denver's proposed sanction, Denver requests this Court consider and impose any alternative sanction this Court determines appropriate.

## CONCLUSION

In conclusion, for the foregoing reasons, Defendant City and County of Denver respectfully requests this Court issue an Order precluding the Plaintiffs from utilizing former Independent Monitor Nicholas E. Mitchell as a witness in this matter and excluding the OIM Memos as evidence, or another appropriate sanction as determined by this Court, and for all other and further relief as this Court deems just and appropriate.

Dated this 6th day of October 2021.

        Respectfully submitted,

        By: *s/ Andrew D. Ringel*
        Andrew D. Ringel, Esq.
        Hall & Evans, L.L.C.
        1001 17th Street, Suite 300
        Denver, CO 80202
        Telephone: (303) 628-3453
        Facsimile: (303) 628-3368
        E-mail: ringela@hallevans.com

        Hollie R. Birkholz, Assistant City Attorney
        Robert Huss, Assistant City Attorney
        Lindsay M. Jordan, Assistant City Attorney
        Denver City Attorney's Office
        Civil Litigation Section
        201 West Colfax Ave., Dept. 1108
        Denver, CO 80202
        Telephone: (720) 913-3100
        Facsimile: (720) 913-3155
        E-mail: hollie.birkholz@denvergov.org
        robert.huss@denvergov.org
        lindsay.jordan@denvergov.org

        *Counsel for the City and County of Denver and the individually named Denver Police Department Officers*

## **CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on this 6th day of October, 2021, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve the following:

Arnold & Porter Kaye Scholer LLP
Colin Michael O'Brien
Edward Packard Aro
Matthew J. Douglas
Timothy R. Macdonald
Patrick Reidy
Leslie Bailey
Gerardo Mihares-Shafai
Andreas Moffett
colin.obrien@arnoldporter.com
ed.aro@arnoldporter.com
matthew.douglas@arnoldporter.com
timothy.macdonald@arnoldporter.com
patrick.reidy@arnoldporter.com
leslie.bailey@arnoldporter.com
gerardo.mijares-shafai@arnoldporter.com
Andreas.moffett@arnoldporter.com

ACLU of Colorado
Arielle Kay Herzberg
Mark Silverstein
Sara R. Neel
aherzberg@aclu-co.org
msilverstein@aclu-co.org
sneel@aclu-co.org

Elizabeth Wang
Makeba Rutahindurwa
Loevy & Loevy
elizabethw@loevy.com
makeba@loevy.com

*s/Nicole Marion, Legal Assistant*
Nicole Marion
Hall & Evans, L.L.C.