# IN THE UNITED STATES DISTRICT COURT
# OF THE DISTRICT COURT OF COLORADO

ELISABETH EPPS, *et al.*,
       Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al*.,
       Defendants.

Civil Action Nos. 1:20-cv-01878-RBJ & 1:20-cv-01922-RBJ-MEH

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION TO AMEND COMPLAINT

Since the outset of this case, plaintiffs have asserted *Monell* liability against the City for its policies, practices, or customs of "us[ing] less-lethal weapons to control and suppress protests" and "failing to properly train, supervise, and discipline Officers in Denver regarding the appropriate use of force against protesters." Compl. ¶¶ 154, 156. Throughout discovery, plaintiffs have sought to learn which particular officers attacked them and to determine the contours of the City's policies, practices, and customs that led to the constitutional violations.

At the time of the original Complaint, plaintiffs had no readily available way to identify the officers who shot or attacked them. The City has largely disclaimed any ability to identify the officers who shot and assaulted peaceful protestors. Likewise, because cities do not typically publish manuals documenting their unconstitutional actions, plaintiffs had to spend the past year discovering precisely what policies, practices, or customs led to their harm. Plaintiffs and their counsel reviewed hundreds of hours of videotape, deposed numerous individuals with first-hand knowledge of the protests, and reviewed countless documents to piece together a clearer narrative of these events. Now the City accuses *Plaintiffs* of undue delay tactics and claims unfair prejudice.

Precisely the opposite. Before the close of discovery, before any dispositive briefing, and more than six months before trial, Plaintiffs moved to amend their complaint to add specificity to their *existing* claims based on hundreds of hours of discovery by (1) naming as defendants the responsible officers and another municipality uncovered through discovery, (2) adding particularity to the basis for the existing *Monell* claim, and (3) requesting punitive damages once proper justification was established to do so. The *Epps* plaintiffs proposed amendments are no different than those of the *Fitouri* plaintiffs, which this Court recently granted. Plaintiffs have satisfied the broad and permissive standard for amendment of pleadings, and respectfully request that the Court grant the motion to amend.

The City's general and vague objections fall far short of establishing the requisite "undue delay" or "undue prejudice" to defeat a motion to amend. With respect to the addition of Keith Valentine and Jonathan Christian as named defendants, the City contends, without elaboration, that those DPD officers "had no reason to suspect" that Plaintiffs would sue them. (Resp. at 4–5.) Such "[g]eneral, non-specific assertions of prejudice are not sufficient." *Zurich Am. Ins. Co. v. Int'l Fid. Ins. Co.*, 204 F.R.D. 111, 112 (N.D. Ill. 2001). But the claim of ignorance also rings hollow: These officers presumably knew what they did during the protests. Moreover, before Plaintiffs deposed these officers, Plaintiffs provided the City with a detailed description of how these officers shot Plaintiff Epps without justification. Indeed, Plaintiffs notified the City of their intent to amend the Complaint to add those officers to this case three weeks before the City took Plaintiff Epps' deposition, so they cannot argue that Ms. Epps' deposition would have proceeded any differently. If Officers Valentine and Christian did not anticipate being named as defendants, that failure derives from the City's communication with its officers, not from delay by Plaintiffs.

2

With respect to Plaintiffs' claim for municipal liability, the City contends without basis that the amendment reflects a "dramatically different and vastly expanded" theory of *Monell* liability. (Resp. at 5–7.) Notably, the City raised no such concern to the proposed Second Amended Complaint filed by the *Fitouri* Plaintiffs in this action, which included near-identical amendments and which this Court granted (and which the City must now defend). (Dkt. 142-1, ¶¶ 376, 379, 386, 389, 400–407.)

The City's characterization also is inaccurate. As the City acknowledges (at 5), Plaintiffs' *Monell* theory has, since the original complaint, centered on the City's policies, practices, or customs of "us[ing] less-lethal weapons to control and suppress protests." Through discovery, Plaintiffs have been able to refine and add specificity to that articulation. Indeed, all seven "aspects" of *Monell* liability listed in the City's response brief (at 6) relate either to the City's "use [of] less-lethal weapons" (#1, 2, 4, 6, 7) or to the City's approach to "control[ling] and suppress[ing] protests" (#1, 2, 3, 4, 5, 6, 7). Thus, the additional allegations in the amended complaint are in no way "dramatically different" from the initial allegations; there is simply more detail based on the extensive discovery taken during the last 13 months.

