# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT COURT OF COLORADO**

Civil Action Nos. 1:20-cv-01878-RBJ & 1:20-cv-01922-RBJ-MEH

BLACK LIVES MATTER 5280, *et al.*

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

Defendants,

*consolidated with*

SARA FITOURI, *et al.*,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

    Defendants.

---

**BLACK LIVES MATTER 5280 PLAINTIFFS' OBJECTIONS & RESPONSES TO
DEFENDANTS' FIRST SET OF DISCOVERY REQUESTS**

---

    Pursuant to Fed. R. Civ. P. 26, 33, and 34, Plaintiffs hereby submit the following objections and responses to Defendant City and County of Denver's First Set of Combined Discovery to Plaintiffs ("Defendants' Discovery Requests").

    In responding to the interrogatories and requests for production ("RFPs") included within Defendants' Discovery Requests, Plaintiffs do not waive any objections that may be applicable to: (a) the use, for any purpose, of any information or documents given in response to Defendants' interrogatories or requests for production; or (b) the admissibility, relevance, or materiality of any of the information or documents to any issues in this case.

1



### INTERROGATORY NO. 6

To the extent that you allege Denver maintained any well-settled custom or practice that caused your rights to be violated, please describe with specificity each such custom or practice and the factual bases substantiating the existence of such custom or practice.

### PLAINTIFFS' RESPONSE TO INTERROGATORY NO. 6

Plaintiffs object to this interrogatory on the ground that it is premature because the Defendant City of Denver has not yet produced documents or responded to Plaintiffs' written discovery requests relating to its liability in this case. Without waiving said objections, Plaintiffs state:

The Defendants have engaged in repeated, widespread violations of law, as outlined above, over the course of several nights, shutting down the exercise of First Amendment activities through the use of indiscriminate and unreasonable force against thousands of

protestors; imposing citywide curfews without accommodating, or even attempting to accommodate, the right to peaceful assembly and protest; at times dispersing lawful and peaceful assemblies without warning and without providing any directions, means, or opportunity to disperse before taking aggressive police action; hitting at least hundreds of protestors with "less-lethal" weapons and/or tear gassing or pepper spraying them; selectively enforcing the curfew against protestors by arresting them for violating an unlawful curfew and thereby placing them at great risk of exposure to COVID-19; and harassing, intimidating, and/or using force on individuals attempting to record or document police activity in public. In conjunction with a history of protest-related constitutional violations, Defendants' repeated widespread and unlawful acts over several nights and involving many locations constitute an unlawful custom and policy of violating protest participants' constitutional rights. Specifically, the Media produced by Plaintiffs to date support Plaintiffs' municipal liability claim against the City. On numerous, documented occasions, Defendant Officers escalated the use of force without any justification.

The Defendant City failed to train its officers in the constitutional responses to peaceful demonstrations, despite the history of such violations in the past and despite the obvious need for such training. The recurrence of the same violations with respect to these protestors indicates an intentional refusal to preserve the constitutional rights of protestors. The Defendant City failed to adopt adequate policies in the constitutional responses to peaceful demonstrations, despite the history of such violations in the past and despite the obvious need for adequate policies. The recurrence of the same violations with respect to these protestors indicates an intentional refusal to preserve the constitutional rights of protestors.

For instance, the DPD and the Defendant City have been called on numerous times dating back at least to 2011 to investigate its use of pepper balls and other chemical agents against protestors. After Denver police fired pepper balls at peaceful protestors on October 29th, 2011 during the Occupy Denver demonstrations in Civic Center Park, the Defendant City received several complaints and conducted an internal debriefing. Despite receiving notice of the DPD's unconstitutional actions, the Defendant City and the DPD deliberately chose not to conduct any further review of the department's less-than-lethal force policy, despite the patently unlawful way in which pepper ball guns had been used against protestors and against the recommendation of the Office of the Independent Monitor, which described the decision not to examine the incident and the underlying policies as a "missed opportunity."

The Defendant City's policy, practice, and custom of authorizing officers to use "less-lethal" weapons to control and suppress protests was the moving force behind the violations of Plaintiffs' and class members' constitutional rights. These violations are also a direct result of the Defendant City's use of the services of law enforcement officers from other jurisdictions, who were also authorized to use "less-lethal" weapons to control and suppress protests. The Defendant City and its final policymakers have acted with deliberate indifference to the constitutional rights of protestors by authorizing, both explicitly and implicitly, the use of "less-lethal" force against protestors who do not pose any safety threat; by failing to properly train, supervise, and discipline officers regarding the proper use of force against protestors; by failing to rectify the unconstitutional custom of officers using "less-lethal" force to control and suppress demonstrations; and by failing to provide adequate policies. This constituted a conscious choice by the Defendant City not to properly train, supervise, discipline, rectify, or provide adequate policies on these issues.

