**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| ELISABETH EPPS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF DENVER, *et al.*, <br><br> Defendants, | Civil Action Nos. 1:20-cv-01878-RBJ & <br> 1:20-cv-01922-RBJ-MEH (consol.) |

_____

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO PRECLUDE
FORMER INDEPENDENT MONITOR NICHOLAS E. MITCHELL AS A WITNESS
AND OIM INTERVIEW MEMOS AS EVIDENCE**
_____

There is no basis in law or fact to sanction Plaintiffs for their counsel's conversations with former Independent Monitor Nicholas Mitchell. Plaintiffs' counsel did not speak to Mr. Mitchell about any information that is covered by the attorney-client privilege, did not speak to him about any content redacted by the City pursuant to the deliberative-process privilege, and did not show him the redacted memos from the Office of the Independent Monitor.

As a legal matter, Colorado Rule of Professional Conduct 4.2—by its own terms and as interpreted in a Formal Opinion by the Ethics Committee of the Colorado Bar Association—does not prohibit communications with a former employee or former constituent of a party. It prohibits communicating with former employees only with respect to communications protected by the attorney-client privilege. Despite casting aspersions on the propriety of *ex parte* communications with former government officials in general, the City concedes that Plaintiffs' counsel were permitted to have *ex parte* conversations with Mr. Mitchell. Dkt. 169 (Mot.) at 7. The City further

1

identifies no legal authority expanding Rule 4.2 to cover the deliberative-process privilege at all. *Id*. at 8. The Court can and should deny the City's motion on this basis alone.

As a factual matter, even if Rule 4.2 were expanded—for the first time here—to cover communications about the deliberative-process privilege, there were no communications seeking to obtain information arguably covered by the deliberative-process privilege. The City has come nowhere close to making a showing that Plaintiffs' counsel discussed privileged information with Mr. Mitchell in *ex parte* communications. Mr. Mitchell's sworn deposition testimony does not even hint that purportedly privileged information was disclosed or discussed during his communications with Plaintiffs' counsel.

The City's motion is a diversion tactic. The less-redacted versions of the OIM memos that the City was forced to produce earlier this month reveal that the City's original redactions hid damaging factual information that was unprotected by any privilege. Now, having been caught in its own evasion, the City seeks to distract attention by throwing meritless accusations at Plaintiffs' counsel. The City's real goal—to hide from the jury evidence favorable to Plaintiffs and damaging to Defendants—is evident in its request: it seeks not to disqualify Plaintiffs' counsel (which it admits is the normal sanction if there were in fact an ethical violation), but to exclude Mr. Mitchell and the OIM memos as evidence, and thereby "obviate the need" for this Court to scrutinize whether the City's remaining redactions are warranted. Mot. at 2 n.1. The City's gambit is improper and its motion should be denied.

## RELEVANT FACTS

In December 2020, the OIM issued a report highly critical of DPD's response to the George Floyd Protests. Ex. 1 (OIM Report). On April 1, 2021, Plaintiffs served Joint Request for Production No. 20, which sought the interview memos created by OIM. Ex. 2 (Joint RFP No. 20).

On April 22, 2021, Mr. Mitchell met via video conference with counsel for the Epps and Fitouri Plaintiffs. Ex. 3 (Wang Decl.) ¶ 3; Ex. 4 (Mitchell Dep.) at 149:11–22; Ex 5 (Macdonald Decl.) ¶ 4. In his deposition, Mr. Mitchell described the meeting as follows:

> I remember there were questions about the report, questions about the investigation that I conducted. I remember there were particular questions about body-worn cameras and conclusions that I drew about body-worn cameras, and maybe some of the interview memos or sort of interview process. And the process for creating interview memos may have come up, or maybe I talked about that with Tim on the phone at a different point.

Ex. 4 at 150:20–151:5; *id.* at 156:10–11 ("I remember a lot of discussion about body-worn cameras …."). There was no discussion of redactions to the OIM interview memos, which the City had not yet produced. Ex. 3 ¶¶ 5, 9; Ex. 5 ¶¶ 6, 10. Mr. Mitchell was not shown any documents. *Id.*; Ex. 4 at 151:6–10. Nor was there any discussion of any information covered by the attorney-client or deliberative-process privilege. Ex. 3 ¶¶ 7–10; Ex. 5 ¶¶ 8–11. At no time did Mr. Mitchell—who is a lawyer—indicate that he was represented by counsel for the City, and Plaintiffs' counsel did not have any knowledge that he was represented at all. Ex. 3 ¶¶ 4, 11; Ex. 5 ¶¶ 5, 12.

