# EXHIBIT 6

```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF COLORADO

 3
      Civil Action No. 20-CV-01878-RBJ
 4

 5     BLACK LIVES MATTER 5280, et al.,

 6          Plaintiffs,

 7          vs.

 8     CITY AND COUNTY OF DENVER, et al.,

 9          Defendants.

10    ----------------------------------------------------------

11                       REPORTER'S TRANSCRIPT
                      Telephone Discovery Conference
12
      ----------------------------------------------------------
13
              Proceedings before the HONORABLE R. BROOKE JACKSON,
14    Judge, United States District Court for the District of
      Colorado, commencing on the 20th day of May, 2021, in
15    Courtroom A902, United States Courthouse, Denver, Colorado.

16                            APPEARANCES

17    For the Plaintiffs:
      ELIZABETH C. WANG, Loevy & Loevy, 2060 Broadway St., Ste. 460,
18    Boulder, CO 80302

19    PATRICK C. REIDY, Arnold & Porter Kaye Scholer, LLP, 70 West
      Madison St., Ste. 4200, Chicago, IL 60602
20
      For the Defendants:
21    ANDREW D. RINGEL, Hall & Evans, LLC, 1001 Seventeenth St.,
      Ste. 300, Denver, CO 80202
22
      HOLLIE R. BIRKHOLZ, Denver City and County Attorney's Office,
23    201 West Colfax Ave., Denver, CO 80202

24
         Sarah K. Mitchell, RPR, CRR, 901 19th Street, Room A252,
25                     Denver, CO 80294, 303-335-2108

              Proceedings reported by mechanical stenography;
                  transcription produced via computer.
```

20-CV-01878-RBJ   Tele. Discovery Conference   05/20/2021   2

1              *          *          *          *          *

2       (The proceedings commenced at 8:29 a.m.)

3              THE COURT:  BLM versus City and County of Denver,

4    20CV1878.  Who's appearing for the plaintiff?  Just the

5    spokesperson, please.

6              MR. REIDY:  Good morning, Your Honor.  This is

7    Patrick Reidy on behalf of the BLM 5280 group of plaintiffs

8    from Arnold & Porter.

9              THE COURT:  Thank you.  For the defendant?

10             MS. BIRKHOLZ:  Yes, Your Honor.  This is Hollie

11   Birkholz with the city attorney's office, and Andrew Ringel

12   with Hall & Evans for the defendant.

13             THE COURT:  Who's going to be speaking this morning?

14             MS. BIRKHOLZ:  A combination of us both, Your Honor.

15             MS. WANG:  Judge, this is Elizabeth Wang for the

16   Fitouri plaintiffs also.

17             THE COURT:  The Court received a letter from the

18   plaintiff lawyers.  I'm not sure when it came in.  It's brand

19   new.  I learned of it maybe ten minutes ago.  Did the

20   defendant counsel receive this letter?

21             MS. BIRKHOLZ:  We did, Your Honor.  At the same --

22   like late last night.  5 o'clock at least.  But, yes, we did.

23             THE COURT:  I'm not terribly impressed by last-minute

24   filings like that.  Nevertheless, we'll get right to it.

25   Number one, refusal to produce unredacted summaries of officer

20-CV-01878-RBJ    Tele. Discovery Conference    05/20/2021    3

1    statements made to the Office of the Independent Monitor.

2            Defendant, what's your position?

3            MR. RINGEL:  Good morning, Your Honor, Andrew Ringel.

4    The issue here is the deliberate process privilege and so that

5    the Court can understand --

6            THE COURT REPORTER:  Mr. Ringel, I'm having trouble

7    hearing you.  Can you please speak up?

8            MR. RINGEL:  Okay.  I'll try to speak up.  I

9    apologize.  Good morning, Your Honor.  This is Andrew Ringel.

10   The issue is the deliberative process privilege.  The

11   plaintiffs' request requested all documents created by the

12   Office of Independent Monitor reflecting any and all OIM

13   interviews.  The defendant produced all of the questions that

14   were asked, produced the identities of all the people that

15   were interviewed.  The interviews were recorded with respect

16   to a memo that summarizes the interview, and the summarizing

17   memo created by the Office of Independent Monitor includes

18   factual information, as well as the interviews, thoughts, and

19   mental impressions resulting from the interviews.

