

January 6, 2022

The Honorable R. Brooke Jackson
Alfred A. Arraj United States Courthouse A938
Courtroom A902

RE:   *Epps, et al. v. City and County of Denver, et al.,* 1:20-cv-1878-RBJ
      Letter of Intent to File for Summary Judgment

Dear Judge Jackson:

Pursuant to the Court's Practice Standards, Jefferson County Deputy Sheriffs Anthony Hamilton and Timothy Dreith (the "Jeffco Deputies") present this letter of intent to file for summary judgment regarding the claims against them in this matter.

**Grounds for Summary Judgment**

The Jeffco Deputies intend to raise the following issues in their motion for summary judgment:

(1) The Jeffco Deputies are entitled to qualified immunity.

The Jeffco Deputies are entitled to the protections of qualified immunity under either prong of the applicable two-part test.

*Constitutional Violation.*

The Third Amended Complaint of the "Fitouri" Plaintiffs appears to state two Section 1983 claims against the Jeffco Deputies: one for violation of First Amendment rights and another for violation of the Fourth Amendment's prohibitions against use of excessive force. These claims are entirely related to the actions allegedly taken by the Jeffco Deputies against Plaintiff Joe Deras on May 31, 2020, at approximately 8:30 p.m. at the intersection of Colfax Avenue and North Washington Street in Denver, Colorado. At that time, the Jeffco Deputies were acting as part of the Jefferson County Regional SWAT Team ("JCRS"), which consists of officers from various local law enforcement agencies. Approximately 20 members of JCRS were providing mutual aid to the City of Denver to manage demonstrations associated with the tragic killing of George Floyd a few days earlier in Minnesota. JCRS is not a Jefferson County Colorado governmental entity, but some members of its team are Jefferson County employees.

According to officer reports and the depositions of the Jeffco Deputies, they were stationed on Washington Street, north of and parallel to the stream of demonstrators moving east along Colfax. They were there to protect a Denver Police Department Station that had been damaged during the demonstrations. Just before 8:30 p.m., some members of the crowd stopped marching and began throwing objects at member of the JCRS team, hitting and injuring some of the officers. In response, one or more members of the JCRS team – but not the Jeffco Deputies – deployed gas canisters. This caused the gathering crowd to back away. However, a few individuals in the crowd continued to approach the JCRS team and to throw and launch objects at JCRS and, in some cases, to kick or throw gas canisters back in the direction of JCRS. Throwing

Letter of Intent to File for Summary Judgment
*Epps, et al. v. City and County of Denver, et al.,* 1:20-cv-1878-RBJ
Page 2

or kicking gas canisters back at JCRS posed a safety risk to all involved, as it could cause physical injury or obscure the vision of officers if not prevented.

In response to these acts of aggression, multiple members of JCRS deployed less lethal force targeted at the aggressors. The Jeffco Deputies each deployed several "beanbag" rounds from shotguns. JCRS did not pursue or approach the crowd; in fact, it fell back and maintained position while certain individuals in the crowd erected make-shift barricades and launched rocks, fireworks, and other objects at officers. Fortunately, there is street camera video tape footage of the incident for the Court to review in making its determinations.

Plaintiff Joe Deras was present during a portion of these interactions and witnessed aggressive acts by members of the gathered crowd. Rather than leaving or continuing to march, he stayed and on two separate occasions he separated from the crowd and kicked gas canisters in the direction of JCRS. On the second occasion, he alleges that he was struck by three less lethal munitions: once on a helmet he was wearing, once on a finger, and once in the lower back. His claims arise from these three strikes.

The only factual allegations against the Jeffco Deputies in the Complaint are:

- Deras was hit three times with projectiles thrown or shot out of "less lethal" weapons by JCRS officers. Deras was hit once in his head, once in his hand, and once in his back. Defendant Hamilton and/or Defendant Dreith shot Deras.

- The JCRS officers, including Defendants Hamilton and Dreith, fired their weapons at protestors and civilians, including Deras, through thick clouds of heavy tear gas and/or smoke, which reduced their visibility.

- Deras feared the weapons and excessive force that Defendants Hamilton, Dreith, and other officers were using and did not return to the protests for several days as a result.

However, there is no evidence that either of the Jeffco Deputies fired the three shots in question. Numerous other officers targeted aggressors at the same time, and the Jeffco Deputies do not recall whether they targeted Mr. Deras. Mr. Deras does not know which of the JCRS officers fired at him. These facts alone appear to preclude judgment against the Jeffco Deputies.

Additionally, the Jeffco Deputies will state that they could see each individual that they targeted.

Further, the Jeffco Deputies contend that the non-exclusive factors in *Graham v. Connor* demonstrate that no Fourth Amendment violation occurred. Those factors include: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. 386, 396 (1989). These factors, as well as any others that contribute to the totality of the circumstances confronting a particular officer, must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Given Mr. Deras' decision to join others in active aggression toward JCRS by kicking gas

Case No. 1:20-cv-01878-RBJ   Document 236   filed 01/06/22   USDC Colorado   pg 3 of 3

Letter of Intent to File for Summary Judgment
*Epps, et al. v. City and County of Denver, et al.,* 1:20-cv-1878-RBJ
Page 3

canisters in their direction, rather than simply walking away like the majority of the demonstrators, the JCRS actions were reasonable.

The First Amendment claim is based on an allegation that the defendants used force to discourage, suppress, and retaliate against the plaintiffs for exercising their First Amendment rights. A First Amendment retaliation claim requires a showing "(1) that the plaintiff 'was engaged in constitutionally protected activity'; (2) that the defendant's actions caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and (3) that the 'defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'" *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (citations omitted). The third element requires a showing "that the defendants' alleged retaliatory motives were the 'but for' cause of the defendants' actions," which requires allegations of specific facts showing retaliation motivated by the exercise of plaintiff's constitutional rights. *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir. 1998).

There is no evidence that Mr. Deras was targeted by JCRS as a result of exercising his constitutional rights. Until members of the crowd assaulted JCRS, countless demonstrators passed their position without incident. Even after members of the crowd began to engage in aggressive violence, JCRS only targeted those individuals acting aggressively that were a danger to the safety of others.

*Clearly Established Law.*

To be "clearly established, a constitutional right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (quotation omitted). "A case clearly establishes a right 'when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as [the] plaintiff maintains." *Id.* (quotation omitted); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (existing precedent "must have put the question of the reasonableness of the officer's conduct 'beyond debate'").

Simply put, there is no clearly established law prohibiting law enforcement officers from targeting an individual with less lethal force when that individual aggressively kicks or otherwise conveys gas canisters – or any other dangerous object – back toward law enforcement when law enforcement is being actively assaulted by members of a crowd. Nor is there any First Amendment law indicating that such defensive actions by law enforcement – motivated by kicking gas canisters and not by expressive conduct – constitute retaliation, violate the right to protest, or otherwise express viewpoints.

    Sincerely,
    *s/ Eric Butler*
    Eric T. Butler, #29997
    Deputy Jefferson County Attorney
    *Counsel for Defendants Anthony Hamilton and Timothy Dreith*