**Michael T. Lowe**
*Attorney at Law*
mlowe@brunolawyers.com

LAW OFFICES
**BRUNO, COLIN & LOWE, P.C.**
1999 BROADWAY
SUITE 4300
DENVER, COLORADO 80202
―――
TELEPHONE: (303) 831-1099
FAX: (303) 831-1088
WWW.BRUNOLAWYERS.COM

LOUIS B. BRUNO
DAVID J. BRUNO
*OF COUNSEL*
―――
FRANK A. BRUNO
(1904-1979)

January 7, 2022

**VIA ECF**
Honorable R. Brooke Jackson

    Re:    *Epps, et al. v. City and County of Denver, et al.*, 1:20-cv-1878-RBJ (consolidated with 1:20-cv-01922-RBJ-MEH)
Notice of Intent to File for Summary Judgment

Your Honor:

Consistent with this Court's Practice Standards, please accept this letter on behalf of Defendants City of Aurora and Aurora Police Officers Corey Budaj, Matthew Brukbacher, Patricio Serrant, and David McNamee, named in Plaintiff's First Amended Complaint [ECF 178] and Third Amended Complaint [ECF 219] in this matter, noticing their intent to file a Motion for Summary Judgment with respect to all of Plaintiffs' claims.

Although not entirely clear, the operative Complaint(s) in this matter appear to bring claims for relief against "Defendants" generally (and by extension, the Aurora Defendants) in this matter for First Amendment retaliation, [ECF 219] at p. 74 & [ECF 178] at p. 48, 52; Fourth Amendment excessive force based on the use of less-lethal weapons and crowd-control devices and tactics, [ECF 219] at p. 77 & [ECF 178] at p. 50, 54; due process and equal protection violations on the same basis, [ECF 219] at p. 79; failure-to-intervene theories of liability, [ECF 219] at p. 81; and supervisory liability claims, [ECF 178] at p. 55. All of these claims are based on the actions of the individual Aurora Officers in providing mutual aid to the City of Denver to control crowds during the demonstrations associated with the tragic death of George Floyd on May 30th and 31st, 2020. The only factual allegations against the Individual Defendants are that Defendant Budaj deployed a tear gas canister consistent with supervisory direction, training and department policy on May 30th, 2020, [ECF 219] at ¶¶203-207; that Defendant Budaj deployed a less-lethal foam/rubber round consistent with supervisory direction, training and department policy that struck Plaintiff Duran in the groin on May 31st, 2020, *Id.* at ¶¶328-333; that Plaintiff Packard was struck in the head by a less-lethal projectile at or near the time that one or more Aurora Officers, including Defendant McNamee, were deploying such rounds consistent with supervisory direction, training and department policy, [ECF 178] at ¶¶117-119; that Defendants Brukbacher and Serrant instructed Aurora Officers at various times, and consistent with training and department policy, to deploy less-lethal means to deter protesters who interfered with the deployed gas cannisters, [ECF 178] at ¶¶117, 119; and conclusory allegations that Defendant City of Aurora had a policy, practice or custom of maintaining unconstitutional procedures for deployment of crowd control techniques. [ECF 178] & [ECF 219], *passim*.

**Qualified Immunity**: All of the Individual Defendants are entitled to qualified immunity with respect to all of Plaintiffs' claims, the elements of qualified immunity being well-established. *See Pearson v. Callahan*, 129 S. Ct. 808 (2009). As a threshold matter, Plaintiffs Duran and Packard cannot identify the officers who allegedly struck them with less-lethal projectiles, preventing them from showing the personal participation of the Individual Defendants as required to establish a constitutional violation under 42 U.S.C. § 1983, nor can they demonstrate the necessary affirmative link between the alleged constitutional violations and each Defendant's alleged participation, control, direction, or failure to supervise. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). Moreover, even if such personal participation could be shown, there is no evidence that any specific Individual Defendant deliberately targeted any specific Plaintiff unlawfully. To the extent that Plaintiffs' injuries could be attributed to the negligent deployment of less-lethal means of crowd control, such negligent acts do not generally rise to the level of constitutional misconduct. *Weimer v. Schraeder*, 952 F.2d 336, 340 (10th Cir. 1991); *see also Conner v. Rodriguez*, 891 F. Supp. 2d 1228 (D.N.M. 2011) (collecting cases and analyzing negligence in the 4th Amendment context). In addition, to the extent Plaintiffs' claims are pled under the 14th Amendment's due process provisions, the same are properly analyzed under the 4th Amendment and should therefore be dismissed. *Huff v. Reeves*, 996 F.3d 1082, 1091-92 (10th Cir. 2021). Neither can Plaintiffs demonstrate that the actions taken by the Individual Defendants during the demonstrations were in retaliation for the exercise of their 1st Amendment rights, as required by *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000) and its progeny, particularly the third element demanding proof of retaliatory motive and "but for" causation. *Id.* at 1212; *see also Maestas v. Segura*, 416 F.3d 1182, 1188-89 (10th Cir. 2012); *Marquez v. Johnson*, 2012 U.S. Dist. LEXIS 179334, at *22 (D. Colo. 2012). Plaintiffs' "equal protection" claims suffer a similar infirmity, lacking any substantive allegations or evidence to support the requirement that any Plaintiff here was treated differently "because [s/]he is a member of a protected class" or that they have been "intentionally treated differently from others similarly situated … [without any] … rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). And finally, the record in this case contains no evidence to support that notion that any Individual Defendant engaged in any unconstitutional conduct at all, much less that any Individual Defendant had a "realistic opportunity to intervene" to prevent such allegedly unlawful conduct, as required by Tenth Circuit authority. *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015).

