# LOEVY & LOEVY

2060 Broadway, Suite 460, Boulder, Colorado 80302

Elizabeth Wang
elizabethw@loevy.com
direct 720.328.5642

January 13, 2022

*Via CM/ECF*
The Honorable R. Brooke Jackson
Alfrad A. Arraj United States Courthouse A938/Courtroom A902
901 19th Street
Denver, CO 80294

    Re: *Elisabeth Epps v. City and County of Denver, et al.*, 20-CV-1878-RBJ (consolidated)

Dear Judge Jackson:

    Consistent with this Court's Practice Standards, Plaintiffs provide this response to the notice of intent to file for summary judgment filed by Defendants City of Aurora, Cory Budaj, Matthew Brukbacher, Patricio Serrant, and David McNamee [Dkt. 238].

    Genuine disputes of material fact preclude summary judgment for the Aurora Defendants, and the individual officer defendants (Budaj, Serrant, Brukbacher, and McNamee) will not be entitled to qualified immunity. Defendants' assertions otherwise in their letter rely on ignoring disputed material facts. In sum, Plaintiffs allege that their constitutional rights under the First, Fourth, and Fourteenth Amendments were violated by the Aurora Defendants. The material facts that preclude summary judgment include:

**Plaintiff Jonathan Duran:**
- On May 31, 2020, Mr. Duran was a journalist covering the protests. He was shot in the groin by Defendant Cory Budaj with a 40mm launcher. This type of launcher shoots what is commonly called a "rubber bullet," or, as police refer to it, a "foam baton." There are numerous videos which show the incident.
- The evidence shows that Mr. Duran was not engaged in any aggressive or violent act whatsoever, was merely filming the protest and police response to it as a member of the media, and that he was backing up, away from the police when he was shot in the groin.
- Videos and other evidence (including but not limited to the use-of-force investigation conducted by the Aurora Police Department (APD)'s Force Investigations Unit) also show that it was Budaj who shot Mr. Duran. Budaj denies that it was him but the videos, photos, and other evidence will allow a reasonable jury to conclude otherwise.
- There is no testimony from Budaj or anyone else that the shooting of Mr. Duran was merely an accident or "negligence," as Defendants characterize it in their letter. To the contrary, Budaj testified at his deposition that he is an excellent marksman (who has received specialized training) and the distance between him and Mr. Duran was within the range of accurate targeting of a 40mm launcher. A reasonable jury can conclude that the shooting was intentional.
- It is undisputed that Mr. Duran was doing nothing that warranted *any* use of force on him, much less being shot in the groin, which is a prohibited target area for 40mm launchers. Thus, Budaj will not be entitled to qualified immunity because it would have been clear to any

Judge Jackson  Page 2 of 3
January 13, 2022

reasonable police officer in May 2020 that they could not shoot a non-threatening person in the groin with a projectile.

- As a result of being shot, Mr. Duran had to cease his First Amendment-protected activity (journalism) and could not engage in it for several days afterwards. Moreover, the evidence will show that these acts were intended to stop protestors and journalists.
- Plaintiffs' experts, Norm Stamper, the former Chief of Police of the City of Seattle, and Dr. Edward Maguire, a Professor of Criminology and Criminal Justice at Arizona State University, have each reviewed the facts of this case and provided reports of their opinions. They opine that the behavior of the police with respect to Mr. Duran was inappropriate and inconsistent with proper police practices, standards, and training.

