Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-01878-RBJ
(consolidated with 1:20-cv-01922-RBJ-MEH)

BLACK LIVES MATTER 5280, *et al*.,

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et. al*.,

Defendants.

---

## PLAINTIFF SARA FITOURI'S RESPONSE TO DEFENDANT CITY AND COUNTY OF DENVER'S FIRST SET OF INTERROGATORIES

Now comes Plaintiff Sara Fitouri, through her attorneys, and hereby responds to Defendant City and County of Denver's First Set of Interrogatories, as follows:

### RESPONSES TO INTERROGATORIES

1.      Identify and briefly describe each instance where you allege that your constitutional rights were violated in connection with the events described in your Complaint (for the Plaintiffs in 20-cv-01878 (the "BLM 5280 Plaintiffs")) or Amended Complaint (for the Plaintiffs in 20-cv-01922 (the "Fitouri Plaintiffs")), or any subsequent amendments thereto, including the location, time, date, and nature of each alleged violation.

    a. The time and location of each violation should be described with as much specificity as possible using any available electronic means to determine such, including, but not limited to, data available from your cellular phone carrier, or

1

maintained in your Apple, Google, and/or other service provider or device manufacturer accounts, and/or metadata contained in Media files.

b. Describe the steps taken and sources referenced to determine the time and location of each alleged violation (omitting any privileged information).

c. To the extent you are unable or unwilling to use electronic data to provide the times and locations of the subject events, please state so and explain why you are unable or unwilling to do so.

**RESPONSE:** Plaintiff objects to subsections (a)-(c) of this interrogatory because it seeks information that is protected from disclosure by the work product doctrine, is unduly burdensome, and seeks to direct Plaintiff in how she should answer the interrogatory. Under the Federal Rules of Civil Procedure, Plaintiff is required to conduct a reasonable investigation in order to answer written discovery. Plaintiff has done so, including by consulting her memory, as well as documents, video, and photos available to her or her attorneys. Furthermore, Plaintiff considers (b) and (c) as discrete subparts which independently count toward the limit on the number of interrogatories allowed in this case. Moreover, Plaintiff objects to this interrogatory on the ground that it assumes that the constitutional violations committed against Plaintiff in this case occurred only on specific, pinpointed dates, times, and locations. This is not the case, especially with respect to Plaintiff's First Amendment claim.

Without waiving said objections, Plaintiff states: during the protests, Defendants deployed constitutionally unlawful crowd control tactics, including kettling, indiscriminate and unwarned launching of tear gas, other chemical agents, kinetic impact projectiles, and flashbang grenades into crowds, including at Plaintiff. Defendants intentionally used force on peaceful protestors, including Plaintiff, with no lawful justification. Not only did this excessive use of force injure

Plaintiff, but it chilled the exercise of First Amendment rights and suppressed speech. The purpose and effect of Defendants' excessive use of force was to prevent, deter, and suppress protestors from exercising their First Amendment right to exercise freedom of speech, peaceably assemble, and petition for redress of grievances. Defendants employed violent crowd control tactics to corral, intimidate, and suppress the speech of protestors. They used a variety of "less-lethal" weapons, including tear gas, flashbang grenades, pepper balls, rubber or foam bullets, and other projectiles fired directly at protestors. Defendants used these weapons on protestors, including Plaintiff, who were demonstrating peacefully, without first issuing warnings, lawful (or any) orders, or giving them adequate time to disperse. Defendants used "less-lethal" weapons indiscriminately and even at times when protestors were merely chanting, kneeling, or standing with their hands up. Many protestors, including Plaintiff, were hit with projectiles and/or inhaled tear gas or suffered pain and burning in their eyes, nose, mouth, and throat from pepper balls and tear gas used by the officers.

The constitutional violations committed against Plaintiff include all of the above, as well as but not limited to the following:

- On May 28, 2020, Plaintiffs Fitouri, Parkins, and Deras marched through Confluence Park toward I-25 with the rest of the marchers. Around 7:00 p.m. or shortly after, they observed Doe Defendant DPD Officers fire dozens of pepper balls and/or tear gas on the group of protestors who had been on the highway. At that time, Fitouri, Parkins, and Deras were on a pedestrian walkway over I-25. They inhaled tear gas and/or pepper balls fired by the Doe Defendant DPD Officers while on the walkway. When Plaintiffs rejoined the march heading back downtown, they inhaled tear gas and/or pepper spray that Doe Defendant DPD Officers had used on protestors in that area. This was in or around the area of 15th and Platte.

- On May 29, 2020, at approximately 8:00-8:45 p.m., Plaintiff Fitouri was on the south side of Colfax between Broadway and Lincoln. She and other protestors were protesting peacefully. Officers shot tear gas and pepper balls at protestors, including Plaintiff. She inhaled significant amounts of chemical irritants after officers opened fire without warning or orders to disperse. The officers continued to use pepper balls, tear gas, and flashbang grenades on the protestors, including Fitouri and Parkins, from the corner of Broadway and Colfax, as well as multiple other locations on and around the Capitol.

