*AB Litigation Services*

Exhibit 4

```
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01878-RBJ (consolidated with
20-CV-01922-RBJ-MEH)

------------------------------------------------------

VIDEOCONFERENCE DEPOSITION OF JOHNATHEN D. DURAN
August 3, 2021

------------------------------------------------------

ELIZABETH EPPS, et al.,

Plaintiffs,

vs.

CITY AND COUNTY OF DENVER, et al.,

Defendants.

------------------------------------------------------

APPEARANCES:

     LOEVY & LOEVY
         By Elizabeth Wang, Esq.
            2060 Broadway, Suite 460
            Boulder, Colorado 80302
               and
     LOEVY & LOEVY
         By Makeba Rutahindurwa, Esq.
            311 North Aberdeen Street, Third Floor
            Chicago, Illinois 60607
               Appearing on behalf of Plaintiffs.

     HALL & EVANS, L.L.C.
         By Katherine Hoffman, Esq.
            1001 17th Street, Suite 300
            Denver, Colorado 80202
               Appearing on behalf of Defendant.
```

```
 1        Q    Good.  Have you ever been a party to a
 2   civil lawsuit before?
 3        A    I have not.
 4        Q    Have you ever been arrested?
 5        A    I have.
 6        Q    When were you arrested?
 7             MS. WANG:  I'm going to object.  So
 8   during -- during written discovery, when the City
 9   sent written interrogatories about this, we
10   objected.  I'm willing to allow him to answer to any
11   arrests in the last 10 years.
12             MS. HOFFMAN:  Understood.
13        Q    (By Ms. Hoffman)  Have you been arrested
14   in the last 10 years?
15        A    I have not.
16        Q    (By Ms. Hoffman)  If we could just go on
17   break for one minute.
18        A    Okay.
19             (A recess was taken from 1:45 p.m. to
20              1:48 p.m.)
21        Q    (By Ms. Hoffman)  Other than arrests, have
22   you had any previous interactions with law
23   enforcement?
24        A    I have.
25        Q    Can you describe those for me?
```

```
 1   was.
 2             And I can't recall exactly what it was
 3   about, but I'm pretty sure it was something Donald
 4   Trump, about QAnon.  It was definitely QAnon people.
 5   And I had never seen them mobilize in Boulder
 6   County, so I wanted to say hi and see if they had
 7   anything to say to the media.  They didn't want to
 8   talk to me.
 9             MS. HOFFMAN:  Okay.  And I'd like to
10   circle back to the -- to my previous question about
11   arrests.  And I just want to follow up, Counsel,
12   with you.
13             Am I -- am I understanding that you are
14   instructing your client not to answer any questions
15   about arrests that occurred over 10 years ago?
16             MS. WANG:  Yes.
17             MS. HOFFMAN:  Okay.  And can I -- can you
18   tell me the basis for that instruction?
19             MS. WANG:  Relevance, not likely to lead
20   to the discovery of admissible evidence.
21             MS. HOFFMAN:  Okay.  And so I'd state on
22   the record that we would then preserve our rights to
23   potentially go to court to seek a protective order
24   to compel that testimony if -- if need be.
25             MS. WANG:  I mean, if you want to tell me
```

AB Litigation Services

1   why you think that's relevant.

2          MS. HOFFMAN:  It's relevant because

3   potential arrests and potential -- all potential

4   interactions with law enforcement could certainly

5   color an individual's preexisting perception and

6   beliefs regarding law enforcement, which goes to the

7   heart of this matter.

8          MS. WANG:  It actually doesn't, because

9   he's a journalist, not a protester.  So he wasn't

10  attending with -- with -- you know, to protest.  He

11  was attending as a journalist.

12         MS. HOFFMAN:  I -- I understand the

13  relevance objection.  I -- I still respectfully

14  disagree and do believe it does go to the heart of

15  this issue in this matter, that he was still

16  reporting as a journalist, but still giving his own

17  take and perceptions, certainly, in his live stream.

18         So it does go to the heart of this matter,

19  and it is relevant to have more information about

20  his beliefs and perceptions of law enforcement, and

21  that's our position.

22         MS. WANG:  All right.  Let's take a quick

23  break.

24         (A recess was taken from 1:56 p.m. to 1:59

25         p.m.)

```
 1              MS. WANG:  I'll let you ask the question.
 2              MS. HOFFMAN:  Thank you.
 3         Q    (By Ms. Hoffman)  Mr. Duran, have you been
 4    arrested more than 10 years ago?
 5         A    I have.
 6         Q    Okay.  When were you arrested?
 7         A    I was 18 years old, and I was arrested for
 8    jaywalking over a railroad track, not using the
 9    official crosswalk.
10         Q    And is that the only arrest that you have?
11         A    When I was 14, my brother stole a bicycle
12    headlight from Walmart, and we were both arrested
13    for that.  You know, guilty by association.
14         Q    And regarding the incident when you were
15    18, did any criminal charges come from that?
16         A    Yes.  I was arrested for -- I was -- they
17    gave me a plea deal.  They tried to -- I don't know
18    what it was.  It was so long ago I'd have to review
19    the documents, but I pled to trespassing on the
20    railroad tracks.  It was on federal property.
21         Q    And did you have to do probation or pay a
22    fine or anything?
23         A    I believe so.  I don't recall the
24    disposition of the case.
25         Q    And regarding the incident that occurred
```

```
 1   even prior in time, when you were 14 years old, did
 2   any criminal charges come from that?
 3        A    That one actually stands out to me.  I was
 4   given 50 hours of community service.  It was -- it
 5   was actually rather nice, because I went to work for
 6   a nonviolence organization in East Riverside,
 7   California, and that was the first time I had an
 8   opportunity to edit documents, and sent me on my
 9   path to becoming an editor today.
10        Q    That's great.
11        A    Actually -- it's actually a beautiful
12   redemption story.
13        Q    And did either of those experiences --
14   strike that.
15             Did you -- where -- where did the offense
16   when you were 18 years old, where did that occur?
17        A    Riverside.
18        Q    Riverside, California?
19        A    That's correct.
20        Q    Okay.  And when you were 14 years old?
21        A    Same.
22        Q    And I assume that you interacted with law
23   enforcement in the course of both arrests, correct?
24        A    That is correct.
25        Q    And did your interactions with law
```

AB Litigation Services

```
 1    enforcement from either of these incidents, do they
 2    stay with you, do they color your perception of law
 3    enforcement?
 4         A    They colored my perception of how I behave
 5    in public.
 6         Q    And how is that?
 7         A    Respect for dignity for my environment and
 8    the law.
 9         Q    Mr. Duran, were you carrying a cell phone
10    during the protests?
11         A    I was.
12         Q    And what is your provider?
13         A    Verizon.
14         Q    And do you still have the same number and
15    provider today?
16         A    I do.  I still have the same cell phone.
17         Q    And what kind of cell phone is that?
18         A    LG, G7 ThinQ, and ThinQ has a Q on the
19    end, not a K.
20         Q    And does that phone synch with the cloud
21    or other storage programs?
22         A    It does.  It synchs to my Google account
23    through my editorial e-mail address.
24         Q    And were you using G location or any
25    tracking services at the time of the protests?
```