IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01878-RBJ
(consolidated with 20-cv-01922-RBJ-MEH)

ELISABETH EPPS, *et al*.,

      Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al*.,

      Defendants.

---

## DEFENDANTS' JOINT MOTION TO BIFURCATE TRIAL

      Defendants, City and County of Denver ("Denver"), Anthony E. Tak, Patrick Phelan, Matthew Canino, James D. Williams, Thomas Pine, Vincent Porter, Michael O'Donnell, Kevin Carroll, Rick Beall, David Abeyta, Marco Martinez, Justin Dodge, Richard D. Eberharter, Tana Cunningham, John Sampson, Johnathan Christian and Keith Valentine (collectively the "Denver Defendants), along with the City of Aurora and Officer Cory Budaj, David McNamee, Patricio Serrant, Matthew Brubacher (the "Aurora Defendants"), and Deputy Timothy Dreith and Deputy Anthony Hamilton (the "Jefferson County Defendants"), by and through their counsel, respectfully move, pursuant to Fed. R. Civ. P. 42(b) for an Order bifurcating trial, as follows:

## CERTIFICATE OF CONFERRAL

In accordance with D.C.COLO.LCivR 7.1(A), the undersigned conferred with counsel for the Fitouri Plaintiffs and counsel for the Epps Plaintiffs. Following a telephone conversation with Elizabeth Wang, counsel for the Fitouri Plaintiffs, undersigned counsel understands that both Plaintiff groups oppose bifurcating the arrest class trial from the remaining claims, though they do not oppose separating damages determinations for the non-named and non-testifying class members. Both Plaintiff groups oppose the request to bifurcate the *Monell* claims from the Individual claims. Ms. Wang expressed a desire to see the briefing before stating a position on separation of the injunctive relief from the damages claims. Finally, Ms. Wang, who is counsel for Joe Deras, has not formulated a position with respect to Jefferson County's request to sever Mr. Deras' claims, reserving thoughts for their Response after fully reviewing the relief requested.

## INTRODUCTION

This action consists of two consolidated lawsuits – (1) *Epps, et al. v. City & County of Denver, et al.*, Civ. Act. No. 20-cv-1878-RBJ ("*Epps*"), and (2) *Fitouri, et al. v. City & County of Denver, et al.*, Civ. Act. No. 20-cv-1922-RBJ ("*Fitouri*")– both alleging claims arising out of or related to protest activity resulting from George Floyd's death between May 28, 2020 through June 2, 2020. This consolidated lawsuit previously included Michael Acker's claims, which was severed and deconsolidated by this Court upon the request of Mr. Acker. [Doc. #128].

*Epps* involves eight Plaintiffs with claims against Denver and two individual Denver Defendants, as well as against and Aurora and three individual Aurora Defendants alleging their right to peacefully protest was impacted and excessive force was used against them through the deployment of less lethal munitions over the course of the protests totaling over 20 separate and

distinct events. [Doc. #178]. The *Epps* Plaintiffs also assert a custom, policy or practice municipal liability theory against Denver and Aurora.

*Fitouri* involves seven Plaintiffs with claims alleging interference with their right to peacefully protect and excessive use of force against Denver and 15 individual Denver Defendants, Aurora and one individual Aurora Defendant, two Jefferson County individual Defendants and two separate municipalities, totaling over 25 separate and distinct events. [Doc. # 219]. Only one of these plaintiffs reached a tentative agreement to settle their claims against Denver following the mediations that took place the week of January 19, 2022, which is currently pending City Council's approval. *Fitouri* also involves a class action consisting of 312 people ("Class Plaintiffs") arrested and charged with violating Denver's Emergency Curfew Order, held for varying times and released and later having charges against them dismissed. The Class Plaintiffs allege their First, Fourth, and Fourteen Amendment rights were violated as a result of their arrest and detention on curfew charges. The *Fitouri* Plaintiffs additionally assert several municipal liability theories against the three different municipal defendants, including failure to train, unlawful custom, practice or policy, ratification and failure to discipline.

