

# CIVIL ACTION NO. 1:20-CV-01878-RBJ

# ELISABETH EPPS, ET AL.

# V.

# CITY AND COUNTY OF DENVER, ET AL.

## DEPONENT:

## MARC SEARS

## DATE:

## January 25, 2022



schedule@kentuckianareporters.com
877.808.5856 | 502.589.2273
www.kentuckianareporters.com

Exhibit 2

```
 1   So for the record, this is a document entitled "Aurora
 2   Defendants Federal Civil Procedure 26A2C Expert
 3   Disclosure."  Is that what you see, Sergeant Sears?
 4         A.   Yes.
 5         Q.   Great.  And this is a document that we were
 6   discussing that's your disclosure that lists your
 7   opinions in this case, correct?
 8         A.   Correct.
 9         Q.   Okay.  And on this document here on page 2,
10   there's a list of things you have -- of documents and
11   videos you've reviewed in support of creating your
12   opinion, correct?
13         A.   Correct.
14         Q.   This list is everything you reviewed in
15   support of developing your opinion?
16         A.   Yes.
17         Q.   Okay.  So if there's a video that's not listed
18   on this report, you did not review it; is that correct?
19         A.   That's correct.
20         Q.   Okay.  I'm going to pull this down.  Are you
21   familiar with the incident involving a plaintiff named
22   Zach Packard?
23         A.   I'm not.
24         Q.   Okay.  So you don't -- so you haven't offered
25   any opinions specific to the incident involving Zach
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   Packard; is that correct?
 2        A.   I have not.
 3        Q.   Okay.  And are you familiar with an incident
 4   involving a plaintiff, Stanford Smith?
 5        A.   I don't remember all of the names.  I remember
 6   -- everything that was on that list that you just showed
 7   me is everything that I reviewed.
 8        Q.   Okay.  And so if I represent to you that
 9   there's no video or photo -- withdrawn.  If I represent
10   to you that there's no video of the incident involving
11   Stanford Smith in that list that you provided, that
12   would mean that you have not reviewed any video of the
13   incident involving Stanford Smith, correct?
14        A.   Correct.
15        Q.   And in that case, does mean that you would not
16   have offered any opinions specific to the event
17   involving Stanford Smith?
18        A.   Correct.
19        Q.   Okay.  And so -- I'm sorry.  Excuse me one
20   moment.
21             MS. WANG:  Can we take a two-minute break?
22             MR. SEBBA:  Yeah.  I'm sorry, can we take a
23        two-minute break.
24             VIDEOGRAPHER:  Of course.  We are off the
25        record at 9:11 a.m.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.   Correct.
 2        Q.   Okay.  And then there's a list of the
 3   materials you reviewed, right?
 4        A.   Correct.
 5        Q.   Okay.  And this is the list of your opinions,
 6   correct?
 7        A.   Correct.
 8        Q.   A, B, C, D, E -- and F is just stating that
 9   your resume and certificates are attached, right?
10        A.   Correct, correct.
11        Q.   So A through E are the opinions that you
12   intend to give in this case, correct?
13        A.   Correct.
14        Q.   You don't have any reference to any of the
15   plaintiffs in this case in Opinions A through E, right?
16        A.   Stop scrolling for a second.  What was your
17   question, ma'am?  I'm sorry.
18        Q.   Let's go through one by one.  Okay.  Opinion A
19   is an opinion about the courses that are taught at the
20   Aurora Police Training Academy, right?
21        A.   Yes.
22        Q.   In summary --
23        A.   In summary, correct.
24        Q.   I'm not going to read it, but that's what it
25   is?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1        A.   Correct.
2        Q.   You say nothing about any plaintiff in this
3   case in Opinion A, correct?
4        A.   Correct.
5        Q.   Opinion B is an opinion generally about
6   trainings and whether or not they're best practices,
7   Aurora trainings, right?
8        A.   That's correct.
9        Q.   You don't say anything about any of the
10  plaintiffs in this case, correct?
11       A.   Correct.
12       Q.   In Opinion B, right?
13       A.   Correct.
14       Q.   Opinion C, you state, "Conduct by the crowds
15  at the Denver protests created an officer safety
16  concern", right?
17       A.   That's correct.
18       Q.   Okay.  That's what you intend to tell the jury
19  at this trial, right?
20       A.   Correct.
21       Q.   You don't say anything about any of the
22  plaintiffs in this case, correct?
23       A.   In C, correct.
24       Q.   Right.  Opinion D, "Officers at the protest
25  had a legal justification to utilize crowd control and
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   crowd management techniques consistent with their
 2   training."  That's your opinion, right?
 3        A.   Yes.
 4        Q.   You don't say anything about any of the
 5   plaintiffs in this case, right?
 6        A.   Indeed, correct.
 7        Q.   In Opinion E -- Opinions E and F were just
 8   about that you'll testify consistent with the summary
 9   and any deposition testimony you may provide, and here's
