## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01878-RBJ (consolidated with 20-cv-01922-RBJ-MEH)

ELISABETH EPPS, et al.,
      Plaintiffs,

v.

CITY AND COUNTY OF DENVER, et al.

      Defendants.

---

## AURORA DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Defendants Cory Budaj, Matthew Brukbacher, David McNamee, Patricio Serrant ("Individual Defendants") and the City of Aurora ("City") (collectively, "Aurora Defendants"), through their respective counsel of record, move for summary judgment pursuant to Fed. R. Civ. P. 56, and as grounds therefore, state as follows:

### Undisputed Facts[1]

1.     Between May 28 and June 2, 2020, hundreds of protesters gathered in downtown Denver, Colorado to demonstrate and protest George Floyd's death. [ECF 219] at ¶62. By 1:00 p.m. on May 30, the Denver Mayor had announced a state of "emergency" and imposed a curfew. *Id.*, ¶98.

2.     On request by Denver, members of the Aurora Police Department ("APD") Emergency Response Team ("ERT") responded to assist Denver Officers with the crowds and civil unrest on May 30-31, 2020. *See* COAEPP 34, attached as **Exhibit A**, at pp. 9, 14.

3.     ERT members were informed by Denver that the previous nights' protests had been a mix

---

[1] Respecting the Court's page limitations, this Motion dispenses with the traditional Introduction and Summary sections of summary judgment motions and briefs.

of simultaneous violent and more peaceful protests. ***Id.***

4.      On May 30, 2020, Defendant Budaj responded with the ERT on Squad 3. ***Id.***, p. 18.

5.      At approximately 5:30 p.m., several Aurora ERT teams responded to the area of East Colfax and North Broadway to assist DPD Officers, who were surrounded by protesters on all sides and were being hit with rocks and bottles. ***Id.***, p. 9.

6.      Upon arrival at that intersection, gas canisters had already been deployed and ERT members were ordered to don gas masks. ***Id***.

7.      ERT members were asked by Denver Police Department ("DPD") supervisors to form a skirmish line across Colfax to keep large crowds from gaining the north curb where protesters were accessing large rocks and using them to assault officers. ***Id.***

8.      Squad 3 assisted with the large crowd at the State Capital and Civic Center Park that was blocking traffic and refusing lawful orders to exit the street. ***Id.***, p. 18.

9.      The crowd became violent and started throwing rocks, bottles, chunks of concrete, explosive devices and other unknown items at Officers; Defendant Budaj was struck approximately 5-6 times with rocks and other golf-ball-sized items. ***Id.***, pp. 18 & 23.

10.     Squad 3's Sergeant and DPD Officers deployed gas canisters to disperse the violent crowd, and directed less-lethal operators, including Defendant Budaj, to use direct impact munitions on rioters engaged in any activity that would compromise the safety of officers. ***Id.***, p. 23.

11.     In these circumstances, Defendant Brukbacher also directed ERT members to deploy chemical munitions and impact foam baton munitions at persons who posed a direct threat to officers to include protesters throwing rocks and explosives, interfering with gas munitions and throwing them back at officers, throwing explosives and Molotov cocktails. ***Id.***, p. 28.

12.     Over the approximately 17 hours he was assisting Denver on May 30, Defendant Budaj

deployed approximately 40 foam baton rounds in conformity with his training; all of these deployments were against unknown individuals in the violent crowd who were involved in criminal behavior ranging from property destruction to assault. *Id.*, p. 18.

13.    On May 31, 2020, Defendant Budaj deployed with ERT to protect the DPD District 6 building at East Colfax and North Washington from a hostile large crowd ignoring numerous lawful orders to exit the area. *See* COAEPP 44, APD GO Reports, attached as **Exhibit B,** p. 11.

16.    As Officers pushed the crowd of protesters, who were throwing rocks, bottles and other unknown items at Officers, to the west and assisted in holding the line at Colfax and North Pearl Street, Defendant Budaj was struck with approximately 4 paint ball rounds. ***Id.***

17.    During this deployment, Defendant Budaj deployed approximately 15 foam baton rounds in conformity with his training, all at unknown persons engaging in criminal behavior and deployed a gas canister at approximately 9:41 p.m. to disperse a crowd. [ECF 219], ¶ 203; **Exh. B**, p. 11; *Budaj Deposition*, attached as **Exhibit C**, 98:16-18.

