IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01878-RBJ
(consolidated with 20-cv-01922-RBJ-MEH)

ELISABETH EPPS, *et al*.,

      Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al*.,

      Defendants.

---

## DENVER DEFENDANTS' TRIAL BRIEF

---

      Defendants City and County of Denver, Colorado ("Denver"), Patrick Phelan, Matthew Canino, James D. Williams, Thomas Pine, Vincent Porter, Michael O'Donnell, Kevin Carroll, Rick Beall, David Abeyta, Marco Martinez, Justin Dodge, Richard D. Eberharter, Tana Cunningham, John Sampson, Jonathan Christian, and Keith Valentine ("Individual Denver Defendants") (collectively with Denver, the "Denver Defendants"), through undersigned counsel, hereby respectfully submit this Trial Brief, as follows:[1]

## I.  A VIOLATION OF A DENVER POLICE DEPARTMENT POLICY OR TRAINING STANDARD IS NOT A VIOLATION OF ANYONE'S CONSTITUTONAL RIGHTS

      To succeed with any of their claims, Plaintiffs must prove each of the Individual Denver Defendants separately violated their constitutional rights.  However, a violation of a Denver Police

---

[1]  This Trial Brief raises legal issues requiring decisions by this Court either on a pretrial basis or during the trial.  Counsel for the Denver Defendants will be prepared to discuss these issues at the Trial Preparation Conference on February 4, 2022.

Department ("DPD") policy is not the equivalent of a violation of the Plaintiffs' constitutional rights. ***Davis v. Scherer,*** 468 U.S. 183, 194 (1984); ***Rowell v. Bd. of Cty. Comm'rs,*** 978 F.3d 1165, 1173 n. 7 (10th Cir. 2020); ***Porro v. Barnes,*** 624 F.3d 1322, 1329 (10th Cir. 2010); ***Tanberg v. Sholtis,*** 401 F.3d 1151, 1159-60 (10th Cir. 2005); ***Hovater v. Robinson,*** 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993). "[V]iolations of state law and police procedure generally do not give rise to a 1983 claim for excessive force." ***Marquez v. City of Albuquerque,*** 399 F.3d 1216, 1222 (10th Cir. 2005); ***Moreno v. Taos Cty. Bd. of Comm'rs,*** 587 Fed. Appx. 442, 446 (10th Cir. 2014) (same). Similarly, the violation of a training standard is also not a constitutional violation. ***Tanberg,*** 401 F.3d at 1162-64; ***Carey v. Buitrago,*** 19-cv-02073-RM-STV, 2020 U.S. Dist. LEXIS 70955, at *25-26 (D. Colo. Mar. 18, 2020) (describing ***Tanberg*** as "finding a department's training on, or policy related to, employee conduct is not the law, nor can it establish or change the scope of constitutional rights as interpreted by case law.").

## II.  ANY VIOLATIONS OF POLICY ARE IRRELEVANT AND INADMISSIBLE

In ***Tanberg,*** the Tenth Circuit affirmed the exclusion from evidence at trial the Albuquerque Police Department Standard Operating Procedures as well as evidence the actions of the individual defendant violated those procedures. ***Tanberg,*** 401 F.3d at 1162-67. The Tenth Circuit's analysis is lengthy and comprehensive. However, a few points made by the Tenth Circuit are worth highlighting. Initially, the Tenth Circuit described the general irrelevance of the evidence to Plaintiffs' 42 U.S.C. § 1983 claims, as follows:

> Beyond these general concerns with relevance, there are more particular reasons to find this evidence irrelevant as to Plaintiffs' federal claims. In the exclusionary rule context, the Supreme Court has rejected the use of local police regulations as a standard for evaluating constitutionality of police conduct, on the ground that such a "basis for invalidation would not apply in jurisdictions that had a different practice." ***Whren v. United States,*** 517 U.S. 806, 815, 135 L.Ed. 2d 89,

> 116 S.Ct. 1768 (1996).  That logic would seem to apply equally to damages suits under § 1983.  This Court has consistently held that a violation of police regulations is insufficient to ground a § 1983 action for excessive force. . . . If Officer Sholtis violated the SOP governing the use of force in effecting arrest, that fact might well be pertinent to the Albuquerque Police Department's future decisions to promote, retain, or discipline him; it is not relevant to determining if Plaintiffs' arrest violated the reasonableness standard of the Fourth Amendment.

