IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01878-RBJ
(consolidated with 20-cv-01922-RBJ-MEH)

ELISABETH EPPS, *et al.*,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

    Defendants.

---

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' MOTIONS *IN LIMINE***

---

Defendants City and County of Denver, Colorado ("Denver"), Patrick Phelan, Matthew Canino, James D. Williams, Thomas Pine, Vincent Porter, Michael O'Donnell, Kevin Carroll, Rick Beall, David Abeyta, Marco Martinez, Justin Dodge, Richard D. Eberharter, Tana Cunningham, John Sampson, Jonathan Christian, and Keith Valentine ("Individual Denver Defendants") (collectively referred to as "Denver Defendants"), City of Aurora ("Aurora"), Cory Budaj, Matthew Brukbacher, Patricio Serrant, and Davide McNamee ("Individual Aurora Defendants") (collectively referred to as "Aurora Defendants") and Jefferson County Deputy Sheriffs Anthony Hamilton and Timothy Dreith ("Jeffco Deputies") (collectively referred to as "Defendants") through their undersigned counsel, hereby respectfully submit their joint response to Plaintiffs' Motions *in limine* (hereinafter referred to as "Plaintiffs' Motion"), as follows:

**RESPONSE TO MOTION *IN LIMINE* NO. 1**

Plaintiffs' first motion *in limine* requests the Court bar any reference to Plaintiffs' prior criminal history and Plaintiff Amghar's other-than-honorable discharge from the United States

military. Defendants do not intend to introduce evidence referencing Plaintiffs' criminal history or Plaintiff Amghar's discharge unless Plaintiffs open the door to the introduction of such evidence. Therefore, at this time Defendants do not oppose Motion *in limine* No. 1 but reserve the right to revisit this issue depending on the evidence and testimony presented at trial.

## RESPONSE TO MOTION *IN LIMINE* NO. 2

Plaintiffs' second motion *in limine* requests the Court bar any arguments that appeal to jurors' pecuniary interests as taxpayers. Defendants do not intend to appeal to the jurors' pecuniary interests as taxpayers unless Plaintiffs open the door to the introduction of such evidence and/or arguments. Therefore, at this time Defendants do not oppose Motion *in limine* No. 2 but reserve the right to revisit this issue depending on the evidence, testimony, and argument at trial.

## RESPONSE TO MOTION *IN LIMINE* NO. 3

Plaintiffs' third motion *in limine* requests the Court: (1) bar any reference to the financial status of Individual Denver Defendants, Individual Aurora Defendants, and Jeffco Deputies (collectively referred to as "Individual Defendants") because it is irrelevant to the jury's assessment of compensatory damages; or (2) if Individual Defendants are allowed to present evidence of their financial inability to pay punitive damages that Plaintiffs be allowed to introduce evidence of how judgment for compensatory damages against Individual Defendants is indemnified.[1]

Evidence related to Individual Defendants' inability to pay punitive damages is relevant. The Tenth Circuit has ruled that when punitive damages are requested "[t]he ultimate source of payment is therefore relevant. . . . The jury must know the impact an award will have on the

---

[1] As stated in Denver Defendants' Trial Brief, Plaintiffs should not be allowed to introduce the issue of punitive damages until this Court determines sufficient Evidence has been presented to submit the issue to the jury.

defendants to properly assess punitive damages." *Perrin v. Anderson*, 784 F.2d 1040, 1047–48 (10th Cir. 1986); *see also O'Connell v. Alejo*, 2020 WL 5748810, *11 (Sept. 25, 2020) (The size of an award that is necessary and appropriate to punish a typical individual defendant would ordinarily be different than what it would take to punish, for example, a typical large corporation or government entity.)  Here, the Plaintiffs seek to recover an award of punitive damages and because the Individual Defendants are the ultimate source of payment, evidence of their financial inability to pay such a judgment is relevant and admissible evidence. To prohibit such evidence is highly prejudicial to Individual Defendants. Further, introduction of evidence on the issue of indemnification for either punitive or compensatory damages runs the same risks as introducing insurance information precluded by Fed. R. Evid. 411.  Here, issues involving interpretations and applications of several Colorado statutes would also be required to present a complete and appropriate picture, including multiple issues of law typically not appropriate for jury presentation.

