

# EXHIBIT A

**CIVIL ACTION NO. 1:20-CV-01878-RBJ**

**ELISABETH EPPS, ET AL.**

**V.**

**CITY AND COUNTY OF DENVER, ET AL.**

**DEPONENT:**

**MARC SEARS**

**DATE:**

**January 25, 2022**



```
 1              IN THE UNITED STATES DISTRICT COURT
 2                FOR THE DISTRICT OF COLORADO
 3              CIVIL ACTION NO. 1:20-CV-01878-RBJ
 4           (CONSOLIDATED WITH 1:20-CV-01922-RBJ-MEH)
 5
 6
 7                    ELISABETH EPPS, ET AL.,
 8                           Plaintiffs
 9
10                              V.
11
12              CITY AND COUNTY OF DENVER, ET AL.,
13                           Defendants
14
15
16
17
18
19
20
21
22
23   DEPONENT:  MARC SEARS
24   DATE:      JANUARY 25, 2022
25   REPORTER:  LINDSEY N. JOHNSON
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

### Page 2

```
 1                    APPEARANCES
 2
 3  ON BEHALF OF THE FITOURI PLAINTIFFS:
 4  Elizabeth Wang, Esquire
 5  Loevy & Loevy
 6  2060 Broadway
 7  Suite 460
 8  Boulder, Colorado 80302
 9  Telephone No.: (720) 328-5642
10  E-mail: elizabethw@loevy.com
11  (Appeared Via Videoconference)
12
13  ON BEHALF OF THE EPPS PLAINTIFFS:
14  Michael J. Sebba, Esquire
15  Arnold & Porter Kaye Scholer, LLP
16  250 West 55th Street
17  New York, New York 10019
18  Telephone No.: (212) 836-7529
19  E-mail: michael.sebba@arnoldporter.com
20  (Appeared Via Videoconference)
21
22
23
24
25
```

### Page 3

```
 1               APPEARANCES (CONTINUED)
 2
 3  Andreas E. Moffett, Esquire
 4  Arnold & Porter Kaye Scholer, LLP
 5  601 Massachusetts Ave, NW
 6  Washington, D.C. 20001
 7  Telephone No.: 202-942-5934
 8  E-mail: andreas.moffett@arnoldporter.com
 9  (Appeared Via Videoconference)
10
11  ON BEHALF OF THE JEFFERSON COUNTY DEFENDANTS:
12  Parker Smith, Esquire
13  Jefferson County Attorney's Office
14  100 Jefferson County Parkway
15  Suite 5500
16  Golden, Colorado 80401
17  Telephone No.: (303) 271-8900
18  E-mail: psmith@jeffco.us
19  (Appeared Via Videoconference)
20
21
22
23
24
25
```

### Page 4

```
 1               APPEARANCES (CONTINUED)
 2
 3  ON BEHALF OF THE CITY OF AURORA DEFENDANTS:
 4  Peter R. Morales, Esquire
 5  City of Aurora City Attorney
 6  15151 East Alameda Parkway
 7  Aurora, Colorado 80012
 8  Telephone No.: (303) 341-8700
 9  E-mail: pmorales@auroragov.org
10  (Appeared Via Videoconference)
11
12  ON BEHALF OF THE CITY AND COUNTY OF DENVER DEFENDANTS:
13  Katherine Hoffman, Esquire
14  Denver City and County Attorney's Office
15  201 West Colfax Avenue
16  Denver, Colorado 80202
17  Telephone No.: (720) 913-8072
18  E-mail: hoffmank@hallevans.com
19  (Appeared Via Videoconference)
20
21
22
23
24
25
```

### Page 5

```
 1               APPEARANCES (CONTINUED)
 2
 3  ON BEHALF OF THE DEPONENT:
 4  Michael Lowe, Esquire
 5  David Goddard, Esquire
 6  Heather Kuhlman, Esquire
 7  Bruno, Colin & Lowe, P.C.
 8  1999 Broadway
 9  Suite 4300
10  Denver, Colorado 80202
11  Telephone No.: (303) 831-1099
12  E-mail: mlowe@brunolawyers.com
13         dgoddard@brunolawyers.com
14         hkuhlman@brunolawyers.com
15  (Appeared Via Videoconference)
16
17  Also present: Sydney Little, Videographer
18
19
20
21
22
23
24
25
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 6

1                    INDEX
2                                              Page
3  PROCEEDINGS                                    8
4  DIRECT EXAMINATION. BY MR. SEBBA              10
5  EXAMINATION BY MS. WANG                       17
6  EXAMINATION BY MR. SEBBA                      41
7  EXAMINATION BY MR. LOWE                       43

Page 7

1                  STIPULATION
2
3   The video deposition of MARC SPEARS was taken at
4   the office of Pike Reporting Company located at 600
5   Seventeenth Street, Suite 2800, Denver, Colorado 80202,
6   via videoconference in which all participants attended
7   remotely, on Tuesday the 25th day of January 2022 at
8   1:33 p.m. MST; said deposition was taken pursuant to the
9   Federal Rules of Civil Procedure.  The oath in this
10  matter was sworn remotely pursuant to FRCP 30.
11
12  It is agreed that Lindsey N. Johnson, being a Notary
13  Public and Court Reporter for the State of Colorado, may
14  swear the witness.

Page 8

                    PROCEEDINGS

3       VIDEOGRAPHER:  My name is Sydney Little.
4       I'm the online video technician, and Lindsey
5   Johnson is the court reporter today representing
6   Kentuckiana Court Reporters located at Kentuckiana
7   Court Reporters, 730 West Main Street, Suite 101,
8   Louisville, Kentucky 40202.  Today is the 25th day
9   of January 2022.  The time of day is 9:01 a.m.
10  We're convened by videoconference to take the
11  deposition of Marc Sears in the matter of Elisabeth
12  Epps, et al., versus City and County of Denver,
13  pending in the United States District of Denver
14  County Colorado, Civil Action number
15  1-120-CV-01878-RBJ, consolidated with
16  120-CV-01922-RBJ-MEH.
17      Will everyone but the witness please state your
18  appearance, how you are attending, and the location
19  you are attending from, starting with plaintiff's
20  counsel?
21      MR. SEBBA:  Sure.  This is Michael Sebba from
22  Arnold & Porter on behalf of the Epps plaintiffs.
23  I'm in California attending the deposition via Zoom.
24  I'm also joined from my firm by Andreas Moffett.
25      MS. WANG:  Elizabeth Wang for the Fitouri

Page 9

1   plaintiffs, joining via video from Boulder,
2   Colorado.
3       MR. MORALES:  Peter Morales from the City
4   Attorney's Office in Colorado, and I am in the City
5   Attorney's Office in Aurora.
6       MR. LOWE:  Michael Lowe on behalf of the
7   individually named Aurora defendants.  I'm appearing
8   from Englewood, Colorado.
9       MR. GODDARD:  David Goddard on behalf of the
10  individual Aurora defendants, appearing remotely
11  from Arvada, Colorado.
12      MS. HOFFMAN:  Katherine Hoffman for the
13  defendants, appearing remotely from Castle Rock,
14  Colorado.
15      MR. SMITH:  Parker Smith on behalf of the
16  Jefferson County defendants, appearing from Denver,
17  Colorado.
18      VIDEOGRAPHER:  All right.  Is that everyone?
19  And, Mr. Sears, I forgot to ask.  Do you have a form
20  of ID on you like a license or anything?  Great.
21  Thank you.
22      THE WITNESS:  Do you just need it up to the
23  camera?
24      VIDEOGRAPHER:  Yeah.  Will you please state
25  your name from the record and hold that ID up to the

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 10

1  camera?
2      THE WITNESS:  Marc Sears.
3      VIDEOGRAPHER:  Excellent.  Does everyone
4  agree that the witness is, in fact, Marc Sears?
5      MS. WANG:  Yes.
6      MR. SEBBA:  Yes.
7      MR. LOWE:  Yes.
8      MR. PARKER:  Yes.
9      MS. HOFFMAN:  Yes.
10     VIDEOGRAPHER:  Mr. Sears, will you please raise
11 your right hand for the court reporter to swear you
12 in?
13     COURT REPORTER:  Do you swear or affirm that
14 the testimony you are about to give will be the
15 truth, the whole truth, and nothing but the truth?
16     THE WITNESS:  I do.
17     COURT REPORTER:  Thank you.
18     MR. SEBBA:  Can I begin?
19     COURT REPORTER:  Yes.
20 DIRECT EXAMINATION.
21 BY MR. SEBBA:
22   Q.  All right.  Mr. Sears, good morning.
23   A.  Good morning.
24   Q.  Excuse me.  Sergeant Sears.  My name is Mike
25 Sebba.  I'm one of the attorneys representing the Epps

