

# EXHIBIT B

**CIVIL ACTION NO. 1:20-CV-01878-RBJ**

**ELISABETH EPPS, ET AL.**

**V.**

**CITY AND COUNTY OF DENVER, ET AL.**

**DEPONENT:**

**JASON PETRUCELLI**

**DATE:**

**January 25, 2022**



```
 1            IN THE UNITED STATES DISTRICT COURT
 2               FOR THE DISTRICT OF COLORADO
 3             CIVIL ACTION NO. 1:20-CV-01878-RBJ
 4          (CONSOLIDATED WITH 1:20-CV-01922-RBJ-MEH)
 5
 6
 7              ELISABETH EPPS, ET AL.,
 8                      Plaintiffs
 9
10                          V.
11
12           CITY AND COUNTY OF DENVER, ET AL.,
13                      Defendants
14
15
16
17
18
19
20
21
22
23  DEPONENT:   JASON PETRUCELLI
24  DATE:       JANUARY 25, 2022
25  REPORTER:   LINDSEY N. JOHNSON
```



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of JASON PETRUCELLI, taken on January 25, 2022

2..5

Page 2
APPEARANCES

ON BEHALF OF THE FITOURI PLAINTIFFS:
Elizabeth Wang, Esquire
Loevy & Loevy
2060 Broadway Street
Suite 460
Boulder, Colorado 80302
Telephone No.: (720) 328-5642
E-mail: elizabethw@loevy.com
(Appeared Via Videoconference)

ON BEHALF OF THE EPPS PLAINTIFFS:
Michael J. Sebba, Esquire
Arnold & Porter Kaye Scholer, LLP
250 West 55th Street
New York, New York 10019
Telephone No.: (212) 836-7529
E-mail: michael.sebba@arnoldporter.com
(Appeared Via Videoconference)

Page 3
APPEARANCES (CONTINUED)

ON BEHALF OF THE JEFFERSON COUNTY DEFENDANTS:
Parker Smith, Esquire
Jefferson County Attorney's Office
100 Jefferson County Parkway
Suite 5500
Golden, Colorado 80401
Telephone No.: (303) 271-8900
E-mail: psmith@jeffco.us
(Appeared Via Videoconference)

ON BEHALF OF THE CITY OF AURORA DEFENDANTS:
Peter R. Morales, Esquire
Isabelle Evans, Esquire
City of Aurora City Attorney
15151 East Alameda Parkway
Aurora, Colorado 80012
Telephone No.: (303) 341-8700
E-mail: pmorales@auroragov.org
        ievans@auroragov.org
(Appeared Via Videoconference)

Page 4
APPEARANCES (CONTINUED)

ON BEHALF OF THE CITY AND COUNTY OF DENVER DEFENDANTS:
Katherine Hoffman, Esquire
Denver City and County Attorney's Office
201 West Colfax Avenue
Denver, Colorado 80202
Telephone No.: (720) 913-8072
E-mail: hoffmank@hallevans.com
(Appeared Via Videoconference)

ON BEHALF OF THE DEPONENT:
Michael Lowe, Esquire
David Goddard, Esquire
Bruno, Colin & Lowe, P.C.
1999 Broadway
Suite 4300
Denver, Colorado 80202
Telephone No.: (303) 831-1099
E-mail: mlowe@brunolawyers.com
        dgoddard@brunolawyers.com
(Appeared Via Videoconference)

Also present: Sydney Little, Videographer

Page 5
INDEX
                                                      Page
PROCEEDINGS                                             7
DIRECT EXAMINATION BY MR. SEBBA                         9
EXAMINATION BY MS. WANG                                20
EXAMINATION BY MR. LOWE                                46

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
                                                Page 6
 1              STIPULATION
 2
 3   The video deposition of JASON PETRUCELLI was taken at
 4   the office of Pike Reporting Company located at 600
 5   Seventeenth Street, Suite 2800, Denver, Colorado 80202,
 6   via videoconference in which all participants attended
 7   remotely, on Tuesday the 25th day of January 2022 at
 8   1:33 p.m. MST; said deposition was taken pursuant to the
 9   Federal Rules of Civil Procedure.  The oath in this
10   matter was sworn remotely pursuant to FRCP 30.
11
12   It is agreed that Lindsey N. Johnson, being a Notary
13   Public and Court Reporter for the State of Colorado, may
14   swear the witness.
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                Page 7
 1              PROCEEDINGS
 2
 3       VIDEOGRAPHER:  My name is Sydney Little.
 4   I'm the online video technician, and Lindsey Johnson
 5   is the court reporter today representing Kentuckiana
 6   Court Reporters located at 730 West Main Street,
 7   Suite 101, Louisville, Kentucky 40202.  Today is the
 8   25th day of January 2022.  The time of day is 1:33
 9   p.m.  We are convened by videoconference to take the
10   deposition of Officer Jason Petrucelli in the matter
11   of Elisabeth Epps, et al., versus City and County of
12   Denver, et al., pending in the United States
13   District Court of Denver County Colorado, Civil
14   Action number 120-CV-01878-RBJ, consolidated with
15   120-CV-01922-RBJ-MEH.
16       Will everyone but the witness please state your
17   appearance, how you are attending, and the location
18   you are attending from, starting with plaintiffs'
19   counsel?
20       MR. SEBBA:  This is Michael Sebba on behalf of
21   the Epps plaintiffs.  I'm with Arnold & Porter, and
22   I'm in California appearing by Zoom.
23       MS. WANG:  Elizabeth Wang for the Fitouri
24   plaintiffs, appearing via video from Boulder,
25   Colorado.
```

```
                                                Page 8
 1       MR. MORALES:  Peter Morales appearing on behalf
 2   of the City of Aurora and the officers in their
 3   official capacity, attending from the City
 4   Attorney's Office in Aurora, Colorado.
 5       MR. LOWE:  Michael Lowe on behalf of the
 6   individually named Aurora defendants, appearing from
 7   Denver, Colorado.
 8       MR. GODDARD:  David Goddard on behalf of the
 9   individual Aurora defendants, appearing remotely
10   from Arvada, Colorado.
11       MS. EVANS:  Isabelle Evans appearing on behalf
12   of the City of Aurora and the officers in their
13   official capacities, appearing remotely via video
14   from Denver.
15       MR. SMITH:  Parker Smith at the Jefferson
16   County Attorney's Office, appearing on behalf of the
17   Jefferson County defendants from Denver, Colorado.
18       MS. HOFFMAN:  Good afternoon.  Kate Hoffman
19   from Hall & Evans appearing remotely on behalf of
20   the Denver defendants, appearing from Castle Rock,
21   Colorado.
22       VIDEOGRAPHER:  Did we get everybody?  Officer
23   Petrucelli, will you please state your name for the
24   record and hold your ID up to the camera?
25       THE WITNESS:  Yes.  My name is Officer Jason
```

