IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT COURT OF COLORADO

Civil Action Nos. 1:20-cv-01878-RBJ & 1:20-cv-01922-RBJ-MEH (consolidated)

ELISABETH EPPS, *et al.*

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

Defendants

# EXPERT REPORT OF NORMAN STAMPER

## Experience and Qualifications

1. I have been actively involved in police policies and practices, and law enforcement research and education since 1966. I have held numerous leadership roles in two police organizations, including the following:

- From 1969 to 1982, I served as sergeant, lieutenant, and captain, as well as organizational ombudsman and special advisor to the police chief within the San Diego Police Department.

- From 1983 to 1986, I was Deputy Chief of Police in charge of the Office of Field Operations in San Diego.

- From 1986 to 1988, I was Deputy Chief of Police in charge of the Office of Personnel Services in San Diego.

- In 1988, I served as Deputy Chief of Police in charge of the Office of Special Operations (Investigations Bureau).

- From 1989 to 1994, I was the Executive Assistant Chief of the San Diego Police Department. As second-in-command to the Chief of Police, I was responsible for all day-to-day operations of the 2,834-member agency in the nation's then-sixth largest city.

- From 1994 to 2000, I was Chief of Police of the City of Seattle. I was responsible for the executive leadership of the 1,800-member organization and in charge of all policies and practices of the agency.

Exhibit 17

Plaintiff Duran was not violent, throwing anything, at risk of causing imminent bodily injury to other persons, or attacking an arrest teams or subject to arrest.

87.  Plaintiff Duran submitted a complaint to Internal Affairs. No one was disciplined as a result. In the "decline" letter sent to Duran by Commander Magen Dodge of the Internal Affairs Bureau, she appears to cast doubt on the veracity of his allegation (despite his production of video evidence), by pointing to the fact that he could not identify the officers (who were wearing riot gear) and stating that his video showed that he was walking backwards when struck and that he was able to walk without assistance after being struck. (DEN 8076.) This letter (and the other "decline" letters, discussed in more detail below) do not show any serious attempt by the DPD to investigate citizen complaints of use of force during the GFP.

88.  **May 31, 2020 shooting of Plaintiff Joe Deras:** According to Plaintiff Deras's declaration, he was marching with other protesters near the intersection of Colfax and Washington at approximately 8:30 p.m. on May 31, 2020, when he was struck with what he believed were three tear gas canisters. (Deras Declaration, ¶¶ 10-17.) The HALO camera video from this intersection at this time (DEN 3871) shows protesters marching east on Colfax. The camera is facing west and the intersection cannot be seen in the minutes before 8:30 p.m. At about 8:29 p.m., protesters can be seen stopping and backing up, away from the intersection. The camera shifts direction and faces north, in the intersection. A line of police officers can be seen behind large clouds of gas, standing just north of Colfax on Washington. (DEN 3871 at 8:29-8:30 p.m. MT.) It appears from the HALO camera footage that Plaintiff Deras (wearing a white helmet), may have run into the middle of the intersection to kick an object. (DEN 3871 at 8:30:43 p.m. MT.) He was a good distance away from the officers in the skirmish line. Even if Deras was kicking an object in the intersection, it would have been contrary to generally accepted police practices for officers to shoot him three times with projectiles, hitting him in the head, back and hand. Also, according to Deras, the force used was without warning. (Deras Declaration.)

Case No. 1:20-cv-01878-RBJ   Document 288-16   filed 02/11/22   USDC Colorado   pg 3 of 4





DEN 3871 at 8:30:37 p.m.

89. **May 31, 2020 shooting of Plaintiff Zach Packard:** At approximately 9:12 p.m. in the vicinity of the intersection of Colfax and Washington, Plaintiff Zach Packard was shot in the head with a projectile by an officer shortly after he kicked a gas or smoke canister off the curb on the south side of Colfax. The incident is depicted in photographs produced at BLM_00000040-42. There are numerous BWC videos produced by DPD and the APD that show officers firing smoke or gas canisters, as well as less-lethal munitions rounds from shotguns, into the intersection of Colfax & Washington at this time. (COABLM 508; COABLM 450; DEN 5087; DEN 5110; DEN 5114.) The BWC produced at COABLM 508 shows that at approximately 9:12, the officers were told something to the effect that if individuals kicked the

52

Exhibit 17

tear gas canisters, "go ahead and hit 'em." or "go ahead and see if you can hit 'em." (COABLM 508.) This use of force was contrary to generally accepted police practices.

With respect to both Plaintiff Deras and Plaintiff Packard, it was not appropriate to directly fire a projectile—whether it be a bean bag or sock round, a foam baton, or a tear gas canister—at their heads or bodies. As noted, such use of force is potentially lethal or can cause serious bodily injury, and is only warranted when officers are confronted with force from an aggressive or violent individual posing a threat that is potentially lethal or can cause serious bodily injury to the officer or others. Even if they were kicking tear gas canisters, neither Deras nor Packard appeared to be posing such a threat.





53

Exhibit 17