Page 1

IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT COURT OF COLORADO

Civil Action Nos. 1:20-cv-01878-RBJ & 1:20-cv-01922-RBJ-MEH & 1:20-cv-03155-KLM (Consolidated)

---

BLACK LIVES MATTER 5280, et al.,

    Plaintiffs,

vs.

CITY AND COUNTY OF DENVER, et al.,

    Defendants.

---

VIDEOCONFERENCED DEPOSITION OF
KEITH VINCENT VALENTINE, JR.
May 19, 2021

---

VIDEOCONFERENCED APPEARANCES:

ON BEHALF OF THE PLAINTIFF BLACK LIVES MATTER 5280:
    PATRICK C. REIDY, ESQ.
    Arnold & Porter Kaye Scholer LLP
    70 West Madison Street, Suite 4200
    Chicago, Illinois  60602
    Phone:  312-583-2424
    Email:  patrick.reidy@arnoldporter.com

ON BEHALF OF THE CONSOLIDATED PLAINTIFFS SARA FITUORI, JACQUELYN PARKINS, KELSEY TAYLOR, YOUSSEF AMGHAR, ANDY SANNIER, FRANCESCA LAWRENCE, JOE DERAS, AND JOHNATHEN DURAN:
    MAKEBA RUTAHINDURWA, ESQ.
    Loevy & Loevy
    311 North Aberdeen, 3rd  Floor
    Chicago, Illinois  60607
    Phone:  312-243-5900
    Email:  makeba@loevy.com

Page 102

1  obviously, about the turn cameras off, turn cameras on.
2  I just want to reiterate the general confusion that was
3  going on and the mass chaos. And obviously at some point
4  I heard cameras off, and I go to turn my camera off. And
5  I'm not sure if that's accurately represented in this
6  video, just the general lack of ability to communicate
7  and get that communication across. And so when I said
8  cameras off, it's because that's what I heard and that's
9  what I did and that's what I passed down.
10       Q. Okay. Understood.
11          Shortly before the break we were watching a
12  video where an individual standing behind the individual
13  who threw an object at you was hit in the face with a
14  pepperball.
15          Do you remember that?
16       A. I do remember that.
17       Q. And we don't have any body-worn camera
18  footage from you for that incident because your camera was
19  off, right?
20       A. I -- I don't know what other footage you
21  have or the attorneys have, but as far as footage I've
22  seen, no.
23       Q. If your body camera footage was on and
24  recording, would we have had a better opportunity to see
25  exactly what happened to the woman who was hit in the face

Page 103

1  with a pepperball?
2          MR. HUSS: Form and foundation.
3       A. Again, I can't -- I can't speak to
4  whatever the footage is out there. I don't -- I don't
5  know what's -- what else you guys -- what else the
6  attorneys have. I have no idea.
7          MR. REIDY: I have further questions. I'd
8  like to reserve time to ask questions, depending on the
9  other counsels' questions as well, but for now I'll turn
10  it over.
11          MS. RUTAHINDURWA: Hi, Officer Valentine,
12  or --
13          THE VIDEOGRAPHER: Counsel, I'm sorry
14  to -- I'm sorry to interrupt you. Can we briefly go off
15  the record to resolve a technical issue?
16          MS. RUTAHINDURWA: Yeah.
17          MR. REIDY: Yeah, sure.
18          THE VIDEOGRAPHER: Going off the record.
19  The time is 12:52.
20          (Recess from 12:52 p.m. to 12:55 p.m.)
21          THE VIDEOGRAPHER: We are back on the
22  record. The time is 12:55.
23                EXAMINATION
24  BY MS. RUTAHINDURWA:
25       Q. Okay. Hi, Mr. Valentine. As I mentioned,

Page 104

1  my name is Makeba. I represent the Fitouri plaintiffs in
2  this matter. Thank you for taking several hours out of
3  your day to be here. I'm going to try and get through my
4  questions as quickly as possible.
5          You, a couple of minutes ago, stated you
6  wanted to clarify a portion of your testimony based on
7  conversations about the body-worn camera being turned on
8  and off, correct?
9       A. Correct.
10       Q. During the breaks that we've had, have you
11  been speaking with either Mr. Huss or Mr. Davis?
12       A. Yes.
13       Q. And what have you been discussing?
14          MR. DAVIS: Objection.
15          MR. HUSS: Objection. Privileged
16  information.
17          MR. DAVIS: Don't answer that question.
18  It calls for privilege. It's an inappropriate question.
19       Q. (By Ms. Rutahindurwa) Are you going to
20  listen to your counsel and not answer the question that I
21  asked?
22          MR. HUSS: Objection.
23          MR. DAVIS: Counsel, the objection was to
24  privilege. If you insist on pursuing this, we need to
25  get a judge on the line.

Page 105

1          MS. RUTAHINDURWA: I understand that, and
2  I'm asking him to acknowledge that he is going to listen
3  to his counsel's advice and not answer the question
4  asked.
5          MR. DAVIS: He's not -- you can ask
6  whether he's going to answer a question that involves
7  privilege.
8          MS. RUTAHINDURWA: Okay. I'll move on.
9       Q. (By Ms. Rutahindurwa) In your officer
10  statements, you wrote that you were assigned a less lethal
11  weapon, correct?
12       A. Yes.
13       Q. Who assigned you the pepperball gun?
14       A. Nobody.
15       Q. Okay. So you, in fact, weren't assigned a
16  less lethal weapon?
17       A. I'm assigned it as a general term. Like
18  it was handed out to me at the beginning of the shift. I
19  don't recall exactly who handed it to me, to answer your
20  question more specifically. So, no, I don't know who
21  handed it to me. Assignment, sure. I don't know who
22  assigned it.
23       Q. Okay. But it's your understanding that
24  someone did, in fact, hand you a less lethal weapon?
25       A. Yeah.