IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 1:20-cv-01878-RBJ *consolidated with 1:20-cv-01922-RBJ*

ELISABETH EPPS, et al.,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, et. al.,

    Defendants.

ORDER ON JEFFERSON COUNTY DEPUTIES' MOTION FOR SUMMARY JUDGMENT

Defendants Anthony Hamilton and Timothy Dreith, who are Jefferson County Deputy Sheriffs (the Jeffco deputies), filed a motion for summary judgment (ECF No. 253). For the following reasons, that motion is GRANTED.

## I. STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs.*, Inc., 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely

1

on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in her favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "[T]he facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

## II.     BACKGROUND

This case is a consolidation of claims arising from police-protestor interactions during protests in the wake of George Floyd's murder by a police officer. The claims against the Jeffco deputies arise out of a single use-of-force incident near Washington and Colfax on May 31, 2020 at about 8:30 pm. *See* ECF No. 219, ¶416. At the time, the Jeffco deputies and other officers

were arranged in a line and deploying less-lethal force[1] against protestors, some of whom were throwing and/or kicking objects at the officers. *See* ECF Nos. 253 at ¶¶7; 289 at RSF ¶ 14.[2] It is disputed whether police deployment of flash-bang grenades and tear gas cannisters incited the previously peaceful crowd, or whether objects thrown at the police precipitated police use force. *See* ECF No. 289 at RSF ¶9.

At about 8:30 pm, plaintiff Joe Deras emerged from the group of protestors, kicked a tear gas cannister,[3] and was struck three times by less lethal munitions. The first munition hit him in the head and knocked his helmet off. The second munition hit him on his palm. The third munition hit him on his buttocks as he had turned away. *Id.* at RSF ¶¶31–33. Deras is not sure exactly what type of munitions hit him but knows they were fired by police and believes them to be bean bag rounds. *See id.* at RSF ¶22.

Plaintiff Deras claims that the Jeffco deputies shot him. He argues that the Jeffco deputies violated his Fourth Amendment right to freedom from unreasonable seizures and his First Amendment right to freedom of expression. Defendants respond that they are entitled to qualified immunity and request this Court grant summary judgment in their favor.

### III.   ANALYSIS

Qualified immunity protects government officials acting in their individual capacities so long as "their conduct does not violate clearly established statutory or constitutional rights of

---

[1] So-called "less-lethal" force includes tear gas and chemical irritants, kinetic impact projectiles of various kinds (bean bag rounds, rubber bullets, etc.), grenades, pepper spray, and weapons intended to stun with light and sound. ECF No. 178 ¶ 13. The term "less-lethal" is more accurate than "non-lethal" because these types of force can cause death in certain situations.

[2] When citing to plaintiff's response brief, ECF No. 289, I will cite to "RSF" for plaintiff's response to defendants' statement of facts (pages 1–7) and "PSAF" for plaintiff's statement of additional facts (pages 7–11).

[3] The parties dispute whether Deras kicked the cannister toward the police officers or merely away from vulnerable protestors.

3

which a reasonable person would have known." *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Determining whether an official is entitled to qualified immunity is typically a two-step inquiry. *Id.*; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  The Court must ask (1) whether plaintiff has sufficiently demonstrated that a constitutional violation occurred; and (2) whether the constitutional right at issue was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232.

### A. Causation

Plaintiff alleges that his constitutional rights were violated when he was shot with less lethal munitions.  Defendants argue that the evidence cannot support plaintiff's allegation that either Hamilton or Dreith shot Deras with a less lethal munition and therefore cannot support the allegation that one of the Jeffco deputies deprived plaintiff of constitutional rights.  Plaintiff responds that the record sufficiently identifies the Jeffco deputies as the shooter or shooters.  At the very least, plaintiff argues, the claim survives summary judgment because the record indicates that one of the Jeffco deputies shot Deras, even if plaintiff cannot now identify which one pulled the trigger.

1. Whether Plaintiff Has Set Forth Sufficient Evidence Showing Which Officer Caused the Alleged Constitutional Deprivation

"To prevail on a claim for damages for a constitutional violation pursuant to 42 U.S.C. § 1983, a plaintiff must establish the defendant . . . caused or contributed to the alleged violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).  A plaintiff cannot succeed on a claim by showing merely that a constitutional violation occurred—he or she must show "which officer or officers personally participated in the violation." *Panaderia La Diana, Inc. v. Salt Lake City Corp.*, 342 F. Supp. 2d 1013, 1031 (D. Utah 2004).

Plaintiff claims that the record supports a finding that the Jeffco deputies caused the alleged violation. They provide two chains of logic by which a jury could conclude that the Jeffco deputies shot Deras. The first line of reasoning is as follows: (1) Deras was shot by bean bag rounds; (2) the Jeffco deputies were shooting bean bag rounds; (3) other officers were not shooting bean bag rounds; (4) therefore, one or both of the Jeffco deputies shot Deras. I will call this the "beanbag theory." The second line of reasoning goes like this: (1) Deras was shot after kicking a cannister; (2) the Jeffco deputies shot individuals kicking cannisters; (3) no other officers reported shooting individuals kicking cannisters; (4) therefore, one or both of the Jeffco deputies shot Deras. I will call this the "kicking theory." *See* ECF No. 289 at RSF ¶16.

Neither argument sufficiently identifies the officer or officers who shot plaintiff. Even assuming a jury would find all disputed facts in plaintiff's favor, the most that plaintiff can accomplish is narrowing the list of suspects to deputies Dreith and Hamilton. A jury could not conclude that Dreith shot Deras, because Hamilton could have done it. And a jury could not find that Hamilton shot Deras, because Dreith could have done it. This seeming Catch-22 can sometimes be avoided, *see infra*, but under the traditional standard for causation I cannot find that the record could establish which defendant caused plaintiff's injury.

