IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT COURT OF COLORADO

ELISABETH EPPS, *et al.*,
       Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,
       Defendants.

Civil Action Nos. 1:20-cv-01878-RBJ &
1:20-cv-01922-RBJ-MEH

**PLAINTIFFS' RESPONSE TO DENVER DEFENDANTS'
SECOND TRIAL BRIEF**

In its Second Trial Brief, Denver asks this Court to hold that a municipality cannot be held liable under *Monell* for constitutional violations committed by its agents and mutual-aid partners—even when the city has deployed those officers from neighboring police forces, delegated law-enforcement authority to them, embedded command officers within their ranks, and the city's policies, practices, or customs caused Plaintiffs' constitutional violations. Every court to have considered this argument has soundly rejected it. This Court should join those uniform authorities and reject the principle that a city can avoid liability under *Monell* by outsourcing constitutional violations to other jurisdictions.[1]

---

[1] Denver previously raised this argument—unsuccessfully—in a citation-less footnote at summary judgment filed on January 28, 2022. ECF No. 255 (Mot. Summ. J.) at 32 n.4; *accord* ECF No. 271 (Revised Mot. Summ. J.) at 21 n.3. That submission undermines Denver's contention that this issue only "came to light . . . on February 4, 2022." *See* ECF No. 297 (Second Trial Br.) at 1 n.1. Regardless, both the Fitouri and Epps Plaintiffs have been crystal clear since this case began that Denver is liable for the unconstitutional acts of any officers that were caused by Denver policy, practice, or custom during the George Floyd Protests, including, in particular, the actions of Aurora officers. *See, e.g.*, ECF No. 1 (Epps Compl.) at ¶ 12, No. 1:20-cv-1878; ECF No. 1 (Fitouri Compl.) at ¶ 23, No. 1:20-cv-1922. None of those allegations holding Denver responsible for harms caused by its mutual-aid partners—of which Denver was aware when these cases were filed in June and July 2020—changed when the amended complaints were filed naming officers from mutual-aid

## ARGUMENT

## DENVER IS LIABLE UNDER *MONELL* WHEN ITS POLICIES, PRACTICES, OR CUSTOMS LEAD TO THE VIOLATION OF CONSTITUTIONAL RIGHTS

As this Court held in its summary judgment ruling, "Plaintiffs' municipal liability claims against the City and County of Denver require (1) a city policy or custom; and (2) a causal link 'between the policy or custom and the injury alleged.'" ECF No. 304 at 11 (quoting *Waller v. Denver*, 932 F.3d 1277, 1283–84 (10th Cir. 2019)). Denver now seeks to impose a new "employees only" requirement on *Monell* liability, arguing that Denver may not be held responsible for the unconstitutional actions of officers from other jurisdictions. Denver cites no authority for its position because Denver's argument is contrary to *Monell* itself, which recognized that the acts of a city's "employees *or agents*" can give rise to municipal liability, provided that a city policy, practice, or custom caused the plaintiff's injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) (emphasis added).

Indeed, courts have rejected Denver's argument in the exact context from which this case arises—the unconstitutional acts of mutual-aid officers responding to a protest. In *Jennings v. City of Miami*, the plaintiffs brought suit against the City of Miami, other municipalities, and numerous individual officers, alleging violations of their First, Fourth, and Fourteenth Amendment rights resulting from "physical force" used against them while they protested a meeting in Miami of the

---

agencies. On the contrary, additional facts learned during discovery bolstered those allegations. *See* ECF No. 153 (Fitouri Second Am. Compl.) at ¶¶ 41–45 ("Defendant Denver was responsible for the actions of the members of its mutual-aid network, including the actions of officers from APD and JCRS."); ECF No. 219 (Fitouri Third Am. Compl.) at ¶¶ 41–45, 58, 84, 388, 417, 420; ECF No. 145-1 (Epps Am. Compl.) at ¶ 178 ("As stated below in Claims 3 and 4, Aurora is responsible for the violation of the rights of Plaintiffs Packard and Smith. *For the avoidance of doubt, however, Plaintiffs Packard and Smith also contend that the City of Denver is liable for the violation of the rights of Plaintiffs Packard and Smith . . . .*" (emphasis added)).

Free Trade Area of America. No. 07-cv-23008, 2009 WL 413110, at *1–2 (M.D. Fla. Jan. 27, 2009). In advance of the protests, the City of Miami solicited help from several neighboring jurisdictions and created a Joint Operational Security Plan under which the other jurisdictions agreed to submit to "a single command," with the City of Miami "in a primary leadership role." *Id.* at *1. These facts led the Court to deny the City of Miami's motion to dismiss, holding that the City of Miami was subject to *Monell* liability for the actions of its own officers, as well as the actions of officers from other government agencies operating under the Joint Operational Security Plan. *Id*. at *4–5.

A federal court in California recently reached the same result in *Anti Police-Terror Project v. City of Oakland*, No. 20-cv-3866, 2021 WL 4846958 (N.D. Cal. Oct. 18, 2021). Like the present case, *City of Oakland* arose out of the George Floyd Protests in 2020. Also like the present case, protestors who were injured by officers' use of less-lethal munitions asserted First and Fourth Amendment claims against the city where the protests took place (Oakland). In ruling on class certification, the court explained, "To prevail on their *Monell* claim based on violation of the Fourth Amendment right to be free from excessive force, Plaintiffs must establish that: (1) the deployment of tear gas by OPD [Oakland Police Department] *or the mutual aid partners* amounted to an unconstitutional application of excessive force; and (2) the City's policy caused the constitutional wrong." *Id.* at *8 (emphasis added).[2] This formulation tracked the court's earlier preliminary injunction ruling, in which the court considered actions both by Oakland police

---

[2] On February 1, 2022, the court in *City of Oakland* certified a class of plaintiffs that includes "all persons injured by tear gas deployed by the Oakland Police Department *or its mutual aid partners* during the George Floyd protests." Stipulation and Order to Certify Class, *Anti Police-Terror Project v. City of Oakland*, No. 20-cv-3866 (N.D. Cal. Feb. 1, 2022), ECF No. 149 at 2 (emphasis added).

3

officers and by OPD's mutual-aid partners in granting relief: "Plaintiffs have submitted sworn declarations and video footage showing that some of the force used by OPD officer[s], *or OPD's mutual aid partners*, was aimed at peaceful protestors who did not pose a threat to the officers or the public at large and were not engaging in illegal activity." *Anti Police-Terror Project v. City of Oakland*, 477 F. Supp. 3d 1066, 1087 (N.D. Cal. 2020) (emphasis added).

These decisions align with numerous others recognizing that *Monell* liability extends to acts committed by a city's agents, partners, or collaborators, so long as a city policy, practice, or custom caused the deprivation of federal rights. *See, e.g.*, *Ford v. City of Boston*, 154 F. Supp. 2d 131, 148–50 (D. Mass. 2001) (holding that the city could be liable under § 1983 for county-jail employees "acting as agents of the City"); *Young v. City of Little Rock*, 249 F.3d 730, 736 (8th Cir. 2001) (holding in similar factual scenario that "[i]n these circumstances, it is far from unfair to attribute to the City the policies routinely used by the County jail in the housing and processing of City prisoners"); *Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 873 (N.D. Ohio 2011) (holding that city and county could be liable under *Monell* for allegedly unconstitutional actions of a private "special response team"); *Silberberg v. Lynberg*, 186 F. Supp. 2d 157, 170 n.11 (D. Conn. 2002) (holding that city defendants could be liable under *Monell* even though "no officer from that particular town was involved in the arrest or prosecution of [the plaintiff]").

There is no dispute that Denver's mutual-aid partners were acting as Denver's agents during the George Floyd Protests in 2020. Among other evidence, Chief Pazen confirmed that officers from the other jurisdictions were subject to Denver's control, testifying that a DPD supervisor was embedded with every unit supplied by its mutual-aid partners. ECF No. 286-9 (Pazen Dep.) at 29:21–30:2. Denver's incident commander for the George Floyd Protests

4

confirmed this fact. During the preliminary injunction hearing in the *Abay* case, Commander Phelan was asked, "[D]oes the City of Denver take responsibility for the actions of other jurisdictions at the downtown Denver demonstrations?" Transcript of Preliminary Injunction, *Abay v. City of Denver*, 20-cv-1616-RBJ (D. Colo. Mar. 12, 2021), ECF No. 50 at 41:3–5. He responded: "Yes. They're working as an agent for the Denver Police Department. We ask them for help, and they come to help us. They're acting as an agent for us." *Id.* at 41:6–8. The Court acknowledged the significance of Commander Phelan's admission:

> Let me remind you what Phelan said, and he's the highest officer that represents Denver in this matter. . . . He said a couple of things that I thought were pretty significant. One thing . . . that he said that was very significant was that Denver does take responsibility for the actions of non-Denver officers whom they bring in to assist because they are -- Phelan said -- our agents. I thought that was quite significant.

*Id.* at 109:1–9. In this scenario, it is for the jury to decide whether Denver's policies, practices, or customs caused Plaintiffs' constitutional injuries. *See Young*, 249 F.3d at 736 (upholding jury verdict against City of Little Rock on *Monell* claim based on the acts of separate county employees, because the court "d[id] not believe that the jury had to accept" the city's theory that it was not responsible for the county employees' actions).

Denver's attempt to avoid the import of Colorado's mutual-aid statute—Colo. Rev. Stat. § 29-5-108—is telling. That statute provides that *the requesting jurisdiction* (here, Denver) is liable under Colorado law for "the negligent or otherwise tortious act[s]" of any officer from a mutual-aid jurisdiction. *Id.* In other words, § 29-5-108 is consistent with the *Monell* case law above: both permit the imposition of liability on the city in charge, regardless of the identity of officers under its command. Denver thus tries to argue that the Colorado Governmental Immunity

Act is inapplicable in § 1983 cases, but the City's position is only half right. The cases Denver cites stand for the proposition that a city cannot invoke the CGIA as a *defense* to liability involving § 1983 claims, as doing so would impermissibly interfere with the *vindication* of federal rights. *Walker v. Wegener*, No. 11-cv-3238, 2012 WL 1020673, at *5 (D. Colo. Mar. 2, 2012) (holding that "Plaintiffs' claims are not jurisdictionally barred pursuant to the CGIA" because "the CGIA does not apply to § 1983 claims"); *Martinez v. El Paso Cnty.*, 673 F. Supp. 1030, 1031 (D. Colo. 1987) (denying the defendant's motion for summary judgment for failure to comply with the CGIA's written notice provision because "[t]he Colorado Governmental Immunity Act does not apply to claims based on federal civil rights violations"). Nothing in those cases supports Denver's suggestion that Denver can avoid liability for the unconstitutional acts of its mutual-aid partners.

Denver argues in the alternative that "the jury will need to be instructed on this issue." ECF No. 297 at 3–4. No separate instruction is required, as the elements of *Monell* liability already capture this scenario: Plaintiffs must establish a policy, practice, or custom and show that the policy, practice, or custom caused the violation of their federal rights. Those elements apply the same regardless of whether the so-called triggerman was a DPD officer or instead worked for a mutual-aid agency. Denver can argue that its policies, practices, or customs, did not cause the violations of Plaintiffs' federal rights, and Plaintiffs will argue the opposite. As *Monell* itself recognized, there are no additional elements to establishing municipal liability based on whether the unconstitutional act was committed by a city's "employees *or agents*." 436 U.S. at 694 (emphasis added).

Finally, Denver argues that the Court should relieve Denver of its legal responsibility for the actions of its mutual-aid partners because any other result could be inconvenient to third parties.

ECF No. 297 at 4. Denver's purported concern for third-parties is misplaced. At trial, Plaintiffs will prove that *Denver's* policies, practices, or customs led to the violation of Plaintiffs' constitutional rights. That is a distinct question from whether the City of Aurora also bears liability because of its own policies, practices, or customs.

Dated: March 3, 2022

By: */s/ Elizabeth Wang*
    Elizabeth Wang
    LOVEY & LOVEY
    2060 Broadway, Suite 460
    Boulder, CO 80302
    Telephone: (720) 328-5642
    elizabethw@lovey.com

    Makeba Rutahindurwa
    LOEVY & LOEVY
    311 N. Aberdeen St.
    Chicago, IL 60607
    Telephone: (312) 243-5900
    makeba@loevy.com

    *Counsel for Fitouri Plaintiffs*

Respectfully submitted,

By: */s/ Timothy R. Macdonald*
    Timothy R. Macdonald
    Matthew J. Douglas
    Edward Packard Aro
    R. Reeves Anderson
    Colin M. O'Brien
    Brian M. Williams
    Arnold & Porter Kaye Scholer, LLP
    1144 Fifteenth Street, Suite 3100
    Denver, Colorado 80202
    Telephone: (303) 863-1000
    Timothy.Macdonald@arnoldporter.com
    Matthew.Douglas@arnoldporter.com
    Ed.Aro@arnoldporter.com
    Reeves.Anderson@arnoldporter.com
    Colin.Obrien@arnoldporter.com
    Brian.Williams@arnoldporter.com

    Diana Sterk
    Mindy Gorin
    Arnold & Porter Kaye Scholer, LLP
    250 West 55th Street
    New York, New York 10019-9710
    Telephone: (212) 836-8000
    Diana.Sterk@arnoldporter.com
    Mindy.Groin@arnoldporter.com

    Leslie C. Bailey
    Andreas Moffett
    Arnold & Porter Kaye Scholer LLP
    601 Massachusetts Ave., NW

Washington, DC  20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5555
Leslie.Bailey@arnoldporter.com
Andreas.Moffett@arnoldporter.com

Patrick C. Reidy
Arnold & Porter Kaye Scholer LLP
70 West Madison Street
Suite 4200
Chicago, IL 60602
Telephone: (312) 583-2300
Facsimile: (312) 583-2360
Patrick.Reidy@arnoldporter.com

Michael J. Sebba*
Arnold & Porter Kaye Scholer LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90017
Telephone: (213) 243-4000
Facsimile: (213) 243-4199
Michael.Sebba@arnoldporter.com

*Admitted only in New York; not admitted to the practice of law in California.

*In cooperation with the American Civil Liberties Union Foundation of Colorado*

Mark Silverstein
Sara Neel
Arielle Herzberg
American Civil Liberties Union Foundation of Colorado
303 E. Seventeenth Ave., Suite 350
Denver, Colorado 80203
Telephone: (303) 777-5482
Facsimile: (303) 777-1773
Msilverstein@aclu-co.org
Sneel@aclu-co.org
Aherzberg@aclu-co.org

*Counsel for Epps Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2022, I served via CM/ECF the foregoing **PLAINTIFFS' RESPONSE TO DENVER DEFENDANTS SECOND TRIAL BRIEF** on all counsel of record.

*/s/ Tanya D. Huffaker*