IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01878-RBJ
(consolidated with 20-cv-01922-RBJ-MEH)

ELISABETH EPPS, *et al.*,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

    Defendants.

---

**MOTION FOR JUDGMENT AS A MATTER OF LAW, OR A NEW TRIAL, OR REMITTITUR FROM DEFENDANT CITY AND COUNTY OF DENVER**

---

Defendant City and County of Denver, through undersigned counsel, pursuant to Fed. R. Civ. P. 50(b) and Fed. R. Civ. P. 59(a), hereby respectfully submits this Motion for Judgment as a Matter of Law, or a New Trial, or Remittitur, as follows:[1]

### INTRODUCTION

The jury found for Plaintiffs and against Defendant City and County of Denver ("Denver") on some of Plaintiffs' claims and awarded a total of $13,750,000 in damages against Denver. [ECF 343]. Denver renews its motion for judgment as a matter of law, asks for a new trial, and requests

---

[1] Pursuant to D.C.Colo.LCiv.R. 7.1, the undersigned counsel conferred with counsel for Plaintiffs, Timothy R. McDonald, Esq. and Elisabeth Wang, Esq. Mr. McDonald and Ms. Wang indicated Plaintiffs oppose this Motion.

remittitur of the damages awards as alternative forms of relief.[2]

# ARGUMENT

## I. DENVER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON PLAINTIFFS' MUNICIPAL LIABILITY CLAIMS

Initially, Plaintiffs presented no evidence establishing causation between any act or omission legally attributable to Denver and a specific injury to any individual Plaintiff. The Supreme Court has held there must be a direct causal link between the municipal policy and the injury. The municipal policy must be the moving force behind the constitutional violation. ***Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown,*** 520 U.S. 397 (1997). Plaintiffs must show "***this*** officer was highly likely to inflict the ***particular*** injury suffered by the plaintiff," and the injury must have been the "plainly obvious consequence" of the alleged policy. ***Bryan Cty.,*** 520 U.S. at 412 (emphases in original). To meet this causation standard, Plaintiffs offered a scattershot of five different municipal policy theories without linking them causally to the specific incidents involving Plaintiffs.

For example, with respect to Mr. Christian's use of pepper ball in the direction of Ms. Epps, no evidence was presented Mr. Christian specifically acted pursuant to an unconstitutional formal policy or an informal custom, he was a final policymaker for Denver, any final policymaker specifically ratified Mr. Christian's actions, or there was a specific known deficiency in Denver's training concerning pepper ball use that caused Mr. Christian's actions.

Similarly, with respect to the allegation Lieutenant Chavez directed officers to use pepper

---

[2] Denver files this Motion based on the Judgment entered by this Court on April 15, 2022, [ECF 360], without waiving any argument the Judgment was not appropriately entered under the Federal Rules of Civil Procedure.

balls at the home of Maya Rothlein and Amanda Blasingame, no evidence was presented demonstrating Lieutenant Chavez or anyone else involved acted pursuant to a formal policy or an informal custom, was a final policymaker, any final policymaker specifically ratified Lieutenant Chavez's conduct, or there was a specific training deficiency known to Denver that caused Lieutenant Chavez's actions.

To succeed with their municipal liability theories, Plaintiffs were required to establish causation under ***Brown*** for each of the different events of alleged constitutional violations respecting each of the 14 Plaintiffs. It is not sufficient to present alleged policies of Denver in the abstract without linking them causally to the Plaintiffs' specific constitutional violations. Plaintiffs did not present the necessary proof and as a result Denver is entitled to judgment as a matter of law on their municipal liability claims.

Second, Plaintiff never specified precisely what formal policy of Denver violated any of their constitutional rights. No evidence was presented any actual formal policy of Denver was unconstitutional and therefore this municipal liability theory is inapposite.

Third, a stringent standard must be met for an informal custom to amount to a widespread practice. "A custom has come to mean an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law. In order to establish a custom, the actions of the municipal employees must be 'continuing, persistent and widespread.'" ***Carney v. City and Cty. of Denver,*** 534 F.3d 1269, 1274 (10th Cir. 2008) (quoting ***Gates v. Unified Sch. Dist. No. 449,*** 996 F.2d 1035, 1041 (10th Cir. 1993)). Plaintiffs' evidence concerning all the informal customs of Denver was based solely and exclusively on the response to the protests in late May and early June 2020. Notably absent from Plaintiff's evidence is any

3

proof any issue raised by Plaintiffs as an informal custom occurred at any time other than the first six days of the protests. The case law describing what constitutes a custom requires more evidence than simply what occurred during the same multi-day event. Language such as "consistent" and "persistent" has a temporal component and requires evidence of an informal custom lasting longer than six days. No precedent exists supporting establishing an informal custom as advanced here. Unless the informal custom requirement is applied in a specific and particularized manner, municipal liability inappropriately devolves into respondeat superior liability.

Fourth, respecting decisions by a final policymaker, Plaintiff focus on Commander Patrick Phelan. However, to succeed respecting this theory there must be specific evidence presented Commander Phelan individually and personally participated in all the specific events involving each Plaintiff. No such evidence was presented concerning the vast majority of the events presented at trial. For example, Plaintiffs offered nothing linking any specific decision by Commander Phelan to what occurred concerning Zach Packard and Joe Deras. Nothing was presented causally linking any action by Commander Phelan to the decisions by officers of other jurisdictions to deploy less lethal munitions that injured these two Plaintiffs. He testified he never reviewed specific officer's actions, nor was it his role to do so. The same evidentiary gap exists concerning almost all the events involving Plaintiffs. Plaintiffs were required to establish causation between Commander Phelan's actions and the violations of their rights in each specific instance, not generally.

Fifth, ratification requires the specific knowledge and specific endorsement of the conduct of the subordinate by the final policymaker. ***Jackson v. City & Cty. of Denver,*** 2022 U.S. 1134, at *11 (10th Cir. Jan. 13, 2022); ***Bryson v. City of Oklahoma City,*** 627 F.3d 784, 790 (10th Cir. 2010),

4

*cert. denied,* 564 U.S. 1019 (2011). Here, Plaintiffs' reliance on the press conference of Mayor Michael Hancock and Chief Paul Pazen on the protests' second day and the general testimony from Commander Phelan he did not see any violation of policy by any officers responding to the protests is insufficient to meet the specific knowledge required for ratification. *See* ***City of St. Louis v. Praprotnik,*** 485 U.S. 112, 127 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").

Sixth, Plaintiffs' failure to train theory fails for a lack of sufficient evidence to establish any final policymaker of Denver was deliberately indifferent to any training deficiency. Plaintiffs focused on purported training deficiencies related to less-lethal devices, body worn cameras and the completion of use of force reports. Both of Plaintiffs' experts opined only on deficiencies they perceived related to the response to these protests and offered no opinions concerning anything that occurred previously. Plaintiffs attempted to save their failure to train theory based on testimony from Nicholas Mitchell concerning isolated prior events involving the use of less-lethal at an Occupy Denver protest in 2014 and comments he made concerning the use of body worn cameras in a report. However, this testimony is insufficient to establish deliberate indifference concerning any of the alleged specific training deficiencies advanced by Plaintiffs. Absent specific knowledge by Denver of a training deficiency a failure by Denver to rectify the known training deficiency deliberate indifference is not established. ***Connick v. Thompson,*** 131 S.Ct. 1350, 1359-60 (2011); ***Barney v. Pulsipher,*** 143 F.3d 1299, 1307-8 (10th Cir. 1998.

### C. THERE IS NO EVIDENCE ANY ACTION BY DENVER CAUSED ANY CONSTITUTIONAL VIOLATION BY AN OFFICER OF ANOTHER JURISDICTION

Initially, Denver reiterates its argument there is no legal support for the proposition one municipality can be held liable under a municipal liability theory for the actions of an officer of another municipality pursuant to 42 U.S.C. § 1983. No decision from the Supreme Court, the Tenth Circuit, any other Circuit Court of Appeals, or this Court so holds.

Further, assuming *arguendo* this represents a viable legal theory, the evidence at trial failed to establish a legitimate legal basis for imposing municipal liability on Denver for the actions of officers from other jurisdictions involving Mr. Packard and Mr. Deras. Plaintiffs' evidence on this issue was limited to general statements of Commander Phelan concerning his responsibility as Incident Commander for the mutual aid officers and the fact a Denver officer was present with the mutual aid officers to facilitate communication, orient them to locations, and perhaps sometimes provide direction as to specific actions to take. However, nothing presented by Plaintiffs linked the specific officers involved in deploying less-lethal munitions towards Mr. Deras and Mr. Packard with any such evidence. No evidence exists Commander Phelan specifically directed or authorized the individual decisions by the officers from other jurisdictions to deploy under the circumstances injuring Mr. Deras and Mr. Packard. Likewise, no evidence exists establishing any representative of Denver was directly and personally involved in these two deployments. Absent such evidence the causation required to hold Denver liable for these actions is absent and the claims fail as a matter of law.

### D. THE ADMISSION OF THE TESTIMONY OF NICHOLAS MITCHELL WAS IMPROPER AND SUBSTANTIALLY PREJUDICED DENVER

Mr. Mitchell's testimony was inadmissible pursuant to Fed. R. Evid. 407, 701 and 403.

The purpose of the Office of Independent Monitor ("OIM") Report was not a fact-finding investigation about what occurred. Rather, its purpose was to evaluate in hindsight the police response to the protests and offer a comprehensive evaluation and recommendation for future improvement of policies, procedures, operations and training. Mr. Mitchell's testimony concerning his investigation and the report was therefore inadmissible under Rule 407. ***Minter v. Primne Equip Co.,*** 451 F.3d 1196, 1211-12 (10th Cir. 2006); ***Davies v. City of Lakewood,*** 14-cv-01285-RBJ, 2016 U.S. Dist. LEXIS 18348 at *56-59 (Feb. 16, 2016).

Second, Mr. Mitchell's testimony should have been excluded because he lacks personal knowledge about what occurred at the protests and was never endorsed as an expert witness by Plaintiffs. Accordingly, even assuming Mr. Mitchell had relevant, admissible testimony to offer as a result of the post-remedial investigation conduct, he should only have been permitted to offer an opinion as a lay witness. Rule 701 has three requirements: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Mr. Mitchell's testimony failed this test.  *See, e.g.,* ***United States v. Bush,*** 405 F.3d 909, 916 (10th Cir. 2005) (explaining and applying first requirement); ***Morton v. Progressive Northern Ins. Co.,*** 498 F. App'x. 835, 839-40 (10th Cir. 2012) (explaining second requirement as relating "to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, weight, distance, and . . . items that cannot be described factually in words apart from inferences."); ***United States v. Murry,*** 2022 U.S. App. LEXIS 10473 at *37-38 (10th Cir. Apr. 19, 2022) (explaining and applying third

requirement). All Mr. Mitchell's knowledge was derivative. All the factual data evidencing what occurred at the protests that was reviewed and analyzed by Mr. Mitchell and OIM could have been presented at trial by Plaintiffs. Further, Mr. Mitchell's opinions were not factual in nature, but rather were conclusions and assessments. Mr. Mitchell's testimony was inadmissible.

Third, under Rule 403, the prejudice of Mr. Mitchell's testimony to Denver was profound. Mr. Mitchell was used as a former representative of Denver to criticize the police response to the protests and to buttress the conclusions of Plaintiffs' paid endorsed experts. Absent Mr. Mitchell's testimony, Denver respectfully submits the outcome of the trial would have differed.

### E. THE ADMISSION OF THE OFFICE OF INDEPENDENT MONITOR MEMOS WAS IMPROPER AND PREJUDICED DENVER

To begin, the OIM Memos were subject to the deliberative process privilege and the law enforcement privilege and should not have been produced to the Plaintiffs in further redacted form as ordered. Moreover, even assuming *arguendo* this Court's redaction decisions were legally appropriate, this Court should have excluded the OIM memos from evidence at trial pursuant to Fed. R. Evid. 407, 802 and 403. First, for the reasons discussed above, the OIM Memos were part of a process governed by Rule 407 and should have been excluded from evidence in the same manner as Mr. Mitchell's testimony. Second, the OIM Memos do not fall within the scope of Fed. R. Evid. 801(d)(2)(D). The statements are not attributable to Denver because the agency relationship is absent. OIM designed the interviews to be confidential to obtain the personal, individual perspectives of the interviewees which, as Mr. Mitchell testified, were not examined for accuracy or validity by OIM or anyone else with Denver. *Compare* **Cruz v. Farmers Ins. Exch.,** 19-cv-02337-MEH, 2021 U.S. Dist. LEXIS 16799 at *20 (D. Colo. Jan. 28, 2021) (describing Tenth Circuit rule an employee's statements are not attributable to his employer as a party-

8

opponent admission in an employment dispute unless the employee was involved in the decision-making process affecting the employment action at issue). Here, the nature of the interviews occurring in the interviewees individual capacities makes a similar analysis appropriate. Nothing about the interviews as described to the interviewees by OIM or the OIM Memos themselves suggest the OIM Memos were designed to be statements attributable to Denver.

Third, the OIM Memos prejudiced Denver. Plaintiffs used the OIM Memos without foundation to establish the truth of the matters asserted therein as admissions by Denver representatives about problems and issues concerning the response to the protests. Repeatedly, Plaintiffs suggested Denver's own personnel had acknowledged deficiencies in the response to the protests and particularly the training provided to officers on less-lethal deployment and crowd management and control. The introduction of the OIM Memos and their use in this fashion by Plaintiffs was highly prejudicial because of their nature and the imprimatur placed on them as coming from the OIM and Mr. Mitchell. The OIM Memos took on significance as evidence and their introduction as inadmissible evidence was therefore prejudicial to Denver.

### F. COUNSEL'S MISCONDUCT IN INTRODUCING DEREK CHAUVIN'S DEFENSE STRATEGY DURING THIS TRIAL WARRANTS A NEW TRIAL

During the testimony of Officer Tana Cunningham, counsel improperly interjected Derek Chauvin's criminal defense strategy into this trial, suggesting his attorney's defense included that cameras "can only see what they see." [Tr., 3/23/22, at 2655]. Defendants moved for a mistrial which was denied. [Tr., 3/23/22, at 2656-57]. A question by counsel placing prejudicial information before the jury may warrant a new trial. **Silbergleit v. First Interstate Bank, N.A.,** 37 F.3d 394, 397 (8th Cir. 1994); **Doyle v. Denver Dep't of Human Servs.,** 09-cv-03042-WYD-KMT, 2012 U.S. Dist. LEXIS 25815, at *7-8 (D. Colo. Feb. 29, 2012).

Considered in its appropriate context, counsel's misconduct tainted the fairness of the trial and fundamentally prejudiced Denver's ability to receive a fair trial. First, because this trial involved protests related to the death of George Floyd, the introduction of Mr. Chauvin's criminal defense strategy was particularly inappropriate. Effectively, counsel was suggesting Officer Cunningham's and the other police officers' conduct was the equivalent of Mr. Chauvin's murder of Mr. Floyd. An effort to brand all the police officers who testified at trial with the jury's natural antipathy to Mr. Chauvin was egregiously wrong and manifestly prejudicial. Counsel for the Plaintiffs showed a picture of Mr. Floyd during his Opening Statement and during the testimony of Plaintiff Zach Packard showed pictures of Mr. Floyd and Mr. Floyd with Mr. Chauvin. [ECF 318, at 2 (Exhs. 1117 & 1118]. All the jurors knew who Mr. Chauvin was and the interjection of Mr. Chauvin and his criminal defense into this trial was extremely prejudicial and could not be cured by this Court's subsequent instruction. Second, Defendants repeatedly raised the issue of what body worn cameras and other video cameras can capture in comparison to what the human eye can see. Counsel's misconduct deliberately targeted this defense seeking to have the jury focus solely on the videos presented by Plaintiffs rather than the entire context of what occurred during the response to the protests offered by Defendants through witness testimony of events not captured on video. Plaintiffs heavily relied on video evidence. A major component of Denver's defense was the importance of the jury considering the video evidence in connection with all the other evidence presented at trial on equal footing. The prejudice of counsel's comment cannot be understated.

Denver recognizes counsel misconduct only rarely results in a new trial. Here, however, the nature of this particular misconduct in the specific context of this case calls into question the

jury's verdict on liability and also the jury's damages awards. Denver submits it is reasonably probable the jury's verdict and its amount was improperly influenced by counsel's misconduct and is sufficient to warrant a new trial. ***Abuan v. Level 3 Communications, Inc.,*** 353 F.3d 1158, 1175 (10th Cir. 2003); ***Henning v. Union Pac. R. Co.,*** 530 F.3d 1206, 1217 (10th Cir. 2008); ***Vanderbraak v. Alfieri,*** 209 F'Appx. 185, 189 (3rd Cir. 2006).

## II. THE COMPENSATORY DAMAGES AWARDED BY THE JURY MUST BE REDUCED BY THIS COURT

This Court has the authority to reduce the Plaintiffs' compensatory damages awards through remittitur. The jury's damages awards may stand unless this Court concludes they are "so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial." ***Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*** 703 F.2d 1152, 1168 (10th Cir. 1981). "Upon a finding that passion or prejudice tainted the findings on liability and damages, the court must order a new trial. But a remittitur may be appropriate if the error affects the amount of damages awarded without affecting the finding of liability." ***Osterhout v. Bd. of Cty. Comm'rs,*** 10 F.4th 978, 996 (10th Cir. 2021) (citations omitted). "To determine whether remittitur is appropriate, courts must evaluate whether the evidence supports the verdict." ***Burke v. Regaldado,*** 935 F.3d 960, 1035 (10th Cir. 2019); ***Therrien v. Target Corp.,*** 617 F.3d 1242, 1258 (10th Cir. 2010).

Damages in a 42 U.S.C. § 1983 case are available "to compensate persons for injuries caused by the deprivation of constitutional rights." ***Carey v. Piphus,*** 435 U.S. 247, 254 (1978). A damages award must be based on actual injuries. ***Makin v. Colo. Dep't of Corrections,*** 183 F.3d 1205, 1214 (10th Cir. 1999). The abstract value of a constitutional right may not form the basis for § 1983 damages. ***Memphis Cmty. Sch. Dist. v. Stachura,*** 477 U.S. 299, 308 (1986). "The

deprivation of constitutional rights, standing alone, does not entitle a plaintiff to general damages." ***Lippoldt v. Cole,*** 468 F.3d 1204, 1220 (10th Cir. 2006). "In other words, the constitutional violation in and of itself is not tantamount to compensable injury under § 1983; instead, that violation must have caused the plaintiff demonstrable harm." ***Hall v. Terrell,*** 08-cv-00999-DME-MEH, 2009 U.S. 48870 at *15 (D. Colo. June 10, 2009).

Evaluation of the damages evidence presented at trial by the Plaintiffs demonstrates the compensatory damages awards are not supported by actual evidence. None of the Plaintiffs claimed lost wages. Only two Plaintiffs—Zach Packard and Joe Deras—received any medical treatment for their injuries. However, Mr. Deras, did not present evidence of the amount his medical treatment cost and Mr. Packard did not offer into evidence any actual medical bills. Plaintiffs testified about the emotional distress they suffered, but none presented any evidence from any physician or mental health professional to offer any actual mental health condition diagnosis. Only Mr. Packard testified about any permanent physical injury or limitation on any life activity. The vast majority of Plaintiffs claimed non-permanent injuries were based on being exposed to chemical agents during the protests, bruises from pepper balls or 40mm impacts, and non-diagnosed or supported emotional distress from their experiences.

Plaintiffs failed to present evidence of anything more than a garden variety emotional distress claim. Testimony concerning emotional distress and the impact of an event by a plaintiff alone is typically of limited value and does not support a large compensatory damages award. *See, e.g.,* ***Price v. City of Charlotte,*** 93 F.3d 1241, 1250-57 (4th Cir. 1996) (discussing multiple cases); ***Schutts v. Feldman,*** 5:88-cv-449 (EBB), 1997 U.S. Dist. LEXIS 3428 at *13-18 (D. Conn. Feb 18, 1997) (same). Courts evaluating emotional distress compensatory damages awards focus on

the specific testimony of the plaintiff, whether medical or other healthcare assistance was sought, and corroborating objective evidence supporting the plaintiff's testimony. ***Smith v. Nw. Fin. Acceptance, Inc.,*** 129 F.3d 1408, 1416-17 (10th Cir. 1997); ***Wulf v. City of Wichita,*** 883 F.2d 842, 874-75 (10th Cir. 1989); ***Blangstad v. Snowmass-Wildcat Fire Prot. Dist.,*** 642 F.Supp. 2d 1250, 1256-59 (D. Colo. 2009). The Tenth Circuit and courts in this District examine other verdicts to determine excessiveness and for purposes of emotional distress awards also examine the statutory limitations provided by 42 U.S.C. § 1981a(b)(3). ***Wulf,*** 883 F.2d at 875; ***Blangstad,*** 642 F.Supp.2d at 1258.

In comparison to other verdicts in similar cases, the amount of compensatory damages awarded by the jury here was excessive. Substantial compensatory damages verdicts are upheld only when the emotional distress is much more significant and much more supported by objective and typically medical or psychological evidence or when there is a permanent physical injury. *Compare* ***Small v. City of New York,*** 09-cv-1912(RA), 2022 U.S. Dist. LEXIS 77603 at *45-51 (S.D.N.Y. Apr. 28, 2022) (upholding $1.5 Million compensatory damages award based on specific diagnosis of PTSD with supporting medical testimony based on three separate assaults by notorious gang members while in custody of City); ***Chopra v. GE,*** 527 F.Supp.2d 230, 247 (D. Conn. 2007) (upholding $500,000 emotional distress damages award based on specific evidence concerning impact of defendant's actions on plaintiff's health); ***Watson v. E.S. Sutton, Inc.,*** 02 Civ. 2739 (KMW), 2005 U.S. Dist. LEXIS 31578, at *44 (S.D.N.Y. Sept. 6, 2005) ("Watson has not pointed us to any comparable cases—that is, cases with no permanent psychological damage or disability resulting from the harassment—with awards so high as the one the jury here gave her. The decisions she has cited approving multi-hundred-thousand dollar awards for emotional distress

all involve post-traumatic stress disorder, and plaintiffs who were forced to be medicated and out of work for extended periods of time."). Here, Plaintiffs' evidence "falls far short of the type of shocking, prolonged discriminatory conduct and/or long-term emotional harm that are part and parcel of the larger damages awards that can be sustained for egregious cases." ***Sooroojbaillie v. Port Auth. of N.Y. & N.J.,*** F'Appx. 536, 547 (2d Cir. 2020). Plaintiffs' "proof regarding emotional distress did not contain the evidence of prolonged mental harm or negative, long-term prognosis that is typically present in cases with awards around $500,000." ***Id.*** at 548.

Here, the large verdict imposed by the jury was not based on the actual evidence presented by each Plaintiff concerning their emotional distress damages. Instead, the jury appears to have been improperly influenced in the size of its verdict based on its assessment of the overall actions of Denver in responding to the protests, and arbitrarily awarded each plaintiff a similar number. Plaintiffs presented a steady stream of video evidence concerning a multitude of protest events involving people other than Plaintiffs. The jury's verdict can only be reasonably explained based on its determination Denver's overall response to the protests was inappropriate and violative of people's constitutional rights generally. However, a verdict based on such considerations is improper and cannot stand. Absent specific evidence from Plaintiffs supporting the compensatory damages awards to each of them specifically and individually, this Court must remit the jury's verdict and appropriately reduce the compensatory damages awarded each Plaintiff.

Based on these considerations, the compensatory damages awarded to each Plaintiff must be reduced by this Court. Defendants suggest the following compensatory damages awards are appropriate: Elisabeth Epps--$100,000; Ashlee Wedgeworth--$75,000; Amanda Blasingame--$100,000; Maya Rothlein--$100,000; Zach Packard--$500,000 (to account for his medical bills);

Hollis Lyman--$100,000; Stanford Smith--$100,000; Sara Fitouri--$100,000; Jacquelyn Parkins--$100,000; Kelsey Taylor--$100,000; Joe Deras--$100,000; and Claire Sannier--$100,000.

WHEREFORE, for the foregoing reasons, Defendant City and County of Denver respectfully requests this Court grant it judgment as a matter of law on Plaintiffs' claims, or alternatively order a new trial, or alternatively order a remittitur of the jury's damages awards as set forth above, and for all other and further relief as this Court deems just and appropriate.

Dated this 13th day of May, 2022.

Respectfully submitted,

*s/ Andrew D. Ringel*  .
Andrew D. Ringel, Esq.
Katherine N. Hoffman, Esq.
Robert A. Weiner, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
Telephone: (303) 628-3453
Facsimile: (303) 628-3368
E-mail: ringela@hallevans.com
hoffmank@hallevans.com
weinerr@hallevans.com

Hollie R. Birkholz, Assistant City Attorney
Denver City Attorney's Office
Civil Litigation Section
201 West Colfax Ave., Dept. 1108
Denver, CO 80202
Telephone: (720) 913-3100
Facsimile: (720) 913-3155
E-mail: hollie.birkholz@denvergov.org

*Counsel for the City and County of Denver and Jonathan Christian*

**CERTIFICATE OF SERVICE (CM/ECF)**

      I hereby certify that on this 13th day of May, 2022, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve the following all counsel of record in this matter.

      In addition, the foregoing was placed in the United States Mail, first-class postage prepaid and addressed to the following non-CM/ECF participant:

Cidney Fisk
5100 Leetsdale Dr., Apt. 438
Denver, Colorado 80246

and

Cidney Fisk
14362 E. Road
Delta, Colorado 81416

      *s/Nicole Marion*, Legal Assistant to
      Hall & Evans, L.L.C.