IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01878-RBJ
(consolidated with 20-cv-01922-RBJ-MEH)

ELISABETH EPPS, *et al.*,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

    Defendants.

---

**MOTION FOR JUDGMENT AS A MATTER OF LAW, OR A NEW TRIAL, OR REMITTITUR FROM DEFENDANT JONATHAN CHRISTIAN**

---

Defendant Jonathan Christian, through undersigned counsel, pursuant to Fed. R. Civ. P. 50(b) and Fed. R. Civ. P. 59(a), hereby respectfully submits this Motion for Judgment as a Matter of Law, or a New Trial, or Remittitur, as follows:[1]

## INTRODUCTION

The jury found for Plaintiff Elisabeth Epps and against Defendant Jonathan Christian on her Fourth Amendment claim and awarded $250,000 in punitive damages. [ECF 343, at 7-8]. Defendant Christian renews his motion for judgment as a matter of law, or asks for a new trial, or

---

[1] Pursuant to D.C.Colo.LCiv.R. 7.1, the undersigned counsel conferred with counsel for Plaintiff Elisabeth Epps, Timothy R. McDonald, Esq. Mr. McDonald indicated Ms. Epps opposes this Motion.

requests remittitur of the punitive damages award to $10,000.[2]

**ARGUMENT**

**I.  MR. CHRISTIAN IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON MS. EPPS' FOURTH AMENDMENT CLAIM OR A NEW TRIAL**

Fed. R. Civ. P. 50(b) allows a party to renew a motion for judgment as a matter of law. "Where a party moves for judgment as a matter of law prior to the case being submitted to the jury, that party may renew the motion after the jury returns its verdict. ***Cypress Advisors, Inc. v. Davis,*** 16-cv-01935-PAB-MEH, 2022 U.S. Dist. LEXIS 58669 at *5-6 (D. Colo. Mar. 30, 2022).  A Rule 50(b) Motion may be filed contemporaneously with a Rule 59 Motion.  ***Brown v. Elephant Talk N. Am.,*** CIV-18-00902-PRW, 2021 U.S. Dist. LEXIS 244649 at *3 (W.D. Okla. Oct. 7, 2021).  Judgment as a matter of law is appropriate if the evidence points but one way and is susceptible to no reasonable inferences supporting the nonmoving party's position.  ***Mountain Dudes v. Split Rock Holdings, Inc.,*** 946 F.3d 1122, 1129 (10th Cir. 2019); ***In re Cox Enters., Inc.,*** 871 F.3d 1093, 1096 (10th Cir. 2017).  "In evaluating a motion brought under Rule 50(b), the Court examines all the evidence admitted at trial, construes that evidence and the inferences from it in the light most favorable to the non-moving party, and refrains from making its own credibility determinations, re-weighing the evidence, or substituting its conclusions for those of the jury." ***Live Face On Web, LLC v. Integrity Sols. Grp., Inc.,*** 421 F.Supp.3d 1051, 1060 (D. Colo. 2019).

Fed. R. Civ. P. 59 provides this Court may "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has been granted in an action at law in

---

[2]  Mr. Christian files this Motion based on the Judgment entered by this Court on April 15, 2022, [ECF 360], without waiving any argument the Judgment was not appropriately entered under the Federal Rules of Civil Procedure.

federal court." Fed. R. Civ. P. 59(a)(1)(A).  This Court possesses discretion whether to grant a motion for a new trial.  A new trial is required when an error that substantially and adversely affected a party's rights occurred. ***Harvey v. General Motors Corp.,*** 873 F.2d 1343, 1346 (10th Cir. 1989). "A motion for a new trial neither requires nor even envisions that the court view the evidence in the light most favorable to the plaintiff.  Instead, a new trial may be granted if the district court concludes the claimed error substantially and adversely affected the party's rights." ***Stroup v. United Airlines, Inc.,*** 15-cv-01389-DDD-STV, 2019 U.S. Dist. LEXIS 230102 at *25-26 (D. Colo. 2019) (citations omitted but citing ***Henning v. Union Pac. R.R. Co.,*** 530 F.3d 1206, 1217 (10th Cir. 2008), and ***Hinds v. Gen. Motors Corp.,*** 988 F.2d 1039, 1049 (10th Cir. 1993).  An error is prejudicial if it can reasonably be concluded with or without such evidence there would have been a contrary result. ***Hinds,*** 988 F.2d at 1049.  "If a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." ***M.D. Mark, Inc. v. Kerr-McGee Corp.,*** 565 F.3d 753, 762 (10th Cir. 2009) (internal quotation marks omitted).  "While the decision to grant a new trial is sufficiently fact dependent to evade elucidation of a clear standard, in general, if 'having given full respect to the jury's findings, the judge on the entire evidence is left with a definite and firm conviction that a mistake has been committed,' it is proper to grant th emotion for a new trial." ***Bill Barrett Corp. v. YMC Royalty Co.,*** 15-cv-02177-DME, 2018 U.S. Dist. LEXIS 232411 at *13 (Jan. 24, 2018) (quoting Wright & Miller, <u>Federal Practice and Procedure</u> at 93, § 2806).  "Likewise, as to alleged improper conduct or argument by an attorney, '[t]he decision on whether counsel's misconduct at trial was so egregious as to require retrial is left largely to the discretion of the district court.'" ***Crew Tile Distrib. v. Porcelanosa L.A., Inc.,*** 13-

3

cv-3206-WJM-KMT, 2017 U.S. Dist. LEXIS 213238 at *7 (D. Colo. Dec. 3, 2017) (quoting *Abuan v. Level 3 Commc'ns, Inc.,* 353 F.3d 1158, 1175 (10th Cir. 2003)).

### A. JUDGMENT AS A MATTER OF LAW WAS APPROPRIATE ON MS. EPPS' FOURTH AMENDMENT USE OF FORCE CLAIM

Whether Mr. Christian's use of force against Ms. Epps violated the Fourth Amendment turns on whether his actions were objectively reasonable and requires a totality of the circumstances analysis considering the severity of the crime at issue, whether Ms. Epps posed an immediate threat to the safety of the officers or others, and whether Ms. Epps was actively resisting or attempting to evade arrest by flight. *Graham v. Connor,* 490 U.S. 386, 396 (1989); *Simpson v. Little,* 16 F.4th 1353, 1360-61 (10th Cir. 2021). Here, under the totality of the circumstances it was objectively reasonable for Mr. Christian to have deployed a single pepper ball in an area saturation method to encourage Ms. Epps to leave the middle of 14th Avenue where she was obstructing traffic. Mr. Christian reasonably perceived Ms. Epps posed a danger to herself and the public in the traveling vehicles, and the limited use of force in the form of a single pepper ball aimed at Ms. Epps' feet was a reasonable and constitutional use of force from the perspective of a reasonable officer in Mr. Christian's position at that moment in time.

### B. MR. CHRISTIAN WAS ENTITLED TO QUALIFIED IMMUNITY FROM MS. EPPS' FOURTH AMENDMENT USE OF FORCE CLAIM

This Court determined the law was clearly established and therefore denied Mr. Christian qualified immunity based on *Buck v. City of Albuquerque,* 549 F.3d 1269, 1291 (10th Cir. 2008), and *Fogarty v. Gallegos,* 523 F.3d 1147, 1161 (10th Cir. 2008). [ECF 304, at 15-16]. In neither decision, nor in this Court's Order, is the constitutional right at issue defined at an appropriate level of specificity. The Supreme Court has repeatedly held since both *Buck* and *Fogarty* were

4

decided the right at issue for qualified immunity purposes must be identified in a specific and particularized fashion and doing so is especially important in the Fourth Amendment context. *See, e.g.,* ***City of Tahlequah v. Bond,*** 142 S.Ct. 9, 11-12 (2021); ***Rivas-Villegas v. Cortesluna,*** 142 S.Ct. 4, 8 (2021); ***District of Columbia v. Wesby,*** 138 S.Ct. 577, 590 (2018); ***Mullenix v. Luna,*** 577 U.S. 7, 12 (2015). Conducting an appropriate specific and particularized qualified immunity inquiry here demonstrates what Mr. Christian did respecting Ms. Epps was not a clearly established constitutional violation.

## II. JUDGMENT AS A MATTER OF LAW WAS APPROPRIATE ON THE ISSUE OF PUNITIVE DAMAGES

In ***Smith v. Wade,*** the Supreme Court held punitive damages may only be awarded in a 42 U.S.C. § 1983 case when the individual official's "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." ***Id.*** Here, Mr. Christian's deployment of a single pepper ball that either did not hit Ms. Epps or struck Ms. Epps' leg is simply not enough to rise to this extremely high threshold. No evidence was presented at trial Mr. Christian acted with any evil motive or intent. Further, the facts presented at trial do not demonstrate Mr. Christian acted recklessly or with callous indifference to Ms. Epps' rights. A punitive damage award requires proof of Mr. Christian's subjective intent, and the evidence of any reckless or callous subjective intent by Mr. Christian was not established given Mr. Christian's testimony about what he did and why he did it. ***Wulf v. City of Wichita,*** 883 F.2d 842, 867 (10th Cir. 1989). "'Reckless or callous indifference' requires 'the defendant [to] have acted 'in the face of a ***perceived risk*** that [his] actions will violate federal law." ***O'Neal v. Bd. of Cty. Comm'rs of Fremont,*** 16-cv-01005-TMT-KLM, 2020 U.S. Dist. LEXIS 86796, at *20-21 (D. Colo. May 18, 2020) (emphasis and second alteration added and

quoting *Eisenhour v. Weber County,* 897 F.3d 1272, 1281 (10th Cir. 2018) and *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 536 (1999)).  Here, Ms. Epps did not present any evidence demonstrating Mr. Christian subjectively perceived the risk his decision to deploy the single pepper ball was violative of her constitutional rights prior to his doing so and therefore punitive damages are inappropriate as a matter of law.  [Tr., 3/16/22, at 1515-16].

### III.  MR. CHRISTIAN WAS PREJUDICED BY A JOINT TRIAL WITH ALL THE CLAIMS AGAINST DENVER

Defendants moved prior to trial pursuant to Fed. R. Civ. P. 42(b) *inter alia* to bifurcate the individual Plaintiffs' claims against the individual Defendants from the municipal liability claims. [ECF 251].  This Court denied this aspect of the Motion.  [ECF 278].  As the only individual Defendant at trial, Mr. Christian was distinctly prejudiced by the combined trial of the Plaintiffs' claims against Denver.  Of the numerous witnesses who testified at trial only two—Ms. Epps and Mr. Christian—testified about what occurred involving them on May 29, 2020.  Neither of Plaintiffs' experts testified about Mr. Christian and Ms. Epps.  The vast majority of the testimony and documentary evidence presented at trial had nothing to do with Mr. Christian.  The spillover impact of the other evidence solely relevant against Denver was profound.  Most particularly, the steady parade of video evidence involving other Denver police officers and other people and the allegations those actions were caused by failures by Denver itself were profoundly prejudicial to Mr. Christian.  Notably, Plaintiffs' expert Norman Stamper who was used to present most of the video evidence, did not mention Mr. Christian, Ms. Epps or the May 29, 2020, event.  None of his testimony and none of the videos presented during Mr. Stamper's testimony was relevant to the claims against Mr. Christian and would not have been admitted in a trial properly focused on Ms. Epps' claim against Mr. Christian.

Given the volume, extent, and nature of the evidence presented at trial completely and entirely irrelevant and unrelated to Mr. Christian it would be illusory to maintain it had no impact on the jury's consideration of both liability and damages concerning Mr. Christian. Mr. Christian was only one of the many Denver and other officers who responded to the protests. A fair trial for Mr. Christian would have focused exclusively on his own actions solely related to Ms. Epps on May 29, 2020. Because that did not occur during his trial, the fundamental fairness of the trial for Mr. Christian was compromised in prejudicial fashion requiring a new trial.

### A. MR. CHRISTIAN WAS PREJUDICED BY THE INTRODUCTION OF EVIDENCE CONCERNING BOTH THE POLICIES AND TRAINING OF THE DENVER POLICE DEPARTMENT AND ANY VIOLATION OF THOSE POLICES OR TRAINING

Prior to trial, based on ***Tanberg v. Sholtis,*** 401 F.3d 1151 (10th Cir. 2005), Defendants asked this Court to exclude evidence at trial concerning the policies and training standards of the Denver Police Department ("DPD") and any violation of those standards by individual police officers. [ECF 267]. Allowing this evidence at a joint trial where individual claims against Mr. Christian were presented along with claims against Denver constitutes error under ***Tanberg*** and its progeny. Assuming *arguendo* this evidence was admissible related to Plaintiffs' claims against Denver, ***Tanberg*** unequivocally and explicitly holds such evidence is inadmissible against Mr. Christian. ***Tanberg,*** 401 F.3d at 1163-64.

Plaintiffs presented extensive evidence at trial concerning DPD policies and training, how individual officers violated those policies, and whether any discipline occurred related to any policy violations. Denver in turn was required to present its counter-evidence on these issues. Plaintiffs also specifically asked Mr. Christian about these issues. Mr. Christian was asked about his training on pepper ball and other issues. [Tr., 3/16/22, at 1462-63]. Mr. Christian was

7

questioned about his use of body worn camera and his compliance with DPD policy. [Tr., 3/16/22, at 1473-1475]. Mr. Christian was asked about whether he was disciplined for violating DPD body worn camera and use of force reporting policies. [Tr., 3/16/22, at 1475]. Plaintiffs asked Mr. Christian whether his deployment of pepper ball towards Ms. Epps was consistent with DPD policy and his training and whether he was disciplined for the incident. [Tr., 3/16/22, at 1482]. Mr. Christian was asked whether he documented his use of force concerning Ms. Epps in a use of force report and whether he was disciplined for not doing so. [Tr., 3/16/22, at 1486]. Mr. Christian was asked about his attendance at a three-day crowd control class and the DPD's discontinuance of the class. [Tr., 3/16/22, at 1530-31]. A juror even asked Mr. Christian about his training. [ECF 329-1 (Question 29); Tr., 3/16/22, at 1540-41]. All of this evidence was inadmissible under ***Tanberg*** against Mr. Christian although it may have been relevant to Plaintiffs' claims against Denver based on prior rulings of this Court. Mr. Christian, however, suffered prejudice due to the introduction of this evidence, particularly when it was introduced during Plaintiffs' questions to him directly.

### B. MR. CHRISTIAN WAS PREJUDICED BY THE INTRODUCTION OF EVIDENCE AT TRIAL CONCERNING OTHER INCIDENTS HE WAS INVOLVED WITH AT THE PROTESTS UNRELATED TO MS. EPPS

Plaintiffs were also improperly allowed to introduce evidence concerning other incidents involving Mr. Christian at the protests that had nothing to do with Ms. Epps. First, Plaintiffs questioned and played video of Mr. Christian's use of an OC fogger on two other protestors on May 28, 2020, the night prior to the event with Ms. Epps occurring on May 29, 2020. [Tr., 3/16/22, at 1490-1495]. Second, Plaintiffs questioned and played video of Mr. Christian's deployment of pepper balls from an RDV towards people in front of the Denver Public Library also on May 28, 2020. [Tr., 3/16/22, at 1495-1496, 1524-25 & 1536-40]. The admission of this evidence of other

events violated Fed. R. Evid. 404(b) and Fed. R. Evid. 403 and was prejudicial to Mr. Christian and requires a new trial.

## IV.  THE PUNITIVE DAMAGES AWARD AGAINST MR. CHRISTIAN IS EXCESSIVE AND SHOULD BE REDUCED UNDER THE DUE PROCESS CLAUSE

Courts bear responsibility to ensure all punitive damages judgments are fair, reasonable, proportionate, and consistent.  **Exxon Shipping Co. v. Baker,** 554 U.S. 471, 499-502 (2008). Punitive damages serve the same purpose as criminal penalties but are imposed in civil proceedings in which a defendant does not receive the same due process protections afforded to criminal defendants.  **State Farm Mut. Auto. Ins. Co. v. Campbell,** 538 U.S. 408, 417 (2003). Excessive awards against individuals can inflict great harm not only on the wrongdoer, but also on the wrongdoer's innocent dependents and, upon bankrupting a family, can inflict further charges on the public treasury.  **Southerland v. City of New York,** 681 F.3d 122, 137 (2d Cir. 2012) (Jacobs, C.J., dissenting from denial of rehearing *en banc*).  An instrument available to courts to achieve the goal of maintaining the fairness, reasonableness, proportionality, and consistency of any punitive damages award is the order of remittitur, which sets aside the award, ordering a new trial, unless the plaintiff agrees to accept a lesser amount.  See **Blunt v. Little,** 3 F. Cas. 760, 761-62 (C.C.D. Mass. 1822) (Story, J.).  "Judicial review of the size of punitive damage awards has been a safeguard against excessive verdicts for as long as punitive damages have been awarded." **Honda Motor Co. Ltd. v. Oberg,** 512 U.S. 415, 421 (1994).

In a series of cases starting in 1989, the Supreme Court of the United States has concluded the Due Process Clause of the Fourteenth Amendment limits the size of punitive damages awards. See **Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,** 492 U.S. 257, 277 (1989) ("[T]here is some authority in our opinions for the view the Due Process Clause places

outer limits on the size of a civil damages award."); ***Pacific Mut. Life Ins. Co. v. Haslip,*** 499 U.S. 1, 23 (1991) (upholding punitive damages award four times the compensatory damages and two-hundred times out of pocket expenses but recognizing it was "close to the line"); ***BMW of North America, Inc. v. Gore,*** 517 U.S. 559, 583 (1996) (reversing punitive damages award already reduced to $2,000,000 by Alabama Supreme Court in comparison to compensatory damages of $4,000 as inconsistent with Due Process); ***State Farm Mut. Auto. Ins. Co. v. Campbell,*** 538 U.S. 408, 418 & 425 (2003) (concluding 145:1 ratio between punitive and compensatory damages violated Due Process and declining to impose a bright-line ratio, but stating "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree will satisfy due process.").

In its most recent decision, the Court in ***Baker*** addressed a punitive damages award arising from the grounding of an oil tanker and the economic damages it caused to commercial fisherman and Alaskan citizens. The punitive damages award was for $2.5 Billion while the compensatory damages were for $507.5 Million. The Court determined the ratio should be 1:1, and although this holding was limited to maritime cases, the Court stated in "***State Farm*** we said that a single-digit maximum is appropriate to all but the most exceptional of cases, and when compensatory damages are substantial, then a less ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." ***Baker,*** 541 U.S. at 514-15.

Initially, the jury did not award any compensatory damages against Mr. Christian. The Verdict Form and this Court's Judgment entered on April 15, 2022, provides for a $1 Million compensatory damages award for Ms. Epps against Denver and a $250,000 punitive damages award against Mr. Christian. [ECF 343 & 360]. Nothing contained in either the Verdict Form or

10

this Court's Judgment suggests the compensatory damages award for Ms. Epps is against Mr. Christian.  In fact, a prior version of the Verdict Form worked on by counsel for the parties and this Court included a separate question for compensatory damages for Ms. Epps against Mr. Christian and this separate question was eliminated by counsel for the Plaintiffs and became the final verdict form used.  Based on the lack of any compensatory damages award against Mr. Christian, the ratio analysis employed by the Supreme Court either does not fit here or demonstrates there cannot be any punitive damages sustained against Mr. Christian since the compensatory damages against him are zero.  Accordingly, Mr. Christian initially requests this Court reduce the punitive damages award to zero or $1 based on the lack of any compensatory damages awarded against him.

Alternatively, if this Court concludes the ratio analysis does not provide a basis for evaluating the punitive damages award by the jury against Mr. Christian, Mr. Christian suggests it is appropriate to analyze the facts of what Mr. Christian did respecting Ms. Epps and compare those facts to other punitive damages awards.  Here, Mr. Christian fired a single pepper ball at Ms. Epps while she was crossing in the middle of the street that either hit her lower leg or missed her completely potentially exposing her to a chemical agent.  Ms. Epps did not discontinue her protest activities that evening, did not receive any medical care related to Mr. Christian's actions, at most sustained a single bruise, and also received no mental health treatment as a result of Mr. Christian's actions or indeed anything else she experienced during the protests.  An award of $250,000 in punitive damages against Mr. Christian based on these facts is manifestly inappropriate and unjustified, particularly in comparison to punitive damages awards in other similar cases. *Compare* ***Garrick v. Denver,*** 652 F.2d 969, 970-71 (10th Cir. 1981) (affirming punitive damages

of $70,000 against police officer who used excessive force by striking suspect and shooting and hitting him twice with a firearm causing physical injuries); ***Masters v. City of Ind.,*** 998 F.3d 827, 840-42 (8th Cir. 2021) (affirming remitter of punitive damages from $1 Million to $236,500 based on police officer dropping unconscious plaintiff face-first onto concrete which fractured several of his teeth and injured his face and chin); ***Mendez v. County of San Bernardino,*** 540 F.3d 1109, 1120-23 (9th Cir. 2008) (affirming remitter of $250,000 punitive damages award to $5,000 in false arrest and illegal search action brought by mother concerning police actions following the shooting of her deaf son); ***Payne v. Jones,*** 696 F.3d 189, 204-205 (2d Cir. 2012) (surveying punitive damages awards approved and reduced by the Second Circuit against police officers and reducing $300,000 award based on comparison of the conduct in case at issue wither earlier cases); ***Blackledge v. Carlone,*** 126 F.Supp.2d 224, 228-31 (D. Conn. 2001) (refusing to remit $40,000 punitive damages award in case involving police officer who "cap stunned" when she was handcuffed in the back seat of a police cruiser); ***Humes v. Rosario,*** Case No. 19-cv-3050, 2022 U.S. Dist. LEXIS 44516 at *3-5 & 9-10 (C.D. Ill. Feb. 23, 2022) (concluding $50,000 was an appropriate verdict in court trial based on police officer attempting to provoke plaintiff into a fight and then physically assaulting him based on actions also leading to a criminal conviction of the officer). The facts concerning Mr. Christian's actions towards Ms. Epps and her lack of any lasting or permanent physical injury pale in comparison. The jury's punitive damages award of $250,000 against Mr. Christian is not and cannot be justified under the Due Process Clause based on any comparison to these prior decisions.

Further, the Tenth Circuit has also considered a defendant's wealth when determining whether the punitive damages award comports with Due Process. *See **Cont'l Trend Res., Inc. v.***

***OXY, USA, Inc.,*** 101 F.3d 634, 641 (10th Cir. 1996).  This additional factor also weighs in favor of finding the punitive damages here excessive.  Mr. Christian is a former police officer, not Denver, a large municipality.  Mr. Christian as a police officer made less in a year than one-half of the punitive damages awarded against him.  The punitive damages award here is not only enough to send a message, but it has the potential to bankrupt Mr. Christian.  *See* ***Payne,*** 711 F.3d at 94 ("Excessive awards against individuals can inflict great harm not only on the wrongdoer, but also on the wrongdoer's innocent dependents and, upon bankrupting a family, can inflict further charges upon the public treasury."); ***Patterson v. Balsamico,*** 440 F.3d 104, 122 (2d Cir. 2006) (holding punitive damage award of $20,000 is excessive in light of defendant's personal finances as a corrections officer).

Finally, Mr. Christian anticipates Ms. Epps will argue Denver will indemnify him from the punitive damages award and therefore the analysis and risk calculus should change.  Initially, such considerations are irrelevant to this Court's Due Process analysis.  The issue of the fairness of the jury's punitive damages award here is unrelated to who might ultimately pay any final award.  Under both the Colorado Governmental Immunity Act, C.R.S. § 24-10-118(5), and the Liability of Peace Officers, C.R.S. § 29-5-111, Denver through its City Council possesses discretion on whether to agree to indemnify a defendant who is determined to have engaged in willful and wanton conduct.  No decision by Denver's City Council has been made to date and the issue will not be ripe for consideration until after post-judgment motions have been ruled upon by this Court and potentially after an appeal.  Based on the discretion afforded City Council, it would be improper for this Court to assume Denver will ultimately agree to indemnify Mr. Christian from the punitive damage award by the jury.

In sum, based on the foregoing analysis and authorities, if this Court does not determine to reduce the punitive damages awarded against him to zero or $1 based on the lack of any compensatory damages award, Mr. Christian respectfully submits an appropriate remittitur of the punitive damages award for Ms. Epps is the amount of $10,000.  This represents an appropriate punitive damages award against Mr. Christian consistent with the Due Process Clause of the Fourteenth Amendment.  In the event Ms. Epps does not accept a remittitur ordered by this Court then a new trial is required.  ***Jones v. UPS,*** 674 F.3d 1187, 1204 (10th Cir. 2012).

WHEREFORE, for the foregoing reasons, Defendant Jonathan Christian respectfully requests this Court grant him judgment as a matter of law on Plaintiff Elisabeth Epps' Fourth Amendment claim against him, or alternatively order a new trial, or alternatively order a remittitur of the jury's punitive damages award against him to zero, $1, or $10,000, and for all other and further relief as this Court deems just and appropriate.

Dated this 13th day of May 2022.

Respectfully submitted,

| | |
|---|---|
| s/ Andrew D. Ringel                            .<br>Andrew D. Ringel, Esq.<br>Katherine N. Hoffman, Esq.<br>Robert A. Weiner, Esq.<br>Hall & Evans, L.L.C.<br>1001 17th Street, Suite 300<br>Denver, CO 80202<br>Telephone: (303) 628-3453<br>Facsimile: (303) 628-3368<br>E-mail: ringela@hallevans.com<br>hoffmank@hallevans.com<br>weinerr@hallevans.com | Hollie R. Birkholz, Assistant City Attorney<br>Denver City Attorney's Office<br>Civil Litigation Section<br>201 West Colfax Ave., Dept. 1108<br>Denver, Colorado 80202<br>Telephone: (720) 913-3100<br>Facsimile: (720) 913-3155<br>E-mail:  hollie.birkholz@denvergov.org<br><br>*Counsel for the City and County of Denver and Jonathan Christian* |

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on this 13th day of May, 2022, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve the following all counsel of record in this matter.

In addition, the foregoing was placed in the United States Mail, first-class postage prepaid and addressed to the following non-CM/ECF participant:

Cidney Fisk
5100 Leetsdale Dr., Apt. 438
Denver, Colorado 80246

and

Cidney Fisk
14362 E. Road
Delta, Colorado 81416

*s/Nicole Marion*, Legal Assistant to
Hall & Evans, L.L.C.