IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Nos. 1:20-cv-01878-RBJ (consolidated)

ELISABETH EPPS, *et al.*,

      Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al*.,

      Defendants.

---

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

---

Plaintiffs, through undersigned counsel, respectfully submit this Motion for Attorneys' Fees and Costs, pursuant to 42 U.S.C. § 1988(b) and Fed. R. Civ. P. 54(d), and other supporting law. Plaintiffs have, pursuant to D.C. Colo. L. Civ. R. 7.1, attempted to confer with Defendants' counsel who oppose the motion. As grounds for this Motion, Plaintiffs state as follows:

### INTRODUCTION

Plaintiffs' counsel has litigated, and won, this 42 U.S.C. § 1983 civil rights suit against Defendants. Despite Defendants' refusal to offer any amount whatsoever to attempt to resolve the case, and Defendants' vigorous defense of all of the Denver Police Department's actions in response to the George Floyd Protest, a jury of Coloradans unanimously found Defendants liable on nearly all counts, awarding the 12 plaintiffs a total of nearly $14,000,000 in damages. Based on this verdict, Plaintiffs are the

prevailing party and entitled to a fully compensatory award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b) and Fed. R. Civ. P. 54(d), and other supporting law. The Court is aware of the facts in this case, having presided over trial.

## THE COURSE OF LITIGATION

On, June 25, 2020, Plaintiffs filed this 42 U.S.C. § 1983 lawsuit to vindicate their civil rights, after being threatened, shot at, grenaded, intimidated, and otherwise injured by the Denver Police Department. [Dkt. 1]. Given the nature of the allegations, the size of the dispute, and the number of unknown facts, Plaintiffs needed substantial evidence to prosecute the case. As a result, discovery was voluminous. In around a year of open fact discovery, Defendants produced over 1000 hours of Body Worn Camera video, HALO camera video, CSP video, radio chatter, and thousands upon thousands of electronic documents. Defendants asked for multiple extensions to keep up with this Court's deadlines. [Dkt. 48, 62, 143]. Additionally, both Defendants and Plaintiffs conducted and defended nearly 60 depositions, including eight 30(b)(6) depositions. Expert discovery, too, was complex. Both sides retained experts, requiring multiple disclosures and reports. Both sides required multiple extensions to handle the sheer volume of discovery. [Dkt. 143 & 162]. As a matter of joinder, Defendants made motions to sever, deconsolidate, and bifurcate this case. [Dkt. 107, 125, 251]. To facilitate the case, Plaintiffs voluntarily dismissed a number of parties.  [Dkt. 211, 221, 280]. Defendants also moved for summary judgment on numerous grounds[Dkt. 253, 255, 259], which Plaintiffs vigorously opposed.

The matter was set for trial for March 7, 2022. [Dkt. 43, 44]. Some Defendants moved to continue the trial. [Dkt. 274]. Nevertheless, the case proceeded to a jury trial in this Court and an eight-person jury of Coloradans unanimously determined that Defendants violated each Plaintiff's Constitutional rights by (1) having a policy, practice, or custom that led to the Denver Police's violations of Constitutional rights of protesters in response to the George Floyd protests; (2) failing to train the Denver Police Department in the same matter; and (3) ratifying the violations of Constitutional rights by—among other things—failing to discipline police officers for their clearly egregious attacks on protesters. [Dkt. 343].

## VERDICT AND DAMAGES

The jury's verdict was a total affirmation of Plaintiffs' case. As reflected in the Jury Verdict Form, [Dkt. 343], the jury awarded Plaintiffs damages in the total amount of $14,000,000.

## ARGUMENT

In a civil rights action under 42 U.S.C. § 1983, the prevailing party is entitled to reasonable attorneys' fees. *See* Fed. R. Civ. P. 54(d) (1) and (2) and 42 U.S.C. § 1988(b). The Supreme Court has explained that "[w]here a plaintiff has obtained excellent results, his [or her] attorney should recover a fully compensatory fee," and that "[n]ormally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Further, an attorney fee award should include not only reasonable attorneys' fees, but also fees for the services of paralegals,

and all other items that are normally itemized and billed. *See Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983).

Here, in what Reuters has described as a "landmark" victory,[1] Plaintiffs have clearly obtained "excellent results." There was "no disagreement" in the jury's mind that Defendants were liable,[2] as evidenced by the verdict form, where the jury found liability and awarded substantial damages for all 7 of the Plaintiffs represented by the undersigned, and found for the Plaintiffs on 39 of the 42 claims asserted overall. [Dkt. 343]. Because of this clear, exceptional success—as decided by the pulse of Denver's community, reflected by the unanimous verdict of eight jurors that have heard this case—as well as the reasonability of requested fees and costs—Plaintiffs are entitled to an award of attorneys' fees as stated below.

**l. Plaintiffs' Counsel are Entitled to a Fully Compensatory Fee**

Courts in civil rights cases apply lodestar principles to determine the amount of attorneys' fees to award a prevailing party. *See, e.g.*, *Case by Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998). Under this analysis, the court "must begin by calculating the so-called 'lodestar' amount of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The "lodestar" is the product of

---

[1] Keith Coffman, *Racial Justice Activists Awarded $14 million in Landmark Case Against Denver Police*, Reuters (March 25, 2022, 9:25 PM), https://www.reuters.com/world/us/jury-awards-racial-justice-activists-14-mln-lawsuit-against-denver-police-2022-03-25/

[2] Elise Schmelzer, *Jury that Awarded $14 million to Injured Protesters had "No Disagreement" that Denver was Liable, Juror Says*, Denver Post (March 29, 2022, 6:00 AM), https://www.denverpost.com/2022/03/29/denver-police-protest-lawsuit-jury/

reasonable hours times reasonable hourly rates. *Id.* The "resulting product is *presumed to be the minimum reasonable fee to which counsel is entitled.*" *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986) (emphasis in original); *see also Blum v. Stenson*, 465 U.S. 886, 897 (1984).

The following is a summary of the hourly rates hours billed by the attorneys and support staff who Plaintiffs' counsel are seeking fees for in this case. A detailed spreadsheet of these hours and tasks is attached as Exhibit 2. Please note that this spreadsheet represents only those attorneys' fees that Plaintiffs' counsel is seeking in satisfaction of § 1988, and is non-inclusive of the hours billed by over 60 other attorneys and support staff—including partners, associates, and some attorneys on the trial team— that Plaintiffs' counsel has written off in an abundance of billing prudence. The reasonableness of these numbers is explained below.

| Employee | Hourly Rate | Hours Billed | Total Fee |
|---|---|---|---|
| R. Reeves Anderson, Partner | $595 | 315.8 | $187,901.00 |
| Ed Aro, Senior Counsel | $595 | 27.5 | $16,362.50 |
| Matthew Douglas, Partner | $595 | 644.7 | $383,596.50 |
| Timothy Macdonald, Partner | $595 | 678.7 | $403,826.50 |
| Colin O'Brien, Partner | $595 | 95.9 | $57,060.50 |
| Diana Sterk, Partner | $595 | 389 | $231,455 |

| Leslie Bailey, Senior Associate | $375 | 555.1 | $208,162.50 |
|---|---|---|---|
| Sam Callahan, Senior Associate | $375 | 34 | $12,750 |
| Gerardo Mijares-Shafai, Senior Associate | $375 | 257.8 | $96,675 |
| Patrick Reidy, Senior Associate | $375 | 765.7 | $287,137.50 |
| Michael Sebba, Senior Associate | $375 | 519.2 | $194,700 |
| Mindy Gorin, Associate | $375 | 415.2 | $155,700 |
| Andreas Moffett, Associate | $375 | 519.2 | $194,700 |
| Joseph Chang, Senior Paralegal | $175 | 751.6 | $131,530 |
| **TOTAL** | — | **5,969.4** | **$ 2,561,557** |

These amounts are supported by the Affidavit of Matthew J. Douglas, Exhibit 1. In addition, Exhibit 2 includes a detailed record of the billing in the case with specific descriptions and time spent on tasks performed.

Further, as supported by Exhibit 1, Plaintiffs' counsel have written off (1) over 2609 hours billed by the counsel listed above, including (a) any hours over 10 hours billed on any particular day, (b) hours for potentially duplicative tasks, (c) hours spent in internal conference meetings, (d) and other such hours that would typically be written off for a paying client; (2) substantially reduced its normal billing rates to competitive rates for similarly situated attorneys in the Colorado area, (3) completely excised <u>all</u>

hours billed for over 60 timekeepers—including partners, senior associates, associates, paralegals, other support staff, and even some attorneys on the trial team—representing a cut of at least 8203 hours; and (4) wrote off nearly all hours for Ed Aro, the most senior member of the team. Although all of the time billed in this matter contributed to the successful prosecution of the claims, this Motion reflects the writing off of the majority of time spent on this matter, supporting the reasonableness of the fees requested.

**The total attorneys' fees sought in this case (at this time) is $ 2,561,557.00.** Had Counsel not taken *any* of the aforementioned judicious steps to write-off fees, the total attorneys' fees would be substantially higher, based on the over **14,172** hours billed by partners, associates, paralegals, and support staff. In an abundance of prudence in exercising billing judgment, Plaintiffs' counsel has written off over 8,200 hours of time, representing nearly **60%** of all time spent on this case.

### A.   Plaintiffs' Counsel's Hours are Reasonable.

"'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). In this case, as described above, Plaintiffs achieved extraordinary success on the issues submitted to the jury. Considering Plaintiffs' indisputable success in this case, as well as all other relevant considerations, the number of hours billed, and the hourly rates charged are reasonable.

The Tenth Circuit has compiled a list of factors to consider when evaluating the

reasonableness of a prevailing party's attorneys' hours submitted in a fee petition: (1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers. *Ramos*, 713 F.2d at 554.

### 1. Plaintiffs' counsel appropriately exercised billing judgment.

"The district court must determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation." *Id.* at 553. To that end:

> [c]ompiling raw totals of hours spent . . . does not complete the inquiry. It does not follow that the amount of time actually expended is the amount of time reasonably expended. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client are also not properly billed to one's adversary pursuant to statutory authority.

*Id.* (citation omitted). "The prevailing party must make a 'good-faith effort to exclude from a fee request hours that are excessive, redundant, and otherwise unnecessary.'" *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (quoting *Hensley*, 461 U.S. at 434).

Counsel have diligently exercised billing judgment. *See* Exhibit 1, Affidavit of Matthew J. Douglas. Plaintiffs' counsel are accustomed to making determinations as to which tasks, especially tasks performed by associate attorneys and paralegals, are appropriate to bill to clients. Counsel have reviewed and modified where appropriate the time entries for every timekeeper in the case listed in the lodestar calculation above. Duplicative time entries have been removed, and work determined to be performed

8

inefficiently or unnecessarily has been reduced or eliminated. *Id.* When counsel felt that unreasonable amounts of time were expended on any given task, the amounts billed were reduced.

This matter was litigated as cost-effectively as possible, considering the City's vigorous defense of this case, and the sheer volume of facts, arguments, parties, and legal theories at issue. Moreover, "in a typical civil rights case, where virtually all the evidence and witnesses were in the hands of the defendants and plaintiffs had the burden of proof, it could be expected that plaintiffs' lawyers must spend more time than defendants." *Sussman v. Patterson*, 108 F.3d 1206, 1209 (10th Cir. 1997). Projects were assigned to maximize efficiency, and matters were delegated to lower-rate billing personnel wherever possible and appropriate. Generally, for example, only one attorney at a time prepared for depositions. Legal issues were divided with the same goal in mind.

Additionally, reflecting the unique joinder issues of this case, Plaintiffs' counsel has made efforts to write off hours billed for tasks primarily involving claims against Defendants which have since been dismissed or severed from this case. For example, Plaintiffs' counsel has written off a significant number of hours spent on tasks relating to the claims against the City of Aurora and its police department's similarly inappropriate responses to the protest.

### 2.    The number of hours spent on each task was reasonable.

"[W]hen examining an attorney's fee claim, the district court should examine the hours spent on each task to determine the reasonableness of the hours reported. The district court, however, does not have to justify every hour allowed in awarding

attorney's fees under federal statutes." *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 542 (10th Cir. 2000) (citation omitted). Similarly, this Court need not "announce what hours are permitted for each legal task." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986). This matter, involving numerous § 1983 claims, arguments of law and fact, and unique historical import, similarly required the reasonable expenditure of hours over a variety of tasks.

For example, in drafting, while counsel should work efficiently, "a diligent attorney . . . should thoroughly investigate the opposition's papers and the relevant legal precedent and strive to produce competent and compelling work product; this investigation and drafting take time." *Casey v. Williams Prod. RMT Co.*, 599 F. Supp. 2d 1253, 1256 (D. Colo. 2009). Counsel were reasonable in spending time drafting responses to dispositive motions and other motions that would significantly affect the evidence and arguments presented at trial. Nevertheless, due to Counsels' firm's broad expertise in federal civil litigation, considerable benefit and efficiencies were achieved using the law firm's preexisting resource files, which provided research and templates for use in this case. *See* Ex. 1, Affidavit of Matthew J. Douglas.

Additionally, this case required careful review of over 1000 hours of produced body worn camera footage, HALO camera footage, Colorado State Patrol footage, and independent video footage. This footage was crucial at trial for showing both the breadth and depth of Defendants' inappropriate response to the George Floyd Protests, and to rebut the claims of the Defendants about what occurred during the protests. Plaintiffs' counsel used extensive video evidence during the examination of witnesses

for both sides in order to establish their claims at trial.  Without the meticulous review of the produced video footage, Plaintiffs would have had a significantly harder time in supporting their case. Wherever possible, too, Plaintiffs' counsel delegated the review and analysis of video footage to junior associates and paralegals, in an effort to keep down costs. *See* Exhibit 1, Affidavit of Matthew J. Douglas.

### 3.   The importance of this case required many hours of work.

Every civil rights case is important. But this case, however, was among the first cases holding a City civilly liable for its police department's violent response to the protests surrounding George Floyd's murder. It was the first of its kind to go to trial, and the first to receive a verdict. It has been widely heralded as a landmark case, sending a message to police departments and protesters nationwide.[3]

"Particularly in civil rights cases such as this, 'the district court should focus on the significance of the overall relief obtained by the Plaintiffs in relation to the hours reasonably expended on the litigation.'" *Joseph A. by Wolfe v. New Mexico Dep't of Human Servs.*, 28 F.3d 1056, 1060 (10th Cir. 1994) (quoting *Hensley*, 461 U.S. at 435). After all, "[u]nlike most private tort litigants, a civil rights Plaintiff seeks to vindicate important civil…rights that cannot be valued solely in monetary terms." *Riverside v. Rivera*, 477 U.S. 561, 574 (1986). Beyond the vindication of any Plaintiffs' individual rights, it is widely accepted that attorneys' fee awards can deter future violations of civil rights laws. *See, e.g.*, Ramos, 713 F.2d at 552 ("[p]otential liability for full fee awards

---

[3] *See, e.g.*, Sophie Kasakove, *Colorado Jury Awards $14 Million to Demonstrators Injured in George Floyd Protests*, N.Y. TIMES (March 26, 2022),
https://www.nytimes.com/2022/03/26/us/denver-george-floyd-protests-ruling.html

can deter violations of the civil rights laws, especially in situations where the fee award represents a significant portion of a defendant's financial exposure.") Given the importance of the rights vindicated, the nationwide public interest served by Plaintiffs' victory, and the numerous hurdles Plaintiffs' counsel faced obtaining such a victory (including numerous discovery disputes, extensive factual review, and multiple dispositive motions), Plaintiffs' counsel's hours are reasonable.

### 4. Defendants' vigorous litigation required Plaintiffs' counsel to expend a significant number of hours on this case.

"[O]ne of the factors useful in evaluating the reasonableness of the number of attorney hours in a fee request is the responses necessitated by the maneuvering of the other side." *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998). "The Supreme Court has . . . recognized that part of an attorney's calculus of the amount of time reasonably necessary for a case is the vigor which the opponents bring to the dispute." *Id*. The City Attorney's Office hired an external law firm specializing in "the defense of public entities and their employees in litigation . . . . arising from federal civil rights"[4] to assist in their vigorous defense and to act as lead trial counsel. During the course of the litigation, Defendants and their external counsel filed motions for summary judgment, expert reports and rebuttal expert reports, motions to sever, motions to bifurcate, motions to continue, and post-trial motions. *See Villescas v. Richardson*, 145 F. Supp. 2d 1228, 1232 (D. Colo. 2001), *reversed on other grounds* 311 F.3d 1253 (10th Cir. 2002) (length of litigation and dispositive motions relevant to determining

---

[4] *Public Entity Practice Group*, HALL & EVANS LLC, https://www.hallevans.com/practice-areas/public-entity/ (last visited May 26, 2022).

reasonableness).

Additionally, Defendants snubbed Plaintiffs' good-faith efforts to mediate and settle the case. Instead, Defendants chose to continue to litigate this case to trial. When a "defendant's own unwillingness to resolve [a] matter short of a full-blown jury trial play[s] a not-insubstantial part in contributing to the number of hours required to litigate the case," courts have been skeptical of requests to reduce a fee award. *Garcia v. Midland Credit Mgmt.*, 2015 U.S. Dist. LEXIS 108783, at *3 (D. Colo. Aug. 18, 2015). Indeed, of the amount requested by Plaintiffs' counsel in reasonable fees, over half of those fees ($1,500,345.50) were incurred as a direct result of Defendants' refusal to meaningfully participate in efforts to settle this case, which ended after mediation on January 21, 2022 without any offer of settlement from the Defendants. Due to the Defendants' vigorous litigation, and refusal to meaningfully participate in settlement, this case culminated in a contentious fifteen-day jury trial.

Plaintiffs' attorneys are reasonable in expending significant hours litigating against Defendants' concerted efforts to litigate the case:

> [H]ere the effort expended by the defendants suggests at least that they viewed the case as sufficiently complex and serious to warrant the expenditure of large amounts of attorney time, and it highlights the tooth-and-nail litigating approach [Defendant] used in this case. In light of this tenacious effort by [Defendant] and its lawyers, the amount of attorney time expended by the Plaintiffs begins to look more reasonable, not less.

*Id*. A party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the Plaintiffs in response." *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980). And, consequently, Plaintiffs could not have "escape[d] the consequences of [Defendants'] tactics that undeniably drive up the costs of litigation,

even if such tactics amount to no more than aggressive advocacy." *Latham v. First Marine Ins. Co.*, 16 F. App'x 834, 839 (10th Cir. 2001).

### 5.   Plaintiffs' counsel diligently minimized attorney time spent.

"Another factor the court should examine in determining the reasonableness of hours expended is the potential for duplication of services. 'For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.'" *Ramos*, 713 F.2d at 554 (quoting *Copeland*, 641 F.2d at 891).

The majority of hours billed in this matter were billed by associates, senior associates, and support staff, whose hourly rates are markedly lower than those of Partners and Senior Counsel. *See Gol TV, Inc. v. EchoStar Satellite Corp.*, No. 08-cv-02143-PAB-MJW, 2011 U.S. Dist. LEXIS 103705, at *7-8 (D. Colo. 2011) (analyzing hours billed by partners and associates and concluding that counsel did not engage in "top-heavy billing"). Counsel responsibly delegated tasks to more junior attorneys in an effort to keep overall costs down. Moreover, in exercising discretion in compiling this list of fees, Plaintiffs' counsel have entirely excised the time billed for over 15 material timekeepers, including associates, paralegals, and support staff. Plaintiffs' counsel took advantage of all available opportunities to reduce the number of attorney hours spent. The hours submitted are therefore reasonable.

### B.   Plaintiffs' counsel's rates are reasonable.

Plaintiffs' counsel's hourly rates, which are substantially reduced from the hourly rates they normally charge and are paid by clients in the local market, are reasonable.

"The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Ramos*, 713 F.2d at 555; *accord Jane L.*, 61 F.3d at 1510 ("Hourly rates must reflect the 'prevailing market rates in the relevant community'" (quoting *Blum*, 465 U.S. at 895). Furthermore, "[t]he 'local market rate' is usually the state or city in which counsel practices." *Ctr. For Biological Diversity v. U.S. Fish & Wildlife*, 703 F. Supp. 2d 1243, 1249 (D. Colo. 2010) (citation omitted). Thus, "[t]he hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation," *Ramos*, 713 F.2d at 555.

### 1.   Plaintiffs are entitled to fees at counsels' current hourly rates.

The Supreme Court has held that the lodestar should be calculated based on the attorneys' current rates. In *Missouri v. Jenkins*, the Court explained:

> Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. [T]herefore . . . an appropriate adjustment for delay in payment . . . by the application of current rather than historic hourly rates . . . is within the contemplation of the [fee-shifting] statute.

491 U.S. 274, 283-84 (1989). The Tenth Circuit has reached the same conclusion. *See Ramos*, 713 F.2d at 555.[5]

---

[5] District courts in the Tenth Circuit have applied this rule nearly uniformly, particularly in litigation vindicating civil rights. *See e.g.*, *Skinner v. Uphoff*, 324 F. Supp. 2d 1278, 1283 (D. Wyo. 2004); *Zamora v. City of Belen*, No. CIV 03-743 JB/RLP, 2006 U.S. Dist. LEXIS 28778, at *22 (D.N.M. Mar. 31, 2006); *Kelley v. City of Albuquerque*, No. CIV 03-507 JB/ACT, 2005 U.S. Dist. LEXIS 39001, at *24 (D.N.M. Oct. 24, 2005).

Here, Plaintiffs have applied reasonable current attorneys' rates in civil rights cases or analogous litigation.  The Tenth Circuit has affirmed a fee award where "the hourly rates requested and awarded to some of plaintiffs' attorneys represent[ed] the actual current billing rates for the...attorneys who represented them." *Reazin v. Blue Cross & Blue Shield, Inc.*, 899 F.2d 951, 983 (10th Cir. 1990). That notwithstanding, Plaintiffs' counsel has substantially discounted their actual current billing rate for the sake of this litigation, instead opting for current prevailing hourly rates in the relevant community for civil rights litigation. See U.S.C. § 1988; *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984). Nevertheless, the regular rates of Plaintiffs' counsel are relevant to the discussion of this case. *See Ramos*, 713 F.2d at 555.

> **2.    The skill and experience of counsel along with the current market rate in Denver, justify the requested rates.**

The hourly rates charged by each of the lawyers in this case are reasonable, based on each lawyer's skill, experience, and accomplishments. The legal experience and accomplishments of each of Plaintiff's lawyers in this case are set forth in detail in the attached Affidavit of Matthew J. Douglas**,** Exhibit 1.

An hourly billing rate of $595 for experienced civil litigation partners, who have impressive backgrounds and extensive experience handling major civil litigation, are reasonable given the current prevailing rates in the Denver market. *Id*. Such hourly rates have been determined reasonable by both federal and state courts in Colorado. For example, consider the fee petition for the recent case of *Valdez v. Motyka*, No. 15-cv-0109-WJM-STV (D. Colo. Apr. 12, 2022). *Valdez* is analogous to the claims and parties in the case at bar. In *Valdez*, Plaintiff brought a § 1983 action against an individual

Denver police officer for shooting at Plaintiff without justification, and attempted to hold the City and County of Denver liable under a *Monell* failure to train theory. The matter proceeded to a nine-day jury trial before Judge William J. Martinez, where a jury awarded Plaintiff $131,000 against the individual defendant, and $2.4 million against Denver. After the trial, Plaintiff's counsel in *Valdez* similarly moved for reasonable attorney's fees pursuant to § 1988. They requested a reasonable hourly rate ranging "from $575 to $595 per hour for work performed by shareholders and special counsel, $375 per hour for work performed by associates, $100 per hour for work performed by law clerks, $100 to $200 per hour for work performed by paralegals, and $75 per hour for work performed by an investigator." *See Id*. at *4-5. Judge Martinez "carefully consider[ed] the parties' arguments, supporting documentation, and applicable case law," and "conclude[d] that Plaintiff's requested hourly billing rates are reasonable for civil rights attorneys of comparable skill and experience in the Denver area. As such, the Court [applied] the hourly billable rates requested by Plaintiff in determining the appropriate fee award." *Id.* at *5.

Here, Plaintiffs' counsel requests <u>the same rates</u> that the court in *Valdez* determined to be "reasonable for civil rights attorneys of comparable skill and experience in the Denver area": $595 per hour for work performed by shareholders and special counsel; $375 per hour for work performed by associates, and $175 per hour for work performed by a senior paralegal. Such rates are clearly reasonable under the market, considering Judge Martinez's analysis in *Valdez*.

Notwithstanding this court's recent determination in *Valdez* that these rates are

reasonable, there are other analogous cases that also support such a finding. For example, in *Martinez v. Valdez*, No. 11-cv-00102-MSK-KLM, 2015 U.S. Dist. LEXIS 114602 (D. Colo. 2015), federal Judge Marcia Krieger awarded attorney fees based upon the rates of Kilmer, Lane, & Newman LLC partners Darold Killmer, David Lane, and Mari Newman. The contemporary 2015 rate for Darold Killmer and David Lane was $500. These partners' hourly rates were similarly as the basis for the award of attorney fees to the prevailing plaintiff in the § 1983 cases of *Duran v. Koehler*, No. 10-cv-01569-REB-KMT, 2014 U.S. Dist. LEXIS 117851 (D. Colo. 2014).[6] In 2018, the 10th Circuit affirmed the use of Darold Killmer's 2016 rate ($500/hour), and assistant trial counsel's rate of $375/hour, noting that opposing counsel had "proposed a reduction in rates from $500 to $400 an hour for lead counsel and from $375 to $250 an hour for assistant counsel. The district court rejected Denver's proposed reduction in rates and found 'that the rates claimed by the Plaintiffs are, on the record presented here, reasonable.'" *Kerner*

---

[6] Plaintiffs' rates are especially reasonable when viewing them in light of the Laffey Matrix and the USAO Attorney's Fees Matrix. The Laffey Matrix is a matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks that is prepared annually. The applicable fee schedule for 2022 places a reasonable rate of $919 per hour for Mr. Aro, Mr. Macdonald, Mr. Douglas, and Mr. Anderson, a rate of $764 for Mr. O'Brien, and Ms. Sterk, and reasonable associate rates between $381 and $764 depending on years post law school. The applicable paralegal and law clerk rate for 2021 is $208 per hour. The USAO Attorney's Fee Matrix is prepared by the Civil Division of the United State Attorney's Office for the District of Columbia and is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See Laffey v.Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983) (aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984)); *see also Anderson v. Nat'l Credit Sys.*, 2010 U.S. Dist. LEXIS 134268, *8 (D. Colo. Dec. 1, 2010) (partially relying on the Laffey Matrix in finding that the plaintiff's proposed rates were reasonable). The applicable USAO 2020-2021 hourly rates for the partners at Plaintiffs' counsel's firm range between $665 and $532, associate rates between $333 and $510, and paralegals and law clerks at $180.

*v. City & Cnty. of Denver*, 733 F. App'x 934, 936 (10th Cir. 2018).[7]

Plaintiffs' counsel's fees are consistent with rates in the Denver marketplace.

Denver attorney Lynn Feiger was awarded $500 per hour *sixteen years ago* in 2006 in a

case known as the *Denver Mint Class Action*. Seven years ago, in the 2015 case of

*Krantz v. Dulacki*, Denver District Court Judge Catherine Lemon found that the

following hourly rates were reasonable: $450 per hour for attorney Quasir

Mohammedbhai (a partner with, then, 12 years' experience); $425 per hour for

Siddhartha Rathod (a partner with, at the time, 8 years' experience); $375 per hour for

Arash Jahanian (an associate at the time with 7 years' experience); $325 for Matthew

Cron (an associate with, then, 5 years' experience); and $125 per hour for paralegal

work. In late 2018, Judge Daniel approved Mr. Lane and Mr. Killmer at $590 per hour,

Ms. Newman at $540 per hour, Ms. Orshan at $350 per hour, paralegal work at $175 per

hour, and legal assistant work at $120 per hour. *See Stroup and Lee v. United Airlines*,

Case no. 15-cv-01389-DDD-STV (D. Colo. Dec. 5, 2018), [Dkt. 232]. More recently,

Judge Christine Arguello approved Mr. Lane and Mr. Killmer at the current hourly rate

of $650, Ms. Newman at her hourly rate of $600, and associate Andy McNulty at $375

per hour. *Willmeng v. City of Lafayette*, 19-cv-00150-CMA-SKC.

Finally, "[e]xperience measured by years of practice is not the only indicator of value.

The quality of one's work and its contribution to the result obtained obviously must be

---

[7] Moreover, the 10th Circuit held that the District Court abused its discretion when it "agreed with Denver that the total number of hours claimed by plaintiff's counsel was unreasonable and that a substantial reduction was warranted," as its concluding logic was "ambiguous," but, "under either interpretation . . . the district court abused its discretion" in ruling as such. *See* Kerner v. City & Cnty. of Denver, 733 F. App'x 934, 936, 938 (10th Cir. 2018).

considered." *Ryals*, 2014 U.S. Dist. LEXIS 77304, at *30 (citing *Ramos*, 713 F.2d at 555).

For example, consider Senior Associates Patrick Reidy and Michael Sebba—patent litigators at Plaintiffs' counsel's firm. Despite lacking "years of practice" in § 1983 cases, Mr. Reidy exhibited painstaking diligence and advocacy. Mr. Reidy, for instance, managed to accurately reconstruct the assault on Plaintiff Zach Packard through snippets of body worn camera video and surveillance footage, and highlighted that footage for the jury during a textbook direct examination. The jury ultimately awarded Mr. Packard $3 million. Mr. Sebba, too, pieced together video evidence of a Denver Police officer spraying Plaintiff Dr. Stanford Smith point blank with pepper spray, while Dr. Smith walked in front of the police officers with his hands raised in the air. Mr. Sebba's contributions and direct examinations to Dr. Smith's case resulted in Dr. Smith's $1 million verdict.

Likewise, consider Associates Mindy Gorin and Andreas Moffett, who examined Plaintiffs Amanda Blasingame and Maya Rothlein, respectively. Between their diligence in reviewing the Denver Police Department's Internal Affairs files, they discovered key facts overlooked by Defendants, including that Defendants had failed to connect Lt. Kenneth Chavez's internal affairs investigation file with the Complaint in this case. Lt. Kenneth Chavez's internal affairs investigation file directly corroborated Ms. Blasingame's and Ms. Rothlein's allegations that the Denver Police had conducted a drive-by shooting at them on their own property. Moreover, both Ms. Gorin and Mr. Moffett showed exemplary advocacy in their direct examinations of Ms. Blasingame and

Ms. Rothlein. Ms. Gorin and Mr. Moffett's contributions directly resulted in $1 million

verdicts for each Ms. Blasingame and Ms. Rothlein.

In light of these facts, and the language of *Ryals* and *Ramos*, the contributions of

each attorney—not just their comparative years of practice—must be considered as an

indicator of value. Plaintiffs' counsel's work in this case was of high quality.

## II.   The Court Should Also Award Costs

Defendants are also responsible for the costs expended in preparation for this

case. These charges are typically billed to Plaintiffs' counsel's clients. *See* Exhibit 1,

Affidavit of Matthew J. Douglas. Plaintiffs' counsel is concurrently submitting a bill of

costs to the Clerk of the United States District Court pursuant to 28 U.S.C. § 1920. The

total amount of taxable costs under the statute are $61,815.38. *See*, Dkt. 341, Exhibit 3,

Bill of Costs. Costs not included as part of the taxable costs are $34,368.67, *See*, Exhibit

4, Expenses/ Advances not included in Bill of Costs.

### <u>Certification of Counsel</u>

Undersigned counsel hereby certifies that the billing rates and expenses reflected

in this motion and the attached affidavit are the normal fees and costs billed by counsel

and paid by clients where an hourly fee is charged to the client.[8] Undersigned counsel

further certifies that the costs and expenses reflected in this motion are the costs and

expenses normally charged to clients of the below signed law firm, and that this practice

is normal within the Denver legal community. The referenced costs and expenses are

---

[8] As referenced *supra*, the rates as listed in this Petition are substantially discounted from
Plaintiffs' counsel's rates that are typically charged to private clients.

the obligation of Plaintiffs in this case, which, under 42 U.S.C. § 1988, should be awarded to them by Defendants.

## **<u>CONCLUSION</u>**

WHEREFORE, Plaintiffs respectfully request that this Court grant this Motion and enter an award of attorneys' fees in the amount of $2,561,557.00 plus $96,184.05 in costs against the Defendants.

Dated: June 1, 2022

Respectfully submitted,

By: */s/ Matthew J. Douglas*
    Timothy R. Macdonald
    Matthew J. Douglas
    Edwin Packard Aro
    R. Reeves Anderson
    Colin M. O'Brien
    Brian M. Williams
    ARNOLD & PORTER KAYE SCHOLER LLP
    1144 Fifteenth Street, Suite 3100
    Denver, Colorado 80202
    Telephone: (303) 863-1000
    Timothy.Macdonald@arnoldporter.com
    Matthew.Douglas@arnoldporter.com
    Ed.Aro@arnoldporter.com
    Reeves.Anderson@arnoldporter.com
    Colin.Obrien@arnoldporter.com
    Brian.Williams@arnoldporter.com

    Diana Sterk
    Mindy Gorin
    ARNOLD & PORTER KAYE SCHOLER LLP
    250 West 55th Street
    New York, New York 10019-9710
    Telephone: (212) 836-8000
    Diana.Sterk@arnoldporter.com
    Mindy.Groin@arnoldporter.com

    Andreas E. Moffett
    ARNOLD & PORTER KAYE SCHOLER LLP

601 Massachusetts Ave., NW
Washington, DC  20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5555
Andreas.Moffett@arnoldporter.com

Patrick C. Reidy
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street
Suite 4200
Chicago, IL 60602
Telephone: (312) 583-2300
Facsimile: (312) 583-2360
Patrick.Reidy@arnoldporter.com

Michael J. Sebba*
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90017
Telephone: (213) 243-4000
Facsimile: (213) 243-4199
Michael.Sebba@arnoldporter.com

*Admitted only in New York; not admitted to the
practice of law in California.

*In cooperation with the American Civil
Liberties Union Foundation of Colorado*

Mark Silverstein
Sara Neel
Arielle Herzberg
American Civil Liberties Union Foundation of
Colorado
303 E. Seventeenth Ave., Suite 350
Denver, Colorado 80203
Telephone: (303) 777-5482
Facsimile: (303) 777-1773
Msilverstein@aclu-co.org
Sneel@aclu-co.org
Aherzberg@aclu-co.org

*Counsel for Epps Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 1, 2022, I served the foregoing **PLAINTIFFS' MOTION**

**FOR ATTORNEYS' FEES AND COSTS** via email on all counsel of record.


*/s/ Tanya D. Huffaker*