IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-1878-RBJ

ELISABETH EPPS, *et al.*,

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

Defendants.

## DECLARATION OF JON LOEVY

Pursuant to 28 U.S.C. § 1746, I, Jon Loevy, declare as follows:

### Introduction

1.  Declarant started Loevy & Loevy out of his apartment about 20 years ago. Since that time, the firm has grown to employ more than 40 full-time lawyers, as well as a full support staff. Loevy & Loevy is now one of the largest firms devoted to civil rights in the country. Since its founding, Loevy & Loevy has been fighting on behalf of its clients in the vital and complex areas of civil rights and whistleblower protection, among others. Declarant's firm has won dozens of jury trials and has secured hundreds of millions of dollars for its clients, including nearly $200 million in class action settlements and verdicts alone. During the two decades since the firm's founding, the firm has built a reputation for its excellent work product and trial results, providing clients who might otherwise go unrepresented with the same quality legal work as the wealthiest corporations could buy from the nation's largest firms.

2.  Declarant has been recognized as in the "top tier of civil rights trial attorneys in the Chicago area." *Jimenez v. City of Chicago*, 2012 WL 5512266, at *2 (N.D. Ill. Nov. 14,

Exhibit C

2012). He has been practicing law for 29 years and leads what "is fairly considered one of the premier Chicago-area law firms concentrating in plaintiff's section 1983 litigation." *Id*. As Judge Matthew Kennelly put it, Declarant "and his firm have an impressive record of success in plaintiff's civil rights litigation," and he and "his firm consistently produce written work that rivals that of any law firm in Chicago—not just those specializing in this particular field." *Id*.

### Background and Education

3. Declarant graduated from Columbia University Law School in 1993, where he was a Senior Editor on the Columbia Law Review. Declarant was also a Kent Scholar (approximately top 1% of the class) and the recipient of several awards for academic distinction, including the Young B. Smith Prize for the student with the top examination in torts and the Paul R. Hays Prize given to the student with the top examination in civil procedure.

4. After graduating, Declarant completed a clerkship for the Hon. Milton I. Shadur of the Northern District of Illinois in 1994.

5. Thereafter, Declarant worked as an associate in the litigation department at Sidley & Austin in Chicago for almost two years.

6. After leaving Sidley & Austin, Declarant built a successful civil rights law practice as a solo practitioner. Thereafter, Declarant and his wife, Danielle Loevy, and father, Arthur Loevy, formed Loevy & Loevy. The primary practice areas of the firm include, among others, Section 1983 and other civil rights litigation.

7. Declarant is also a Lecturer in Law at the University of Chicago Law School, where he co-teaches a clinic on wrongful conviction litigation with other members of his firm called the Exoneration Project. Declarant also teaches Trial Advocacy to clinic students at the University of Chicago Law School.

**Declarant's Trial Experience**

8. As lead counsel, Declarant has won more than $250 million in jury verdicts, including more than 20 separate jury verdicts in excess of one million dollars, more than a dozen of which exceeded $5 million, and five in excess of $20 million. Many, if not most, of his civil rights clients were unsympathetic from a jury perspective, and the vast majority of these trials were long shots. Over one stretch, Declarant won 15 jury trials in a row. Several of the wins described below included *Monell* claims against the City of Chicago, and many of them were difficult because they were wrongful conviction cases in which the defense (and in some cases, eyewitnesses) still claimed that the plaintiff was guilty of the crime and there was no physical proof of innocence.

9. For example, Declarant was lead trial counsel in *Regalado v. Chicago*, No. 96 CV 3634 (N.D. Ill.), a police brutality case in which the jury awarded a $28 million verdict, believed to be the largest jury verdict against the City of Chicago in its history. The case was subsequently settled.

10. Declarant was lead trial counsel in *Andersen v. City of Chicago*, No. 16 CV 1963 (N.D. Ill.), a wrongful conviction case tried in 2021 in which the jury awarded $7.55 million in compensatory damages.

11. Declarant was lead trial counsel in *Jimenez v. City of Chicago*, No. 12 CV 2779 (N.D. Ill.), a wrongful conviction case tried in January 2012 in which the jury awarded $25 million for 17 years of wrongful incarceration.

12. Declarant was lead trial counsel in *Fields v. City of Chicago*, No. 10 CV 1168 (N.D. Ill.), a wrongful conviction case tried in December 2016. Plaintiff was awarded $22 million in compensatory damages and $40,000 in punitive damages. This case was difficult

because it involved gang killings and the plaintiff had been involved in a gang. During discovery, the plaintiff unearthed the fact that the Chicago Police Department hid exculpatory evidence from criminal suspects and defendants for decades, which they kept in "street files" in a police station basement. Plaintiff proved his *Monell* claim at trial.

13. Declarant was lead trial counsel in *Cook County v. AIG, Inc.*, 12 L 2675 (Cook County), a fraud case tried in March 2016. In addition to awarding $20 million dollars in punitive damages, the jury awarded $20 million on each of the following claims: Illinois False Claims Act (subject to trebling), common law fraud, and fraudulent concealment.

14. Declarant was lead trial counsel in *Rivera v. City of Chicago,* 12 CV 2248 (N.D. Ill.), a wrongful conviction case tried over the course of four weeks in August 2018, resulting in a $17 million jury award.

15. Declarant was lead trial counsel in *Burgess v. Baltimore Police Department*, No. RDB-15-0834 (D. Md.), a wrongful conviction case tried in November 2017, which resulted in a $15 million jury award.

16. Declarant was lead trial counsel in *Johnson v. City of Chicago*, No. 05 CV 1042 (N.D. Ill.), a wrongful conviction case tried in June 2009 in which the jury awarded $21 million for 11 years of wrongful incarceration. The case was difficult because the plaintiff and all the witnesses were gang members, and there was no physical proof of innocence.

17. Declarant was lead trial counsel in *Borsellino v. Putnam*, No. 00 CH 13958 (Cook County), tried over several weeks in October 2009, resulting in an $11 million jury award in a fraud case.

18. Declarant was lead trial counsel in *MacNeice v. City of Chicago*, No. 05 CV 1042 (Cook County), a police chase wrongful death case tried in 2015, in which the jury awarded

$2.75 million. The case was difficult because the driver of the car fleeing at a high rate of speed from the police was drunk and refused to stop.

19. Declarant was lead trial counsel in *Dominguez v. City of Waukegan* (N.D. Ill.), a wrongful conviction case tried in September 2006, in which the jury awarded $9 million for four years of wrongful incarceration.

20. Declarant was lead counsel in *Cook County v. USI*, Case No. 2012-L-008066 (Cook County), tried in March 2018. The case resulted in a $9,050,000 verdict against an insurance broker for failing to obtain appropriate insurance policies for a municipality.

21. Declarant was lead counsel in *Kuri v. City of Chicago et al.*, No. 1:13-cv-1653 (N.D. Ill.), which was tried in 2018. The case resulted in a $4 million jury verdict for a man who was wrongfully arrested based on fabricated evidence and spent three years in Cook County Jail awaiting trial for murder.

22. Declarant was lead trial counsel in *Molina v. City of Chicago*, No. 04 CV 7423 (N.D. Ill.), a wrongful death case tried in October 2013, in which the jury awarded $1 million for a death in jail custody. The case was difficult because the jury was told that the plaintiff swallowed dozens of packets of heroin and that she had declined to communicate that fact to the lockup keepers.

23. Declarant was lead trial counsel in *Manning v. United States*, No. 02 CV 372 (N.D. Ill.), a five-week jury trial in 2004 and 2005, which resulted in an unprecedented $6.5 million judgment against two FBI agents for framing the plaintiff and causing 14 years of wrongful imprisonment.

24. Declarant was lead trial counsel in *Newman v. Squire*, No. 08 L 676 (Cook County), tried in February 2010, resulting in a $6 million jury award in a complex wrongful

5

death case.

25. Declarant was lead counsel in *Ware v. City of Chicago*, tried in February 2007. The case was difficult because four police officers testified that the plaintiff had pointed a gun at them, and plaintiff alleged the gun later recovered from the car had been planted. After the jury found for the plaintiff on the liability phase, the city stipulated to $5 million in damages.

26. Declarant was lead trial counsel in *Duran v. City of Chicago*, No. 06 CV 6469 (N.D. Ill.), a civil rights trial in 2008, resulting in a $4.4 million jury verdict for parents who alleged their baby was improperly taken from them based on misrepresentations by the police. The city argued that the case was frivolous and refused to offer any money at all to settle.

27. Declarant was lead counsel in *Coffie v. City of Chicago*, No. 05 CV 6745 (N.D. Ill.), tried in October 2007. Plaintiff, who pled guilty to a drug offense, alleged that the police put a screwdriver in his rectum looking for drugs. The jury found for the plaintiff and the city stipulated to $4 million in damages.

28. Declarant was lead trial counsel in *Parish v. City of Elkhart*, No. 07 CV 452 (N.D. Ind.), a false arrest and wrongful conviction case tried in 2010. The plaintiff won, and the jury awarded $73,000 for nine years of wrongful incarceration. Following a successful appeal on the issue of damages, the case was resolved prior to retrial for more than $4 million.

29. Declarant was lead trial counsel in *Booker v. City of Chicago*, tried in December 2008, a police shooting case wherein Mr. Booker acknowledged pushing a police officer who tried to arrest him, and then running away. According to two police officer witnesses, Mr. Booker dropped two guns while fleeing, and then punched an officer in the face (causing a cut) when they caught up to him, before trying to take the officer's gun. Mr. Booker denied punching the officer (though he did plead guilty to battery for pushing the officer during the attempted

arrest), denied grabbing the officer's gun, denied dropping/possessing any guns, and denied doing anything to justify the shooting. The jury accepted plaintiff's argument that the guns were planted and found in Mr. Booker's favor, awarding $720,000 in damages.

30.     Declarant was lead counsel in *Waits v. City of Chicago*, No. 00 CV 4010 (N.D. Ill.), a police brutality case tried over more than one week in October 2002, which resulted in a verdict of $15,000 in compensatory damages and $2 million in punitive damages. The case was difficult because the rather limited amount of abuse (slaps and a knee to the groin while plaintiff was handcuffed) was precipitated by the plaintiff spraying a police officer with his water bottle.

31.     Declarant was lead counsel in *Hamilton v. Chicago*, 00 L 7993 (Cook County), a police shooting wrongful death case. In 2003, the jury returned a verdict in the amount of $1.5 million. The case was exceedingly difficult to win because the plaintiff was present during a gang fight in Cabrini Green, and plaintiff had to persuade the jury to believe the account of two gang members over the accounts of the Chicago police officers, and that a gun had been planted.

32.     Declarant was lead counsel in *Garcia v. City of Chicago*, No. 01 CV 8945 (N.D. Ill.), a police brutality case involving a *Monell* claim. After a two-week trial in April 2002, plaintiff was awarded $1,000,000 in compensatory damages. Plaintiff proceeded on a difficult-to-prove theory that the City of Chicago was liable for a beating by an off-duty police officer because the city's system for disciplining police brutality was so broken that it actually encouraged abuses.

33.     Declarant was lead counsel in *McGreal v. Village of Alsip*, No. 98 CV 3958 (N.D. Ill.), a First Amendment retaliation case in which the court had initially granted summary judgment on the grounds that there was no evidence to support the plaintiff's position. After Declarant successfully argued an appeal, the jury trial proceeded in 2004. At the close of

7

plaintiff's case, the case settled for $900,000, notwithstanding the lack of any hard damages (the plaintiff had not been fired).

34. Declarant was lead counsel in *Gordon v. United Airlines*, No. 98 CV 1378 (N.D. Ill.), a civil rights employment case tried in August 2002 and defended by Mayer Brown. After summary judgment in favor of the defendant was reversed on appeal to the Seventh Circuit, the plaintiff prevailed after a one-week trial in the amount of $200,000.

35. Declarant was lead counsel in *Smith v. Urbana*, No. 01 CV 2209 (C.D. Ill.), a police brutality case tried in March 2003 which resulted in a jury verdict in the amount of $373,000. The case was challenging because the plaintiff was drunk, involved in a domestic disturbance, and the Black plaintiff had an all-white jury. Also, the only four eyewitnesses were police officers.

36. Declarant was lead trial counsel in *Robinson v. Chicago*, No. 00 L 7993 (Cook County), a case arising out of a police shooting in housing complex in Harvey for which the police claimed that the plaintiff was a pointing a gun at the police. After a victory at the first trial was reversed because of an inconsistent verdict, we won again at a second trial, resulting in a $275,000 jury award based on our theory that the police had planted the gun.

37. Declarant was lead trial counsel in *Kunz v. City of Chicago*, No. 02 CV 372 (N.D. Ill.), a one-week jury trial in 2005, which resulted in a $275,000 judgment against a Chicago police officer ($250,000 of which was punitive damages) for excessive force. The case was made more difficult by the fact that there were seven police witnesses denying any abuse, and the fact that the plaintiff had led the police on a high-speed chase while on heroin.

38. Declarant was lead trial counsel in *Moore v. City of Chicago*, No. 02 CV 5130 (N.D. Ill), a false arrest and excessive force case tried in 2008. The jury awarded $250,000.

8

39. Declarant was lead trial counsel in *Defibaugh v. City of Chicago*, No. 04 CV 6868 (N.D. Ill.), an excessive force case tried in 2008. The jury awarded $100,000.

40. Declarant was lead trial counsel in *Johnson v. Popp*, No. 97 CV 2230 (N.D. Ill.), resulting in a jury verdict in excess of $100,000 (reduced by the Court to $65,000) arising out of an improper search and seizure.

### Declarant's Appellate Success

41. Declarant has won eighteen out of the last twenty-one cases that he has argued in the federal appellate courts, a difficult feat for civil rights cases. These include:

    a. *Consumer Fin. Prot. Bureau v. Consumer First Legal Group,* LLC, 6 F.4th 694 (7th Cir. 2021) (reversing penalty award);

    b. *Kuri v. City of Chicago, Illinois,* 990 F.3d 573 (7th Cir. 2021) (successfully defending jury verdict);

    c. *Fields v. City of Chicago*, 981 F.3d 534 (7th Cir. 2020) (successfully defending jury verdict);

    d. *Webb v. United States*, 789 F.3d 647 (6th Cir. 2015) (successfully reversing summary judgment in two separate *Bivens* cases);

    e. *Parish v. City of Elkhart*, 702 F.3d 997 (7th Cir. 2012) (successfully reversing jury verdict and winning new trial on damages);

    f. *Ortiz v. City of Chicago*, 656 F.3d 523 (7th Cir. 2011) (successfully reversing summary judgment award and winning remand for trial);

    g. *Dominguez v. Hendley*, 545 F.3d 585 (7th Cir. 2008) (successfully defending jury verdict from various challenges);

    h. *Kunz v. DeFelice*, 538 F.3d 667 (7th Cir. 2008) (successfully defending jury

verdict from various challenges);

i. *White v. McKinley*, 519 F.3d 806 (8th Cir. 2008) (successfully defending qualified immunity appeal);

j. *Robinson v. City of Harvey*, 489 F.3d 864 (7th Cir. 2007) (successfully defending jury verdict from various challenges);

k. *Evans v. Katalinic*, 445 F.3d 953 (7th Cir. 2006) (successfully defending qualified immunity appeal);

l. *Abdullahi v. City of Madison*, 423 F.3d 763 (7th Cir. 2005) (successfully reversing summary judgment in an excessive force death case; petition for rehearing *en banc* denied);

m. *McGreal v. Ostrov*, 368 F.3d 657 (7th Cir. 2005) (successfully reversing summary judgment in First Amendment case);

n. *Haywood v. Chicago*, 378 F.3d 714 (7th Cir. 2004) (successfully reversing summary judgment in case involving novel civil rights issue);

o. *Manning v. United States*, 355 F.3d 1028 (7th Cir. 2004) (successfully defeating United States' qualified immunity appeal);

p. *Strong v. David*, 297 F.3d 646 (7th Cir. 2002) (successfully reversing judgment against a prisoner in a PLRA case);

q. *Gordon v. United Airlines*, 246 F.3d 878 (7th Cir. 2001) (successfully reversing summary judgment in an employment discrimination case; petition for rehearing *en banc* was denied);

r. *Jarecki v. Romeoville*, Illinois Appellate Court, 3rd District, Case No. 99-815 (successfully reversing dismissal of civil rights claim; Romeoville's petition for

certiorari denied).

## Praise from Federal Judges

42. After one victory, the Honorable James F. Holderman, Chief Judge of the Northern District of Illinois summarized Loevy's trial skills as follows:

> Jon Loevy is an outstanding trial lawyer. His ability belies his years of experience, and he certainly should not be held in a lock-step position based on his law school graduation year with regard to his hourly rate …. Not only did Jon Loevy display tremendous advocacy skills during the trial before the jury, he handled all the matters involved in this litigation with great aplomb. His case was well-organized. The evidentiary progression was easy to follow. His examinations of adverse witnesses, and his dealing with the sometimes improper tactics of his opposing counsel, were highly professional.
>
> Jon Loevy's poise, analysis, and demeanor in front of the jury, as well as his rappier-like cross-examination style, are reminiscent of the trial skills displayed by some of the nationally recognized trial lawyers in this community when they were the age that Jon Loevy is now.
>
> [Fn1] Among those nationally recognized trial lawyers whose trial skills the court is familiar with when they were Jon Loevy's age are: Royal B. Martin of Martin, Brown and Sullivan; Michael D. Monico of Monico, Spevack and Pavich; Thomas R. Mulroy of McGuire Woods; Anton J. Valukas of Jenner & Block; and Dan K. Webb of Winston & Strawn. Additionally, Jon Loevy's overall performance ranks among the finest displays of courtroom work by a plaintiff's lead trial counsel that this court has presided over in several years.

*Garcia v. Chicago*, 2003 WL 22175620, at *2 (N.D. Ill. 2003). In another opinion, *Robinson v. City of Harvey*, 2008 WL 4534158, at *7 (N.D. Ill. Oct. 7, 2008), Judge Joan H. Lefkow observed the following in the context of adjudicating Declarant's billing rate: "the court is not unmindful of Jon Loevy's success in this case and his now established reputation as a singularly formidable trial lawyer in civil rights cases."

## Declarant's Firm's Civil Rights Work

43. Declarant's law firm is consistently willing to represent clients who no other civil rights firms will represent because the cases are either too challenging, or because there are not a lot of economic damages. Instead of just looking at the size of the compensable injuries,

11

Declarant and his firm take cases where justice demands it. The firm also devotes hundreds of hours each year to *pro bono* cases, primarily post-conviction work.

44. In addition to his successes, Declarant has been counsel for unsuccessful cases as well. In *Evans v. City of Chicago*, No. 04 C 3570 (N.D. Ill.), for example, Declarant's law firm lost a jury trial after investing thousands of hours of attorney time and more than $140,000 in out-of-pocket cash developing and trying the case. In *Manning v. United States*, No. 02 C 372 (N.D. Ill.), Declarant obtained a multi-million jury verdict after spending hundreds of hours, only to have it vacated by the Seventh Circuit on an FTCA pre-emption issue. *Leinen v. Elgin*, No. 98 C 8225 (N.D. Ill.), and *Young v. Aurora*, No. 99 C 7137 (N.D. Ill.), are other examples where Declarant invested substantial time and money yet recovered nothing for his firm following an unfavorable verdict.

**Publications & Honors**

45. Declarant was chosen by the editors of the ABA's prestigious Litigation quarterly and asked to author two separate articles about police misconduct litigation; the first article was published in the Winter of 2006/07 edition and the second in the Spring of 2010.

46. Declarant was also invited to speak at the National Lawyers' Guild's (NLG) National Police Accountability Project (NPAP) Conference in Texas in the Fall of 2006 on the topic of "How to Win Big Jury Awards in Police Abuse Cases." Declarant presented on that topic to more than 50 police abuse lawyers from around the United States. In 2007, Declarant was asked to be the moderator for the NLG's NPAP conference in Washington D.C.

47. Declarant was also named one of the Law Bulletin's "40 under 40" attorneys to watch in Chicago, as well as one of Chicago Lawyer's "Next Generation Rising Stars of the Trial Bar."

48. In 2011, Declarant won the "Career Achievement Award" from the Chicago Law Bulletin's Jury Verdict Reporter. Prior to 2011, only seven lawyers in the history of the State of Illinois had ever won five or more Cook County jury awards of $5 million or more. The members of this elite group of seven include some of the most distinguished lawyers in Illinois, including Bob Clifford, Tom Demetrio, Joe Power, Bruce Pfaff, Pat Salvi, and Mark McNabola. Among the youngest members of this group (if not the youngest) Declarant has not five, but thirteen, qualifying awards.

## Hourly Rate and Billing Records

49. Declarant is seeking an hourly rate of $650 per hour for the work performed in this case. Declarant's primary role in this case was to provide strategic guidance and insight on litigation and trial strategy, based his extensive experience, to Elizabeth Wang, the lead counsel. The requested rate is commensurate with rates charged by attorneys of like experience and skill practicing in this field and is lower than the rates provided in the Fitzpatrick Matrix for fee shifting cases in the District of Columbia, for attorneys with 29 years' experience ($745 per hour).

50. Declarant was awarded $550 per hour in 2018 in *Fields v. City of Chicago*, 2018 WL 253716, at *3 (N.D. Ill. Jan. 1, 2018), and *Awalt v. Marketti*, 2018 WL 2332072, at *2-3 (N.D. Ill. May 23, 2018).

51. Declarant has reviewed the billing records for his time spent on this matter. Those records are a fair and accurate depiction of the time Declarant spent working on this case and are reasonable in terms of the time spent on each task.

I declare under penalty of perjury that the foregoing is true and correct.

FURTHER DECLARANT SAYETH NOT

Executed on May 31, 2022                                        Jon Loevy

14

**Timesheet of Jon Loevy**
(Time related to claims tried to verdict)

| Date | Task | Time |
|---|---|---|
| 6/20/2020 | reviewing email and conferring with Elizabeth Wang (EW) about potential lawsuit | 0.25 |
| 7/2/2020 | reviewing complaint; conferring with EW | 0.25 |
| 7/23/2020 | reviewing First Amended Complaint | 0.25 |
| 9/7/2021 | reviewing email from EW re: expert invoices; conferring with EW about litigation strategy | 0.25 |
| 2/14/2022 | reading Plaintiffs' response to MSJ | 0.25 |
| 3/1/2022 | reading order on Denver MSJ | 0.50 |
| 3/1/2022 | t/c with EW about order on Denver MSJ and strategizing | 0.25 |
| 3/5/2022 | strategizing with EW about trial | 0.75 |
| 3/18/2022 | t/c with EW to strategize about trial, closing argument | 0.50 |
| 3/23/2022 | t/c with EW to strategize about closing argument | 0.75 |
| 3/25/2022 | reviewing Defs' motion to speak with jurors; emailing EW about motion; t/c with EW | 0.50 |
| 3/25/2022 | t/c with EW to discuss verdict, strategy on post-trial issues | 0.50 |
| 3/25/2022 | reviewing verdict entered | 0.25 |
| 3/29/2022 | conferring with EW about fee petition issues | 0.25 |
| 4/4/2022 | conferring and strategizing with EW about fee petition and post-trial issues | 0.50 |
| 4/9/2022 | conferring with EW about fee petition | 0.25 |
| 4/15/2022 | reviewing judgment entered | 0.25 |
| 4/17/2022 | reviewing invoice from expert and email from EW; approving invoice | 0.25 |
| 5/19/2022 | reviewing and revising declaration; reviewing hours for fee petition | 0.50 |
| 5/20/2022 | reviewing invoice from another expert | 0.25 |
| 5/26/2022 | conferring with EW about fee petition | 0.50 |
| 5/30/2022 | reviewing and revising/updating declaration; conferring with EW | 0.25 |
| 5/31/2022 | reviewing and revising declaration and reviewing timesheet | 0.25 |
| **TOTAL** | | **8.50** |