IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-1878-RBJ

ELISABETH EPPS, *et al.,*

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.,*

Defendants.

## DECLARATION OF DAVID B. OWENS

Pursuant to 28 U.S.C. § 1746, I, David B. Owens, declare as follows:

### Background and Education

1. In 2010, I graduated in Stanford University with a J.D. from the law school and an M.A. in Philosophy. During law school, I was the *Senior Articles Editor* of the Stanford Law Review, a Member Editor of the Stanford Environmental Law Journal, received the Gerald Gunther Prize for Outstanding Performance in Federal Courts, earned Pro Bono distinction, and served as a fellow in the Levin Center for Public Interest.

2. I was also a member of the Stanford Supreme Court Litigation Clinic, where I worked on numerous cases at the United States Supreme Court, most notably successfully representing Ignacio Flores-Figueroa in *Flores-Figueroa v. United States*, 556 U.S. 646 (2009). During law school, I also wrote a successful amicus brief in *Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009) (*en banc*), while working at the American Civil Liberties Union of Washington in Seattle, Washington.

3. After graduating from Stanford, I served as a law clerk for the Honorable Diane P.

1

Wood of the United States Court of Appeals for the Seventh Circuit, and then as a law clerk for the Honorable Myron H. Thompson of the United States District Court for the Middle District of Alabama.

### Civil Rights Experience

4.  I joined the civil rights firm of Loevy & Loevy in 2012. I became a partner in 2018. Since joining Loevy & Loevy, I have successfully litigated numerous civil rights and wrongful conviction cases, including a $10 million settlement in *Caine v. City of Chicago*, 11-CV-8996 (N.D. Ill), which settled soon after the court indicated that the defendants' motions for summary judgment would be denied. I was the principal attorney responsible for drafting our client's response in opposition to summary judgment.

5.  After *Caine*, I successfully litigated the case on behalf of Harold Richardson, *Richardson v. City of Chicago*, 12-CV-9184 (N.D. Ill.), which resulted in an $7.9 million settlement from the City of Chicago and an $8 million settlement from Cook County, due to claims having been raised against former Assistant State's Attorneys in that case. As in *Caine*, the settlement occurred after one of the ASAs moved for summary judgment, but the motion was denied. As in *Caine*, I was the principal drafter of Mr. Richardson's response to the crucial motion for summary judgment.

6.  Most recently, in *Taylor v. City of Chicago*, 14-CV-737 (N.D. Ill.), we settled the lawsuit of Daniel Taylor for $14.25 million. This was another case where I was substantially responsible for drafting a number of briefs, including dispositive motions briefing, that enabled the case to move forward.

7.  I was second chair in a civil case in St. Louis, *Holmes v. Slay*, Case No. 12-CV-2333 (E.D. Mo.), on behalf of a client who wrongfully spent five years in federal prison on

2

bogus drug charges. Our firm was retained after discovery was complete, and I joined the trial team five weeks before trial. Nonetheless, after a week-long trial, we secured a $2.5 million verdict for Mr. Holmes, and I conducted the direct examination of Mr. Holmes, which lasted nearly an entire day. In *Holmes*, in granting a § 1988 fees request, the Court explained that "[b]y any measure, Plaintiff achieved an exceptional outcome in this case," and went on to grant my request for a fee rate of $330 an hour. *Holmes v. Slay*, No. 12-cv-2333, Dkt. 314 (Mar. 15, 2017).

8. My civil practice focuses exclusively on civil rights matters and litigation under 42 U.S.C. § 1983, and principally in cases concerning wrongful convictions, like *Caine, Taylor, Richardson*, and *Holmes*. However, I also have achieved positive results for clients in First and Fourth Amendment cases, both large and small. I was co-lead counsel in *Estate of Tony Robinson v. City of Madison*, No. 15-CV-502 (W.D. Wis.), which involved the fatal shooting of an unarmed teenager by a police officer in Madison, Wisconsin. On the eve of trial, and after the district court granted our motion to have the officer's last-minute qualified immunity appeal certified as frivolous, we settled the case for $3.35 million—the largest settlement at the time in a police shooting case Wisconsin history by over a $1 million. *See* Cara Lombardo, *$3.35 Million Settlement for Wisconsin Family of Black Teen Killed by Officer,* CHI. TRIBUNE (Feb. 23, 2017); Mary Spicuzza and Jason Stein, *Family of Tony Robinson, Man shot by Madison Police to Receive $3.35 Million*, MILWAUKEE J. SENTINEL (Feb. 23, 2017).

9. After that, I was lead counsel in the lawsuit against the City of Milwaukee and a Milwaukee police officer arising from the shooting death of Sylville Smith. That case exceeded the already monumental settlement in *Robinson*, and it settled for $4 million in 2020.

10. I have achieved successful results in other Fourth Amendment cases as well. *See, e.g., Green v. Chicago Heights*, No. 12-CV-9314 (N.D. Ill.) ($200,000 settlement in excessive

3

force and First Amendment retaliation case); *Freeman v. Crown Point*, No. 13-CV-059 (N.D. Ind.) ($100,000 settlement in false arrest case); and *Huffman Tavern on Rush et al.*, No. 13-CV-2236 (N.D. Ill.), and No. 2014 L 8650 (Cook County) ($75,000 settlement against police officers in False Arrest/Wrongful prosecution case, in addition to an additional confidential settlement against a private entity in state court).

11. I also have appellate experience, most significantly in filing *amicus curiae* briefs before the United States Supreme Court and the Courts of Appeals. The brief written by me and other Loevy & Loevy attorneys in *Kingsley v. Henderson* was cited by Justice Breyer in his opinion for the Court, adopting the rationale of the brief. 135 S. Ct. 2466, 2475 (2015) (citing Brief for Former Corrections Administrators and Experts as *Amici Curiae*). Another *amicus* brief at the Supreme Court was submitted in *Manuel v. City of Joliet*, No. 14-9496, which concerns the viability of a § 1983 malicious prosecution claim under the Fourth Amendment. The Supreme Court adopted the position we supported.

12. This work has continued in the Courts of Appeals. In the Ninth Circuit, I authored an *amicus* brief on behalf of the American Civil Liberties Union of Alaska and the Innocence Network in *Roberts v. City of Fairbanks*, No. 18-35938, opposing the dismissal of the case below. The Ninth Circuit ultimately reversed the decision and remanded the case for further proceedings. In the Seventh Circuit, I worked on a brief in *Avery v. City of Milwaukee*, No. 15-3175, on behalf of criminal defense, post-conviction, and civil rights attorneys. In its *Avery* decision, 847 F.3d 433 (7th Cir. 2017), the Seventh Circuit adopted the position advocated for in our *amicus* brief. I was also a principal drafter of an *amicus* brief on behalf of the Illinois Association of Criminal Defense Lawyers in *Makiel v. Butler*, No. 13-3076. In addition, I was part of the team that drafted an *amicus* brief in the Sixth Circuit case, *Sanders v. Jones*, No. 15-

4

6384, which asked the Sixth Circuit to re-hear an important civil rights case *en banc*. Though the Court declined that action, the panel amended its decision to specifically address the issues raised in the *amicus* brief.

13. I have handled all aspects of litigation, including discovery, motion practice, summary judgment briefing, and deposition taking. In just the first few years of my practice, I affirmatively took over 200 depositions and successfully defeated *Daubert* motions and motions to dismiss. Notably, in the *Richardson* litigation concerning the wrongful conviction of four teens at the hands of Chicago police detectives and Cook County State's Attorneys, I joined the litigation team well after discovery had begun. Nonetheless, I took a substantial part in drafting two successful motions to reconsider, which persuaded a federal judge to reconsider his prior opinions dismissing two separate federal claims. *See Saunders v. City of Chicago*, 146 F. Supp. 3d 957 (N.D. Ill. 2015); *Saunders v. City of Chicago*, 2014 WL 3535723 (N.D. Ill. July 11, 2014).

## Other Relevant Experience

14. Between fall 2012 and spring 2017, I had an appointment as a lecturer at the University of Chicago Law School, where I co-taught in the school's wrongful conviction legal clinic, the Exoneration Project. In this capacity, I gained substantial post-conviction litigation experience and actively represented roughly 15 or more post-conviction clients at any given time. My experience has involved extensive litigation of a new trial for an Ohio Innocence Project client, where the State agreed to dismiss the charges altogether just days before the trial. *See* Phil Trexler, *Murder Charges Dropped Against Akron Man After More than 20 Years*, AKRON BEACON J. (Jan. 30, 2014). In addition, I have conducted evidentiary hearings (essentially "bench trials" in post-conviction matters), oral advocacy, and complex investigations. As a result

of one of these hearings on behalf of Patrick Prince, the court granted our motion for a new trial and vacated Mr. Prince's wrongful conviction. The charges were later dismissed. The wrongful charges against my client Ariel Gomez were dismissed the day the evidentiary hearing was set to begin. Currently, I am in the midst of three such evidentiary hearings. In the post-conviction context, I have also prevailed on an appeal, in *People v. Glover*, 2014 IL App (1st) 122847-U (unpublished order), where I was the principal attorney of the briefs.

15. Moreover, in my capacity as a lecturer at the University of Chicago Law School, I participated as an instructor in a two-week Intensive Trial Advocacy course for several years. I have given a presentation at a panel on the Illinois Association of Criminal Defense Lawyers on post-conviction litigation in Illinois.

16. I was an adjunct lecturer at Stanford Law School in Spring 2021. There, I taught a course about the history of race, policing, and Section 1983 litigation titled "Race and Policing: Accountability and Civil Liability."

17. In addition to my full-time responsibilities litigating civil rights cases on behalf of plaintiffs at Loevy & Loevy, I am now an Assistant Professor of Law at the University of Washington, a tenure-track appointment I began in the fall of 2021. I recently started a clinic at the University of Washington Law School, the Civil Rights and Justice Clinic. The clinic represents plaintiffs in civil rights lawsuits in federal courts in Washington, California, and Hawaii, among other places.

18. I have also engaged in *pro bono* litigation in other contexts. I represented four clients—Javell Ivory, Jaime Jackson, David Wright, and Kenneth Brown—in post-conviction litigation challenging their sentences of life without parole for convictions that occurred when they were juveniles and are now unconstitutional under the Supreme Court's recent decisions in

*Miller v. Alabama*, 132 S. Ct. 2455 (2012), and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). I also partnered with the University of Chicago's Federal Criminal Justice Clinic to provide *pro bono* representation at trial to a client charged with federal crimes. I have also served as a mentor to diverse law students through the ABA's Judicial Internship Opportunity Program working for judges during their summers.

19. I have provided Continuing Legal Education presentations in a variety of contexts. On May 21, 2022, I gave a CLE on the Use of Experts in Civil Rights Cases for a CLE conference for civil rights and criminal defense attorneys in Chicago. In 2021, I presented at a CLE organized by judges in Washington State called "Qualified Immunity 360: A Multi-Part Presentation on the History, Legal Basis, and Utility of the Judge-Made Defense to Claims under 42 U.S.C. 1983." In 2020, I presented at a CLE about *Monell* litigation under 1983.

20. Finally, I have published in legal journals. For example, my most recent paper, *Violence Everywhere: How the Current Spectacle of Black Suffering, Police Violence, and the Violence of Judicial Interpretation Undermine the Rule of Law*, was published in the Stanford Journal of Civil Rights and Civil Liberties in 2022.

### Hourly Rate and Time Spent

21. The hourly rate I am seeking for the work performed in this case is $545 per hour. This rate is commensurate with rates charged by attorneys of like experience and skill practicing in this area, and it is lower than the rates provided in the Fitzpatrick Matrix for fee shifting cases in the District of Columbia, for attorneys with 12 years' experience ($614).

22. In 2017, I was awarded a rate of $330 per hour in *Holmes v. Slay*, No. 12-CV-2333, Dkt. 314 (Mar. 15, 2017).

23. I have reviewed the billing records for my time spent in this matter. They are a

fair and accurate depiction of the time I spent working on this case and are reasonable in terms of the time spent on each task. In fact, they probably significantly underestimate the amount of time I spent consulting on this case with the lead attorneys.

    I declare under penalty of perjury that the foregoing is true and correct.

                                                                           David B. Owens

Dated: May 31, 2022

| Timesheet of David B. Owens | | |
|---|---|---|
| (Time related to claims tried to verdict) | | |
| | | |
| Date | Task | Time |
| 7/27/2020 | conferring with Elizabeth Wang (EW) about strategy | 0.25 |
| 4/9/2021 | conferring with EW about potential police practices experts | 0.25 |
| 8/6/2021 | conferring with EW and Makeba R. about settlement strategy | 0.25 |
| 1/3/2022 | t/c with EW to strategize about settlement | 0.50 |
| 2/9/2022 | t/c with EW to strategize about Monell for SJ brief | 0.50 |
| 3/1/2022 | t/c with EW to confer about SJ order | 0.25 |
| 3/19/2022 | t/c with EW to strategize about closing argument | 0.25 |
| 3/23/2022 | t/c with EW and Makeba R. re: strategy, closing | 0.50 |
| 5/19/2022 | reviewing timesheet for fee petition | 0.25 |
| 5/25/2022 | revising declaration for fee petition | 0.25 |
| | | |
| TOTAL | | 3.25 |