IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-1878-RBJ

ELISABETH EPPS, *et al.*,

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

Defendants.

---

## AFFIDAVIT OF ERICA GROSSMAN

---

I, Erica T. Grossman, hereby declare under penalty of perjury that the following statements are true and correct to the best of my knowledge:

1. I submit this declaration in support of the Fitouri Plaintiffs' Motion for Attorneys' Fees and Costs in this case. I have personal knowledge of the matters set forth in this declaration, and if called as a witness could testify to these matters.

**PROFESSIONAL BACKGROUND AND SCOPE OF OPINIONS**

2. I graduated the University of Michigan Law School in 2004 and began my legal career at the firm Latham and Watkins, LLP in San Francisco. I was admitted to the California bar in 2004, and to the bar of the State of Colorado in 2008.

3. I am currently a partner in the law firm of Holland, Holland Edwards & Grossman, and have litigated numerous constitutional civil rights claims, including cases involving police brutality, deliberate indifference, First Amendment issues, unconstitutional conditions of confinement, and wrongful death. Both I and my law firm partners, Anna Holland

Exhibit G

Edwards and John Holland, have been repeatedly listed as top lawyers in Colorado for many years for our work in civil rights cases. I have been named a Colorado Super Lawyer, Best Lawyers in Denver, 5280's Top Lawyers in Civil Rights Litigation, and Top 50 Women Lawyers in Colorado. I have received numerous awards and recognitions, including the ACLU Carl Whitehead award in 2010 and CTLA Access to Justice Award for my work representing people held unlawfully at Guantanamo Bay.

4. I frequently publish and teach in the areas of trial skills, jail medicine, police brutality, and nursing home neglect. I regularly serve as a lecturer at bar conferences, law schools, and CLE programs regarding civil rights and nursing home litigation.

5. I have served as lead litigation and trial counsel in multiple civil rights cases resulting in seven figure settlements and verdicts for clients, including obtaining an over $11,000,000 jury verdict before this Court for an inmate at Jefferson County who was denied medical care during his stroke. I am also familiar with class actions and group cases, and I was lead cooperating counsel for the ACLU in obtaining a Consent Decree with the Colorado Department of Corrections on behalf of a class of medically vulnerable individuals at the beginning of the COVID-19 pandemic.

6. As counsel for prevailing plaintiffs in previous cases, and based on my experience and significant research in the area, I am intimately familiar with the hourly rates charged by members of the civil litigation bar in the Denver community.

7. I have been asked by Elizabeth Wang, counsel for the Fitouri Plaintiffs, to provide this affidavit addressing Loevy & Loevy's requested attorneys' fees and hourly rates, case costs, and what was reasonable and necessary to prosecute Plaintiffs' claims in this matter.

8. I have reviewed Loevy & Loevy's fee petition, declarations, the billing records, and the exhibits submitted in support thereof. I have also reviewed many of the pleadings, the Court's Order on Summary Judgment, and I am familiar with the details of this case. I followed and attended some of the multiple-week trial against the City and County of Denver, which ultimately obtained a favorable jury verdict of over $14 million dollars on behalf of 12 plaintiffs, five of whom were Ms. Wang's clients.

## Ms. Wang's Professional Background and Experience

9. I am familiar with the qualifications and work of Elizabeth Wang, a partner at Loevy & Loevy, one of the largest and most respected civil rights law firms in the country. Ms. Wang has been practicing law since 2005 and has dedicated her practice to vindicating serious violations of civil rights. Ms. Wang has served as lead counsel in complex constitutional claims, often for wrongful convictions, First Amendment speech violations, and excessive force. She handles all aspects of a case, from discovery and motion practice to trials and appeals, and has consistently achieved outstanding results on behalf her clients. Ms. Wang has successfully tried to verdict and settled numerous cases in the high seven and eight figures, as well as successfully briefed and argued appeals. I have been well aware of Ms. Wang's practice for many years now and am familiar with the excellent and celebrated results she has continuously achieved in civil rights matters.

10. Over the years, I have had the opportunity to personally observe Ms. Wang's many unique skills, including her passion for justice and exceptional strategic and creative approaches to both law and fact. I am aware of her extraordinary legal representation of marginalized clients who have been destroyed by governmental actors or systems, and I know

3

that she has more than earned her widespread reputation of having exceptional legal skills and knowledge about complex civil rights cases. She is unquestionably one of the first people I would go to for any legal question, whether it is to brainstorm a case, strategize about discovery, talk about issues specific to women trial lawyers, get advice on how to defeat qualified immunity arguments, or plan trial strategy.

11.     Additional information about Loevy & Loevy exceptional legal team's professional background and experience are set forth in their attached declarations, which I have read.

### Loevy & Loevy's Attorney and Paralegal Billing Rates Are Reasonable and Consistent with the Market, and Their Expended Time Was Reasonable and Necessary to Prosecute Their Clients' Claims

12.     It is my opinion that the hourly rates of the attorneys and paralegals who represented Plaintiffs in this matter are within the normal rates charged by highly competent civil law firms engaged in specialized litigation and by other practitioners in Colorado of similar skill and competence. The time they spent on this case is also entirely appropriate, reasonable, and measured.

13.     Specifically, a $595 hourly rate for a partner at Loevy and Loevy with Ms. Wang's skill, expertise, and reputation, a $375 associate rate, and a $175 paralegal rate, is both reasonable and consistent with the market.

14.     My opinions in this regard are fortified by the fee petition and attorney declarations, where they also provide strong bases for their own rates and time spent on the case.

15.     I am aware that Loevy & Loevy associates and paralegals also worked on this litigation. There was one associate and one paralegal who, along with Ms. Wang, did the lion's

4

share of the work in this case. Their requested rates are based on their respective experience as graded by the firm for associates engaged in their levels of complex litigation work and are as follows: Makeba Rutahindurwa (associate): $375 an hour; Brian Swift (paralegal) at $175 an hour. These rates too are clearly within the range of reasonable rates for attorneys of their experience and who have had the benefit of fully practicing law under the tutelage of the partners of Loevy & Loevy. The assumption of such roles by carefully selected, highly talented associates early is an integral part of how civil rights firms operate.

16. While I have never personally met Makeba Rutahindurwa, I have read her attached declaration and understand her to be a highly skilled and qualified associate. I also know Loevy & Loevy only hires and retains exceptional and dedicated lawyers at their firm. Likewise, I am aware that the rates and qualifications of paralegals and support staff are reasonable. The paramount importance of skilled management of a case by paralegals, including keeping a close eye on all proceedings and documenting everything that is happening in a case in a way that is tightly organized and readily accessible to the litigation team is not rote, clerical, or ordinary. Such work is the lifeblood of the litigation system, requires concentrated and continuous focus, and is not fairly characterized as merely clerical.

17. From my own knowledge about my firm's associate and staff rates—and understanding how vital their work is on a large multi-plaintiff/multi-claim case—seeing the work done on this case, and reading their backgrounds, I am confident that their expended hours and rates are all perfectly reasonable and necessary for the undeniably successful trial team on this case.

18. Courts have recently approved rates in this range for these types of cases. In April

5

of this year, Judge Martinez awarded the following rates for a successful verdict in a police excessive force case: $595 to a partner trying the case, and $375 to all the associates. See *Valdez v. Motyka*, Civil Action No. 15-cv-0109-WJM-STV, 2022 U.S. Dist. LEXIS 67620, at *7-8 (D. Colo. Apr. 12, 2022) ("After carefully considering the parties' arguments, supporting documentation, and applicable case law, the Court concludes that Plaintiff's requested hourly billing rates are reasonable for civil rights attorneys of comparable skill and experience in the Denver area.").

19. In March 2019, Judge Arguello entered an order setting Killmer Lane and Newman's partners David Lane and Mari Newman's hourly rates at $650 and $600 respectively. *See Willmeng v. City of Lafayette, Colorado,* Civil Action No. 19-cv-00150-CMA-SKC, Order Directing Entry of Final Judgment.

20. With regard to the requested partner rates, it needs to be recognized here that partners at large firms doing corporate litigation generally have hourly rates exceeding $600-800. Loevy & Loevy regularly obtains multiple million-dollar results for their clients through both judgments and settlements. The partners at the firm are at the top of their fields and their value is every bit as much as that of the partners practicing in other areas of law.

21. My overall impression of the work done by this group of Plaintiffs' attorneys and their supporting paralegal is that it was exceptional. The result achieved here by this verdict, *which is the most important factor in attorneys fee applications*, is obviously exceptional.

22. As this Court certainly appreciates, Plaintiffs often face an uphill battle in civil rights cases and have to fight every step of the way for years to even get to trial. This case was no different; Defendants reportedly fought this case tooth and nail and there was a voluminous

amount of video produced in this case, totaling over 1,000 hours of video to review and 62,000 pages of documents to review. All of the hours spent doing so was undeniably reasonable and necessary, particularly where, as here, the City refused to answer interrogatories intended to streamline the discovery process. Indeed, it was clear from watching some of the trial that these video exhibits were essential to the verdict in this case.

23. Given the uncertainty of success and inevitable time consuming and expensive fight, many firms would not undertake such a task against a City known to rarely resolve these claims despite many opportunities, and after losing summary judgment. Loevy & Loevy lawyers fought tirelessly on behalf of their clients, coming up with a winning strategy relating to the *Monell* liability of Denver in these constitutional right violations. That is no easy feat.

24. Based on my review of the submission, I can say confidently to the Court that Loevy & Loevy's billing practices and time is entirely reasonable. In fact, I would expect a much higher fee petition given how many clients these lawyers had, the volume of documents, how hard fought this case was, as well as how many meetings are necessary to coordinate with another firm to find and perfect a cohesive trial strategy. I can see that much work that was billable was not claimed, such as countless conversations with clients, inter-office conferences, and case strategy meetings with other lawyers in the field. Such time could easily have been fairly included and determined by this Court to be due. And it is evident that the Defendants benefited from Plaintiffs' extremely efficient litigation practices, that is undoubtedly a result of the experience and expertise of Ms. Wang and her colleagues in civil rights cases.

25. Simply put, I have seen nothing out of the ordinary in this fee application. The time claimed was actually performed on tasks that were obviously required in this hotly

contested case.

26. When Denver chose to go to trial here, they knew exactly the case they had and whom they were going against. They chose not to offer reasonable settlements and instead chose to go to trial against a top plaintiff-side civil rights firm during a time of reckoning for police abuses of power. They got beat soundly and should now have to deal with the consequences of their own decisions.

27. Judge Blackburn also addressed this issue in *Hayes v Skywest Airlines, Inc.*, No. 1:15-cv-2015-REB-NYW, Doc. #220 at 3-6 (filed 07/02/18), writing about a similar refusal to negotiate as follows:

> Plaintiff seeks attorney fees of $348,085.00 representing a total of 923.2 hours for work done by three attorneys – Paul Maxon, Sarah Parady, and Amy Trenary – and one paralegal – Carol Zumwalt. Initially, it appears to me that the total fees requested are eminently reasonable for a highly contested case which took three full years to bring to trial and which defendant fought vigorously and with no apparent ability to objectively perceive the relative merits of its own case.
>
> \* \* \* \* \* \* \* \* \* \*
>
> Moreover, to the extent the number of hours counsel expended in bringing this matter to resolution might seem excessive, the fault for such excess lies squarely on defendant's shoulders. Defendant pursued this matter aggressively and with an apparent lack of self-awareness that was evident throughout the entirety of the litigation.
>
> Even after the court denied the majority of defendant's motion for judgment,[8] it rejected offers to mediate and an offer of settlement which seems almost laughably de minimis in hindsight. Having presided over this case through trial, it is plain to me that defendant's obstinacy and myopia in this matter were the primary contributors to the time required to bring it to resolution. Under those circumstances, I decline defendant's invitation to serve as a "green-eyeshade accountant," scouring individual billing entries for evidence of waste or fat. *Fox*, 131 S.Ct. at 2216.
>
> Footnote 8. Contrary to my typical practice, my order denying defendant's motion included a lengthy recitation of the facts as seen in the light most favorable to plaintiff. In so doing, it was my hope – and a more perceptive and less obdurate

party might have perceived as much – that defendant might have realized the relative precariousness of its position. Although defendant obviously was within its rights to insist on proceeding to trial, it must accept the consequences of that decision.

28.     It is my opinion that the attorneys' fees incurred in this case by Loevy & Loevy totaling $1,432,885.00, and costs and expenses under Section 1920 and Section 1988 totaling $33,104.89, were reasonable and necessary to prosecute and successfully try their clients' various claims. Sometimes you just get beat – badly.

29.     The opinions provided in this declaration are based on the information that I have been provided and reviewed and upon other information within my possession. I reserve the right to add to or modify these opinions based upon additional information.

I hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Erica T. Grossman