### THE FITZPATRICK MATRIX

Hourly Rates ($) for Legal Fees for Complex Federal Litigation in the District of Columbia

| Years Exp. / Billing Yr. | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|---|---|---|---|---|
| 35+ | 535 | 563 | 591 | 619 | 647 | 675 | 703 | 731 | 736 | 760 |
| 34 | 534 | 562 | 590 | 618 | 646 | 674 | 702 | 729 | 734 | 758 |
| 33 | 532 | 560 | 588 | 616 | 644 | 672 | 700 | 728 | 733 | 757 |
| 32 | 530 | 558 | 586 | 614 | 642 | 670 | 698 | 726 | 730 | 754 |
| 31 | 527 | 555 | 583 | 611 | 639 | 667 | 695 | 723 | 728 | 752 |
| 30 | 524 | 552 | 580 | 608 | 636 | 664 | 692 | 720 | 725 | 749 |
| 29 | 521 | 549 | 577 | 605 | 633 | 661 | 689 | 717 | 721 | 745 |
| 28 | 517 | 545 | 573 | 601 | 629 | 657 | 685 | 713 | 717 | 741 |
| 27 | 512 | 540 | 568 | 596 | 624 | 652 | 680 | 708 | 713 | 736 |
| 26 | 508 | 536 | 564 | 592 | 620 | 648 | 676 | 704 | 708 | 731 |
| 25 | 502 | 530 | 558 | 586 | 614 | 642 | 670 | 698 | 703 | 726 |
| 24 | 497 | 525 | 553 | 581 | 609 | 637 | 665 | 693 | 697 | 720 |
| 23 | 491 | 519 | 547 | 575 | 603 | 630 | 658 | 686 | 691 | 714 |
| 22 | 484 | 512 | 540 | 568 | 596 | 624 | 652 | 680 | 684 | 707 |
| 21 | 477 | 505 | 533 | 561 | 589 | 617 | 645 | 673 | 677 | 699 |
| 20 | 470 | 498 | 526 | 553 | 581 | 609 | 637 | 665 | 670 | 692 |
| 19 | 462 | 490 | 518 | 546 | 574 | 602 | 630 | 658 | 662 | 684 |
| 18 | 453 | 481 | 509 | 537 | 565 | 593 | 621 | 649 | 653 | 675 |
| 17 | 445 | 473 | 500 | 528 | 556 | 584 | 612 | 640 | 645 | 666 |
| 16 | 435 | 463 | 491 | 519 | 547 | 575 | 603 | 631 | 635 | 656 |
| 15 | 426 | 454 | 482 | 510 | 538 | 566 | 593 | 621 | 626 | 647 |
| 14 | 416 | 443 | 471 | 499 | 527 | 555 | 583 | 611 | 615 | 635 |
| 13 | 405 | 433 | 461 | 489 | 517 | 545 | 573 | 601 | 605 | 625 |
| 12 | 394 | 422 | 450 | 478 | 506 | 534 | 562 | 590 | 594 | 614 |
| 11 | 382 | 410 | 438 | 466 | 494 | 522 | 550 | 578 | 582 | 601 |
| 10 | 371 | 399 | 427 | 455 | 483 | 510 | 538 | 566 | 570 | 589 |
| 9 | 358 | 386 | 414 | 442 | 470 | 498 | 526 | 554 | 558 | 576 |
| 8 | 345 | 373 | 401 | 429 | 457 | 485 | 513 | 541 | 545 | 563 |
| 7 | 332 | 360 | 388 | 416 | 444 | 472 | 500 | 528 | 532 | 550 |
| 6 | 319 | 347 | 375 | 403 | 431 | 458 | 486 | 514 | 518 | 535 |
| 5 | 305 | 332 | 360 | 388 | 416 | 444 | 472 | 500 | 504 | 521 |
| 4 | 290 | 318 | 346 | 374 | 402 | 430 | 458 | 486 | 489 | 505 |
| 3 | 275 | 303 | 331 | 359 | 387 | 415 | 443 | 471 | 474 | 490 |
| 2 | 260 | 287 | 315 | 343 | 371 | 399 | 427 | 455 | 458 | 473 |
| 1 | 244 | 272 | 300 | 328 | 356 | 384 | 412 | 439 | 442 | 457 |
| 0 | 227 | 255 | 283 | 311 | 339 | 367 | 395 | 423 | 426 | 440 |
| P* | 130 | 140 | 150 | 160 | 169 | 179 | 189 | 199 | 200 | 207 |

* = Paralegals/Law Clerks

*Published by the U.S. Attorney's Office for the District of Columbia, Civil Division*

Exhibit K

## Explanatory Notes

1.  This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared to assist with resolving requests for attorney's fees in complex civil cases in District of Columbia federal courts handled by the Civil Division of the United States Attorney's Office for the District of Columbia.  It has been developed to provide "a reliable assessment of fees charged for complex federal litigation in the District [of Columbia]," as the United States Court of Appeals for the District of Columbia Circuit urged.  *DL v. District of Columbia*, 924 F.3d 585, 595 (D.C. Cir. 2019).  The matrix has not been adopted by the Department of Justice generally for use outside the District of Columbia, nor has it been adopted by other Department of Justice components.

2.  The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees.  *E.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b).  A "reasonable fee" is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).  The matrix is not intended for use in cases in which the hourly rate is limited by statute.  *E.g.,* 28 U.S.C. § 2412(d).

3.  For matters in which a prevailing party agrees to payment pursuant to this fee matrix, the United States Attorney's Office will not request that a prevailing party offer the additional evidence that the law otherwise requires.  *See, e.g., Eley v. District of Columbia*, 793 F.3d 97, 104 (D.C. Cir. 2015) (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (requiring "evidence that [the] 'requested rates are in line with those prevailing in the community for similar services'")).

4.  The years in the column on the left refer to an attorney's years of experience practicing law.  Normally, an attorney's experience will be calculated based on the number of years since an attorney graduated from law school.  If the year of law school graduation is unavailable, the year of bar passage should be used instead.  Thus, an attorney who graduated from law school in the same year as the work for which compensation is sought has 0 years of experience.  For all work beginning on January 1 of the calendar year following graduation (or bar admission), the attorney will have 1 year of experience. (For example, an attorney who graduated from law school on May 30 will have 0 years of experience until December 31 of that same calendar year.  As of January 1, all work charged will be computed as performed by an attorney with 1 year of experience.)  Adjustments may be necessary if an attorney did not follow a typical career progression or was effectively performing law clerk work.  *See, e.g., EPIC v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 70-71 (D.D.C. 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate).

5.  The data for this matrix was gathered from the dockets of cases litigated in the U.S. District Court for the District of Columbia using the following search in July 2020 in Bloomberg Law: keywords ("motion n/5 fees AND attorney!") + filing type ("brief," "motion," or "order") + date ("May 31, 2013 – May 31, 2020" under "Entries (Docket and Documents)").  This returned a list of 781 cases.  Of those, cases were excluded if there was no motion for fees filed, the motions for fees lacked necessary information, or the motions involved fees not based on hourly rates, involved rates explicitly or implicitly based on an existing fee matrix, involved rates explicitly or implicitly subject to statutory fee caps (e.g., cases subject to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)), or used lower rates prescribed by case law (*e.g., Eley*, 793 F.3d at 105 (Individuals with Disabilities in Education Act

cases)).   After these excisions, 86 cases, many of which included data for multiple billers (and 2 of which only provided hourly rate data for paralegals), remained.

6.   The cases used to generate this matrix constitute complex federal litigation—which caselaw establishes as encompassing a broad range of matters tried in federal court.   *E.g.*, *Reed v. District of Columbia*, 843 F.3d 517, 527-29 (D.C. Cir. 2016) (Tatel, J., concurring) (noting that cases arising under the Freedom of Information Act, Title VII, the Americans with Disabilities Act, Constitutional Amendments, antitrust statutes, and others have been deemed complex, and even "relatively small" cases can constitute complex federal litigation, as they too require "specialized legal skills" and can involve "complex organizations," such as "large companies"); *Miller v. Holzmann*, 575 F. Supp. 2d 2, 14-16, 17 (D.D.C. 2008) (prevailing market rates for complex federal litigation should be determined by looking to "a diverse range of cases").   That the attorneys handling these cases asked the court to award the specified rates itself demonstrates that the rates were "'adequate to attract competent counsel, [while] not produc[ing] windfalls to attorneys.'"  *West v. Potter*, 717 F.3d 1030, 1033 (D.C. Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).   As a consequence, the resulting analysis yields the "prevailing market rate[] in the relevant community" for complex litigation undertaken in federal courts in the District of Columbia.  *See Blum*, 465 U.S. at 895.

7.   From these 86 complex federal cases, the following information was recorded for 2013 and beyond: hourly rate, the calendar year the rate was charged, and the number of years the lawyer was out of law school when the rate was charged (or, if law school graduation year was unavailable, years since bar passage), as defined above.  If the graduation or bar passage year was not stated in a motion or its exhibits, then the lawyer's biography was researched on the internet.  Although preexisting fee matrices for the District of Columbia provide for mid-year rate changes, very few lawyers in the data submitted rates that changed within a calendar year.  For this reason, the matrix was modeled using one rate for each calendar year.  On the occasions when a lawyer expressed an hourly rate as a range or indicated the rate had increased during the year, the midpoint of the two rates was recorded for that lawyer-year.

8.   The matrix of attorney rates is based on 675 lawyer-year data points (one data point for each year in which a lawyer charged an hourly rate) from 419 unique lawyers from 84 unique cases.  The lawyer-year data points spanned from years 2013 to 2020, from $100 to $1250, and from less than one year of experience to 58 years.

9.   Paralegal/law clerk rates were also recorded.  The following titles in the fee motions were included in the paralegal/law clerk data: law clerk, legal assistant, paralegal, senior legal assistant, senior paralegal, and student clerk.  The paralegal/law clerk row is based on 108 paralegal-year data points from 42 unique cases.  They spanned from 2013 to 2019 and from $60 to $290.  (It is unclear how many unique persons are in the 108 data points because paralegals were not always identified by name.)

10.  The matrix was created with separate regressions for the lawyer data and the paralegal data.  For the paralegal data, simple linear least-squares regression was used with the dependent variable hourly rate and the independent variable the year the rate was charged subtracted from 2013; years were

combined into one variable and subtracted from 2013 rather than modeled as separate indicator variables to constrain annual inflation to a constant, positive number. The resulting regression formula was rate = 129.8789 + 9.902107 * (year-2013). For the lawyer data, least-squares regression was used with the dependent variable hourly rate and independent variables the year the rate was charged and the number of years of experience of the lawyer when the rate was charged. The year the rate was charged was subtracted from 2013 and modeled linearly as with the paralegal data. The number of years out of law school (or since year of bar passage) was modeled with both linear and squared terms, as is common in labor economics to account for non-linear wage growth (e.g., faster growth earlier in one's career than at the end of one's career). *See, e.g.*, Jacob Mincer, *Schooling, Experience, and Earnings* (1974). The resulting regression formula was rate = 227.319 + 16.54492 * experience - 0.2216217 * experience ^ 2 + 27.97634 * (year-2013). Regressions were also run with log transformed rates and with a random-effect model (to account for several lawyers appearing more than once in the data), but both alternatives resulted in mostly lower rates than those reflected here; in order to minimize fee disputes, these models were therefore rejected in favor of the more generous untransformed, fixed-effect model. Rates from one case comprised 20% of the data; the regression was also run without that case, but the resulting rates were mostly lower and therefore rejected, again to minimize fee disputes.

11. The data collected for this matrix runs through 2020. To generate rates in 2021, an inflation adjustment (rounded to the nearest whole dollar) was added. The United States Attorney's Office determined that, because courts and many parties have employed the legal services index of the Consumer Price Index to adjust attorney hourly rates for inflation, this matrix will do likewise. *E.g.*, *Salazar v. District of Columbia*, 809 F.3d 58, 64-65 (D.C. Cir. 2015); *Eley*, 793 F.3d at 101-02; *DL*, 924 F.3d at 589-90.

12. This matrix was researched and prepared by Brian Fitzpatrick, the Milton R. Underwood Chair in Free Enterprise and Professor of Law at Vanderbilt Law School, with the help of his students.