UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Elisabeth Epps, *et al.*,

    v.

City and County of Denver, *et al*.

Civ. No. 1:20-cv-1878-RBJ (consol.)

**OPPOSITION TO DEFENDANT CHRISTIAN'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR**

Officer Christian's post-trial motion repeats his attorneys' failed closing argument and asks this Court to accept a version of facts that the jury unequivocally rejected. The motion ignores inculpatory evidence and overlooks instructions issued at defense counsel's behest to address the same arguments raised in his post-trial brief. Most troubling, the motion reveals that Officer Christian steadfastly refuses to take responsibility for his actions. As the Court aptly observed at the close of evidence: "I can't think of a case that I've had or that I'm even aware of in this court that more deserves the pulse of the people, the pulse of the community as reflected in the eight jurors that have heard the case." Dkt. 355 at 2142. Having been held to account for his actions by a jury of his peers, Officer Christian's motion seeks to erase the people's verdict. The motion should be denied.

**ARGUMENT**

"Judgment as a matter of law under Rule 50 is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position. This Court does not make credibility determinations or weigh the evidence, and the evidence must be viewed in the light most favorable to the nonmoving party." *Tudor v. Se. Okla.*

*State Univ.*, 13 F.4th 1019, 1031 (10th Cir. 2021) (internal quotation marks and citations omitted). "In deciding a new trial motion based on insufficiency of the evidence" under Rule 59(a), "a district court must analyze whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence." *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013) (internal quotation marks and citation omitted). Officer Christian's motion fails to clear these high hurdles to overturn the jury's verdict.

## I. The Evidence Overwhelmingly Supports the Jury's Liability Verdict

Officer Christian is not entitled to judgment as a matter of law on Ms. Epps' Fourth Amendment claim. The testimonial and video evidence shows that Officer Christian took a knee, raised his weapon, aimed, and shot Ms. Epps with a PepperBall, even though Ms. Epps posed no threat to herself or others. Dkt. 352 at 1851–52. Officer Christian's BWC shows another officer immediately approach after he shoots Ms. Epps, telling him, "[S]arge said don't hit her." Dkt. 351 at 1482. This evidence, especially when taken in the light most favorable to Ms. Epps and drawing all reasonable inferences in her favor (as Rule 50 requires), sufficiently supports the jury's verdict with respect to her Fourth Amendment claim.

Officer Christian does not dispute that the jury was properly instructed on the legal standard to consider the totality of the circumstances. Dkt. 340 at 15–16 (Instruction No. 12). Nor does he dispute (or even mention) the relevant factors: that Ms. Epps posed no immediate threat; that there was no need to use *any* force, let alone to shoot her with a chemical projectile; and that her only alleged offense—jaywalking—was wholly disproportionate to Officer Christian's use of force. Instead, he repeats his own testimony that he was simply "encourag[ing] Ms. Epps to leave the middle of 14th Avenue" to avoid "obstructing traffic." Mot. 4. (The fact that he shoots her *after*

2

she crossed several street lanes, which would have the effect of backing her *into* traffic, belies his purported motive.) The jury did not believe Officer Christian's account or explanation, and his purported subjective intent—to protect Ms. Epps from "danger to herself and the public," *id*.—is irrelevant under the objective standard used to assess reasonable force, Dkt. 340 at 15–16; *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) ("The touchstone of the reasonableness inquiry in an excessive force claim . . . is whether the officers' actions are objectively unreasonable."). The liability verdict must stand.

As the Court correctly ruled at summary judgment, clearly established law holds that an officer may not deploy less-lethal munitions on peaceful protestors under analogous circumstances. *See* Dkt. 304 at 15–16 (citing *Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir. 2008) and *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008)). Officer Christian nevertheless argues that "the constitutional right at issue" is not "defined at an appropriate level of specificity," Mot. 4, without saying what the appropriate level should be. That underdeveloped argument is meritless. Those Tenth Circuit decisions involved Fourth Amendment claims for the use of force, including the use of PepperBalls, on peaceful protestors. It is hard to imagine more "specific or particularized" precedent. Officer Christian opted not to take an interlocutory appeal and offers no reason to revisit the Court's summary judgment ruling.

## II.   Officer Christian Was Not Prejudiced by Standing Trial with His Co-Defendant

Officer Christian contends that this Court's decision not to bifurcate him from the trial against Denver was "profoundly prejudicial." Mot. 6. In support, he notes that much of the evidence at trial concerned other officers and other incidents. The implication of Officer Christian's argument is that the jury might have conflated Officer Christian's wrongdoing with

those of other officers. The verdict proves otherwise: The jury found for Ms. Epps on *both* her claims against the City of Denver—for violations of her First and Fourth Amendment rights—while simultaneously finding in Officer Christian's *favor* on the First Amendment claim and holding him liable under the Fourth Amendment. Dkt. 343 at 7–8. This careful parsing of the evidence demonstrates the care, attention, and particularity with which the jurors conducted their deliberations. Officer Christian was not "lumped in" with other officers or held accountable for their acts. *See also* Dkt. 340 at 6 (Instruction No. 4) ("You should decide the case as to each party separately. Each plaintiff may only recover for any violation of his or her own constitutional rights. No one may recover for a violation of someone else's constitutional rights."). If anything, Officer Christian's lawyers sought to bolster his case by contrasting his isolated assault of Ms. Epps with other egregious acts committed by officers during the protest. The jury's careful and split verdict belies Officer Christian's speculation of prejudice.

Officer Christian next argues that he was prejudiced by the introduction of evidence of DPD's policies and training. Evidence of DPD's policies and training standards was relevant and admissible to establish Plaintiffs' claims against the City of Denver under *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978). That proposition is beyond debate. However, Officer Christian argues that the same evidence *required* to prove Plaintiffs' municipal liability claim was irreconcilably prejudicial to his defense. That position misunderstands the relevant case law, misrepresents Plaintiffs' arguments and evidence, and ignores the fact that the Court specifically instructed the jury on this issue—at the request of Officer Christian's counsel.

To be clear, Plaintiffs did not argue or attempt to argue that evidence of a *violation* of DPD policies is relevant to establishing a constitutional violation. In fact, Plaintiffs' presentation

4

centered on the opposite proposition: that the unreasonable and excessive uses of force by individual officers, including Officer Christian, were *within* DPD policy. *See, e.g.*, Dkt. 351 at 1532 ("Q: And in your view, everything that you saw during the George Floyd protest done by you and the other officers that you witnessed was consistent with training and DPD custom; right? [Officer Christian]: Yes, sir."). This critical distinction (which defendants repeatedly ignore) renders moot Officer Christian's objection to the introduction of policy-or-custom evidence.

Contrary to Officer Christian's argument, the law does not preclude all discussion of police policies or training in a Fourth Amendment suit. Mot. 7. The evidentiary issue is much narrower. In *Whren v. United States*, 517 U.S. 806 (1996), the Supreme Court held that police policies cannot be used as a standard for evaluating the constitutionality of police officer's actions. 517 U.S. at 815–16. The Tenth Circuit extended *Whren* to § 1983 lawsuits in *Tanberg v. Sholtis*, 401 F.3d 1151, 1167 (10th Cir. 2005). In *Tanberg*, the Tenth Circuit held that it was not an abuse of discretion to exclude evidence of a police department's standard operating procedures. *Id.*[1] The court said that "an arrest [that] violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefore irrelevant." *Id*. at 1163–64. *Tanberg* is thus inapplicable here because Plaintiffs did not introduce any policy violation by Officer Christian for any purpose, much less as evidence to establish the standard for a constitutional violation.[2]

---

[1] Notably, the Tenth Circuit did not hold or imply that a district court would abuse its discretion by admitting such evidence, either.

[2] Officer Christian argues that Plaintiffs introduced evidence of "how individual officers violated [DPD] policies, and whether any discipline occurred relating to any policy violations." Mot. 7. The motion includes no cites for that assertion. That's because Plaintiffs sought to show that

Furthermore, Officer Christian sought and received a jury instruction on this exact point. Instruction 10 stated: "As you consider those instructions, you must bear in mind that in order for the plaintiffs to prove a constitutional violation, it is not enough to show that an officer violated a policy, regulation, rule, training, or practice. Instead, plaintiffs must establish a violation of their constitutional rights, as I will define them in these instructions." Dkt. 340 at 12. That is the legal principle that *Tanberg* articulated, and any conceivable prejudice to Officer Christian was eliminated by inclusion of Officer Christian's proffered instruction.

Remarkably, Officer Christian also claims he was unfairly prejudiced by evidence of his assaults on other protestors, separate from his shooting of Ms. Epps. Mot. 8–9. As explained below, such evidence was directly relevant to establishing Officer Christian's "reckless or callous indifference to the federally protected rights of others." Dkt. 340 at 26 (Instruction No. 20). That element of punitive damages required the jury to assess Officer Christian's "subjective state of mind," *id*., and his actions contemporaneous to his assault on Ms. Epps are relevant to evaluate his motives, actions, and the credibility of his testimony. Introduction of such evidence was necessary and proper.

## III. The Jury's Punitive Damages Award Was Appropriate

Officer Christian's Rule 50(b) argument on punitive damages (Mot. 5–6) impermissibly relies on facts and inferences drawn in his favor. He argues, for example, that he perhaps "did not hit" Ms. Epps with a PepperBall and that "the facts presented at trial do not demonstrate Mr.

---

officers were acting *pursuant to* DPD policy, not in violation of it. The failure to discipline was evidence that DPD concluded that its officers' actions were consistent with policy, practice, and training.

Christian acted recklessly or with callous indifference to Ms. Epps' rights." Mot. 5. In support of this false premise, Officer Christian cites his own testimony about his own motives. *Id*. at 6. Unfortunately for him, the jury credited the video and other evidence in assessing the totality of the circumstances—including Officer Christian's behavior in proximity to his assault of Ms. Epps—and concluded that his actions warranted punitive damages. For example, Officer Christian admitted to throwing multiple grenades at protestors; to shooting a woman holding a sign who was injured and posed no threat; to indiscriminately spraying "30 or 40 people . . . standing with their hands up" while riding in a moving vehicle, Dkt. 351 at 1495; failing to provide any medical aid to protestors; and Officer Christian was caught on camera agreeing with a fellow officer's statement that "I like shooting people," with an emphatic "Fuck, yeah," *id.* at 1488–89. The jury's assessment of Officer Christian's "subjective state of mind" (Dkt. 340 at 26) involves a nuanced consideration of *all* the evidence, including Officer Christian's demeanor and candor on the stand, as "there is no way of directly scrutinizing the workings of the human mind" (*id*. at 13). Self-serving denials are insufficient to enter judgment notwithstanding the verdict under Rule 50(b). *See Hutchinson v. Grace*, No. 19 CIV. 270 (AKH), 2022 WL 1154347, at *3–4 & n.1 (S.D.N.Y. Apr. 19, 2022) (denying motion for new trial and noting that movant "selectively offer[ed] self-serving recollections and his characterization of testimony").

As to the amount of damages, Officer Christian claims that the jury's $250,000 punitive damages award against him violates due process and accordingly must be reduced to "zero, $1," or perhaps "$10,000." Mot. 14. A jury's punitive damages award violates due process only if it is "grossly excessive or arbitrary." *Burke v. Regaldo*, 935 F.3d 960, 1037 (10th Cir. 2019). Officer Christian has shown nothing approaching that standard.

7

Critically, the core premise of Officer Christian's argument—that "the compensatory damages against him are zero" (Mot. 11)—is plainly incorrect. The verdict form is clear: The jury found *both* Denver *and* Officer Christian liable for violating Ms. Epps' constitutional rights. Dkt. 343 at 7–8. Then, asked "[w]hat amount of compensatory damages do you award to Elisabeth Epps?," the jury responded with $1 million. *Id.* at 8. The jury's compensatory damages award was unitary: it did not apportion damages between Denver and Officer Christian. The jury was not asked to perform such an apportionment, and Defendants did not object to this lack of apportionment. So too for this Court's judgment: It stated that judgment was entered in favor of "Elisabeth Epps against defendant City and County of Denver" and "against defendant Jonathan Christian"; and "compensatory damages were awarded by the jury in the amount of . . . $1,000,000 as to plaintiff Elisabeth Epps," without differentiation between Denver and Officer Christian. Dkt. 360 at 3. Officer Christian's notion that "the jury did not award any compensatory damages against" him and instead that this award only was "against Denver" (Mot. 10) is a feeble attempt at revisionist history.[3]

Officer Christian provides no evidentiary basis to infer, contrary to the verdict form, that the jury's compensatory damages award ran only against Denver. Instead, Officer Christian misleadingly alludes to a purported removal of "a separate question for compensatory damages for

---

[3] The same implication can be drawn by contrast to the question on punitive damages, which asked the jury, "What amount of punitive damages do you award to Elisabeth Epps *against Officer Christian*?" Dkt. 343 at 8 (emphasis added). The specific mention of Officer Christian in this question stands in contrast to the lack of differentiation among defendants in the preceding question on compensatory damages and was required because punitive damages are unavailable against municipalities. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983.").

Ms. Epps against Mr. Christian." Mot. 11. But that did not occur. Rather, an earlier discussion draft of the verdict form (which has no legal effect) included a drafting error in which the same question appeared twice: "What amount of compensatory damages do you award to Elisabeth Epps?" The duplicate question did not refer specifically to Officer Christian, contrary to the characterization in Officer Christian's motion. In fact, the eliminated question was originally located after the question of *Denver*'s liability, not Officer Christian's. Regardless, the parties agreed, jointly, that the verdict form should include only one award of compensatory damages that did not differentiate between the liable defendants.[4]

There likewise is no legal basis to conclude that the jury's unitary compensatory damage award was limited to Denver, as opposed to Officer Christian—*both of whom the jury found liable*. Indeed, it would have been improper for the verdict form to include separate lines for the two defendants. That is because under settled principles of damages liability, both defendants were jointly and severally liable for Ms. Epps' injuries. *See Jensen v. W. Jordan City*, 968 F.3d 1187, 1197–98 (10th Cir. 2020); *Northington v. Marin*, 102 F.3d 1564, 1568–69 (10th Cir. 1996). In particular, under Section 1983, "[m]ultiple tortfeasors who concurrently cause an indivisible injury are jointly and severally liable; each can be held liable for the entire injury." *Northington*, 102 F.3d at 1569. Joint and several liability is the default rule "even if the concurrent [wrongs] of others contributed to the incident" that injured the plaintiff. *Weeks v. Chaboudy*, 984 F.2d 185, 188 (6th

---

[4] It is disingenuous for counsel to assert that any aspect of the draft form was "eliminated by counsel for the Plaintiffs." Mot. 11. While Plaintiffs' counsel took responsibility to revise the verdict form at the Court's request, and while it was Plaintiffs' counsel that identified the duplicate question during drafting and negotiation, the parties conferred and agreed to modify the form before presenting it to the Court without objection.

Cir. 1993) (quoting *Edmonds v. Compagnie Generale Translantique*, 443 U.S. 256, 260 (1979)). And in cases where multiple defendants are jointly and severally responsible for injuries, "a single line for … compensatory damages" is the norm. *Osterhout v. Bd. of Cnty Comm'rs*, 10 F.4th 978, 994 (10th Cir. 2021) ("Given the existence of two claims, Mr. Morgan and the Board theorize that the verdict needed two lines for compensatory damages: one for Mr. Morgan and another for the Board. We disagree. … [T]he district court appropriately used only a single line for compensatory damages.").

It is far too late for Defendants to advocate for apportionment after the jury has spoken. The Tenth Circuit has explained that if a *defendant* believes that an injury "is capable of apportionment among" multiple defendants, "the burden of proof as to the apportionment *is upon each such actor*." *Northington*, 102 F.3d at 1569 (emphasis added). Here, Defendants did not even attempt to meet that burden; they never claimed that Ms. Epps' injuries could be apportioned between Denver and Officer Christian. And any such argument would have failed, given the evidence showing that Denver's policy and Officer Christian's actions both contributed to Officer Christian's violation of Ms. Epps' constitutional rights. Because the jury entered an unapportioned compensatory damages award of $1 million, the default rule of joint and several liability applies, and the award runs against both defendants.

With that, Officer Christian's due process argument evaporates. "To determine whether punitive damages are excessive," courts "consider three factors: (1) 'the degree of reprehensibility of defendant's misconduct,' (2) 'the disparity between the actual or potential harm suffered . . . and [the] punitive damages award,' and (3) the difference between the punitive damages and 'the civil penalties authorized or imposed in comparable cases.'" *Osterhout*, 10 F.4th at 1001 (quoting *BMW*

of N. Am., Inc. v. Gore, 517 U.S. 559 (1996)). The first factor ("reprehensibility") "is the 'most important'"—and yet Officer Christian completely ignores it. *Id.* (quoting *Burke*, 935 F.3d at 1039). Officer Christian shot Ms. Epps without any warning or justification while she was documenting the protests and isolated on a public street, which the jury found to be constitutionally excessive force. Rather than "serve and protect," Officer Christian "knelt and fired." The jury heard evidence that Officer Christian shot at other protesters in similar fashion, and the jury reasonably could conclude that this was his *modus operandi*, reflecting a callous disregard of the constitutionally protected rights of others. These are the very circumstances—"physical harm" caused by "indifference or reckless disregard" and "excessive force"—that the Tenth Circuit has recognized "support[] heavy punitive damages." *Id.* at 1002, 1003 (upholding $1 million punitive award); *Burke*, 935 F.3d at 1039.

Because the $250,000 punitive damages award was only a fraction of the $1,000,000 compensatory award, the second factor weighs decisively in favor of upholding the jury's verdict. Officer Christian acknowledges, for example, that the Supreme Court has sustained punitive damages award "four times the compensatory damages and two-hundred times out of pocket expenses." Mot. 10 (describing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23 (1991)); *see also Osterhout*, 10 F.4th at 1002 ("Here the compensatory damages are substantial. But the punitive damages are far less than the amount awarded in compensatory damages . . . ."). Indeed, even assuming—contrary to the jury's unitary damages award—that Officer Christian was responsible only for *half* or even a *quarter* of the $1 million compensatory damage award, the punitive award here still would be well within the guideposts of Supreme Court precedent.

As to the third factor, while Officer Christian cites a handful of (mostly out-of-circuit) cases for the proposition that $250,000 is unjustified "in comparison to punitive damages awards in other similar cases," his survey is woefully incomplete. Mot. 11–12. For example, the Tenth Circuit last year upheld a $1 million punitive damages award in an excessive force claim under Section 1983 where the officer, who claimed that the plaintiff was trying to flee from a traffic stop, struck the plaintiff in the face and ribs. *Osterhout*, 10 F.4th at 1003. In rejecting the defendants' due process arguments, the Court cited other cases where "juries have awarded punitive damages of $1 million or more for excessive force even when the compensatory damages had been much less." *Id.* In another recent case, the Tenth Circuit upheld a $250,000 award against a defendant officer even though he was "not directly involved in subordinates' violations of an inmate's constitutional rights" but instead was found liable only as a supervisor. *Burke*, 935 F.3d at 1037. At the very least, these decisions provided Officer Christian with "reasonable notice" that shooting a peaceful protestor without warning "could result in [a $250,000] punitive award"—and that is all that is required. *Osterhout*, 10 F.4th at 1003.

Lastly, while Officer Christian posits that "a defendant's wealth" is relevant to the constitutionality of a punitive damages award (Mot. 12–13), he never introduced, or attempted to introduce, any evidence of his financial status. Nor did he seek to instruct the jury on consideration of his financial status in assessing an appropriate award. Officer Christian cannot now reduce the

jury's punitive damages award based on *ipse dixit* statements regarding his purported ability to pay.[5] The jury's award here was well within constitutional limits and should be upheld.

Dated: June 17, 2022                              Respectfully submitted,

                                                  By: */s/ Timothy Macdonald*
                                                  Timothy R. Macdonald
                                                  ARNOLD & PORTER KAYE SCHOLER LLP
                                                  1144 Fifteenth Street, Suite 3100
                                                  Denver, Colorado 80202
                                                  Telephone: (303) 863-1000
                                                  Timothy.Macdonald@arnoldporter.com

### CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2022, I served via CM/ECF the foregoing **OPPOSITION TO DEFENDANT CHRISTIAN'S MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR** on all counsel of record.

                                                  */s/ Timothy R. Macdonald*

---

[5] Officer Christian's motion later contradicts this point by arguing: "The issue of the fairness of the jury's punitive damages award here is unrelated to who might ultimately pay any final award." Mot. 13.