IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01878-RBJ (consolidated with 20-cv-01922-RBJ-MEH)

ELISABETH EPPS, *et al.*,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

    Defendants.

**REPLY TO MOTION FOR JUDGMENT AS A MATTER OF LAW, OR A NEW TRIAL, OR REMITTITUR FROM DEFENDANT CITY AND COUNTY OF DENVER**

**I. DENVER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON PLAINTIFFS' MUNICIPAL LIABILITY CLAIMS**

Plaintiffs offer no response to Denver's argument the "moving force" required by ***Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown,*** 520 U.S. 397 (1997), means establishing causation for each of the different events of alleged constitutional violations for all 14 Plaintiffs separately. [Mot., at 2-3]. Instead, Plaintiffs present support for the alleged *existence* of the custom, policies and practices. Plaintiffs presented insufficient evidence to meet ***Brown's*** causation requirements. Plaintiffs were required to show "*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff," and the injury must have been the "plainly obvious consequence" of the alleged policy. ***Brown,*** 520 U.S. at 412 (emphases in original). This legal prism is what this Court must evaluate Plaintiffs' trial evidence through. On causation, Plaintiffs argue their experts testified Denver caused Plaintiffs' injuries and Plaintiffs themselves testified they were engaged in peaceful protests. [Resp., at 6]. Yet, neither of Plaintiffs' experts mentioned any of the Plaintiffs

by name, did not discuss any event involving any Plaintiff, and did not offer evidence specifically establishing causation between any Denver policy and any specific constitutional violation. [Tr., 3/9/22, at 392-517; Tr., 3/10/22, at 523-668; Tr. 3/18/22, at 1993-2081, Tr. 3/21/22, at 2087-2117]. None of Plaintiffs' citations to their experts' testimony are to the contrary. Plaintiffs' testimony of their actions also does not support causation.

Second, Denver noted Plaintiffs never specified any formal Denver policy violative of their constitutional rights. [Mot., at 3]. Plaintiffs fail to respond to this argument. [Resp., at 2-4].

Third, Denver articulated the stringent standard needed for an informal custom to amount to a widespread practice and the lack of any evidence of any Denver custom, policy or practice existing other than during the response to the protests in May and early June 2020. [Mot., at 3-4]. Again, Plaintiffs do not respond to this argument. [Resp., at 2-7].

Fourth, Plaintiffs respond to Denver's argument concerning the lack of evidence Commander Phelan was involved in all the incidents involving each Plaintiff by identifying Commander Phelan's personal participation in only *four* of them. [Resp., at 4]. Assuming *arguendo* Plaintiffs' citations support Commander Phelan's personal involvement in these four incidents, Plaintiffs have conceded there is a lack of evidence to support his participation as final policymaker in all the many remaining incidents involving the 14 Plaintiffs.

Fifth, Plaintiffs support their ratification theory based on a failure to discipline and on the press conference of the Mayor and Chief of Police. [Resp., at 5-6]. Plaintiffs' failure to discipline theory has been rejected by the Tenth Circuit. **Finch v. Rapp,** ___ F.4th ___, 2022 U.S. App. LEXIS 18417, at *23-24 (10th Cir. July 5, 2022); **Cordova v. Aragon,** 569 F.3d 1183, 1194 (10th Cir. 2009). Further, no evidence exists that the Mayor and Chief had specific knowledge of what

occurred with respect to each incident involving each Plaintiff and specifically endorsed such conduct at the press conference. Ratification law requires much more. [Mot., at 4-5]. The press conference occurred the protests' second day so it cannot ratify any later event. [Tr., 3/15/22, at 1227].

Sixth, Plaintiffs' failure to train theory fails because no evidence was presented any Denver final policymaker was deliberately indifferent to any training deficiency. Plaintiffs' citations to Professor Maguire's expert testimony does not identify actual evidence on this critical issue. It is not sufficient for Plaintiffs to establish a training deficiency alone. Evidence demonstrating deliberate indifference by someone who can bind the City was also required. [Mot., at 5].

### A. THERE IS NO EVIDENCE ANY ACTION BY DENVER CAUSED ANY CONSTITUTIONAL VIOLATION BY AN OFFICER OF ANOTHER JURISDICTION

Initially, Plaintiffs ignore the lack of any legal support for their novel theory. [Mot., at 6; Resp., at 7]. Further, Plaintiffs' evidence concerning the officers from other jurisdictions who injured Mr. Deras and Mr. Packard includes no evidence either Commander Phelan or anyone else from Denver was directly involved in the individual use of force decisions made by those other jurisdictions' officers. Commander Phelan's general oversight of the protest response and DPD personnel's presence with those other jurisdictions' units is insufficient evidence to establish any Denver custom, policy, or practice or any final policymaker decision caused these two events. No evidence was presented of a direct order by Commander Phelan or anyone from DPD for the munitions to be deployed. No evidence was presented anyone from Denver was even aware of any decision to deploy munitions towards Mr. Deras or Mr. Packard before either deployment occurred. Plaintiffs' improperly attempt to hold Denver liable for the actions of these other jurisdiction officers under a respondeat superior theory.

## B. THE ADMISSION OF THE TESTIMONY OF NICHOLAS MITCHELL WAS IMPROPER AND SUBSTANTIALLY PREJUDICED DENVER

Plaintiffs mischaracterize the purpose and nature of the OIM Report as a fact-finding investigation. Any review of the OIM Report reveals its purpose was to evaluate in hindsight the police response to the protests and offer evaluation and recommendation for future improvement of policies, procedures, operations and training of DPD. [*See* ECF 267-1 for the entire OIM Report]. As such, both the report and Mr. Mitchell's testimony about it was inadmissible under Fed. R. Evid. 407.

Plaintiffs' response to the Fed. R. Evid. 701 argument misses the point. [Resp., at 8-9]. The issue is not Mr. Mitchell's knowledge of his report, the issue is his lack of any personal knowledge of what occurred during the protests themselves. Had Mr. Mitchell been designated as an expert he could have offered opinion testimony. He was not and admitting his opinion testimony about what occurred during the protests violated Rule 701.

## C. THE ADMISSION OF THE OFFICE OF INDEPENDENT MONITOR MEMOS WAS IMPROPER AND PREJUDICED DENVER

Plaintiffs suggest the OIM Memos were properly admitted under Fed. R. Evid. 801(d)(2)(D) because they are equivalent to internal affairs statements. [Resp., at 9]. However, the nature of the OIM Memos differs from an internal affairs investigation statement. OIM promised confidentiality and sought to obtain the personal perspectives of the interviews and never examined them for accuracy or validity. In contrast, an internal affairs investigation is subject to specific rules, a duty to participate, and all statements made are analyzed in the context of all the other evidence developed during the investigation with the goal of establishing what occurred factually respecting a particular event. The procedural protections, nature and findings of an

4

internal affairs process were entirely absent concerning the OIM Memos.

Plaintiffs distinguish the Tenth Circuit rule articulated in *Cruz v. Farmers Ins. Exch.,* 2021 U.S. Dist. LEXIS 16799 at *20 (D. Colo. Jan. 28, 2021), as only applying in employment disputes. [Resp., at 9, n. 4]. Plaintiffs ignore the underlying principle from theses cases requiring an analysis of how the statement was made and whether it was an individual capacity or on behalf of the employer based on the nature of the statement and the employee's organizational role. Here, the OIM memos are not admissible under the Tenth Circuit rule based on how and why they were created and the roles of the individuals providing the information reflected in the OIM Memos. Plaintiffs cite no precedent limiting the Tenth Circuit rule to employment disputes only and counsel for Denver has found none either. Given the nature of the OIM Memos, the analogy to the Tenth Circuit rule is both applicable and appropriate here.

### D. COUNSEL'S MISCONDUCT IN INTRODUCING DEREK CHAUVIN'S DEFENSE STRATEGY DURING THIS TRIAL WARRANTS A NEW TRIAL

Initially, Plaintiffs misstate the applicable standard by citing two cases referring to closing arguments. [Resp., at 9]. Denver's citations to cases involving a question by counsel placing prejudicial information before the jury apply instead. [Mot., at 9]. Plaintiffs fail to respond to Denver's context argument about the prejudicial nature of the interjection of Derek Chauvin into the trial in this fashion based on the fact the case specifically involved protests of Mr. Chauvin's murder of George Floyd. [Mot., at 10]. Further, when considered in its appropriate context, this Court's admonition to the jury to ignore the prejudicial question was insufficient to cure the obvious prejudice. Denver returns to the points made in its Motion left unanswered by Plaintiffs. "Effectively, counsel was suggesting Officer Cunningham's and the other police officers' conduct was the equivalent of Mr. Chauvin's murder of Mr. Floyd. An effort to brand all the police officers

who testified at trial with the jury's natural antipathy to Mr. Chauvin was egregiously wrong and manifestly prejudicial." [Mot., at 10]. Plaintiffs' failure to respond to this argument is telling and supports Denver's argument the nature of this specific misconduct in this specific case was prejudicial and warrants a new trial. [Mot., at 10-11].

## II. THE COMPENSATORY DAMAGES AWARDED BY THE JURY MUST BE REDUCED BY THIS COURT

Plaintiffs, as they must, rely solely on the testimony of the Plaintiffs. Review of the Plaintiffs' testimony as cited reveals the following: (1) only Mr. Packard and Mr. Deras received any medical treatment at all; (2) no other Plaintiff received any medical treatment for any physical injury at any time; (3) only Mr. Packard testified about any permanent physical injury or limitation on any life activity; (4) none of the other Plaintiffs testified about any permanent physical injury at all; (5) all Plaintiffs other than Mr. Packard and Mr. Deras suffered only bruises which have healed and chemical agent inhalation exposure which was transitory; (6) only each Plaintiff testified about their emotional distress; (7) no one else, including any psychological or medical professional, testified about any Plaintiff's emotional distress; (8) no Plaintiff testified to current counseling or medication being needed as a result of their emotional distress; and (9) no diagnoses of any psychological or mental health condition for any Plaintiff was offered. Based on the evidence adduced at trial, the vast majority of Plaintiffs claimed non-permanent injuries based on being exposed to chemical agents and bruises from pepperballs or 40mm impacts, and non-diagnosed or medically supported emotional distress from their experiences.

Plaintiffs are correct nothing required them to present medical evidence of their emotional injuries. However, courts evaluating the amount of a compensatory damages award specifically evaluate whether evidence from anyone other than the plaintiff was presented including whether

medical or other healthcare assistance was sought and whether any objective corroborating evidence was presented. [Mot., at 12-13]. Plaintiffs attempt to distinguish Denver's precedent on the basis they involved emotional distress injuries. [Resp., at 14]. Denver's point, however, was it is only when there is a medical diagnosis and medical evidence presented is a large compensatory damages award actually supported by the evidence.

Plaintiffs criticize Denver for referencing other cases. [Resp., at 14-15]. Denver's references were based not on the facts of those cases themselves, but the objective evidence presented in comparison to the lack of any objective evidence presented here.

Finally, Plaintiffs entirely ignore Denver's central argument concerning the amount of the verdict; the likelihood the jury was swayed by Denver's overall response to the protests and all the evidence presented unrelated to any Plaintiff which is not permitted. [Mot., at 14].

Dated this 15th day of July, 2022.

Respectfully submitted,

*s/ Andrew D. Ringel*
Andrew D. Ringel, Esq.

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on this 15th day of July, 2022, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve the following all counsel of record in this matter.

*s/Nicole Marion*, Legal Assistant to
Hall & Evans, L.L.C.