UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| Elisabeth Epps, *et al.*,<br><br>    v.<br><br>City and County of Denver, *et al*. | Civ. No. 1:20-cv-1878-RBJ (consol.) |

**PLAINTIFFS' SURREPLY ON SUMMARY JUDGMENT**

Aurora's reply confirms that Plaintiffs Johnathen Duran and Zach Packard are entitled to trial against the City of Aurora and its officers to resolve genuine disputes over material facts. Aurora is free to argue to the jury about whether Officer McNamee shot Mr. Packard in the head, fracturing his skull, or whether Officer Budaj shot Mr. Duran in the groin, but Aurora's self-serving theories, which often ignore or contradict the evidence, provide no basis for summary judgment.

In its reply, Aurora argues for the first time that Denver's liability for Mr. Packard's injuries means that Aurora is entitled to judgment as a matter of law. But Aurora ignores that its own official policies, practices, and customs concurrently caused Mr. Packard's indivisible injuries, and both municipalities are jointly and severally liable. Furthermore, this argument is entirely inapplicable to Mr. Duran, who did not try claims against Denver.

**ARGUMENT**

**I.   Denver's Liability Does Not Immunize Aurora for Mr. Packard's Constitutional Injuries Caused by Aurora's Policies and Practices**

Aurora contends that because Denver was found liable for violating Mr. Packard's constitutional rights, "*Monell* liability has been resolved and is no longer applicable to Aurora." Reply at 15. Aurora cites nothing for that contention, which contradicts fundamental tort principles

EXHIBIT A

of joint responsibility. It is black-letter law that "[m]ultiple tortfeasors who concurrently cause an indivisible injury are jointly and severally liable; each can be held liable for the entire injury." *Northington v. Marin*, 102 F.3d 1564, 1569 (10th Cir. 1996); *id.* ("These rules apply in § 1983 actions."); *see also* Restatement (Third) of Torts § C18 (2000) ("When an injury is indivisible and legally caused by the tortious conduct of two or more persons, each is jointly and severally liable."). There is no special exception in *Monell*, nor any "doubt that § 1983 claims sound in tort." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 689 (1999).

Denver and Aurora are jointly and severally liable for Mr. Packard's injuries. Mr. Packard's consistent theory throughout this litigation has been that *both* Aurora and Denver caused his injuries, together with the offending officers.[1] Denver's liability flows from its policy, practice, and custom of, among other things, allowing mutual-aid partners to follow their *own* individual use-of-force policies during the protests. The undisputed testimony at trial was that DPD's policy was to allow mutual aid agencies to use their own policies on use of force and use their own weapons:

> Q: Now, DPD policy was to allow mutual aid agencies to use their own policies; correct?
>
> A: Yes, ma'am. …
>
> Q: And to use their own weapons; right?
>
> A: Their use—as far as, yes, whatever they're trained on. Whatever they're trained on, of course we let them do that.

---

[1] Without any authority to cite for its position, Aurora tries to manufacture an admission by Plaintiffs' counsel. During a pretrial conference after the Court had already bifurcated claims against Aurora, counsel for Mr. Packard stated "right now we think there's one plaintiff who was shot, Mr. Packard, by an Aurora defendant. We think Denver is responsible for that on a *Monell* basis …" Reply at 15. That remains true, but it does not follow—nor did counsel imply—that Denver would be *solely* and *exclusively* liable under *Monell*. In the same sentence Aurora quotes, counsel confirmed that Mr. Packard was shot *by an Aurora defendant*, and Plaintiffs maintained at that conference that they would be pursuing both Denver and Aurora for Mr. Packard's injuries.

2

> Q: And you as the incident commander making final decisions for the police response to the protests also allowed outside agencies such as Aurora and Jefferson County to use their own weapons during the protest; right?
>
> A: Yes, ma'am.

Dkt. 350 (3/15/22 Tr., Phelan Testimony) at 1193-94.

Aurora's liability, in turn, stems from its policies, practices, and customs that caused Officer McNamee to shoot Mr. Packard in the head with a lead-filled Kevlar bag. As detailed in Plaintiffs' opposition brief, Aurora had a policy, practice, and custom of using excessive force, Dkt. 383 at 12, and allowed officers to use less-lethal shotguns in crowd-control situations—weapons not approved by Denver. Aurora further had a policy, practice, and custom of instructing officers to shoot protestors touching gas canisters regardless of any actual threat to officer (or bystander) safety. Denver is liable for giving Aurora free reign in policing the protests, but Aurora is jointly liable for the injuries that its policies, practices, and customs caused.

Joint and several liability is commonplace in § 1983 cases. *See, e.g.*, *Northington*, 102 F.3d at 1568-69 (holding that multiple prison guards were jointly and severally liable under § 1983 because they concurrently caused prisoner's injuries by independently spreading snitch rumors); *DiSorbo v. Hoy*, 343 F.3d 172, 182 (2d Cir. 2003) ("[T]he City is at a minimum jointly and severally liable for compensatory damages pursuant to its liability under *Monell*."); *cf. Lesende v. Borrero*, 752 F.3d 324, 337 (3d Cir. 2014) (collecting *Monell* cases and upholding district court's jury instructions imposing joint and several liability on city and officers). The rationale for joint and several liability applies with equal force when two of the defendants are municipalities. *See Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 873 (N.D. Ohio 2011) (denying summary judgment to a city and county, holding that each could be liable on a *Monell* claim for ratifying

3

unconstitutional conduct by a special-response team); *cf. Johnson v. Bd. of Police Comm'rs*, 370 F. Supp. 2d 892, 901–02 (E.D. Mo. 2005) (denying motion to dismiss plaintiff's *Monell* claims against the City of St. Louis and the St. Louis Board of Police Commissioners, explaining, "the fact that the Defendants are separate legal entities does not prevent them from acting in concert to deprive constitutional rights pursuant to a joint policy or custom").

## II. The March 2022 Jury Verdict Against Denver Did Not Involve Any of Mr. Duran's Claims

Aurora's argument doesn't even apply to Plaintiff Duran, who Aurora fails to even mention in that section of its brief. Mr. Duran was not part of the March 2022 trial and so no findings have been made regarding any of his claims. Dkt. 343. Regardless, like Mr. Packard, the evidence shows that Aurora is responsible for Mr. Duran's injuries.

As Plaintiffs explained in their opposition brief, there is a genuine dispute of material fact on Mr. Duran's *Monell* claim and his claims against the individual officer defendants, including Defendant Officer Budaj. Aurora's reply ignores the extensive evidence that would allow a reasonable jury to conclude that Officer Budaj intentionally shot Mr. Duran in the groin even though Mr. Duran posed no threat. That evidence includes:

- Budaj fired his 40mm launcher 12 seconds after the light at Colfax and Pearl turned green, and Duran was hit one second after that. Dkt. 383, RSF ¶¶ 12-13. Although Duran's video was not timestamped, the HALO camera video is, and it shows Duran doubled over at the moment of impact at 9:34:24 p.m. (Duran in white helmet can be seen holding up his brightly-lit cell phone and standing next to a girl with a clear umbrella).

- Only Aurora officers, wearing navy blue uniforms, were in the vicinity of the Aurora Bear at that time. Dkt. 383, RSF ¶ 11. Budaj admitted this detail. Dkt. 383-22 at 116. The officer depicted in Bubna's video at 9:34:34–36 p.m. is not wearing a Jefferson County uniform. Dkt. 383-26 at 47; Dkt. 383-28; Dkt. 383, RSF ¶ 11.

- It is undisputed that Duran was hit with a 40mm round; he picked it up from the ground. Dkt. 383, RSF ¶ 9.

4

- Budaj is the only officer who (1) had a 40mm, (2) fired at 9:34 p.m., and (3) was at Colfax and Pearl at that time. Dkt. 383, RSF ¶ 13 (citing Dkt. 383-25 at Fitouri 19217 (listing possible officers at that location at 9:34; Glen not present), Fitouri 19253 (Sweeney had baton), Fitouri 19268 (Woodyard had less-lethal shotgun), Fitouri 19193–94 (Hummel did not have 40mm launcher); Dkt. 383-29 at Fitouri 19058 (Parella had baton); Dkt. 383-30 at 21:33-21:35 (Wilson behind the Bear, not in position to shoot); Dkt 383-22 at 112-15 (Bubna and Smick not shooting at the time); Dkt. 383-31 at 21:34:17–32 (Smick not firing at 12–13 seconds after light turns green); Dkt. 383-32 (Chamberland at Washington); Dkt. 383-33 (Queisner at Washington); Dkt. 383-17 (McNamee at Washington; had less-lethal shotgun); Dkt. 383-19 (Brukbacher at Washington); Dkt. 259-2 at 74 and Dkt. 383-34 (Garcia at Washington; had less-lethal shotgun); Dkt. 259-2 at 86 (Glen at Washington); Dkt. 259-9 (Carlson only threw gas); Dkt. 259-2 at 16 (Price did not fire at Pearl, only at Washington and Pennsylvania)).

- Budaj admitted that the tape on the back of his helmet was gray and only appeared red in Bubna's video from the reflection off the Office Depot sign, and in other videos (which he admits is him), his hydration pack looks like it does in Bubna's video. Dkt. 383, RSF ¶ 14.

- Budaj admitted that Duran did nothing warranting any use of force. Dkt. 383, RSF ¶ 15. A reasonable jury could conclude that he saw Duran and intentionally targeted him, given his expertise as a grenadier and marksman. *Id.* As a credentialed member of the press, Duran was not subject to the curfew. Dkt. 255-13 at 2.

Mr. Duran has compelling evidence for a reasonable jury to find that Budaj violated his rights by shooting him unjustifiably while he was engaged in First Amendment activity. Regardless, where, as here, a plaintiff pursues a *Monell* claim involving an unconstitutional policy or custom, "plaintiffs need not demonstrate a [specific] individual officer committed a constitutional violation" because the combined acts of multiple employees acting under an official policy or custom may violate their rights. *Est. of Burgaz ex rel. Zommer v. Bd. of Cnty. Comm'rs for Jefferson Cnty.*, 30 F.4th 1181, 1190 (10th Cir. 2022). And because Aurora's arguments for summary judgment require the Court to ignore the evidence of their policy and training failures (including, for instance, admissible expert testimony and evidence from multiple independent investigations into the Aurora Police Department), summary judgment must be denied.

5

Dated: July 29, 2022

By: /s/ Elizabeth Wang

    Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Suite 460
Boulder, CO 80302
Telephone: (720) 328-5642
elizabethw@loevy.com

Respectfully submitted,

By: /s/ Timothy Macdonald
    Timothy R. Macdonald
ARNOLD & PORTER KAYE SCHOLER LLP
1144 Fifteenth Street, Suite 3100
Denver, Colorado 80202
Telephone: (303) 863-1000
Timothy.Macdonald@arnoldporter.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2022, I served via CM/ECF the foregoing **Surreply on Summary Judgment** on all counsel of record. /s/ Elizabeth Wang

6