**EXHIBIT B**



*Serving the West from Boulder since 1972*

Robyn W. Kube
Karl F. Kumli, III*†
Carmen S. Danielson
Renée Ezer*
Stephen A. Closky
Tucker M. Katz
Mark D. Detsky
William A. Rogers, III
Joshua E. Anderson
Jennifer L. Lorenz
Gabriella Stockmayer
Carolyn R. Steffl

Siena Square Building
2060 Broadway, Suite 400
Boulder, Colorado 80302
Telephone (303) 447-1375
Fax (720) 805-2051
www.dietzedavis.com

Email: wrogers@dietzedavis.com

Nathan A. Klotz
K.C. Cunilio
*Christina M. Gonsalves

*Of Counsel:*
Joel C. Maguire
Star L. Waring
Nicholas G. Muller

Peter C. Dietze  1934-2019
Joel C. Davis  1936-2013

*Also admitted in California
†*Also admitted in New Mexico*

August 4, 2022

Andrew D. Ringel, Esq.      (**Via e-mail**: ringela@hallevans.com)
Hall & Evans, LLC
1001 Seventeenth Street, Suite 300
Denver, CO 80202

Re:   *Sara Fitouri, et. al. v. City and County of Denver, et. al.*
        United States District Court for the District of Colorado
        Civil Action No. 20-cv-1878-RBJ-MEH
        Dietze and Davis File No. 11203.001

Dear Mr. Ringel:

The following are my opinions with respect to the reasonableness of the attorney's fees claimed by Plaintiffs Sara Fitouri, Jacquelyn Parkins, Joe Deras, Claire Sannier and Kelsey Taylor (the "Fitouri Plaintiffs") in the above-referenced matter.  In connection with my review and in reaching the opinions that I express below, I reviewed the following:

1.   United States District Court Civil Docket for Case No. 20-cv-1878-RBJ;

2.   Complaint filed June 25, 2020 (Doc. 1);

3.   Third Amended Class Action Complaint and Jury Demand filed by the Fitouri Plaintiffs November 23, 2021 (Doc. 219);

4.   Order on Jefferson County Deputies' Motion for Summary Judgment filed February 2, 2022 (Do. 298);

Andrew D. Ringel, Esq.
August 4, 2022
Page 2

5.     Order on Denver Defendants' Motion for Summary Judgment filed March 1, 2022 (doc. 304);

6.     Fitouri Plaintiffs' Motion for Attorneys' Fees and Costs filed June 1, 2022 (Doc. 380) as well as the following attachments thereto:

    a.   Exhibit A: Declaration and Timesheet of Elizabeth Wang (Doc. 380-2);

    b.   Exhibit B: Declaration and Timesheet of Makeba Rutahindurwa (Doc. 380-3);

    c.   Exhibit C: Declaration and Timesheet of Jon Loevy (Doc. 380-4);

    d.   Exhibit D: Declaration and Timesheet of David B. Owens (Doc. 380-5);

    e.   Exhibit E: Declaration and Timesheet of Steven Art (Doc. 380-6);

    f.   Exhibit F: Declaration and Timesheet of Katie Roche (Doc. 380-7);

    g.   Exhibit G: Affidavit of Erica Grossman (Doc. 380-8);

    h.   Exhibit H: Declaration and Timesheet of Brian Swift (Doc. 380-9);

    i.   Exhibit I: Declaration and Timesheet of Andy Thayer (Doc. 380-10);

    j.   Exhibit J: Order in *Willmeng v. City of Lafayette, Colo.*, No. 1:19-cv-150 (D. Colo.) (Doc. 380-11);

    k.   Exhibit K: Fitzpatrick Matrix (Doc. 380-12);

    l.   Exhibit L: March 17, 2022 Order awarding fees to Loevy & Loevy attorneys and paralegals in *Calloway v. Chicago Police Dep't*, No. 19 CH 14190 (Cook County) (Doc. 380-13);

    m.   Exhibit M: Spreadsheet of Section 1988 Expenses, with receipts and invoices (Doc. 380-14);

    n.   Exhibit N: 3/14/22 Trial Transcript (Officer Valentine cross and redirect, excerpts) (Doc. 380-15);

    o.   Exhibit O: 3/23/22 Trial Transcript (Officer Hamilton cross, excerpts) (Doc. 380-16);

    p.   Exhibit P: Lt. Vincent Porter Deposition, excerpts (Doc. 380-17);

7.     Various websites for the attorneys involved in representing the Plaintiffs; and

Andrew D. Ringel, Esq.
August 4, 2022
Page 3

       8.     The Colorado Bar Association's 2017 Economics of Law Practice Survey.

In addition to my review of the above pleadings and other documents, I have discussed this case with you.

## I.  EXPERIENCE AND BACKGROUND

I am an attorney licensed to practice law in the State of Colorado and have been since 1992. I was also admitted to practice law in the State of Maine in 1991. In addition to the state courts of Maine and Colorado, I have been admitted to practice law before the United States District Courts for the Districts of Maine and Colorado, as well as the United States Court of Appeals for the Tenth Circuit. I have been admitted *pro hac vice* to state courts in Seattle, Washington and Boston, Massachusetts. I am a shareholder at Dietze and Davis, P.C. in Boulder and have been since January 2016. Prior to that, I practiced law at Wood, Ris & Hames, P.C. in Denver for 23 years, becoming a shareholder with that firm in 1998. Prior to joining Wood, Ris & Hames, I served as a judicial law clerk to the Honorable Alfred A. Arraj of the United States District Court for the District of Colorado from 1991 to 1992. In addition, I served as a judicial law clerk to the Honorable D. Brock Hornby of the United States District Court for the District of Maine from 1990 to 1991. I graduated from the University of Colorado School of Law in 1990, where I served as a staff editor of the University of Colorado Law Review. I graduated from Colby College in Waterville, Maine in 1984. I am an AV-rated attorney by *Martindale-Hubbell* and have been named as a Colorado Super Lawyer. I was selected for membership to the American Board of Trial Advocates ("ABOTA"), an invitation-only national association of experienced trial lawyers and judges dedicated to the preservation and promotion of civil jury trials.

A significant part of my legal practice involves the defense of employers as well as governmental entities and employees in employment and civil rights litigation. I have litigated employment and constitutional claims in state and federal court and tried a number of them to verdict. I am regularly retained to represent employers in all manner of employment law claims arising under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, as well as the Fair Labor Standards Act. I also regularly litigate cases brought pursuant to 42 U.S.C. § 1983, including First, Fourth and Eighth Amendment claims. I am familiar with the nature and type of work necessary to conduct discovery, engage in motions practice under Rules 12 and 56, prepare for and try these types of cases to verdict in this community, and handle such matters on appeal. I am frequently retained to serve as an expert witness evaluating attorney's fees sought by prevailing parties in employment and civil rights cases and have substantial experience with respect to what reasonable rates for this type of work are in this community.

As a shareholder now at Dietze and Davis as well as previously at Wood, Ris & Hames, I am responsible for preparing and submitting billing statements for legal services rendered on a regular and constant basis. I am also responsible for managing and overseeing the work of many other timekeepers, at the partner, associate, and paralegal levels. In conjunction with these duties, I review the billing records of attorneys and paralegals that perform legal services for my clients. I regularly review, edit, and revise billing statements sent to individuals, large and small private

Andrew D. Ringel, Esq.
August 4, 2022
Page 4

entities, governmental entities, as well as insurance companies for many of the attorneys in my firm. I am responsible for ensuring the billing statements received by my clients contain an adequate and sufficient level of detail outlining the legal services provided. In doing so, I regularly analyze and review the amount of time expended by other attorneys and paralegals in my firm to determine reasonableness. Part of that process involves having an understanding as to how much time certain tasks should normally take. This includes preparation of disclosures and written discovery, the preparation and filing of various preliminary pleadings when a matter has recently been filed, conducting depositions, filing briefs in support of or in opposition to dispositive motions, preparing for and attending trial, and briefing matters on appeal.

Part of my role as a senior shareholder and billing attorney is to exercise billing judgment to ensure the reasonableness of the billing statements I send out. This requires me to ensure the rates charged by my firm are in line with those charged in the Colorado market for the type of work that we do. It also requires that I monitor the type of fees potentially sought by plaintiffs and their counsel in contingent-fee litigation when fees are sought pursuant to 42 U.S.C. § 1988. In addition to my responsibility for reviewing and submitting bills to my clients, I have also submitted and prepared affidavits supporting my own requests for attorney's fees and costs in litigation and litigated requests for attorney's fees. I am regularly retained as an expert regarding the reasonableness of attorney's fees sought by plaintiffs who have been successful in litigating matters encompassed by the federal civil rights statutes, including 42 U.S.C. § 1988. My opinions with regard to the reasonableness of attorney's fees were adopted and cited with approval by District Court Judge C. Scott Crabtree in Adams County District Court in *Brinkman, et al. v. State of Colorado*, Case No. 13-cv-32572, in conjunction with the attorney's fees sought by the plaintiffs in that case, which successfully challenged the State of Colorado's same-sex marriage prohibition. I was accepted as an expert witness and testified with respect to the reasonableness of claimed attorney's fees by District Court Judge Deborah R. Eyer in Pueblo County District Court.

## II. REASONABLENESS OF THE HOURLY RATES CLAIMED

The Fitouri Plaintiffs seek attorney's fees in this case in the amount of **$1,432,885**. These Plaintiffs seek recovery for work performed by six attorneys, a paralegal, and an office manager. For the reasons discussed below, it is my opinion the hourly rates requested for these timekeepers are excessive and beyond what is reasonable in this community and legal market.

The Fitouri Plaintiffs' claim for attorney's fees is a statutory one, predicated on achieving prevailing-party status under the attorney-fee shifting mechanism created by 42 U.S.C. § 1988. My review of their claim for attorney's fees is guided by my thirty plus years of experience litigating these types of cases. In addition, of course, any such claim for attorney's fees must be analyzed in accordance with the legal framework established by the Supreme Court's largely controlling decision analyzing such statutory fee requests, *Hensley v. Ekerhart*, 461 U.S. 424 (1983), along with the Tenth Circuit's seminal decision regarding attorneys' fees under § 1988, *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983).

I have reviewed the relevant information presented or available with regard to a determination of a reasonable hourly rate for Plaintiffs' counsel. It is my opinion the hourly rates

Andrew D. Ringel, Esq.
August 4, 2022
Page 5

requested do not reflect a reasonable hourly rate in this community for attorneys of their background, training, and experience.  The following table reflects the hourly rates requested by Plaintiffs' counsel as well as the hourly rates I believe are more reasonably supported:

| Name | Requested Hourly Rate | Reasonable Hourly Rate |
|---|---|---|
| Jon Loevy | $650 | $475 |
| Elizabeth Wang | $595 | $400 |
| Steven Art | $545 | $325 |
| David B. Owens | $545 | $300 |
| Katie Roche (associate) | $375 | $250 |
| Makeba Rutahindurwa (associate) | $375 | $225 |
| Brian Swift (paralegal) | $175 | $115 |
| Andy Thayer (office manager) | $175 | $0 |

The bases for my hourly rate opinions are set forth below.

The burden on Plaintiff's counsel in establishing a proper hourly rate for an award of fees under 42 U.S.C. § 1988 is generally to show what "lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Ramos v. Lamm, supra*, 713 F.2d at 555; *Lucero v. Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987).  The calculation itself must be based on prevailing market rates in the relevant community, here in Denver.

Determining the proper market rate for plaintiff employment or civil rights work is an interesting task.  The vast majority of cases of this nature are taken by counsel on a contingent basis, as was apparently the circumstance here.  Because of the nature of this type of practice, it is more difficult to survey, or otherwise assess, what the reasonable market rate is for a plaintiff's employment or civil rights practitioner.  This is so because such a determination is, by necessity and reality, not made competitively on the open market driven by what clients will pay and what attorneys are able to charge, but rather is generally established by what a reviewing judge may determine is reasonable.  Judicial officers thus become essentially the marketplace, endeavoring to determine a reasonable hourly rate based on their best estimate of what the market is from the evidence and materials presented, even though, practically speaking, there is no ascertainable market for plaintiff's civil rights or employment work undertaken on a contingent or *pro bono* basis.  The judiciary essentially *is* the marketplace.

Andrew D. Ringel, Esq.
August 4, 2022
Page 6

Typically, plaintiff's counsel requests a certain rate she believes is appropriate and supports this request with her own affidavit and/or affidavits from other attorneys expressing their opinions the requested rate is reasonable.  The defendant, as here, may request another attorney to opine what he may believe is reasonable.  Ultimately, a court must make this determination based on the evidence presented.[1]  Thus, figuring a reasonable market rate for a plaintiff's employment or civil rights attorney who has prevailed on behalf of her client is driven not really by the market, but rather by whatever a court may ultimately conclude is reasonable.  Suffice it to say there are very few, if any, consumers of legal services, particularly employees with employment claims or individuals with civil rights claims in Colorado, who would ever pay anything close to $600 per hour for legal representation.  There are also *very* few plaintiff's employment or civil rights attorneys regularly awarded an hourly rate approaching this level in this jurisdiction.  With these realities in mind, I address the hourly rates sought by Plaintiffs' attorneys in this case.

Ms. Wang and Ms. Rutahindurwa were the primary attorneys for the Fitouri Plaintiffs, and I thus direct most of my comments to determining a reasonable hourly rate for them.

**Elizabeth Wang**

I have reviewed the relevant and available information presented with regard to the determination of a reasonable hourly rate for Ms. Wang.  Ms. Wang received her law degree in 2005 and commenced private practice following a fellowship and two clerkships in 2008.  She apparently took a hiatus from practice for two years to serve as a  lecturer (this is not clear).  Ms. Wang has thus been practicing law for 14 years, 12 years if the time as a lecturer is not considered. Ms. Wang is an accomplished and experienced litigator in the area of civil rights law, particularly claims on behalf of those contending they were wrongfully convicted.  Though I disagree with the hourly rate requested on her behalf, I do not in any way denigrate or impugn either her abilities or her reputation.  To the contrary.  However, her requested hourly rate of $595 per hour would place her rate at or even above what I consider to be the very highest reasonable rates for plaintiff's employment and civil rights attorneys practicing in Colorado.  And not every attorney practicing in these areas, even accomplished counsel with 12 (or 14) years of experience like Ms. Wang, command the very highest awardable hourly rate.  Otherwise, every successful employment and civil rights attorney would seek over $500 per hour after achieving some measure of success.  In fact, it seems that more and more, this is the case.  Taking into consideration Ms. Wang's experience as an attorney, particularly in the area of civil rights law, and taking into consideration her years of experience, the nature of her practice, and the jurisdiction where she practices, it is my opinion a more reasonable hourly rate for Ms. Wang is **$400 per hour**, still a very high hourly rate, and one I believe more accurately reflects her skill and experience in this area of the law.

---

[1] "A district court abuses its discretion when it ignores the parties' market evidence and sets an attorney's hourly rate using the rates it consistently grants. The court may not use its own knowledge to establish the appropriate rate unless the evidence of prevailing market rates before the court is inadequate." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) (internal citations omitted).

Andrew D. Ringel, Esq.
August 4, 2022
Page 7

My opinion regarding this hourly rate is based not only on my own experience and understanding of the Colorado legal market but is also based on the 2017 Economics of Law Practice Survey ("Survey") published by the Colorado Bar Association relating to the hourly rates charged by Colorado attorneys in various practice areas. I consider the Survey to be a very helpful (and fully impartial) assessment of hourly rates charged by attorneys in this jurisdiction. The Survey discusses attorney billing rates in Colorado, and breaks those rates down by firm size, years in practice, office location, primary field of law, and practice classification of attorneys.[2]

Looking at these categories with regard to Ms. Wang, I note the mean or average billable rate for attorneys in law firms of 20 to 49 attorneys (her firm has approximately 40 attorneys collectively) is $279 per hour. The median and 75th percentiles for firms this size show $275 and $350 per hour, respectively. Attorneys with 10 to 19 years of practice (again, Ms. Wang appears to have either 12 or 14 years of experience), have a mean or average hourly rate of $244 per hour. The median and 75th percentiles show $250 and $300 per hour, respectively. Similarly, the mean or average hourly rate for attorneys practicing in Boulder is $254 per hour, with the median and 75th percentiles coming in at $253 and $300 per hour, respectively. Denver is comparable. The 2017 Survey provides information about labor and employment attorneys who represent employees (perhaps the most analogous category to plaintiff's civil rights work), though it does not break out or specify the attorneys' years of experience, the size of their firm, or where they practice. Nevertheless, the mean or average hourly rate for such attorneys is $309 an hour, the median is $313 per hour and the 75th percentile for plaintiff side employment attorneys is $356 an hour.[3]

Looking at all of these categories and considering Ms. Wang's level of experience in the area of civil rights, I believe an hourly rate best taking into consideration her years of experience, the size of her firm, the location where she practices, as well as rates for employment and civil rights practitioners, is **$400 an hour**. I think this is a reasonable rate under these circumstances

---

[2] Several Courts in this District have agreed the Survey "establishe[s] a baseline of reasonableness" for attorney hourly rates in Colorado, *see Fresquez v. BNSF Railway, Co.* Civil Action No. 17-cv-0844-WJM-SKC, Order dated March 18, 2021 (Judge Martinez), and that "the relevant categories of the 2017 Colorado Survey [are] instructive." *Barrington v. United Airlines, Inc.*, Civil Action No. 15-cv-00590-CMA-MLC, Order dated June 1, 2018 (Judge Arguello). *See also Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 78 F. Supp. 3d 1307, 1318 (D. Colo. 2014) (noting because the Survey "provides the most recent data and is specific to Colorado, it provides the best indication of the current reasonable hourly rate in the Denver area" as well as "a helpful baseline in determining the customary rates in the community for lawyers of reasonably comparable skill, experience and reputation.").

[3] It is interesting to note the same survey when released in 2008 and 2012 identified plaintiff/employee side employment lawyers in the 95th percentile as billing roughly $350 per hour. The lack of any significant increase during that time frame is consistent with my own assessment of the market during those years, which was rather static, perhaps reflecting the lingering recessionary effects of the economy. Hourly rates have increased more so over the last several years, and I recognize the Survey has not been updated since 2017.

Andrew D. Ringel, Esq.
August 4, 2022
Page 8

and one that still places her at the upper end of hourly rates for civil rights attorneys. Ms. Wang's requested hourly rate of $595 per hour would place her, in my opinion, actually at or above a reasonable hourly rate for the very highest level of Plaintiff's employment and civil rights attorneys in Colorado. I do not believe such a placement or characterization is supported.

**Makeba Rutahindurwa**

Ms. Rutahindurwa received her law degree in 2019 and completed a judicial clerkship following law school. She commenced private practice at Plaintiffs' counsel's firm in late 2020. In her declaration, she indicates that she has "one-and-a-half years" of experience. In any event, she has less than two years of experience in private practice. Plaintiffs have requested $375 per hour for her time spent in this matter. I believe this hourly rate for essentially a brand-new associate attorney is not supported. Instead, it is my opinion a reasonable hourly rate for Ms. Rutahindurwa is **$225 per hour**.

My opinion regarding an appropriate hourly rate for Ms. Rutahindurwa is again based not only on my experience and understanding of how time spent by associates is billed to clients in the Colorado legal market, but also on the data reported in the 2017 Colorado Bar Association Survey. The mean or average billable rate for associate attorneys with between one and two years of experience is $192 per hour. The median and 75th percentile for attorneys at this level of experience is $193 and $244, respectively.

Taking all of this information into consideration, it is my opinion that **$225 per hour** is a reasonable rate for Ms. Rutahindurwa based on the Colorado legal market.

**Other Attorneys**

The following attorneys had very little involvement in the prosecution of this case, particularly Mr. Art (2.5 hours), Mr. Owens (3.25 hours) and Mr. Loevy (8.5 hours). Ms. Roche spent less than a week working on the case (37.25 hours). Given the limited hours claimed by these timekeepers, any determination of a reasonable hourly rate for them will have only a *de minimis* impact on Plaintiffs' fee petition. All of these timekeepers tracked their time in quarter hour intervals instead of by the tenth of an hour, always a dubious billing practice (as addressed below). All four largely report entries reflecting internal communications with Ms. Wang. It is my opinion none of claimed time entries for Mr. Loevy, Ms. Roche, Mr. Art or Mr. Owens should be compensable under these circumstances. Regardless, I also conclude the hourly rates claimed on their behalf are unreasonable.

**Jon Loevy**

Mr. Loevy received his law degree in 1993 and has been practicing law for 29 years. Based on his Declaration, Mr. Loevy is a very successful Plaintiff's civil rights attorney, largely it would appear in Illinois, and particularly Chicago. Though I disagree with the hourly rate requested on his behalf, I am sure he is a very skilled and experienced advocate. His declaration largely focuses on his economic successes. Regardless, his requested hourly rate of $650 per hour would place

Andrew D. Ringel, Esq.
August 4, 2022
Page 9

him well above what I consider to be the very highest reasonable rates for plaintiff's employment and civil rights attorneys practicing here in Colorado (as opposed to in Chicago, Illinois). And, as mentioned above, not every attorney practicing in these areas, even accomplished counsel like Mr. Loevy, command the very highest reasonable hourly rate.

Taking into consideration Mr. Loevy's experience as an attorney, particularly in the area of civil rights law, and taking into consideration his years of experience, the nature of his practice, and general market rates in this jurisdiction (as opposed to Illinois), it is my opinion a more reasonable hourly rate for Mr. Loevy is **$475 per hour**, still a very high hourly rate, and one that I believe more accurately reflects his skill and experience in this area of the law.

My opinion regarding this hourly rate is based not only on my own experience and understanding of the Colorado legal market but is also based on the Colorado Survey. Looking at the relevant categories with regard to Mr. Loevy, I note that attorneys with 20 to 29 years of practice (Mr. Loevy has 29), have a mean or average hourly rate of $274 per hour. The median and 75th percentiles show $275 and $326 per hour, respectively. Again, the mean or average hourly rate for attorneys practicing in downtown Denver (as opposed to Chicago) is $308 per hour, with the median and 75th percentiles coming in at $250 and $315 per hour, respectively. As above, the Survey includes data for labor and employment attorneys who represent employees, though it does not break out or specify the attorneys' years of experience, the size of their firm, or where they practice. Nevertheless, the mean or average hourly rate for such attorneys is $309 an hour, the median is $313 per hour and the 75th percentile for plaintiff side employment attorneys is $356 an hour.

Taking all of this information into consideration, it is my opinion that **$475 per hour** is a reasonable rate for Mr. Loevy based on the Colorado legal market.

**Katie Roche**

Ms. Roche graduated from law school in 2015 and worked as an associate at Plaintiffs' counsel's firm for almost 6 years. Her last actual work on this file was in April 2021. I consider her to have had roughly five years of experience when she last performed any work on behalf of Plaintiffs. Plaintiffs also seek $375 per hour for her time spent in this litigation.

I do not believe the requested rate is supported. Instead, it is my opinion a reasonable hourly rate for Ms. Roche is **$250 per hour**. This opinion is based on my experience and understanding of billing rates in Colorado and is fully supported as well by the Survey. The mean or average billable rate for associate attorneys with between five and nine years of experience is $225 per hour. The median and 75th percentile for attorneys at this level of experience is $225 and $275, respectively. And of course, Ms. Roche would fall at the very low end of this range.

**Steven Art**

Mr. Art graduated from law school in 2009 and followed this with two years as a judicial law clerk. He commenced private practice in 2011 and has thus been an attorney for 11 years.

Andrew D. Ringel, Esq.
August 4, 2022
Page 10

Plaintiffs requests an award of $545 an hour for his time.  Mr. Art's experience and his work for the last decade is impressive, particularly in the appellate arena.  However, in my opinion it does not translate to an entitlement of $545 an hour, particularly from a party's opponent.  It is my opinion, based on the information that has been presented about Mr. Art's practice, based on his years of practice and experience as well as the information contained in the 2017 Survey, that a more reasonable hourly rate for Mr. Art is **$325** per hour.  But, as indicated, given his limited time entries in this case, I don't believe any of his time should be compensable.

### David B. Owens

Mr. Owens received his law degree in 2010 and was a judicial law clerk thereafter for two years before commencing private practice in 2012.  It is unclear whether Mr. Owens has been in continuous practice since then as he has spent some significant time as a lecturer and instructor and is now a tenure track professor in the state of Washington.  Given all of this, Mr. Owens appears to have well less than 10 years of actual experience.

Despite this, Plaintiffs seek $540 an hour for his time.  While I believe Mr. Owens indeed has impressive credentials and certainly has some experience, I do not agree the experience he has identified translates into such a high hourly rate.  The Colorado Survey does not support Plaintiffs' request for his time.  In addition to the data outlined above, the Survey reveals the mean hourly rate for attorneys with five to nine years of experience (like Mr. Owens) is $279.  The median and 75th percentile for attorneys with this many years of experience is $275 per hour and $350 per hour.

Based on all of this information, it is my opinion that a more reasonable hourly rate for Mr. Owens is **$300 per hour**.  But, as indicated, I do not believe any of Mr. Owen's time, all of which were quarter hour time entries reflecting internal communications with Ms. Wang (and Ms. Rutahindurwa) is properly compensable.

### Brian Swift, paralegal

Brian Swift has been a paralegal for 9 years.  Plaintiffs seek an award of $175 per hour for his substantial time entries.

It is my opinion $175 per hour is excessive and beyond what is reasonable in this community for a paralegal.  Instead, it is my opinion that a more reasonable rate for a paralegal with 9 years of experience is **$115 per hour**.  The 2017 Survey supports this conclusion.  Even paralegals with twenty plus years of experience reported average billing rates of $125 dollars per hour.  Paralegals with five to ten years of experience reported average hourly rates of $115 per hour.  I generally agree with these numbers, and they are in accord with my own experience.

### Andy Thayer, Office Manager

Andrew D. Ringel, Esq.
August 4, 2022
Page 11

Mr. Thayer is identified in his Declaration as the Office Manager for Plaintiffs' counsel. He spent 13.5 hours organizing expenses for Plaintiffs' bill of costs and Plaintiffs seek an award of $175 per hour for his time.

Time spent by support or administrative staff is not, in my opinion, properly billed to a client, much less to one's adversary.   I am aware of no authority supporting this type of award. Even if such an award might be appropriate, the requested rate of $175 is fully unsupported.  I do not believe any award is reasonable or appropriate for administrative time spent by Mr. Thayer.

**Remaining Submissions by Plaintiffs**

In addition to the Declarations submitted by Plaintiffs' counsel discussed above, the Fitouri Plaintiffs have also submitted the following materials in support of the hourly rates claimed for their counsel:

- Affidavit of Erica Grossman.

Ms. Grossman has submitted an affidavit in support of the hourly rates requested by Plaintiffs' counsel.  Ms. Grossman opines the rates requested are, in her opinion, reasonable.  Other than repeating some of the same arguments presented by Plaintiffs' counsel in their fee petition and their declarations, Ms. Grossman offers very little in support of her stated opinions in support of the hourly rates Plaintiffs seek.  In any event, I respectfully disagree with Ms. Grossman's opinion.  I believe the hourly rates requested are not reasonable.  It is instead my opinion the rates I have identified above more reasonably reflect hourly rates for the attorneys and paralegals involved in this particular case.

- Other Colorado cases involving different attorneys.

Plaintiffs' counsel relies on hourly rates approved by other judges in this district in other cases for different lawyers, specifically an order by Judge Arguello in *Willmeng v. City of Lafayette*, Civil Action No. 19-CV-00150-CMA-SKC, Order dated March 25, 2019, and an order by Judge Martinez in *Valdez v. Motyka*, 2022 WL 1092182, *3 (D. Colo. 2022).  I do not find these Orders terribly compelling, nor do I believe they support the hourly rates claimed by Plaintiffs' attorneys in this case.  In *Willmeng*, the court reviewed a stipulated motion regarding attorneys' fees in the total amount of $14,000 in which the parties had agreed to hourly rates for attorneys at Killmer Lane and Newman.  Though the court did conduct some level of independent review of the requested rates, the Order itself was based on a stipulation.  In addition, the attorneys involved in that case are generally considered to be part of the higher echelon of employment and civil rights attorneys in this jurisdiction, and as indicated above, not every attorney, regardless of how qualified and credentialed, can be considered at that same level.[4]  Similarly, Judge Martinez'

---

[4] I am very familiar with the attorneys in that case, Mr. Lane, Mr. Killmer and Ms. Newman, and I have tried cases against them over the years.  All three are excellent attorneys and all have been practicing almost exclusively in the areas of employment and civil rights for their

Andrew D. Ringel, Esq.
August 4, 2022
Page 12

decision in *Valdez* evaluated hourly rates claimed by attorneys at Haddon Morgan Foreman,[5] which again I do not believe is instructive or determinative when considering the hourly rates claimed by Plaintiffs' counsel in this case.

- The Fitzpatrick Matrix.

Most of the Declarations and indeed Ms. Grossman's Affidavit reference The Fitzpatrick Matrix, a document that really by definition has no applicability or relevance to evaluating reasonable hourly rates in this district. The Fitzpatrick Matrix (like the Laffey Matrix relied upon by counsel for the Epps Plaintiffs) was developed to evaluate and evidently provide guidance with respect to hourly rates for attorneys involved in complex federal litigation in the District of Columbia. As the explanatory notes make clear, the Matrix "has not been adopted by the Department of Justice generally for use outside the District of Columbia, nor has it been adopted by other Department of Justice components."

The salient inquiry in this matter, and indeed any fee request under 42 U.S.C. § 1988, is the reasonable hourly rate in the applicable jurisdiction, here Colorado. Perhaps the best example of the inapplicability of the Fitzpatrick Matrix in this jurisdiction are its data points reflecting an attorney with less than a year of experience could reasonably seek an hourly rate of $440 an hour. In my opinion, this is patently unreasonable in any jurisdiction, but is certainly unreasonable in Colorado. I do not think the Fitzpatrick Matrix provides any guidance to this Court any more than other matrixes similarly presented in claims for attorneys' fees. In my experience, most judges in this jurisdiction generally disregard these matrixes in light of their inapplicability. *See Barrington v. United Airlines*, *supra* at 13 ("The Laffey Matrix is also inapplicable because it provides rates for attorneys in Washington, D.C and Baltimore, not Denver, Colorado."). Even in the District of Columbia, Courts have expressed hesitancy about relying on the Laffey Matrix (the predecessor to the Fitzpatrick Matrix). *See Urb. Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 322 (D.C.C. 2020) ("Because the D.C. Circuit deems fee matrices as somewhat crude, fee applicants must supplement[] fee matrices with other evidence such as surveys to update the[m]; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases.").

---

entire careers. Indeed, Ms. Newman has been practicing for over 25 years, Mr. Killmer for well over 30 years and Mr. Lane well over 40 years. Each of these attorneys thus has twice as many years of experience as Ms. Wang. So, rates approved for these other attorneys following a *stipulated* fee request (as occurred in *Willmeng*) are unhelpful to determining a reasonable hourly rate for Plaintiffs' counsel here. That not all attorneys command the highest hourly rates even when successful is best exemplified by Judge Arguello's order in *Barrington v. United Airlines*, *supra*, approving the rate of $300 per hour for an experienced civil rights practitioner with almost 40 years of experience.

[5] Jeffrey Pagliuca has been practicing in the areas of employment and civil rights law for 40 years and Laura Menninger has been practicing for 25 years. Both have decades more experience in these areas than Ms. Wang.

Andrew D. Ringel, Esq.
August 4, 2022
Page 13

- *Calloway v. Chicago Police Department*.

Lastly, Plaintiffs argue attorneys (apparently different attorneys) from Loevy and Loevy have been awarded rates in Illinois supporting the rates claimed by their counsel here. *See, Calloway v. Chicago Police Department*, attached as Exhibit L to Plaintiffs' fee petition. Neither this Order, nor any other Order from the State of Illinois, provide any guidance to this Court in determining and assessing a reasonable hourly rate for attorneys practicing in this jurisdiction, particularly orders from other jurisdictions addressing reasonable hourly rates for different attorneys.

## III.    REASONABLENESS OF THE NUMBER OF HOURS CLAIMED

### A.    Introduction

As with the determination of a reasonable hourly rate, I am guided in reviewing the number of hours reasonably expended on the litigation by my personal experience in litigating these types of cases and sending out invoices to clients for the work performed. And of course, any such determination must inevitably look to the controlling guidance provided by *Hemsley v. Eckhart* and *Ramos v. Lamm, supra*. Here, as indicated above, I conclude the time claimed for attorneys Jon Loevy, Steven Art, David Owens or Katie Roche should not be compensable. Their involvement was too modest and unrelated to the overall litigation, and the time they did include was almost entirely interoffice communications with Ms. Wang.[6] I have focused instead on the time records generated by Ms. Wang, Ms. Rutahindurwa and Mr. Swift.

### B.    Billing Judgment

A lawyer is obligated, when billing a client, to exercise careful billing judgment. Billing judgment in this context is the process of eliminating or reducing charges in a billing statement that would not or should not, in most circumstances, be billed to a client. "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). As the Tenth Circuit has noted, lawyers "charging fees to adversaries rather than clients may be less likely to carefully scrutinize the hours spent to determine if payment for the task performed is justified." *Id.* In my experience, this almost invariably occurs.[7]

---

[6] Of Ms. Roche's 37.25 claimed hours, 30.75 of them relate to even more time by counsel viewing videos as discussed below. The remainder is a communication with Ms. Wang, reviewing her declaration or reviewing materials that do seem to have advanced the Fitouri Plaintiffs' claims.

[7] Although there is suggestion in the Fitouri fee petition that some fees have already been cut or reduced, I see no effort to demonstrate this fact or quantify any such reduction (with, for example, zero rated time entries). Inclusion of such specifics assists the Court in determining whether billing judgment has in fact been exercised before filing the fee petition. But, that did not occur.

Andrew D. Ringel, Esq.
August 4, 2022
Page 14

An attorney is obligated to exercise billing judgment in sending out an invoice or statement to a client. The Tenth Circuit has instructed in determining the amount of reasonable fees that might be appropriate in a case:

> It does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client*, also are not properly billed to one's *adversary* pursuant to statutory authority.

*Id.* (italics in original).

I have carefully reviewed the Declarations from all timekeepers at the Loevy & Loevy firm on behalf of the Fitouri Plaintiffs and several things stand out.

The first of these is the manner in which the firm evidently keeps time generally. Most attorneys document time billed to clients in six-minute (or $1/10^{th}$ of an hour) intervals. The attorneys at Loevy & Loevy on the other hand appear to have tracked their time utilizing fifteen minutes (or $1/4^{th}$ of an hour) as the minimum amount of time to charge their clients. Utilizing this billing methodology certainly leads to more substantial billing. Many tasks attorneys perform are accomplished in less than fifteen minutes (and indeed well less than 5 minutes) and thus billing fifteen minutes for any task, regardless how long the task actually takes, inevitably increases the amount of a bill. It is my opinion the use of fifteen-minute minimum billing entries does not comport with an attorney's obligation to exercise reasonable billing judgment. If the Loevy & Loevy firm has paying clients who have agreed in an engagement letter to pay their attorneys in that fashion, that is one thing. But to request an adversary, in this case the City and County of Denver, be subject to this billing practice is to me unreasonable. Because it is a virtually impossible task to go through the Fitouri Plaintiffs' time statements and make appropriate adjustments, I believe a reasonable approach would be to apply a wholesale 15% reduction of all of the time entries documented by the Fitouri Plaintiffs' counsel, if not more.

The second issue that stands out to me is the lack of an actual billing statement. Generally, when an attorney sends a bill to a client, all of the time entries from all timekeepers are presented in the same invoice or document which enables meaningful analysis of what was done on a particular day and by whom. Instead, the Loevy & Loevy firm has simply generated what it calls "timesheets" associated with each timekeeper. I am not aware of any law firm that would bill a client in this fashion, forcing the client to sift through the various timesheets, add up the totals claimed per attorney at the law firm and then issue payment to the firm accordingly. Presenting timesheets in this fashion makes it harder to meaningfully analyze the time claimed by all of the timekeepers at Loevy & Loevy in a meaningful fashion. Because it is not the Defendant's obligation nor is it the duty of this Court to engage in the type of review required to fully compare all of the various timesheets presented, it is my opinion that a reasonable approach would be to

Andrew D. Ringel, Esq.
August 4, 2022
Page 15

apply a wholesale 5% reduction of all the time entries documented by the Fitouri Plaintiffs' counsel.

### D.    Duplication of Effort

The Tenth Circuit has issued strong cautionary language warning against any award of duplicated services.  As the Court explained:

> For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.  Similarly, if the same task is performed by more than one lawyer, multiple compensation should be denied.  *The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services . . . .*  Leading members of the profession have criticized the Bar for the burgeoning expense of modern litigation and attributed part of the problem to the practice of using several lawyers when one would suffice.

*Ramos, supra* at 554 (emphasis added).  The Tenth Circuit has also expressly stated:

> The presence of more than one lawyer at depositions and hearing must be justified to the Court.  No fees should be awarded for hours reported by lawyers or law clerks who were present at depositions, hearings or trial for the purpose of being trained or who did not participate in or contribute to the proceedings.

*Id.*

I have reviewed the timesheets presented for Ms. Wang, Ms. Rutahindurwa and Mr. Swift. In general, I would say the timesheets reveal an effort not to submit billing that includes significant duplication of effort.  Nevertheless, there are many entries that document what I consider to be "interoffice communications."  By this I mean sessions where two or more timekeepers in Plaintiffs' counsel's office meet to discuss the case, with all timekeepers billing.  To me, as an attorney who has been billing clients for over a quarter of a century, there is an inherent tension that exists between the reality attorneys will appropriately confer with one another about a case, determine and effectuate strategy, and otherwise be prepared to fully represent their client and the inappropriate opposite of that circumstance when too many attorneys are simply involved in accomplishing the very same thing billing substantial time to their clients to communicate with one another.  The problem is somewhat magnified when you have two different law firms representing two sets of Plaintiffs in the same litigation.  It appears attorneys from both law firms representing the Epps Plaintiffs and the Fitouri Plaintiffs sought to coordinate their strategies.

Nevertheless, while recognizing and appreciating this inevitable tension, I do note a number of time entries documenting what I consider to be excessive interoffice conferences. Given the volume of the timesheets presented, it is not terribly reasonable to try and go through and isolate and specifically pick out these interoffice conferences, but it is my opinion that a

Andrew D. Ringel, Esq.
August 4, 2022
Page 16

reasonable approach would be to apply a wholesale 2.5% reduction of all of the time entries documented by the Fitouri Plaintiffs' counsel to address this issue.

A more specific duplication of effort issue exists with respect to Ms. Rutahindurwa's involvement in several aspects of this case. As discussed above, Ms. Rutahindurwa was a relatively brand-new associate and understandably needed to receive guidance and training from Ms. Wang as part of the process of essentially learning how to become a practicing attorney. And this is exactly what Ms. Wang's role is as a partner in her law firm. It is her job to mentor and supervise associates. However, while it is laudable and important for Ms. Wang to do so, it is not in my opinion appropriate to bill a client, must less an adversary, for the tasks associated with that training. Specifically, Ms. Rutahindurwa sat in on various depositions in this case, observed the proceedings and took notes. *See* time entries on February 19, 2021 (5.5 hours), March 12, 2021 (8.5 hours), April 28, 29 and 30, 2021 (17.25 hours),[8] May 25, 2021 (6.0 hours), August 26, 2021 (4.0 hours), January 20, 2022 attending mediation (8.5 hours).

It is my understanding there were a significant number of body cam and other videos disclosed in this case by various parties including Denver. I don't doubt for a minute there were significant hours of videos and many gigabytes of data requiring review, nor do I underestimate the importance of these videos. Without having a better grasp of the videos and their significance at the time of trial or during the discovery phase, I am reluctant to express concerns about the number of different timekeepers at Loevy & Loevy who spent time in very large blocks reviewing what were inevitably the same videos. I will defer to you and the Court and who no doubt have a better handle on the magnitude of videos that existed in this case as to whether or not there was duplication of effort by paralegals, associates and partners in reviewing the videos. But it is certainly an issue that should be addressed.

E.   **Excessive Time**

A similar and related component to exercising billing judgment and avoiding duplication of effort is ensuring a billing statement sent to a client reflects a reasonable amount of time spent for a particular task. The more experience an attorney has, generally the more efficient the lawyer can be in drafting pleadings, conducting interviews, and doing the other things necessary to work up a case and prepare it for hearing or trial. Excess time should be deleted so it is not charged to a client. But this is not the burden of a defendant resisting a fee request under § 1988, nor is it the obligation of any reviewing court. Instead, inclusion of excessive time warrants a reduction in the hours claimed.

---

[8] Ms. Wang was also involved in assisting Ms. Rutahindurwa in preparing for this deposition and includes time on her part providing Ms. Rutahindurwa "guidance during deposition" on the same dates. I think it is reasonable for Ms. Wang to bill her time associated with the Cunningham deposition, but it is not reasonable to charge the Defendants in this case for the time spent by both attorneys.

Andrew D. Ringel, Esq.
August 4, 2022
Page 17


      In reviewing the timesheets generated for associate attorney Rutahindurwa and paralegal Brian Swift, it is impossible not to note what appear to me to be excessive time entries, again associated with the review of various videos generated in this case.  Indeed, Mr. Swift alone from January 4 through January 27, 2021 spent over almost 110 hours reviewing videos produced by the City of Aurora.  His time entries include many six, seven, and eight hour billing days seemingly doing nothing but reviewing videos and taking notes.  And he did this despite the fact Ms. Rutahindurwa also spent significant time from November 3, 2020, through December 1, 2020, reviewing what appear to have been the same videos.  Indeed, most of Mr. Swift's 785 hours are comprised of six and eight hour days spent reviewing videos and taking notes.  If one assumes a reasonable paralegal might look to bill 1,500 hours in any given year, Mr. Swift seemingly spent six complete months doing nothing but reviewing videos associated with this case.  To me, this sounds excessive, but I will again defer to you and to the Court, who have greater familiarity with the videos actually involved as to whether or not in particular Mr. Swift's time entries associated with video review constitute excessive time that the Fitouri Plaintiffs are endeavoring to bill to an adversary.

* * * *

      To the extent that any additional F.R.C.P. 26 disclosures are required, my background and experience are set forth in this report.  More details about my practice can be found on my firm's website:  http://dietzedavis.com/william-rogers-iii/.  I am being paid by the City and County of Denver $400.00 per hour for time spent as an expert witness in this matter.  I have testified only once as an expert, in trial or by way of deposition, in the last four years.  I testified on behalf of successful attorneys seeking the recovery of attorney's fees in Pueblo County District Court on December 7, 2018 in *Charter Asset Management Fund v. The Career Building Academy Inc., et. al*.

      Should other information become available that you would like me to review and evaluate, please let me know.

Very truly yours,

William A. Rogers, III

WAR/ck