**EXHIBIT B**



*Serving the West from Boulder since 1972*

| | | |
|---|---|---|
| Robyn W. Kube | Siena Square Building | Nathan A. Klotz |
| Karl F. Kumli, III*† | 2060 Broadway, Suite 400 | K.C. Cunilio |
| Carmen S. Danielson | Boulder, Colorado 80302 | *Christina M. Gonsalves |
| Renée Ezer* | Telephone (303) 447-1375 | |
| Stephen A. Closky | Fax (720) 805-2051 | *Of Counsel:* |
| Tucker M. Katz | www.dietzedavis.com | Joel C. Maguire |
| Mark D. Detsky | | Star L. Waring |
| William A. Rogers, III | Email: wrogers@dietzedavis.com | Nicholas G. Muller |
| Joshua E. Anderson | | |
| Jennifer L. Lorenz | | Peter C. Dietze  1934-2019 |
| Gabriella Stockmayer | | Joel C. Davis  1936-2013 |
| Carolyn R. Steffl | | |
| | | *Also admitted in California |
| | | †*Also admitted in New Mexico* |

August 4, 2022

Andrew D. Ringel, Esq.          (**Via e-mail**: ringela@hallevans.com)
Hall & Evans, LLC
1001 Seventeenth Street, Suite 300
Denver, CO 80202

      Re:     *Elisabeth Epps, et. al. v. City and County of Denver, et. al.*
               United States District Court for the District of Colorado
               Civil Action No. 20-cv-1878-RBJ-MEH
               Dietze and Davis File No. 11203.001

Dear Mr. Ringel:

      The following are my opinions with respect to the reasonableness of the attorney's fees claimed by Plaintiffs Elisabeth Epps, Ashlee Wedgeworth, Amanda Blasingame, Maya Rothlein, Zach Packard, Hollis Lyman, and Stanford Smith (the "Epps Plaintiffs") in the above-referenced matter.  In connection with my review and in reaching the opinions that I express below, I reviewed the following:

      1.     United States District Court Civil Docket for Case No. 20-cv-1878-RBJ;

      2.     Complaint filed June 25, 2020 (Doc. 1);

      3.     First Amended Complaint and Jury Demand filed by the Epps Plaintiffs October 19, 2021 (Doc. 178);

      4.     Order on Jefferson County Deputies' Motion for Summary Judgment filed February 2, 2022 (Do. 298);

Andrew D. Ringel, Esq.
August 4, 2022
Page 2

     5.     Order on Denver Defendants' Motion for Summary Judgment filed March 1, 2022 (doc. 304);

     6.     Plaintiffs' Motion for Attorneys' Fees and Costs filed June 1, 2022 (Doc. 378) as well as the following attachments thereto:

         a.    Exhibit 1: Affidavit of Matthew J. Douglas (Doc. 378-1);

         b.    Exhibit 2: Time Records (Doc. 378-2);

         c.    Exhibit 3: Bill of Costs and Invoices (Doc. 378-3);

         d.    Exhibit 4: Costs Pursuant to §1988 (Doc. 378-4);

         e.    Exhibit 5: Laffey Matrix (Doc. 378-5)

     7.     Various websites for the attorneys involved in representing the Plaintiffs; and

     8.     The Colorado Bar Association's 2017 Economics of Law Practice Survey.

In addition to my review of the above pleadings and other documents, I have discussed this case with you.

## I.   EXPERIENCE AND BACKGROUND

I am an attorney licensed to practice law in the State of Colorado and have been since 1992. I was also admitted to practice law in the State of Maine in 1991. In addition to the state courts of Maine and Colorado, I have been admitted to practice law before the United States District Courts for the Districts of Maine and Colorado, as well as the United States Court of Appeals for the Tenth Circuit. I have been admitted *pro hac vice* to state courts in Seattle, Washington and Boston, Massachusetts. I am a shareholder at Dietze and Davis, P.C. in Boulder and have been since January 2016. Prior to that, I practiced law at Wood, Ris & Hames, P.C. in Denver for 23 years, becoming a shareholder with that firm in 1998. Prior to joining Wood, Ris & Hames, I served as a judicial law clerk to the Honorable Alfred A. Arraj of the United States District Court for the District of Colorado from 1991 to 1992. In addition, I served as a judicial law clerk to the Honorable D. Brock Hornby of the United States District Court for the District of Maine from 1990 to 1991. I graduated from the University of Colorado School of Law in 1990, where I served as a staff editor of the University of Colorado Law Review. I graduated from Colby College in Waterville, Maine in 1984. I am an AV-rated attorney by *Martindale-Hubbell* and have been named as a Colorado Super Lawyer. I was selected for membership to the American Board of Trial Advocates ("ABOTA"), an invitation-only national association of experienced trial lawyers and judges dedicated to the preservation and promotion of civil jury trials.

A significant part of my legal practice involves the defense of employers as well as governmental entities and employees in employment and civil rights litigation. I have litigated employment and constitutional claims in state and federal court and tried a number of them to

Andrew D. Ringel, Esq.
August 4, 2022
Page 3

verdict. I am regularly retained to represent employers in all manner of employment law claims arising under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, as well as the Fair Labor Standards Act. I also regularly litigate cases brought pursuant to 42 U.S.C. § 1983, including First, Fourth and Eighth Amendment claims. I am familiar with the nature and type of work necessary to conduct discovery, engage in motions practice under Rules 12 and 56, prepare for and try these types of cases to verdict in this community, and handle such matters on appeal. I am frequently retained to serve as an expert witness evaluating attorney's fees sought by prevailing parties in employment and civil rights cases and have substantial experience with respect to what reasonable rates for this type of work are in this community.

As a shareholder now at Dietze and Davis as well as previously at Wood, Ris & Hames, I am responsible for preparing and submitting billing statements for legal services rendered on a regular and constant basis. I am also responsible for managing and overseeing the work of many other timekeepers, at the partner, associate, and paralegal levels. In conjunction with these duties, I review the billing records of attorneys and paralegals that perform legal services for my clients. I regularly review, edit, and revise billing statements sent to individuals, large and small private entities, governmental entities, as well as insurance companies for many of the attorneys in my firm. I am responsible for ensuring the billing statements received by my clients contain an adequate and sufficient level of detail outlining the legal services provided. In doing so, I regularly analyze and review the amount of time expended by other attorneys and paralegals in my firm to determine reasonableness. Part of that process involves having an understanding as to how much time certain tasks should normally take. This includes preparation of disclosures and written discovery, the preparation and filing of various preliminary pleadings when a matter has recently been filed, conducting depositions, filing briefs in support of or in opposition to dispositive motions, preparing for and attending trial, and briefing matters on appeal.

Part of my role as a senior shareholder and billing attorney is to exercise billing judgment to ensure the reasonableness of the billing statements I send out. This requires me to ensure the rates charged by my firm are in line with those charged in the Colorado market for the type of work that we do. It also requires that I monitor the type of fees potentially sought by plaintiffs and their counsel in contingent-fee litigation when fees are sought pursuant to 42 U.S.C. § 1988. In addition to my responsibility for reviewing and submitting bills to my clients, I have also submitted and prepared affidavits supporting my own requests for attorney's fees and costs in litigation and litigated requests for attorney's fees. I am regularly retained as an expert regarding the reasonableness of attorney's fees sought by plaintiffs who have been successful in litigating matters encompassed by the federal civil rights statutes, including 42 U.S.C. § 1988. My opinions with regard to the reasonableness of attorney's fees were adopted and cited with approval by District Court Judge C. Scott Crabtree in Adams County District Court in *Brinkman, et al. v. State of Colorado*, Case No. 13-cv-32572, in conjunction with the attorney's fees sought by the plaintiffs in that case, which successfully challenged the State of Colorado's same-sex marriage prohibition. I was accepted as an expert witness and testified with respect to the reasonableness of claimed attorney's fees by District Court Judge Deborah R. Eyer in Pueblo County District Court.

Andrew D. Ringel, Esq.
August 4, 2022
Page 4

## II.  REASONABLENESS OF THE HOURLY RATES CLAIMED

The Epps Plaintiffs seek attorney's fees in this case in the amount of **$2,561,557** based on 5,969.4 hours they claim thirteen (13) attorneys and one paralegal spent on this matter.  For the reasons discussed below, it is my opinion the hourly rates requested for these timekeepers are excessive and beyond what is reasonable in this community and legal market.

The Epps Plaintiffs' claim for attorney's fees is a statutory one, predicated on achieving prevailing-party status under the attorney-fee shifting mechanism created by 42 U.S.C. § 1988. My review of their claim for attorney's fees is guided by my thirty plus years of experience litigating these types of cases.  In addition, of course, any such claim for attorney's fees must be analyzed in accordance with the legal framework established by the Supreme Court's largely controlling decision analyzing such statutory fee requests, *Hensley v. Ekerhart*, 461 U.S. 424 (1983), along with the Tenth Circuit's seminal decision regarding attorneys' fees under 42 U.S.C. § 1988, *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983).

I have reviewed the relevant information presented or available with regard to a determination of a reasonable hourly rate for Plaintiffs' counsel.  It is my opinion the hourly rates requested do not reflect a reasonable hourly rate in this community for attorneys of their background, training, and experience.  The following table reflects the hourly rates requested by Plaintiffs' counsel as well as the hourly rates I believe are more reasonably supported:

| Name | Requested Hourly Rate | Reasonable Hourly Rate |
|---|---|---|
| R. Reeves Anderson | $595 | $375 |
| Ed Aro | $595 | $500 |
| Matthew Douglas | $595 | $450 |
| Timothy McDonald | $595 | $450 |
| Colin O'Brien | $595 | $375 |
| Diana Sterk | $595 | $375 |
| Leslie Bailey (associate) | $375 | $250 |
| Sam Callahan (associate) | $375 | $230 |
| Gerardo Mijares-Shafai (associate) | $375 | $250 |
| Patrick Reidy (associate) | $375 | $300 |

Andrew D. Ringel, Esq.
August 4, 2022
Page 5

| Michael Sebba (associate) | $375 | $250 |
|---|---|---|
| Mindy Gorin (associate) | $375 | $225 |
| Andreas Moffett (associate) | $375 | $225 |
| Joseph Chang (paralegal) | $175 | $110 |

The bases for my hourly rate opinions are set forth below.

The burden on Plaintiff's counsel in establishing a proper hourly rate for an award of fees under 42 U.S.C. § 1988 is generally to show what "lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Ramos v. Lamm, supra*, 713 F.2d at 555; *Lucero v. Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987). The calculation itself must be based on prevailing market rates in the relevant community, here in Denver.

Determining the proper market rate for plaintiff employment or civil rights work is an interesting task. The vast majority of cases of this nature are taken by counsel on a contingent basis, as was apparently the circumstance here. Because of the nature of this type of practice, it is more difficult to survey, or otherwise assess, what the reasonable market rate is for a plaintiff's employment or civil rights practitioner. This is so because such a determination is, by necessity and reality, not made competitively on the open market driven by what clients will pay and what attorneys are able to charge, but rather is generally established by what a reviewing judge may determine is reasonable. Judicial officers thus become essentially the marketplace, endeavoring to determine a reasonable hourly rate based on their best estimate of what the market is from the evidence and materials presented, even though, practically speaking, there is no ascertainable market for plaintiff's civil rights or employment work undertaken on a contingent or *pro bono* basis. The judiciary essentially *is* the marketplace.

Typically, plaintiff's counsel requests a certain rate she believes is appropriate and supports this request with her own affidavit and/or affidavits from other attorneys expressing their opinions the requested rate is reasonable. The defendant, as here, may request another attorney to opine what he may believe is reasonable. Ultimately, a court must make this determination based on the evidence presented.[1] Thus, figuring a reasonable market rate for a plaintiff's employment or civil rights attorney who has prevailed on behalf of her client is driven not really by the market, but rather by whatever a court may ultimately conclude is reasonable. Suffice it to say there are very

---

[1] "A district court abuses its discretion when it ignores the parties' market evidence and sets an attorney's hourly rate using the rates it consistently grants. The court may not use its own knowledge to establish the appropriate rate unless the evidence of prevailing market rates before the court is inadequate." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) (internal citations omitted).

Andrew D. Ringel, Esq.
August 4, 2022
Page 6

few, if any, consumers of legal services, particularly employees with employment claims or individuals with civil rights claims in Colorado, who would ever pay anything close to $600 per hour for legal representation. There are also *very* few plaintiff's employment or civil rights attorneys regularly awarded an hourly rate approaching this level in this jurisdiction.

The Epps plaintiffs seek the recovery of attorneys' fees for work done by six partners, seven associates and one paralegal in conjunction with the successful prosecution of this matter. I have carefully reviewed the Affidavit of Matthew Douglas and also reviewed the Arnold & Porter website where all of the attorneys representing the Epps Plaintiffs were employed.[2] Unquestionably, all of these attorneys are accomplished and very well credentialed. However, none of them appear to have any significant experience in the area of civil rights litigation, focusing instead in areas of law such as products liability, environmental or toxic tort litigation and patent litigation. Several of the partner-level attorneys involved in this case have been practicing for more than 25 years and several associates have only been practicing for a few years. Interestingly, despite the lack of any significant civil rights experience, Plaintiffs seek the same hourly rate for all partner-level attorneys regardless of the nature and type of experience they have. Plaintiffs do the same thing with respect to all associate-level attorneys, again regardless of the experience the associates have or the length of time that they have been practicing law. The theory seems to be that the two rates requested, $595 an hour for partners and $375 an hour for associates, are the rates that were recently approved in this district for highly experienced civil rights attorneys in a comparable civil rights matter and thus all of the Arnold & Porter attorneys must assuredly be entitled to *at least* that hourly rate, regardless of their actual experience in civil rights work or their years of practice. I respectfully disagree and believe a more attorney specific inquiry is necessary to meaningfully set a reasonable hourly rate for those timekeepers entitled to be appropriately compensated by the Court.[3]

With this in mind, I address the hourly rates sought by Plaintiffs' attorneys in this case in the order in which they are included in Plaintiffs' Motion for Attorneys' Fees and Costs:

**R. Reeves Anderson**

I have reviewed the relevant and available information presented with regard to the determination of a reasonable hourly rate for Mr. Anderson. He received his law degree in 2007 and commenced private practice in 2008 following a judicial clerkship. Mr. Anderson has thus been practicing law for approximately 14 years. Mr. Anderson is an accomplished and experienced litigator particularly it appears in the appellate arena. Though I disagree with the hourly rate requested on his behalf, I do not in any way denigrate or impugn either his abilities or his reputation. This same observation applies to all of the attorneys who represented the Plaintiffs in this case. To the contrary. However, Mr. Anderson's requested hourly rate of $595 per hour

---

[2] It appears that Mr. Sebba is no longer be employed by Arnold & Porter, or at least he is no longer included on the firm's website. Mr. Mijares-Shafai is no longer employed by Arnold & Porter.

[3] I have significant concerns with the number of hours claimed and the number of timekeepers involved in this case on behalf of the Epps Plaintiffs as discussed more fully below.

Andrew D. Ringel, Esq.
August 4, 2022
Page 7

would place his rate at or even above what I consider to be the very highest reasonable rates for plaintiff's employment and civil rights attorneys practicing in Colorado. And not every attorney practicing in these areas, even accomplished counsel with 14 years of experience like Mr. Anderson, command the very highest awardable hourly rate. Otherwise, every successful employment and civil rights attorney would seek over $500 per hour after achieving some measure of success. In fact, it seems that more and more, this is the case. Taking into consideration Mr. Anderson's specific experience as an attorney, and taking into consideration his years of experience, the nature of his practice, and the jurisdiction where he practices, it is my opinion a more reasonable hourly rate for Mr. Anderson is **$375 per hour**, still a very high hourly rate, and one I believe more accurately reflects his skill and experience in this area of the law.

My opinion regarding this hourly rate is based not only on my own experience and understanding of the Colorado legal market but is also based on the 2017 Economics of Law Practice Survey ("Survey") published by the Colorado Bar Association relating to the hourly rates charged by Colorado attorneys in various practice areas. I consider the Survey to be a very helpful (and fully impartial) assessment of hourly rates charged by attorneys in this jurisdiction. The Survey discusses attorney billing rates in Colorado, and breaks those rates down by firm size, years in practice, office location, primary field of law, and practice classification of attorneys.[4]

Looking at these categories with regard to Mr. Anderson, I note that the mean or average billable rate for attorneys in law firms of over 250 attorneys (his firm evidently has roughly 1,000 attorneys collectively) is $328 per hour. The median and 75th percentiles for firms this size show $288 and $475 per hour, respectively. Attorneys with 10 to 19 years of practice (again, Mr. Anderson has 14 years of experience), have a mean or average hourly rate of $244 per hour. The median and 75th percentiles show $250 and $300 per hour, respectively. Similarly, the mean or average hourly rate for attorneys practicing in Denver is $257 per hour, with the median and 75th percentiles coming in at $250 and $315 per hour, respectively. The 2017 Survey provides information about labor and employment attorneys who represent employees (perhaps the most analogous category to plaintiff's civil rights work), though it does not break out or specify the attorneys' years of experience, the size of their firm, or where they practice. Nevertheless, the

---

[4] Several Courts in this District have agreed the Survey "establishe[s] a baseline of reasonableness" for attorney hourly rates in Colorado, *see Fresquez v. BNSF Railway, Co*. Civil Action No. 17-cv-0844-WJM-SKC, Order dated March 18, 2021 (Judge Martinez), and that "the relevant categories of the 2017 Colorado Survey [are] instructive." *Barrington v. United Airlines, Inc*., Civil Action No. 15-cv-00590-CMA-MLC, Order dated June 1, 2018 (Judge Arguello). *See also Home Loan Inv. Co. v. St. Paul Mercury Ins. Co*., 78 F. Supp. 3d 1307, 1318 (D. Colo. 2014) (noting because the Survey "provides the most recent data and is specific to Colorado, it provides the best indication of the current reasonable hourly rate in the Denver area" as well as "a helpful baseline in determining the customary rates in the community for lawyers of reasonably comparable skill, experience and reputation.").

Andrew D. Ringel, Esq.
August 4, 2022
Page 8

mean or average hourly rate for such attorneys is $309 an hour, the median is $313 per hour and the 75th percentile for plaintiff side employment attorneys is $356 an hour.[5]

Looking at all of these categories and considering Mr. Anderson's level of experience in the area of civil rights, I believe an hourly rate that best takes into consideration his years of experience, the size of his firm, the location where he practices, as well as rates for employment and civil rights practitioners, is **$375 an hour**. I think this is a reasonable rate under these circumstances. Mr. Anderson's requested hourly rate of $595 per hour would place him, in my opinion, at or actually above a reasonable hourly rate for the very highest level of plaintiff's employment and civil rights attorneys in Colorado. I do not believe such a placement or characterization is supported. This is particularly so as I understand his primary role was working on dispositive motions and jury instructions.

**Ed Aro**

Mr. Aro received his law degree in 1989 and has been practicing law for 32 years. Mr. Aro is no doubt a very successful litigator across a broad spectrum of practice areas, though it would not appear he has substantial experience in civil rights cases. Though I disagree with the hourly rate requested on his behalf, I am sure he is a very skilled and effective advocate. Regardless, his requested hourly rate of $595 per hour would place him well above what I consider to be the very highest reasonable rates for plaintiff's employment and civil rights attorneys practicing here in Colorado. And, as mentioned above, not every attorney practicing in these areas, even accomplished counsel like Mr. Aro, command the very highest reasonable hourly rate.

Taking into consideration Mr. Aro's experience as an attorney, particularly in the area of civil rights law, and taking into consideration his years of experience, the nature of his practice, and general market rates in this jurisdiction, it is my opinion a more reasonable hourly rate for Mr. Aro is **$500 per hour**, still a very high hourly rate, and one I believe more accurately reflects his skill and experience in this area of the law.

My opinion regarding this hourly rate is based not only on my own experience and understanding of the Colorado legal market but is also based on the Colorado Survey. Looking at the relevant categories with regard to Mr. Aro, I note that attorneys with 30 to 39 years of practice (Mr. Aro has 32), have a mean or average hourly rate of $292 per hour. The median and 75th percentiles show $275 and $350 per hour, respectively. Again, the mean or average hourly rate for attorneys practicing in downtown Denver is $308 per hour, with the median and 75th percentiles coming in at $250 and $315 per hour, respectively. As above, the Survey includes data for labor and employment attorneys who represent employees, though it does not break out or

---

[5] It is interesting to note the same survey when released in 2008 and 2012 identified plaintiff/employee side employment lawyers in the 95th percentile as billing roughly $350 per hour. The lack of any significant increase during that time frame is certainly consistent with my own assessment of the market during those years, which was rather static, perhaps reflecting the lingering recessionary effects of the economy. Hourly rates have increased more so over the last several years, and I recognize the Survey has not been updated since 2017.

Andrew D. Ringel, Esq.
August 4, 2022
Page 9

specify the attorneys' years of experience, the size of their firm, or where they practice. Nevertheless, the mean or average hourly rate for such attorneys is $309 an hour, the median is $313 per hour and the 75th percentile for plaintiff side employment attorneys is $356 an hour.

Taking all of this information into consideration, it is my opinion that **$500 per hour** is a reasonable rate for Mr. Aro based on the Colorado legal market.

**Matthew Douglas**

Mr. Douglas graduated from law school in 1995 and followed this with a year as a judicial law clerk. He commenced private practice in 1996 and has thus been an attorney for 26 years. Plaintiffs request an award of $595 an hour for his time, as they do for all partner level attorneys. Mr. Douglas' experience is impressive, particularly in the area of products liability and environmental law. However, in my opinion this experience does not translate to an entitlement of almost $600 an hour in civil rights litigation, particularly from a party's opponent.

In addition to the other data points addressed above with respect to the Colorado survey, I note attorneys with 20 to 29 years of practice (Mr. Douglas has 26), have a mean or average hourly rate of $274 per hour. The median and 75th percentiles show $275 and $326 per hour, respectively. It is my opinion, based on the information that has been presented about Mr. Douglas' practice, based on his years of practice and experience as well as the information contained in the 2017 Survey, that a more reasonable hourly rate for Mr. Douglas is **$450 per hour**.

**Timothy Macdonald**

Mr. Macdonald received his law degree in 1996 and followed this with two years as a judicial law clerk. He commenced private practice in 1998 and has thus been an attorney for 24 years. Mr. Macdonald's experience and credentials are certainly impressive. However, in my opinion this experience does not translate to an entitlement of almost $600 an hour in a case such as this one, particularly from a party's opponent.

It is my opinion, based on the information that has been presented about Mr. Macdonald's practice, based on his years of practice and experience as well as the information contained in the 2017 Survey, that a more reasonable hourly rate for Mr. Macdonald is **$450 per hour**.

**Colin O'Brien**

Mr. O'Brien graduated from law school in 2009 and followed this with a one-year judicial clerkship. He commenced private practice in 2010 and has thus been an attorney for 12 years. Mr. O'Brien's experience and his work for the last twelve years is impressive, particularly in the areas of patent law and securities matters. However, in my opinion this experience does not translate to an entitlement of $595 an hour in a civil rights case, particularly from a party's opponent. His role in this matter was, as I understand it, limited to working on responses to dispositive motions.

Andrew D. Ringel, Esq.
August 4, 2022
Page 10

It is my opinion, based on the information that has been presented about Mr. O'Brien's practice, based on his years of practice and experience as well as the information contained in the 2017 Survey, that a more reasonable hourly rate for Mr. O'Brien is **$375 per hour**.

**Diana Sterk**

Ms. Sterk graduated from law school in 2011 and commenced private practice that year. She has thus been an attorney for 11 years. Ms. Sterk's experience and her work for the last decade is impressive, particularly in the areas of products liability and consumer law. However, in my opinion this experience does not translate to an entitlement of $595 an hour, particularly from a party's opponent. I note again that the Colorado Survey data reports attorneys with 10 to 19 years of practice (Ms. Sterk would be at the bottom of that range), have a mean or average hourly rate of $244 per hour. The median and 75th percentiles show $250 and $300 per hour, respectively.

It is my opinion, based on the information that has been presented about Ms. Sterk's practice, based on her years of practice and experience as well as the information contained in the 2017 Survey, that a more reasonable hourly rate for Ms. Sterk is **$375 per hour**.

**Leslie Bailey**

Ms. Bailey graduated from law school in 2014 after which she had a fellowship and later spent two years as a judicial clerk. I consider her to have five years of experience in private practice. Plaintiffs seek $375 per hour for her time spent in this litigation, as they do for all associate attorneys who worked on this file.

I do not believe the requested rate is warranted. This opinion is based on my experience and understanding of billing rates in Colorado and is also fully supported as well by the Survey. The mean or average billable rate for associate attorneys with between five and nine years of experience is $225 per hour. The median and 75th percentile for attorneys at this level of experience is $225 and $275, respectively. And of course, Ms. Bailey would fall at the very low end of this range. Instead, it is my opinion that a reasonable hourly rate for Ms. Bailey is **$250 per hour**.

**Sam Callahan**

Mr. Callahan graduated from law school in 2016 and followed this with two judicial clerkships. He commenced private practice in 2018 and has thus been an attorney for 4 years. Mr. Callahan is certainly well credentialed, but I do not believe his relatively limited experience translates to an entitlement of $375 an hour for his time, particularly from a party's opponent. His role in this matter was, as I understand it, limited to working on jury instructions.

My opinion is based on my own experience with hourly rates for associates, but also on the rates reported in the Colorado Survey for attorneys with Mr. Callahan's level of experience. The mean or average billable rate for associate attorneys with between three and four years of experience is $203 per hour. The median and 75th percentile for attorneys at this level of

Andrew D. Ringel, Esq.
August 4, 2022
Page 11

experience is $200 and $225, respectively.  It is my opinion, based on the information that has been presented about Mr. Callahan's practice, based on his years of practice and experience as well as the information contained in the 2017 Survey, that a more reasonable hourly rate for Mr. Callahan is **$230 per hour**.

### Gerardo Mijares-Shafai

Mr. Mijares-Shafai graduated from law school in 2016 and worked as an associate at Plaintiffs' counsel's firm until 2021, when he left private practice.  I consider him to have had five years of experience when he last performed any work on behalf of Plaintiffs.  Plaintiffs also seek $375 per hour for his time spent in this litigation.

I do not believe the requested rate is supported.  Instead, it is my opinion that a reasonable hourly rate for Mr. Mijares-Shafai is **$250 per hour**.  This opinion is based on my experience and understanding of billing rates in Colorado and is fully supported as well by the Survey.  As set forth above, the mean or average billable rate for associate attorneys with between five and nine years of experience is $225 per hour.  The median and 75th percentile for attorneys at this level of experience is $225 and $275, respectively.  And of course, Mr. Mijares-Shafai would fall at the very low end of this range.

### Patrick Reidy

Mr. Reidy graduated from law school in 2013 and commenced private practice that year. He has thus been an attorney for 9 years as a patent litigator.   Mr. Reidy certainly has some excellent experience in his field of practice.  However, in my opinion this experience does not translate to an entitlement of $595 an hour, particularly from a party's opponent.  I note again the Colorado Survey data reports that attorneys with 5 to 9 years of practice have a mean or average hourly rate of $225 per hour.  The median and 75th percentiles show $225 and $275 per hour, respectively.

It is my opinion, based on the information that has been presented about Mr. Reidy's practice, based on his years of practice and experience as well as the information contained in the 2017 Survey, that a more reasonable hourly rate for Mr. Reidy is **$300 per hour**.

### Michael Sebba

Mr. Sebba graduated from law school in 2015 and entered private practice that year.  It is unclear whether he is still employed at Arnold & Porter (he does not appear to be on the firm's website).  I consider him to have between five and six years of experience as a patent litigator. Plaintiffs also seek $375 per hour for his time spent in this litigation.

I do not believe the requested rate is warranted.  Instead, it is my opinion that a reasonable hourly rate for Mr. Sebba is **$250 per hour**.  This opinion is based on my experience and understanding of billing rates in Colorado and is fully supported as well by the Survey.  As set forth above, the mean or average billable rate for associate attorneys with between five and nine

Andrew D. Ringel, Esq.
August 4, 2022
Page 12

years of experience is $225 per hour.  The median and 75th percentile for attorneys at this level of experience is $225 and $275, respectively.  And of course, Mr. Sebba would fall at the low end of this range.

**Mindy Gorin**

Ms. Gorin received her law degree in 2019.  She became licensed as an attorney and joined Arnold & Porter in 2021 (it is unclear what she did in the intervening 2 years).  In any event, she has less than two years of experience in private practice.  Plaintiffs have requested $375 per hour for her time spent in this matter.  I believe this hourly rate for essentially a brand-new associate attorney is not supported.  Instead, it is my opinion that a reasonable hourly rate for Ms. Gorin is **$225 per hour**.

My opinion regarding an appropriate hourly rate for Ms. Gorin is again based not only on my experience and understanding of how time spent by associates is billed to clients in the Colorado legal market, but also on the data reported in the 2017 Colorado Bar Association Survey.  The mean or average billable rate for associate attorneys with between one and two years of experience is $192 per hour.   The median and 75th percentile for attorneys at this level of experience is $193 and $244, respectively.   My experience and this data animate my opinion that an associate attorney just starting out in her career with no experience in civil rights work is more reasonably compensated at **$225 per hour**.

**Andreas Moffett**

Ms. Moffett received his law degree in 2020 and like Ms. Gorin was admitted to practice law in 2021.  Plaintiffs have requested $375 per hour for his time spent in this matter.  As with Ms. Gorin, I believe this hourly rate for essentially a brand-new associate attorney is not supported.  Instead, it is my opinion that a reasonable hourly rate for Mr. Moffett is **$225 per hour**.

My opinion regarding an appropriate hourly rate for Mr. Moffett is again based not only on my experience and understanding of how time spent by associates is billed to clients in the Colorado legal market, but also on the data reported in the 2017 Colorado Bar Association Survey discussed above.

**Joseph Chang, paralegal**

No information is provided as to Mr. Chang's experience as a paralegal, nevertheless Plaintiffs seek an award of $175 per hour for his substantial time entries.

It is my opinion that $175 per hour is excessive and beyond what is reasonable in this community for a paralegal.  Instead, it is my opinion a more reasonable rate for a paralegal of uncertain experience is **$110 per hour**.  The 2017 Survey supports this conclusion.  Even paralegals with twenty plus years of experience reported average billing rates of $125 dollars per hour.  Paralegals with five to ten years of experience reported average hourly rates of $115 per hour.  I generally agree with these numbers, and they are in accord with my own experience.

Andrew D. Ringel, Esq.
August 4, 2022
Page 13

**Remaining Submissions by Plaintiffs**

In addition to the Affidavit of Mr. Douglas submitted by Plaintiffs' counsel discussed above, the Epps Plaintiffs have also made the following argument and submitted the following materials in support of the hourly rates claimed for their counsel:

- Other Colorado cases involving different attorneys.

Plaintiffs' counsel relies almost exclusively on the hourly rates approved by other judges in this district in other cases for different lawyers, specifically an order by Judge Martinez in *Valdez v. Motyka*, 2022 WL 1092182, *3 (D. Colo. 2022) and an order by Judge Arguello in *Willmeng v. City of Lafayette*, Civil Action No. 19-CV-00150-CMA-SKC, Order dated March 25, 2019. I do not find these Orders terribly compelling, nor do I believe they support the hourly rates claimed by Plaintiffs' attorneys in this case. In *Willmeng*, the court reviewed a stipulated motion regarding attorneys' fees in the total amount of $14,000 in which the parties had agreed to hourly rates for attorneys at Killmer Lane and Newman. Though the court did conduct some level of independent review of the requested rates, the Order itself was based on a stipulation. In addition, the attorneys involved in that case are generally considered to fall within the higher echelon of employment and civil rights attorneys in this jurisdiction, and as indicated above, not every attorney, regardless of how qualified and credentialed, can be considered at that same level.[6] Similarly, Judge Martinez' order in *Valdez* evaluated hourly rates claimed by attorneys at Haddon Morgan Foreman,[7] which again I do not believe is instructive or determinative when considering the hourly rates claimed by Plaintiffs' counsel in this case.

- The Laffey Matrix.

---

[6] I am very familiar with the attorneys in that case, Mr. Lane, Mr. Killmer and Ms. Newman, and I have tried cases against them over the years. All three are excellent attorneys and all have been practicing almost exclusively in the areas of employment and civil rights for their entire careers. Indeed, Ms. Newman has been practicing for over 25 years, Mr. Killmer for well over 30 years and Mr. Lane well over 40 years. Each of these attorneys thus has significantly more years and significantly more specific experience in civil rights litigation than *any* of the Epps Plaintiffs' counsel. So, rates approved for these other attorneys following a *stipulated* fee request (as occurred in *Willmeng*) are unhelpful to determining a reasonable hourly rate for Plaintiffs' counsel here. The same distinction applies to any fees approved by Judge Krieger in *Martinez v. Valdez*, 2015 U.S. Dist. LEXIS114602 (D. Colo. 2015) and the other cases cited by Plaintiffs at pages 16-19 of their Motion addressing claimed rates by these same attorneys. That not all attorneys command the highest hourly rates even when successful is best exemplified by Judge Arguello's order in *Barrington v. United Airlines, supra*, approving the rate of $300 per hour for an experienced civil rights practitioner with almost 40 years of experience.

[7] Jeffrey Pagliuca has been practicing in the areas of employment and civil rights law for 40 years and Laura Menninger has been practicing for 25 years. Both have significantly more experience in these areas than any of the Epps Plaintiffs' counsel.

Andrew D. Ringel, Esq.
August 4, 2022
Page 14

In support of their requested hourly rates, counsel for the Epps Plaintiffs relies in part on the Laffey Matrix, a document that really by definition has no applicability or relevance to evaluating reasonable hourly rates in this district. The Laffey Matrix (like the Fitzpatrick Matrix relied upon by counsel for the Fitouri Plaintiffs) was developed to evaluate and evidently provide guidance with respect to hourly rates for attorneys involved in complex federal litigation in the District of Columbia. As the explanatory notes make clear, the Matrix "has not been adopted by the Department of Justice generally for use outside the District of Columbia, nor has it been adopted by other Department of Justice components."

The salient inquiry in this matter, and indeed any fee request under 42 U.S.C. § 1988, is the reasonable hourly rate in the applicable jurisdiction, here Colorado. Perhaps the best example of the inapplicability of the Laffey Matrix in this jurisdiction are its data points reflecting an attorney with less than two years of experience could reasonably seek an hourly rate of $333 an hour. In my opinion, this is patently unreasonable in any jurisdiction, but is certainly unreasonable in Colorado. I do not think the Laffey Matrix provides any guidance to this Court any more than other matrixes similarly presented in claims for attorneys' fees.

In my experience, most judges in this jurisdiction generally disregard these matrixes in light of their inapplicability. *See Barrington v. United Airlines*, *supra* at 13 ("The Laffey Matrix is also inapplicable because it provides rates for attorneys in Washington, D.C and Baltimore, not Denver, Colorado."); *Howard v. Midland Credit Mgmt.*, Civil Action No. 11-cv-03123-PAB-BNB, 2012 WL 4359361, 2012 U.S. Dist. LEXIS 136209, at *6 (D. Colo. Sep. 24, 2012)("[T]he Laffey Matrix does not adequately establish the prevailing rate for consumer law advocates in Colorado."); *Fresquez v. BNSF Ry.*, Civil Action No. 17-cv-0844-WJM-SKC, 2020 U.S. Dist. LEXIS 48416, at *5-6 (D. Colo. Mar. 20, 2020)("Courts in this District have declined to adopt the Laffey Matrix rates;" "The Court declines to adopt the Laffey Matrix adjusted rates, and will instead look at the prevailing market rate for attorneys with Plaintiff's counsel's skill and experience."); *Reichers v. Delaware Asset Mgmt., LLC*, 2013 U.S. Dist. LEXIS 164981, 2013 WL 6096136, at *3 (D. Colo. Nov. 20, 2013) (the Laffey Matrix "is not more helpful than the rates actually used by other courts or the rates of law firms"); *Howard v. Midland Credit Mgmt.*, 2012 U.S. Dist. LEXIS 136209, 2012 WL 4359361, at *3 (D. Colo. Sept. 24, 2012) ("Laffey Matrix does not adequately establish the prevailing rate for consumer law advocates in Colorado").

Even in the District of Columbia, Courts have expressed hesitancy about relying on the Laffey Matrix (the predecessor to the Fitzpatrick Matrix). *See Urb. Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 322 (D.C.C. 2020) ("Because the D.C. Circuit deems fee matrices as somewhat crude, fee applicants must supplement[] fee matrices with other evidence such as surveys to update the[m]; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases.").

Andrew D. Ringel, Esq.
August 4, 2022
Page 15

### III.    REASONABLENESS OF THE NUMBER OF HOURS CLAIMED

#### A.    Introduction

As with the determination of a reasonable hourly rate, I am guided in reviewing the number of hours reasonably expended on the litigation by my personal experience in litigating these types of cases and sending out invoices to clients for the work performed. And of course any such determination must inevitably look to the controlling guidance provided by *Hemsley v. Eckhart* and *Ramos v. Lamm, supra.*

To reiterate, The Epps Plaintiffs seek attorney's fees in this case in the amount of **$2,561,557** based on 5,969.4 hours they claim thirteen (13) attorneys and one paralegal spent on this matter. To provide some context to this rather significant request, Plaintiffs seek to be awarded for 746 eight (8) hours days spent by their counsel. If Plaintiffs' attorneys worked 7 days a week (rather than 5), this claim for fees would amount to 149 weeks or 2.9 years of eight hours days spent by attorneys for the Plaintiffs doing nothing but working on this case. Every single day of the year.[8] To me, the Epps Plaintiffs' Motion for Attorneys' Fees presents a grossly overstated and bloated claim for attorney's fees.

As an initial matter, this case was taken by the Arnold & Porter firm early, possibly (based on the timesheets) before the law firm even had a client. The case was certainly taken as a *pro bono* matter, and it is not terribly surprising associates within the firm (and perhaps even partners) became enthusiastic about participating. This helps to explain the fact that 13 attorneys and one paralegal were involved (and the Motion indicates there were many other timekeepers for whom they have not requested an award). And while any law firm should be committed and enthusiastic about training its younger lawyers and providing all attorneys with opportunities to be involved in litigation, including taking and attending depositions, reviewing documents, crafting pleadings, participating in mediation, and especially attending trial, it is wholly inappropriate in my opinion to include excessive and duplicative work when seeking fees from an unsuccessful adversary pursuant to 42 U.S.C. §1988.[9]

Because there were two law firms involved in this case representing two groups of plaintiffs, the Court will have the ability to compare the rather stark differences between the two

---

[8] And the fee petition claims the request could have been much greater as timekeepers actually spent 14,172 hours working on this case in the roughly two years from the time the complaint was filed to the present. Taken in context, this suggestion means the attorneys and paralegals at Arnold & Porter spent 1,771 eight (8) hour days working on this matter alone. If counsel worked seven days a week (rather than five), the purported reasonable time spent on this matter by Plaintiffs' counsel would amount to 354 weeks, or 6.8 years. All in one two-year time frame. Such a contention is rather remarkable and, to me, *per se* unreasonable.

[9] And it has certainly been my experience that associates, and even more senior attorneys, have a tendency to record their hours in a more heavy-handed fashion in *pro bono* and contingent cases.

Andrew D. Ringel, Esq.
August 4, 2022
Page 16

petitions presented by the Fitouri Plaintiffs and by the Epps Plaintiffs. Although I have expressed my opinions about some of the billing issues I have with the Fitouri Plaintiffs' request for an award of fees, even the starting point of the Fitouri Plaintiffs' requests is limited to 3,170 hours, based on the time spent on this file by partner Elizabeth Wang, associate Makeba Rutahindurwa and paralegal Brian Swift. The Epps Plaintiffs' counsel by contrast utilized almost five times as many timekeepers and unsurprisingly now seeks from the Court almost twice as many hours (3,170 hours for the three timekeepers primarily involved in representing the Fitouri Plaintiffs versus 5,969 hours for the fourteen timekeepers who represented the Epps Plaintiffs). Some of this discrepancy can be explained by the greater level of civil rights litigation experience which the Loevy & Loevy attorneys no doubt have. But the biggest explanation would seem to be the difference between the 675 hours spent by one associate on behalf of the Fitouri Plaintiffs versus the over 3,000 hours spent by the associates at Arnold & Porter on behalf of the Epps Plaintiffs. I have no criticisms of a law firm giving multiple attorneys the opportunity to be involved in a *pro bono* case of importance. But that simply does not mean the unsuccessful adversary in the litigation, in this case the City and County of Denver, should be forced to foot the bill for the training and *pro bono* work all of these attorneys participated in.

It is my opinion the sharp distinction between the two fee petitions, with the Fitouri Plaintiffs seeking roughly half the fees requested by the Epps Plaintiffs, in and of itself supports a wholesale 50% reduction in the Epps Plaintiff's fee petition.

### B.    Billing Judgment

A lawyer is obligated, when billing a client, to exercise careful billing judgment. Billing judgment in this context is the process of eliminating or reducing charges in a billing statement that would not or should not, in most circumstances, be billed to a client. "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). As the Tenth Circuit has noted, lawyers "charging fees to adversaries rather than clients may be less likely to carefully scrutinize the hours spent to determine if payment for the task performed is justified." *Id.* In my experience, this almost invariably occurs.

An attorney is obligated to exercise billing judgment in sending out an invoice or statement to a client. The Tenth Circuit has instructed that in determining the amount of reasonable fees that might be appropriate in a case:

It does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client*, also are not properly billed to one's *adversary* pursuant to statutory authority.

*Id.* (italics in original).

Andrew D. Ringel, Esq.
August 4, 2022
Page 17

The fee petition presented on behalf of the Epps Plaintiffs in this case, far from showing an exercise of billing judgment, appears to show the very opposite. I have tried to carefully review the materials presented on behalf of the Epps Plaintiffs. Unfortunately, there are simply too many time entries which suggest to me an absence of billing judgment to meaningfully try and address them all. Several examples jump out including associate Mindy Gorin's involvement in defending one of the firm's client's deposition on July 20, 2021. Ms. Gorin, a very new associate, somehow spent 30 hours of preparation time along with attending the deposition. Two attorneys, associate Sam Callahan and partner Reeves Anderson, spent over 130 hours preparing jury instructions. Associate Leslie Bailey spent 49 hours preparing for and attending a deposition of Mr. Bolton on April 1, 2021, and spent an additional 25.9 hours preparing for and defending the deposition of Ms. Lyman on July 22, 2021. It appears other attorneys may have also been involved in some of these depositions, which is addressed below as the independent issue of duplication of effort.

Any analysis of these issues in more meaningful detail is made more complicated by the lack of an actual billing statement. Generally, when an attorney sends a bill to a client, all of the time entries from all timekeepers are presented in the same invoice or document which enables meaningful analysis of what was done on a particular day and by whom. Instead, the Arnold & Porter firm has simply submitted alphabetized timesheets associated with each of the fourteen timekeeper who worked on this case. I am not aware of any law firm that would bill a client in this fashion, forcing the client to sift through the 62-page, small font per attorney itemization, and then issue payment to the firm accordingly. Presenting timesheets in this fashion makes it significantly harder to meaningfully analyze the time claimed by all of the timekeepers in a meaningful fashion. Somewhat strangely, the only other time I have ever seen this is with the timesheets presented by the Fitouri Plaintiffs. Because it is not the Defendant's obligation nor is it the duty of this Court to engage in the type of review required to fully compare all of the various timesheets presented, it is my opinion a reasonable approach would be to apply a wholesale 5% reduction of all the time entries documented by the Epps Plaintiffs' counsel.

## D.     Duplication of Effort

The hours claimed by the Epps Plaintiffs in this case are frankly so excessive it is difficult to know where to even commence addressing the extraordinary request they have made. The Tenth Circuit has cautioned against attorneys seeking time for duplication of services. "The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services." *Ramos, supra* at 554.

The Tenth Circuit has issued strong cautionary language warning against any award of duplicated services. As the Court explained:

For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time. Similarly, if the same task is performed by more than one lawyer, multiple compensation should be denied. *The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services* . . . . Leading members of the profession have criticized

Andrew D. Ringel, Esq.
August 4, 2022
Page 18

the Bar for the burgeoning expense of modern litigation and attributed part of the problem to the practice of using several lawyers when one would suffice.

*Ramos, supra* at 554 (emphasis added).  The Court expressly stated:

The presence of more than one lawyer at depositions and hearing must be justified to the Court.  No fees should be awarded for hours reported by lawyers or law clerks who were present at depositions, hearings or trial for the purpose of being trained or who did not participate in or contribute to the proceedings.

*Id.*

I have reviewed the timesheets presented for all timekeepers at Arnold & Porter who worked on this case.  There are significant entries documenting what I consider to be "interoffice communications."  By this I mean sessions where two or more (or many more) timekeepers in Plaintiffs' counsel's office met to discuss the case, with all timekeepers billing.  To me, as an attorney who has been billing clients for over a quarter of a century, there is an inherent tension that exists between the reality attorneys will appropriately confer with one another about a case, determine and effectuate strategy, and otherwise be prepared to fully represent their client and the inappropriate opposite of that circumstance when too many attorneys are simply involved in accomplishing the very same thing billing substantial time to their client to communicate with one another.  The problem is somewhat magnified when you have two different law firms representing two sets of plaintiffs in the same litigation.  While I recognize and appreciate the inevitable tension mentioned above, I do note many time entries documenting what I consider to be excessive interoffice conferences.  One need only look at most the of the time entries from associate Gerardo Mijares-Shafai to see this problem.  Given the volume of the timesheets presented (and the manner in which they have been presented), it is not reasonable to try and go through and specifically pick out these interoffice conferences, but it is my opinion a reasonable approach would be to apply a wholesale 5% reduction of all of the time entries documented by the Epps Plaintiffs' counsel to address this issue.

Given the manner in which the Epps Plaintiffs have presented the timesheets on behalf of their attorneys, it is of course more difficult to undertake an evaluation of duplication of effort in this case.  However, it is clear to me far too many attorneys and timekeepers spent time on this file for which these Plaintiffs now seek compensation and the work collectively done by these attorneys is far too duplicative to be reasonably awarded against the City and County of Denver.  Several notable examples include the 31 hours claimed by partners Matthew Douglas, Timothy Macdonald, and Diana Sterk along with associates Leslie Bailey, Andreas Moffett and Patrick Reidy attending a mediation on January 21, 2022.  The Epps Plaintiffs claim an astonishing **1,350.8 hours** for the attendance at trial of partners Reeves Anderson, Matthew Douglas, Timothy Macdonald, and Diana Sterk along with associates Leslie Bailey, Mindy Gorin, Andreas Moffett, Patrick Reidy and Michael Sebba.  Nine of these ten attorneys request this Court award the Plaintiffs 10 hours a day for each of the fifteen (15) trial days for their collective attendance and participation in the case.  Plaintiffs request an award of 142 hours for time spent in February 2022

Andrew D. Ringel, Esq.
August 4, 2022
Page 19

by associate Mindy Gorin assisting in the preparation for trial. They also seek an award for 115 hours spent by associate Andreas Moffett, 42 hours spent by associate Michael Sebba, and 187 hours spent by associate Leslie Bailey for doing the same thing. This does not of course include the time spent by the multiple partners at the firm who tried the case conducting their own trial preparations.

Again, it is hard to even know where to begin when a party seeks to be awarded time spent by counsel with so many different attorneys claiming time for the exact same thing. But it is my opinion that given the substantial duplication of effort in this case, the specific and obvious examples most certainly should not be awarded (as I have tried to point out above), and a wholesale reduction of 15% is appropriate to endeavor to address the others.

E.       Excessive Time

A similar and related component to exercising billing judgment and avoiding duplication of effort is ensuring a billing statement sent to a client reflects a reasonable amount of time spent for a particular task. The more experience an attorney has, generally the more efficient the lawyer can be in drafting pleadings, conducting interviews, and doing the other things necessary to work up a case and prepare it for hearing or trial. Excess time should be deleted so it is not charged to a client. But this is not the burden of a defendant resisting a fee request under 42 U.S.C. § 1988, nor is it the obligation of any reviewing court. Instead, inclusion of excessive time warrants a reduction in the hours claimed.

The time requested in this case by the Arnold & Porter attorneys most certainly implicates this parallel concern. There are far too many examples to provide great specificity. Associate Andreas Moffett spent 25.3 hours preparing to attend a deposition on June 4, 2021. Partner Reeves Anderson and associate Sam Callahan spent over 133 hours preparing jury instructions. These are but obvious examples.

When confronted with a request for almost 6,000 hours of time associated with work the Epps Plaintiffs claim was done on their behalf, the temptation is to review the time records provided and conclude no meaningful analysis is possible given the frailties and deficiencies identified above. This brings me back to the somewhat fortuitous fact we have the fee petition on behalf of the Fitouri Plaintiffs in the exact same consolidated case. It is difficult for me to justify or rationalize any type of argument explaining how the attorneys representing the Fitouri Plaintiffs could be entitled to an award for less than 3,000 hours of time (or even the 3,235 hours they have claimed) while the attorneys representing the Epps Plaintiffs in the consolidated claim could claim almost 6,000 hours. To me, this is neither reasonable nor logical and quite frankly is best explained by the numerous shortcomings and problems I have identified above, particularly the excessive staffing of the file and the lack of experience, much less Civil Rights experience, of some of the attorneys involved on behalf of the Epps Plaintiffs.

Lastly, in reviewing the timesheets generated for paralegal Joseph Chang, it is impossible not to note what appear to me to be excessive time entries, again associated with the review of

Andrew D. Ringel, Esq.
August 4, 2022
Page 20

various videos generated in this case. In January 2021 alone, Mr. Chang spent 74.2 hours just reviewing videos. Indeed, most of the 751 hours claimed for Mr. Chang's labors are comprised of substantial time entries reviewing and manipulating videos, along with substantial time reports by partners and associates at the firm doing the same thing. If one assumes a reasonable paralegal might look to bill 1,500 hours in any given year, Mr. Chang seemingly spent six complete months doing nothing but reviewing videos associated with this case. To me, this sounds excessive, but I will again defer to you and to the Court, who have greater familiarity with the videos actually involved as to whether or not in particular Mr. Chang's time entries associated with video review constitute excessive time that the Epps Plaintiffs are endeavoring to bill to an adversary.

* * * *

To the extent that any additional F.R.C.P. 26 disclosures are required, my background and experience are set forth in this report. More details about my practice can be found on my firm's website: http://dietzedavis.com/william-rogers-iii/. I am being paid by the City and County of Denver $400.00 per hour for time spent as an expert witness in this matter. I have testified only once as an expert, in trial or by way of deposition, in the last four years. I testified on behalf of successful attorneys seeking the recovery of attorney's fees in Pueblo County District Court on December 7, 2018 in *Charter Asset Management Fund v. The Career Building Academy Inc., et. al*.

Should other information become available that you would like me to review and evaluate, please let me know.

Very truly yours,

William A. Rogers, III

WAR/ck