IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Nos. 1:20-cv-01878-RBJ (consolidated)

ELISABETH EPPS, *et al.*,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

    Defendants.

---

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**

---

Plaintiffs have met their burden of establishing entitlement to an attorney fees award pursuant to 42 U.S.C. § 1988 under the applicable standards. Defendants' Response and the supporting report from William Rogers ("Rogers report") ignore key aspects of those standards when challenging the rates requested by Plaintiffs, and base their proposed rates on a survey that courts in this District have rejected on multiple occasions. As to claims of excessive hours, an examination of the Rogers report reveals a fundamental lack of understanding of this case and a failure to account for the fact that Plaintiffs' counsel *already wrote off over 8200 hours*, which is almost 60% of the time billed to the case.

## ARGUMENT

### I. DEFENDANTS MISAPPLY THE STANDARDS FOR DETERMINING A REASONABLE HOURLY RATE

Defendants' only substantive response to Plaintiffs' citation of *Valdez v. Motyka*, No. 15-cv-0109-WJM-STV (D. Colo. Apr. 12, 2022), in which Judge Martinez approved the exact

same rates being requested here in a similar case as reasonable rates for civil rights counsel in the Denver area, is to argue for lower hourly rates because Plaintiffs' counsel does not have as much experience in civil rights cases as the attorneys in *Valdez*. But the standard articulated by this Court and by the Tenth Circuit is that "[t]he hourly rate should be based on the lawyers skill and experience in civil rights ***or analogous litigation.***" *Ryals v. City of Englewood*, Civil Action No. 12-cv-02178-RBJ (D. Colo. Jun. 6, 2014) (Jackson, J.) (emphasis added), citing *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). This Court in *Ryals* stated that while the plaintiffs' lawyers in that case did not "consider themselves specialists in plaintiffs' civil rights work … that largely misses the point .... No one has suggested that the legal work required in this case was of a different level of complexity or difficulty to that of commercial litigation." *Id*. Even Defendants' expert does not dispute that Plaintiffs' counsel are among the most qualified and successful commercial litigators in Colorado, led by a fellow of the American College of Trial Lawyers and Law Week Colorado's 2021 Lawyer of the Year.

  Defendants also ignore the portion of this Court's standard that "[e]xperience measured by years of practice is not the only indicator of value. The quality of one's work and its contribution to the result obtained obviously must be considered" as a factor in determining fees. *Id*. Defendants do not even attempt to fault the quality of the case presented by Plaintiffs that resulted in a resounding verdict in every Plaintiff's favor on nearly every claim, notwithstanding a robust defense presented by experienced defense counsel.

  The hourly rates proposed in the Rogers report are not well-founded. The foundation of Mr. Rogers' opinion is The Colorado Bar Association's 2017 Economics of Law Practice Survey ("CBA survey"). Defendants tout this survey as a method to determine the established

market rates in Denver. But on multiple occasions courts in the District of Colorado have held that the data within the CBA survey is unreliable for that purpose. *See Stroup v. United Airlines*, 2018 WL 10613861, at *7, (D. Colo. Dec. 5, 2018) ("After carefully reviewing the CBA Survey, I am dubious as to its validity and overall value to the case at hand[;] … approximately 94% of attorneys who were sent the survey did not respond, and … **zero civil rights attorneys responded**.") (emphasis added); *see also Hayes v. SkyWest Airlines, Inc*., 2018 WL 10884337, at *2 (D. Colo. July 2, 2018) ("I am not persuaded that this amalgamation [the CBA Survey] of the hourly rates of attorneys across all levels of experience and all areas of practice is an appropriate benchmark for this case."); *Merrill vs. Contract Freighters*, 2021 WL 3742242, (D. Colo. Aug. 24, 2021) ("the Court does not find the CBA Survey persuasive for this case.").

## II. DEFENDANTS' CLAIMS OF EXCESSIVE HOURS ARE UNSUPPORTED AND INCONSISTENT WITH THE FACTS OF THIS CASE.

The Rogers report attacks the number of hours spent by Plaintiffs' counsel to prepare and try this case, but his opinions are uninformed and inconsistent with how this case unfolded.

One example is Mr. Rogers' comparison of the hours spent by the *Epps* counsel versus the *Fitouri* counsel. Mr. Rogers' report states that "it is difficult for me to justify or rationalize any type of argument explaining how the attorneys representing the Fitouri Plaintiffs could be entitled to an award … [of] the 3,235 hours they have claimed[] while the attorneys representing the Epps plaintiffs in the consolidated claim could claim almost 6,000 hours." Mr. Rogers apparently did not consider (or was not informed about) how this consolidated case was staffed, as in fact there were more resources involved from the *Epps* counsel than the *Fitouri* counsel. At trial, counsel for the *Epps* Plaintiffs examined 22 of the 32 witnesses, including 15

3

of the 20 witnesses who were not plaintiffs in the case, and were responsible for the extensive preparation of and trial examination of both of Plaintiffs' experts in the case. *See* Supplemental Affidavit of Matthew J. Douglas at ¶ 1. Instead of evaluating these facts, Mr. Rogers simply concluded that the difference in hours is "quite frankly [] best explained by the numerous shortcomings and problems" in Plaintiffs' practices. In reality, the greater responsibility assumed by the *Epps* counsel at trial "best explains" the greater resources and time required of that team.

Another example of this same failure is Mr. Rogers' attack on legal assistant Joseph Chang's work in reviewing, editing, organizing, and analyzing over 1000 hours of video produced in a largely unorganized manner by the Defendants. That video evidence was a key component of the trial, and portions of it were used with nearly every witness. Now the City is complaining that Plaintiffs' counsel utilized the individual with the lowest billing rate to do the initial evaluation of this critical video evidence. Mr. Rogers specifically calls out the 74.2 hours that Mr. Chang spent working with these videos in January 2021, apparently unaware that the City's massive video production began with six large tranches of video files provided between December 8, 2020 and February 1, 2021. *See* Supplemental Affidavit of Matthew J. Douglas at ¶¶ 4-8. Mr. Chang's mere 74.2 hours working with those *hundreds of hours* of videos is reasonable (indeed, remarkably efficient), and Mr. Rogers' criticism again demonstrates a misunderstanding of the particulars of this case.[1]

---

[1] Plaintiffs inadvertently omitted the qualifications of Joseph Chang in their initial motion. As shown by the Supplemental Affidavit of Matthew Douglas, the $175 rate is supported by his 17 years of experience at Arnold & Porter and below the senior paralegal rate approved in the *Valdez* case. *See* Supplemental Affidavit of Matthew Douglas at ¶ 8.

Yet another example is Mr. Rogers' criticism of the 130 hours spent collectively by Reeves Anderson and Sam Callahan on jury instructions, verdict forms, and related materials. Mr. Rogers appears to be unaware that there were dozens of drafts of the jury instructions exchanged between the parties (with the responsibility to drive the process falling on Plaintiffs), dozens of meet and confer calls or emails to negotiate those drafts, four arguments in Court over the contested provisions and applicable authorities, along with extensive research that was necessary in a complex constitutional case—the first of its kind to go to trial in the U.S., and tried in the Tenth Circuit, a jurisdiction without model civil instructions. *See* Supplemental Affidavit of Matthew J. Douglas at ¶ 9.

As this Court observed on numerous occasions, this was no ordinary case. Mr. Rogers' apparent lack of understanding of the extent of the work required to successfully litigate this historic case involving seven Plaintiffs against a vigorous defense through a lengthy trial to a landmark verdict in Plaintiffs' favor, pervades Defendants' Response and the Rogers report.

Finally, Defendants claim that these unsupported arguments justify a variety of reductions in Plaintiffs' fee request. However, as noted above, and as sworn by affidavit, Plaintiffs utilized billing judgment in writing off more than 60% of the time billed to this matter before submitting the initial fee request, which already accounts for the same species of potential issues raised by Mr. Rogers in his report.

## **CONCLUSION**

WHEREFORE, Plaintiffs respectfully request that this Court grant this Motion and enter an award of attorneys' fees in the amount of $2,561,557.00 plus $96,184.05 in costs against the Defendants.

Dated: August 26, 2022					Respectfully submitted,

By: */s/ Matthew J. Douglas*
　　Timothy R. Macdonald
　　Matthew J. Douglas
　　Edwin Packard Aro

　　ARNOLD & PORTER KAYE SCHOLER LLP
　　1144 Fifteenth Street, Suite 3100
　　Denver, Colorado 80202
　　Telephone: (303) 863-1000
　　Timothy.Macdonald@arnoldporter.com
　　Matthew.Douglas@arnoldporter.com
　　Ed.Aro@arnoldporter.com

　　*In cooperation with the American Civil Liberties Union Foundation of Colorado*

　　Mark Silverstein
　　Sara Neel
　　Arielle Herzberg
　　American Civil Liberties Union Foundation of Colorado
　　303 E. Seventeenth Ave., Suite 350
　　Denver, Colorado 80203
　　Telephone: (303) 777-5482
　　Facsimile: (303) 777-1773
　　Msilverstein@aclu-co.org
　　Sneel@aclu-co.org
　　Aherzberg@aclu-co.org

　　*Counsel for Epps Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2022, I served the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS** via email on all counsel of record.

/s/ Tanya D. Huffaker