IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Nos. 1:20-cv-01878-RBJ (consolidated)

ELISABETH EPPS, *et al.*,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

    Defendants.

---

### SUPPLEMENTAL AFFIDAVIT OF MATTHEW J. DOUGLAS

---

I, Matthew J. Douglas, being over the age of 21, and having been duly sworn on oath, state as follows:

1. The trial in this case involved two consolidated matters, the *Epps* case and the *Fitouri* case. Counsel for each of the two plaintiff groups put their respective clients on the stand for direct examination at trial. There were seven *Epps* Plaintiffs and five *Fitouri* plaintiffs. The remainder of the witnesses were examined by a single attorney from one firm or the other, and a substantial majority of that work was done by Arnold & Porter Kaye Scholer ("A&P"), counsel for the *Epps* plaintiffs. In total, Counsel for the *Epps* Plaintiffs examined 22 of the 32 witnesses who testified live at trial.[1] Of the 20 live witnesses who

---

[1] *Epps* Plaintiffs' counsel examined Smith, Packard, Sanchez, Dr. Stamper, Rothlein, Blasingame, Levens, Valentine, Christian, Wedgeworth, Mitchell, Epps, Lyman, Dr. Maguire, O'Donnell, Knutson, Woods, Grothe, Coppedge, Parsons, Canino, and Thomas. *Fitouri* Plaintiffs' counsel examined Sannier, Fitouri, Deras, Phelan, Taylor, Parkins, Pine, Porter, Hamilton, and Cunningham.

testified and were not plaintiffs, *Epps* counsel examined 15 and *Fitouri* plaintiffs examined 5. These included lengthy cross-examinations of DPD employees and often included lengthy direct examinations by Defendants' counsel for their case, which led to substantial re-cross-examinations by Plaintiffs' counsel. Extensive preparation for these lengthy examinations was essential to achieving the result at trial.

2. Similarly, counsel for the *Epps* Plaintiffs were responsible for the preparation and trial examination of both of the Plaintiffs' expert witnesses who testified at trial. The preparation of these expert witnesses for direct and cross-examination was essential to achieving the result at trial.

3. Defendants' Response takes specific issue with the time spent by one A&P associate attorney, Leslie Bailey, for billing 139.7 hours in February and March 2022 preparing for witness examinations, including Chief Norman Stamper. Ms. Bailey was the lead associate working on the preparation for direct and cross-examination of Chief Stamper, worked with me in preparing for the lengthy cross-examination of a DPD Commander, and prepared and presented Plaintiff Hollis Lyman at trial. Chief Stamper submitted an extensive initial report that was supplemented twice during the course of the litigation as new evidence was received or un-redacted from the Defendants. Chief Stamper's three reports together totaled 111-pages, plus exhibits. Chief Stamper reviewed large amounts of video evidence and documents cited in his reports. During the trial testimony of Chief Stamper, 39 of Plaintiffs' exhibits were admitted into evidence. And as discussed above, the cross-examinations of DPD witnesses also required extensive preparation. For Ms. Bailey to have

accomplished all that went into these witness examinations in 139.7 hours is more than reasonable.  Furthermore, Plaintiffs' Motion does not include a request for any time for A&P partner Ed Aro, the attorney who examined Chief Stamper at trial, for the more than 100 hours Mr. Aro spent working on the preparation for Chief Stamper's testimony and the evidence and PowerPoint used during that examination.  The testimony of Chief Stamper in particular was necessary to effectively prove the widespread practices and customs of the Denver Police Department that established municipal liability in this case.

4. Defendants also criticize, and propose writing off entirely, the time spent by A&P legal assistant Joseph Chang.  Mr. Chang worked extensively to review, edit, organize, process for presentation and undertake an initial analysis of the over 1000 hours of video produced in a largely unorganized manner by the Defendants.  The video files were produced in several different formats, sometimes had missing or unreadable files, which required either conversion or identification for follow up with the Defendants to obtain new or different files.

5. The video evidence was a key component of the entire trial and portions of it were used with nearly every witness.  Mr. Rogers specifically criticizes the 74.2 hours that Mr. Chang spent working with these video files January 2021 as being excessive.  This time period was extremely active in the case as far as production of video evidence.  After months of meeting and conferring about disputes over the scope of the production, the incidents to be included, the time needed for processing, and a claim by the Defendants that a privilege review of all video was necessary before it could be produced, the City finally began rolling

out the production of large tranches of HALO camera videos, Air One helicopter videos, and videos from the body worn cameras of individual officers. The first large tranches of those videos were produced by the City to Plaintiffs between December 8, 2020 and February 1, 2021, and included 216 separate body worn camera video files from 92 DPD officers, in addition to many hours of videos from numerous HALO cameras on different dates and locations, and Air One videos. Mr. Chang's 74.2 hours in January 2021 working with those hundreds of hours of videos was a reasonable and necessary first step in sifting through a mountain of evidence and turning it into usable, relevant and effective evidence at trial.

6. Joseph Chang graduated from the University of Michigan in 2003 with a Bachelor of Arts degree in Political Science.

7. Mr. Chang accepted a position as a Legal Assistant with Arnold & Porter in 2004. He was promoted to Senior Legal Assistant in 2007 and promoted to Senior Legal Assistant II in 2013, which is the highest seniority legal assistant position available at Arnold & Porter. In his nearly 18 years at the firm, Mr. Chang has worked in the areas of litigation, white collar crime, intellectual property and financial services.

8. The hourly rate requested in Plaintiffs' Motion for Entry of Attorneys' Fees ("Motion") of $175 is substantially below the rate charged for Mr. Chang's time for commercial clients, and also lower than the $200 rate approved by the court in Valdez for the senior paralegals who worked on that case. Valdez v. Motyka, No. 15-cv-0109-WJM-STV (D. Colo. Apr. 12, 2022), at p. 5.

9. Defendants also criticize the 130 hours spent collectively by A&P partner Reeves

Anderson and associate Sam Callahan on the jury instructions in this case, on which A&P took the lead.  The first draft of what became the 28-page jury instructions and lengthy verdict form were initially prepared entirely by Plaintiffs, and were contentiously negotiated over a lengthy period of time, ultimately resulting in extensive review, comments and rulings from the Court.  There were dozens of drafts of the jury instructions exchanged between the parties, dozens of meet and confer calls with the Defendants to negotiate those drafts, and three arguments in Court over the contested provisions and applicable authorities, including at the end of the trial when Defendants requested a new round of changes to the set of instructions and verdict form.  Given that this case involved complex constitutional claims and was tried in the 10th Circuit, a jurisdiction that does not have model jury instructions, extensive legal research was necessary in order to support the many contested provisions.  Mr. Anderson's and Mr. Callahan's collective 130 hours billed for all of this is reasonable and the work was critical in obtaining the result at trial.

10. Defendants' Response also complains that attorneys who were not examining a witness in Court on a particular day were still billing 10 hours that day.  With one exception, the A&P attorneys who worked on this trial, examined a witness in Court, and are part of the attorneys' fees request by Plaintiffs were all individuals whose time was 100% devoted to this trial from start to finish.[2]  All of them, myself included, typically worked *more* than 10

---

[2] Associate attorney Patrick Reidy was the lead associate during the discovery phase of this case, but was only able to attend a short portion of the trial, when he examined Plaintiff Zach Packard, along with assisting remotely with certain trial preparation issues remotely as someone extremely knowledgeable about the facts of the case.  The total of 52.5 hours requested for Mr. Reidy for his work on the trial in March 2022 does not appear to be the subject of this criticism by Defendants.

hours each day whether we were examining a witness or not. The work involved in preparing opening statements, closing arguments, preparing for the direct examinations of Plaintiffs, cross-examinations of adverse witnesses, the exhibits to be used with each witness, was extensive and ongoing throughout the time of the trial, seven days a week, and was not something that could have been done effectively by only the attorney examining each witnesses or making the argument, or done entirely the night before. Thorough advance preparation was essential to effectively trying this case. To presume that the hours billed by an attorney not examining a witness on a given day was "duplication of effort" is inconsistent with and fails to appreciate the effort that was required to effectively present this case and obtain the result at trial. Moreover, in an exercise of billing judgment prior to the submission of Plaintiffs' Motion, we chose to limit all attorney hours to a maximum of 10 hours per day, despite the fact that for most of our team on most of the days of the trial, this understates the actual time spent working on the trial.

      11. Defendants' Response also takes issue with the fact that there was inter- and intra-office communication between the *Epps* attorneys working on the A&P team. In a case involving seven individual plaintiffs, dozens of incidents of police misconduct often involving multiple different plaintiffs, additional incidents relating to DPD practices and customs, and thirty-two trial witnesses, coordination between the members of the team was essential to effectively conducting discovery, developing case strategy, preparing to take depositions, and preparing witnesses and evidence for depositions and trial. It would have been impossible to effectively conduct discovery and try this case if each of the members of

the team had performed all of their tasks in a silo. Despite the necessity of such coordination, as part of the billing judgment that led to the writing off of nearly 60% of the time billed to this case, we decided to write off all time billed for a standing weekly coordination call that was attended by all members of the team that could make that time each week. This is another example of the extensive write-offs of time that already account for the kinds of issues identified by Mr. Rogers in his report.

12. The above examples demonstrate how the criticisms contained in Defendants' Response and the report of William Rogers are not well founded and fail to appreciate the time and effort that was required to effectively present and prevail on the Plaintiffs' claims at trial. Establishing the failures of DPD's policies, training, leadership, supervision and lack of accountability or discipline for the scores of unconstitutional incidents that established *Monell* liability against the City in six separate ways on the verdict form, required a herculean effort of preparation and execution at trial. The attempt by Defendants and Mr. Rogers to give the back of the hand to the efforts of the individuals who worked on this fails to appreciate the nature of the case and the effort that was required to bring about a verdict in favor of all Plaintiffs, including on 37 of the 42 claims.

### III.   CONCLUSION.

The fees and costs requested in Plaintiffs' Motion are reasonable; they reflect substantial discounts to rates, time and costs, and should be awarded against the Defendants.

Dated: August 26, 2022                                         */s/ Matthew J. Douglas*
                                                                             Matthew J. Douglas