IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT COURT OF COLORADO

| | |
|---|---|
| ELISABETH EPPS, *et al.*,<br><br>  Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF DENVER, *et al.*,<br>  Defendants. | Civil Action Nos. 1:20-cv-01878-RBJ &<br>1:20-cv-01922-RBJ-MEH |

**FITOURI PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES AND COSTS**

Defendants do not (and cannot) contest that the most important factor in the fee award is the result obtained. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"). The result obtained here was exceptional. Plaintiffs are only seeking the lodestar, the presumptively appropriate award. The only meritorious argument Defendants present is that the fees incurred by office manager Andy Thayer should be excluded. Thus, Fitouri Plaintiffs agree to exclude $2,362.50 from their request for $1,432,885.00 in attorneys' fees and $7,964.60 in Section 1988 costs. For the reasons discussed below and in Plaintiffs' motion, the Court should award $1,430,522.50 in attorneys' fees and $7,964.60 in Section 1988 costs.

**I.      The Requested Hourly Rates Are Reasonable**

"Competent representation in civil rights cases requires significant skill, can consume considerable resources, and entails significant risk for the attorneys who undertake them." *Vanech v. Acosta*, 2019 WL 3938065, at *5 (D. Colo. Apr. 9, 2019) (internal quotation marks and citation

omitted). The rate to be awarded must reflect Fitouri Plaintiffs' attorneys' expertise in this field and the excellent result obtained. *Id.*

Defendants concede that the "fee rates of the local area should be applied even when the lawyers seeking fees are from another area." Dkt. 413 at 3. "To determine a reasonable rate, the Court focuses on the rates of 'lawyers of comparable skill and experience.'" *Kemp v. Webster*, 2013 WL 6068344, at *2 (D. Colo. Nov. 18, 2013) (quoting *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1204 (10th Cir. 1998)); *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Defendants do not contest that the hourly rates awarded to the top civil rights attorneys in this jurisdiction is $600-650 per hour. Ex. 1 (Wang Decl.) ¶¶ 8-9; Dkt. 413-2 at 11. The question, then, is whether the skill and experience of Fitouri Plaintiffs' attorneys compare favorably to the skill and experience of the top civil rights attorneys in this jurisdiction. They do. Ex. 1 ¶¶ 10-21. Neither Defendants nor their retained expert, William Rogers, address Loevy & Loevy's civil rights experience or the experience and skill of Fitouri Plaintiffs' attorneys in this case.[1] *See* Dkt. 413 at 3-4; Ex. 1 ¶ 2. "The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983); *White v. Chafin*, 2016 WL 9735066, at *4 (D. Colo. Sept. 23, 2016) (citing *Ramos*).

Jon Loevy, for example, has won more multi-million-dollar jury verdicts in civil rights cases than probably any other lawyer in the country, including *any* lawyer in Colorado. Dkt. 380-4; Ex. 1 ¶ 13. He has obtained these victories in difficult cases against the most aggressive and

---

[1] Mr. Rogers' experience is only in *defending* civil rights claims and this is not his exclusive area of practice. This makes him *less qualified* to opine on the reasonableness of Plaintiffs' attorneys' hourly rate or time in prosecuting this case than civil rights attorney Erica Grossman, who provided a declaration supporting Fitouri Plaintiffs' petition, based on her experience as a plaintiffs' civil rights attorney who has herself achieved substantial victories on behalf of her clients. Dkt. 380-8.

tenacious civil rights defense counsel in the country. Ex. 1 ¶ 14. There can be no doubt that his rate should be at the top of the field, $650 per hour. *Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 1041 (N.D. Ill. 2013) (describing Jon Loevy as "an attorney whose experience, skill, and record of success in representing plaintiffs in police misconduct cases place him at the apex of attorneys who practice in that field."); *Jiminez v. City of Chicago*, 2012 WL 5512266, at 2 (N.D. Ill. Nov. 14, 2012) (Jon Loevy is in the "top tier of civil rights trial attorneys in the Chicago area" who leads what "is fairly considered one of the premier Chicago-area law firms concentrating in plaintiff's section 1983 litigation."); Ex. 1 ¶¶ 13, 15. Defendants do not discuss Mr. Loevy's experience and do not explain why a $475-per-hour rate would be reasonable for him. Nor would such a rate make any sense under Defendants' expert William Rogers's own rubric that "judges are the marketplace." *Id.* ¶¶ 15-16.

Likewise, a rate of $595 per hour is reasonable for lead Fitouri Plaintiffs' counsel Elizabeth Wang, whose experience and skill compares favorably to those of civil rights lawyers in this jurisdiction who have obtained similar rates. *Id.* ¶¶ 11-12. She has obtained 16 seven- and eight-figure jury verdicts and settlements in civil rights cases, not including this one. *Id.* ¶ 11. She got two such settlements in this district in May and July 2022. *Id.* Mr. Rogers does not compare Ms. Wang's experience and accomplishments with those of other civil rights lawyers who have obtained $575 and $600 per hour.[2] Instead, he simply boils it down to number of years of practice and still gets that wrong. *Id.* ¶¶ 3-7. Ms. Wang has been practicing law for 17 years, not 12. *Id.* ¶ 3. Clerkship experience counts towards years of experience, and some courts have counted it as more than a typical year of experience. *E.g.*, *Rodriguez v. United States*, 2006 WL 8447022, at *4

---

[2] And, he does not claim that either Ms. Menninger or Ms. Newman have won more multi-million-dollar verdicts and settlements than Ms. Wang.

(C.D. Cal. 2006) ("the 'less experienced' attorneys from both MALDEF and FFHS&J have 'above average' experience (many have completed judicial clerkships), such that they, too, might be entitled to an hourly rate higher than that of some of their peers"); *Roche Diagnostics Corp. v. Surplus Diabetic, Inc.*, 2020 WL 8082367, at *6 (S.D. Fla. 2020).

The rate of $545 per hour for Steven Art and David Owens is also reasonable in light of their experience and skill. Ex. 1 ¶¶ 18-21. They have obtained between 10 and 15 seven- and eight-figure verdicts and settlements in civil rights cases. Likewise, $375 per hour is reasonable for associates Makeba Rutahindurwa and Katie Roche, *id.* ¶¶ 22-23, and $175 per hour is reasonable for Brian Swift, a paralegal with nine years' experience, *id.* ¶ 24. These rates are fully in line with what has been awarded to other attorneys of similar skill and experience in this jurisdiction. *Valdez v. Motyka*, 2022 WL 1092182, at *3 (D. Colo. Apr. 12, 2022); *Stroup v. United Airlines*, 2018 10613861, at *8 (D. Colo. Dec. 5, 2018); Dkt. 380-11.[3]

Defendants rely only on the 2017 CBA Survey for their proposed rates. Dkt. 413 at 3-4; Dkt. 413-2; Ex. 9 (2017 CBA Survey). But as courts in this jurisdiction have recognized, the Survey is unreliable for setting reasonable rates for civil rights fee petitions. *Stroup*, 10613861, at *7 ("After carefully reviewing the CBA Survey, I am dubious as to its validity and overall value to the case at hand[;] … approximately 94% of attorneys who were sent the survey did not respond, and … *zero civil rights attorneys responded*.") (emphasis added); *Hayes v. SkyWest Airlines, Inc.*, 2018 WL 10884337, at *2 (D. Colo. July 2, 2018); *Merrill v. Contract Freighters*, 2021 WL 3742242, at *4 (D. Colo. Aug. 24, 2021). The Survey is unreliable for other reasons, including: (1) high level of non-response resulted in potential bias because attorneys with higher incomes are

---

[3] Inexplicably, in *Valdez*, Denver proposed $500 per hour for partners but proposes a far lower hourly rate here, despite Loevy & Loevy's greater experience and success in civil rights cases. *Valdez*, 2022 WL 1092182, at *3.

4

less likely to respond; (2) use of a $100 gift card as an incentive to complete the survey exacerbated the risk of bias; (3) the Survey did not include top-rated attorneys (who have higher incomes); (4) the Survey lacks statistical rigor; (5) the Survey does not account for combined impact of attorney characteristics; and (6) the Survey does not include an attorney group with comparable skills, expertise, or recognition as Fitouri Plaintiffs' attorneys. Ex. 2 (Bardwell Report (excerpts) from *Stroup*) at 18-19; Ex. 9; Ex. 1 ¶ 1.

## II.   The Number of Hours Claimed Are Reasonable

The Tenth Circuit requires "meticulous, contemporaneous time records" that reveal "all hours for which compensation is requested and how those hours were allotted to specific tasks." *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983); *accord Robinson v. City of Edmond*, 160 F.3d 1275, 1285 (10th Cir. 1998). Fitouri Plaintiffs have done exactly this. As an initial matter, other than pointing to a few "examples" of objectionable time entries, Defendants do not provide any specific objections to Plaintiffs' entries. Instead, Defendants propose a battery of across-the-board percentage reductions for which they have offered no factual support whatsoever. This is contrary to the law. The Court may not "'eyeball' the fee request and cut it down by an arbitrary percentage….'" *Robinson*, 160 F.3d at 1281; *Thames v. Evanston Ins. Co.*, 665 F. App'x 716, 722-23 (10th Cir. 2016) (finding imposition of percentage reduction arbitrary and an abuse of discretion and inconsistent with Tenth Circuit law); *see Nieto v. Kapoor*, 2001 WL 37125028, at \*7 (D.N.M. June 12, 2001) ("Defendant, for most of his objections, fails to point to specific charges which he feels are unreasonable. He makes excuses that 'it is not practical' to address each incident and asks this Court to arbitrarily reduce plaintiffs' counsel's time because certain entries are unreasonable on their face."). Percentage reductions have only been approved by the Tenth Circuit when

5

counsel's time records were so sloppy and imprecise that they "failed to document adequately how plaintiffs' attorneys utilized large blocks of time." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995). This is not the case here. *See Thames*, 665 F. App'x at 723 ("there is no indication in this case that counsel for Evanston submitted imprecise or inadequate time records so as to justify an across-the-board percentage reduction."). A percentage reduction must be based on facts, and Defendants have offered no facts supporting their proposed percentages. *See* Dkt. 413 at 10-11.

In addition, Mr. Rogers proposes a 5% across-the-board reduction because Plaintiffs' counsel's timesheets are not in a monthly billing statement format but are submitted by timekeeper. There is no basis for this reduction because Plaintiffs' counsel have complied with the Local Rules and Tenth Circuit law. Ex. 1 ¶ 49.

### A.  Exercise of Billing Judgment

Fitouri Plaintiffs exercised reasonable billing judgment. As Ms. Wang explains in her declaration, Fitouri Plaintiffs excluded well over *1,000 hours* expended on this case from the fee petition. Ex. 1 ¶¶ 31-38. Counsel billed only for a tiny fraction the time counsel spent conferring over email or engaged in inter- or intra-office communications or conferences. *Id.*

### B.  No Duplication of Effort or Excessive and Unnecessary Time

This case was extremely leanly staffed by Loevy & Loevy. Ex. 1 ¶ 25. None of Defendants' objections about duplication of effort have any merit. First, Defendants identify specific entries of Ms. Rutahindurwa (which total 48.75) that were allegedly unnecessary or duplicative. Dkt. 413 at 5. Each of these was necessary and not duplicative, as explained in the attached Exhibit 7. *See* Ex. 7; Ex. 1 ¶ 39. Moreover, "[t]ime spent by two attorneys on the same general task is not … *per se* duplicative. Careful preparation often requires collaboration and rehearsal, and the court should not

6

reward defendants for their vehement 'Stalingrad defense,'" a tactic they have continued to employ in post-trial motions. *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (10th Cir. 1998). Defendants' objections pertain mostly to attendance of Ms. Rutahindurwa and Ms. Wang at a few depositions. This did not occur at all the depositions, and it was reasonable in those instances. Ex. 7. "Had all of plaintiffs' counsel not been present at depositions and hearings, they would still have to relate to the one who did not go what happened, which would have taken a significant amount of time and would not have been as effective." *Nieto*, 2001 WL 37125028, at *10.

Second, Defendants claim that different timekeepers reviewed the same video. Dkt. 413 at 5. This is false. Ex. 1 ¶¶ 40-43. Each timekeeper reviewed different video. *Id.* ¶ 42. Over 1,000 hours of video was produced in this case, and Fitouri Plaintiffs' counsel spent 825.25 total hours reviewing it. *Id.* ¶ 43. *Nieto*, 2001 WL 37125028, at *7 (D.N.M. June 12, 2001) ("it is the defendant's burden to review the records and identify, with specificity, which hours submitted are excessive and redundant.") (citing *Sheets v. Salt Lake Cnty.*, 45 F.3d 1383, 1391 (10th Cir. 1995)). Defendants also object to time spent on taking and preparing for two depositions, preparing the *Daubert* motion, preparing opening statement, and preparing the testimony of Jackie Parkins. Dkt. 413 at 7-8. These objections are meritless, as Ms. Wang explains in her declaration. Ex. 1 ¶ 44. In sum, there is no basis for a 2.5% reduction. *Id.* ¶ 45.

    **C.**    **Quarter-Hour Time Entries Do Not Overstate Time Expended**

Defendants claim that Loevy & Loevy's quarter-hour billing increments overstate the amount of time expended. Dkt. 413 at 8. As explained in Ms. Wang's declaration, this is incorrect. Ex. 1 ¶¶ 46-48. Timekeepers did not bill for fifteen minutes regardless of how much time a task took, and they did not consistently round up to the higher quarter-hour. They rounded up or down

7

to the nearest quarter-hour. *Id.* ¶ 47. Tasks that took less than 10 minutes were not billed for at all. *Id.* Thus, a 15% across-the-board reduction is inappropriate. *Lopez v. City of Chicago*, 2007 WL 4162805, at *7 (N.D. Ill. Nov. 20, 2007) ("Nor do I find plaintiff's counsel [Loevy & Loevy] practice of billing quarter-hour increments unreasonable."); *Morimanno v. Taco Bell*, 979 F. Supp. 791, 799 (N.D. Ind. 1997) ("Billing by the quarter-hour does not ipso facto call for a reduction."); *Herrejon v. Appetizers And, Inc.*, 1999 WL 116598, at *3.

### D.   Time Entries Were Detailed and Not Vague

Defendants claim that the timesheets are vague, but the only example they give is that, for video review, the timekeepers did not document (for each entry) "how many videos" and "the duration of the videos." Dkt. 413 at 6, 8-9. There are no cases requiring that kind of detail, Defendants have cited none, and requiring that level of data entry would be absurd. Plaintiffs' entries concerning video review identify what task was completed and what type of video was reviewed (e.g., BWC video, HALO video, CSP or APD video). *See, e.g.*, Dkt. 380-2 at 14 (7/13/20 entry), 18 (10/6/20 entry), 19 (10/14/20 entry); Dkt. 380-9 at 7-8 Some of the entries even include the date of the video. Dkt. 380-2 at 19 (10/8/20, 10/10/20, 10/11/20 entries). "When examining the adequacy of an attorney's billing entries, we are primarily concerned with the district court's ability to evaluate the propriety of the fee request based on the specific billing entries." *Flitton v. Primary Residential Morg., Inc.*, 614 F.3d 1173, 1178 (10th Cir. 2010). Nor did Plaintiffs' counsel engage in any blockbilling, contrary to Defendants' vague suggestion otherwise. The time records are detailed and identify specific tasks completed and the amount of time it took to complete them, which is what the law requires. There is no factual basis for a 2.5% reduction in all time entries.

### E. Communications and Conferences Billed Were Minimal

Defendants propose a 2.5% across-the-board reduction for inter- and intra-office conferences/communications. Dkt. 413 at 9-10. There is no factual basis for this. As explained in Ms. Wang's declaration, Fitouri Plaintiffs' counsel billed for only a tiny fraction of the conferences/communications that occurred, and these were important and necessary to litigating this case successfully. Ex. 1 ¶¶ 25-30; Ex. 6. As Defendants would have it, the Epps and Fitouri Plaintiffs should have litigated this case without ever meeting to discuss strategy between them or within their own teams. This would have been impossible. As the Tenth Circuit explains well:

> Attorneys do not work cloistered in some cell or ivory tower. Attorneys … work as part of a collaborative process which requires give and taken, review and response. Exchange of ideas and understandings with regard to legal theories and facts should generally lead to a better and more efficient process to best serve the client in keeping with the tenants of Federal Rule of Civil Procedure 1 … Humans are not robots and thus are not completely fungible. The input one attorney gives might be different than the proffer of another, thus justifying multiple attorneys engaging in review or drafting of the same document.

*Robinson*, 160 F.3d at 1281.

### III. Section 1988 Costs

Defendants object to is $4,021.88 in travel costs for Makeba Rutahindurwa. This is compensable for the reasons discussed in Plaintiffs' motion. Dkt. 380 at 15.[4]

Respectfully submitted,<br>
s/ Elizabeth Wang

LOEVY & LOEVY
2060 Broadway, Ste. 460/Boulder, CO 80302
O: 720.328.5642/elizabethw@loevy.com

### Certificate of Service

I, Elizabeth Wang, an attorney, hereby certify that on August 30, 2022, I served via CM/ECF the foregoing Reply, on all counsel of record.      s/ Elizabeth Wang

---

[4] The only other attorney in Loevy & Loevy's Boulder office is partner Dan Twetten, who bills at a much higher rate than Ms. Rutahindurwa.