Moreover, the City has no basis to claim surprise or prejudice as to Plaintiffs' *Monell* theories. Paragraph 156 of the original complaint states, "The City decision makers have received ample notice that Officers in Denver were using 'less-lethal' force against protesters to control and suppress demonstrations in the absence of any imminent threat to safety, including 150 complaints." Paragraph 154 alleges that "City policy makers have acted with deliberate indifference to the constitutional rights of protesters and would-be protesters . . . by failing to properly train, supervise, and discipline Officers in Denver regarding the appropriate use of force

3

against protesters." These issues were further detailed in Plaintiffs' discovery responses (Ex. A at 52–59) and in Plaintiffs' expert reports served two months ago (Ex. B at 6, 32, 35, 46, 49, 54, 60, 67, 72, 75, 76, 78, 79 and Ex. C at 3, 7–8, 11, 14, 17). Moreover, they have been at the heart of almost every officer deposition and discovery dispute, and many were highlighted in the Independent Monitor's report. Unlike *Pruitt v. Alamosa Cty. Sheriff's Office*, No. 18-cv-01765, 2020 U.S. Dist. LEXIS 123106 (D. Colo. July 14, 2020) (cited in Resp. at 7), in which a new *Monell* theory was raised for the first time in response to summary judgment, Plaintiffs here have consistently complained of the same unconstitutional conduct from the outset. As new facts have come into focus through discovery, Plaintiffs understandably and properly are able to articulate their theories with greater precision. That is not undue prejudice; that's litigation. Such refinement is expected in civil rights litigation alleging unconstitutional conduct by a municipality.

Finally, the City objects to adding claims for punitive damages against Jonathan Christian and Keith Valentine, arguing the addition is untimely. (Resp. at 7–8.) The City made the same argument in opposition to the *Fitouri* Plaintiffs' Second Amended Complaint (Dkt. 148 at 9), and the Court rejected it (Dkt. 152). In any event, the amendment is timely because Plaintiffs had no basis to claim punitive damages at the start of the case against unknown officers in light of unknown facts. Having now reviewed the evidence, including the videos of Officer Christian and Officer Valentine shooting Plaintiff Epps with their pepperball guns with no justification, there is a factual and legal basis to seek punitive damages.[1] The unintended effect of the City's argument,

---

[1] *Las Vegas Ice v. Far West Bank*, 893 F.3d 1182 (10th Cir. 1990) (cited at Resp. 7), is distinguishable because the proposed amendments came "after partial summary judgment was entered," would have "substantially broaden[ed] the issues for trial," and the factual basis for the amendment was known at the time the complaint was filed. Likewise, in *Cook v. Olathe Health*

4

if accepted, would be to encourage litigants to demand punitive damages in every future *Doe* case at the outset, lest the City claim that once the facts were uncovered, it is too late.[2]

The *Epps* Plaintiffs respectfully ask this Court to grant leave to file the proposed Amended Complaint under Rule 15(a)(2).

Dated: October 8, 2021

Mark Silverstein
ACLU FOUNDATION OF COLORADO
303 E. Seventeenth Ave., Suite 350
Denver, Colorado 80203
Telephone: (303) 777-5482
Facsimile: (303) 777-1773
Msilverstein@aclu-co.org

Respectfully submitted,

By: */s/ Timothy R. Macdonald*
Timothy R. Macdonald
ARNOLD & PORTER KAYE SCHOLER LLP
1144 Fifteenth Street, Ste. 3100
Denver, Colorado 80202
Telephone: (303) 863-1000
Facsimile: (303) 863-2301
Timothy.Macdonald@arnoldporter.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2021, the foregoing **REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND COMPLAINT** was filed with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record.

*/s/ Tanya D. Huffaker*
Tanya D. Huffaker

---

*Systems, Inc.*, No. 10-cv-2133, 2011 WL 1527026, at *3 (D. Kan. Apr. 20, 2011) (cited at Resp. 8), the amendment came after the close of discovery, seven months after the deadline for amendments, and the only factual support for the amendment was known and claimed in the original complaint.

[2] The City objects to the removal of *pro se* Plaintiff Cidney Fisk's allegations from the Amended Complaint (Resp. at 2). Those allegations were removed to avoid the misimpression that Cidney Fisk was represented by undersigned counsel. Cidney Fisk's original Complaint is still operative as to her.

5