Moreover, the Defendant City is responsible for the actions of any non-DPD officers whose services were used during the protests. By using those services, the Defendant City was required to ensure that all officers complied with protestors' constitutional rights.

DPD Chief of Police Paul Pazen was fully knowledgeable and apprised of the actions of Defendant Officers described above and, upon information and belief, was on site on one or more days of the protest, observing this DPD operation, without repudiating or stopping the actions of the Defendant Officers, thereby ratifying them. Moreover, on the morning of May 29, 2020, Mayor Michael Hancock and Chief Pazen publicly praised the Defendant Officers for their "great restraint" and "tremendous restraint" during protests in Denver and said that the actions of the DPD in the use of "less-lethal" weapons against protestors was proper. Thus, the Defendant City, through its final policymakers, ratified the conduct of the Defendant Officers. This caused the violence and misconduct by the Defendant Officers to continue that day and in the days after the Mayor and the Chief of Police made these comments.

The Defendant City's final policymakers have received ample notice that officers were using "less-lethal" force against protestors to control and suppress demonstrations in the absence of any imminent threat to safety, including 150 complaints about the DPD in one 72-hour period, and widely publicized videos and firsthand accounts circulated through the local, state, and international press.

**INTERROGATORY NO. 7**

To the extent you claim your rights were violated as a result of Denver's inadequate training or supervision, and/or discipline of its employees, please describe with specificity the alleged inadequacies and the factual bases substantiating their existence.

**PLAINTIFFS' RESPONSE TO INTERROGATORY NO. 7**

55

Plaintiffs object to this interrogatory on the ground that it is premature because the Defendant City of Denver has not yet produced documents or responded to Plaintiff's written discovery requests relating to its liability in this case. Without waiving said objections, Plaintiffs state:

The Defendants have engaged in repeated, widespread violations of law, as outlined above, over the course of several nights, shutting down the exercise of First Amendment activities through the use of indiscriminate and unreasonable force against thousands of protestors; imposing citywide curfews without accommodating, or even attempting to accommodate, the right to peaceful assembly and protest; at times dispersing lawful and peaceful assemblies without warning and without providing any directions, means, or opportunity to disperse before taking aggressive police action; hitting at least hundreds of protestors with "less-lethal" weapons and/of tear gassing or pepper spraying them; selectively enforcing the curfew against protestors by arresting them for violating an unlawful curfew and thereby placing them at great risk of exposure to COVID-19; and harassing, intimidating, and/or using force on individuals attempting to record or document police activity in public. In conjunction with a history of protest-related constitutional violations, Defendants' repeated widespread and unlawful acts over several nights and involving many locations constitute an unlawful custom and policy of violating protest participants' constitutional rights. Specifically, the Media produced by Plaintiffs to date support Plaintiffs' municipal liability claim against the City. On numerous, documented occasions, Defendant Officers escalated the use of force without any justification.

The Defendant City failed to train its officers in the constitutional responses to peaceful demonstrations, despite the history of such violations in the past and despite the obvious need for

56

such training. The recurrence of the same violations with respect to these protestors indicates an intentional refusal to preserve the constitutional rights of protestors. The Defendant City failed to adopt adequate policies in the constitutional responses to peaceful demonstrations, despite the history of such violations in the past and despite the obvious need for adequate policies. The recurrence of the same violations with respect to these protestors indicates an intentional refusal to preserve the constitutional rights of protestors.

For instance, the DPD and the Defendant City have been called on numerous times dating back at least to 2011 to investigate its use of pepper balls and other chemical agents against protestors. After Denver police fired pepper balls at peaceful protestors on October 29th, 2011 during the Occupy Denver demonstrations in Civic Center Park, the Defendant City received several complaints and conducted an internal debriefing. Despite receiving notice of the DPD's unconstitutional actions, the Defendant City and the DPD deliberately chose not to conduct any further review of the department's less-than-lethal force policy, despite the patently unlawful way in which pepper ball guns had been used against protestors and against the recommendation of the Office of the Independent Monitor, which described the decision not to examine the incident and the underlying policies as a "missed opportunity."

The Defendant City's policy, practice, and custom of authorizing officers to use "less-lethal" weapons to control and suppress protests was the moving force behind the violations of Plaintiffs' and class members' constitutional rights. These violations are also a direct result of the Defendant City's use of the services of law enforcement officers from other jurisdictions, who were also authorized to use "less-lethal" weapons to control and suppress protests. The Defendant City and its final policymakers have acted with deliberate indifference to the constitutional rights of protestors by authorizing, both explicitly and implicitly, the use of "less-

lethal" force against protestors who do not pose any safety threat; by failing to properly train, supervise, and discipline officers regarding the proper use of force against protestors; by failing to rectify the unconstitutional custom of officers using "less-lethal" force to control and suppress demonstrations; and by failing to provide adequate policies. This constituted a conscious choice by the Defendant City not to properly train, supervise, discipline, rectify, or provide adequate policies on these issues.

Moreover, the Defendant City is responsible for the actions of any non-DPD officers whose services were used during the protests. By using those services, the Defendant City was required to ensure that all officers complied with protestors' constitutional rights.

DPD Chief of Police Paul Pazen was fully knowledgeable and apprised of the actions of Defendant Officers described above and, upon information and belief, was on site on one or more days of the protest, observing this DPD operation, without repudiating or stopping the actions of the Defendant Officers, thereby ratifying them. Moreover, on the morning of May 29, 2020, Mayor Michael Hancock and Chief Pazen publicly praised the Defendant Officers for their "great restraint" and "tremendous restraint" during protests in Denver and said that the actions of the DPD in the use of "less-lethal" weapons against protestors was proper. Thus, the Defendant City, through its final policymakers, ratified the conduct of the Defendant Officers. This caused the violence and misconduct by the Defendant Officers to continue that day and in the days after the Mayor and the Chief of Police made these comments.

The Defendant City's final policymakers have received ample notice that officers were using "less-lethal" force against protestors to control and suppress demonstrations in the absence of any imminent threat to safety, including 150 complaints about the DPD in one 72-hour period,

and widely publicized videos and firsthand accounts circulated through the local, state, and international press.

**INTERROGATORY NO. 8**

With respect to any Media produced in response to these requests or affirmatively disclosed by you, please identify the individuals who made, took, or recorded the Media, describe the device used to create any such Media, and the chain of custody and/or control of the device/Media file between the date of the incident and the present, and describe any steps taken by you or anyone acting on your behalf to obtain and preserve such Media and devices.

**PLAINTIFFS' OBJECTIONS TO INTERROGATORY NO. 8**

Plaintiffs object to this interrogatory because it is overbroad, not likely to lead to the discovery of admissible evidence, and unduly burdensome, especially with respect Media that Plaintiffs did not create themselves (such as Media obtained from third parties and produced in this case). This interrogatory also contains at least 3 discrete subparts which independently count toward the limit on the number of interrogatories allowed in this case. Plaintiffs will identify the individuals who made, took, or recorded the Media that they created themselves or obtained from a person personally known to them.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

**BLACK LIVES MATTER 5280'S AND DR. APRYL ALEXANDER'S RESPONSE TO INTERROGATORY NO. 8**

| Bates Number | Creator | Device | Chain of custody |
|---|---|---|---|
| BLM_00000001 | Apryl Alexander | iPhone | Transmitted directly to counsel from Apryl Alexander. |
| BLM_00000002 | Apryl Alexander | iPhone | Transmitted directly to counsel from Apryl Alexander. |
| BLM_00000003 | Apryl Alexander | iPhone | Transmitted directly to counsel from Apryl Alexander. |
| BLM_00000004 | Apryl Alexander | iPhone | Transmitted directly to counsel from Apryl Alexander. |

Dated: November 5, 2020

        Respectfully submitted,

By: s/ *Timothy R. Macdonald*
Attorney for Black Lives Matter 5280 Plaintiffs

Timothy R. Macdonald
Matthew J. Douglas
Ed Aro
R. Reeves Anderson
Colin M. O'Brien
Kathleen K. Custer
Anya A. Havriliak
**ARNOLD & PORTER KAYE SCHOLER LLP**
1144 Fifteenth Street, Ste. 3100
Denver, Colorado 80202
Telephone: (303) 863-1000
Facsimile: (303) 863-2301
Timothy.Macdonald@arnoldporter.com
Matthew.Douglas@arnoldporter.com
Ed.Aro@arnoldporter.com
Reeves.Anderson@arnoldporter.com
Colin.Obrien@arnoldporter.com
Katie.Custer@arnoldporter.com
Anya.Havriliak@arnoldporter.com

*In cooperation with the American Civil Liberties Union Foundation of Colorado*

Mark Silverstein
Sara Neel
Arielle Herzberg
**American Civil Liberties Union Foundation of Colorado**
303 E. Seventeenth Ave., Suite 350
Denver, Colorado 80203
Telephone: (303) 777-5482
Facsimile: (303) 777-1773
Msilverstein@aclu-co.org
Sneel@aclu-co.org
Aherzberg@aclu-co.org

*Counsel for Black Lives Matter 5280 Plaintiffs*

Mark Silverstein
Sara Neel
Arielle Herzberg
**American Civil Liberties Union Foundation of Colorado**
303 E. Seventeenth Ave., Suite 350
Denver, Colorado 80203
Telephone: (303) 777-5482
Facsimile: (303) 777-1773
Msilverstein@aclu-co.org
Sneel@aclu-co.org
Aherzberg@aclu-co.org

*Counsel for Plaintiffs*