On May 10, 2021, the City responded to Joint Request for Production No. 20 and produced heavily redacted OIM interview memos. The parties met and conferred, and a telephonic discovery dispute hearing was held on May 20, 2021. Ex. 6 (Tr. of 5/20/21 Hearing). During that hearing, counsel for the City represented to the Court: "the only thing that the city is trying to protect in

3

this context is mental impressions and the assessments and the candid information that was provided *that's not factual in nature* related to the investigation that the Office of Independent Monitor conducted." *Id.* at 4:14–19 (emphasis added). Based on the representations of counsel for the City, the Court denied Plaintiffs' motion to compel. *Id.* at 6:5–12. The parties thereafter conferred about a date for Mr. Mitchell's deposition.

After receiving the heavily redacted OIM memos on May 10, Mr. Macdonald spoke with Mr. Mitchell on the phone. *See* Ex. 4 at 153:8–11; Ex. 5 ¶ 7. As Mr. Mitchell described during his deposition, Mr. Macdonald informed him that there was a discovery dispute over the redacted memos. Ex. 4 at 155:2–9; *id.* at 155:25–156:5. Mr. Mitchell understood that the discovery dispute concerned the City's assertion of the deliberative-process privilege. *Id.* at 155:10–13. However, there was no discussion of any privileged information. Ex. 5 ¶¶ 8–11. Mr. Macdonald never had any discussion with Mr. Mitchell about what information was redacted in the OIM memos; indeed, Plaintiffs' counsel never even showed Mr. Mitchell the redacted memos. Ex. 5 ¶¶ 6, 10; Ex. 3 ¶¶ 5, 9. The last time Mr. Mitchell saw the memos (before his deposition) was when he was drafting the OIM report, in fall 2020. Ex. 4 at 144:7–13. The City admitted this in its response to Plaintiffs' motion to reconsider. Dkt. 141 at 8. Once again, at no time during Mr. Mitchell's discussions with Plaintiffs' counsel did Mr. Mitchell indicate that he was represented by counsel for the City. Ex. 3 ¶¶ 4, 11; Ex. 5 ¶¶ 5, 12.

On June 4, 2021, the City sent Plaintiffs a letter stating for the first time that the City Attorney's Office "will" be representing Mr. Mitchell because he was working in the course and scope of his employment when he prepared the OIM Report, and claiming that Plaintiffs' contact with Mr. Mitchell was improper. Ex. 7 (6/4/21 Birkholz Ltr.) at 2. The City's letter recognized that

4

Plaintiffs had no prior knowledge that the City was asserting representation of Mr. Mitchell: "now that you are aware of the City's representation of Mr. Mitchell, and the basis therefore, please direct all future communications with respect to his deposition or any other matter through our office." *Id.* at 3.

Plaintiffs responded on June 8, 2021, explaining that the rules did not prohibit Plaintiffs' counsel from communicating with former employees of a represented organization, and that counsel's communications with Mr. Mitchell had been completely permissible and consistent with the rules of professional conduct. Ex. 8 (6/8/21 Sebba Email). Plaintiffs also stated:

> Plaintiffs agree not to seek attorney-client privileged information from Mr. Mitchell. In view of that representation and the above cited opinions, we trust that this issue is resolved. To the extent Mr. Mitchell has agreed to be represented by the City Attorney's Office, please provide evidence of such an agreement.

*Id.* at 1. The City never responded to this email and has never provided Plaintiffs with any evidence that Mr. Mitchell, a former employee, has ever requested representation by the City's counsel. Nevertheless, Plaintiffs' counsel did not have any communications with Mr. Mitchell after receiving the City's June 4, 2021 letter. Ex. 3 ¶ 13; Ex. 5 ¶ 14.

Mr. Mitchell was deposed on June 25, 2021. Ex. 4. At no time in the three months after Mr. Mitchell testified at his deposition that he had conversations with Plaintiffs' counsel did the City move for sanctions based on any alleged impropriety in those conversations. Nor did the City raise the specter of such concerns with Plaintiffs' counsel.

On July 27, Plaintiffs moved to reconsider the Court's ruling on the OIM memos based in part on Mr. Mitchell's deposition testimony, which revealed that there was a "0 percent chance that every single word" in the redacted sections of the memos "reflects an opinion from me or a

5

member of my team," Ex. 4 at 20:20–22. *See* Dkt. 135. On September 15, the Court granted Plaintiffs' motion to reconsider, instructing:

> The Court suggests that defense counsel reexamine the memos to be sure that factual information was not redacted, i.e., that only thoughts and mental impressions from the interviews were redacted. … if plaintiffs' counsel essentially does not trust their representations; then defendant may submit the memos for in camera inspection. *The Court expects complete candor on both sides*.

Dkt. 150 (emphasis added).

On Friday, October 1, 2021, the City produced less-redacted versions of the memos. *See* Dkt. 176, Exs. A–U (OIM memos produced on October 1, 2021, with previously redacted portions highlighted). A comparison of the originally produced memos and the less-redacted versions of the memos reveals that the original redactions were improper, and that many of the withdrawn redactions attempted to conceal from Plaintiffs unfavorable statements made to Mr. Mitchell and his staff by DPD personnel about their response to the protests. Dkt. 176.

On Monday, October 4—the next business day after the City was forced to produce its less-redacted memos in response to the Court's order—counsel for the City informed Plaintiffs that the City intended to seek sanctions for "improper ex parte communications" with Mr. Mitchell. Ex. 9 (Wang-Ringel Emails) at 3. This was over three months after the City first learned that Mr. Mitchell had communicated with Plaintiffs' counsel prior to his deposition and prior to the City's notice that its counsel would be representing Mr. Mitchell.[1]

---

[1] It could have been more than three months since the City learned this fact if the City's counsel talked to Mr. Mitchell (whom they claim to represent) before his deposition about conversations he had with Plaintiffs' counsel.

**ARGUMENT**

**I.     Plaintiffs' Counsel Did Not Violate Any Ethical Rule.**

Colorado Rule of Professional Conduct 4.2 ("Communication with Person Represented by Counsel") provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

RPC 4.2.

As an initial matter, none of Plaintiffs' counsel knew that the City's lawyers claimed to represent Mr. Mitchell before June 4, 2021, when the City sent a letter asserting that the City's counsel "will . . . be" representing Mr. Mitchell. Ex. 7 at 2. Since receiving that letter, Plaintiffs' counsel have had no *ex parte* communication with Mr. Mitchell. Ex. 3 ¶ 13; Ex. 5 ¶ 14. As such, the City's motion does not argue that contact with Mr. Mitchell was improper on the basis that Mr. Mitchell was represented in this matter when he spoke with Plaintiffs' counsel. Rather, the City argues that because Mr. Mitchell formerly worked for a represented party in this case (i.e., the City of Denver), *ex parte* communication was prohibited. This position glosses over two critical facts: (1) Mr. Mitchell is a *former* employee of the City, and (2) the limited prohibition on *ex parte* communications with former employees extends only to matters covered by the attorney-client privilege. Each issue is addressed below.

The City insinuates in the introduction of its motion that *ex parte* communication with former government officials may be *per se* unethical, Mot. at 2, and waits until page seven to concede that "there is no general ethical prohibition against opposing counsel communicating with former government officials," *id*. at 7. The City's belated concession is well-founded. Comment 7

7

to Rule 4.2 provides that "Consent of the organization's lawyer is not required for communication with a *former* constituent." RPC 4.2, cmt. 7 (emphasis added). The Ethics Committee of the Colorado Bar Association reiterates this point in Formal Opinion 69. Dkt. 169-2 at 1–2 ("Consent of the organization's lawyer is not required for communication with a former constituent.").

Curiously, the City argues that the clear allowance for *ex parte* communications with former constituents should be "qualitatively different" when government officials are involved, Mot. at 7, implying that public access to former government officials should be *more* restricted. That position is exactly backwards. Formal Opinion 93, which "supplements Opinion 69 and provides more particular guidance with respect to contacts with government organizations under Rule 4.2," rejects the City's position. Opinion 93 at 1 (Feb. 2016), https://bit.ly/3Grs1Ka. The Committee concludes that even in the context of *current* government employees "a *narrower* reading of the prohibition on *ex parte* contacts is required to balance properly the salutary purpose of Rule 4.2—shielding a represented party from improper approaches—with the fundamental First Amendment rights at stake when dealing with a governmental organization." *Id.* at 3.

Returning to Opinion 69 concerning *ex parte* communication with former constituents, the only limitation on the blanket permission is set forth in the last sentence of Opinion 69: "A former constituent of a represented organization may be interviewed *ex parte* with regard to all matters except as to communications which are the subject of the attorney-client privilege." Opinion 69 at 4-120. Plaintiffs' counsel never spoke to Mitchell about any communications that are the subject of the attorney-client privilege, and the City does not contend otherwise. Ex. 3 ¶¶ 7–8; Ex. 5 ¶¶ 8–9. Accordingly, there could be no violation of Rule 4.2.

Having no basis for sanctions under the language of Rule 4.2, comment 7, or Opinion 69, the City asks the Court to *extend* Rule 4.2 to cover communications that touch upon information protected by the deliberative-process privilege. But the City cites no case, ethics opinion, or any other authority extending Rule 4.2 in that way. That fact alone warrants denying their motion for sanctions: Plaintiffs could not be sanctioned based on an extension of a rule that would be created for the first time here and of which Plaintiffs had no notice.

The City's inability to cite authority for extending Rule 4.2 to the deliberative-process privilege makes sense in context. Rule 4.2, which generally prohibits communications with represented persons outside the presence of their counsel, is designed to safeguard the special *attorney-client* relationship. It is no surprise, then, that courts have consistently interpreted it to protect *attorney-client* communications. *E.g.*, *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 913 F. Supp. 1306, 1316 (N.D. Iowa 1996) ("Until and unless the attorney-client privilege is properly asserted, the court will not restrict *ex parte* communications by MCC with any unrepresented former employees of Terra."); *Smith v. Kalamazoo Ophthalmology*, 322 F. Supp. 2d 883, 890–91 (W.D. Mich. 2004) ("[A]n attorney may have *ex parte* contact with an unrepresented former employee of an organizational party, subject to the limitation that the attorney may not inquire into areas subject to the attorney-client privilege or work product doctrine.").

Even then, courts have been careful to delimit the rule to allow inquiry into underlying *facts*, which are distinct from attorney-client communications. *See Clark v. Beverly Health & Rehab. Servs., Inc.*, 797 N.E.2d 905, 910 (Mass. 2003) ("rule 4.2 protects only the attorney-client relationship, and not the underlying facts"); *see also Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The [attorney-client] privilege only protects disclosure of communications; it does

9

not protect disclosure of the underlying facts by those who communicated with the attorney."). That distinction makes good sense: after all, "[t]he purpose of Rule 4.2 … is not to prevent the flow of information, even if damaging to a party to the suit." *Aiken v. Business & Industry Health Grp., Inc.*, 885 F. Supp. 1474, 1479 (D. Kan. 1995); *accord Johnson v. Cadillac Plastic Grp., Inc.*, 930 F. Supp. 1437, 1442 (D. Colo. 1996).

In addition to misstating the law, the City's motion also fails to establish any factual violation of their proposed rule. That is, even if Rule 4.2 were changed to cover information protected by the deliberative-process privilege, the City would have the burden of proving that Plaintiffs' counsel communicated with Mr. Mitchell *about information that is protected by that privilege*. There were no such discussions. Plaintiffs' counsel never asked Mr. Mitchell about the City's process or reasoning for invoking the deliberative-process privilege. Nor did Plaintiffs' counsel ever ask Mr. Mitchell what was underneath any of the redactions prepared by the City. In fact, Plaintiffs' counsel never showed Mr. Mitchell copies of the redacted memos at all. Ex. 3 ¶¶ 5, 9, 10; Ex. 5 ¶¶ 6, 10, 11; Ex. 4 at 144:7–13 (Mitchell last saw the OIM interview memos in fall 2020); *see also* Dkt. 141 at 8–9 (City arguing that Mr. Mitchell did not make any of the redactions).

Instead, as confirmed by Mr. Mitchell during his deposition, Plaintiffs' counsel merely informed Mr. Mitchell that (1) the City had produced OIM interview memos, (2) the memos were heavily redacted, (3) the City was asserting deliberative-process privilege, and (4) there was a discovery dispute. Ex. 4 at 155:25–156:5; *see also* Mot. at 8. All these facts were public record; these same points were aired at the hearing on May 20, 2021, and the City extensively set forth these facts in its response to Plaintiffs' motion to reconsider. *See* Dkt. 141. These public facts simply set the table for Mr. Mitchell's deposition, at which Plaintiffs' counsel asked questions to

10

test the veracity of the City's representation to this Court that the City had redacted only "non-factual" information from the OIM memos.

The City's argument that Rule 4.2 bars "[a]ny discussion with Mr. Mitchell about the contours of the deliberative-process privilege, its applicability to the OIM Memos, or anything along those lines," Mot. at 8, is meritless. Telling Mr. Mitchell that the City produced redacted memos over which there was a discovery dispute concerning the deliberative-process privilege is not a violation of Rule 4.2 (or any other ethical rule). To meet its burden, the City would have to produce evidence that there was discussion between Mr. Mitchell and Plaintiffs' counsel about *privileged information.* They have failed to do so. The gravamen of the City's argument is that Plaintiffs' counsel invaded the deliberative-process privilege by asking a witness what information was redacted in the OIM interview memos. That did not occur. On the contrary:

- Plaintiffs' counsel has never had any *ex parte* communication with Mr. Mitchell about communications that Mr. Mitchell has had with any counsel for the City or any counsel that may represent him in this litigation. Ex. 3 ¶ 8; Ex. 5 ¶ 9.

- Plaintiffs' counsel has never had any *ex parte* communication with Mr. Mitchell in which they showed Mr. Mitchell the redacted OIM memos or asked him to identify any content redacted by the City pursuant to the deliberative-process privilege. Ex. 3 ¶¶ 5, 9; Ex. 5 ¶¶ 6, 10.

- Plaintiffs' counsel has never had any *ex parte* communication with Mr. Mitchell in which counsel asked Mr. Mitchell to disclose information that is covered by the deliberative-process privilege, or in which Mr. Mitchell did so. Ex. 3 ¶ 10; Ex. 5 ¶ 11.

Given those facts, there is no basis for the City's claim that Plaintiffs' counsel invaded the deliberative-process (or any other) privilege. And to the extent the City contends that *mentioning* the deliberative-process privilege to Mr. Mitchell in explaining the nature of the parties' discovery dispute was a *per se* violation, the City cites nothing to substantiate such a sweeping and unreasonable rule, nor can it.

Tellingly, the City's attorneys offer no evidence from their own purported client, Mr. Mitchell, to substantiate the City's motion. In particular, they could have asked Mr. Mitchell during his deposition whether Plaintiffs' attorneys solicited or received privileged information from Mr. Mitchell (they didn't). Given the City's failure to show that there was any discussion of privileged information between Mr. Mitchell and Plaintiffs' counsel, sanctions must be denied. *See, e.g., Digital Ally, Inc. v. Z3 Technology, LLC*, No. 09-cv-2292, 2010 WL 11489136, at *4–5 (D. Kan. Feb. 3, 2010) (denying sanctions where movant failed to prove any *ex parte* discussions of privileged information: "Even assuming that Mr. Weng possesses privileged information, it does not appear that he revealed any such information to Mr. Wilson or Mr. Marchevsky.").

## II. There Is No Basis To Exclude Mr. Mitchell's Testimony Or The OIM Memos.

The City has not carried its burden for *any* sanction because there was no ethical violation by any of Plaintiffs' counsel. But the City's requested relief—to exclude Mr. Mitchell as a witness from trial and exclude the OIM interview memos from evidence—dispels any doubt that the City's motion is an improper tactical ploy.

A typical evidentiary remedy for a violation of Rule 4.2 is to disallow the sanctioned party from using evidence obtained from the witness, such as a witness statement, *during an improper contact*. That remedy prevents parties from using the fruit of a poisonous tree and thereby blocks the client from unfairly benefitting from their counsel's actions. *See, e.g.*, *Smith v. Kalamazoo Ophthalmology*, 322 F. Supp. 2d 883, 891 (W.D. Mich. 2004) ("If Defendant still has concerns regarding Salliotte's statements to Piper, Defendant may contact or depose Salliotte to determine what she said during the conversation. If Defendant can produce sufficient evidence showing that

12

privileged information was disclosed, Defendant may seek an appropriate protective order *excluding such information ….*" (emphasis added)).

But the City's requested relief is much more sweeping: it seeks to exclude the OIM interview memos altogether and preclude Mr. Mitchell from testifying about his documented criticisms of DPD's response to the protests that injured Plaintiffs. The City does not cite any authority under Rule 4.2 for the disqualification of a witness or the exclusion of evidence he prepared independently. Worse, the City fails to disclose that this Court expressly rejected and criticized attempts to obtain such relief in *Johnson v. Cadillac Plastic Group, Inc.*, 930 F. Supp. 1437 (D. Colo. 1996) (Kane, J.). In that case, the court found no ethical violation by the party's attorneys, but it also specifically rejected the movant's request for exclusion of evidence due to an alleged ethical violation because: "An exclusionary policy frustrates truth and does not punish the ethical violation. Instead, it works against the client who may have been wronged by the opposing party as far as the substantive claim is concerned." *Id.* at 1442. The Court found that the requested sanction "is clearly tactical in nature and inappropriate." *Id.*

That is exactly what the City is trying to do here: it seeks to exclude Mr. Mitchell as a witness and the OIM interview memos as evidence because Mr. Mitchell's testimony and the statements of the DPD officers (including command staff) in the OIM interview memos are unfavorable to the City. The evidence the City seeks to bar shows, among other things, that: (1) DPD command staff knew that their officers' training on crowd control and field force tactics was insufficient—and had been for years; (2) DPD cut back on field force training due to complaints from commanders about the amount of time it took; (3) there was persistent criticism of DPD officers on the ground by the commanders in the Command Post during the protests; and

(4) less lethal weapons frequently hit unintended (peaceful) targets and were used on entire crowds despite the presence of significant numbers of peaceful protestors in those crowds.[2] If the City truly believed that Mr. Mitchell's testimony is irrelevant (Mot. at 2 n.1) or that the OIM memos are unimportant (*id.* at 10), then the City's motion makes no sense as a "serious and meaningful sanction" for purported misconduct (*id.* at 11).

The City unintentionally discloses its true intentions in footnote 1 of the motion, arguing that "this Court's ruling [on the sanctions motion] may obviate the need for consideration of the evidentiary issues concerning … the OIM [memos]." Mot. at 2 n.1. In other words, the City believes that if the OIM memos are excluded as a sanction, there would be no need for this Court to scrutinize the propriety of the City's remaining improper redactions under the deliberative-process privilege. Having already been caught withholding unfavorable evidence based on a misrepresentation that the City only redacted information that was "not factual in nature," Ex. 6 at 4:17, the City filed this motion to deflect attention from its own behavior and to avoid further scrutiny. Tellingly, this motion was filed more than *three months* after Mr. Mitchell's deposition, which is the supposed evidence upon which the City's motion rests, but just *one business day* after the City turned over the less-redacted OIM memos at the Court's instruction and faced the specter of *in camera* review.

The City's motion is a distraction, wholly meritless, and should be denied.

---

[2] Dkt. 176, Ex. S at DEN-R11772, Ex. A at DEN-R11695–96, Ex. B at 6, Ex. E at DEN-R11714, Ex. F at DEN-R11719.

## CONCLUSION

Plaintiffs respectfully ask the Court to deny the City of Denver's motion for sanctions (Dkt. 169).

Dated: October 27, 2021

Respectfully submitted,

*/s/ Makeba Rutahindurwa*
Makeba Rutahindurwa
LOVEY & LOVEY
311 N. Aberdeen St.
Chicago, IL 60607
Telephone: (312) 243-5900
makeba@loevy.com

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Suite 460
Boulder, CO 80302
Telephone: (720) 328-5642
elizabethw@loevy.com

*Counsel for Fitouri Plaintiffs*

*/s/ R. Reeves Anderson*
Robert Reeves Anderson
Timothy R. Macdonald
Matthew J. Douglas
Ed Aro
Colin M. O'Brien
ARNOLD & PORTER KAYE SCHOLER LLP
1144 Fifteenth Street, Suite 3100
Denver, Colorado 80202
Telephone: (303) 863-1000
Facsimile: (303) 863-2301
Reeves.Anderson@arnoldporter.com
Timothy.Macdonald@arnoldporter.com
Matthew.Douglas@arnoldporter.com
Ed.Aro@arnoldporter.com
Colin.Obrien@arnoldporter.com

*Counsel for Epps Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2021, I served via CM/ECF the foregoing **PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO PRECLUDE FORMER INDEPENDENT MONITOR NICHOLAS E. MITCHELL AS A WITNESS AND OIM INTERVIEW MEMOS AS EVIDENCE** on all counsel of record.

*/s/ Tanya Huffaker*
Tanya D. Huffaker