20           So what was done was there was a redaction of all of

21   the nonfactual information that was part of the interview, and

22   the plaintiffs contend that the deliberative process privilege

23   doesn't apply because this is a federal case under

24   Section 1983.  I can cite to the Court some decisions from

25   this court and other courts that talk about how the

20-CV-01878-RBJ   Tele. Discovery Conference   05/20/2021   4

1   deliberative process privilege is a creature of the federal

2   common law, and therefore under Rule 501, as the Court

3   understands, there is a federal privilege of deliberative

4   process.  So the threshold issue for the Court is whether

5   there is a deliberative process privilege, and then the

6   secondary issue for the Court is whether there's a necessity

7   to undo the privilege in this context because the plaintiffs

8   purportedly couldn't gain the information from somewhere else.

9        It is our contention that there are 22 interviews and

10   22 memorandum, and the plaintiffs have the identity of all the

11   people that were interviewed by the Office of Independent

12   Monitor.  They have all the questions that were asked in the

13   interview because they've been provided.  They have the report

14   from the Office of Independent Monitor.  And the only thing

15   that the city is trying to protect in this context is mental

16   impressions and the assessments and the candid information

17   that was provided that's not factual in nature related to the

18   investigation that the Office of Independent Monitor

19   conducted.

20        THE COURT:  All right.  Thank you.

21        Plaintiff?  Mr. Reidy, Ms. Wang, plaintiffs'

22   position?

23        MR. REIDY:  Yes, Your Honor.  This is Patrick Reidy

24   speaking, and the city's statement of the background is

25   generally correct.  They produced 22 summaries and interview

1   questions, both of which are redacted.  The interview

2   summaries are redacted extensively.  They say that they've

3   only disclosed -- they've only redacted nonfactual

4   information, but that doesn't appear to be the case based on

5   our view of the documents, and I think I would state the

6   issues for the Court a little bit differently.

7         As a first issue we think the city hasn't met its

8   burden to show that these documents are entitled to any

9   deliberative process privilege, and even if these documents

10   were -- the redacted information was predecisional and

11   deliberative, an exception applies in this case, as many

12   Courts have held, and the city is a defendant, and the city's

13   policies, practices, and customs are squarely at issue, the

14   deliberative process privilege does not apply, and I can cite

15   you authority in this district that has rejected the very

16   argument that the city is making here that the deliberative

17   process privilege can shield documents like this in a

18   Section 1983 case.

19         THE COURT:  What do you mean documents like this?

20         MR. REIDY:  Your Honor, in the Forehorn decision

21   decided by Magistrate Judge Mix the city objected to producing

22   documents concerning an internal affairs bureau investigation

23   related to misidentified -- or misidentified arrests, improper

24   arrests, and --

25         THE COURT:  Okay.  So it wasn't documents like this.

20-CV-01878-RBJ     Tele. Discovery Conference     05/20/2021     6

1   It was independent monitor versus office of -- versus IA

2   stuff, right?

3           MR. REIDY:  Yes.  They were not independent monitor

4   documents at issue in the Forehorn case, that's correct.

5           THE COURT:  The Court's ruling is that there is a

6   deliberative process privilege, that the Court has absolute

7   confidence based on its experience with Mr. Ringel in many

8   other cases that if he says they only redacted the mental

9   impressions, that that is accurate, and it does appear to the

10  Court that the factual information is either there or can be

11  obtained in other manners, and so the first objection of the

12  plaintiff side is denied.

13          We'll move on to the second one, the city's refusal

14  to answer the Fitouri plaintiffs' interrogatories or

15  identities, and then they go through these photographs and

16  circle different individuals and they want their identities.

17          What's the defendants' position?

18          MS. BIRKHOLZ:  Yes, Your Honor.  This is Hollie

19  Birkholz speaking now.  I'm not sure if you want me to address

20  them in toto or address them individually, but with respect to

21  the first two, Your Honor, I would say the manner in which

22  these were presented to the Court appears substantially

23  different as single confined issues than, you know, were

24  represented to us through discovery, and as it stood before

25  last night.

                        Sarah K. Mitchell, RPR, CRR

20-CV-01878-RBJ   Tele. Discovery Conference   05/20/2021   7

1          So the first one asks for identity of an officer.

2     What we were provided in the discovery request was a

3     screenshot from eight seconds different than what is

4     represented in the letter, and honestly, I can't tell whether

5     or not it's the same officer.  So we are kind of presented

6     with two different issues.  One being a continued issue that

7     this appears to be a different question.  After we've

8     responded to discovery now they're asking us to do something

9     different after --

10         THE COURT:  I don't care about that.  All I want to

11    know is why you won't tell them who these circled officers

12    are.  I don't understand.

13         MS. BIRKHOLZ:  Well, Your Honor, we have received 11

14    different questions from the Fitouri plaintiffs asking us to

15    identify everyone in a certain area.  As a general rule, we

16    have, you know, many, many officer statements, hundreds of

17    officer statements.  We do not have good records of where

18    everybody was at one particular location, and so what we need

19    to do is pull officers in once we determine who's generally in

20    an area, have them review hours of body-worn camera footage

21    and clips sitting with them to say is this you?  Is this you?

22         Most of the time we have encountered the situation

23    where because everybody is wearing the same thing, because

24    they don't have a recollection of where they were and what

25    they were doing, most of the time the answer is I don't know

                    Sarah K. Mitchell, RPR, CRR

1   if that was me.

2          THE COURT:  Please, I don't have time to be

3   filibustered, quite frankly.  All I'm presented with this

4   morning is one, two, three, photographs.  They're very

5   specific.  They're not footage.  They're just still shots, and

6   all they're asking is tell us who those guys are.  And if

7   you're telling me that you don't know, and you've tried to

8   find out and nobody can tell you, then that's your answer.

9   Don't give me this stuff about all the different things and

10  different questions and so forth.  All I want to know about is

11  can you tell them, and my order is that if you can, you must,

12  tell them who those three guys are.

13         MS. BIRKHOLZ:  And, yes, Your Honor.  We're willing

14  to concede that if this is now what plaintiffs are requesting

15  with respect to those photographs as contained in your letter,

16  we will make an effort to identify those.  With respect to the

17  other issues, I think it warrants additional conversation.

18         THE COURT:  Okay.  So the three -- the three pictures

19  with the yellow circles around them, you will make a

20  good-faith effort to identify those three people if you can do

21  so.  And I understand that, to use the old phrase, they sort

22  of all look alike because of their costumes, but they're not

23  identical, and I suspect that these guys know who they are,

24  but you say you will.

25         Now, what's the next part of this one, Ms. Birkholz?

1        MS. BIRKHOLZ:  For the next -- the next category

2   identified by Fitouri plaintiffs is C, who used less lethal

3   weapons on protesters at 16th and Welton at 4:45 p.m. on

4   May 30th.  And with respect to this, Your Honor, you know,

5   it's not limited to identify a certain individual.  As through

6   conferral, the Fitouri plaintiffs have indicated that there's

7   no body-worn camera from this location, and they've already

8   deposed a lieutenant with the Denver Police Department who

9   acknowledged that it was his team and a handful of members of

10  his team, and that that lieutenant authorized the weapons at

11  that location.  So in our view, Your Honor, to go back and to

12  try and re-answer this after it's been answered through

13  discovery is a moot point because things have changed since

14  we've responded to these interrogatories.

15       MS. WANG:  Judge, this is Elizabeth Wang.  With

16  respect to 2C, they have not presented Lieutenant Vince Porter

17  for his deposition, so Ms. Birkholz is mistaken as to whether

18  this has been discovered.  Obviously, if I got the answer to

19  this interrogatory from a deposition I would not be asking for

20  it right now.

21       THE COURT:  How can you two be saying what the two of

22  you are just saying?  One of them -- Birkholz says this

23  lieutenant was deposed.  Wang says, no, he wasn't.  Come on,

24  folks.

25       MS. BIRKHOLZ:  I apologize, Your Honor.  I misspoke.

20-CV-01878-RBJ   Tele. Discovery Conference   05/20/2021   10

1   He's getting set for deposition.  He was set, and then he was

2   reset because of an issue with text messages.  But they are

3   deposing him in the very near future, and it is a more

4   economical, easier method to get the information they're

5   seeking.

6         THE COURT:  I'm inclined to agree.  Do you disagree,

7   Ms. Wang?

8         MS. WANG:  Judge, we can certainly ask Lieutenant

9   Porter, but the issue is that we have -- we have a limited

10  amount of time for depositions, and the city -- the identities

11  of officers at particular locations seems to be exactly the

12  type of thing that they should answer in an interrogatory

13  answer.  I mean, of course, we can spend deposition time on

14  it, but going through video and photos with people when

15  there's more important questions to ask them at depositions is

16  not a good use of the limited time that we have.  And so --

17        THE COURT:  Ms. Birkholz, you said there are 15

18  officers that were there.  Why can't you just tell them the

19  names of those people?

20        MS. BIRKHOLZ:  We don't actually know who -- how many

21  officers and who was all present at that location, because, as

22  I mentioned, you know, we don't have good records of where

23  everyone was because the situation was quickly developing.

24  People were moving around very quickly.  So it is -- it is

25  hard for us to know without, you know, pulling everyone into

Sarah K. Mitchell, RPR, CRR

20-CV-01878-RBJ   Tele. Discovery Conference   05/20/2021   11

1    our office, 15 different individuals, you know, reviewing

2    camera footage, but, again, as I mentioned, there's not really

3    any camera footage, and so we're reliant upon officers'

4    memories, and to depose the person who was present and in

5    charge of that operation at that intersection would yield the

6    best results, and they're already, you know, getting set --

7    reset for deposition.

8         THE COURT:  All right.  Then we'll defer this one to

9    the deposition, but if he can't identify the 15 people, then

10   we'll figure out the next step.  I'll take your word for it at

11   this point that that's the best you can do.  Let's see what

12   happens.  How about D?

13        MS. BIRKHOLZ:  With respect to this question, Your

14   Honor, the BLM plaintiffs have served us a similar

15   interrogatory which we're responding to today, so -- and I

16   will forewarn you the answer is basically we've reviewed all

17   of this stuff, spent five to six hours looking at it, and we

18   do not know.  So I will go ahead and agree to provide a

19   response to this one, but am forewarning that the answer is we

20   do not know.

21        THE COURT:  Ms. Wang, is there anything else you can

22   say on that?

23        MS. WANG:  No.  But I guess what I would say, Judge,

24   is that based on the information that we have for each of

25   these incidents, they were DPD officers that were involved,

1    and the significance of asking the city to identify the

2    officers is, A, to be able to sue and name as defendants the

3    individuals who used excessive force on our clients and

4    violated their First Amendment rights; and, number two, we

5    fully expect that the city at summary judgment is going to say

6    you should grant summary judgment to us on the plaintiffs'

7    Monell claim because they haven't identified the officers.  So

8    they can't have it both ways.  They're can't say we're not

9    going to give you the identify of the officers, we're not

10   going to make a real effort to find out who they are, and you

11   lose on a Monell claim because you haven't identified the

12   officer.

13          THE COURT:  She didn't say that.  You didn't listen.

14   She said they spent five or six hours, and they can't answer

15   it.  They don't know.

16          MS. WANG:  The issue, though, is they may not -- even

17   if they can't determine the name of the officer, they should

18   be able to confirm they were, in fact, Denver Metro SWAT

19   officers or Denver police officers, because we all know that

20   no other agencies were involved on the first day, on May 28th

21   of 2020, and that is significant to our Monell claim.

22          THE COURT:  It doesn't say May 28th.  It says

23   May 30th.

24          MS. WANG:  I was looking at 2D.

25          THE COURT:  I'm on the wrong one.  May 28th.

20-CV-01878-RBJ   Tele. Discovery Conference   05/20/2021   13

1      MS. WANG:  But the same applies to the other ones, 2E

2   and 2F and 2G.  All the ones listed in this letter, we know

3   from other information they were all Denver officers, so even

4   if they can't identify the specific names of the officers,

5   they should at least confirm in this one interrogatory that

6   they were Denver officers.

7      THE COURT:  That's fair.  Can you do that,

8   Ms. Birkholz?

9      MS. BIRKHOLZ:  Your Honor, you know, that's not an

10   impossibility.  However, I would say that, you know, we're

11   circumventing the parameters of discovery by changing the

12   question that's being asked.  If they want to know whether the

13   -- whether all officers that responded to the protests on

14   May 28th were Denver officers, that is a separate question,

15   and I would respectfully ask them to submit that question.

16      THE COURT:  No thank you.  The problem here is that

17   the question that they asked you said you can't answer, and so

18   we are modifying the question instead of wasting your time or

19   mine or theirs on another question to simply say can you

20   confirm that these were DPD officers?  The Court orders you to

21   do that one way or the other.  I can't order you to confirm

22   it, of course.  I order you to either confirm it or deny it or

23   say we don't know.  What else do we have to talk about?  G.

24   That was D, E, and F.  G.  That should be easy.  What's the

25   problem with that?

20-CV-01878-RBJ   Tele. Discovery Conference   05/20/2021   14

1          MS. BIRKHOLZ:  So we are looking at -- skipping over

2     E and F, correct?

3          THE COURT:  Yes, because she said D, E, and F are all

4     the same.  They want confirmation.

5          MS. BIRKHOLZ:  Okay.

6          THE COURT:  So G.

7          MS. BIRKHOLZ:  So during conferral plaintiffs pointed

8     out that, again, they've deposed Sergeant Beall, and they've

9     also set depositions for Sergeant Abeyta, who is tomorrow, and

10    Lieutenant Williams is getting reset due to a text message

11    issue, and they have concluded that basically it is all of

12    these officers who were present on these impact teams that

13    they have identified, and so the response to this question

14    will be learned through the depositions that are coming up,

15    and would ask that they go ahead and learn as much as they can

16    through those depositions so as to not duplicate the efforts.

17         THE COURT:  Wait a minute, all the question is is who

18    is on these teams led by these three guys.  Surely they know

19    who was on their team, right?

20         MS. BIRKHOLZ:  Certainly.  And so during -- during

21    the deposition -- during the depositions they have learned

22    that who was on a team varies each day and sometimes each

23    moment because of the quickly developing response and where

24    people are going and where people are at.  So, you know,

25    again, there's no specific documentation, and these people are

20-CV-01878-RBJ   Tele. Discovery Conference   05/20/2021   15

1  already again set for deposition, so that is a very easy

2  question to ask, and they have, you know, repetitively asked

3  those questions through their depositions, and so in order to

4  avoid us spending, you know, several hours finding that

5  information, they're going to be able to discover that

6  tomorrow.

7          THE COURT:  What you're telling me, Ms. Birkholz, and

8  it's very surprising to me, but what you're telling me is you

9  haven't prepared these people for deposition.  You haven't sat

10  down with them, interviewed them, found out what they have to

11  say, and prepared them for the deposition.  And I conclude

12  that because you say it will take several hours to find out

13  the information that a good preparation would already know.

14  What's the story?

15          MS. BIRKHOLZ:  Your Honor, we have prepared them for

16  deposition, but, you know, we're not aware of every single

17  question that the plaintiff is going to ask them.  You know,

18  they're aware that they will be asked obvious questions about,

19  you know, identifying people, but I don't know exactly who.

20  This is a very large timeframe, and I don't know who

21  specifically they're going to ask us to identify.

22          THE COURT:  Well --

23          MS. BIRKHOLZ:  And it's actually a very large area,

24  if you will.  So there were a lot of officers present because

25  there was a lot of chaos in this particular location, and so

Sarah K. Mitchell, RPR, CRR

20-CV-01878-RBJ   Tele. Discovery Conference   05/20/2021   16

1  rather than a large timeframe, I should specify it's a fairly

2  large area.

3          THE COURT:  All right.  The Court orders --

4          MS. WANG:  Judge --

5          THE COURT:  The Court orders the defendant to respond

6  fully and completely to 2G.  Now, No. 3, whether the city

7  should complete its production of all officer statements that

8  have been outstanding for -- requests outstanding for six

9  months.  Who's speaking to that one on the defendant side?

10         MS. BIRKHOLZ:  Yes, Your Honor.  This is Hollie

11  Birkholz again.  I sincerely apologize because this issue

12  should not be before the Court.  The first time the statements

13  were produced it was not realized that there was a front and

14  back side, so what we have done in our office is re-requested

15  all of the statements from the Denver Police Department,

16  including blank pages, everything.  And as it turns out, we

17  did not get the pages that were blank.  They took it upon

18  themselves to remove those, so we re-requested those earlier

19  last week.  I believe that they may have come in through an

20  e-mail link last -- late last night.  But as of, you know,

21  yesterday we hadn't had them.

22         But I will say that the statements, now that we have

23  them, which I presume we do, we need to go through and compare

24  hand by hand with what was previously provided and provide

25  what remains.  The option sadly is not to just call back

1    everything that we previously produced, because there are

2    redactions on those records including sealed records that we

3    cannot produce legally, redacted juvenile information,

4    et cetera, et cetera.  So, you know, we wholly understand we

5    need to get these out, apologize for the delay.

6            But, you know, knowing the extent of what I guess it

7    takes to look through all of this, you know, we would

8    certainly ask for, you know, the end of June as we requested

9    from plaintiffs just so that we have a sufficient amount of

10   time to cull through these statements and get them everything

11   they need.  Because, you know, everything else that we're

12   doing, which there's a lot, then gets put on the back burner,

13   and we might have to alter other things.

14           I will say that prior to any depositions we have

15   taken, we have provided them any missing statements so in

16   order to, you know, lessen any affects, and while I

17   understand, you know, their experts are due and coming up, I

18   would suggest that we would be happy to, you know, not object

19   to any supplemental report that is reliant upon statements

20   themselves if we were able to produce them by the end of June.

21           THE COURT:  Ms. Wang or Mr. Reidy.

22           MS. WANG:  Judge, this is Elizabeth Wang.  I mean,

23   you know, we have deadlines, and, you know, we don't want to

24   be in a position of having to ask Your Honor for additional

25   extensions of deadlines.  This has been going on for a while.

20-CV-01878-RBJ   Tele. Discovery Conference   05/20/2021   18

1  We're just asking that they produce all the officer statements

2  completely by 30 days of when our expert report is due so that

3  our experts have sufficient time to look at them, and they're

4  not only important to the expert reports, but the naming

5  officers because we know that the officer statements contain

6  information about where they were and what they were doing, so

7  --

8         THE COURT:  Well, when's your --

9         MS. WANG:  -- I don't know that June -- the reports

10  are due July 12th, so if the city produces all the officer

11  statements by June 30th, that's a pretty short turnaround to

12  give them additional information for their expert reports.

13  Now, we could supplement, but -- I mean, as long as we're not

14  jammed up on giving the information to our expert reports, or

15  if we need an extension --

16         THE COURT:  How about we compromise and decide that

17  they'll have those new -- that new information to you by

18  June 18th.

19         MS. WANG:  Okay.  Yes, Your Honor.

20         THE COURT:  All right.  Now, let me ask you counsel a

21  question, and the question is where is this case going?  We've

22  had this discussion before.  I have suggested to counsel

23  without closing my mind to any other result that I think it is

24  unlikely that this case will generate injunctive relief much

25  beyond what has already been ordered in Abay.  I have

Sarah K. Mitchell, RPR, CRR

20-CV-01878-RBJ   Tele. Discovery Conference   05/20/2021   19

1   indicated that my impression is that it is unlikely that this

2   case will qualify for class action status.  There's simply too

3   many individual protesters, and their situations are each

4   unique and different, and I think that's likely the result.

5            On the other hand, these plaintiffs who have been

6   injured -- I've seen the pictures -- might have a case for

7   compensation for their injuries, and I don't understand why

8   the parties can't get together and negotiate and try to agree

9   on a reasonable -- emphasize the word reasonable -- level of

10   compensation for the injured named plaintiffs and be done with

11   this.  What's -- what's happening?  Where is it going?

12            MR. RINGEL:  Your Honor, this is Andrew Ringel, if I

13   may?

14            THE COURT:  Surely.

15            MR. RINGEL:  So I'm in this case to help answer that

16   question in addition to help figure out the defense of this

17   matter.  I've been tasked by the city attorney office to

18   assess this and to help the city attorney office figure out

19   how to potentially engage in discussions of resolution with

20   counsel for the plaintiff.  The complications, as the Court

21   understands, are several.  One, there are a lot of different

22   people in this case and in the other cases, and there's a

23   difference in the levels of potential injury and potential

24   damages and potential recovery.  There are also a lot of

25   claims under the Colorado Government Immunity Act that have

20-CV-01878-RBJ    Tele. Discovery Conference   05/20/2021    20

1    been filed that have not yet generated lawsuits, which is

2    another complication.  Either complication is any resolution

3    would have to be approved by city council, and so what we're

4    trying to do now, and what I'm trying to do is assess this

5    stuff and provide -- provide recommendation and dialogue with

6    the leadership of the city attorney's office, and then there

7    will be some effort to try to figure out how this works.

8              THE COURT:  Okay.

9              MR. RINGEL:  And I understand the Court would like to

10   see this resolved if that's possible and not have these kind

11   of hearings in the morning, and I appreciate the Court's time,

12   and I appreciate the Court's instinct, and it is one that I

13   agree with, and we're trying to figure out how to get

14   sufficient information about the damages of the plaintiffs and

15   work toward that goal if that's something that's possible.

16             THE COURT:  Okay.  Well, that's the most encouraging

17   thing I've heard.  Thank you, Mr. Ringel.

18             Do plaintiffs' counsel wish to say anything?  You

19   have equal rights.

20             MS. WANG:  Judge, this is Elizabeth Wang.  I mean, if

21   the city is interested in negotiating some sort of resolution,

22   we're always happy to discuss that.  We have not heard

23   anything from the city about that.  But as far as injunctive

24   relief goes, that's one of the primary reasons that all of the

25   plaintiffs in this case filed this suit, and, you know, the

20-CV-01878-RBJ   Tele. Discovery Conference   05/20/2021   21

1    injunction that was -- the stipulated -- stipulation that was

2    entered in the Abay case does not cover the things that we

3    think should be covered, and that's --

4         THE COURT:   Okay.   That's your opinion, but it's not

5    mine.   At least I thought that the Court and the plaintiffs

6    and the defendants made a pretty substantial effort to come up

7    with something that would work and would carry out into the

8    future.   If you and your clients are unsatisfied, I can't help

9    you there.   I have to listen to what you want and do the best

10   I can to decide.   But I'm just telling you, Ms. Wang, as I

11   think I've said before, that that was an effort by plaintiffs

12   who were represented by counsel just as aggressive and as

13   interested in curbing the police conduct as you are, and the

14   city attorney's office and the Court, and you know from my

15   order in Abay that I was very concerned about the activities

16   of some of those officers during those protests.   I didn't

17   like it, and I said so.

18        So to push well beyond that just because that's what

19   your plaintiffs want, I think that's going to be a somewhat of

20   uphill battle for you, but you heard what Mr. Ringel had to

21   say about settlement.   You should bear in mind that your

22   clients here at this point are just the people who got hurt.

23   They're not some class of people that you don't know.   It's

24   the people that got hurt.   And if the city is willing to

25   negotiate something that would fairly and reasonably

20-CV-01878-RBJ   Tele. Discovery Conference   05/20/2021   22

1    compensate those people, I would say you need to listen, and I

2    think you've said you will.  All right.  Is there anything

3    else this morning, folks?

4            MR. REIDY:  Your Honor, this is Patrick Reidy.

5            MS. WANG:  Go ahead.

6            MR. REIDY:  This is Patrick Reidy.  If I may

7    respectfully, I would just like to revisit Item 1 on the

8    agenda briefly with your permission.

9            THE COURT:  I've already gone past Item 1, Mr. Reidy.

10           MR. REIDY:  I would just like to ask respectfully if

11   the Court would consider in camera review of the 22 redacted

12   interview summaries.

13           THE COURT:  The answer is the Court will not do so.

14           MR. REIDY:  Understood.  Thank you for your time this

15   morning, Your Honor.

16           MR. RINGEL:  Andrew Ringel again.  The only other

17   thing I wanted to say about settlement so there's clarity for

18   the Court and for counsel for the plaintiffs, one of the

19   impediments to settlement that I didn't mention is the

20   outstanding class certification issue.  Once that's resolved

21   one way or the other, that will go a long way to allowing the

22   city to understand the scope of what it faces and be able to

23   address settlement of individual claims with individual

24   plaintiffs which is what we believe this case should be about.

25           THE COURT:  Mr. Ringel, here's the problem with that

 1   delay problem.  The Court will either certify or not certify

 2   the class.  I've pretty much candidly told you that I'm not

 3   inclined to think that I will certify a class in this case.

 4   But whether I certify a class or don't certify a class, the

 5   party that's unhappy with the ruling has a right to take an

 6   interlocutory -- not appeal exactly -- I'm not sure what you

 7   call these, but it's not like qualified immunity where you

 8   have a right to an interlocutory appeal if the Court denies

 9   it, but you have a right to go to the Circuit and say, please

10   take a look at this, and they will, and they either agree or

11   don't agree.  What you've done is you've put potential

12   settlement of the case on ice for, what, the next six months

13   at least.

14         MR. RINGEL:  I understand, and that's not what the

15   intent is.  Let me just say two things -- a couple things

16   about that.  I understand the procedure related to an appeal,

17   and I agree with the Court that it's not like an interlocutory

18   appeal because it doesn't shift jurisdiction in the same way,

19   but I would note that the standard of review, unless this

20   Court makes an error of law, is abuse of discretion, and

21   that's something that as the Court knows tends not to be

22   reversed on the circuit level.  And then there are a lot of

23   other plaintiffs who are not participating in the class

24   certification issue, and that makes it easier at least with

25   respect to those folks to have the kind of discussions that

20-CV-01878-RBJ   Tele. Discovery Conference   05/20/2021   24

1    we're talking about.

2              THE COURT:  I understand all that.

3              MR. RINGEL:  We will not unduly delay that issue.

4    Once there's a decision made to engage, we will engage, and

5    the Court has my commitment to roll up my sleeves and try to

6    do that if that makes sense for the city after we have

7    sufficient information to make that determination.

8              THE COURT:  Appreciate that.  All right then, thank

9    you all.  I've got to get back to some other things here, but

10   always a pleasure to talk with you.

11             MS. WANG:  Thank you, Judge.

12             MR. RINGEL:  Thank you.

13             THE COURT:  Good-bye.

14             MR. REIDY:  Thank you, Judge.

15        (The proceedings were concluded at 9:05 a.m.)

16

17

18

19

20

21

22

23

24

25

1                        REPORTER'S CERTIFICATE

2

3          I, SARAH K. MITCHELL, Official Court Reporter for the

4    United States District Court for the District of Colorado, a

5    Registered Professional Reporter and Certified Realtime

6    Reporter, do hereby certify that I reported by machine

7    shorthand the proceedings contained herein at the time and

8    place aforementioned and that the foregoing pages constitute a

9    full, true and correct transcript.

10         Dated this 24th day of May, 2021.

11

12

13

14            _____/s/ Sarah K. Mitchell_____

15               SARAH K. MITCHELL
                 Official Court Reporter
16            Registered Professional Reporter
                 Certified Realtime Reporter
17

18

19

20

21

22

23

24

25

                 Sarah K. Mitchell, RPR, CRR