Even so, Plaintiffs will similarly be unable to meet their burden on the second prong of the qualified immunity analysis with respect to each Individual Defendant, to show that the law was clearly established with respect to their alleged actions on May 30th-31st, 2020. In this regard, the law at issue must be so clear "that *every* reasonable official would have understood that what he is doing violates that right.'" *Halley*, 902 F.3d at 1144 (quotation omitted, emphasis added). "A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right, … [but] … [g]enerally, 'existing precedent *must have placed the statutory or constitutional question beyond debate*' to clearly establish a right." *Id.* (citation omitted, emphasis added). Moreover, "courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (citation omitted). Thus, "[t]he dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)

(citation omitted). The Supreme Court has "stressed that the 'specificity' of the rule is 'especially important in the Fourth Amendment context'" because "it is sometimes difficult for an officer to determine how the relevant legal doctrine … will apply to the factual situation the officer confronts." *Wesby*, 138 S. Ct. at 590 (citation omitted). In light of the chaotic and unique circumstances presented to the Individual Defendants during the mutual aid efforts of late May, 2020, established case authority holding their actions to unlawful simply does not exist, and Plaintiffs will be unable to carry their burden in that regard. Summary judgment will therefore be mandated.

*Monell* **Liability**: The undisputed material facts in this case demonstrate that the City does not have an unconstitutional policy, practice, or custom that would subject it to municipal liability. First, a municipality will not be held liable for constitutional violations when there is no underlying constitutional violation by any of its officers. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). As shown above, Plaintiffs have not sufficiently established facts to support constitutional violations by the Individual Defendants. Therefore, the constitutional claims against the City should be dismissed.

Furthermore, Plaintiffs cannot point to any pattern or custom of conduct on behalf of the City of Aurora that would form the basis of a municipal liability claim. Plaintiffs allege that the City fails to adequately train on less lethal weapons, de-escalation, and crowd management, but the undisputed testimony indicates that Aurora does in fact provide such training. Additionally, Plaintiffs do not and cannot identify a pattern of similarly situated individuals. A plaintiff "must . . . offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney v. City and County of Denver,* 534 F.3d 1269, 1274 (10th Cir. 2008). Here, Plaintiff points to no other examples where Aurora is alleged to have misused less-lethal weapons, failed to de-escalate situations, or improperly managed a crowd. Without any such allegations, Plaintiffs have failed to support a claim for municipal liability.

Finally, Plaintiffs cannot prove municipal liability on the basis of ratification. Municipal liability may be based on the ratification by "final policymakers of the decisions-and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval." *Sanchez v. Melendrez*, 934 F. Supp. 2d 1325, 1339-40 (D.N.M. 2013) (quoting *Brammer-Hoelter*, 602 F.3d at 1189). Furthermore, "[i]n order for there to be ratification, there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures." *Garcia v. City of Imperial*, 2010 WL 3911457, *2 (S.D. Cal. 2010). Here, the undisputed facts indicate that no such review and ratification took place for the incidents alleged to involve Plaintiffs. Thus, the City would be entitled to summary judgment on the municipal liability claims before the Court.

| | |
|---|---|
| **BRUNO, COLIN & LOWE, P.C.** | **CITY OF AURORA, COLORADO** |
| s/ *Michael T. Lowe* | s/ *Isabelle S. Evans* |
| Michael T. Lowe | Isabelle S. Evans |

ec: All Counsel of record (via ECF)