**Plaintiff Zach Packard:**
- On May 31, 2020, Mr. Packard was protesting peacefully near the intersection of Colfax Avenue and Washington Street. The evidence shows that he was shot in the head with a large caliber shotgun bean bag or 40mm round by Defendant APD Officer David McNamee moments after kicking a tear gas canister.
- The evidence shows that Mr. Packard was not engaged in any action that would justify being shot. The evidence further shows that, shortly before Mr. Packard was shot, Defendant APD Sergeant Patricio Serrant instructed Officer McNamee to shoot protesters that touched any of the gas/smoke canisters.
- Shortly after Mr. Packard was shot, Defendant APD Sergeant Matthew Brukbacher, one of APD's instructors for less-lethal weapons, told APD officers that "without a doubt," if any protesters touch gas canisters, "they get hit."
- While Defendants have denied that Defendant McNamee shot Mr. Packard, the videos, photos, and other evidence will allow a reasonable jury to conclude otherwise.
- The evidence demonstrates that it was Aurora's policy, practice, or custom to target protesters that attempted to touch canisters of gas with potentially lethal shotgun bean bag rounds.
- Mr. Packard suffered two fractured discs in his neck, a fractured skull and jaw, and a brain hemorrhage. Mr. Packard was in the ICU at Swedish Medical Center for four days.
- Mr. Stamper and Dr. Maguire opine that the behavior of the police departments with respect to Mr. Packard was inappropriate and inconsistent with proper police practices, standards, and training.
- Mr. Stamper concluded that it was not appropriate to directly fire a projectile at Mr. Packard's head or body. He explained that "such use of force is potentially lethal or can cause serious bodily injury, and is only warranted when officers are confronted with force from an aggressive or violent individual posing a threat that is potentially lethal or can cause serious bodily injury to the officer or others." Mr. Packard presented no such threat.
- The City of Denver's own expert has submitted a report opining that if Mr. Packard was kicking a tear gas canister away from himself and others, and not back towards the police officers, as was the case here, "then the use of a large caliber impact projectile would be generally inconsistent with contemporary police standards, training, policy, and practice."

**Plaintiff Stanford Smith:**
- On May 30, 2020, Mr. Smith was protesting peacefully on the corner of Broadway and Colfax. Police in black uniforms formed a line along Colfax, and police in full

Judge Jackson
January 13, 2022

Page 3 of 3

military camouflage formed a separate line. The officers encircled the entire area. As Mr. Smith was talking to protestors, one of the officers sprayed Mr. Smith directly in the face and eyes with pepper spray, without warning or justification. This action was done in front of dozens of other officers who saw the incident and did nothing.

- Defendants do not have a single witness who has attempted to justify their attack on Mr. Smith. Denver's own expert testified that "[i]f it assumed that Mr. Smith was NOT acting in a manner that justified the use of pepper spray, then the use would be inconsistent with contemporary police training, policy, and practice."
- Mr. Stamper and Dr. Maguire opine that the behavior of the police with respect to Mr. Smith was inappropriate and inconsistent with proper police practices, standards, and training.

**Facts relating to *Monell* claim against Defendant City of Aurora include:**

- The City of Aurora and the APD ratified the conduct of the officers. The APD Force Investigations Unit reviewed the actions of all the APD officers (including Budaj, Brukbacher, Serrant, and McNamee) during the protests and found that they were "compliant with policy." No officers were disciplined and these were the final findings of the City of Aurora final policymakers. In fact, the Aurora Chief of Police (a final policymaker) recommended all of the officers for a meritorious service award for their conduct during the protests.
- Witnesses designed to provide testimony on behalf of the City of Aurora pursuant to Rule 30(b)(6) testified that the actions of the Aurora officers were consistent with Aurora policy and training. Because Budaj, Brukbacher, Serrant and McNamee's actions were consistent with Aurora policy and training, Aurora's inadequate policies and training were the moving force behind the constitutional violations alleged by Plaintiffs.
- Mr. Stamper and Dr. Maguire opine that Aurora's policies and training were woefully deficient, outdated, and inconsistent with generally accepted police practices and standards.
- The Colorado Attorney General's Office issued a report in September 2021, in which it found that APD has "a pattern and practice of violating state and federal law," specifically "racially biased policing" and "using excessive force." It also found that APD's training and policies were deficient and that "Aurora Police's culture leads to the frequent use of force, often in excess of what the law permits." There is also a lack of accountability and discipline of officers who use excessive force. A report commissioned by the City of Aurora by 21CP Solutions reached similar conclusions in August 2021.

In sum, there are numerous genuine disputes of material fact that preclude summary judgment for the Aurora Defendants.

Sincerely,

s/ Elizabeth Wang
Counsel for Fitouri Plaintiffs

s/ Michael Sebba
Counsel for Epps Plaintiffs