- Subsequently, on May 29, 2020, the Defendant Officers used pepper balls, tear gas, and flashbang grenades to push protestors southeast of the Capitol into surrounding neighborhoods. Fitouri and Parkins, along with other protestors, inhaled significant amounts of pepper spray and tear gas during this offensive move. Fitouri and Parkins saw many injured protestors at this time, including one woman who was unable to see or breathe and was caught in the gas. The officers did not close any of the streets and their actions pushed protestors into active oncoming traffic. Fitouri and Parkins left the protest one or around 10:30 p.m., after experiencing significant exposure to tear gas fired by Defendant Officers very close to their persons. The officers used pepper balls, tear gas, and flashbang grenades on protestors consistently throughout the evening and were still using weapons at the time Fitouri and Parkins left. The officers never gave any warnings or dispersal orders before shooting tear gas and/or pepper balls at protestors. The officers also shot tear gas and/or pepper balls at peaceful protestors who were kneeling on many occasions. Many of these protestors had their hands in the air and their shirts off. At many points in the evening of May 29, 2020, when Fitouri and Parkins and other peaceful protestors were on the Capitol steps with their hands up, chanting, "Hands up,

don't shoot," Defendant Officers fired flashbang grenades, tear gas, and pepper balls into the crowd indiscriminately and without warning or orders.

- On May 30, 2020, between approximately 6:00-8:00 p.m., Plaintiff was at the intersection of Lincoln and Colfax, protesting with a large group of other protestors. They were chanting and some were kneeling. There was a line of officers in riot gear, believed to be Aurora and Denver police, who were shooting projectiles at the crowd, throwing flashbang grenades, and tear gassed and using pepper balls on the protestors. The police threw a flashbang grenade, which landed at Plaintiff's foot and exploded. Plaintiff Fitouri's foot went numb and she suffered minor burns. Plaintiff also inhaled chemical irritants. There was no lawful justification for this use of force. The officers also gave no warning.

- At approximately 8:00 p.m. on May 30, 2020, in the immediate vicinity of the Capitol, officers launched more chemical irritants and flashbang grenades at Fitouri and other protestors, indiscriminately and without warning.

- Later in the evening on May 30, 2020 (after 8:00 p.m. and before approximately 9:40 p.m.), in the alleyways in or around 12th or 13th and Pennsylvania, officers kettled Plaintiff with other protestors and then opened fire with pepper balls without giving any order or warnings. Plaintiff did not see protestors do anything to provoke or warrant this use of force. Officers also chased Plaintiff and other protestors into alleys, trying to force them into places where they were cornered, so that they could shoot "less-lethal" weapons at them. This was very traumatic to Plaintiff and others because people were scared, trying to run away, and some people were getting trampled. Plaintiff was hit several times with pepper balls on her body, resulting with a large welt on her thigh, and she felt several more pepper balls hit her backpack.

- After they left the protest at approximately 9:40 p.m. on May 30, 2020, as Plaintiff Fitouri was with Parkins, Deras and Amghar and they were preparing to go home, Plaintiff returned to her place of work at 15th Avenue and Grant Street where her car was parked. She was standing in the private parking lot of her workplace. A group of protestors came by. Suddenly, one or more police vehicles screeched to a halt, many Doe Defendant Officers got out of their vehicles and began shooting pepper balls and/or tear gas at the protestors without warning or dispersal orders. Plaintiffs attempted to hide behind their own vehicles. The officers shot at them and other protestors running through the parking lot from approximately 20 feet away.

- On May 31, 2020, when Fitouri, Parkins, Deras, Amghar, and other protestors marched near the police precinct on Washington and Colfax at approximately 8:30 p.m.-8:45 p.m., Doe Defendant Officers began tear gassing, flashbanging, and pepper spraying the protestors. Fitouri did not do anything violent or that would have otherwise justified the force used by the officers, and she did not witness other protestors do anything that would have justified the use of force. Fitouri did not hear the officers give any warnings or orders prior to their use of force.

- On May 31, 2020, at approximately 9:30 p.m.-9:40 p.m., Plaintiff was at the Basilica on Colfax between Logan and Pennsylvania demonstrating peacefully with other protestors. Officers kettled protestors and proceeded to deploy tear gas and flash bangs from both sides. Many protesters were trapped and it was difficult to escape or breathe. Plaintiff inhaled large quantities of tear gas.

2.      Identify any Media (whether created by you, within your possession, or that can be accessed by you) depicting the instances identified in Interrogatory No. 1 and state whether you

are depicted in such Media and, if the subject Media is a recording, the time(s) at which you are depicted.

**RESPONSE:** Plaintiff objects to the request to identify any Media "that can be accessed" by them because it is overbroad, vague, and unduly burdensome. Furthermore, as stated above, the instances in which constitutional violations were committed against Plaintiff, including the violation of her First Amendment rights is not limited to specific, pinpointed dates, times, and locations. Thus, all of the Media produced by Plaintiff in this case, especially all of the Media depicting Defendants' unlawful use of force and intimidation and harassment of protestors, supports Plaintiff's constitutional claims. Plaintiff further objects to the request to state whether Plaintiff "is depicted in such Media," as overbroad and unduly burdensome because a great deal of the Media produced in this case includes large crowds of protestors either from an aerial view or from a street view, and it is not possible to identify Plaintiff in the crowd.

Without waiving said objections, Plaintiff states that she can identify the following Media that was produced by Plaintiffs or witnesses or unnamed class members, and Media produced in response to SDTs thus far reviewed:

With respect to the incident on May 28, 2020 referenced in Interrogatory No. 1, Plaintiff states: Fitouri 84-91, 101-105, 230-233, 240-243, 17708, 17714, 17736-49 (depicts the circumstances around the time that Deras and other Plaintiffs inhaled chemical irritants deployed by the officers on the protestors on I-25).

With respect to the incident on May 29, 2020 at approximately 8:00-8:45 p.m. at Colfax, Lincoln and Broadway, Plaintiff states:

- Video produced by Colorado State Patrol of May 29, 2020, depicting the intersections of Colfax, Lincoln and Broadway, "05292020 v211.ave," "05292020

v217.ave," "05292020 v64.ave," "05292020 v88.ave," "05292020 v93.ave"; Fitouri 17835-17844 (photos taken by Plaintiff Sannier); Fitouri 17928-17930 (photo and video taken by John Connor).

- Fitouri 11148-11151 (video taken by Madeleine Kelly depicting Colfax between Lincoln and Broadway at that date and time);

With respect to the incidents on May 30, 2020 at the intersection of Lincoln and Colfax and in the vicinity of the Capitol building between approximately 6:00 p.m. to shortly after 8:00 p.m.:

- Video produced by Colorado State Patrol of the intersection of Lincoln and Colfax on May 30, 2020, including: "05302020 v217.ave," "05302020 v101.ave," "05302020 v88.ave," "05302020 v94.ave," "05302020 v211.ave," "05302020 v64.ave," "05302020 v93.ave," which generally depict that intersection at that time and day;

- Fitouri 12187-12189 (shorter versions of video produced by CSP in response to CORA request);

- BWC (body-worn camera) footage produced by the Aurora Police Department in response to SDT, generally depicting the intersection of Lincoln and Colfax on May 30, 2020 at that time;

- Video produced by 9News of the intersection of Lincoln and Colfax on May 30, 2020, including "5-30-2020 2," "5-30-2020 4," "5-30-2020 7," generally depicting the intersection of Lincoln and Colfax at that time and day; "Live coverage of 5-30-2020".

- Fitouri 6-7 (video taken by Plaintiff Amghar depicting the intersection of Lincoln and Colfax at approximately 6:56 p.m. and 7:00 p.m. on May 30, 2020);

- Fitouri 114-123, 17711, 17712, 17761 (video and photos taken by Plaintiff Deras depicting the intersection of Lincoln and Colfax on May 30, 2020, between 6:00-8:00 p.m.);

- Fitouri 131-132, 205, 208, 214, 17894, 17896, 17904 (photos and videos taken by Plaintiff De La Vaca depicting the intersection of Lincoln and Colfax on May 30, 2020, between 6:00-8:00 p.m.);

- Fitouri 11041-11042, 11055-11061, 11064, 11068-11070, 11072 (photos and video taken by Bennett Stebleton depicting the intersection of Lincoln and Colfax on May 30, 2020, between approximately 6:00-8:00 p.m.);

- Fitouri 11175-11176 (video taken by Madeleine Kelly depicting the area in the park near the intersection of Lincoln and Colfax on May 30, 2020 at approximately 6:00 p.m.);

- Fitouri 11241-11243 (video taken by Shavonne Blades depicting the scene in and around the Capitol, as well as the intersection of Lincoln and Colfax on May 30, 2020, before 8:00 p.m.).

With respect to the incident in the parking lot of Colorado Education Association after leaving the protest at approximately 9:40 p.m. on May 30, 2020: Fitouri 12178-12186 (video from Colorado Education Association).

With respect to the incident at Washington and Colfax on May 31, 2020, the following videos may depict the general circumstances:

- Video produced by 9News of protestors on Colfax east of the Capitol and police use of force, "5-31-2020 4" (depicting general circumstances and police use of "less-lethal" weapons in and around Colfax and Washington at approximately 8:30 p.m., unable to see Plaintiff in video);

- BWC (body-worn camera) footage produced by the Aurora Police Department in response to SDT, generally depicting their activity on Colfax east of the Capitol on May 31, 2020.

With respect to the incident on May 31, 2020 at approximately 9:30 p.m. when protestors were kettled in front of the Basilica on Colfax between Logan and Pennsylvania:

- Fitouri 228-229;

- Video produced by 9News in response to subpoena, including "5-31-2020 4," at 1:37:11-1:39:11;

- BWC footage produced by the Aurora Police Department in response to subpoena from 5/31/20 may depict this incident;

- https://twitter.com/_pepo__/status/1267301626127298561?s=21 (Plaintiffs Fitouri and Parkins are in white helmets at about 0:07-0:09 seconds).

3.    As to the instances identified in response to Interrogatory No. 1, please identify any witnesses to each instance and provide the witnesses' contact information, including, but not limited to, their last known address, phone number, email address, and social media identifiers.

**RESPONSE:** Plaintiff objects to the request for email and social media identifiers as overbroad, unlikely to lead to the discovery of admissible evidence, and an invasion of privacy. Plaintiff will provide phone number and last known address if known. Plaintiff further objects to

the request for the identifies of "any witnesses" as unduly burdensome, given that Plaintiff did not personally know the names of most of the dozens of other protestors present when her constitutional rights were violated.

Without waiving said objections, Plaintiff states the following with respect to witnesses known to him or his attorneys (who could testify at least about the general circumstances and police use of force):

- With respect to the incidents on May 28, 2020 at or near I-25, Plaintiff states: the officers present; Alejo Gonzalez, Hayley Banyai-Becker, Breezy Sanchez (720-350-2114), Jesse Newman, Ruby Tedeschi, Sofia Halpin (720-251-9005), Sammie Lawrence (may be contacted through his attorney, James A. Castle), Plaintiffs Deras, Parkins, Sannier and Taylor; Ben Bull (615-587-0941), and Andrea Chiriboga-Flor (978-516-8996). Plaintiff's Rule 26(a)(1) Disclosures for contact information.

- With respect to the incidents on May 29, 2020: the officers present, Plaintiffs Fitouri and Sannier, Madeleine Kelly, John Connor (352-562-2521, 1432 N. Pennsylvania St., Apt. E, Denver, CO 80203).

- With respect to the incidents on May 30, 2020 at or near the intersection of Lincoln and Colfax: the officers present (Aurora PD and Denver PD) (The identities of the police officers who were present and witnessed and/or participated in the unlawful use of force can be determined from the Aurora Police Department BWC videos that have been produced by Plaintiff in this case. This information is equally available to Defendants.) In addition, other witnesses to the general circumstances include: Alejo Gonzalez, Mariah Wood, Jake Douglas, Kaley LaQuea, Kaley Brooks (502-889-8389), Jeremiah Flood (contact info unknown), Sofia Halpin, Brittany Buckley, Shavonne Blades, Plaintiffs De La Vaca, Parkins, Amghar, Deras, Sannier, John McEnroe, Abby

Zinman, Tejas Cousik (812-369-5600), Ruby Tedeschi, Madeleine Kelly, Robert Helmick, Bennett Stebleton, Chelsea Himmelbrand, Titus Peterson, Shawn Murphy (818-395-8229). See Plaintiff's Rule 26(a)(1) Disclosures for contact information.

- With respect to the above-described incident of being chased and trapped in alleyways by police officers on the evening on May 30, 2020, Plaintiff states: the officers present; Plaintiffs Parkins, Amghar, and Deras; Keara Fenzel (201-556-8510) and her partner, Jorge (contact info unknown), Yoal Kidane (720-277-7317), and Andrea Chiriboga-Flor. Plaintiffs may be contacted through Plaintiffs' counsel.

- With respect to the incident as they were going home on May 30, 2020 at 15th and Grant, Plaintiff states: the officers present; Plaintiffs Deras, Parkins, and Amghar. Plaintiffs may be contacted through Plaintiff's counsel.

- With respect to the incident on May 31, 2020 near Colfax and Washington at approximately 8:30-8:45 p.m., Plaintiff states: the officers present, Plaintiffs Parkins, Amghar and Deras; Richeal Young (650-678-2064), Emma Bliesener (303-667-3624, 3005 Irving St., Denver, CO 80211).

- With respect to the incident on May 31, 2020 at the Basilica, Plaintiff states: the officers present; Daniel Grosso (808-825-8342), Kaley Brooks, Mariah Wood, Jake Douglas, Kaley LaQuea, John McEnroe, Abby Zinman, Emma Smedberg (812-929-2275), Tejas Cousik, Plaintiffs Sannier, Parkins and De La Vaca, Emma Bliesener (303-667-3624, 3005 Irving St., Denver, CO 80211), and possibly Amy Schneider. See Plaintiff's Rule 26(a)(1) Disclosures for contact information.

4.      Identify any injuries sustained as a result of the events described in your Complaint (for the BLM 5280 Plaintiffs) or Amended Complaint (for the Fitouri Plaintiffs), or any subsequent amendments thereto, and provide a computation of all damages you are claiming, including a detailed description of each category of any damages sustained, the specific monetary amount of damages claimed in each category, and a description of your method for computing each category of damages.

**RESPONSE:** Plaintiff objects to the request to provide a "specific monetary amount of damages" for Plaintiff's noneconomic damages, because this will be determined by the jury. Without waiving said objection, Plaintiff states that her damages include compensatory damages against Defendants, general damages for violation of her First Amendment rights, costs and attorneys' fees as allowed by law, and pre- and post-judgment interest as allowed by law. Plaintiff's compensatory damages include mental, physical, emotional pain and suffering she experienced and that with reasonable probability will be experienced in the future. These injuries include but are not limited to: bruises, welts, and nightmares about the incidents; Plaintiff also experienced tear gas and/or pepper spray on numerous occasions, which caused coughing, difficulty breathing, irritation and burning in the eyes, nose throat, and mouth and a burning sensation on the skin. Plaintiff found the experience of being targeted by the police for no apparent reason to be very traumatic.

5.      If you or anyone acting on your behalf have interviewed, met with, discussed, or corresponded with any individual concerning the events described in your Complaint (for the BLM 5280 Plaintiffs) or Amended Complaint (for the Fitouri Plaintiffs), or any subsequent amendments thereto, for each individual please state (a) the name, address, telephone number, email address,

and social media identifiers of the individual; (b) the date of the discussion; and (c) what was discussed.

**RESPONSE:** Plaintiff objects to this interrogatory because it seeks information protected from disclosure by the attorney-client privilege and work product doctrine with respect to conversations with individuals interviewed by her attorneys, paralegals or investigators or with whom her attorneys, paralegals or investigators met, discussed, or corresponded. Furthermore, to the extent there are any witnesses or unnamed putative class members who have indicated to Plaintiff's counsel that they wish to be contacted through Plaintiff's counsel, that has been indicated on Plaintiff's Rule 26(a)(1) disclosures. Plaintiff further objects to the request for email addresses and social media identifiers as overbroad, unlikely to lead to the discovery of admissible evidence, and an invasion of privacy. Plaintiff also objects that this interrogatory is unduly burdensome. And finally, Plaintiff objects to the interrogatory to the extent that it asks Plaintiff to describe conversations that Plaintiff has had with attorneys for the purpose of seeking legal advice.

Without waiving said objections, Plaintiff will, to the best of her recollection, provide the name, phone number, and last known address (if known) of the individuals with whom *Plaintiff* has discussed or corresponded concerning the events described in the Amended Complaint, with the exception that if there are any witnesses or unnamed putative class members that have indicated to Plaintiff's counsel that they wish to be contacted via Plaintiff's counsel, that is so indicated on Plaintiff's Rule 26(a)(1) disclosures.

Plaintiff states that, to the best of her recollection at this time, she has discussed the events described in the Amended Complaint with co-Plaintiffs Parkins, Deras, and Amghar on multiple occasions, including on May 30, 2020. These individuals may be contacted through Plaintiffs' counsel. Plaintiff also recalls discussing the events with her mother, Peggy Hegler (303-358-0378),

her brother, Rashad Fitouri (720-589-0591), Austin Reynolds (512-634-8752), Daniel Preston (970-640-3009), Marguerite Finnegan (734-972-9492), Emma Bliesener (303-667-3624), Richeal Young (650-678-2064), Rhiannon Duryea (303-880-7461), Martin Deras (720-277-7163), Miranda Doran-Myers (614-668-8278), Andrea Chiriboga-Flor and Yoal Kidane (720-277-7317), Josh Spinner, Sarah Thomas (908-327-1276), Carmen Medrano (303-385-7732), Keara Fenzel (201-556-8510), Christopher Zivalich (303-808-7169), Laura Knoblach (720-819-8469), Tommy Shimrock (440-477-8272), Jesus Loayza (954-465-3643, 1550 Pennsylvania St., Denver 80203), Issa Gutierez (413-265-1626), Yoal Kidane (720-277-7317), Kathy Rendon (303-837-1500), Erin Bennett (303-601-9510), Amie Baca-Oehlert (303-905-1291), and Rick Sallinger, CBS4 Denver.

6.    To the extent that you allege Denver maintained any well-settled custom or practice that caused your rights to be violated, please describe with specificity each such custom or practice and the factual bases substantiating the existence of such custom or practice.

**RESPONSE:** Plaintiff objects to this interrogatory on the ground that it is premature because the Defendant City of Denver has not yet produced documents or responded to Plaintiff's written discovery requests relating to its liability in this case. Without waiving said objections, Plaintiff states: The Defendants have engaged in repeated, widespread violations of law, as outlined above, over the course of several nights, shutting down the exercise of First Amendment activities through the use of indiscriminate and unreasonable force against thousands of protestors; imposing citywide curfews without accommodating, or even attempting to accommodate, the right to peaceful assembly and protest; at times dispersing lawful and peaceful assemblies without warning and without providing any directions, means, or opportunity to disperse before taking aggressive police action; hitting at least hundreds of protestors with "less-lethal" weapons and/or tear gassing or pepper spraying them; selectively

15

enforcing the curfew against protestors by arresting them for violating an unlawful curfew and thereby placing them at great risk of exposure to COVID-19; and harassing, intimidating, and/or using force on individuals attempting to record or document police activity in public. In conjunction with a history of protest-related constitutional violations, Defendants' repeated widespread and unlawful acts over several nights and involving many locations constitute an unlawful custom and policy of violating protest participants' constitutional rights. Specifically, the Media produced by Plaintiffs to date support Plaintiffs' municipal liability claim against the City. On numerous, documented occasions, Defendant Officers escalated the use of force without any justification.

The Defendant City failed to train its officers in the constitutional responses to peaceful demonstrations, despite the history of such violations in the past and despite the obvious need for such training. The recurrence of the same violations with respect to these protestors indicates an intentional refusal to preserve the constitutional rights of protestors. The Defendant City failed to adopt adequate policies in the constitutional responses to peaceful demonstrations, despite the history of such violations in the past and despite the obvious need for adequate policies. The recurrence of the same violations with respect to these protestors indicates an intentional refusal to preserve the constitutional rights of protestors.

For instance, the DPD and the Defendant City have been called on numerous times dating back at least to 2011 to investigate its use of pepper balls and other chemical agents against protestors. After Denver police fired pepper balls at peaceful protestors on October 29th, 2011 during the Occupy Denver demonstrations in Civic Center Park, the Defendant City received several complaints and conducted an internal debriefing. Despite receiving notice of the DPD's unconstitutional actions, the Defendant City and the DPD deliberately chose not to conduct any

further review of the department's less-than-lethal force policy, despite the patently unlawful way in which pepper ball guns had been used against protestors and against the recommendation of the Office of the Independent Monitor, which described the decision not to examine the incident and the underlying policies as a "missed opportunity."

The Defendant City's policy, practice, and custom of authorizing officers to use "less-lethal" weapons to control and suppress protests was the moving force behind the violations of Plaintiffs' and class members' constitutional rights. These violations are also a direct result of the Defendant City's use of the services of law enforcement officers from other jurisdictions, who were also authorized to use "less-lethal" weapons to control and suppress protests. The Defendant City and its final policymakers have acted with deliberate indifference to the constitutional rights of protestors by authorizing, both explicitly and implicitly, the use of "less-lethal" force against protestors who do not pose any safety threat; by failing to properly train, supervise, and discipline officers regarding the proper use of force against protestors; by failing to rectify the unconstitutional custom of officers using "less-lethal" force to control and suppress demonstrations; and by failing to provide adequate policies. This constituted a conscious choice by the Defendant City not to properly train, supervise, discipline, rectify, or provide adequate policies on these issues.

Moreover, the Defendant City is responsible for the actions of any non-DPD officers whose services were used during the protests. By using those services, the Defendant City was required to ensure that all officers complied with protestors' constitutional rights.

DPD Chief of Police Paul Pazen was fully knowledgeable and apprised of the actions of Defendant Officers described above and, upon information and belief, was on site on one or more days of the protest, observing this DPD operation, without repudiating or stopping the

actions of the Defendant Officers, thereby ratifying them. Moreover, on the morning of May 29, 2020, Mayor Michael Hancock and Chief Pazen publicly praised the Defendant Officers for their "great restraint" and "tremendous restraint" during protests in Denver and said that the actions of the DPD in the use of "less-lethal" weapons against protestors was proper. Thus, the Defendant City, through its final policymakers, ratified the conduct of the Defendant Officers. This caused the violence and misconduct by the Defendant Officers to continue that day and in the days after the Mayor and the Chief of Police made these comments.

The Defendant City's final policymakers have received ample notice that officers were using "less-lethal" force against protestors to control and suppress demonstrations in the absence of any imminent threat to safety, including 150 complaints about the DPD in one 72-hour period, and widely publicized videos and firsthand accounts circulated through the local, state, and international press.

7.    To the extent you claim your rights were violated as a result of Denver's inadequate training or supervision, and/or discipline of its employees, please describe with specificity the alleged inadequacies and the factual bases substantiating their existence.

**RESPONSE:** Plaintiff objects to this interrogatory on the ground that it is premature because the Defendant City of Denver has not yet produced documents or responded to Plaintiff's written discovery requests relating to its liability in this case. Without waiving said objections, Plaintiff states: The Defendants have engaged in repeated, widespread violations of law, as outlined above, over the course of several nights, shutting down the exercise of First Amendment activities through the use of indiscriminate and unreasonable force against thousands of protestors; imposing citywide curfews without accommodating, or even attempting to accommodate, the right to peaceful assembly and protest; at times dispersing lawful and

peaceful assemblies without warning and without providing any directions, means, or opportunity to disperse before taking aggressive police action; hitting at least hundreds of protestors with "less-lethal" weapons and/or tear gassing or pepper spraying them; selectively enforcing the curfew against protestors by arresting them for violating an unlawful curfew and thereby placing them at great risk of exposure to COVID-19; and harassing, intimidating, and/or using force on individuals attempting to record or document police activity in public. In conjunction with a history of protest-related constitutional violations, Defendants' repeated widespread and unlawful acts over several nights and involving many locations constitute an unlawful custom and policy of violating protest participants' constitutional rights. Specifically, the Media produced by Plaintiffs to date support Plaintiffs' municipal liability claim against the City. On numerous, documented occasions, Defendant Officers escalated the use of force without any justification.

The Defendant City failed to train its officers in the constitutional responses to peaceful demonstrations, despite the history of such violations in the past and despite the obvious need for such training. The recurrence of the same violations with respect to these protestors indicates an intentional refusal to preserve the constitutional rights of protestors. The Defendant City failed to adopt adequate policies in the constitutional responses to peaceful demonstrations, despite the history of such violations in the past and despite the obvious need for adequate policies. The recurrence of the same violations with respect to these protestors indicates an intentional refusal to preserve the constitutional rights of protestors.

For instance, the DPD and the Defendant City have been called on numerous times dating back at least to 2011 to investigate its use of pepper balls and other chemical agents against protestors. After Denver police fired pepper balls at peaceful protestors on October 29th, 2011

during the Occupy Denver demonstrations in Civic Center Park, the Defendant City received several complaints and conducted an internal debriefing. Despite receiving notice of the DPD's unconstitutional actions, the Defendant City and the DPD deliberately chose not to conduct any further review of the department's less-than-lethal force policy, despite the patently unlawful way in which pepper ball guns had been used against protestors and against the recommendation of the Office of the Independent Monitor, which described the decision not to examine the incident and the underlying policies as a "missed opportunity."

The Defendant City's policy, practice, and custom of authorizing officers to use "less-lethal" weapons to control and suppress protests was the moving force behind the violations of Plaintiffs' and class members' constitutional rights. These violations are also a direct result of the Defendant City's use of the services of law enforcement officers from other jurisdictions, who were also authorized to use "less-lethal" weapons to control and suppress protests. The Defendant City and its final policymakers have acted with deliberate indifference to the constitutional rights of protestors by authorizing, both explicitly and implicitly, the use of "less-lethal" force against protestors who do not pose any safety threat; by failing to properly train, supervise, and discipline officers regarding the proper use of force against protestors; by failing to rectify the unconstitutional custom of officers using "less-lethal" force to control and suppress demonstrations; and by failing to provide adequate policies. This constituted a conscious choice by the Defendant City not to properly train, supervise, discipline, rectify, or provide adequate policies on these issues.

Moreover, the Defendant City is responsible for the actions of any non-DPD officers whose services were used during the protests. By using those services, the Defendant City was required to ensure that all officers complied with protestors' constitutional rights.

DPD Chief of Police Paul Pazen was fully knowledgeable and apprised of the actions of Defendant Officers described above and, upon information and belief, was on site on one or more days of the protest, observing this DPD operation, without repudiating or stopping the actions of the Defendant Officers, thereby ratifying them. Moreover, on the morning of May 29, 2020, Mayor Michael Hancock and Chief Pazen publicly praised the Defendant Officers for their "great restraint" and "tremendous restraint" during protests in Denver and said that the actions of the DPD in the use of "less-lethal" weapons against protestors was proper. Thus, the Defendant City, through its final policymakers, ratified the conduct of the Defendant Officers. This caused the violence and misconduct by the Defendant Officers to continue that day and in the days after the Mayor and the Chief of Police made these comments.

The Defendant City's final policymakers have received ample notice that officers were using "less-lethal" force against protestors to control and suppress demonstrations in the absence of any imminent threat to safety, including 150 complaints about the DPD in one 72-hour period, and widely publicized videos and firsthand accounts circulated through the local, state, and international press.

8.     With respect to any Media produced in response to these requests or affirmatively disclosed by you, please identify the individuals who made, took, or recorded the Media, describe the device used to create any such Media, and the chain of custody and/or control of the device/Media file between the date of the incident and the present, and describe any steps taken by you or anyone acting on your behalf to obtain and preserve such Media and devices.

**RESPONSE:** Plaintiff objects to this interrogatory because it is overbroad, not likely to lead to the discovery of admissible evidence, and unduly burdensome, especially with respect Media that Plaintiff did not create herself (such as Media obtained from third parties and produced

21

in this case). This interrogatory also contains at least 3 discrete subparts which independently count toward the limit on the number of interrogatories allowed in this case. Plaintiff will identify the individuals who made, took, or recorded the Media that she created herself or obtained from a person personally known to them.

Without waiving said objections, Plaintiff states that she took the following: Fitouri 1, 230-248, 16838, 16942. Plaintiff had an iPhone XR.

9.      Identify any social media accounts (including, but not limited to, Facebook, Reddit, Snapchat, Instagram, TikTok, and LinkedIn) maintained or accessed by you or anyone acting on your behalf from the three months preceding May 28, 2020 to date.

**RESPONSE:** Plaintiff objects to this interrogatory because it is vague and overbroad as to "accessed by you or anyone on your behalf," and not likely to lead to the discovery of admissible evidence. Without waiving said objections, Plaintiff states that she will answer the interrogatory with respect to social media accounts maintained by her from the three months preceding May 28, 2020 to date: Instagram (@Dumbledoresantifa), Facebook (Sara Fitouri), TikTok (@dumbledoresantifa23), and Twitter (@sarsoora_23).

10.      Describe in detail any and all contacts or arrests you have ever had with any law enforcement agencies, including the date of each such contact or arrest, the name of the law enforcement agency making the contact or arrest, and the specific description of the circumstances surrounding each contact/arrest.

**RESPONSE:** Plaintiff objects to this interrogatory because it is overbroad, not likely to lead to the discovery of admissible evidence, and an invasion of privacy.

11.     Please identify all medical facilities and Healthcare providers you have seen for any injuries, damages, or disabilities you are claiming as a result of the events described in your Complaint (for the BLM 5280 Plaintiffs) or Amended Complaint (for the Fitouri Plaintiffs), or any subsequent amendments thereto, including name, address, approximate dates of treatment and the condition for which treatment was sought.

**RESPONSE:** Plaintiff states that there are no such medical facilities or healthcare providers.

12.     Describe with specificity any injunctive relief sought by Plaintiffs through this action.

**RESPONSE:** Plaintiff objects to this interrogatory on the grounds that it is premature as discovery is in the beginning stages and still ongoing. Without waiving said objections, Plaintiff states that she seeks the following permanent injunctive relief which was issued on a preliminary basis in *Abay v. City and County of Denver*, 1:20-cv-1616-RBJ:

In response to a protest or demonstration, the DPD and any person acting on behalf of DPD shall not: discharge KIPs and all other non- or less-lethal projectiles in a manner that targets the head, pelvis, or back; discharge KIPs indiscriminately into a crowd; use chemical agents or irritants, including pepper spray and tear gas, prior to issuing an order to disperse in a sufficient manner to ensure the order is heard and repeated if necessary, followed by sufficient time and space to allow compliance with the order.

In addition to the requirements of C.R.S. § 24-31-905, the City and the DPD will not use chemical agents or KIPs, unless an on-scene supervisor at the rank of sergeant or above specifically authorizes such use of force in response to specific acts of violence or destruction of property that the sergeant has personally witnessed or learned about from a fellow officer, absent exigent

circumstances. Exigent circumstances include but are not limited to situations where the sergeant could not be immediately present and delay would be unreasonable. All officers deployed to the demonstrations or engaged in the demonstrations must have their BWCs recording any and all acts of confrontation between police officers and others. Officers shall not intentionally obstruct the camera or recording.

Non-Denver officers shall not use any weapon beyond what Denver itself authorizes for its own officers. All non-Denver officers shall comply with Colorado law regarding the use of force and responses to protests or demonstrations.

In addition, Plaintiff seeks the following permanent injunctive relief, which has been granted on a preliminary basis in other cases around the country arising from Black Lives Matter protests in summer 2020:

(1)     The City of Denver, including the DPD and any other officers, departments, agencies, or organizations under the DPD's control (collectively, "the City"), is enjoined from employing chemical irritants or projectiles of any kind against persons peacefully engaging in protests or demonstrations.

(2)     The City is prohibited from using stinger grenades, wooden bullets, rubber or rubber-coated bullets, pepper balls, blast balls, or similar munitions.

(3)     Chemical agents (such as CS gas or OC spray), flashbang grenades, and foam-tipped projectiles shall be deployed only when (a) there is an imminent threat of physical harm to a specific, identifiable person or significant destruction of property; and (b) other techniques, such as simultaneous arrests or police formations, have failed or are not reasonably likely to mitigate the threat. The use of such munitions must be authorized by a DPD Operations Commander or Incident Commander. None of these devices shall be deployed on peaceful protestors or

indiscriminately into a crowd. They may only be targeted at the specific imminent threat justifying the deployment, and only after reasonable warning. Flashbang grenades and gas canisters must be deployed at a safe distance from the crowd to minimize the risk that individuals will be struck and injured by those devices. Grenades and canisters may not be thrown or shot from a launcher but may only be rolled on the ground. When chemical agents are used, only the minimum amount of chemical agent necessary to obtain compliance may be used.

(4)     Except where an immediate risk to public safety or of significant property damage makes it impossible to do so, before any of the devices listed above are deployed to disperse a crowd, the City must have made at least two announcements to the crowd asking the members of the crowd to voluntarily disperse and informing them that, if they do not disperse, they will be subject to arrest. These announcements must be made using adequate sound amplification equipment in a manner that will ensure that they are audible to the crowd and must identify at least two means of escape/egress. The City must also allow the crowd sufficient time to disperse after making these announcements before deploying any of the devices listed above.

(5)     The DPD Incident Commander shall be responsible for ensuring that these requirements are met by non-Denver officers providing assistance to the DPD during a protest or demonstration. The Incident Commander shall ensure that the mutual aid agency has been briefed and is in agreement with the command structure under which only DPD Commanders may authorize the use of less lethal munitions for crowd control and dispersal.

(6)     The DPD Incident Commander shall ensure that the mutual aid agency has been briefed on the DPD's policy on prohibited weapons and force.

(7)     The DPD Incident Commander shall ensure that the officers of the mutual aid agency who provide assistance to the DPD do not bring or use any weapons or force prohibited under the DPD's policy.

(8)     The DPD Incident Commander shall ensure that the mutual aid agency has been provided a copy of the relevant policies.

(9)     The DPD Incident Commander shall ensure that officers of the mutual aid agency who provide assistance to the DPD are not assigned to front-line positions or used for crowd intervention, control or dispersal unless there is a public safety emergency.

(10)     The DPD Incident Commander shall ensure that the officers of the mutual aid agency who provide assistance to the DPD complete required reports prior to being released from duty.

(11)     The City shall provide training to its officers on the parameters of this injunction.

(12)     Each DPD officer and any non-Denver officer providing assistance to the DPD during a protest or demonstration shall wear a badge, nameplate, or other device on the outside of their uniform or on their helmet which bears the identification number or the name of the officer.

(13)     Each DPD officer and any non-Denver officer who uses force during a protest or demonstration, including any use of a "less-lethal weapon" must complete a Use of Force form within 24 hours of such use of force.

(14)     Motorcycles and police vehicles may not be used for crowd dispersal but may be used for purposes of observation, visible deterrence, traffic control, transportation, and area control during a crowd event.

(15)    Kettling of protestors or demonstrators is prohibited. Kettling refers to a police tactic whereby officers confine a large group of people to a designated space by surrounding them so that there is no escape.

(16)    If Plaintiffs contend that the DPD has violated this injunction, Plaintiff may request a hearing to seek relief, including a modification of the injunction. Unless the parties agree to a different briefing schedule, the City will have 72 (seventy-two) hours to respond to Plaintiffs' request.

Respectfully submitted,

/s/ Elizabeth Wang
Counsel for Plaintiff

Tara Thompson                          Elizabeth Wang
Makeba Rutahindurwa                    LOEVY & LOEVY
LOEVY & LOEVY                          2060 Broadway, Ste. 460
311 N. Aberdeen St.                    Boulder, CO 80302
Chicago, IL 60607                      O: 720.328.5642
O: 312.243.5900                        elizabethw@loevy.com
tara@loevy.com
makeba@loevy.com

## CERTIFICATE OF SERVICE

I, Elizabeth Wang, an attorney, hereby certify that on October 30, 2020, I served the foregoing Response on all counsel of record via e-mail.

/s/ Elizabeth Wang