This matter has been set for a 12-15 day jury trial. Recently, in anticipation of the February 4, 2022, Trial Preparation Conference before this Court, Plaintiffs disclosed to the Defendants a witness list containing 146 witnesses and an exhibit list with 1,092 exhibits. No possibility exists for that much evidence to be presented in a 15 day jury trial.[1] As pled by Plaintiffs and based on the prospective evidence Plaintiffs intent to present, a trial of all the different claims and issues

---

[1] Fifteen trial days means a total of between 90 (based on 6 hours) and 97.5 (based on 6.5 hours) hours of court time. If Plaintiffs are allotted half this time there would be an average of 35 minutes per witness.

before this Court requires the exercise of judicial discretion so it has a manageable scope for this Court, the parties, and the jurors.  The current combined trial would likely take two or three months to try which is neither sustainable nor appropriate for anyone concerned.

Denver Defendants respectfully request the Court exercise its discretion and bifurcate the trial into the following separate parts: (1) separate the claims of the 312 Class Plaintiffs from the remaining claims and consider separating the class trial into a liability and damages phases; (2) try the 14[2] individual Plaintiffs' constitutional claims ("Individual Plaintiffs") against the 20 total individual Defendants (from three different municipalities) separate and apart from the municipal liability claims brought against the three municipality Defendants (modify if inclusive of other jurisdictions); and (3) separate Plaintiffs' jury trial on monetary damages from their request for injunctive relief. The Jefferson County Defendants also seek the complete separation of the claims asserted against them which relate only to a discrete incident on one evening of the protests and are asserted by only one plaintiff, Joe Deras.

Separate trials will promote convenience and efficiency while avoiding unfair prejudice and juror confusion that is certain to result from the introduction of evidence relating to numerous discrete events, each involving a different factual scenario, and from the application of different legal standards. The Class Plaintiffs challenge the legality of their arrests under the Fourth Amendment, whether the Emergency Curfew Orders were constitutional, and whether the Curfews were enforced against everyone appropriately or discriminatorily against peaceful protesters. In total, the 14 Individual Plaintiffs allege over 45 discrete incidents of alleged excessive force.

---

[2] These numbers are reduced herein and hereafter to reflect the settlement of the one Fitouri Plaintiff's claim which is pending Denver City Council's approval.

Among the Plaintiffs, some have $0 in past medical expenses, some have a minimal amount, and some have received extensive medical treatment in excess of $180,000. For some, medical testimony will be required, for others, no medical testimony will occur. Finally, the separate municipal liability claims against Denver and Aurora are derivative and dependent on the outcome of the Individual Plaintiffs' claims against the individual Defendants.

Each of the claims in this consolidated case involve proof of different facts, call for the presentation of evidence through different witnesses, and involve substantially different legal standards. Thus, trying all these claims together presents a substantial danger that evidence will overwhelm jurors based on the sheer volume of different factual scenarios and legal standards.

## STANDARD OF REVIEW

Fed. R. Civ. P. 42(b) states, in relevant part:

(b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or issue....

When determining whether to exercise discretion to order a separate trial of any claim or issue, the Court may consider the following: convenience and economy; separability of the claims or issues; and fairness. *See Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964–65 (10th Cir. 1993). However, the language of Rule 42(b) is disjunctive, meaning "[o]nly one of these criteria need be met to justify bifurcation." *See, e.g., Saxion v. Titan-C-Mfg.*, 86 F.3d 553, 556 (6th Cir. 1996) (citations omitted). Moreover, "[w]hile separation of issues for trial is not to be routinely ordered, it is important that it be encouraged where experience has demonstrated its worth." Fed. R. Civ. P. 42(b), Advisory Committee Note to the 1996 Amendment of Rule 42(b). Further, bifurcation may be appropriate where "the litigation of the first issue might eliminate the need to litigate the second

issue, or where one party will be prejudiced by evidence presented against another party." *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999).

The Court's controlling interest is efficient judicial administration. Charles Alan Wright Et Al., 9a Federal Practice & Procedure § 2388 (3d ed.) (citations omitted). While the moving party bears the burden of showing bifurcation is necessary, it is well-established the question of whether separate trials should be ordered and how the case should be bifurcated are matters left to the sound discretion of this Court. *See Palace Exploration Co. v. Petroleum Dev. Co*., 316 F.3d 1110, 1119 (10th Cir.2003) (citations omitted); *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1285 (10th Cir.1999) (citations omitted). Here, examination of the applicable factors conclusively establish bifurcation of the trial is not only appropriate based on the circumstances of this case but also absolutely necessary to avoid juror confusion and unfair prejudice.

## ARGUMENT

Courts within the Tenth Circuit and across the country have recognized the benefit and necessity of bifurcating 42 U.S.C. § 1983 claims. *See, e.g., Lund v. Henderson,* 807 F.3d 6, 12 (1st Cir. 2015) (decision to hold separate trial for municipal claims subsequent to determination of individual liability "was a classic exercise of the trial court's management discretion."); *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) ("decision to bifurcate the trial was eminently reasonable in the interests of judicial economy and avoiding possible juror confusion"). Separating this lawsuit as suggested above, or in a different manner as this Court decided warranted, promotes judicial economy and avoids potential unfair prejudice and/or juror confusion, which will inevitably result from the introduction of numerous different factual scenarios and applying vastly different evidentiary standards and materials to each separate claim.

1. **Bifurcating the Class Plaintiffs' Claims is Appropriate and Necessary.**

Courts, including this one, have bifurcated class claims from individual claims for trial. *See, e.g., Cook v. Rockwell Int'l Corp.*, 273 F. Supp. 2d 1175, 1179 (D. Colo. 2003) ("The Property Class claims and individual medical monitoring and other claims are bifurcated for trial, with the Property Class claims to be tried first."); *Arreola v. Godinez*, 546 F.3d 788, 790-91 (7th Cir. 2008) ("the district court bifurcated the proceedings, severing Arreola's individual claims against Dr. Choudry from his class claims against Cook County"); *Cox v. City of Dallas*, 430 F.3d 734, 739 (5th Cir. 2005) ("the district court bifurcated the case for separate trials of the class claim ... and the non-class claims"); *Wilhoite v. Mo. Dep't of Soc. Servs. ex rel. Levy*, 2011 U.S. Dist. LEXIS 44879, 2011 WL 1576384, at *2 (W.D. Mo. Apr. 26, 2011) ("the Court ... bifurcated the class action segment of the lawsuit from Plaintiff Wilhoite's individual claim"). Similarly, bifurcation is appropriate here.

All the elements under Fed. R. Civ. P. 42 are satisfied here. The issues between the Class Plaintiffs and the Individual Plaintiffs are separable, bifurcation promotes efficiency and economy, and the failure to bifurcate would cause the Defendants to suffer unfair prejudice. *See Heatherman v. Ethicon, Inc.*, 2021 U.S. Dist. LEXIS 101898, *5 (D. Colo. Jan. 22, 2021). Regarding the first factor, the issues between the Class Plaintiffs and the Individual Plaintiffs are readily separable. The Class Plaintiffs allege Denver's Emergency Curfew Orders were facially unconstitutional and Denver discriminatorily applied it by targeting peaceful protestors. Conversely, the Individual Plaintiffs' claims involving multiple issues including whether individual officers used excessive force against Individual Plaintiffs, retaliated against Individual Plaintiffs, and failed to intervene when other officers allegedly used excessive force. The issues between the Class Plaintiffs and the

Individual Plaintiffs involve different facts and require the application of different law with only negligible overlap. Further, there are differences in the types of damages awardable between these groups as the Class Plaintiffs assert damages for their arrests and detentions while the 14 Individual Plaintiffs have vastly different economic damages claims requiring individualized damages presentations. In *Hawkins v. Securitas Sec. Servs. USA, Inc.,* 2013 U.S. Dist. LEXIS 40485, *4 (N.D. Ill. March 21, 2013), the Court bifurcated finding the request served judicial economy and did not prejudice either party, largely because the class claims "entai[ed] factual inquiries distinct from those raised by [the individual claims]." The same is true here; with different facts and different applicable legal standards both the factual and legal issues between the Class Plaintiffs and the Individual Plaintiffs are severable.

Moreover, bifurcation promotes the interests of judicial efficiency and economy. Given the number of parties, witnesses, and issues, bifurcation is appropriate. Indeed, of Plaintiffs' 146 witnesses, only two--Plaintiffs Kelsey Taylor and Clare Sannier--assert both class and individual claims. However, the evidence related to Ms. Taylor's and Ms. Sannier's arrests and detention and their excessive force and retaliation claims entirely differ. With respect to the Class Plaintiffs' claims, witnesses will be asked questions about Denver's Emergency Curfew Order, how it was enforced, and the circumstances of the arrests and detentions. These questions and issues are simply not relevant to the Individual Plaintiffs' excessive force and retaliation claims which involve specific events concerning the use of force. In total, the jury will be required to listen to the testimony of numerous witnesses testifying to different incidents on different dates involving different officers from different jurisdictions, which are subject to different legal standards.

Confusion is inevitable. Failure to bifurcate in light of the inevitable juror confusion which will take place at the trial in this matter causes unfair prejudice.

Bifurcating the cases will not prejudice the Plaintiffs, who will have a better opportunity to present the facts relevant to their claims without getting lost in a mountain of evidence and witnesses. Plaintiffs will conserve substantial resources if the claims are tried separately. All these facts support splitting the trial for the Class Plaintiffs and the Individual Plaintiffs into separate proceedings, so the jury can focus on the different factual and legal issues for the different claims.

### 2. Bifurcating the Individual Plaintiffs from the Municipal Liability Claims is Warranted.

Bifurcation of 42 U.S.C. § 1983 constitutional claims from municipal liability claims is appropriate because it promotes judicial economy, conserves the parties' resources, and prevents prejudice to the individual Defendants without prejudicing the Plaintiffs. *Boyd v. Montezuma Cnty. Sheriff's Office*, No. 15-CV-00101-MEH, 2015 WL 2329061, at *1 (D. Colo. May 13, 2015) (ordering separate trials for individual liability and municipal liability claims brought under § 1983).

Bifurcating the claims against the 20 individual defendants and the two distinct municipalities (Denver and Aurora) into separate trials will save substantial time and resources both for the Court and the parties. First, if a jury determines any of the individual defendants did not violate the Plaintiffs' constitutional rights this fully resolves this aspect of a municipal liability claim rendering a second trial on such issues unnecessary. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) ("neither *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has

9

concluded that the officer inflicted no constitutional harm."). Accordingly, courts have acknowledged cases advancing *Monell* claims "are good candidates for bifurcation," as "[b]ifurcation can advance the efficient and convenient resolution of the case." *Tserkis*, 2019 WL 4932596 at *5 (citation omitted).

However, even if the jury determines one or more of the individual Defendants violated one or more of the Individual Plaintiffs' rights, this too will likely resolve the case, because the injuries and damages allegedly suffered are common to both claims. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 311 (7th Cir. 2010) (separate awards against individual and municipality for same injury would constitute duplicate damages).

Second, Plaintiffs' constitutional claims and municipal liability theories entail different legal standards with different attendant evidentiary materials. *See Foster*, 2012 WL 13081439 at *2 ("[p]laintiff's primary and municipal liability claims are very different, requiring proof of different facts, calling for different witnesses, and involving substantially different legal standards."). For the Individual Plaintiffs' Fourth Amendment claims, they must establish in each of their 45 incidents the individual Defendants either acted unreasonably toward them or had supervisory authority over other officers that did. *See Graham*, 490 U.S. at 397. All 14 Individual Plaintiffs also have First Amendment retaliation claims for each of their 45 separate incidents, and must prove (1) they were actually engaged in constitutionally protected activity; (2) the defendant caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's actions were motivated by the plaintiff's protected activity. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

In contrast, the municipal liability theories advanced by Plaintiffs require the jury to consider each municipality's policies and trainings. The issues to be determined regarding municipal liability have nothing to do with the individual incidents underlying this case, namely the actions of individual officers during the protests. *See Lund,* 807 F.3d at 12; *Wilson,* 477 F.3d at 340; *Boyd,* 2015 WL 2329061 at *2 ("it is certainly the case that the issue of [the individual defendant's] actions that day and the history of the [Sheriff Department] are distinct, even accepting Plaintiffs' allegation that [his] actions were a direct result of the Department's policies"); *Tserkis*, 2019 WL 4932596 at *5. The jury will then be required to determine whether this evidence establishes the two municipalities acted with deliberate indifference to the rights of the Plaintiffs. Trial of the municipal liability claims necessarily involves information entirely irrelevant to the excessive force claims against the individual Defendants and will inevitably result in the presentation of distinct and different evidence on each of Plaintiffs' various *Monell* theories. *See Schneider v. City & Cnty. of Denver*, 47 F. Appx. 517, 529 (10th Cir. 2002). Through bifurcation, the Court can ensure the evidence presented in the individual liability trial is largely confined to the underlying incidents themselves, serving both judicial economy as well as economy to the Court and all involved parties.

Third, the sheer number of the Individual Plaintiffs' 45 different incidents, with the several municipal liability theories against two different jurisdictions, weighs heavily in favor of bifurcation. Plaintiffs' municipal theories include failure to train, unlawful custom, practice or policy, ratification and failure to discipline. [Doc ## 178, 219]. The trial of this matter has been scheduled to take place over 12-15 days. (Doc. #157). It is simply not possible to adequately try all the claims currently pending within that time as any consideration of the extraordinary number

of witnesses and exhibits proposed by Plaintiffs makes abundantly clear. Bifurcation would serve the dual purposes of deferring (likely indefinitely) a lengthy trial as to Plaintiffs' many municipal liability theories while allowing the jury, the parties, and the Court to focus on the substantial volume of evidence relating to the primary individual claims. Failing to bifurcate the municipal claims would unnecessarily prejudice each of the individual Defendants because there is a high risk of juror confusion in attempting to parse the evidence admissible as to each aspect of each Plaintiffs' different claim. This risk cannot be overstated, nor can it be cured through any limiting instruction. *See Foster*, 2012 WL 13081439 at *2 ("because the evidence on municipal liability claims tend to be broader-based in that it reaches beyond the conduct of the individual Defendants, it is possible that this evidence could contaminate the mind of the jury in its consideration of the liability of the individual Defendants on the primary claims."). The jury's consideration of voluminous evidence pertaining to unrelated instances of alleged officer misconduct and deficient municipal training procedures will taint their evaluation of each individual Defendant officers' actions. It is a near-certainty the individual Defendant officers will be deeply and irreparably prejudiced by the evidentiary materials bearing solely on municipal liability.

In contrast, Plaintiffs will not suffer any prejudice if the claims are bifurcated. To the contrary, for all the reasons discussed above, Plaintiffs will conserve substantial resources if the claims are tried separately. Accordingly, the strong possibility of undue prejudice by allowing the municipal liability claims to be tried at the same time as Plaintiffs' individual claims strongly favors bifurcation.

3. **Bifurcating Plaintiffs' Monetary Relief Claims from Their Injunctive Relief Claims is Appropriate.**

Plaintiffs seek both monetary and injunctive relief. [Doc. ##178 at ¶200; 219, at ¶469]. Only legal claims are tried to a jury; equitable claims are tried without a jury. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, (1962), *Predator Int'l Inc. v. Gamo Outdoor USA Inc*., No. 09-cv-970-PAB-KMT, 2014 WL 103660 at n. 1 (Dist. Colo. January 1, 2014). To the extent there are common questions between the legal and equitable claims, after the legal claims have been tried to a jury, any jury findings favorable to Plaintiffs will have to be analyzed by this Court to determine their impact, if any, on the Plaintiffs' equitable relief claim. *Ag Services of America, Inc. v. Nielsen,* 231 F.3d 726, 730–31 (10th Cir. 2000). Therefore, if the claims against some or all of the Defendants fail in the jury's verdict, an injunction related to them is inappropriate. *Butler v. Pollard,* 800 F.2d 223, 224–26 (10th Cir.1986).  Further, the type of evidence presented to this Court on the injunctive relief claims will also differ and will include the substantial and significant changes made by Denver and the other municipalities to policy, practices and training of their police as a result of the protests, evidence that is irrelevant, inadmissible and prejudicial to be considered in the claims tried before a jury.  This Court cannot consider either the need or propriety of injunctive relief and the form such relief should take without consideration of significant evidence on what changes have been made since the protests.

4. **Complete Separation of the Claims against the Jefferson County Defendants is Warranted.**

The Jefferson County Defendants agree that bifurcation of the many facets of this case is appropriate for the reasons stated above.  The Jefferson County Defendants further contend that

the interests of convenience, economy, and fairness warrant the additional separation of all claims asserted against them.

Jefferson County Sheriff Jeff Shrader was previously voluntarily dismissed from the case, and there are no municipal claims against Jefferson County.  The remaining claims involving the Jefferson County Defendants relate only to their alleged use of less-lethal force at a single incident on a single night of the protests (May 31, 2020) when officers from the Jefferson County Regional SWAT Team were called to provide mutual aid to the Denver Police at a Denver police substation near Colfax and Washington.  The only Plaintiff asserting claims against the Jefferson County Defendants is Joe Deras who alleges that he was struck three times by less lethal rounds during this discrete incident.  Plaintiff Deras has asserted excessive force and First Amendment claims against the Jefferson County Defendants – Counts I & II.  The Fourteenth Amendment and Failure to Intervene claims in the case (Counts III & IV) are not asserted against the Jefferson County Defendants.

Given the limited nature of the claims against the Jefferson County Defendants, they should be tried separately.  The evidence involving this single incident and single Plaintiff is not complex and should not take long to try.  The witnesses needed for these claims are limited, and the testimony to be provided on these claims does not overlap with the evidence pertinent to the other 44 incidents involved in the case to any significant degree (if at all).  The experts designated by the Jefferson County Defendants will only provide opinions regarding the May 31, 2020 incident with Mr. Deras, and the anticipated witnesses for each side, other than Mr. Deras himself, are not likely to be relevant to any other claims in this case.

On the other hand, the extensive evidence which Plaintiffs propose to present relating to, among other things, the curfew order and related arrests and detentions, training, practices, and policies of other municipalities, and the detailed circumstances surrounding the other unrelated uses of force involving 14 other Plaintiffs will have absolutely no bearing on the Jefferson County Defendants' actions and any potential liability of the Jefferson County Defendants to Plaintiff Deras.

Therefore, the interests of Plaintiff Deras' claims against the Jefferson County Defendants being tried expeditiously and economically warrant separation from the extensive claims asserted by the other 13 Plaintiffs. In addition, lumping the claims involving the Jefferson County Defendants' together with Plaintiffs' other claims poses the risk of jury confusion in that the vast majority of the proposed evidence will not relate to the Jefferson County Defendants, and there is a real danger that a jury will judge their conduct collectively with the conduct of Defendants from other municipalities over the course of multiple days rather than assessing only the circumstances which confronted them for a few minutes on the evening of May 31, 2020. See, e.g., *Harte v. Board of Commn's of County of Johnson, Kansas*, 864 F.3d 1154 , 1191, (10th Cir. 2017) (excessive force inquiry is heavily fact specific to individual circumstances). This would be unduly burdensome and prejudicial to the Jefferson County Defendants. Finally, the Jefferson County Defendants should not have to incur the time commitment and expense of participating in a multi-week (or multi-month) trial which largely will have nothing to do with them. Separation of this small piece of the case would avoid this potential prejudice.[3]

---

[3] Should the Court grant this relief, it is understood that both liability and damages issues would be tried together in a separate proceeding as to the Jefferson County Defendants.

WHEREFORE, for the foregoing reasons, the Defendants jointly respectfully request that this Court grant their Motion to Bifurcate Trial and order the following: (1) separate the claims of the 312 Class Plaintiffs from the remaining claims pending in this case at a different trial, thereafter considering separation of the class trial into a liability phase and damages phase; (2) bifurcate the 14 individual Plaintiffs' constitutional claims ("Individual Plaintiffs") against the 20 individual Defendants separate and apart from the several municipal liability claims brought against the municipalities for the purpose of trial; (3) separate the Plaintiffs' jury trial on monetary damages from their request for injunctive relief; and for all other and further relief as this Court deems just and appropriate. Defendants also respectfully request a hearing to determine what aspects of the trial can occur during the 12-15 days of current trial setting beginning on March 7, 2022.

Dated this 26th day of January 2022.

JEFFERSON COUNTY ATTORNEY'S OFFICE

/s/ Eric Butler
Eric Butler, Deputy County Attorney
100 Jefferson County Parkway, Suite 5500
Golden, Colorado 80419
T: 303.271.8932
E: ebutler@jefsfco.us
Attorneys for Timothy Dreith and Anthony Hamilton

DENVER CITY ATTORNEY'S OFFICE

/s/ Hollie R. Birkholz
Hollie R. Birkholz
Robert Huss
Lindsay M. Jordan
Assistant City Attorneys
Civil Litigation Section
201 West Colfax Avenue, Dept. 1108
Denver, Colorado 80202
T: 720.913.3100
E: hollie.birkholz@denvergov.org
E: robert.huss@denvergov.org
E: lindsay.jordan@denvergov.org

AURORA CITY ATTORNEY'S OFFICE

/s/ Isabelle Evans
Isabelle Evans
Peter Ruben Morales
15151 East Alameda Parkway, 5th Floor
Aurora, Colorado 80012
T: 303.739.7096
E: ievans@auroragov.org
E: pmorales@auroragov.org
*Attorneys for the City of Aurora and Aurora Police Department Officer Cory Budaj*

HALL & EVANS

/s/ Andrew D. Ringel
Andrew D. Ringel
Hall & Evans, LLC
1001 Seventeenth Street, Suite 300
Denver, Colorado 80202
T: 303.628.3453
E: ringela@hallevans.com
*Attorneys for the City and County of Denver and the Individually Named Denver Police Department Officers*

s/ Michael T. Lowe
David M. Goddard
Michael T. Lowe
Bruno, Colin & Lowe, P.C.
1999 Broadway, Suite 4300
Denver, CO 80202
Telephone: (303) 831-1099
dgoddard@brunolawyers.com;
mlowe@brunolawyers.com
*Counsel for Defendants Budaj, McNamee, Serrant, and Brukbacher, in their individual capacities*

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January, 2022 the foregoing **DEFENDANTS' JOINT MOTION TO BIFURCATE TRIAL** was filed with the Clerk of the Court using the CM/ECF system, which will send notification to the following:

Arnold & Porter Kaye Scholer LLP
Colin Michael O'Brien
Edward Packard Aro
Matthew J. Douglas
Timothy R. Macdonald
Patrick Reidy
Leslie Bailey
Gerardo Mihares-Shafai
Andreas Moffett
Mindy Gorin
colin.obrien@arnoldporter.com
ed.aro@arnoldporter.com
matthew.douglas@arnoldporter.com
timothy.macdonald@arnoldporter.com
patrick.reidy@arnoldporter.com
leslie.bailey@arnoldporter.com
gerardo.mijares-shafai@arnoldporter.com
andreas.moffett@arnoldporter.com
mindy.gorin@arnoldporter.com

ACLU of Colorado
Arielle Kay Herzberg
Mark Silverstein
Sara R. Neel
aherzberg@aclu-co.org
msilverstein@aclu-co.org
sneel@aclu-co.org

Elizabeth Wang
Makeba Rutahindurwa
Loevy & Loevy
elizabethw@loevy.com
makeba@loevy.com
*Counsel for Plaintiffs*

Office of the Aurora City Attorney
Isabelle Sabra Evans
Peter Ruben Morales
ievans@auroragov.org
pmorales@auroragov.org
*Counsel for Defendant City of Aurora and*
*Aurora Officers Brukbacher, Budaj,*
*McNamee and Serrant in their official*
*capacities*

Bruno, Colin & Lowe, P.C.
David M. Goddard
Michael T. Lowe
dgoddard@brunolawyers.com
mlowe@brunolawyers.com
*Counsel for Defendants Brukbacher, Budaj,*
*McNamee and Serrant in their individual*
*capacities*

Jefferson County Attorney's Office
Eric Butler
ebutler@jeffco.us
*Counsel for Defendants Timothy Dreith and*
*Anthony Hamilton*

Andrew D. Ringel
Hall and Evans
ringela@hallevans.com
*Counsel for Defendants City and County of*
*Denver and the individually named Denver*
*Police Officers*

*s/ Hollie R. Birkholz*
Denver City Attorney's Office