10   your resume, right?
11        A.   That's correct.
12        Q.   Okay.  You don't have any opinion in here
13   about plaintiff Jonathen Duran; right?
14        A.   Correct.
15        Q.   You have no opinion in here about the events
16   that Jonathen Duran experienced on May 31, 2020, right?
17        A.   No.
18        Q.   That's not correct?
19        A.   Say that again.
20        Q.   You do not -- there is nothing in this
21   disclosure about any of the events that Jonathen Duran
22   experienced on May 31, 2020, right?
23        A.   Nothing specifically to him, correct.
24        Q.   Let's go back up -- and what do you mean,
25   "nothing specifically to him"?  You have no specific
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1  opinions relating to Jonathen Duran or any of the
 2  circumstances under which he was shot, right?
 3       A.   In this -- in the -- in this disclosure is
 4  what you're saying?
 5       Q.   Well, this disclosure encapsulates your
 6  opinions, correct?
 7       A.   In a general sense, yes.
 8       Q.   Do you intend to give opinions that are not in
 9  this disclosure; yes or no?
10       A.   I will elaborate on them.
11       Q.   No.  You are not allowed to elaborate on them.
12  My question is:  You do not -- we -- we have established
13  you've said under oath that you do not have any opinions
14  relating to Plaintiff Jonathen Duran; correct?
15       A.   Correct.
16       Q.   Okay --
17            MR. LOWE:  Object to form.
18       Q.   -- this signed disclosure, correct?
19       A.   I'm sorry --
20            COURT REPORTER:  I'm sorry.  Who objected?
21            MR. LOWE:  Michael Lowe.
22            COURT REPORTER:  Thank you.
23  BY MS. WANG:
24       Q.   You do not have any opinions relating to
25  Jonathen Duran in this disclosure, correct?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          MR. LOWE:  Same objection.
2     A.   Correct.
3     Q.   You don't even know who Jonathen Duran is,
4  right?
5     A.   That's correct.
6     Q.   Either by name or by any videos or photos;
7  right?
8     A.   By name, we just discussed that.
9     Q.   Are you familiar with an incident involving a
10 plaintiff in this case where he was shot in the groin
11 with a rubber bullet?
12    A.   Yes.
13    Q.   What is -- what is that person alleging?
14    A.   The disclosure that I have has that subject's
15 name on there, and I reviewed those videos.
16    Q.   That subject's name does not appear any of
17 your Opinions A through F, correct?
18    A.   Correct.
19    Q.   So when you say that it has that subject's
20 name, you are referring to these videos, Fitouri 228 and
21 Fitouri 229, correct?
22    A.   Yes, ma'am.
23    Q.   You reviewed those two videos, right?
24    A.   Yes, ma'am.
25    Q.   You don't have any opinions regarding those

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   videos in this disclosure, though, right?
 2        A.   No, I don't agree with that.
 3        Q.   Tell me -- why don't you tell me, just look at
 4   Opinions A through F and tell me where Jonathen
 5   Duran's name appears?
 6        A.   His name does not.
 7        Q.   Even by description, he doesn't appear, the
 8   description of his event, right?
 9        A.   Correct.
10        Q.   Okay.  Would you agree that when an officer
11   determines whether or not to use force, that officer
12   must determine whether the person that officer is using
13   force on has committed an act that warrants the use of
14   that force, right?
15             MR. LOWE:  Object to the form.  Foundation.
16        A.   Can you -- can you repeat that again.
17        Q.   You've had training on the use of force;
18   right?
19        A.   Yes, ma'am.
20        Q.   You've had training on use of 40-millimeter
21   launchers, right?
22        A.   Yes, ma'am.
23        Q.   You can't shoot a 40-millimeter launcher at
24   somebody unless that person has committed an act that
25   warrants the use of the 40-millimeter launcher on him;
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        before she asks her next question.
 2   BY MS. WANG:
 3        Q.   Can you please keep in mind to answer yes or
 4   no as opposed to uh-huh or uh-uh so that the record is
 5   clear?  Is that fair?
 6        A.   Yes.
 7        Q.   Okay.  Great.  Now, is there anything in the
 8   materials that you reviewed that indicated that
 9   Plaintiff Jonathen Duran was about to throw a rock?
10        A.   No.
11        Q.   Is there anything in the materials you
12   reviewed that indicates that Jonathen Duran was about to
13   light a firework?
14        A.   No.
15        Q.   Was there anything in the materials that you
16   reviewed that indicated Jonathen Duran was about to
17   throw any object whatsoever?
18        A.   No.
19        Q.   What was Jonathen Duran doing in the video
20   that you reviewed?
21        A.   Videotaping.
22        Q.   Okay.
23        A.   One specific -- one specific video that I
24   reviewed, he was videotaping.
25        Q.   Anything else that you saw him doing?
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.   No, ma'am.
 2        Q.   That's protected by the First Amendment;
 3   right?
 4             MR. LOWE:  Object to form.
 5        A.   Videotaping?
 6        Q.   A journalist videotaping a protest is
 7   protected by the First Amendment, correct?
 8        A.   Yes.
 9             MR. LOWE:  Same objection.
10        Q.   Okay.  Did you see Jonathen Duran doing
11   anything illegal in the video you reviewed?
12        A.   No.
13        Q.   Did you see him do anything that threatened
14   any officer's safety or the safety of anybody else?
15        A.   No.
16        Q.   Was there anything that Jonathen Duran was
17   doing in the video that you reviewed that indicated that
18   he deserved to be shot in the groin with a 40-millimeter
19   launcher?
20             MR. LOWE:  Object to form.
21        A.   That I could see?
22        Q.   Yeah.
23        A.   No.
24        Q.   Okay.  So from what you could tell from the
25   materials that you reviewed, Jonathen Duran did not
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   deserve to be shot in the groin with a 40-millimeter
 2   launcher?
 3          MR. LOWE:  Object to the form.  Foundation.
 4       A.  That I witnessed?  No.
 5       Q.  Did you see any evidence, any deposition
 6   testimony from an officer or anybody else that provided
 7   any evidence that Jonathen Duran was doing anything that
 8   warranted being shot in the groin with a 40-millimeter
 9   launcher?
10       A.  I did not see anything.
11       Q.  You didn't review any deposition testimony in
12   this case, did you?
13       A.  I did.  There was the deposition -- I can't
14   remember the gentleman's name -- but there was a
15   deposition that was taken -- I think you had somebody
16   from the Jefferson County Sheriff's Office.  I reviewed
17   that deposition.
18       Q.  Okay.  So let's -- I'm putting on the screen
19   the list of materials that you reviewed.  This is the
20   bulleted list that's in your disclosure, correct?
21       A.  Correct.
22       Q.  It doesn't list any depositions, does it?
23       A.  It does not.
24       Q.  Did you receive materials after you made this
25   disclosure?
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  Garcia?
2      A.  I believe it was.
3      Q.  Okay.  You did not review the deposition
4  transcript of Officer Cory Budaj, right?
5      A.  I did not.
6      Q.  You did not review the deposition transcript
7  of plaintiff Jonathen Duran, right?
8      A.  I did not.
9      Q.  You did not review any other deposition
10 transcripts other than the one for Joshua Garcia; right?
11     A.  That's correct.
12     Q.  Let me make sure I'm clear.  Based on the
13 materials that you reviewed, was there anything that
14 Jonathen Duran was doing that warranted being shot in
15 the groin with a 40-millimeter launcher?
16     A.  That I saw, no, not that I saw.
17     Q.  So there's -- and you've seen no evidence of
18 anything that anybody else saw, what any officer did or
19 saw regard -- that would justify the use of force on
20 Jonathen Duran, right?
21         MR. LOWE:  Object to the form.
22     A.  I don't know.  I can't -- I can't speak on
23 behalf of the other officers and what they saw.
24     Q.  I know.  But you didn't see any deposition
25 transcripts where some officer gave some explanation of

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        Q.   Regardless, you would agree that at the time
 2   that he was shot, he was engaged in protected First
 3   Amendment activity filming a protest as a journalist;
 4   right?
 5        A.   I can't say that, no.
 6        Q.   So you understand that Jonathen Duran is a
 7   journalist who had a press pass at the time, right?
 8        A.   I do now.
 9        Q.   Okay.  So let's assume that's that is true.
10   As a journalist with a press pass, he was not subject to
11   the curfew, correct?
12        A.   Correct.
13        Q.   Okay.  So he was allowed to be filming, which
14   is his job as a journalist, right?
15        A.   Correct.
16        Q.   He was not doing anything -- according to the
17   evidence, either the video or anything else that you
18   reviewed, he was not doing anything that warranted any
19   use of force on him, right?
20             MR. LOWE:  Object to the form.
21        A.   Correct.  From what I saw, correct.
22        Q.   If he's a journalist and he had a press pass
23   and he wasn't subject to the curfew, then his activity
24   of filming the protests and the police response to it,
25   on May 31, 2020, at the time that he was shot was
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   protected First Amendment activity, right?
 2            MR. LOWE:  Object to the form.  Foundation.
 3        A.  Just filming?
 4        Q.  Okay.  So have you received any training from
 5   the Aurora Police Department about the First Amendment
 6   rights of journalists?
 7        A.  Yes.
 8        Q.  Okay.  Have you received any training from the
 9   Aurora Police Department on the First Amendment rights
10   of civilians to record police when they are out in
11   public performing their duties?
12        A.  Yes.
13        Q.  Okay.  So it is protected under the First
14   Amendment to record police when they're out in public;
15   right?
16        A.  Correct.
17        Q.  Okay.  As long as they're not doing anything
18   to interfere with the police, right?
19        A.  Correct.
20        Q.  You didn't see anything that Jonathen Duran
21   was doing in his videos or anywhere else where he was
22   interfering with the police, right?
23        A.  Correct.
24            MR. LOWE:  Object to the form.
25        Q.  And as a journalist, his activity in recording
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1  the police and the protesters was protected; right?
 2      A.  Yes.
 3          MS. WANG:  Let's go off the record for a
 4      moment.
 5          VIDEOGRAPHER:  We're off the record.  The time
 6      is 9:40 a.m.
 7              (OFF THE RECORD)
 8          VIDEOGRAPHER:  We are back on the record for
 9      the deposition of Sergeant Marc Sears being video
10      conference.  My name is Sydney Little.  Today is
11      January 25, 2022, and the current time is 9:44 a.m.
12  BY MS. WANG:
13      Q.  Is it fair to say, Sergeant Sears, that your
14  opinions are based on the material that you reviewed?
15      A.  Yes.
16      Q.  How much time did you spend reviewing the
17  materials on the bulleted list, this list?
18      A.  I have no idea.  A considerable amount of
19  time.
20      Q.  Did you watch each one of these videos from
21  beginning to end?
22      A.  No, I did not.
23      Q.  Okay.  Were you directed to focus on specific
24  things in the videos --
25          MR. MORALES:  Excuse me.  Excuse me.  Is it
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1            VIDEOGRAPHER:  We are off the record.
 2         The current time is 9:50 a.m.
 3            (OFF THE RECORD)
 4            VIDEOGRAPHER:  We are back on the record for
 5     the deposition of Sargent Mike -- Marc -- excuse me
 6     -- Sears being conducted by video conference.
 7     My name is Sydney Little.  Today is the January 25,
 8     2022, and the current time is 9:51 a.m.
 9            MS. WANG:  I have no further questions at this
10     time, but others may have follow-up.
11            MR. SEBBA:  I would like to follow up with just
12     a few more questions.  Hi, Sergeant Sears.  It's
13     Mike Sebba again.
14            THE WITNESS:  Hello, sir.
15                       EXAMINATION
16  BY MR. SEBBA:
17      Q.   I'm going to show you a page from your report
18  again.
19      A.   Sure.
20      Q.   Excuse me.  From your disclosure.  All right.
21  So I'm sharing my screen.  You should be seeing page 2
22  of your disclosure.  Is that -- can you see that right
23  now?
24      A.   Yes, sir.
25      Q.   All right.  And as we mentioned earlier, this
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   is a list of the documents you reviewed in support of
 2   creating your opinions in this case, correct?
 3        A.   Correct.
 4        Q.   And you also mentioned that you reviewed the
 5   report of Norm Stamper, correct?
 6        A.   That's correct.
 7        Q.   And you also reviewed one other deposition
 8   transcript, correct?
 9        A.   Correct.
10        Q.   Okay.  And those -- and so to the extent you
11   have -- this disclosure includes your opinions on this
12   case, correct?
13        A.   Correct.
14        Q.   And those opinions are based on the materials
15   you've reviewed, correct?
16        A.   The opinions are based on the -- reviewing
17   this and from my training and experience.
18        Q.   Okay.  And understood.  But you do not have
19   opinions as to videos you have not reviewed, correct?
20        A.   That's correct.
21           MR. SEBBA:  Okay.  That's -- I believe that's
22      all of the questions I have.  I'll stop sharing my
23      screen.  Thank you for your time.
24           THE WITNESS:  Thank you, sir.
25           MS. WANG:  I have no further questions.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1            MR. LOWE:  This is Mike Lowe.  Does anybody --
 2       does anybody else have any other questions?  I just
 3       have a couple for Mr. Sears.
 4            MS. HOFFMAN:  Denver has no questions.
 5            MR. SMITH:  I have no questions.
 6            MR. LOWE:  Officer Sears, this is Mike Lowe.
 7       I just want to ask you a couple of questions.
 8                          EXAMINATION
 9   BY MR. LOWE:
10       Q.   You've -- you have reviewed the deposition of
11   Deputy Garcia from Jefferson County?
12       A.   Yes.
13       Q.   And did you rely on that deposition in the
14   formation of any of the opinions in your disclosure?
15       A.   No.
16       Q.   You have also reviewed the report put together
17   by former Chief Stamper from Seattle, correct?
18       A.   Yes.
19       Q.   And did you utilize that report in forming any
20   of the opinions in this disclosure?
21       A.   No.
22       Q.   Did you rely on anything in forming your
23   opinion other than what's listed in the disclosure on
24   that bulleted list?
25       A.   No.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com