18.    At approximately 9:34 p.m., Plaintiff Duran was in the area of Colfax and Pearl, when he was struck by a foam round. [ECF 219], ¶328.

19.    At approximately 9:00 p.m., Defendants Serrant and McNamee were deployed to the intersection of Colfax and North Washington. *Serrant Deposition*, attached as **Exhibit D**, 58:5-11.

20.    Defendant Serrant instructed APD officers including Defendant McNamee to deploy less-lethal munitions at protesters who were kicking cannisters emitting smoke and gas at officers in conformity with his training. **Exh. D**, 67:19-22.

21.    Plaintiff Zach Packard was at the intersection of Colfax and North Washington when he kicked a gas cannister and was hit in his right temple area by an unknown object. *Packard Deposition*, attached as **Exhibit E**, 30:1-4, 24-25.

22.     At some point after Plaintiff Packard was struck, Defendant Brukbacher instructed APD Officers to use less-lethal munitions on individuals kicking gas cannisters at officers in conformity with his training and experience as a less-lethal weapons instructor for APD. [ECF 178], ¶119.

23.     The City of Aurora provides training regarding when and what type of force can be used during protest crowd management. *Shaker Deposition*, attached as **Exhibit F**, 33:7-11.

24.     Aurora has policies regarding less-lethal munitions and when they can be deployed and Aurora policy and training instruct officers that they may not target certain areas of the body with less-lethal munitions, including the groin area. ***Id.***, 33:18-22; 45:22-24; 46:3-9.

25.     Aurora officers are trained that they may only deploy less lethal munitions in circumstances where it is appropriate and legally permitted. ***Id.***, 37:13-21.

27.     Aurora trains officers that only specific individuals acting aggressively should be targeted with less-lethal munitions, not crowds or groups generally. ***Id.***, 57:13-22; 74:13-15; *Hildebrand Deposition*, attached as **Exhibit G**,28:21-25.

28.     Aurora trains officers to give a verbal warning before deploying less-lethal munitions. **Exh. F**, 66:5-11.

29.     Aurora provided training to officers subsequent to the protests regarding use of force and protest situations. *Juul Deposition*, attached as **Exhibit H**, 25:4-5; 26:4-11.

30.     The protests were highly unusual and not a normal use of force situation. ***Id.***, 25:5-17.

**Standard of Review**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Bones v. Honeywell Int'l, Inc.*, 366

4

F.3d 869, 875 (10th Cir. 2004). Once the movant meets its initial burden, however, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986).

In addition, the Individual Defendants here assert qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a defendant asserts qualified immunity, the summary judgment standard is subject to a "different analysis from other summary judgment rulings." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). Once qualified immunity is raised, the burden shifts to the plaintiff to show (1) "that the defendant's actions violated a specific statutory or constitutional right," and (2) that the right was "clearly established at the time of the conduct at issue." *Id.*; *see also Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (the qualified immunity defense "trigger[s] a well-settled twofold burden" that the plaintiff is "compelled to shoulder."). "It is only after plaintiff crosses the legal hurdle comprised of his or her two-part burden of demonstrating the violation of a constitutional right that was clearly established, that courts should be concerned with the true factual landscape[.]"[2] *Id.* at 1326 (emphasis in original). Considering the true factual landscape, "courts should determine whether defendant can carry the traditional summary judgment burden of establishing that there are no genuine issues of material fact for jury resolution and that defendant is entitled to judgment as a matter of law." *Id.*

**ARGUMENT**

**1.      Plaintiffs have failed to demonstrate the personal participation of any named**

---

[2] "In determining whether a plaintiff has carried its two-part burden . . . ordinarily courts must adopt plaintiff's version of the facts." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1325 (10th Cir. 2009) (Holmes, J., concurring) (internal quotations and citation omitted). However, "plaintiff's version of the facts must find support in the record." *Id.*

Individual Defendant in any constitutional violation.

As a threshold matter, it is axiomatic that § 1983 claims require a plaintiff to show that *each* defendant personally participated in an alleged constitutional violation. *Dodd v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010). Here, no record evidence demonstrates that any Individual Defendant personally participated in any violation of any Plaintiff's constitutional rights. Specifically, Plaintiff Duran cannot identify Defendant Budaj as the individual responsible for the foam round that struck him, and there is no evidence that Defendant Budaj directly targeted Plaintiff Duran in any event. **Exh. A**, p. 18; **Exh. B**, p. 11; **Exh. C**, 77:5 – 79:17. Neither can Plaintiff Packard identify Defendant McNamee as the individual responsible for the object that struck him in the head. **Exh. E**, 25:13-17, 54:19 – 56:21; **Exh. D**, 72:1-16, 75:7 – 78:15. And Plaintiff Smith cannot even identify the agency that the individual who pepper-sprayed him worked for. **Exh. F**, 69:2 – 71:23. As for Defendants Brukbacher and Serrant, Plaintiffs allege only that they provided lawful instruction to their subordinates to deter specific individuals from interfering with gas canisters or threatening the safety of officers. Undisputed Fact ("SUF") #20, #22. Such instructions are a far cry from actively participating in unconstitutional acts or specifically ordering the application of excessive force or unconstitutional actions by subordinates. *See Holland v. Harrington*, 268 F.3d 1179, 1191 (10th Cir. 2001) (no violation where supervisors did not "instruct[] SWAT team to use excessive force[.]"); *Serna v. Colorado Dept. of Corrections,* 455 F.3d 1146, 1151 (10th Cir. 2006) ("[I]t is not enough for a plaintiff merely to show a defendant was in charge of other[s] … who actually committed the [alleged] violation.  Instead, … the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." (citations omitted)). Nor is there any record evidence that any of these Individual

Defendants unlawfully arrested any Plaintiff. These Defendants are thus entitled to summary judgment as to all of Plaintiffs' claims.

However, even assuming that Plaintiffs can somehow establish the personal participation of each of the named Individual Defendants as to each constitutional violation alleged by each Plaintiff, their discrete claims still fail, as addressed below.

### 2.    Plaintiff's First Amendment retaliation claim fails.

A 1st Amendment retaliation claim requires a Plaintiff show: (1) s/he was engaged in constitutionally protected activity; (2) that defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action taken by defendant was substantially motivated as a response to the exercise of the constitutionally protected conduct. *Fenn v. City of Truth or Consequences,* 983 F.3d 1143, 1148 (10th Cir. 2020). Although unclear,[3] Plaintiffs appear to allege that Defendant Budaj retaliated against Plaintiff Duran for "recording the protest and police" by deploying a less-lethal munition that struck Plaintiff Duran in the groin [ECF 219] at ¶¶323-328; that Defendant McNamee retaliated against Plaintiff Packard by deploying a less-lethal round while Plaintiff Packard was kicking a gas canister away from protesters [ECF 117] at ¶¶117-119; and that Defendants Brukbacher and Serrant retaliated against unspecified Plaintiffs by directing their subordinate officers to deploy less-lethal munitions to deter individuals interfering with gas or

---

[3] Plaintiffs generally assert a 1st Amendment retaliation claim against "Defendants" by "Plaintiffs" repeatedly, without specifying exactly what conduct by which Defendant against which Plaintiff was allegedly retaliatory. Such infirmity is sufficient to dismiss Plaintiff's retaliation claim on this ground alone under Fed. R. Civ. P. 8(a)(2). *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (plaintiff is required to "make clear exactly *who* is alleged to have done *what* to *whom* …" (emphasis original)). This improper generalized pleading practice is evidenced in the majority of Plaintiffs' claims.

smoke canisters [ECF 178] at ¶¶117, 119.

Plaintiffs cannot meet the first and third prongs of the 1st Amendment retaliation analysis. Regarding the first element and Plaintiff Duran, it is entirely unclear whether there is even a 1st Amendment right to record police activity in the 10th Circuit. In fact, the 10th Circuit has directly refused to decide "whether such right even exists," despite recent and frequent opportunity to do so. *See Frasier v. Evans*, 992 F.3d 1003, 1019-23 & n.4 (10th Cir. 2021) (refusing to decide whether such a right exists and analyzing and distinguishing out-of-circuit authority holding that such a right exists); *see also Sandberg v. Englewood, Colo.*, 727 Fed. Appx. 950, 962-63 (10th Cir. 2018) (noting that authority from six other circuits has recognized such a right, but such authority is insufficient to clearly establish the law in the 10th Circuit). And with respect to Plaintiff Packard, there is no authority establishing that kicking (or otherwise tampering with) gas munitions deployed by police in the midst of a massive and chaotic public demonstration constitutes 1st Amendment protected activity. For the same reason, Plaintiff cannot show that the direction given by Defendants Brukbacher and Serrant to deter individuals from interfering with gas canisters constituted retaliation either. Giving subordinate officers such directions does not equate to directing officers to engage in unconstitutional conduct. And there is no record evidence showing that Defendants Brukbacher or Serrant directed specific action toward any discrete Plaintiff, or specifically ordered the unconstitutional deployment of less-lethal munitions.[4]

Neither can Plaintiffs meet the third element, that the respective adverse actions allegedly taken by Defendants Budaj and McNamee were "substantially motivated" by Plaintiff's allegedly protected activity. Critically, the third element requires a showing "that the defendants' alleged

---

[4] Notably, Brukbacher's direction is alleged by Plaintiff to have occurred *after* Plaintiff Packard was struck. [ECF 179] at ¶118-19.

retaliatory motives were the 'but for' cause of the defendant's actions," which in turn requires "*specific facts* showing retaliation motivated by the exercise of plaintiff's constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (emphasis original) (quoting *Frazier v. DuBois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990)). Here, the record is bereft of *any* evidence that Defendant Budaj was even *aware* of Plaintiff Duran's presence at the demonstrations, much less what protected activity he may or may not have been engaged in.[5] The same is true of Defendant McNamee with respect to Plaintiff Packard, and Defendants Brukbacher and Serrant with respect to the unidentified Plaintiffs they are alleged to have retaliated against. No evidence supports that any Individual Defendant was even aware of Plaintiffs' allegedly protected conduct, and summary judgment on this claim is therefore proper.

### 3.    Plaintiff's failure-to-intervene claim fails.

Plaintiffs do not directly name any Individual Defendants in connection with their failure-to-intervene claim.[6] A failure-to-intervene claim requires that each defendant "must have observed

---

[5] It is anticipated that Plaintiffs will rely on Officer Bubna's bodyworn camera recording and Plaintiff Duran's cellphone video to identify Defendant Budaj as the officer who deployed the less-lethal round that struck Plaintiff Duran. Although those videos do not actually identify Defendant Budaj in any way, a review of the videos shows that at the time Plaintiff Duran was struck, he and the Officers were so far apart, at night, and through smoke and haze, to make any identification of anyone at all impossible, much less for any Officer to identify a specific individual or determine whether their actions constituted protected conduct sufficient to induce retaliation. *See Bubna BWC*, attached as **Exh. I**; *Duran Video*, attached as **Exhibit J.** The fact is that at the time Plaintiff Duran was struck, a group of individuals can be clearly seen several yards in front of Plaintiff Duran and between himself and the Officers, interfering with a gas canister. Thus, the reasonable inference to be drawn from the videos is that—assuming Plaintiff Duran was, in fact, struck by a less-lethal round—it was inadvertent due to his proximity immediately behind individuals whose actions justified the deployment of less lethal rounds. In that case, what would amount to, at most, negligence, is insufficient to demonstrate a constitutional violation, as more thoroughly discussed below. *See Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

[6] Indeed, Plaintiffs make only the generalized and conclusory claim that "one or more of the Defendant Officers stood by without intervening," and appear to plead the failure-to-intervene

or had reason to know of a constitutional violation and have had a realistic opportunity to intervene." *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (cleaned up). Here, Plaintiffs have failed to meet all of these elements. There is simply no record evidence demonstrating that any Individual Defendant observed actions by fellow Officers that a reasonable officer would have recognized as unlawful under the attendant circumstances, with each presenting a reasonable opportunity to intercede and with the specific Defendant failing to do so in each circumstance. Indeed, given the obviously chaotic and rapidly-evolving nature of the demonstrations, it is difficult to see how *any* officer would have had *any* opportunity to even determine in real time whether any fellow officer was engaging in unlawful conduct, much less have any reasonable opportunity to intervene to stop it. This claim must therefore be dismissed.

### 4. Plaintiffs' excessive force and supervisory liability claims necessarily fail.

Plaintiff articulates only an excessive force claim against Individual Defendants. To the extent Plaintiffs bring such claims under the 14th Amendment, the same must be dismissed because it is the 4th Amendment, not the 14th Amendment, that provides the basis for such a claim. *Graham v. Connor*, 490 U.S. 386, 395 (1989).[7] As to the excessive force claims specifically alleged by Plaintiffs Duran and Packard against Defendants Budaj and McNamee, respectively, there is no

---

claim as encompassing all of the alleged constitutional claims asserted. However, while the 10th Circuit has recently recognized failure-to-intervene theories outside the excessive force context, *see Harris v. Mahr*, 838 Fed. Appx. 339 (10th Cir. 2020) and cases cited therein, it has never recognized a failure-to-intervene claim outside of the 4th Amendment context. Ergo, a failure-to-intervene claim is not a general claim applicable to alleged constitutional violations outside the 4th Amendment, and to the extent Plaintiffs plead as such, that claim must be dismissed.

[7] Moreover, there is no record evidence in this case to support any application of the 14th Amendment's exacting standard, where "not even '[i]ntentionally or recklessly causing injury through the abuse or misuse of government power is enough'" to demonstrate liability. *Mann v. Hyler*, 918 F.3d 1109, 1116 (10th Cir. 2019) (quoting *Onyx Props., LLC v. Bd. of Cty. Commr's*, 838 F.3d 1039, 1048-49 *(10th Cir. 2016)).

record evidence showing that either of these Defendants *intentionally* applied force to these Plaintiffs in an excessive manner. Even if Plaintiffs could show that it was Budaj's and McNamee's munitions that struck Plaintiffs—which they cannot—unintentional or accidental application of force is insufficient to demonstrate a 4th Amendment seizure. *See Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (no seizure where officer "accidentally stopped the suspect by crashing into him."); *Oliveros v. Mitchell*, 449 F.3d 1091, 1095 (10th Cir. 2006) ("Plaintiff's § 1983 claims are premised on defendants' excessive use of force and unreasonable seizure of [plaintiff] in violation of his Fourth Amendment rights. The Supreme Court has held that such claims are necessarily predicated on intentional conduct." (citing *Brower v. Cty. of Inyo*, 489 U.S. 593, 597 (1989))); *Childress v. City of Arapaho*, 210 F.3d 1154, 1157 (10th Cir. 2000) (collecting and analyzing cases and finding that officers did not violate 4th Amendment in inadvertently shooting hostages). And to the extent Defendants Brukbacher and Serrant are alleged to have participated in uses of force through supervision, there is no evidence to support the notion that either of them directed the use of *unconstitutional* force, either generally or specifically, toward any Plaintiff. [SUF #11, #20, #22]. Thus, Individual Defendants are entitled to summary judgment and dismissal of these claims.

**5.      The Individual Defendants are entitled to qualified immunity.**

Assuming each of Plaintiffs' various claims survive the above analysis demonstrating that no constitutional violation was committed, the Individual Defendants are still entitled to immunity because Plaintiffs cannot show that the law was clearly established with respect to each alleged violation. Indeed, particularly given the state of the law following the George Floyd protests nationwide, courts have recognized that there are difficult "questions of qualified immunity to grapple with," in the context of  the "inherent difficulty in drawing an enforceable line that is sensitive to officers' ability to quell violence and prevent the destruction of property without

crossing the line into chilling free speech ….” *Alsaada v. City of Columbus*, 2021 U.S. Dist. LEXIS 82759, at *76, 116 (S.D. Ohio 2021). This case presents such difficulty. In the 1st Amendment context, there is no authority establishing that officers violate the constitution simply by deploying less-lethal munitions, or directing their subordinates to do so, against individuals interfering with gas canisters during a chaotic and dangerous mass demonstration/crowd-control scenario. Neither is there clearly established law holding that inadvertent injury to innocent bystanders in the same specific context violates the constitution. The same analysis applies in the excessive force context. Given the dearth of authority on police conduct in mass demonstrations generally, let alone in specific circumstances, Plaintiffs cannot meet their burden to show that the deployment of less-lethal munitions in the specific contexts presented here amounts to excessive force such that “every reasonable officer” would know that it does. *Perea v. Baca*, 887 F.3d 1034, 1044 (10th Cir. 2016). The vast majority of authority on the issues has been promulgated *after* the George Floyd protests, preventing Plaintiffs from providing any such authority sufficient to meet their qualified immunity burden. And the fact that the law is not clearly established with respect to any of Plaintiffs' substantive claims means that no reasonable officer or supervisor would have been in a position to recognize a situation requiring their intervention, or that their supervisory direction was unconstitutional. As such, Plaintiffs fail to meet both prongs of the qualified immunity analysis, and summary judgment is appropriate with respect to the Individual Defendants.

**6.     The City is entitled to summary judgment because Plaintiffs have failed to establish an underlying constitutional violation.**

A municipality cannot be liable for constitutional violations when there is no underlying constitutional violation by any of its officers. *Holmes v. Town of Silver City*, 826 Fed.Appx. 678, 678 (10th Cir. 2020); *Scott v. City of Albuquerque*, 711 Fed.Appx. 871, 882 n. 10 (10th Cir. 2017)

(claim for municipal liability is "fatally infirm" without an "underlying constitutional violation."). "An official capacity claim under § 1983 is the same as a claim against a municipality and also requires an underlying constitutional injury." *Rowell v. Bd. of County Comm'rs*, 2020 WL 627907, *7 (10th Cir. 2020). As detailed above, Plaintiffs have failed to establish an underlying constitutional violation by any of the Individual Defendants. Thus, the claims against the City are "fatally infirm" and the City is entitled to summary judgment. *Scott*, *supra*.

**7.       Plaintiffs have failed to show liability on the basis of a custom or policy.**

A municipality may be liable if the alleged constitutional violation is "so permanent and well settled as to constitute a custom or usage with the force of law." *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1249 (10th Cir. 1999) (citation omitted). A plaintiff must sufficiently demonstrate: "(1) the existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the [City's] employees; (2) deliberate indifference to or tacit approval of such misconduct by the [City's] policymaking officials … after notice to the officials of that particular misconduct; and (3) that the plaintiff was injured by virtue of the unconstitutional acts pursuant to the … custom and that the custom was the moving force behind the unconstitutional acts." *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993)). To show the existence of a continuing, persistent and widespread custom, a plaintiff "must . . . offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

Here, the record is devoid of any facts to suggest that any similarly situated persons were subject to unconstitutional conduct of the variety alleged in Plaintiffs' Complaint. Plaintiffs point to no other protests or actions involving the Aurora Police Department that are similar in nature to the individual claims made by each Plaintiff, either with respect to the 1st or 4th Amendment

allegations. The record is also devoid of any facts that support allegations that the Individual Defendants engaged in a pattern of conduct or that City policymakers had notice of the particular misconduct. Further, there are no facts to support an allegation that the alleged policy or custom was the moving force behind Plaintiff's alleged injuries. Finally, no facts suggest that the City was on notice of any alleged deficiencies and was deliberately indifferent after such notice.

       **7.**      **Plaintiffs have failed to demonstrate a failure to train, supervise, or discipline.**

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). A failure to train may serve as the basis for §1983 liability only where that failure amounts to deliberate indifference to the rights of citizens. *City of Canton*, 489 U.S. at 388-89. Allegations of failure to supervise are assessed under the same standard. *Whitewater v. Goss*, 192 Fed. Appx. 794, 797 (10th Cir. 2006). "Rarely, if ever, is 'the failure of a police department to discipline in a specific instance … an adequate basis for municipal liability under *Monell*.'" *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 777 (10th Cir. 2013) (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1056 (10th Cir. 1993)). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). "Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program causing constitutional violations." *Connick*, 131 S. Ct. at 1360. Additionally, the identified deficiency must be closely related to the plaintiff's actual injury. *City of Canton*, 489 U.S. at 385. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors

other than a faulty training program." *Id*. at 390-91 (internal citation omitted). In the present case, the undisputed material facts indicate that the City does, in fact, provide training on crowd control, crowd management, and the legal requirements for use of force. Furthermore, no facts suggest that there is any specific deficiency closely related to the alleged injuries in this case, nor that the City was on notice of any alleged deficiencies and deliberately failed to act on that notice.

## CONCLUSION

For the foregoing reasons, all Aurora Defendants are entitled to summary judgment and dismissal of all claims against them.

Respectfully submitted this 28th day of January, 2022.

s/Michael T. Lowe                                                    s/ Isabelle S. Evans
Michael T. Lowe                                                      Isabelle S. Evans
Bruno, Colin & Lowe, P.C.                                    Office of the City Attorney
1999 Broadway, Suite 4300                                 Aurora Municipal Center, Suite 5300
Denver, CO  80202                                               15151 East Alameda Parkway
Telephone: (303) 831-1099                                  Aurora, Colorado 80012
E-Mail:   mlowe@@brunolawyers.com            Telephone: (303) 739-7030
*Attorney for Individual Aurora Defendants*       E-mail: ievans@auroragov.org
                                                                              *Attorney for Aurora Defendants*

## CERTIFICATE OF SERVICE BY CM/ECF

I hereby certify that on July 9, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

All counsel of record                    s/ Julie Bozeman, Paralegal, Bruno, Colin & Lowe, P.C.