***Tanberg,*** 401 F.3d at 1163-64 (citations omitted).  Further, the Tenth Circuit also explained the public policy problem with allowing reliance on a violation of internal police policies and procedures to drive the constitutional inquiry, as follows:

> Although plaintiffs frequently wish to use administrative standards, like the Albuquerque SOPs, to support constitutional damages claims, this could disserve the objective of protecting civil liberties.  Modern police departments are able—and often willing--to use administrative measures such as reprimands, salary adjustments, and promotions to encourage a high standard of public service, in excess of the federal constitutional minima.  If courts treated these administrative standards as evidence of constitutional violations in damages actions under § 1983, this would create a disincentive to adopt progressive standards.  Thus, we decline Plaintiffs' invitation here to use the Albuquerque Police Department's operating procedures as evidence of the constitutional standard.

***Id.*** at 1164.

This Court has followed ***Tanberg***.  In ***Davies v. City of Lakewood,*** 14-cv-01285-RBJ, 2016 U.S. Dist. LEXIS 18348 (D. Colo. Feb. 16, 2016), this Court followed ***Tanberg*** and excluded evidence of violations of police department policies, reasoning:

> I agree with the defendants that evidence regarding the individual officers' violation of the Department's or the SWAT Team's policies is not admissible as to the claims against them.  *See Tanberg,* 401 F.3d 1151, 1163-64.  Plaintiff suggests that while such evidence is inadmissible to establish a constitutional violation, it is admissible to show that the officers' conduct was done recklessly and with deliberate indifference to the rights of Mr. Davies.  Response, ECF No. 188, at 3.  That is not a meaningful distinction in my view.  Evidence regarding violation of policies will not be admitted.  I also agree that evidence of disciplinary actions taken against the individual officers for violation of Lakewood Police Department policies is inadmissible to establish their culpability.  ***Id.***

*Davies,* 2016 U.S. Dist. LEXIS 18348, at *55-56.  Another Judge of this District recently followed *Tanberg* and reached the same conclusion.  *See Estate of Briones v. Adrey*, 18-cv-00865-PAB-MEH, 2021 U.S. Dist. LEXIS 173974, at *3-6 (D. Colo. Sept. 14, 2021).

### III.  WHETHER INDIVIDUAL OFFICERS COMPLETED USE OF FORCE REPORTS IS IRRELEVANT AND INADMISSIBLE

Denver Defendants anticipate Plaintiffs will argue individual officers violated policy by not completing individual use of force reports.  Both the alleged policy violation and whether any particular officer completed or did not complete a use of force report is irrelevant and inadmissible.  Nothing in the Fourth Amendment requires a police officer to write a use of force report or indeed any report following a use of force.  Courts have concluded the failure to complete a use of force report is not causally connected to whether the officers actually used an excessive amount of force.  *See Henderson v. City & Cnty. of Denver,* 12-cv-0625-WJM-BNB, 2014 U.S. Dist. LEXIS 7140, at *28 (D. Colo. Jan. 21, 2014) ("The Court fails to see how inadequate reporting of a use of force is directly causally connected to the decision to use excessive force in the first instance."); *Todd v. Baker,* 10-127-M-DWM, 2012 U.S. Dist. LEXIS 77375 at *23-24 (D. Mont. June 4, 2012) (discussing evidence of prior complaints against officers including a failure to write a use of fore report and noting:  "The jury must only decide whether the officers' judgment was reasonable, not whether they reported the incident accurately later."); *Wissert v. Quigg,* 06-3256, 2008 U.S. Dist. LEXIS 34967 at *19 (E.D Pa. Apr. 25, 2008) ("It would not be reasonable for a jury to infer a pattern or custom of excessive force from the officers' failure to file such reports."); *Burnikel v. Fong,* 15-cv-00050-RGE-HCA, 2018 U.S. Dist. LEXIS 231853, at *10-11 (S.D. Iowa Nov. 7, 2018) (excluding evidence of failure to complete use of force report in excessive force case).

## IV.  WHETHER INDIVIDUAL OFFICERS VIOLATED
## POLICY BY NOT ACTIVATING THEIR BODY WORN CAMERAS
## IS IRRELEVANT AND INADMISSIBLE

Denver Defendants also anticipate Plaintiffs will seek to introduce evidence concerning the applicable body worn camera policy and the fact individual officers violated the policy by not activating their body worn cameras during interactions related to the protests.  Initially, there is no separate claim for the failure to activate body worn cameras and any officer's individual failure to activate his or her body worn camera in violation of DPD policy is not a violation of anyone's constitutional rights and is inadmissible to prove such a violation.  *Beitch v. Magnus,* CV-18-0067-TUC-BGM, 2020 U.S. Dist. LEXIS 96565 at *24 (D. Ariz. June 1, 2020) ("The violations of TPD's policy regarding report writing and failing to turn on a body worn camera are not constitutional violations."); *Baldwin v. Colley,* 15-cv-02762-KAW, 2015 U.S. Dist. LEXIS 134946 at *13 (N.D. Cal. Oct. 2, 2015) ("It cannot be said, then, that the failure to use body cameras constitutes deliberate indifference to constitutional rights as a matter of law.").

## V.  PLAINTIFFS SHOULD NOT BE ALLOWED TO INTRODUCE THE ISSUE OF
## PUNITIVE DAMAGES UNTIL THIS COURT DETERMINES SUFFICIENT EVIDENCE
## HAS BEEN PRESENTED TO SUBMIT THE ISSUE TO THE JURY

Punitive damages may be available for 42 U.S.C. § 1983 claims brought against individual governmental officials.  *Griffith v. State of Colorado,* 17 F.3d 1323, 1327 (10th Cir. 1994); *Wren v. Spurlock,* 798 F.2d 1313, 1322 (10th Cir. 1986), *cert. denied,* 479 U.S. 1085 (1987).  In *Smith v. Wade,* 461 U.S. 30 (1983), the Supreme Court held punitive damages may only be awarded when the official's "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Id.* at 56.  A finding of a constitutional violation is insufficient to demonstrate an individual defendant acted with an evil

motive or in callous disregard of a plaintiff's constitutional rights. ***Guides, Ltd. v. Yarmouth Group Property Management, Inc.,*** 295 F.3d 1065, 1076-77 (10th Cir. 2002); ***Coleman v. Rahija,*** 114 F.3d 778, 787-88 (8th Cir. 1997).

Prior to allowing the issue of punitive damages to go to the jury, this Court must make a threshold legal determination whether the Plaintiffs presented sufficient facts to support an award of punitive damages ***against each individual Denver Defendant***. ***Searles v. Van Bebber,*** 251 F.3d 869, 879 (10th Cir. 2001), *cert. denied,* 536 U.S. 904 (2002); ***McGhee v. Biamont,*** 348 Fed. Appx. 418, 420 (10th Cir. 2009); ***Black v. M & W Gear Co.,*** 269 F.3d 1220, 1239 (10th Cir. 2001) (describing district court grant of defense motion for judgment as a matter of law on issue of punitive damages prior to submission of issue to the jury); ***Knowlton v. Teltrust Phones, Inc.,*** 189 F.3d 1177, 1186 (10th Cir. 1999) (same). Until this Court makes this threshold legal determination, it would be highly prejudicial to allow statements or requests by counsel for the Plaintiffs concerning the issue of punitive damages. Any such statements would be unduly prejudicial to the Individual Denver Defendants if this Court ultimately rules the Plaintiffs' request for punitive damages ***for any individual Denver Defendant*** will not be presented to the jury. Statements respecting punitive damages must be barred consistent with Fed. R. Evid. 402 and this Court's discretion regarding the conduct of trial until and only if this Court makes the legal determination the Plaintiffs' punitive damages claims present an actual issue to be determined by the jury with respect to specific Individual Denver Defendants.

## VI.  THE OFFICE OF THE INDEPENDENT MONITOR
## REPORT AND ANY TESTIMONY FROM FORMER MONITOR
## NICHOLAS E. MITCHELL IS INADMISSIBLE[2]

Plaintiffs seek to introduce the Office of Independent Monitor Report and any testimony from former Monitor Nicholas E. Mitchell is inadmissible at trial and must be excluded by this Court pursuant to Fed. R. Evid. 407 and Fed. R. Evid. 403.

Initially, review of the Office of the Independent Monitor ("OIM") Report concerning the DPD response to the George Floyd Protests in its entirety reveals its purpose was not a fact-finding investigation about what occurred; rather, its purpose was to understand the DPD response and offer a comprehensive evaluation related to the DPD response and recommendations for the improvement of DPD.  [*See* OIM Report, Exh. A].  This Court should review the OIM Report itself to understand OIM's approach.  However, based on the introduction and factual summary of the report, its purpose was not to document everything that occurred during the protests and DPD's response to them.  Instead, the factual summary was designed to provide a context for the OIM's analysis.  [*See* OIM Report, at 1-8, Exh. A].  Based on the approach taken by the OIM, the OIM Report falls within the scope of Fed. R. Evid. 407 and should be excluded from evidence as a subsequent remedial measure.  ***Davies,*** 2016 U.S. Dist. LEXIS 18348, at *56-59 (excluding report identifying remedial measures so the underlying event did not happen again).  In particular, the OIM Report contains 16 separate recommendations for DPD to implement as lessons learned from the response to the protests.  Those 16 recommendations are clearly remedial in nature as is the DPD's implementation of those 16 recommendations.  Allowing the jury to consider the OIM

---

[2]  Denver previously filed a Motion to Preclude Former Independent Monitor Nicholas E. Mitchell as a Witness for Plaintiffs and Office of Independent Monitor Interview Memos as Evidence.  [ECF 169].  This Motion remains pending before this Court.  [ECF 216].

Report and Mr. Mitchell's testimony is inappropriate as a result based on the policies underlying

Fed. R. Evid. 407. *Minter v. Primne Equip. Co.,* 451 F.3d 1196, 1211-12 (10th Cir. 2006); *Moe*

*v. Avions Marcel Dassault-Breguet Aviation,* 727 F.2d 917, 932 (10th Cir. 1984).

Further, during his deposition, Mr. Mitchell was clear the OIM Report did not examine the

issue whether anyone's constitutional rights were violated during the DPD response to the protests.

Mr. Mitchell testified:

Q.    Turning to your report that—that both counsel asked you about.  There's no conclusion in your report that any particular action taken by the Denver Police Department violated anyone's constitutional rights, correct?

A.    I think that's right.  Yeah.  We did not comment—or I did not comment on specific incidents or specific uses of force as they related to potential violations of constitutional rights.

Q.    There's also no conclusion in your report that any policy of the Denver Police Department was a cause of a violation of anyone's constitutional rights, correct?

A.    We did not draw that conclusion in the report, no.

Q.    And that both of those sorts of constitutional questions—and in that case, liability questions, are beyond the scope of what you were looking at in your report, true?

A.    I think that sounds accurate to say that to the extent there were constitutional violations alleged in this lawsuit, those are kind of jury questions.  Those are not the questions that we were attempting to analyze or resolve in the report.

Q.    Well, more broadly, separate from this lawsuit, you weren't attempting to analyze whether anyone's constitutional rights were violated by the Denver Police Department as part of the George Floyd Protests response in your report, right?

A.    Not in the report, though certainly in—as I mentioned earlier, there was, you know, north of 100 Internal Affairs investigations opened in response to allegations of inappropriate force.  And we did, in the context of all of that work, which we were doing simultaneously as we were doing this

investigation, we were concerned with and looking at potential violations of policy or potential constitutional violations that arose in connection with individual incidents.

So for me, since I was doing both things at the same time, they blend together a little bit. But in the report, I agree with you, those were not the questions we were evaluating.

Q.    Okay. And someone in the Denver Police Department is disciplined not because they violate someone's constitutional rights, but because they violate Denver Police Department policy, correct?

A.    Correct.

Q.    The standard that is imposed in the disciplinary process is whether the actions were in conformance with Denver Police Department policy, not whether the actions were in conformance with the United States Constitution, right?

[Objection omitted]

A.    That's right. There may be, and often is, overlap between those questions. But you're—you're right. The standard that we're using when evaluating officer behavior in the disciplinary process is whether or not officers complied with policy.

Q.    Right. And during your conversation a little bit go with Mr. McNulty, you talked—one of the areas that he was asking you about was training. There's nothing in your report that talks about a deficiency in training being the moving force or cause of the violation of anyone's constitutional rights, correct?

A.    Correct.

[*See* Mitchell Dep., at 146-148, Exh. B]. This deposition testimony from Mr. Mitchell demonstrates the focus of the OIM Report was not on the central issues to be decided by the jury in this case. Allowing the jury to consider as evidence the OIM Report and Mr. Mitchell's testimony would do nothing other than create confusion because the OIM Report applied a different rationale and standards--meaning the OIM Report focused on what could be done

differently in the future. In contrast, the jury must focus on the actual constitutional standards of the Plaintiffs' claims and should only be presented with evidence relevant to those standards. Ultimately, even if potentially relevant, the overall context of both the OIM Report and Mr. Mitchell's testimony means both should be excluded pursuant to Fed. R. Evid. 403.  Allowing either the OIM Report or Mr. Mitchell to testify runs the significant risk of their introduction into evidence inappropriately focusing the jury on the OIM Report and its conclusions rather than making its own determination as to what occurred and whether based on that determination any of the Denver Defendants are liable.  Compare *Stump v. Gates,* 211 F.3d 527, 533-38 (10th Cir. 2000) (reversing jury verdict based on introduction of grand jury report and special prosecutor testimony in 42 U.S.C. § 1983 case pursuant to Fed. R. Evid. 403 concluding admission of evidence was an abuse of discretion and not harmless error).

## VII.  WHETHER AN INDIVIDUAL QUALIFIES AS A FINAL POLICYMAKER FOR DENVER IS A DETERMINATION OF LAW FOR THIS COURT

Plaintiffs claim Division Chief Ron Thomas and retired Special Operations Commander Patrick Phelan, and perhaps others, are final policymakers for Denver.  Whether any particular individual qualifies as a final policymaker is a matter to be decided by the Court.  *St. Louis v. Praprotnik,* 485 U.S.112, 124 (1988); *Jackson v. City & Cnty. of Denver,* No. 20-1051, 2022 U.S. App. LEXIS 1134, at *12-16 (10th Cir. Jan. 13, 2022); *Dempsey v. City of Baldwin,* 143 Fed. Appx. 976, 986 (10th Cir. 2005).

## VIII.  PLAINTIFFS' RATIFICATION THEORY REQUIRES SPECIFIC PROOF OF KNOWLEDGE AND RATIFICATION BY A FINAL POLICYMAKER OF THE SPECIFIC UNCONSTITUTIONAL ACTIONS OF THE SUBORDINATE

One of Plaintiffs' municipal liability theories is ratification.  Ratification requires specific knowledge and acceptance of the subordinate's unconstitutional actions by a final policymaker of

the municipality.  The Tenth Circuit has explained what is required for a viable ratification theory

as follows:

> Moreover, "a municipality will not be found liable under a ratification theory unless the final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson v. City of Oklahoma City,* 627 F.3d 784, 790 (10th Cir. 2010), *cert. denied,* 564 U.S. 1019, 131 S.Ct. 3030, 180 L.Ed.2d 846 (2011).  That is, "[i]f the *authorized policymakers* approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Praprotnik,* 485 U.S. at 127 (emphasis added); *see Jensen v. West Jordan City,* 968 F.3d 1187, 1204 (10th Cir. 2020).

*Jackson,* 2022 U.S. App. LEXIS 1134, at *11.

Denver anticipates Plaintiffs will attempt to argue the failure to discipline police officers

for their uses of force involving Plaintiffs represents ratification.  However, applicable law is to

the contrary.  *See, e.g., Sexton v. City of Colo. Springs,* 530 F.Supp.3d 1044, 1071-72 (D. Colo.

2021) (citing cases concluding the mere failure to discipline does not amount to ratification);

*Erickson v. City of Lakewood,* 489 F.Supp.3d 1192, 1207 (D. Colo. 2020) (same); *Estate of

Lobato v. Correct Care Solutions, LLC,* 15-cv-02718-PAB-STV, 2017 U.S. 49247, at *27-28 (D.

Colo. Mar. 3, 2017) (same); *Patrick v. City of Overland Park,* 937 F.Supp. 1491, 1501 (D. Kan.

1996) ("In order to impose liability under § 1983 on a theory of ratification, plaintiff must allege

more than mere acquiescence by a final policymaker in a subordinate's actions.  Plaintiff must

allege and prove that the final policy maker affirmatively approved the particular action of the

subordinate.") (citations omitted).

Therefore, it is not enough for Plaintiffs to establish a specific use of force during the

response to the protests related to a Plaintiff did not result in officer discipline.  Instead, the above

precedent requires Plaintiffs to establish a final policymaker of Denver actually evaluated whether

discipline was warranted in a specific instance and actually concluded not only that no discipline was warranted but that the underlying actions were appropriate.  No such evidence will be presented at trial allowing application of any ratification theory here under applicable law.

## IX.  THIS COURT'S ORDER IN *ABAY* IS IRRELEVANT AND INADMISSIBLE

On June 5, 2020, this Court issued its Order on Plaintiffs' Motion for Temporary Restraining Order in *Abay v. City of Denver,* 445 F.Supp.3d 1286 (D. Colo. 2020).  This Court's Order in *Abay* occurred *after* the events at issue respecting the Plaintiffs' claims.  Therefore, nothing about this Court's Order or any changes made to DPD operations or policies as a result of this Court's Order constitutes relevant or admissible evidence.

## X.  THIS COURT MUST POLICE THE CUMULATIVE EVIDENCE PROPOSED BY PLAINTIFFS IN THEIR WITNESS AND EXHIBIT LISTS

As previously disclosed to this Court, in anticipation of the Trial Preparation Conference before this Court, Plaintiffs disclosed to the Defendants a witness list containing 146 witnesses and an exhibit list with 1,092 exhibits.  [ECF. 251, at 3].  Under Fed. R. Evid. 403, this Court may exclude any cumulative evidence sought to be presented by the Plaintiffs.  *United States v. Otuonye,* 995 F.3d 1191, 1206 (10th Cir. 2021).  This Court is "afforded 'considerable discretion in performing the Rule 403 balancing test because district court judges have front-row seats during trial and extensive experience ruling on evidentiary issues.'"  *Id.* (quoting *United States v. Archuleta,* 737 F.3d 1287, 1292 (10th Cir. 2013).

This matter is presently set for a 15-day jury trial on all aspects of the case.  Counsel for Denver Defendants is extremely concerned the Denver Defendants will not have an adequate and fair opportunity to present their evidence to the jury.  In the absence of strict controls on the presentation of evidence by the Plaintiffs by this Court, the number of proposed witnesses and

exhibits from the Plaintiffs has the significant potential if not likelihood to consume the time allotted for trial precluding the Denver Defendants and the other Defendants from having a fair opportunity to present their defenses and implicating their due process rights.

WHEREFORE, Defendants City and County of Denver, Colorado, Patrick Phelan, Matthew Canino, James D. Williams, Thomas Pine, Vincent Porter, Michael O'Donnell, Kevin Carroll, Rick Beall, David Abeyta, Marco Martinez, Justin Dodge, Richard D. Eberharter, Tana Cunningham, John Sampson, Jonathan Christian, and Keith Valentine respectfully submit the foregoing Denver Defendants' Trial Brief.

DATED this 31st day of January, 2022.

Respectfully submitted,

*s/ Andrew D. Ringel*                                    .
Andrew D. Ringel, Esq.
Katherine N. Hoffman, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
Telephone: (303) 628-3453
Facsimile: (303) 628-3368
E-mail: ringela@hallevans.com
hoffmank@hallevans.com

Hollie R. Birkholz, Assistant City Attorney
Lindsay M. Jordan, Assistant City Attorney
Denver City Attorney's Office
Civil Litigation Section
201 West Colfax Ave., Dept. 1108
Denver, CO 80202
Telephone: (720) 913-3100
Facsimile: (720) 913-3155
E-mail: hollie.birkholz@denvergov.org
lindsay.jordan@denvergov.org
*Counsel for the City and County of Denver and the individually named Denver Police Department Officers*

13

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on this 31st day of January, 2022, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve the following all counsel of record in this matter.

In addition, the foregoing was placed in the United States Mail, first-class postage prepaid and addressed to the following non-CM/ECF participant:

Cidney Fisk
5100 Leetsdale Dr., Apt. 438
Denver, Colorado 80246

and

Cidney Fisk
14362 E. Road
Delta, Colorado 81416

_s/Nicole Marion_, Legal Assistant to
Andrew D. Ringel, Esq.
Katherine N. Hoffman, Esq.
of Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
Phone: 303-628-3300
Fax: 303-628-3368
ringela@hallevans.com
hoffmank@hallevans.com

**ATTORNEYS FOR DENVER DEFENDANTS**