## RESPONSE TO MOTION IN LIMINE NO. 4

Plaintiffs' fourth motion *in limine* requests the Court bar use of the following witnesses: Jeffrey Martinez; Heather Hohnholz; Beth Moyski; Richard Lee; and Bradley Whitfield. Plaintiffs assert Defendants should be barred from using these witnesses because (A) Defendants disclosed them on the last day of discovery; (B) Plaintiffs requested to depose two of the witnesses, which Defendants refused; and (C) Plaintiffs would be prejudiced by the testimony of these witnesses. Plaintiffs also appear to broadly request that all Defendants be barred from references to property destruction or the behavior of third parties during the protests. These requests should be denied.

### A. Denver Defendants' Disclosure of Witnesses at the Close of Fact Discovery Was Timely.

As an initial matter, Denver Defendants' witness lists, which were provided to Plaintiffs on January 26, 2022, and revised on January 27, 2022, do not include three of the witnesses subject

3

to Plaintiffs' Motion: Beth Moyski, Richard Lee, and Bradley Whitfield. Denver Defendants appreciate that Plaintiffs filed their motions *in limine* well in advance of the Trial Preparation Conference per this Court's practice standards, and by doing so needed to file Plaintiffs' Motion prior to receiving Denver Defendants' Witness List. Therefore, because Denver Defendants are not calling these witnesses, Denver Defendants consider this issue moot as to Beth Moyski, Richard Lee and Bradley Whitfield.

As for Jeffrey Martinez and Heather Hohnholz, Denver Defendants' disclosure of these witnesses was timely because they were disclosed prior to discovery closing. *See Ortega v. City and County of Denver*, 2013 WL 1751944, *2 (D. Colo. Apr. 23, 2013) (citing *Phillip M. Adams, LLC v. Winbond Elec. Corp.*, 2010 WL 3258161, *1 (D.Utah Aug.17, 2010) (disclosure of witness on last day of discovery is timely)); *Chung v. El Paso School District #11*, 2015 WL 1882939, * 1 (D. Colo. Apr. 22 2015) ("Technically, Defendant's disclosure was timely because discovery had not yet closed.")

Additionally, information and documents related to the subject matter for which Jeffrey Martinez and Heather Hohnholz were designated to address were produced well in advance of the fact discovery deadline. Denver Defendants have produced an extensive amount of documents in this case, and the following are examples of documents and information produced well in advance of the discovery cutoff that address officer injuries and property damage: DPD officer statements; multiple emails referencing officer injuries and property damage; After Action Reports and Operations Plans referencing property damage; and some officers who were deposed testified as to destruction they observed and injuries they sustained. For these reasons, Denver Defendants' disclosures served on October 4, 2021, are timely and Plaintiffs are not prejudiced.

Further, following Denver Defendants' disclosure, Plaintiffs sought to depose Jeffrey

4

Martinez and Bradley Whitfield. Information about the testimony of the witnesses, as discussed above, was conveyed to Plaintiffs' counsel during a telephonic conferral with counsel. After confirming that none of the individuals at issue would testify that any of the named Plaintiffs injured an officer, counsel for Plaintiffs acquiesced an understanding and stated that there was no need to depose any of the recently disclosed individuals at that time. There was never an indication that Plaintiffs would seek to exclude these witnesses from trial. Denver Defendants believed the Parties had reached an agreement that because Jeffrey Martinez was not going to testify that any of the individual Plaintiffs caused officer injuries his deposition was unnecessary. Rather than seek Court intervention to cure any perceived prejudice, Plaintiffs dropped the issue until their response to Defendants' Motion to Modify Scheduling Order and Trial Date, when Denver Defendants first learned of Plaintiffs' intention to exclude these witnesses from trial. [ECF 200].

**B. The testimony of these witnesses is relevant and probative to the Defendants' defenses, and exclusion of evidence of property destruction and third-party behavior would result is extreme prejudice to all Defendants.**

Plaintiffs' claims in this case are broad in scope, covering 45 separate but related incidents over the course of eight days of extended protests. Plaintiffs' overriding theory is the protests were "overwhelmingly peaceful," but that Defendants nonetheless employed unnecessary, indiscriminate, and excessive crowd control tactics. [ECF 219, Third Amended Complaint, ¶¶ 2-12.[2]] Plaintiffs' allegations include class claims and assertions regarding Defendants' actions toward the protestors in general, not just Plaintiffs. Below are some of the generalized allegations:

- "Defendant Officers intentionally used force on peaceful protestors with no lawful justification" TAC, ¶ 4

---

[2] Although Defendants specifically reference the allegations contained in the Fitouri Plaintiffs' Third Amended Complaint, Epps Plaintiffs' Second Amended Complaint contains similar general allegations.

- "Defendant Officers targeted journalists and others simply documenting their conduct" TAC, ¶ 6
- "curfew was unconstitutionally applied to protestors" TAC, ¶ 427
- "Defendants violated Plaintiffs' First Amendment rights when they attempted to control and break up the peaceful protests" TAC, ¶ 429

Notwithstanding Plaintiffs' assertions, Defendants encountered violent and destructive behavior during the protests and made tactical decisions regarding crowd control methods and use of force in a dangerous and volatile environment.

In an effort to limit Defendants' ability to present evidence of the true nature of protests and the circumstance they confronted, Plaintiffs seek to exclude any evidence of any conduct (and resulting damage and injury) engaged in by protestors other than Plaintiffs as irrelevant. Contrary to Plaintiffs' argument, evidence regarding the nature of the protests, including the violence and destruction engaged in by non-party protestors occurring during the incidents complained of by Plaintiffs, are directly relevant to their claims and necessary to Defendants' defenses.

It is well established that excessive force claims are analyzed under the Fourth Amendment objective reasonableness standard informed by the totality of the circumstances. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). "Although [any] attempt to craft an easy-to-apply legal test in the Fourth Amendment context is admirable, in the end we must slosh our way through the fact bound morass of 'reasonableness.'" *Scott v. Harris*, 550 U.S. 372, 383 (2007).

Limiting the evidence to only conduct engaged in by Plaintiffs would not allow for a fair

assessment of the totality of the circumstances.  For example, on the evening of May 31, 2020, some of the Defendants deployed to defend a Denver Police Department substation were approached by a group of protestors, some of whom attacked the Defendants and those with them with projectiles, resulting in injury to officers and property damage in the area.  Gas was deployed in an effort to disperse the crowd and then less lethal force was utilized to stop the individuals throwing objects and kicking gas canisters back at the officers.  Plaintiff Deras was involved in this incident, kicked gas canisters, and claims he was unconstitutionally hit by less-lethal rounds. The decision to use force during this incident must be informed by all of the surrounding circumstances, including the simultaneous violent behavior of many protestors other than Deras, which necessitated the original use of gas.  Limiting the evidence to the fact that Deras kicked a gas canister would be misleading and unfair.

Furthermore, in the context of protests, mass arrests which could include seemingly peaceful protestors may satisfy Fourth Amendment standards if the officers have grounds to believe that the persons subjected to the seizure were part of a "unit" observed violating the law. *Baude v. City of St. Louis*, 476 F.Supp. 3d 900, 909-910 (E.D. MO 2020).  Police action toward a group demonstration may be justified where there is a clear and present danger of riot, imminent violence, interference with traffic or other immediate threat to public safety.  *Jones v. Parmely*, 465 F.3d 46, 58 (2nd Cir. 2006) (*citing Cantwell v. Connecticut*, 310 U.S. 296, 308-309 (1940)). Analysis of whether Plaintiffs were acting as part of a coordinated unit in certain circumstances or whether the protests were devolving into riots is relevant and necessarily includes evidence of conduct other than Plaintiffs, property damage, and injuries.

This evidence is also relevant to Plaintiffs' First Amendment claims, which require a showing that "defendant's adverse action was substantially motivated as a response to the

plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). As in the Fourth Amendment context, First Amendment claims in the context of protest include an analysis of a clear and present danger, the validity of resulting dispersal orders, and whether non-violent protestors have a claim for failing to heed dispersal orders. *Akinnagbe v. City of New York*, 128 F.Supp.3d 539, 552-554 (E.D. NY 2015). Again, these issues and the appropriateness of the Defendants' actions in effecting crowd control necessarily must include evidence of all the actions being directed at Defendants. Understanding everything Defendants were experiencing during the demonstrations is directly relevant to the motivations behind their decisions, which were often directed to more than one individual because of the nature of the crowds.

Moreover, the cases cited by Plaintiffs do not support the broad relief they are seeking. In *Henderson*, the Court simply held the force used against one Plaintiff could not be based solely on probable cause to believe that Plaintiff's friends were disturbing the peace. *Henderson v. City and County of Denver*, 2014 WL 222761 *4 (D.Colo. Jan. 21, 2014). The *Henderson* Court was not making an evidentiary ruling for trial but was considering qualified immunity asserted on summary judgment and accepting the plaintiff's version of events. The Court further noted the facts were largely in dispute and made no blanket ruling that the evidence to be considered at trial would be limited to only the plaintiff's conduct at the scene. *Id*. Similarly, *Jones* involved a review of a denial of qualified immunity under plaintiffs' fact and made no evidentiary rulings on the scope of the appropriate evidence for trial. *Jones v. Parmley*, 465 F.3d 46, 51 (2d. Cir. 2006). Assuming, as plaintiffs had alleged, that there was not a clear and present danger and there was not a basis to disperse the crowd, the court held that the officers could not have thought indiscriminate mass arrests were lawful. *Id*., at 60. Certainly, the opinion makes clear that evidence of the conduct of

8

the entire crowd would be relevant post-summary judgment to resolve the factual disputes regarding the nature of the protest and the necessity of police dispersal. *Id*., at 59 ("an issue of fact also nevertheless exists as to whether a reasonable police officer would have believed that he or she could disperse the otherwise peaceable demonstration because a few individuals within that crowd had violated the law at an earlier time and desisted before the dispersal.")  Finally, the *Fogerty* case does not support Plaintiffs' broad attempt to limit the evidence in this case. *Fogerty* is again a summary judgment decision, makes no evidentiary considerations regarding the conduct of the crowd as a whole, and the Court simply ruled that probable cause could not rest only on characterizations of the protest in general. *Fogerty v. Gallegos*, 523 F.3d 1147, 1158 (10th Cir. 2008).  The case does not hold that the characterization of the protest in general were entirely irrelevant.  It certainly was relevant and was before the court in its consideration of whether the protestors presented any immediate threat to officers or public safety. *Id*., at 1161.

Plaintiffs cannot characterize the protests as "overwhelmingly peaceful" and generalize the police response as thereby excessive by cherry picking the evidence they like and preventing the jury from seeing an accurate picture of totality of the circumstances which confronted Defendants and informed their decisions in real time.  Broader evidence regarding all the conduct that was occurring goes directly to the elements of liability including motivation for the tactics Defendants employed.

For example, there were 238 property damage incidents reported between May 30, 2020, and June 1, 2020, in the Downtown Denver Business Improvement District, which included but were not limited to acts of graffiti tags, vandalism, firebombing, broken windows, theft, and arson totaling over four million dollars in damage. In addition to destruction to public and private buildings, Denver Fire Department received over 200 calls relating to fires during the protests and

9

approximately 76 DPD cruisers were vandalized, totaling $48,620.48 in damages. Lastly, over 80 DPD officers were injured. The majority of these injuries were caused by projectiles deployed by people within the crowds.

As stated in Plaintiffs' Motion, property destruction and officer injuries has been a basis for Denver Defendants' defense since the inception of the case.  For Plaintiffs to now claim they are unfairly surprised is contrary to the information provided during discovery. Therefore, testimony about damage to public and private property, and injuries to and attacks on officers, is specifically relevant to contextualize the need for the curfew order, the need for the police response, and the need for specific police responses. The often chaotic and riotous nature of the protests is further relevant to the question of punitive damages.

It would be both fundamentally unfair and inappropriate for this Court to allow the Plaintiffs to present a sanitized and inaccurate portrayal of what was really going on during the days of the protests.  Instead, the totality of the circumstances must be allowed to be presented so the jury will understand and appreciate the actual context for the Defendants' challenged actions.

## RESPONSE TO SUPPLEMENT TO MOTION *IN LIMINE* NO. 4

Plaintiffs' supplement to fourth motion *in limine* requests the Court bar the use of the following Aurora Defendants witnesses:  Darin Parker, James Twombly, Chris Poppe, Tim Railsback, Lance Dyer, Christopher Schipke, Daniel Child, Alex Eisamen, and Delbert Tisdale. Plaintiffs assert Defendants should be barred from using these witnesses because Aurora Defendants disclosed them after discovery had closed and Plaintiffs would be prejudiced by the testimony of these witnesses.

### A. Aurora Defendants' Disclosure was after Discovery Was Closed but the Aurora Defendants' were Operating on a Truncated Discovery Schedule.

Aurora Defendants acknowledge that its Fifth Supplemental Disclosure was filed after the

close of discovery. However, this factor alone should not be decisive on this issue. As the Court is aware, Aurora Defendants were brought into this matter well after discovery on the other defendants had been substantially engaged. As a result, the Aurora Defendants have been left to catch up. Despite this, Aurora Defendants have worked in good faith to produce materials, respond to written discovery requests and prepare and defend depositions, without the benefit of the longer discovery schedule enjoyed by the Plaintiffs and the other defendants.

Plaintiffs are not prejudiced by the disclosure of these individuals because their names are contained in the documents disclosed to Plaintiffs either through subpoena (before Aurora Defendants were parties) or discovery (after Aurora Defendants were parties). The two exceptions to this are Lieutenant Chris Poppe, who is the head of the Aurora Police Department's Force Review Board. While not named in the Force Review Board documents disclosed to the Plaintiffs, the Force Review Board documents have been the subject of extensive discovery, both written and through deposition. Thus, there is no surprise as to the topic of his testimony. The other exception to this is James Twombly, the Aurora City Manager, and he is well known to the Plaintiffs. He is named in combined Jury Instruction No. 22—Claims Against City Defendants—Ratification. [Combined Proposed Jury Instructions, page 55, Paragraph 2.] The combined jury instructions were just sent to the Court last Friday. Thus, there is neither surprise nor prejudice to Plaintiffs by James Twombly's name remaining on the Aurora Defendants' witness list. The same is true of all other Aurora Defendants' witnesses which Plaintiffs seek to bar from testifying in their supplement to motion *in limine* no. 4. To the extent that the Court determines that there might be some slight prejudice to the Plaintiffs, this can be mitigated by the Court allowing a limited number of depositions of these individuals in the month remaining before trial. Aurora Defendants request that the Court deny Plaintiffs' supplement to motion *in limine* no. 4.

WHEREFORE, for the foregoing reasons, the Defendants jointly request that the Court deny Plaintiffs' Motions *in Limine*.

Dated this 31st day of January, 2022.

JEFFERSON COUNTY ATTORNEY'S OFFICE

*/s/ Eric Butler*
Eric Butler, Deputy County Attorney
100 Jefferson County Parkway, Suite 5500
Golden, Colorado 80419
T: 303.271.8932
E: ebutler@jefsfco.us
*Attorneys for Timothy Dreith and Anthony Hamilton*

DENVER CITY ATTORNEY'S OFFICE

*/s/ Lindsay M. Jordan*
Hollie R. Birkholz
Robert Huss
Lindsay M. Jordan
Assistant City Attorneys
Civil Litigation Section
201 West Colfax Avenue, Dept. 1108
Denver, Colorado 80202
T: 720.913.3100
E: hollie.birkholz@denvergov.org
E: robert.huss@denvergov.org
E: lindsay.jordan@denvergov.org

AURORA CITY ATTORNEY'S OFFICE

*/s/ Peter Ruben Morales*
Isabelle Evans
Peter Ruben Morales
15151 East Alameda Parkway, 5th Floor
Aurora, Colorado 80012
T: 303.739.7096
E: ievans@auroragov.org
E: pmorales@auroragov.org
*Attorneys for the City of Aurora and Aurora Police Department Officer Cory Budaj*

HALL & EVANS

*/s/ Andrew D. Ringel*
Andrew D. Ringel
Hall & Evans, LLC
1001 Seventeenth Street, Suite 300
Denver, Colorado 80202
T: 303.628.3453
E: ringela@hallevans.com
*Attorneys for the City and County of Denver and the Individually Named Denver Police Department Officers*

*s/ David M. Goddard*
David M. Goddard
Michael T. Lowe
Bruno, Colin & Lowe, P.C.
1999 Broadway, Suite 4300
Denver, CO 80202
Telephone: (303) 831-1099
dgoddard@brunolawyers.com;
mlowe@brunolawyers.com
*Counsel for Defendants Budaj, McNamee, Serrant, and Brukbacher, in their individual capacities*

# CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2022 the foregoing **DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' MOTIONS IN LIMINE** was filed with the Clerk of the Court using the CM/ECF system, which will send notification to the following:

Arnold & Porter Kaye Scholer LLP
Colin Michael O'Brien
Edward Packard Aro
Matthew J. Douglas
Timothy R. Macdonald
Patrick Reidy
Leslie Bailey
Andreas Moffett
Mindy Gorin
colin.obrien@arnoldporter.com
ed.aro@arnoldporter.com
matthew.douglas@arnoldporter.com
timothy.macdonald@arnoldporter.com
patrick.reidy@arnoldporter.com
leslie.bailey@arnoldporter.com
andreas.moffett@arnoldporter.com
mindy.gorin@arnoldporter.com

ACLU of Colorado
Arielle Kay Herzberg
Mark Silverstein
Sara R. Neel
aherzberg@aclu-co.org
msilverstein@aclu-co.org
sneel@aclu-co.org

Elizabeth Wang
Makeba Rutahindurwa
Loevy & Loevy
elizabethw@loevy.com
makeba@loevy.com
*Counsel for Plaintiffs*

Office of the Aurora City Attorney
Isabelle Sabra Evans
Peter Ruben Morales
ievans@auroragov.org
pmorales@auroragov.org
*Counsel for Defendant City of Aurora and*
*Aurora Officers Brukbacher, Budaj, McNamee and Serrant in their official capacities*

Bruno, Colin & Lowe, P.C.
David M. Goddard
Michael T. Lowe
Heather D. Kuhlman
dgoddard@brunolawyers.com
mlowe@brunolawyers.com
hkuhlman@brunolayers.com
*Counsel for Defendants Brukbacher, Budaj, McNamee and Serrant in their individual capacities*

Jefferson County Attorney's Office
Eric Butler
ebutler@jeffco.us
*Counsel for Defendants Timothy Dreith and Anthony Hamilton*

Andrew D. Ringel
Katherine Hoffman
Hall and Evans
ringela@hallevans.com
hoffmank@hallevans.com
*Counsel for Defendants City and County of Denver and the individually named Denver Police Officers*


                                                                 *s/ Sarah Peasley*
                                                                  Denver City Attorney's Office