Page 11

1  plaintiffs, so I'm just going to -- I just wanted to
2  introduce myself, and we're going to go through a few
3  questions, but before we do that, I just want to
4  discuss depositions first.  Have you ever been deposed
5  before?
6    A.  I have.
7    Q.  Approximately how many times?
8    A.  One other time.
9    Q.  One other time.  Okay.  Just so you know, as
10 you know, you just took an oath, so you're under oath,
11 so you're -- everything's -- you have to answer every
12 question honestly.  With that said, if you need a break
13 at any point, please just let us know.  I only ask that
14 if you do want to take a break, please -- if there's a
15 question pending, please answer that before we go on
16 break, and, yeah, I think that's about it.  So what I
17 would like to start with is:  Can you please tell us
18 your -- where do you work right now?
19   A.  I work for the Aurora Police Department,
20 Aurora, Colorado.
21   Q.  Okay.  Great.  And do you -- what's your
22 position there?
23   A.  I'm a sergeant for the police area
24 representative team.
25   Q.  Okay.  And how long have you had that

Page 12

1  position?
2    A.  I just received this position, I think two
3  weeks ago.
4    Q.  Congratulations.
5    A.  Thank you.
6    Q.  What was your position prior to that?
7    A.  Prior to that, I was a Patrol Sergeant Team
8  21, which is a day shift team here.  I was there from
9  April till current time now, and before that, I was part
10 of the neighborhood police unit on Mountain Bike
11 Patrol.
12   Q.  How long were you in that position?
13   A.  Three years, I think it was.  Two-and-a-half
14 years or three years.
15   Q.  Okay.  Was that your first position with the
16 Aurora PD?
17   A.  No.  I was -- I got promoted just before that,
18 and I was on the road as patrol sergeant for about nine
19 months.  Previous to that, I was -- I was a patrolman.
20 I was a -- also an academy instructor.  I was also the
21 instructor -- the department's instructor for crowd
22 management and crowd control, and I was also a field
23 training officer, as well.
24   Q.  Okay.  And so when did you start working at
25 the Aurora PD?

Page 13

1    A.  June of 2004.
2    Q.  Okay.  And prior to that, did you have any
3  jobs in law enforcement?
4    A.  I did.  I was an officer with the City of
5  Englewood in Colorado from 1998 until 2004 when I came
6  Here.  And prior to that, I was a security police
7  officer in the United States Air Force from 1991 until
8  1998.
9    Q.  Thank you.  And was that your first position
10 in law enforcement?
11   A.  In the military?
12   Q.  Yeah.
13   A.  Yes.
14   Q.  Okay.  Great.  And what is your understanding
15 of the role you're playing on behalf of Aurora -- the
16 Aurora Police Department in this -- in the present
17 litigation?
18   A.  I'm being utilized as an expert witness in the
19 tactics of deployments for crowd management, crowd
20 control during the civil unrest in Denver last year.
21   Q.  Okay.  Were you -- did you attend the protests
22 in Denver in May and June of 2020?
23   A.  I did not.
24   Q.  Okay.  And actually, I'm sorry.  It's
25 January, so let's just be clear.  You said last year,



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 14

1  but we're discussing the protests that occurred in late
2  May and early June of 2020?
3      A.   Yes, sir.
4      Q.   Okay.  And you were not there?
5      A.   That's correct.
6      Q.   Okay.  Okay.  Great.  And you have a report
7  that was issued in this litigation, correct?
8      A.   I have a report?
9      Q.   There's a disclosure, I should say.  There's a
10 disclosure of your opinions, correct?
11     A.   Yes.
12     Q.   And you've reviewed that disclosure?
13     A.   Yes.
14     Q.   Okay.  And do you agree with everything that
15 is written on your behalf in that disclosure?
16     A.   Yes.
17     Q.   Okay.  That disclosure lists a series of
18 documents and videos you reviewed in support of your
19 opinions, correct?
20     A.   That's correct.
21     Q.   Here, let me -- I'm going to pull up your
22 report, just so we can be looking at the same thing.
23 Give me one moment.  All right.  Do you see this?
24     A.   I do.
25     Q.   Okay.  I'm going to go back to the front page.

Page 15

1  So for the record, this is a document entitled "Aurora
2  Defendants Federal Civil Procedure 26A2C Expert
3  Disclosure."  Is that what you see, Sergeant Sears?
4      A.   Yes.
5      Q.   Great.  And this is a document that we were
6  discussing that's your disclosure that lists your
7  opinions in this case, correct?
8      A.   Correct.
9      Q.   Okay.  And on this document here on page 2,
10 there's a list of things you have -- of documents and
11 videos you've reviewed in support of creating your
12 opinion, correct?
13     A.   Correct.
14     Q.   This list is everything you reviewed in
15 support of developing your opinion?
16     A.   Yes.
17     Q.   Okay.  So if there's a video that's not listed
18 on this report, you did not review it; is that correct?
19     A.   That's correct.
20     Q.   Okay.  I'm going to pull this down.  Are you
21 familiar with the incident involving a plaintiff named
22 Zach Packard?
23     A.   I'm not.
24     Q.   Okay.  So you don't -- so you haven't offered
25 any opinions specific to the incident involving Zach

Page 16

1  Packard; is that correct?
2      A.   I have not.
3      Q.   Okay.  And are you familiar with an incident
4  involving a plaintiff, Stanford Smith?
5      A.   I don't remember all of the names.  I remember
6  -- everything that was on that list that you just showed
7  me is everything that I reviewed.
8      Q.   Okay.  And so if I represent to you that
9  there's no video or photo -- withdrawn.  If I represent
10 to you that there's no video of the incident involving
11 Stanford Smith in that list that you provided, that
12 would mean that you have not reviewed any video of the
13 incident involving Stanford Smith, correct?
14     A.   Correct.
15     Q.   And in that case, does mean that you would not
16 have offered any opinions specific to the event
17 involving Stanford Smith?
18     A.   Correct.
19     Q.   Okay.  And so -- I'm sorry.  Excuse me one
20 moment.
21          MS. WANG:  Can we take a two-minute break?
22          MR. SEBBA:  Yeah.  I'm sorry, can we take a
23     two-minute break.
24          VIDEOGRAPHER:  Of course.  We are off the
25     record at 9:11 a.m.

Page 17

1          (OFF THE RECORD)
2          VIDEOGRAPHER:  We are back on the record for
3     the deposition of Sergeant Marc Sears being
4     conducted by videoconference.  I name is Sydney
5     Little.  Today is the January 25, 2022.  The current
6     time is 9:15 a.m.
7          MR. SEBBA:  So Sergeant Sears, thank you for
8     those answers.  I actually have no more questions at
9     this time, so I'm going to hand off to my colleague,
10    Liz Wang.  Thank you for your time, though,
11    I appreciate it.
12         THE WITNESS:  Thank you, sir.
13 EXAMINATION
14 BY MS. WANG:
15     Q.   Sergeant Sears, are you familiar with an
16 incident involving a journalist named Jonathen Duran?
17     A.   Not the journalist, no.  I don't know if I'm
18 familiar with specific people.  Like I said, my role was
19 to be an expert witness in the tactics and deployment
20 that they used for crowd management crowd control, so I
21 know the -- I know the people that were on the list of
22 my disclosures.
23     Q.   Well, let me show you your disclosure.  Let me
24 go back up to the top.  This is you, right,
25 Sergeant Marc Sears?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Page 18
1    A.   Correct.
2    Q.   Okay.  And then there's a list of the
3  materials you reviewed, right?
4    A.   Correct.
5    Q.   Okay.  And this is the list of your opinions,
6  correct?
7    A.   Correct.
8    Q.   A, B, C, D, E -- and F is just stating that
9  your resume and certificates are attached, right?
10   A.   Correct, correct.
11   Q.   So A through E are the opinions that you
12  intend to give in this case, correct?
13   A.   Correct.
14   Q.   You don't have any reference to any of the
15  plaintiffs in this case in Opinions A through E, right?
16   A.   Stop scrolling for a second.  What was your
17  question, ma'am?  I'm sorry.
18   Q.   Let's go through one by one.  Okay.  Opinion A
19  is an opinion about the courses that are taught at the
20  Aurora Police Training Academy, right?
21   A.   Yes.
22   Q.   In summary --
23   A.   In summary, correct.
24   Q.   I'm not going to read it, but that's what it
25  is?

Page 19
1    A.   Correct.
2    Q.   You say nothing about any plaintiff in this
3  case in Opinion A, correct?
4    A.   Correct.
5    Q.   Opinion B is an opinion generally about
6  trainings and whether or not they're best practices,
7  Aurora trainings, right?
8    A.   That's correct.
9    Q.   You don't say anything about any of the
10  plaintiffs in this case, correct?
11   A.   Correct.
12   Q.   In Opinion B, right?
13   A.   Correct.
14   Q.   Opinion C, you state, "Conduct by the crowds
15  at the Denver protests created an officer safety
16  concern", right?
17   A.   That's correct.
18   Q.   Okay.  That's what you intend to tell the jury
19  at this trial, right?
20   A.   Correct.
21   Q.   You don't say anything about any of the
22  plaintiffs in this case, correct?
23   A.   In C, correct.
24   Q.   Right.  Opinion D, "Officers at the protest
25  had a legal justification to utilize crowd control and

Page 20
1  crowd management techniques consistent with their
2  training."  That's your opinion, right?
3    A.   Yes.
4    Q.   You don't say anything about any of the
5  plaintiffs in this case, right?
6    A.   Indeed, correct.
7    Q.   In Opinion E -- Opinions E and F were just
8  about that you'll testify consistent with the summary
9  and any deposition testimony you may provide, and here's
10  your resume, right?
11   A.   That's correct.
12   Q.   Okay.  You don't have any opinion in here
13  about plaintiff Jonathen Duran; right?
14   A.   Correct.
15   Q.   You have no opinion in here about the events
16  that Jonathen Duran experienced on May 31, 2020, right?
17   A.   No.
18   Q.   That's not correct?
19   A.   Say that again.
20   Q.   You do not -- there is nothing in this
21  disclosure about any of the events that Jonathen Duran
22  experienced on May 31, 2020, right?
23   A.   Nothing specifically to him, correct.
24   Q.   Let's go back up -- and what do you mean,
25  "nothing specifically to him"?  You have no specific

Page 21
1  opinions relating to Jonathen Duran or any of the
2  circumstances under which he was shot, right?
3    A.   In this -- in the -- in this disclosure is
4  what you're saying?
5    Q.   Well, this disclosure encapsulates your
6  opinions, correct?
7    A.   In a general sense, yes.
8    Q.   Do you intend to give opinions that are not in
9  this disclosure; yes or no?
10   A.   I will elaborate on them.
11   Q.   No.  You are not allowed to elaborate on them.
12  My question is:  You do not -- we -- we have established
13  you've said under oath that you do not have any opinions
14  relating to Plaintiff Jonathen Duran; correct?
15   A.   Correct.
16   Q.   Okay --
17        MR. LOWE:  Object to form.
18   Q.   -- this signed disclosure, correct?
19   A.   I'm sorry --
20        COURT REPORTER:  I'm sorry.  Who objected?
21        MR. LOWE:  Michael Lowe.
22        COURT REPORTER:  Thank you.
23  BY MS. WANG:
24   Q.   You do not have any opinions relating to
25  Jonathen Duran in this disclosure, correct?



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 22

1     MR. LOWE: Same objection.
2     A.   Correct.
3     Q.   You don't even know who Jonathen Duran is,
4  right?
5     A.   That's correct.
6     Q.   Either by name or by any videos or photos;
7  right?
8     A.   By name, we just discussed that.
9     Q.   Are you familiar with an incident involving a
10 plaintiff in this case where he was shot in the groin
11 with a rubber bullet?
12    A.   Yes.
13    Q.   What is -- what is that person alleging?
14    A.   The disclosure that I have has that subject's
15 name on there, and I reviewed those videos.
16    Q.   That subject's name does not appear any of
17 your Opinions A through F, correct?
18    A.   Correct.
19    Q.   So when you say that it has that subject's
20 name, you are referring to these videos, Fitouri 228 and
21 Fitouri 229, correct?
22    A.   Yes, ma'am.
23    Q.   You reviewed those two videos, right?
24    A.   Yes, ma'am.
25    Q.   You don't have any opinions regarding those

Page 23

1  videos in this disclosure, though, right?
2     A.   No, I don't agree with that.
3     Q.   Tell me -- why don't you tell me, just look at
4  Opinions A through F and tell me where Jonathen
5  Duran's name appears?
6     A.   His name does not.
7     Q.   Even by description, he doesn't appear, the
8  description of his event, right?
9     A.   Correct.
10    Q.   Okay. Would you agree that when an officer
11 determines whether or not to use force, that officer
12 must determine whether the person that officer is using
13 force on has committed an act that warrants the use of
14 that force, right?
15        MR. LOWE: Object to the form. Foundation.
16    A.   Can you -- can you repeat that again.
17    Q.   You've had training on the use of force;
18 right?
19    A.   Yes, ma'am.
20    Q.   You've had training on use of 40-millimeter
21 launchers, right?
22    A.   Yes, ma'am.
23    Q.   You can't shoot a 40-millimeter launcher at
24 somebody unless that person has committed an act that
25 warrants the use of the 40-millimeter launcher on him;

Page 24

1  right?
2         MR. LOWE: Object to the form.
3     A.   That's not correct.
4     Q.   Okay. So if -- so why don't you tell me what
5  your training at the Aurora Police Department has taught
6  you about circumstances under which officers may use
7  40-millimeter launchers?
8     A.   If that -- if there is a subject that is --
9  that is displaying behavior that we know is potentially
10 going to hurt us, then we can take action on that, that
11 is reasonable and appropriate.
12    Q.   Okay. So if the use of force on a subject has
13 to be justified with reference to what that subject is
14 doing or what you think that subject is about to do?
15    A.   That's correct, ma'am.
16    Q.   It's not about what people around that subject
17 is doing, right?
18    A.   Well, that can play a role.
19    Q.   Okay. So are you telling me that your
20 training at the Aurora Police Department has led you to
21 believe that you can shoot a 40-millimeter launcher at a
22 person if that person is not doing anything that
23 threatens an officer or anybody's safety as long as
24 there's somebody else in the vicinity that's doing
25 something that they shouldn't be doing?

Page 25

1     A.   That's not what I'm saying.
2         MR. LOWE: Object to the form.
3     Q.   Okay. So why don't you tell me what you are
4  saying?
5     A.   I'm saying specifically that if you have -- I
6  could use an example if that help you. So if you have
7  individuals that are conspiring with one another in
8  order to -- let's say, maybe they're lighting up --
9  they're lighting fireworks or they're creating some kind
10 of apparatus that may present a danger to us, then we
11 can engage them. If they're trying to pick up -- pick
12 up smoke cannisters, gas cannisters, other cannisters,
13 anything that is an object rocks or things like that,
14 they're picking them up, and they're potentially getting
15 ready to throw them, then we absolutely can take action.
16    Q.   Well, of course. But you're talking about
17 somebody -- a group of people who engaged in action such
18 as lighting fireworks and throwing rocks, right?
19    A.   Uh-huh.
20    Q.   Okay. Was that a yes? Is that a yes?
21    A.   I didn't say yes. I'm telling you that it's -
22 - if they're picking up rocks and they're getting ready
23 to start throwing them, then yes, we can.
24        MR. LOWE: Object to the form. And I would ask
25    Ms. Wang to let Mr. Sears answer the question fully

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 26

1    before she asks her next question.
2  BY MS. WANG:
3      Q.   Can you please keep in mind to answer yes or
4  no as opposed to uh-huh or uh-uh so that the record is
5  clear?  Is that fair?
6      A.   Yes.
7      Q.   Okay.  Great.  Now, is there anything in the
8  materials that you reviewed that indicated that
9  Plaintiff Jonathen Duran was about to throw a rock?
10     A.   No.
11     Q.   Is there anything in the materials you
12 reviewed that indicates that Jonathen Duran was about to
13 light a firework?
14     A.   No.
15     Q.   Was there anything in the materials that you
16 reviewed that indicated Jonathen Duran was about to
17 throw any object whatsoever?
18     A.   No.
19     Q.   What was Jonathen Duran doing in the video
20 that you reviewed?
21     A.   Videotaping.
22     Q.   Okay.
23     A.   One specific -- one specific video that I
24 reviewed, he was videotaping.
25     Q.   Anything else that you saw him doing?

Page 27

1      A.   No, ma'am.
2      Q.   That's protected by the First Amendment;
3  right?
4           MR. LOWE:  Object to form.
5      A.   Videotaping?
6      Q.   A journalist videotaping a protest is
7  protected by the First Amendment, correct?
8      A.   Yes.
9           MR. LOWE:  Same objection.
10     Q.   Okay.  Did you see Jonathen Duran doing
11 anything illegal in the video you reviewed?
12     A.   No.
13     Q.   Did you see him do anything that threatened
14 any officer's safety or the safety of anybody else?
15     A.   No.
16     Q.   Was there anything that Jonathen Duran was
17 doing in the video that you reviewed that indicated that
18 he deserved to be shot in the groin with a 40-millimeter
19 launcher?
20          MR. LOWE:  Object to form.
21     A.   That I could see?
22     Q.   Yeah.
23     A.   No.
24     Q.   Okay.  So from what you could tell from the
25 materials that you reviewed, Jonathen Duran did not

Page 28

1  deserve to be shot in the groin with a 40-millimeter
2  launcher?
3           MR. LOWE:  Object to the form.  Foundation.
4      A.   That I witnessed?  No.
5      Q.   Did you see any evidence, any deposition
6  testimony from an officer or anybody else that provided
7  any evidence that Jonathen Duran was doing anything that
8  warranted being shot in the groin with a 40-millimeter
9  launcher?
10     A.   I did not see anything.
11     Q.   You didn't review any deposition testimony in
12 this case, did you?
13     A.   I did.  There was the deposition -- I can't
14 remember the gentleman's name -- but there was a
15 deposition that was taken -- I think you had somebody
16 from the Jefferson County Sheriff's Office.  I reviewed
17 that deposition.
18     Q.   Okay.  So let's -- I'm putting on the screen
19 the list of materials that you reviewed.  This is the
20 bulleted list that's in your disclosure, correct?
21     A.   Correct.
22     Q.   It doesn't list any depositions, does it?
23     A.   It does not.
24     Q.   Did you receive materials after you made this
25 disclosure?

Page 29

1      A.   I can't remember when I actually received it.
2           ?
3      Q.   Well, was it -- this disclosure was provided
4  on December 17 -- so between December 17 and today, did
5  you receive any additional materials?
6      A.   I specifically remember seeing a -- it was
7  something from prior chief of police of Seattle,
8  Stamper, I think it was.  I remember that, but I
9  don't -- I don't remember when I received the deposition
10 from the deputy from Jefferson County.
11     Q.   Who provided you -- so you actually reviewed
12 Norm Stamper's report?
13     A.   I did.
14     Q.   Why is that not on your list?
15     A.   I don't know.
16     Q.   Is there anything else that you reviewed that
17 is not on this list?  I'll put this back up.
18     A.   Like I said, I reviewed the deposition from
19 the deputy from Jefferson County.
20     Q.   The deputy from Jefferson County, was he a
21 non-retained expert that you were reviewing?
22     A.   I thought he was an expert witness on the use
23 of munitions, maybe, if I remember correctly.  I just
24 reviewed it.  I didn't study it.
25     Q.   Okay.  Was the name of that person Joshua

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 30
1  Garcia?
2      A.   I believe it was.
3      Q.   Okay.  You did not review the deposition
4  transcript of Officer Cory Budaj, right?
5      A.   I did not.
6      Q.   You did not review the deposition transcript
7  of plaintiff Jonathen Duran, right?
8      A.   I did not.
9      Q.   You did not review any other deposition
10 transcripts other than the one for Joshua Garcia; right?
11     A.   That's correct.
12     Q.   Let me make sure I'm clear.  Based on the
13 materials that you reviewed, was there anything that
14 Jonathen Duran was doing that warranted being shot in
15 the groin with a 40-millimeter launcher?
16     A.   That I saw, no, not that I saw.
17     Q.   So there's -- and you've seen no evidence of
18 anything that anybody else saw, what any officer did or
19 saw regard -- that would justify the use of force on
20 Jonathen Duran, right?
21          MR. LOWE:  Object to the form.
22     A.   I don't know.  I can't -- I can't speak on
23 behalf of the other officers and what they saw.
24     Q.   I know.  But you didn't see any deposition
25 transcripts where some officer gave some explanation of

Page 31
1  what Jonathen Duran was doing that might warrant the
2  use of force, right?
3      A.   That's correct.
4      Q.   You saw no explanation from any officer from
5  Aurora or anywhere else for the shooting of Jonathen
6  Duran, correct?
7      A.   Correct.
8      Q.   Let's -- let's take a look at the materials on
9  this list.  Okay.  So the -- let's discuss these videos
10 that we've got up here.  Bubna COABLM373 to
11 COABLM378.  Did you watch those videos?
12     A.   I reviewed them.
13     Q.   Okay.  How did those videos inform your
14 opinions, if at all?
15     A.   How did -- how did they form my opinions?
16     Q.   Well, what day was the incident -- these
17 videos that are listed here from Bubna, they're from his
18 body-worn camera, correct?
19     A.   Correct.
20     Q.   What day does that incident pertain to, those
21 videos?
22     A.   I don't recall the exact day.
23     Q.   Okay.  Did you see anything in those videos
24 that justified the shooting of Jonathen Duran?
25     A.   No.

Page 32
1      Q.   Okay.  This video here, Denver 10190, HALO
2  camera of Broadway and Colfax, what day does that video
3  pertain to?
4      A.   Ma'am, I don't -- I don't recall the exact
5  days on any of those videos.
6      Q.   Does this video listed here, Denver10190, have
7  anything to do with the shooting of Jonathen Duran on
8  May 31?
9      A.   I can't recall that.
10     Q.   Denver 101092, HALO camera at Colfax and
11 Washington, do you remember what day that video refers
12 to?
13     A.   Again, ma'am, I don't recall any of the exact
14 days or times that those that are listed there pertain
15 to.
16     Q.   Does this -- does this video, Denver10192,
17 pertain at all to the incident involving Jonathen Duran
18 on May 31?
19     A.   Not that I'm aware of.
20     Q.   The video Denver 101093, the HALO camera at
21 Colfax and Broadway, what video does that pertain to?
22     A.   Again, ma'am, I don't know the exact dates or
23 times on any of the things listed here.
24     Q.   You could just answer the question.  I'm going
25 to ask you --

Page 33
1      A.   I am.
2      Q.   -- okay?  Does that video, Denver 101193,
3  pertain at all to the incident involving Jonathen Duran
4  on May 31?
5          MR. LOWE:  Object to the form.
6      A.   I don't -- I don't know.
7      Q.   Okay.  Denver 10194, Colfax Broadway HALO,
8  what day does that video pertain to?
9      A.   I don't recall.
10     Q.   Does that video pertain to the incident
11 involving Jonathen Duran being shot in the groin on
12 May 31?
13     A.   I do not know.
14     Q.   Denver 11031, HALO camera for 5-29-2020, does
15 that video pertain to Jonathen Duran being shot in the
16 groin on May 31?
17     A.   I do not recall.
18     Q.   If it says May 29, 2020, then that video
19 pertains to May 29, right?
20     A.   I would assume so.
21     Q.   Is Jonathen Duran making any allegations
22 against Aurora for May 29?
23     A.   I don't know.
24     Q.   Do you know if any of the plaintiffs in this
25 allegation are making allegations against Aurora for

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 34

1   May 29?
2        A.   I don't know.
3        Q.   Denver 4400, another HALO camera for Colfax
4   and Washington, do you know what date that pertains to?
5        A.   I do not.
6        Q.   You don't know if that pertains to the date on
7   which Jonathen Duran was shot, right?
8        A.   I do not.
9        Q.   Does that HALO camera even depict the
10  circumstances under which Jonathen Duran was shot?
11       A.   Say that again, ma'am.
12       Q.   Does Denver 4400, the HALO camera at Colfax
13  and Washington for that date, pertain to the
14  circumstances under which Jonathen Duran was shot on
15  May 31?
16       A.   I don't know.
17       Q.   Denver 8073, HALO camera for May 31, 2020.
18  Do you even know what intersection that HALO camera was
19  for?
20       A.   I would have to refer to my notes.  I don't --
21  I don't have them in front of me, but I don't know
22  offhand looking that title.
23       Q.   Does that video pertain at all to the incident
24  during which Jonathen Duran was shot?
25       A.   I don't know.

Page 35

1        Q.   Denver 15625, HALO camera at Colfax and
2   Broadway.  Does that pertain to the incident under which
3   Jonathen Duran was shot?
4        A.   I don't recall right now.  I'm sorry.
5        Q.   Do you know what day that video pertains to?
6        A.   Again, I would have to refer to my notes, but
7   I don't by looking at the list, ma'am.
8        Q.   When you watched the videos that Jonathen
9   Duran shot, Fitouri 228 and 229, would you agree that he
10  was shot with a 40-millimeter launcher?
11       A.   I don't know if he was actually shot.
12  I couldn't see an impact of that.
13       Q.   So he wasn't filming his groin at the time the
14  40-millimeter launcher shot him in the groin; right?
15       A.   Correct, correct.
16       Q.   Does that surprise that he wasn't focused on
17  his crotch at the time?
18            MR. LOWE:  Object to the form.
19       A.   No.
20       Q.   Okay.  He was backing up from the
21  intersection; right, at the moment he was shot?
22       A.   I don't recall that he was backing up.
23  There was forward and backwards consistently, so I don't
24  know the time he was shot.  We would have to review
25  that.

Page 36

1        Q.   Regardless, you would agree that at the time
2   that he was shot, he was engaged in protected First
3   Amendment activity filming a protest as a journalist;
4   right?
5        A.   I can't say that, no.
6        Q.   So you understand that Jonathen Duran is a
7   journalist who had a press pass at the time, right?
8        A.   I do now.
9        Q.   Okay.  So let's assume that's that is true.
10  As a journalist with a press pass, he was not subject to
11  the curfew, correct?
12       A.   Correct.
13       Q.   Okay.  So he was allowed to be filming, which
14  is his job as a journalist, right?
15       A.   Correct.
16       Q.   He was not doing anything -- according to the
17  evidence, either the video or anything else that you
18  reviewed, he was not doing anything that warranted any
19  use of force on him, right?
20            MR. LOWE:  Object to the form.
21       A.   Correct.  From what I saw, correct.
22       Q.   If he's a journalist and he had a press pass
23  and he wasn't subject to the curfew, then his activity
24  of filming the protests and the police response to it,
25  on May 31, 2020, at the time that he was shot was

Page 37

1   protected First Amendment activity, right?
2             MR. LOWE:  Object to the form.  Foundation.
3        A.   Just filming?
4        Q.   Okay.  So have you received any training from
5   the Aurora Police Department about the First Amendment
6   rights of journalists?
7        A.   Yes.
8        Q.   Okay.  Have you received any training from the
9   Aurora Police Department on the First Amendment rights
10  of civilians to record police when they are out in
11  public performing their duties?
12       A.   Yes.
13       Q.   Okay.  So it is protected under the First
14  Amendment to record police when they're out in public;
15  right?
16       A.   Correct.
17       Q.   Okay.  As long as they're not doing anything
18  to interfere with the police, right?
19       A.   Correct.
20       Q.   You didn't see anything that Jonathen Duran
21  was doing in his videos or anywhere else where he was
22  interfering with the police, right?
23       A.   Correct.
24            MR. LOWE:  Object to the form.
25       Q.   And as a journalist, his activity in recording

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 38

1  the police and the protesters was protected; right?
2      A.   Yes.
3           MS. WANG:  Let's go off the record for a
4      moment.
5           VIDEOGRAPHER:  We're off the record.  The time
6      is 9:40 a.m.
7             (OFF THE RECORD)
8           VIDEOGRAPHER:  We are back on the record for
9      the deposition of Sergeant Marc Sears being video
10     conference.  My name is Sydney Little.  Today is
11     January 25, 2022, and the current time is 9:44 a.m.
12 BY MS. WANG:
13     Q.   Is it fair to say, Sergeant Sears, that your
14 opinions are based on the material that you reviewed?
15     A.   Yes.
16     Q.   How much time did you spend reviewing the
17 materials on the bulleted list, this list?
18     A.   I have no idea.  A considerable amount of
19 time.
20     Q.   Did you watch each one of these videos from
21 beginning to end?
22     A.   No, I did not.
23     Q.   Okay.  Were you directed to focus on specific
24 things in the videos --
25          MR. MORALES:  Excuse me.  Excuse me.  Is it

Page 39

1      your habit to start the depo without everyone being
2      present?
3           MS. WANG:  I'm sorry.  I thought --
4           MR. MORALES:  I was using the restroom.  You
5      could have asked me if I was present.  When you call
6      a break and you come back, make sure everybody is
7      present, please.  We all have rights here.
8           MS. WANG:  Are you done?
9           MR. MORALES:  Yeah.  I'm done, and I would like
10     you to repeat what you started, so I can hear it.
11          MS. WANG:  Okay.  You can read it back.
12          Where's the court reporter?
13          COURT REPORTER:  I'm -- yeah.  Give me a
14     second.  I'm going back up there.
15            (REPORTER PLAYS BACK REQUESTED TESTIMONY)
16 BY MS. WANG:
17     Q.   How much time did you spend meeting with the
18 attorneys from Aurora in preparation for this
19 deposition?
20     A.   I don't know specifically how much time it
21 was.  We met to prepare, but I don't know the specific
22 amount of time.
23     Q.   Can you give an estimate?
24     A.   Maybe a couple of hours, maybe an
25 hour-and-a-half, two hours.  That's a rough estimate.

Page 40

1      Q.   Who did you meet with?
2      A.   I met with Mr. Lowe and Mr. Morales.
3      Q.   How many meetings did you have?
4      A.   We had one meeting, which I believe was last
5 week.
6      Q.   The first item on the bulleted list in your
7 disclosure, "APD Incident Report Case Summary," this
8 document here.  What is that?
9      A.   It says, "The APD Incident Report Case
10 Summary Use of Force Tier 2.  Tier 2 on 2020.
11 Tier 2, reference number 0109."  And then if I'm saying
12 the name correctly, "Fitouri 18749224."
13     Q.   Do you recall that document?
14     A.   Not off the top of my head.
15     Q.   Do you recall what format it was in?
16     A.   I don't.
17     Q.   When did you last review it?
18     A.   Maybe -- I don't recall.
19     Q.   When you reviewed it, did you review any
20 videos in it or just the documents?
21     A.   I don't recall, ma'am.
22     Q.   Did you review that document, Fitouri 18874 to
23 19334, before December 17, 2021?
24     A.   I do not recall.
25          MS. WANG:  Let's go off the record.

Page 41

1           VIDEOGRAPHER:  We are off the record.
2           The current time is 9:50 a.m.
3             (OFF THE RECORD)
4           VIDEOGRAPHER:  We are back on the record for
5      the deposition of Sargent Mike -- Marc -- excuse me
6      -- Sears being conducted by video conference.
7      My name is Sydney Little.  Today is the January 25,
8      2022, and the current time is 9:51 a.m.
9           MS. WANG:  I have no further questions at this
10     time, but others may have follow-up.
11          MR. SEBBA:  I would like to follow up with just
12     a few more questions.  Hi, Sergeant Sears.  It's
13     Mike Sebba again.
14          THE WITNESS:  Hello, sir.
15                    EXAMINATION
16 BY MR. SEBBA:
17     Q.   I'm going to show you a page from your report
18 again.
19     A.   Sure.
20     Q.   Excuse me.  From your disclosure.  All right.
21 So I'm sharing my screen.  You should be seeing page 2
22 of your disclosure.  Is that -- can you see that right
23 now?
24     A.   Yes, sir.
25     Q.   All right.  And as we mentioned earlier, this



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 42

1  is a list of the documents you reviewed in support of
2  creating your opinions in this case, correct?
3       A.   Correct.
4       Q.   And you also mentioned that you reviewed the
5  report of Norm Stamper, correct?
6       A.   That's correct.
7       Q.   And you also reviewed one other deposition
8  transcript, correct?
9       A.   Correct.
10      Q.   Okay.  And those -- and so to the extent you
11 have -- this disclosure includes your opinions on this
12 case, correct?
13      A.   Correct.
14      Q.   And those opinions are based on the materials
15 you've reviewed, correct?
16      A.   The opinions are based on the -- reviewing
17 this and from my training and experience.
18      Q.   Okay.  And understood.  But you do not have
19 opinions as to videos you have not reviewed, correct?
20      A.   That's correct.
21           MR. SEBBA:  Okay.  That's -- I believe that's
22      all of the questions I have.  I'll stop sharing my
23      screen.  Thank you for your time.
24           THE WITNESS:  Thank you, sir.
25           MS. WANG:  I have no further questions.

Page 43

1            MR. LOWE:  This is Mike Lowe.  Does anybody --
2       does anybody else have any other questions?  I just
3       have a couple for Mr. Sears.
4            MS. HOFFMAN:  Denver has no questions.
5            MR. SMITH:  I have no questions.
6            MR. LOWE:  Officer Sears, this is Mike Lowe.
7       I just want to ask you a couple of questions.
8                         EXAMINATION
9  BY MR. LOWE:
10      Q.   You've -- you have reviewed the deposition of
11 Deputy Garcia from Jefferson County?
12      A.   Yes.
13      Q.   And did you rely on that deposition in the
14 formation of any of the opinions in your disclosure?
15      A.   No.
16      Q.   You have also reviewed the report put together
17 by former Chief Stamper from Seattle, correct?
18      A.   Yes.
19      Q.   And did you utilize that report in forming any
20 of the opinions in this disclosure?
21      A.   No.
22      Q.   Did you rely on anything in forming your
23 opinion other than what's listed in the disclosure on
24 that bulleted list?
25      A.   No.

Page 44

1            MR. LOWE:  That's it.  I don't have any other
2  questions.
3            MR. MORALES:  The City of Aurora has no
4  questions.  Thank you.
5            VIDEOGRAPHER:  Are we okay to go off the
6  record?  Everyone's good?
7            MR. SEBBA:  Sure.
8            MR. LOWE:  Yes.
9            MR. SEBBA:  I'm good.
10           VIDEOGRAPHER:  We're off the record.  The
11 current time is 9:55 a.m.
12           (DEPOSITION CONCLUDED AT 9:55 A.M. MST)

Page 45

1                    CERTIFICATE OF REPORTER
2                       STATE OF COLORADO
3
4  I do hereby certify that the witness in the foregoing
5  transcript was taken on the date, and at the time and
6  place set out on the Title page here of by me after
7  first being duly sworn to testify the truth, the whole
8  truth, and nothing but the truth; and that the said
9  matter was recorded stenographically and mechanically by
10 me and then reduced to type written form under my
11 direction, and constitutes a true record of the
12 transcript as taken, all to the best of my skill and
13 ability. I certify that I am not a relative or employee
14 of either counsel, and that I am in no way interested
15 financially, directly or indirectly, in this action.
16
17
18
19
20
21
22 LINDSEY JOHNSON,
23 COURT REPORTER / NOTARY
24 MY COMMISSION EXPIRES ON: 08/05/2024
25 SUBMITTED ON: 01/27/2022

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

### 0

0109  40:11

### 1

1-120-CV-01878-RBJ  8:15
101  8:7
101092  32:10
101093  32:20
101193  33:2
10190  32:1
10194  33:7
11031  33:14
120-CV-01922-RBJ-MEH  8:16
15625  35:1
17  29:4 40:23
18749224  40:12
18874  40:22
19334  40:23
1991  13:7
1998  13:5,8

### 2

2  15:9 40:10,11 41:21
2004  13:1,5
2020  13:22 14:2 20:16,22 33:18 34:17 36:25 40:10
2021  40:23
2022  8:9 17:5 38:11 41:8
21  12:8
228  22:20 35:9
229  22:21 35:9
25  17:5 38:11 41:7
25th  8:8
26A2C  15:2
29  33:18,19,22 34:1

### 3

31  20:16,22 32:8,18 33:4,12,16 34:15,17 36:25

### 4

40-millimeter  23:20,23,25 24:7,21 27:18 28:1,8 30:15 35:10,14
40202  8:8
4400  34:3,12

### 5

5-29-2020  33:14

### 7

730  8:7

### 8

8073  34:17

### 9

9:01  8:9
9:11  16:25
9:15  17:6
9:40  38:6
9:44  38:11
9:50  41:2
9:51  41:8
9:55  44:11,12

### A

a.m.  8:9 16:25 17:6 38:6,11 41:2,8 44:11,12
absolutely  25:15
academy  12:20 18:20
act  23:13,24
action  8:14 24:10 25:15,17
activity  36:3,23 37:1,25
additional  29:5
affirm  10:13
agree  10:4 14:14 23:2,10 35:9 36:1
Air  13:7
allegation  33:25
allegations  33:21,25
alleging  22:13
allowed  21:11 36:13
Amendment  27:2,7 36:3 37:1,5,9,14
amount  38:18 39:22
Andreas  8:24
answers  17:8
anybody's  24:23
APD  40:7,9
apparatus 25:10
appearance  8:18
appearing  9:7,10,13,16
appears  23:5
Approximately  11:7
April  12:9
area  11:23
Arnold  8:22
Arvada  9:11
asks  26:1
assume  33:20 36:9
attached  18:9
attend  13:21
attending  8:18,19,23
Attorney's  9:4,5
attorneys  10:25 39:18
Aurora  9:5,7,10 11:19,20 12:16,25 13:15,16 15:1 18:20 19:7 24:5,20 31:5 33:22,25 37:5,9 39:18 44:3
aware  32:19

### B

back  14:25 17:2,24 20:24 29:17 38:8 39:6,11,14,15 41:4
backing  35:20,22
backwards  35:23
based  30:12 38:14 42:14,16
begin  10:18
beginning  38:21
behalf  8:22 9:6,9,15 13:15 14:15 30:23
behavior  24:9
Bike  12:10
body-worn  31:18
Boulder  9:1
break  11:12,14,16 16:21,23 39:6
Broadway  32:2,21 33:7 35:2
Bubna  31:10,17
Budaj  30:4
bullet  22:11
bulleted  28:20 38:17 40:6 43:24

### C

California  8:23
call  39:5
camera  9:23 10:1 31:18 32:2,10,20 33:14 34:3,9,12,17,18 35:1
cannisters  25:12
case  15:7 16:15 18:12,15 19:3,10,22 20:5 22:10 28:12 40:7,9 42:2,12
Castle  9:13
certificates



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

| | | | | |
|---|---|---|---|---|
| 18:9 | conspiring 25:7 | crowds 19:14 | deposition 8:11,23 17:3 20:9 28:5,11, 13,15,17 29:9, 18 30:3,6,9,24 38:9 39:19 41:5 42:7 43:10,13 44:12 | 15:1,5,9 40:8, 13,22 |
| chief 29:7 43:17 | control 12:22 13:20 17:20 19:25 | curfew 36:11, 23 | | documents 14:18 15:10 40:20 42:1 |
| circumstances 21:2 24:6 34:10,14 | convened 8:10 | current 12:9 17:5 38:11 41:2,8 44:11 | | Duran 17:16 20:13,16,21 21:1,14,25 22:3 26:9,12,16,19 27:10,16,25 28:7 30:7,14,20 31:1,6,24 32:7, 17 33:3,11,15, 21 34:7,10,14, 24 35:3,9 36:6 37:20 |
| City 8:12 9:3,4 13:4 44:3 | correct 14:5,7, 10,19,20 15:7, 8,12,13,18,19 16:1,13,14,18 18:1,4,6,7,10, 12,13,23 19:1, 3,4,8,10,11,13, 17,20,22,23 20:6,11,14,18, 23 21:6,14,15, 18,25 22:2,5, 17,18,21 23:9 24:3,15 27:7 28:20,21 30:11 31:3,6,7,18,19 35:15 36:11,12, 15,21 37:16,19, 23 42:2,3,5,6,8, 9,12,13,15,19, 20 43:17 | **D** | depositions 11:4 28:22 | |
| civil 8:14 13:20 15:2 | | danger 25:10 | deputy 29:10, 19,20 43:11 | |
| civilians 37:10 | | date 34:4,6,13 | description 23:7,8 | |
| clear 13:25 26:5 30:12 | | dates 32:22 | deserve 28:1 | Duran's 23:5 |
| COABLM373 31:10 | | David 9:9 | deserved 27:18 | duties 37:11 |
| COABLM378 31:11 | | day 8:8,9 12:8 31:16,20,22 32:2,11 33:8 35:5 | determine 23:12 | **E** |
| Colfax 32:2,10, 21 33:7 34:3,12 35:1 | | days 32:5,14 | determines 23:11 | earlier 41:25 |
| colleague 17:9 | | December 29:4 40:23 | developing 15:15 | early 14:2 |
| Colorado 8:14 9:2,4,8,11,14, 17 11:20 13:5 | | defendants 9:7,10,13,16 15:2 | DIRECT 10:20 | elaborate 21:10,11 |
| | correctly 29:23 40:12 | Denver 8:12,13 9:16 13:20,22 19:15 32:1,10, 20 33:2,7,14 34:3,12,17 35:1 43:4 | directed 38:23 | Elisabeth 8:11 |
| committed 23:13,24 | | | disclosure 14:9,10,12,15, 17 15:3,6 17:23 20:21 21:3,5,9, 18,25 22:14 23:1 28:20,25 29:3 40:7 41:20,22 42:11 43:14,20,23 | Elizabeth 8:25 |
| concern 19:16 | Cory 30:4 | | | encapsulates 21:5 |
| CONCLUDED 44:12 | counsel 8:20 | | | end 38:21 |
| Conduct 19:14 | County 8:12, 14 9:16 28:16 29:10,19,20 43:11 | Denver10190 32:6 | | enforcement 13:3,10 |
| conducted 17:4 41:6 | | Denver10192 32:16 | | engage 25:11 |
| conference 38:10 41:6 | couple 39:24 43:3,7 | Department 11:19 13:16 24:5,20 37:5,9 | disclosures 17:22 | engaged 25:17 36:2 |
| Congratulations 12:4 | courses 18:19 | department's 12:21 | discuss 11:4 31:9 | Englewood 9:8 13:5 |
| considerable 38:18 | court 8:5,6,7 10:11,13,17,19 21:20,22 39:12, 13 | depict 34:9 | discussed 22:8 | entitled 15:1 |
| consistent 20:1,8 | created 19:15 | deployment 17:19 | discussing 14:1 15:6 | Epps 8:12,22 10:25 |
| consistently 35:23 | creating 15:11 25:9 42:2 | deployments 13:19 | displaying 24:9 | established 21:12 |
| consolidated 8:15 | crotch 35:17 | depo 39:1 | District 8:13 | estimate 39:23,25 |
| | crowd 12:21, 22 13:19 17:20 19:25 20:1 | deposed 11:4 | document | et al 8:12 |



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

event  16:16
  23:8
events  20:15,
  21
Everyone's
  44:6
everything's
  11:11
evidence  28:5,
  7 30:17 36:17
exact  31:22
  32:4,13,22
EXAMINATION  10:20 17:13
  41:15 43:8
Excellent  10:3
excuse  10:24
  16:19 38:25
  41:5,20
experience
  42:17
experienced
  20:16,22
expert  13:18
  15:2 17:19
  29:21,22
explanation
  30:25 31:4
extent  42:10

       F

fact  10:4
fair  26:5 38:13
familiar  15:21
  16:3 17:15,18
  22:9
Federal  15:2
field  12:22
filming  35:13
  36:3,13,24 37:3
firework  26:13
fireworks
  25:9,18

firm  8:24
Fitouri  8:25
  22:20,21 35:9
  40:12,22
focus  38:23
focused  35:16
follow  41:11
follow-up
  41:10
force  13:7
  23:11,13,14,17
  24:12 30:19
  31:2 36:19
  40:10
forgot  9:19
form  9:19
  21:17 23:15
  24:2 25:2,24
  27:4,20 28:3
  30:21 31:15
  33:5 35:18
  36:20 37:2,24
format  40:15
formation
  43:14
forming  43:19,
  22
forward  35:23
Foundation
  23:15 28:3 37:2
front  14:25
  34:21
fully  25:25

       G

Garcia  30:1,10
  43:11
gas  25:12
gave  30:25
general  21:7
generally  19:5
gentleman's
  28:14

give  10:14
  14:23 18:12
  21:8 39:13,23
Goddard  9:9
good  10:22,23
  44:6,9
Great  9:20
  11:21 13:14
  14:6 15:5 26:7
groin  22:10
  27:18 28:1,8
  30:15 33:11,16
  35:13,14
group  25:17

       H

habit  39:1
HALO  32:1,10,
  20 33:7,14
  34:3,9,12,17,18
  35:1
hand  10:11
  17:9
head  40:14
hear  39:10
Hoffman  9:12
  10:9 43:4
hold  9:25
honestly  11:12
hour-and-a-
  half  39:25
hours  39:24,25
hurt  24:10

       I

ID  9:20,25
idea  38:18
illegal  27:11
impact  35:12
incident  15:21,
  25 16:3,10,13
  17:16 22:9

  31:16,20 32:17
  33:3,10 34:23
  35:2 40:7,9
includes  42:11
individual  9:10
individually
  9:7
individuals
  25:7
inform  31:13
instructor
  12:20,21
intend  18:12
  19:18 21:8
interfere  37:18
interfering
  37:22
intersection
  34:18 35:21
introduce  11:2
involving
  15:21,25 16:4,
  10,13,17 17:16
  22:9 32:17
  33:3,11
issued  14:7
item  40:6

       J

January  8:9
  13:25 17:5
  38:11 41:7
Jefferson  9:16
  28:16 29:10,19,
  20 43:11
job  36:14
jobs  13:3
Johnson  8:5
joined  8:24
joining  9:1
Jonathen
  17:16 20:13,16,
  21 21:1,14,25

  22:3 23:4 26:9,
  12,16,19 27:10,
  16,25 28:7
  30:7,14,20
  31:1,5,24 32:7,
  17 33:3,11,15,
  21 34:7,10,14,
  24 35:3,8 36:6
  37:20
Joshua  29:25
  30:10
journalist
  17:16,17 27:6
  36:3,7,10,14,22
  37:25
journalists
  37:6
June  13:1,22
  14:2
jury  19:18
justification
  19:25
justified  24:13
  31:24
justify  30:19

       K

Katherine  9:12
Kentuckiana
  8:6
Kentucky  8:8
kind  25:9

       L

late  14:1
launcher
  23:23,25 24:21
  27:19 28:2,9
  30:15 35:10,14
launchers
  23:21 24:7
law  13:3,10
led  24:20

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of MARC SEARS, taken on January 25, 2022

49

| | | | | |
|---|---|---|---|---|
| legal 19:25 | Marc 8:11 10:2,4 17:3,25 38:9 41:5 | names 16:5 | 43:23 | pick 25:11 |
| license 9:20 | | neighborhood 12:10 | opinions 14:10,19 15:7,25 16:16 18:5,11,15 20:7 21:1,6,8,13,24 22:17,25 23:4 31:14,15 38:14 42:2,11,14,16,19 43:14,20 | picking 25:14,22 |
| light 26:13 | material 38:14 | non-retained 29:21 | | plaintiff 15:21 16:4 19:2 20:13 21:14 22:10 26:9 30:7 |
| lighting 25:8,9,18 | materials 18:3 26:8,11,15 27:25 28:19,24 29:5 30:13 31:8 38:17 42:14 | Norm 29:12 42:5 | | |
| Lindsey 8:4 | | notes 34:20 35:6 | | plaintiff's 8:19 |
| list 15:10,14 16:6,11 17:21 18:2,5 28:19,20,22 29:14,17 31:9 35:7 38:17 40:6 42:1 43:24 | matter 8:11 | number 8:14 40:11 | opposed 26:4 | plaintiffs 8:22 9:1 11:1 18:15 19:10,22 20:5 33:24 |
| | meet 40:1 | | order 25:8 | |
| | meeting 39:17 40:4 | | | play 24:18 |
| | meetings 40:3 | **O** | **P** | playing 13:15 |
| listed 15:17 31:17 32:6,14,23 43:23 | mentioned 41:25 42:4 | oath 11:10 21:13 | Packard 15:22 16:1 | PLAYS 39:15 |
| lists 14:17 15:6 | | | | point 11:13 |
| litigation 13:17 14:7 | met 39:21 40:2 | object 21:17 23:15 24:2 25:2,13,24 26:17 27:4,20 28:3 30:21 33:5 35:18 36:20 37:2,24 | Parker 9:15 10:8 | police 11:19,23 12:10 13:6,16 18:20 24:5,20 29:7 36:24 37:5,9,10,14,18,22 38:1 |
| Liz 17:10 | Michael 8:21 9:6 21:21 | | part 12:9 | |
| located 8:6 | Mike 10:24 41:5,13 43:1,6 | | pass 36:7,10,22 | |
| location 8:18 | military 13:11 | | patrol 12:7,11,18 | |
| long 11:25 12:12 24:23 37:17 | mind 26:3 | objected 21:20 | | Porter 8:22 |
| | Moffett 8:24 | objection 22:1 27:9 | patrolman 12:19 | position 11:22 12:1,2,6,12,15 13:9 |
| Louisville 8:8 | moment 14:23 16:20 35:21 38:4 | occurred 14:1 | PD 12:16,25 | |
| Lowe 9:6 10:7 21:17,21 22:1 23:15 24:2 25:2,24 27:4,9,20 28:3 30:21 33:5 35:18 36:20 37:2,24 40:2 43:1,6,9 44:1,8 | | offered 15:24 16:16 | pending 8:13 11:15 | potentially 24:9 25:14 |
| | months 12:19 | | | practices 19:6 |
| | Morales 9:3 38:25 39:4,9 40:2 44:3 | offhand 34:22 | people 17:18,21 24:16 25:17 | preparation 39:18 |
| | | Office 9:4,5 28:16 | performing 37:11 | prepare 39:21 |
| | morning 10:22,23 | officer 12:23 13:4,7 19:15 23:10,11,12 24:23 28:6 30:4,18,25 31:4 43:6 | person 22:13 23:12,24 24:22 29:25 | present 13:16 25:10 39:2,5,7 |
| | Mountain 12:10 | | | press 36:7,10,22 |
| **M** | MST 44:12 | | pertain 31:20 32:3,14,17,21 33:3,8,10,15 34:13,23 35:2 | Previous 12:19 |
| made 28:24 | munitions 29:23 | officer's 27:14 | | prior 12:6,7 13:2,6 29:7 |
| Main 8:7 | | officers 19:24 24:6 30:23 | pertains 33:19 34:4,6 35:5 | Procedure 15:2 |
| make 30:12 39:6 | **N** | online 8:4 | Peter 9:3 | PROCEEDINGS 8:1 |
| making 33:21,25 | | opinion 15:12,15 18:18,19 19:3,5,12,14,24 20:2,7,12,15 | photo 16:9 | |
| management 12:22 13:19 17:20 20:1 | named 9:7 15:21 17:16 | | photos 22:6 | |

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

| | | | | |
|---|---|---|---|---|
| **promoted** 12:17 | 40:13,15,18,21,24 | **representative** 11:24 | **screen** 28:18 41:21 42:23 | **Smith** 9:15 16:4,11,13,17 43:5 |
| **protected** 27:2,7 36:2 37:1,13 38:1 | **receive** 28:24 29:5 | **representing** 8:5 10:25 | **scrolling** 18:16 | **smoke** 25:12 |
| **protest** 19:24 27:6 36:3 | **received** 12:2 29:1,9 37:4,8 | **REQUESTED** 39:15 | **Sears** 8:11 9:19 10:2,4,10, 22,24 15:3 17:3,7,15,25 25:25 38:9,13 41:6,12 43:3,6 | **speak** 30:22 |
| **protesters** 38:1 | **record** 9:25 15:1 16:25 17:1,2 26:4 37:10,14 38:3, 5,7,8 40:25 41:1,3,4 44:6,10 | **response** 36:24 | | **specific** 15:25 16:16 17:18 20:25 26:23 38:23 39:21 |
| **protests** 13:21 14:1 19:15 36:24 | | **restroom** 39:4 | | **specifically** 20:23,25 25:5 29:6 39:20 |
| **provide** 20:9 | | **resume** 18:9 20:10 | **Seattle** 29:7 43:17 | **spend** 38:16 39:17 |
| **provided** 16:11 28:6 29:3,11 | **recording** 37:25 | **review** 15:18 28:11 30:3,6,9 35:24 40:17,19, 22 | **Sebba** 8:21 10:6,18,21,25 16:22 17:7 41:11,13,16 42:21 44:7,9 | **Stamper** 29:8 42:5 43:17 |
| **public** 37:11, 14 | **refer** 34:20 35:6 | | | **Stamper's** 29:12 |
| **pull** 14:21 15:20 | **reference** 18:14 24:13 40:11 | **reviewed** 14:12,18 15:11, 14 16:7,12 18:3 22:15,23 26:8, 12,16,20,24 27:11,17,25 28:16,19 29:11, 16,18,24 30:13 31:12 36:18 38:14 40:19 42:1,4,7,15,19 43:10,16 | **security** 13:6 | **Stanford** 16:4, 11,13,17 |
| **put** 29:17 43:16 | **referring** 22:20 | | **sense** 21:7 | **start** 11:17 12:24 25:23 39:1 |
| **putting** 28:18 | **refers** 32:11 | | **sergeant** 10:24 11:23 12:7,18 15:3 17:3,7,15,25 38:9,13 41:12 | |
| | **regard** 30:19 | | | **started** 39:10 |
| **Q** | **relating** 21:1, 14,24 | | **series** 14:17 | **starting** 8:19 |
| | | **reviewing** 29:21 38:16 42:16 | **sharing** 41:21 42:22 | **state** 8:17 9:24 19:14 |
| **question** 11:12,15 18:17 21:12 25:25 26:1 32:24 | **rely** 43:13,22 | | **Sheriff's** 28:16 | **States** 8:13 13:7 |
| | **remember** 16:5 28:14 29:1,6,8,9,23 32:11 | **rights** 37:6,9 39:7 | **shift** 12:8 | |
| **questions** 11:3 17:8 41:9, 12 42:22,25 43:2,4,5,7 44:2, 4 | | **road** 12:18 | **shoot** 23:23 24:21 | **stating** 18:8 |
| | **remotely** 9:10, 13 | **rock** 9:13 26:9 | **shooting** 31:5, 24 32:7 | **stop** 18:16 42:22 |
| | **repeat** 23:16 39:10 | **rocks** 25:13, 18,22 | **shot** 21:2 22:10 27:18 28:1,8 30:14 33:11,15 34:7,10,14,24 35:3,9,10,11, 14,21,24 36:2, 25 | **Street** 8:7 |
| **R** | **report** 14:6,8, 22 15:18 29:12 40:7,9 41:17 42:5 43:16,19 | **role** 13:15 17:18 24:18 | | **study** 29:24 |
| | | **rough** 39:25 | | **subject** 24:8, 12,13,14,16 36:10,23 |
| **raise** 10:10 | | **rubber** 22:11 | | |
| **read** 18:24 39:11 | **reporter** 8:5 10:11,13,17,19 21:20,22 39:12, 13,15 | | **show** 17:23 41:17 | **subject's** 22:14,16,19 |
| **ready** 25:15,22 | | **S** | **showed** 16:6 | **Suite** 8:7 |
| **reasonable** 24:11 | **Reporters** 8:6, 7 | **safety** 19:15 24:23 27:14 | **signed** 21:18 | **summary** 18:22,23 20:8 40:7,10 |
| **recall** 31:22 32:4,9,13 33:9, 17 35:4,22 | **represent** 16:8,9 | **Sargent** 41:5 | **sir** 14:3 17:12 41:14,24 42:24 | **support** 14:18 |



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

|  |  |  |  |
|---|---|---|---|
| 15:11,15 42:1<br>**surprise** 35:16<br>**swear** 10:11,13<br>**Sydney** 8:3 17:4 38:10 41:7<br><br>**T**<br><br>**tactics** 13:19 17:19<br>**talking** 25:16<br>**taught** 18:19 24:5<br>**team** 11:24 12:7,8<br>**technician** 8:4<br>**techniques** 20:1<br>**telling** 24:19 25:21<br>**testify** 20:8<br>**testimony** 10:14 20:9 28:6,11 39:15<br>**thing** 14:22<br>**things** 15:10 25:13 32:23 38:24<br>**thought** 29:22 39:3<br>**threatened** 27:13<br>**threatens** 24:23<br>**throw** 25:15 26:9,17<br>**throwing** 25:18,23<br>**Tier** 40:10,11<br>**till** 12:9<br>**time** 8:9 11:8,9 12:9 17:6,9,10 35:13,17,24 36:1,7,25 38:5, | 11,16,19 39:17, 20,22 41:2,8,10 42:23 44:11<br>**times** 11:7 32:14,23<br>**title** 34:22<br>**today** 8:5,8 17:5 29:4 38:10 41:7<br>**top** 17:24 40:14<br>**training** 12:23 18:20 20:2 23:17,20 24:5, 20 37:4,8 42:17<br>**trainings** 19:6,7<br>**transcript** 30:4,6 42:8<br>**transcripts** 30:10,25<br>**trial** 19:19<br>**true** 36:9<br>**truth** 10:15<br>**Two-and-a-half** 12:13<br>**two-minute** 16:21,23<br><br>**U**<br><br>**uh-huh** 25:19 26:4<br>**uh-uh** 26:4<br>**understand** 36:6<br>**understanding** 13:14<br>**understood** 42:18<br>**unit** 12:10<br>**United** 8:13 13:7<br>**unrest** 13:20 | **utilize** 19:25 43:19<br>**utilized** 13:18<br><br>**V**<br><br>**versus** 8:12<br>**vicinity** 24:24<br>**video** 8:4 9:1 15:17 16:9,10, 12 26:19,23 27:11,17 32:1, 2,6,11,16,20,21 33:2,8,10,15,18 34:23 35:5 36:17 38:9 41:6<br>**videoconference** 8:10 17:4<br>**videos** 14:18 15:11 22:6,15, 20,23 23:1 31:9,11,13,17, 21,23 32:5 35:8 37:21 38:20,24 40:20 42:19<br><br>**W**<br><br>**Wang** 8:25 10:5 16:21 17:10,14 21:23 25:25 26:2 38:3,12 39:3,8, 11,16 40:25 41:9 42:25<br>**wanted** 11:1<br>**warrant** 31:1<br>**warranted** 28:8 30:14 36:18<br>**warrants** 23:13,25<br>**Washington** 32:11 34:4,13<br>**watch** 31:11 38:20<br>**watched** 35:8 | **week** 40:5<br>**weeks** 12:3<br>**West** 8:7<br>**whatsoever** 26:17<br>**withdrawn** 16:9<br>**witnessed** 28:4<br>**work** 11:18,19<br>**working** 12:24<br>**written** 14:15<br><br>**Y**<br><br>**year** 13:20,25<br>**years** 12:13,14<br><br>**Z**<br><br>**Zach** 15:22,25<br>**Zoom** 8:23 |  |



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com