```
                                                Page 9
 1   Petrucelli.  Here's my police ID.  Can you see that?
 2       VIDEOGRAPHER:  Yes, I can.  Thank you.
 3       Do all parties agree that the witness is, in
 4   fact, Officer Jason Petrucelli?
 5       MS. WANG:  Yes.
 6       MR. LOWE:  Yes.
 7       MR. SEBBA:  Yes.
 8       MR. MORALES:  Yes.
 9       MS. HOFFMAN:  Yes.
10       VIDEOGRAPHER:  All right.  Officer Petrucelli,
11   will you please raise your right hand for the court
12   reporter to swear you in?
13       COURT REPORTER:  Do you swear or affirm that
14   the testimony you are about to give will be the
15   truth, the whole truth, and nothing but the truth?
16       THE WITNESS:  I do.
17       COURT REPORTER:  Thank you.
18              DIRECT EXAMINATION
19   BY MR. SEBBA:
20       Q.  Officer Petrucelli, good afternoon.
21       A.  Good afternoon.
22       Q.  My name is Mike Sebba.  I'm going to be asking
23   you a few questions.  Before we get started -- or as we
24   get started, have you ever been deposed before?
25       A.  No.  This is my first time.
```

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 10

1    Q.   Okay.  Well, then let's go over a few rules.
2  So as you know, you just -- you're under oath, so please
3  answer all questions honestly and completely.  That
4  said, if you need to take a break at any point, please
5  just let us know.  That's -- however, I would ask that
6  if there's a question pending, you answer the question
7  before we take a break.  Is that okay?
8    A.   Yes.
9    Q.   Great.  And then also as you saw before,
10 there's a court reporter here and so -- who's creating a
11 record and writing down everything we say.  For that
12 reason, please make sure you answer audibly, no head
13 nods or head shakes.  Is that okay?
14   A.   Yes.
15   Q.   And for that same reason, we all resort to
16 saying, uh-huh, and things like that.  Please use casual
17 words, yes or no answers.  Is that okay?
18   A.   Yes.
19   Q.   Okay, great.  Thank you.  First I would like
20 to start with your background.  Can you please let us
21 know what your current job title is?
22   A.   I'm an instructor at the Aurora Police
23 Academy.
24   Q.   And how long have you had that position --
25 excuse me -- how long have you been in that position?

Page 11

1    A.   I've been there since September of 2020.
2    Q.   Great.  And before that, what was your --
3  what job did you have?
4    A.   I was on patrol --
5    Q.   And --
6    A.   -- patrol officer.
7    Q.   Patrol officer with the Aurora Police
8  Department?
9    A.   Yes.
10   Q.   And how long were you in that position?
11   A.   From 2019 is when I went back to patrol.
12   Q.   Okay.  And --
13   A.   I --
14   Q.   I'm sorry.  I spoke over.  You can you repeat
15 that?
16   A.   I said in 2019, I went back to patrol and then
17 was assigned to the academy in September of 2020.
18   Q.   Okay.  And what were you doing prior to being
19 on patrol?
20   A.   I was a full-time firearms instructor at our
21 range.
22   Q.   When you say our range, whose range would that
23 be?
24   A.   I'm sorry.  The Aurora Police Department's
25 training range.

Page 12

1    Q.   Okay.  And so you were still working for the
2  Aurora Police Department?
3    A.   Yes.
4    Q.   And how -- and roughly when did you start that
5  position?
6    A.   2009.
7    Q.   Okay.  And prior to that -- prior to that job,
8  what -- excuse me -- prior to that role, what was your
9  job?
10   A.   I was on a foot patrol unit.
11   Q.   You were a foot patrol unit with the Aurora
12 Police Department?
13   A.   Yes, with the Aurora Police Department.
14   Q.   And roughly when did you begin that position?
15   A.   2006.
16   Q.   Okay.  And was that your first position with
17 the Aurora Police Department?
18   A.   No.
19   Q.   Okay.  What was your position prior to that?
20   A.   Prior to that, I was on patrol.
21   Q.   And how long were you on patrol prior to that?
22   A.   I came on -- since I started the police
23 department, in '99.
24   Q.   '99.  Okay.  And prior to 1999, did you have
25 any jobs in law enforcement?

Page 13

1    A.   No.
2    Q.   Okay.  So you've been with the Aurora Police
3  Department in some form since 1999; is that correct?
4    A.   Yes.
5    Q.   Okay.  Thank you.  And now in the present
6  litigation, what's your understanding of your role?
7    A.   My understanding is I was brought in as an
8  expert in impact munitions, particularly the
9  40-millimeter.
10   Q.   Okay.  Great.  And as part of this litigation,
11 there was expert disclosure prepared on your behalf,
12 correct?
13   A.   Yes.
14   Q.   And have you reviewed that disclosure?
15   A.   Yes.
16   Q.   All right.  I would like to show you that
17 disclosure now.  I'm going to share my screen.
18 One moment.  There.  Can you see that document -- can
19 you see a document on your screen?
20   A.   Yes.
21   Q.   Is this the expert disclosure -- is this your
22 expert's disclosure for this case?
23   A.   Is there any way you can scroll up?
24   Q.   Absolutely.  So this is the top of the first
25 page, but I will continue to scroll.  I believe -- I

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 14

1  suspect what you are looking for is here at the bottom
2  of page 3, at the paragraph that starts with the
3  number 2?
4      A.   Yes.
5      Q.   All right.  So now, is this your disclosure?
6      A.   Yes.
7      Q.   Okay.  I'm going to continue to scroll on to
8  page 4.  Here on page 4, this is a list of the documents
9  you reviewed in preparing this report; correct?
10     A.   Yes.
11     Q.   And your opinion is based on these documents
12 and videos listed here, correct?
13     A.   Yes.
14     Q.   Is this a list of everything you reviewed in
15 preparation for your report?
16     A.   No.  I got some extra material as well.
17     Q.   What material would that be?
18     A.   In preparation for this deposition, my
19 attorneys gave me a copy of -- I'm trying to remember
20 his name -- Joshua Garcia's deposition.  I also looked
21 over Cory Budaj's deposition, and then some excerpts
22 from Pat Shaker and Pat Serrant's depositions.
23     Q.   Thank you.  So have you reviewed those
24 depositions prior to the issuance of this disclosure?
25     A.   I reviewed those last week -- within the last

Page 15

1  two weeks.
2      Q.   Okay.  So I'm just going to scroll to the
3  bottom of this document here.  You can see it's dated --
4  I'm on page 6 now -- can you see it's dated December 17,
5  2021?
6      A.   Yes.
7      Q.   So had you reviewed those documents by
8  December 17, 2021?
9      A.   I reviewed the depositions that I just listed
10 off, I reviewed those after that date.
11     Q.   Okay.  So to be clear, though, you have
12 reviewed the documents listed here in this disclosure,
13 as well as the four depositions -- or the depositions of
14 Mr. Garcia, Mr. Budaj, and portions of the depositions
15 of Mr. Serrant and Mr. Shaker; is that correct?
16     A.   Yes.
17     Q.   And is that the full list of documents that
18 you've reviewed in creating your opinion?
19     A.   Yes.
20     Q.   Okay.  So with that said, are you familiar
21 with an incident involving one of the plaintiffs named
22 Zach Packard?
23     A.   Yes.
24     Q.   On -- what is your opinion based on?
25          ?

Page 16

1      A.   I don't have an opinion on that.  I've gotten
2  very little information on him.
3      Q.   Thank you.  I skipped a question.  So let's
4  start over.  Are you familiar with an incident involving
5  one of the plaintiffs named Zach Packard?
6      A.   Yes.
7      Q.   Do you have an opinion on that incident?
8      A.   No.
9      Q.   Okay.  Are you familiar with an incident
10 involving one of the plaintiffs named Stanford Smith?
11     A.   Yes.
12     Q.   Do you have an opinion on that incident?
13     A.   No.
14     Q.   What are you aware of as it relates to
15 Mr. Smith?
16     A.   Well, I'm going to get Mr. Smith and
17 Mr. Packard confused.  I have a little bit of
18 information on what happened with them, but I don't
19 remember which one was which.
20     Q.   Okay.  So I guess let's start with one of
21 them.  Let's start with -- are you familiar with -- I'm
22 trying to think if I can describe -- are you familiar
23 with either of their appearances?
24     A.   No.
25     Q.   Okay.  So can you just describe the two

Page 17

1  events that you're thinking of then?
2      A.   The two events that I'm thinking of?
3      Q.   Yeah.  As they relate to Mr. Smith and
4  Mr. Packard, you said these -- you're going to get them
5  confused, but it sounds like you have these two events
6  in your mind?
7      A.   I am familiar with one of the subjects being
8  pepper sprayed by someone, and then another one --
9  another one claiming they received injuries from impact
10 munitions.
11     Q.   Okay.  And that's the totality of your
12 understanding of the events involving Mr. Smith and
13 Mr. Packard; is that correct?
14     A.   Yeah.  And I have their names confused on
15 which one is which.
16     Q.   Understood.  Thank you.  Now, I still have
17 your expert disclosure up.  I'd like to -- I'm going to
18 scroll down a little bit here.  We're looking at the
19 bottom of page 4 through page 5, and you have six
20 opinions here, each letter listed under -- the letters
21 A through F; is that correct?
22     A.   Yes.
23     Q.   Okay.  And you formed these opinions based on
24 the documents and videos you reviewed that are listed
25 earlier in this report, correct?



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 18

1  A. Yes.
2  Q. And you are offering those -- these opinions
3  based only on the information in documents and videos
4  you have reviewed, correct?
5  A. Yes.
6     MR. SEBBA: Okay. If it's okay, I would like
7  to go off the record for a couple minutes.
8     VIDEOGRAPHER: We are off the record.
9  The time is 1:47 p.m.
10    (OFF THE RECORD)
11    VIDEOGRAPHER: We are back on the record for
12  the deposition of Officer Jason Petrucelli being
13  conducted by videoconference. My name is Sydney
14  Little. Today is January 25, 2022, and the time is
15  1:49 p.m.
16 BY MR. SEBBA:
17 Q. Welcome back, Mr. Petrucelli.
18 A. Thank you.
19 Q. So I just have a couple questions regarding
20 the depositions you've reviewed since this report was
21 issued. First, you said you reviewed excerpts from
22 Mr. Shaker's deposition, correct?
23 A. Yes.
24 Q. He was deposed twice in this case. Do you
25 know which deposition you reviewed?

Page 19

1  A. I do not.
2  Q. Okay. And then you also said that you
3  reviewed excerpts of that deposition, correct?
4  A. Yes.
5  Q. What was discussed in those excerpts?
6  A. To my recollection, it was just generally
7  around crowd management.
8  Q. Okay. Approximately how -- do you recall
9  approximately how many pages of Mr. Shaker's deposition
10 you reviewed?
11 A. No, I don't.
12 Q. Okay. Do you remember anything else that was
13 addressed other than crowd management?
14 A. I don't.
15 Q. Okay. And then you also said you reviewed
16 excerpts of Mr. Serrant's deposition, correct?
17 A. Yes.
18 Q. Do you recall what was addressed in those
19 excerpts?
20 A. I recall them asking him about another officer
21 watching less lethal projectiles.
22 Q. Okay. Do you recall the other officer's name?
23 A. Yeah. It was McNamee.
24 Q. Okay. Thank you. And do you recall what
25 kind of less lethal projectiles were being discussed?

Page 20

1  A. I believe it was a -- 12-gauge sock rounds.
2  Q. And do you recall approximately how many pages
3  of Mr. Shaker's deposition you reviewed?
4  A. No, I do not.
5  Q. Okay. And to be clear, sometimes depositions
6  are -- depositions are always transcribed, and sometimes
7  they are video recorded, too, so let's go through these
8  one by one. For Mr. Serrant, did you review a recording
9  or a transcript?
10 A. It was written. It was a written transcript.
11 Q. Written transcript. Was that the case with
12 all four of the depositions that you reviewed?
13 A. Yes.
14    MR. SEBBA: Okay. All right. Thank you.
15 I think -- I think that's just about all of the
16 questions I have for now, but there are some other
17 people on the call who probably you to want ask you
18 some questions. Before I go, I just want to say
19 thank you for taking the time today. I appreciate
20 it.
21    THE WITNESS: Thank you.
22           EXAMINATION
23 BY MS. WANG:
24 Q. Did you rely on the depositions of Joshua
25 Garcia, Cory Budaj, Patrick Shaker, or Patricio Serrant

Page 21

1  for any of the opinions in this case?
2  A. No.
3  Q. Are you familiar with the incidents involving
4  Plaintiff Jonathen Duran being shot in the groin on
5  May 31, 2020?
6  A. Yes.
7  Q. What materials did you review that pertain to
8  that event?
9  A. I reviewed a cell phone video that was
10 recorded -- that says it was recorded by Mr. Duran.
11 Q. In your -- I'm putting your disclosure back up
12 on the screen. In your disclosure in the opinions that
13 you list A through F. There's nothing in any of those
14 opinions about the event concerning plaintiff
15 Jonathen Duran, correct?
16 A. Correct.
17 Q. Did you review -- on page 4 of the disclosure,
18 the video Fitouri 228, that's the cell phone video that
19 was shot by Jonathen Duran, correct?
20 A. I'm sorry. What did you ask about that?
21 Q. You reviewed the cell phone video shot by
22 Jonathen Duran that's Bates-stamped Fitouri 228;
23 correct?
24    MR. MORALES: Objection. Form.
25 A. Yes. Yes, I reviewed it. I'm sorry.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 22

1 I didn't hear you say review.
2    Q.   Did you review the entire video?
3    A.   Yes.
4    Q.   Did you see anything in that video that
5 justified any uses of force on Jonathen Duran?
6    A.   No.
7    Q.   Did you see anything in that video that
8 justified shooting Jonathen Duran in the groin with a
9 40-millimeter launcher?
10    A.   I didn't see Mr. Duran get hit with anything.
11 I didn't see anything hit Mr. Duran in that video.
12    Q.   Let's assume that he was hit in the groin with
13 a 40-millimeter launcher.  You heard the thud, right?
14 Did you watch the video?
15    A.   Yes, I watched the video.
16    Q.   There was a thud, and he groaned at the moment
17 he was shot in the groin, right?
18    A.   I heard him groan and react to something.
19    Q.   Okay.  You didn't review his deposition
20 testimony, right?
21    A.   Whose?
22    Q.   Jonathen Duran's.
23    A.   No, I did not review his testimony.
24    Q.   Okay.  You didn't see any evidence that would
25 contradict his testimony that he was shot in the groin

Page 23

1 with a 40-millimeter launcher, right?
2         MR. MORALES:  Objection to form.
3    A.   In his video, I could not see him get hit with
4 anything.
5    Q.   Could you answer the question that I asked?
6    A.   Okay.  Please ask it again.
7         MS. WANG:  Lindsey, could you please read back
8     the question I asked?
9         (REPORTER PLAYS BACK REQUESTED TESTIMONY)
10    A.   Okay.  So I'm unclear on what you're asking
11 me.
12    Q.   You did not review any evidence or see any
13 evidence that would contradict Jonathen Duran's sworn
14 testimony that he was shot in the groin with a 40-
15 millimeter launcher, right?
16         MR. MORALES:  Objection.
17    A.   I didn't see any evidence that he was hit with
18 a 40-millimeter launcher.
19    Q.   That's not the question that I asked.  The
20 question that I asked -- and we can go through every one
21 of these if you want, and, in fact, why don't we go
22 ahead and do that.  Okay.  These are the documents that
23 you reviewed, right, in this bulleted list?
24    A.   Yes.
25    Q.   On top of that, you have the four depositions

Page 24

1 that you mentioned, which you previously testified you
2 did not rely on for your opinions anyway, right?
3    A.   Yes.
4    Q.   Okay.  So in the document -- the first item,
5 "APD Incident Report Case Summary," is there anything in
6 there that indicates Jonathen Duran was not shot in the
7 groin with a 40-millimeter launcher?
8    A.   No.
9    Q.   The second item, on the Bubna body-worn camera
10 videos, was there anything in there that indicated that
11 Jonathen Duran was not shot with a 40-millimeter
12 launcher?
13    A.   No.
14    Q.   Was there anything in Denver video 10190 that
15 showed that Jonathen Duran was not shot in the groin
16 with a 40-millimeter launcher?
17    A.   No.
18    Q.   What about Denver 10192?  Anything in there
19 that would contradict Jonathen Duran's testimony?
20    A.   No.
21    Q.   Anything in Denver 101093 that would
22 contradict Jonathen Duran's testimony that he was shot
23 in the groin with a 40-millimeter launcher?
24         MR. MORALES:  Objection.  Form and foundation.
25    A.   No.

Page 25

1    Q.   What about 10194?  Anything in there that
2 would contradict Jonathen Duran's testimony that he was
3 shot in the groin?
4         MR. MORALES:  Same objections.
5    A.   No.
6    Q.   Anything in Denver 11031 that would indicate
7 that Jonathen Duran was not shot in the groin with a
8 40-millimeter launcher?
9         MR. MORALES:  Same objections.
10    A.   No.
11    Q.   Anything in the Denver 4400 that would
12 indicate Jonathen Duran was not shot in the groin with a
13 40-millimeter launcher?
14         MR. MORALES:  Same objections.
15    A.   No.
16    Q.   Anything in Denver 873 that would indicate
17 Jonathen Duran was not shot in the groin with a
18 40-millimeter launcher?
19         MR. MORALES:  Same objections.
20    A.   No.
21    Q.   Anything in the Denver 15625 that would
22 indicate Jonathen Duran was not shot in the groin with a
23 40-millimeter launcher?
24         MR. MORALES:  Same objections.
25    A.   No.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 26
1   Q.  Anything in FEMA M caddy PDF that would
2  indicate that Jonathen Duran was not shot in the groin
3  with a 40-millimeter launcher?
4       MR. MORALES:  Same objections.
5   A.  No.
6   Q.  Anything in the either Fitouri 228 or 229 that
7  would indicate that the Jonathen Duran was not shot in
8  the groin with the 40-millimeter launcher?
9       MR. MORALES:  Same objections.
10  A.  No.
11  Q.  There was nothing in the deposition of Joshua
12 Garcia that talked about Jonathen Duran at all, right?
13  A.  I don't recall.
14  Q.  Joshua Garcia is the Jefferson County
15 non-retained expert, right?
16  A.  Yes.  I recall reading his deposition.
17 I don't recall him talking about Duran.
18  Q.  Okay.  Cory Budaj did not deny in his
19 deposition anything relating to Jonathen Duran; correct?
20      MR. MORALES:  Objection.  Form and foundation.
21  A.  I don't recall the specifics on that, either.
22  Q.  You didn't see anything in Patrick Shaker or
23 Patricio Serrant's depositions that would contradict
24 Jonathen Duran's testimony, either, correct?
25      MR. MORALES:  Objection.  Form and foundation.

Page 27
1   A.  I don't recall them talking about Duran,
2  either.
3   Q.  Okay.  So did you see anything in any of the
4  material that you reviewed that would justify shooting
5  Jonathen Duran in the groin with a 40-millimeter
6  launcher?
7       MR. MORALES:  Objection.  Foundation and form.
8   A.  I didn't see, again, any evidence that he was
9  hit with one, but I also didn't see anything that would
10 justify being hit with one.
11  Q.  Okay.  He wasn't committing any act that would
12 justify being hit with one, assuming that he was hit
13 with one?
14  A.  I don't know that -- the scope on the -- on
15 the video footage is pretty narrow, so it's hard to see
16 exactly -- matter of fact, you can't see him at all.
17  Q.  Why don't we watch this video, okay?  And
18 I'm going to ask you -- I'm going to play it, and my
19 question to you will be -- you're going to tell me to
20 stop when you see something that Jonathen Duran does
21 that justifies shooting him in the groin with a
22 40-millimeter launcher.  Okay?  Give me a moment.
23 Can you see my screen?
24  A.  Yes.
25  Q.  I'm showing you Fitouri 228.  I'm going to

Page 28
1  play it from minute 20:01.  Okay.  So you just tell me
2  to stop when you see Jonathen Duran doing something that
3  warrants shooting him in the groin with a 40-millimeter
4  launcher.  Okay?
5   A.  Okay.
6       (VIDEO PLAYS)
7       (VIDEO STOPS)
8  BY MS. WANG:
9   Q.  I've paused it at 21:28.  You didn't tell me
10 to stop, did you?
11  A.  No.
12  Q.  So there was nothing you saw in that
13 minute-and-a-half that I played that gave any indication
14 that Jonathen Duran did anything that deserved being
15 shot in the groin?
16      MR. MORALES:  Objection.  Form.
17  A.  Again, I can't see what Mr. Duran is doing,
18 so I can't give you an answer on that because I -- you
19 don't see him in the video at all.
20  Q.  Right.  But you can't tell me that there was
21 anything that he was doing that warranted being shot in
22 the groin, right?
23      MR. MORALES:  Objection.  Form.
24  A.  Again, I can't see what he's doing, so I can't
25 give you an answer if I can't see what he's doing.

Page 29
1   Q.  You have no idea -- you can't speculate --
2  let's agree on this.  Let's see if you can agree to
3  this.  You cannot speculate on something that he was
4  doing that you can't see, right?
5       MR. MORALES:  Objection.  Form.
6   A.  Say your question again.
7   Q.  You are not going to get up in the in front of
8  the jury and speculate about something that is not --
9  that does not have any basis in any evidence whatsoever,
10 are you?
11      MR. MORALES:  Objection.  Form.
12  A.  I'm not going to speculate on something that
13 I can't see, and I can't see what he's doing in the
14 video.
15  Q.  Right.  You have no officer saying, I shot
16 Jonathen Duran because he was throwing something or
17 threatening somebody, right?
18      MR. MORALES:  Objection.  Form.
19  Q.  Right?
20  A.  I don't know what officers are saying.
21 That's --
22  Q.  Okay.  You are the expert in this case; right?
23 Are you the expert that's been retained by the Aurora
24 defendants?
25      MR. MORALES:  Objection.  Form.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 30

1   A.   On the use and training of less lethal
2   munitions, yes.
3   Q.   Okay.  Well, and apparently -- I mean, do your
4   opinions have any connection with the actual events
5   involving the plaintiffs in this case?
6        MR. MORALES:  Objection.  Form.
7   A.   My opinions are just what I stated.  I came in
8   to talk about the training and proper use of less lethal
9   munitions.
10  Q.   Okay.  You don't have an opinion one way or
11  other as to whether the use of munitions on Jonathen
12  Duran was appropriate, right?
13  A.   No.
14       MR. MORALES:  Objection.  Form.
15  Q.   Okay.  You have no opinion whatsoever as to
16  whether or not it was -- there was any justification for
17  shooting Jonathen Duran?
18       MR. MORALES:  Objection.  Form.
19  A.   I have no opinion.
20  Q.   You have no opinion with regard to the
21  incident of use of force alleged by Jonathen Duran,
22  right?
23       MR. MORALES:  Objection.  Form.
24  A.   I don't see Mr. Duran get hit with less lethal
25  munitions, and I don't have enough evidence or

Page 31

1   information to form an opinion on that, so no, I do not
2   have an opinion.
3   Q.   Do you know who it is that sued Aurora in this
4   case?
5        MR. MORALES:  Objection.  Form and foundation.
6   A.   Not exactly.
7   Q.   Okay.  So you don't even know what -- who are
8   the plaintiffs who making allegations against Aurora or
9   Aurora officers in this case?
10       MR. MORALES:  Objection.  Form and foundation.
11  A.   I know of Mr. Duran and Mr. Packard and
12  Mr. Smith, and then someone by the name of Epps and
13  Fitouri, but I just know -- I know the names.
14  Q.   Okay.  And you don't have any opinions you've
15  said about any of the -- about Packard, Smith, or
16  Duran, right?
17       MR. MORALES:  Objection.  Form.
18  A.   Yes.  I have no opinion on those.
19  Q.   You would agree with me that in order for an
20  officer's use of a 40-millimeter launcher on a person to
21  be justified, he's got to have an explanation for why he
22  shot that launcher at that particular person; right?
23  A.   Yes.
24  Q.   An officer cannot shoot somebody with a
25  40-millimeter launcher just because some other people in

Page 32

1   the vicinity are doing something, right?
2   A.   Are you saying specifically target someone?
3   No.
4   Q.   Right.  If an officer is going to target
5   somebody and shoot at somebody with a 40-millimeter
6   launcher, he's got to have a justification that concerns
7   what that person is doing, not what people around that
8   person are doing, right?
9   A.   Yes.
10  Q.   Okay.  Was there anything that you saw in any
11  of the evidence, whether it be Mr. Duran's videos or any
12  of the other videos that you reviewed, that provide any
13  justification for an officer to shoot at Mr. Duran?
14       MR. MORALES:  Objection.  Form.
15  A.   No.
16  Q.   I'm putting your disclosure back up on the
17  screen.
18  A.   Okay.
19  Q.   What dates do these videos relate to, do you
20  know?
21  A.   Unless they have a date written next to them,
22  no.  One of them says May 29, 2020.
23  Q.   Okay.  So let's go through them.  This one
24  involving Bubna, his videos, do you know what date that
25  video relates to?

Page 33

1   A.   I do not.
2   Q.   Do you know what locations those videos relate
3   to?
4   A.   They were in Denver down during the protests.
5   Q.   What about Denver 10190?  Do you know what
6   date that relates to?
7   A.   I do not.
8   Q.   Do you know if that has anything to do with
9   any of the allegations in this case against the Aurora
10  defendants?
11  A.   I do not know.
12  Q.   Can you tell me whether any of these videos,
13  other than Jonathen Duran's two videos -- can you tell
14  me whether any of these documents have anything to do
15  with any of the allegations against any of the
16  defendants in this case --
17       MR. MORALES:  Objection.
18  Q.   -- the Aurora defendants?
19       MR. MORALES:  Objection.  Form.
20  A.   I'm sorry say that question again.
21  Q.   You can't tell me what the dates are of any of
22  these videos, right, unless it's got a date next to it?
23  A.   Yeah.  And it was listed on a lot of videos,
24  but off the top of my head, I can't tell you what the
25  dates were.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 34

1  Q. So if one of those videos had to do with
2  events from, say, May 28, the first day of the protests,
3  what relationship does that have to the events where
4  Jonathen Duran was shot in the groin on the evening of
5  May 31, 2020, at the intersection of Colfax and Pearl at
6  9:30 p.m.?
7      MR. MORALES: Objection. Form and foundation.
8  A. So you're asking what that video has to do
9  with the incident concerning Mr. Duran? That's the
10 question?
11 Q. Yeah. Yeah.
12     MR. MORALES: Same objections.
13 A. Nothing.
14 Q. Nothing. Okay. So anything in the videos
15 that pertain to other days have nothing to do with the
16 event involving Plaintiff Duran, right?
17     MR. MORALES: Object to form and foundation.
18 A. They do show the scope of the whole event and,
19 you know, how things were down there, how kind of
20 chaotic they were and how many people were there down
21 there.
22 Q. Okay. But you don't have an intention to get
23 on the stand and say that whatever officer shot
24 Jonathen Duran in the groin on May 31, 2020 at 9:30 p.m.
25 at the intersection of Colfax and Pearl was justified in

Page 35

1  doing so because you saw some video involving a
2  different intersection three days before; right?
3      MR. MORALES: Objection to form.
4  A. I'm not aware that it's been established that
5  Mr. Duran was hit by an officer with a less lethal
6  projectile, but no.
7  Q. Right. Like whatever happened on the first
8  day of the protest has nothing to do with a use of force
9  on a particular person two days afterwards, right?
10 A. Well, it has to do with the scope of the whole
11 event that happened over those several days.
12 Q. Okay. So --
13 A. In --
14 Q. Let me ask you about -- I'm sorry. Go ahead.
15 A. I said, but in particular, no.
16 Q. Okay. Is this how you train Aurora officers?
17 You've had experience in training Aurora officers,
18 right?
19 A. Yes.
20 Q. Okay. Do you train Aurora officers that if
21 they're faced with some, you know, let's say chaotic
22 circumstances on day one of a protest, they are free to
23 use force and shoot somebody in the groin three days
24 later?
25     MR. MORALES: Objection. Form.

Page 36

1  A. I don't have any experience training for crowd
2  control and crowd control situations.
3  Q. Oh, but you are experienced in training
4  officers on how to use less lethal weapons, right?
5  A. Yes.
6  Q. That includes pepper spray, does it?
7  A. Yes.
8  Q. That includes 40-millimeter launchers, right?
9  A. Yes.
10 Q. That include bean bag shotguns, right?
11 A. Yes.
12 Q. You don't train officers that if they are
13 faced with some chaotic circumstances on the first day
14 of the protests that they can just spray somebody in the
15 face for no reason two days later, right?
16     MR. MORALES: Objection. Form.
17 A. All uses of force have to have justification
18 in their particular circumstances.
19 Q. Right. And the circumstances are not like
20 what was happening two days ago. It's what was
21 happening right then, right?
22     MR. MORALES: Objection. Form.
23 A. Yes.
24 Q. Okay. So just so we're clear, Aurora -- I
25 mean, is it true to say that Aurora does not train its

Page 37

1  officers -- let's say with respect to the use of pepper
2  spray, that they are allowed to spray a protester in the
3  face on a particular day, location, and time just
4  because there was something else that happened two days
5  before?
6      MR. MORALES: Objection. Form.
7  A. You have to have particular justification for
8  each use of force.
9  Q. Right. And the circumstances that officer's
10 to consider concerns the circumstances he's faced with
11 at that time, right?
12     MR. MORALES: Objection. Form.
13 A. Yes.
14 Q. It's not about what happened two days ago;
15 right?
16     MR. MORALES: Objection. Form.
17 A. No. It's not about what happened two days
18 ago.
19     MS. WANG: Let's go off the record.
20     VIDEOGRAPHER: All right. We are off record.
21 The time is 2:16 p.m.
22     (OFF THE RECORD)
23     VIDEOGRAPHER: We're back on the record for the
24 deposition of Officer Jason Petrucelli being
25 conducted by video conference. My name is Sydney

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 38

1  Little.  Today is the January 25, 2022, and the time
2  is 2:20 p.m.
3  BY MS. WANG:
4      Q.   I'm showing you your disclosure again.  The
5  first one, "APD Incident Report Case Summary," what in
6  that document did you rely on for your opinions?
7      A.   As I was reading through it, I was looking for
8  incidents where people were -- where officers had used
9  justifiably less lethal munitions.
10     Q.   You didn't see anything in there relating to
11 Zach Packard, Sanford Smith, or Jonathen Duran, right?
12     A.   No.
13     Q.   Bubna COABLM 373 to 378, these videos from
14 Bubna's body-worn camera, what in there did you rely on
15 for your opinions?
16     A.   I was watching Officer Bubna deploy his
17 launcher on some different occasions and was just
18 watching the manner that was done and kind of the
19 situations that they were in.
20     Q.   That those had nothing -- did any of those
21 have anything -- did any of those have anything to do
22 with the plaintiffs?
23          MR. MORALES:  Objection --
24     A.   No.
25          MR. MORALES:  -- foundation.

Page 39

1      Q.   Denver 10190, this HALO camera from Broadway
2  and Colfax, what did you rely on in there for your
3  opinions?
4      A.   That gave me a good idea of the overall scope
5  of the protests.
6      Q.   How many days did that HALO camera cover?
7      A.   I don't remember.
8      Q.   That HALO camera, that video Denver 10190 was
9  from May 28, right?
10     A.   I don't remember the date.
11     Q.   Do you recall if it showed the daytime?
12 Was it -- it wasn't even dark in that video, was it?
13     A.   On that particular video, I don't remember.
14     Q.   Was there any police use of force in that
15 video?
16     A.   I don't recall that, either.  I looked at a
17 lot of videos.
18     Q.   Okay.  So you can't tell me how that video,
19 Denver 10190, how that contributed to your opinions in
20 any way?
21     A.   Like I said before, it gave me an overall
22 perspective of the protests.  I wasn't down there, so
23 those helped give me an overall view of what was going
24 on.
25     Q.   That HALO camera covered one intersection;

Page 40

1  right, Broadway and Colfax?
2          MR. MORALES:  Objection.  Foundation.
3      A.   Yes.
4      Q.   So it gave you a perspective on that
5  intersection for the time period covered in that video,
6  right?
7      A.   Yes.
8      Q.   Okay.  It couldn't possibly have given you any
9  perspective on different days and different
10 intersections that the video didn't cover, right?
11     A.   Yes.  If the camera didn't cover it, no.
12     Q.   Right.  Okay.  Denver 10192, Denver 10193,
13 and Denver 10194, how did those videos provide any basis
14 for your opinions?
15     A.   In the same way that the Broadway did.
16 It kind of gave me an overall scope of what was going
17 on.
18     Q.   Those videos covered one day, right, May 28?
19     A.   Again, I don't remember the date.  I don't
20 remember how many days they covered.
21     Q.   Okay.  But the video is a video, so we can
22 look at the video and tell the date they covered; right?
23     A.   If it's got the date stamped on it, yes.
24     Q.   Well, we can watch the video and tell what day
25 it covers, right?

Page 41

1          MR. MORALES:  Objection.  Form.
2      A.   Again, if the date's stamped on it, yes, you
3  would know what date it covers.
4      Q.   Okay.  And those HALO cameras are fixed, so it
5  covers a particular intersection, right?
6      A.   Some of them were actually panning, so you
7  could see -- they would pan back and forth over two
8  different areas.
9      Q.   Okay.  But they stay at the intersection, and
10 the operator can pan them to look a little bit down the
11 street one way or the another, but basically they stay
12 affixed, right?  They are affixed to a pole at the
13 intersection, correct?
14     A.   I would assume, yes.
15     Q.   Okay.  You did not see the HALO camera videos
16 where it looks like what the officers' body-worn cameras
17 looked like where they were walking around and going all
18 sorts of places, right?
19     A.   Right.
20     Q.   Okay.  So whatever perspective those videos,
21 Denver 10192 through Denver 10193, we gave you is
22 whatever is covered in the video, right?
23     A.   Correct.
24     Q.   For those dates and those locations, right?
25     A.   Yes.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 42

1  Q.  And you can't even tell me whether those have
2  anything to do with the events involving our plaintiffs,
3  right?
4      MR. MORALES:  Objection.  Form and foundation.
5  A.  Correct.
6  Q.  Okay.  Denver 11031, HALO camera for
7  5-29-2020, 21:00 to 22:00.  Do you see that?
8  A.  Yes.
9  Q.  How did that video provide any basis for your
10 opinions?
11 A.  Again, it gave me an overall perspective of
12 what was happening down there during the protests.
13 Q.  At the location, right?  At the location
14 covered by that HALO camera, right?
15 A.  Yes.
16 Q.  And for the date and time, covered by that
17 HALO camera, which according to the name, is 5-29
18 between 2100 and 2200 hours, right?
19 A.  Yes.
20 Q.  The incident involving Duran did not occur on
21 5-29, right?
22     MR. MORALES:  Objection.  Form and foundation.
23 A.  I don't recall the date that his happened.
24 Q.  Okay.  And you can't tell me whether any of
25 the plaintiffs who were making allegations against the

Page 43

1  Aurora defendants in this case are alleging anything
2  that happened on May 29, right?
3      MR. MORALES:  Objection.  Form and foundation.
4  A.  Again, I don't know what dates those occurred
5  on.
6  Q.  Okay.  Denver 44 -- 4400, HALO camera at
7  Colfax and Washington.  Tell me how that provided any --
8  any basis for your opinions.
9  A.  Again, it gave me an overall perspective of
10 the protests and what was going on.
11 Q.  It gave you an overall perspective of the
12 protests at the location of Colfax and Washington during
13 the timeframe covered by that video, right?
14 A.  Yes.
15 Q.  Whatever's not covered in the video, you have
16 no basis to opine on, right?
17 A.  Yes.
18 Q.  Denver 8073, the HALO camera for 5-31-2020, do
19 you even know what intersection that was for?
20 A.  I do not.
21 Q.  How did that video provide any basis for your
22 opinions?
23 A.  Again, it gave me an overall perspective of
24 what was going on in the protests.
25 Q.  Do you know if that video showed any of the

Page 44

1  plaintiffs?
2  A.  I do not.
3  Q.  Can you see the disclosure again?
4  A.  Yes, I can see it.
5  Q.  Denver 15625, HALO camera at Colfax and
6  Broadway.  What date did that cover?
7  A.  I don't recall.
8  Q.  How did that video provide any basis for your
9  opinions?
10 A.  Again, it gave me an overall perspective of
11 what was going on at the protests.
12 Q.  At whatever location and time was covered by
13 the video, right?
14 A.  Yes.
15 Q.  You can't tell me whether that video covers
16 anything relating to any of the plaintiffs in this case,
17 can you?
18 A.  No.
19 Q.  Did you ask to review anything else other than
20 the items that were given to you in this list?
21     MR. MORALES:  I'm going to object to -- I think
22   you are getting close to attorney-client privilege.
23   If he can answer it without encroaching on that, he
24   can do so.  I'm not sure he can, but I'll let him
25   think about that.

Page 45

1  A.  No, I don't remember asking anything outside
2  of that list.
3  Q.  So the documents that you were provided for
4  review were provided to you by the attorneys in this
5  case, right?
6  A.  Correct.
7  Q.  Did you think to yourself, maybe I should look
8  at the deposition testimony of Jonathen Duran, the
9  plaintiff who was making an allegation against Aurora
10 in this case?
11     MR. MORALES:  Objection.  Form and foundation.
12 A.  No.
13 Q.  Did you think to yourself that you should ask
14 to see a copy of the deposition of Stanford Smith or
15 Zach Packard, who are also making allegations against
16 Aurora in this case?
17     MR. MORALES:  Objection.  Form and foundation.
18 A.  No.
19     MS. WANG:  I have no further questions at this
20   time.
21     MR. SEBBA:  Nothing from --
22     MR. MORALES:  I'm sorry.  Pardon me,
23 Mr. Sebba.
24     MR. SEBBA:  No.  I didn't mean to cut you off.
25   I have no questions.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 46

1    MR. MORALES:  I have no questions.  Anybody
2    else?
3        MS. HOFFMAN:  Denver has no questions.
4        MR. SMITH:  No questions from the Jefferson
5    County defendants.
6        MR. LOWE:  I have one.
7                EXAMINATION
8    BY MR. LOWE:
9        Q.   This is Mike Lowe, representing the individual
10   Aurora defendants.  Officer Petrucelli, in reviewing all
11   of the video and documentary evidence listed in your
12   endorsement as an expert, did you witness anything or
13   any deployment of less lethal munitions that was
14   contrary to the training provided by
15   Aurora or in violation of any Aurora policy concerning
16   the deployment of those weapons?
17       A.   No.
18       MR. LOWE:  I don't have any other questions.
19       VIDEOGRAPHER:  All right.  We are off the
20   record.  The time is 2:33 p.m.
21       (DEPOSITION CONCLUDED AT 2:33 P.M. MST)
22
23
24
25

Page 47

1                CERTIFICATE OF REPORTER
2                   STATE OF COLORADO
3
4    I do hereby certify that the witness in the foregoing
5    transcript was taken on the date, and at the time and
6    place set out on the Title page here of by me after
7    first being duly sworn to testify the truth, the whole
8    truth, and nothing but the truth; and that the said
9    matter was recorded stenographically and mechanically by
10   me and then reduced to type written form under my
11   direction, and constitutes a true record of the
12   transcript as taken, all to the best of my skill and
13   ability. I certify that I am not a relative or employee
14   of either counsel, and that I am in no way interested
15   financially, directly or indirectly, in this action.
16
17
18   
19
20
21
22   LINDSEY JOHNSON,
23   COURT REPORTER / NOTARY
24   MY COMMISSION EXPIRES ON: 08/05/2024
25   SUBMITTED ON: 01/27/2022

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of JASON  PETRUCELLI, taken on January 25, 2022

48

**1**

**101** 7:7
**101093** 24:21
**10190** 24:14 33:5 39:1,8,19
**10192** 24:18 40:12 41:21
**10193** 40:12 41:21
**10194** 25:1 40:13
**11031** 25:6 42:6
**12-gauge** 20:1
**120-CV-01878-RBJ** 7:14
**120-CV-01922-RBJ-MEH** 7:15
**15625** 25:21 44:5
**17** 15:4,8
**1999** 12:24 13:3
**1:33** 7:8
**1:47** 18:9
**1:49** 18:15

**2**

**2** 14:3
**2006** 12:15
**2009** 12:6
**2019** 11:11,16
**2020** 11:1,17 21:5 32:22 34:5,24
**2021** 15:5,8
**2022** 7:8 18:14 38:1
**20:01** 28:1
**2100** 42:18
**21:00** 42:7
**21:28** 28:9
**2200** 42:18
**228** 21:18,22 26:6 27:25
**229** 26:6
**22:00** 42:7
**25** 18:14 38:1
**25th** 7:8
**28** 34:2 39:9 40:18
**29** 32:22 43:2
**2:16** 37:21
**2:20** 38:2
**2:33** 46:20,21

**3**

**3** 14:2
**31** 21:5 34:5,24
**373** 38:13
**378** 38:13

**4**

**4** 14:8 17:19 21:17
**40-** 23:14
**40-millimeter** 13:9 22:9,13 23:1,18 24:7, 11,16,23 25:8, 13,18,23 26:3,8 27:5,22 28:3 31:20,25 32:5 36:8
**40202** 7:7
**44** 43:6
**4400** 25:11 43:6

**5**

**5** 17:19
**5-29** 42:17,21
**5-29-2020** 42:7
**5-31-2020** 43:18

**6**

**6** 15:4

**7**

**730** 7:6

**8**

**8073** 43:18
**873** 25:16

**9**

**99** 12:23,24
**9:30** 34:6,24

**A**

**Absolutely** 13:24
**academy** 10:23 11:17
**act** 27:11
**Action** 7:14
**actual** 30:4
**addressed** 19:13,18
**affirm** 9:13
**affixed** 41:12
**afternoon** 8:18 9:20,21
**agree** 9:3 29:2 31:19
**ahead** 23:22 35:14
**allegation** 45:9
**allegations** 31:8 33:9,15 42:25 45:15
**alleged** 30:21
**alleging** 43:1
**allowed** 37:2
**answers** 10:17
**APD** 24:5 38:5
**apparently** 30:3
**appearance** 7:17
**appearances** 16:23
**appearing** 7:22,24 8:1,6,9, 11,13,16,19,20
**approximately** 19:8,9 20:2
**areas** 41:8
**Arnold** 7:21
**Arvada** 8:10
**assigned** 11:17
**assume** 22:12 41:14
**assuming** 27:12
**attending** 7:17,18 8:3
**Attorney's** 8:4,16
**attorney-client** 44:22
**attorneys** 14:19 45:4
**audibly** 10:12
**Aurora** 8:2,4,6, 9,12 10:22 11:7,24 12:2, 11,13,17 13:2 29:23 31:3,8,9 33:9,18 35:16, 17,20 36:24,25 43:1 45:9,16 46:10,15
**aware** 16:14 35:4

**B**

**back** 11:11,16 18:11,17 21:11 23:7,9 32:16 37:23 41:7
**background** 10:20
**bag** 36:10
**based** 14:11 15:24 17:23 18:3
**basically** 41:11
**basis** 29:9 40:13 42:9 43:8,16,21 44:8
**Bates-stamped** 21:22
**bean** 36:10
**begin** 12:14
**behalf** 7:20 8:1,5,8,11,16, 19 13:11
**bit** 16:17 17:18 41:10
**body-worn** 24:9 38:14 41:16
**bottom** 14:1 15:3 17:19
**Boulder** 7:24
**break** 10:4,7
**Broadway** 39:1 40:1,15 44:6

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of JASON  PETRUCELLI, taken on January 25, 2022

49

brought 13:7
Bubna 24:9
  32:24 38:13,16
Bubna's 38:14
Budaj 15:14
  20:25 26:18
Budaj's 14:21
bulleted 23:23

---

**C**

caddy 26:1
California 7:22
call 20:17
camera 8:24
  24:9 38:14
  39:1,6,8,25
  40:11 41:15
  42:6,14,17
  43:6,18 44:5
cameras 41:4,
  16
capacities
  8:13
capacity 8:3
case 13:22
  18:24 20:11
  21:1 24:5 29:22
  30:5 31:4,9
  33:9,16 38:5
  43:1 44:16
  45:5,10,16
Castle 8:20
casual 10:16
cell 21:9,18,21
chaotic 34:20
  35:21 36:13
circumstance
s 35:22 36:13,
  18,19 37:9,10
City 7:11 8:2,3,
  12
Civil 7:13
claiming 17:9

clear 15:11
  20:5 36:24
close 44:22
COABLM
  38:13
Colfax 34:5,25
  39:2 40:1 43:7,
  12 44:5
Colorado 7:13,
  25 8:4,7,10,17,
  21
committing
  27:11
completely
  10:3
concerns 32:6
  37:10
CONCLUDED
  46:21
conducted
  18:13 37:25
conference
  37:25
confused
  16:17 17:5,14
connection
  30:4
consolidated
  7:14
continue 13:25
  14:7
contradict
  22:25 23:13
  24:19,22 25:2
  26:23
contrary 46:14
contributed
  39:19
control 36:2
convened 7:9
copy 14:19
  45:14
correct 13:3,12
  14:9,12 15:15
  17:13,21,25

  18:4,22 19:3,16
  21:15,16,19,23
  26:19,24 41:13,
  23 42:5 45:6
Cory 14:21
  20:25 26:18
counsel 7:19
County 7:11,
  13 8:16,17
  26:14 46:5
couple 18:7,19
court 7:5,6,13
  9:11,13,17
  10:10
cover 39:6
  40:10,11 44:6
covered 39:25
  40:5,18,20,22
  41:22 42:14,16
  43:13,15 44:12
covers 40:25
  41:3,5 44:15
creating 10:10
  15:18
crowd 19:7,13
  36:1,2
current 10:21
cut 45:24

---

**D**

dark 39:12
date 15:10
  32:21,24 33:6,
  22 39:10 40:19,
  22,23 41:3
  42:16,23 44:6
date's 41:2
dated 15:3,4
dates 32:19
  33:21,25 41:24
  43:4
David 8:8
day 7:8 34:2
  35:8,22 36:13
  37:3 40:18,24

days 34:15
  35:2,9,11,23
  36:15,20 37:4,
  14,17 39:6
  40:9,20
daytime 39:11
December
  15:4,8
defendants
  8:6,9,17,20
  29:24 33:10,16,
  18 43:1 46:5,10
Denver 7:12,13
  8:7,14,17,20
  24:14,18,21
  25:6,11,16,21
  33:4,5 39:1,8,
  19 40:12,13
  41:21 42:6
  43:6,18 44:5
  46:3
deny 26:18
department
  11:8 12:2,12,
  13,17,23 13:3
Department's
  11:24
deploy 38:16
deployment
  46:13,16
deposed 9:24
  18:24
deposition
  7:10 14:18,20,
  21 18:12,22,25
  19:3,9,16 20:3
  22:19 26:11,16,
  19 37:24 45:8,
  14 46:21
depositions
  14:22,24 15:9,
  13,14 18:20
  20:5,6,12,24
  23:25 26:23
describe
  16:22,25
deserved
  28:14

DIRECT 9:18
disclosure
  13:11,14,17,21,
  22 14:5,24
  15:12 17:17
  21:11,12,17
  32:16 38:4 44:3
discussed
  19:5,25
District 7:13
document
  13:18,19 15:3
  24:4 38:6
documentary
  46:11
documents
  14:8,11 15:7,
  12,17 17:24
  18:3 23:22
  33:14 45:3
Duran 21:4,10,
  15,19,22 22:5,
  8,10,11 24:6,
  11,15 25:7,12,
  17,22 26:2,7,
  12,17,19 27:1,
  5,20 28:2,14,17
  29:16 30:12,17,
  21,24 31:11,16
  32:13 34:4,9,
  16,24 35:5
  38:11 42:20
  45:8
Duran's 22:22
  23:13 24:19,22
  25:2 26:24
  32:11 33:13

---

**E**

earlier 17:25
Elisabeth 7:11
Elizabeth 7:23
encroaching
  44:23
endorsement
  46:12
enforcement

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of JASON PETRUCELLI, taken on January 25, 2022

50

12:25

entire 22:2

Epps 7:11,21 31:12

established 35:4

et al 7:11,12

Evans 8:11,19

evening 34:4

event 21:8,14 34:16,18 35:11

events 17:1,2, 5,12 30:4 34:2, 3 42:2

evidence 22:24 23:12,13, 17 27:8 29:9 30:25 32:11 46:11

EXAMINATION 9:18 20:22 46:7

excerpts 14:21 18:21 19:3,5, 16,19

excuse 10:25 12:8

experience 35:17 36:1

experienced 36:3

expert 13:8,11, 21 17:17 26:15 29:22,23 46:12

expert's 13:22

explanation 31:21

extra 14:16

---

F

---

face 36:15 37:3

faced 35:21 36:13 37:10

fact 9:4 23:21 27:16

familiar 15:20 16:4,9,21,22 17:7 21:3

FEMA 26:1

firearms 11:20

Fitouri 7:23 21:18,22 26:6 27:25 31:13

fixed 41:4

foot 12:10,11

footage 27:15

force 22:5 30:21 35:8,23 36:17 37:8 39:14

form 13:3 21:24 23:2 24:24 26:20,25 27:7 28:16,23 29:5,11,18,25 30:6,14,18,23 31:1,5,10,17 32:14 33:19 34:7,17 35:3,25 36:16,22 37:6, 12,16 41:1 42:4,22 43:3 45:11,17

formed 17:23

foundation 24:24 26:20,25 27:7 31:5,10 34:7,17 38:25 40:2 42:4,22 43:3 45:11,17

free 35:22

front 29:7

full 15:17

full-time 11:20

---

G

---

Garcia 15:14 20:25 26:12,14

Garcia's 14:20

gave 14:19 28:13 39:4,21 40:4,16 41:21 42:11 43:9,11, 23 44:10

generally 19:6

give 9:14 27:22 28:18,25 39:23

Goddard 8:8

good 8:18 9:20,21 39:4

great 10:9,19 11:2 13:10

groan 22:18

groaned 22:16

groin 21:4 22:8,12,17,25 23:14 24:7,15, 23 25:3,7,12, 17,22 26:2,8 27:5,21 28:3, 15,22 34:4,24 35:23

guess 16:20

---

H

---

Hall 8:19

HALO 39:1,6,8, 25 41:4,15 42:6,14,17 43:6,18 44:5

hand 9:11

happened 16:18 35:7,11 37:4,14,17 42:23 43:2

happening 36:20,21 42:12

hard 27:15

head 10:12,13 33:24

hear 22:1

heard 22:13,18

helped 39:23

hit 22:10,11,12 23:3,17 27:9, 10,12 30:24 35:5

Hoffman 8:18 9:9 46:3

hold 8:24

honestly 10:3

hours 42:18

---

I

---

ID 8:24 9:1

idea 29:1 39:4

impact 13:8 17:9

incident 15:21 16:4,7,9,12 24:5 30:21 34:9 38:5 42:20

incidents 21:3 38:8

include 36:10

includes 36:6, 8

indication 28:13

individual 8:9 46:9

individually 8:6

information 16:2,18 18:3 31:1

injuries 17:9

instructor 10:22 11:20

intention 34:22

intersection 34:5,25 35:2 39:25 40:5 41:5,9,13 43:19

intersections 40:10

involving 15:21 16:4,10 17:12 21:3 30:5 32:24 34:16 35:1 42:2,20

Isabelle 8:11

issuance 14:24

issued 18:21

item 24:4,9

items 44:20

---

J

---

January 7:8 18:14 38:1

Jason 7:10 8:25 9:4 18:12 37:24

Jefferson 8:15,17 26:14 46:4

job 10:21 11:3 12:7,9

jobs 12:25

Johnson 7:4

Jonathen 21:4,15,19,22 22:5,8,22 23:13 24:6,11,15,19, 22 25:2,7,12, 17,22 26:2,7, 12,19,24 27:5, 20 28:2,14 29:16 30:11,17, 21 33:13 34:4, 24 38:11 45:8

Joshua 14:20 20:24 26:11,14

jury 29:8

justifiably 38:9

justification 30:16 32:6,13 36:17 37:7

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**justified** 22:5,8 31:21 34:25

**justifies** 27:21

**justify** 27:4,10, 12

### K

**Kate** 8:18

**Kentuckiana** 7:5

**Kentucky** 7:7

**kind** 19:25 34:19 38:18 40:16

### L

**launcher** 22:9, 13 23:1,15,18 24:7,12,16,23 25:8,13,18,23 26:3,8 27:6,22 28:4 31:20,22, 25 32:6 38:17

**launchers** 36:8

**law** 12:25

**lethal** 19:21,25 30:1,8,24 35:5 36:4 38:9 46:13

**letter** 17:20

**letters** 17:20

**Lindsey** 7:4 23:7

**list** 14:8,14 15:17 21:13 23:23 44:20 45:2

**listed** 14:12 15:9,12 17:20, 24 33:23 46:11

**litigation** 13:6, 10

**located** 7:6

**location** 7:17 37:3 42:13 43:12 44:12

**locations** 33:2 41:24

**long** 10:24,25 11:10 12:21

**looked** 14:20 39:16 41:17

**lot** 33:23 39:17

**Louisville** 7:7

**Lowe** 8:5 9:6 46:6,8,9,18

### M

**Main** 7:6

**make** 10:12

**making** 31:8 42:25 45:9,15

**management** 19:7,13

**manner** 38:18

**material** 14:16, 17 27:4

**materials** 21:7

**matter** 7:10 27:16

**Mcnamee** 19:23

**mentioned** 24:1

**Michael** 7:20 8:5

**Mike** 9:22 46:9

**millimeter** 23:15

**mind** 17:6

**minute** 28:1

**minute-and-a-half** 28:13

**minutes** 18:7

**moment** 13:18 22:16 27:22

**Morales** 8:1 9:8 21:24 23:2, 16 24:24 25:4, 9,14,19,24 26:4,9,20,25 27:7 28:16,23 29:5,11,18,25 30:6,14,18,23 31:5,10,17 32:14 33:17,19 34:7,12,17 35:3,25 36:16, 22 37:6,12,16 38:23,25 40:2 41:1 42:4,22 43:3 44:21 45:11,17,22 46:1

**MST** 46:21

**munitions** 13:8 17:10 30:2,9,11,25 38:9 46:13

### N

**named** 8:6 15:21 16:5,10

**names** 17:14 31:13

**narrow** 27:15

**nods** 10:13

**non-retained** 26:15

**number** 7:14 14:3

### O

**oath** 10:2

**object** 34:17 44:21

**Objection** 21:24 23:2,16 24:24 26:20,25 27:7 28:16,23 29:5,11,18,25 30:6,14,18,23 31:5,10,17 32:14 33:17,19 34:7 35:3,25 36:16,22 37:6, 12,16 38:23 40:2 41:1 42:4, 22 43:3 45:11, 17

**objections** 25:4,9,14,19,24 26:4,9 34:12

**occasions** 38:17

**occur** 42:20

**occurred** 43:4

**offering** 18:2

**Office** 8:4,16

**officer** 7:10 8:22,25 9:4,10, 20 11:6,7 18:12 19:20 29:15 31:24 32:4,13 34:23 35:5 37:24 38:16 46:10

**officer's** 19:22 31:20 37:9

**officers** 8:2,12 29:20 31:9 35:16,17,20 36:4,12 37:1 38:8

**officers'** 41:16

**official** 8:3,13

**online** 7:4

**operator** 41:10

**opine** 43:16

**opinion** 14:11 15:18,24 16:1, 7,12 30:10,15, 19,20 31:1,2,18

**opinions** 17:20,23 18:2 21:1,12,14 24:2 30:4,7 31:14 38:6,15 39:3,19 40:14 42:10 43:8,22 44:9

**order** 31:19

### P

**p.m.** 7:9 18:9, 15 34:6,24 37:21 38:2 46:20,21

**Packard** 15:22 16:5,17 17:4,13 31:11,15 38:11 45:15

**pages** 19:9 20:2

**pan** 41:7,10

**panning** 41:6

**paragraph** 14:2

**Pardon** 45:22

**Parker** 8:15

**part** 13:10

**parties** 9:3

**Pat** 14:22

**Patricio** 20:25 26:23

**Patrick** 20:25 26:22

**patrol** 11:4,6,7, 11,16,19 12:10, 11,20,21

**paused** 28:9

**PDF** 26:1

**Pearl** 34:5,25

**pending** 7:12 10:6

**people** 20:17 31:25 32:7 34:20 38:8

**pepper** 17:8 36:6 37:1

**period** 40:5

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of JASON PETRUCELLI, taken on January 25, 2022

52

person 31:20, 22 32:7,8 35:9
perspective 39:22 40:4,9 41:20 42:11 43:9,11,23 44:10
pertain 21:7 34:15
Peter 8:1
Petrucelli 7:10 8:23 9:1,4,10, 20 18:12,17 37:24 46:10
phone 21:9,18, 21
places 41:18
plaintiff 21:4, 14 34:16 45:9
plaintiffs 7:21, 24 15:21 16:5, 10 30:5 31:8 38:22 42:2,25 44:1,16
plaintiffs' 7:18
play 27:18 28:1
played 28:13
PLAYS 23:9 28:6
point 10:4
pole 41:12
police 9:1 10:22 11:7,24 12:2,12,13,17, 22 13:2 39:14
policy 46:15
Porter 7:21
portions 15:14
position 10:24, 25 11:10 12:5, 14,16,19
possibly 40:8
preparation 14:15,18

prepared 13:11
preparing 14:9
present 13:5
pretty 27:15
previously 24:1
prior 11:18 12:7,8,19,20, 21,24 14:24
privilege 44:22
PROCEEDINGS 7:1
projectile 35:6
projectiles 19:21,25
proper 30:8
protest 35:8,22
protester 37:2
protests 33:4 34:2 36:14 39:5,22 42:12 43:10,12,24 44:11
provide 32:12 40:13 42:9 43:21 44:8
provided 43:7 45:3,4 46:14
putting 21:11 32:16

---

Q

question 10:6 16:3 23:5,8,19, 20 27:19 29:6 33:20 34:10
questions 9:23 10:3 18:19 20:16,18 45:19, 25 46:1,3,4,18

---

R

raise 9:11
range 11:21, 22,25
react 22:18
read 23:7
reading 26:16 38:7
reason 10:12, 15 36:15
recall 19:8,18, 20,22,24 20:2 26:13,16,17,21 27:1 39:11,16 42:23 44:7
received 17:9
recollection 19:6
record 8:24 10:11 18:7,8, 10,11 37:19,20, 22,23 46:20
recorded 20:7 21:10
recording 20:8
regard 30:20
relate 17:3 32:19 33:2
relates 16:14 32:25 33:6
relating 26:19 38:10 44:16
relationship 34:3
rely 20:24 24:2 38:6,14 39:2
remember 14:19 16:19 19:12 39:7,10, 13 40:19,20 45:1
remotely 8:9, 13,19

repeat 11:14
report 14:9,15 17:25 18:20 24:5 38:5
reporter 7:5 9:12,13,17 10:10 23:9
Reporters 7:6
representing 7:5 46:9
REQUESTED 23:9
resort 10:15
respect 37:1
retained 29:23
review 20:8 21:7,17 22:1,2, 19,23 23:12 44:19 45:4
reviewed 13:14 14:9,14, 23,25 15:7,9, 10,12,18 17:24 18:4,20,21,25 19:3,10,15 20:3,12 21:9, 21,25 23:23 27:4 32:12
reviewing 46:10
Rock 8:20
role 12:8 13:6
roughly 12:4, 14
rounds 20:1
rules 10:1

---

S

Sanford 38:11
scope 27:14 34:18 35:10 39:4 40:16
screen 13:17, 19 21:12 27:23 32:17

scroll 13:23,25 14:7 15:2 17:18
Sebba 7:20 9:7,19,22 18:6, 16 20:14 45:21, 23,24
September 11:1,17
Serrant 15:15 20:8,25
Serrant's 14:22 19:16 26:23
Shaker 14:22 15:15 20:25 26:22
Shaker's 18:22 19:9 20:3
shakes 10:13
share 13:17
shoot 31:24 32:5,13 35:23
shooting 22:8 27:4,21 28:3 30:17
shot 21:4,19,21 22:17,25 23:14 24:6,11,15,22 25:3,7,12,17,22 26:2,7 28:15,21 29:15 31:22 34:4,23
shotguns 36:10
show 13:16 34:18
showed 24:15 39:11 43:25
showing 27:25 38:4
situations 36:2 38:19
skipped 16:3
Smith 8:15 16:10,15,16 17:3,12 31:12,

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of JASON PETRUCELLI, taken on January 25, 2022

53

| | | | | |
|---|---|---|---|---|
| 15 38:11 45:14 46:4<br>**sock** 20:1<br>**sorts** 41:18<br>**sounds** 17:5<br>**specifically** 32:2<br>**specifics** 26:21<br>**speculate** 29:1,3,8,12<br>**spoke** 11:14<br>**spray** 36:6,14 37:2<br>**sprayed** 17:8<br>**stamped** 40:23 41:2<br>**stand** 34:23<br>**Stanford** 16:10 45:14<br>**start** 10:20 12:4 16:4,20,21<br>**started** 9:23,24 12:22<br>**starting** 7:18<br>**starts** 14:2<br>**state** 7:16 8:23<br>**stated** 30:7<br>**States** 7:12<br>**stay** 41:9,11<br>**stop** 27:20 28:2,10<br>**STOPS** 28:7<br>**street** 7:6 41:11<br>**subjects** 17:7<br>**sued** 31:3<br>**Suite** 7:7<br>**Summary** 24:5 38:5<br>**suspect** 14:1 | **swear** 9:12,13<br>**sworn** 23:13<br>**Sydney** 7:3 18:13 37:25<br><br>——— T ———<br><br>**taking** 20:19<br>**talk** 30:8<br>**talked** 26:12<br>**talking** 26:17 27:1<br>**target** 32:2,4<br>**technician** 7:4<br>**testified** 24:1<br>**testimony** 9:14 22:20,23, 25 23:9,14 24:19,22 25:2 26:24 45:8<br>**things** 10:16 34:19<br>**thinking** 17:1,2<br>**threatening** 29:17<br>**throwing** 29:16<br>**thud** 22:13,16<br>**time** 7:8 9:25 18:9,14 20:19 37:3,11,21 38:1 40:5 42:16 44:12 45:20 46:20<br>**timeframe** 43:13<br>**title** 10:21<br>**today** 7:5,7 18:14 20:19 38:1<br>**top** 13:24 23:25 33:24<br>**totality** 17:11 | **train** 35:16,20 36:12,25<br>**training** 11:25 30:1,8 35:17 36:1,3 46:14<br>**transcribed** 20:6<br>**transcript** 20:9,10,11<br>**true** 36:25<br>**truth** 9:15<br><br>——— U ———<br><br>**uh-huh** 10:16<br>**unclear** 23:10<br>**understanding** 13:6,7 17:12<br>**Understood** 17:16<br>**unit** 12:10,11<br>**United** 7:12<br><br>——— V ———<br><br>**versus** 7:11<br>**vicinity** 32:1<br>**video** 7:4,24 8:13 20:7 21:9, 18,21 22:2,4,7, 11,14,15 23:3 24:14 27:15,17 28:6,7,19 29:14 32:25 34:8 35:1 37:25 39:8,12, 13,15,18 40:5, 10,21,22,24 41:22 42:9 43:13,15,21,25 44:8,13,15 46:11<br>**videoconference** 7:9 18:13<br>**videos** 14:12 17:24 18:3 24:10 32:11,12, 19,24 33:2,12, | 13,22,23 34:1, 14 38:13 39:17 40:13,18 41:15, 20<br>**view** 39:23<br>**violation** 46:15<br><br>——— W ———<br><br>**walking** 41:17<br>**Wang** 7:23 9:5 20:23 23:7 28:8 37:19 38:3 45:19<br>**warranted** 28:21<br>**warrants** 28:3<br>**Washington** 43:7,12<br>**watch** 22:14 27:17 40:24<br>**watched** 22:15<br>**watching** 19:21 38:16,18<br>**weapons** 36:4 46:16<br>**week** 14:25<br>**weeks** 15:1<br>**West** 7:6<br>**Whatever's** 43:15<br>**whatsoever** 29:9 30:15<br>**words** 10:17<br>**working** 12:1<br>**writing** 10:11<br>**written** 20:10, 11 32:21<br><br>——— Z ———<br><br>**Zach** 15:22 16:5 38:11 45:15 | **Zoom** 7:22 |



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com