    2.  <u>Whether a Different Burden of Proof for Causation Is Appropriate</u>

The question of causation is closely tied to burdens of proof. The standard approach, discussed above, requires that a plaintiff prove which individual defendant caused a constitutional deprivation. Though usually appropriate, the standard approach could incentivize wrongdoer defendants to conceal their identities or the identities of other wrongdoers and thus prevent an injured plaintiff from proving causation. To avoid this injustice, an alternative approach first requires that a plaintiff prove that a group of defendants caused a constitutional violation and then shifts the burden to each individual defendant to prove that they did not

individually participate in the deprivation.  The Ninth Circuit applied this approach in *Dubner v. City and County of San Francisco*, 266 F.3d 959 (9th Cir. 2001).  In *Dubner*, a plaintiff could not precisely identify which officers had arrested her because the city did not list the arresting officers on the arrest report.  The court shifted the burden of production to the officers named as defendants, holding that because the plaintiff "did everything she possibly could to identify the arresting officers," the court could "reasonably assume she had named the right officers or [that] the City would come forward with the name of the officers who actually arrested her." *Id.* at 965.

Plaintiff in this case requests a similar burden-shifting approach.  He argues that "[a]t this stage, Deras need only present sufficient evidence for a reasonable jury to find that Hamilton, Dreith, or both, violated his constitutional rights." ECF No. 289 at p. 12.  Courts in this district have indicated support for this burden-shifting approach in certain situations.  In *Mwangi v. Norman*, 2016 WL 7223270, at *9 (D. Colo. Dec. 13, 2016) (unpublished), the court said that "in certain circumstances where a plaintiff alleges that the individual defendants all participated in a single incident and acted in concert together, it would be inequitable to require a plaintiff to articulate which specific defendant committed which specific act during the incident in question." *Panaderia* provided a more specific example:

> This court does not rule out the possibility that, in the right situation, shifting the burden to the defendants would be an appropriate response to the problem of identifying which particular officer violated a plaintiff's rights.  For example, the court can imagine a situation where a small group of officers observes one of the officers engage in excessive force.  If a plaintiff in such a case were unable to identify which particular officer committed the constitutional violations, and if the other officers circled the wagons and refused to identify the [offending] officer, shifting the burden under something like a joint tortfeasor theory might be appropriate.

342 F. Supp. 2d at 1034.

If plaintiff had plausibly narrowed down the list of possible shooters to the two defendant officers, this might be a case to apply the burden-shifting approach. I find, however, that the record does not support a conclusion that only Officer Dreith or Officer Hamilton could have shot plaintiff, and I therefore conclude that this burden-shifting approach is inappropriate in this case. Neither of plaintiff's theories purportedly narrowing down the list of potential shooters holds water. The beanbag theory does not work—at least two other Jefferson County officers deployed bean bags at individuals in the same crowd as Deras. *See* ECF No. 253-4 at pp. 8 (Officer Stegnik), 34 (Officer Brown). The kicking theory is similarly unpersuasive. It is true that only Officer Hamilton's report mentions that he fired bean bag rounds at individuals kicking gas cannisters, but that is insufficient evidence to conclude that no other officers used force on kickers instead of throwers. More individuals were throwing objects than kicking them, and it is implausible to conclude that an officer would hold his fire after a protestor propelled a projectile at the police just because the protestor had used his foot and not his hand. In fact, Officer Dreith's report does not explicitly say that he fired bean bags at anyone kicking cannisters, *see id.* at p. 4, but plaintiff still infers that Officer Dreith fired at Deras.

The inability of plaintiffs to present evidence that only one of the two defendant officers could have shot him renders application of the burden-shifting approach unfair and ineffective. In instances where application of this approach was appropriate, the burden shifting allowed plaintiffs to proceed with their claims *in order to acquire accurate information* about which individual violated their constitutional rights. In *Dubner*, shifting the burden caused the city to correctly identify the arresting officers if plaintiff had erred. *See* 266 F.3d at 965. In *Panaderia*'s hypothetical, the officers who observed but did not participate in beating the plaintiff would identify the offending officers. This information-forcing justification also

underlies the similar burden-shifting approach to tort liability. *See Ybarra v. Spangard*, 154 P.2d 687 (Cal. 1944).

In this case, permitting plaintiff's claim to proceed without identifying the shooter would not lead to accurate information about who actually deprived him of constitutional rights. The officers have testified that they do not remember whether they shot Deras and, as plaintiff points out, memories get worse over time, not better. ECF No. 289 at PSAF ¶15, RSF ¶22. Plaintiff's evidence that the officers actually did remember Deras because of his notable clothing might usually overcome such claims of faulty memory. ECF No. 289 at p. 12. But while a court might conclude that an offending officer would remember a victim of excessive force, there is no certainty here that one of the two Jeffco deputies was actually the offending officer. It is possible that plaintiff's inability to identify officers was made possible by municipal policies that helped officers evade accountability—policies permitting officers to turn off body worn cameras or absolving them of the need to file timely use of force reports, if they existed, might have had this effect. However, if municipal policies facilitated constitutional deprivations and denied injured individuals remedies against individual officers, the solution is to sue the municipality—which plaintiff Deras is currently doing. The solution is not to hold an officer liable when neither side can prove whether or not the officer was responsible for the offending conduct.

## IV.   ORDER

For the above reasons, the Jeffco deputies' motion for summary judgment (ECF No. 253) is GRANTED.

DATED this 22nd day of February, 2022.

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge