UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01005-TMT-KLM

CAROLYN O'NEAL,

    Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FREMONT,
SHERIFF ALLEN COOPER, in his official capacity as the Sheriff of Fremont County,
MICHAEL FETTERHOFF, in his individual and official capacities,
TROY JOHNSTON, in his individual and official capacities,
STEVE SANGER, in his individual and official capacities,
MICHAEL ULRICH, in his individual and official capacities,
RICHARD SOLANO, in his individual and official capacities,
CARRIE HAMMEL, in her individual and official capacities,
CAMERON GONZALES, in his individual and official capacities,
JOSHUA POHL, in his individual and official capacities,
DEBORA BUNCH, in her individual and official capacities,

    Defendants.

## ORDER

This matter is before the court on review of Plaintiffs' Motion for Attorney's Fees, filed August 9, 2019. (Doc. 180.) Ms. O'Neal's four claims under 28 U.S.C. § 1983 were tried to a jury from April 1–4 and 8–10, 2019, resulting in a verdict in her favor that was later amended as a result of this court's ruling on Defendants' post-trial motion. The court grants the Motion for Attorney Fees in part and denies it in part, as further explained below.

EXHIBIT 3

## I. Background

This case arises from the warrantless arrest of Plaintiff Carolyn O'Neal on December 16, 2013, on charges of disorderly conduct. Ms. O'Neal alleged in her complaint that she was dragged from her home naked, and transported to the Fremont County jail where she was placed in a restraint chair, still naked, and tased.

Ms. O'Neal's claims were tried to a jury from April 1–4 and 8–10, 2019. She presented four claims under 28 U.S.C. § 1983: false arrest, excessive force, First Amendment retaliation, and breach of privacy. The jury returned a verdict in favor of Ms. O'Neal on all claims (with the exception of First Amendment retaliation, on which the jury found in favor of Ms. O'Neal against only three of the nine individual Defendants). The jury awarded $2,190,004 in compensatory damages against Defendants, and an additional $805,000 in punitive damages.

Defendants filed a motion for judgment as a matter of law under Fed. R. Civ. P. 50(b), or to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) (Doc. 139), as a result of which this court reversed three aspects of the jury's verdict: the $1 compensatory verdict against Debora Lynn for excessive force; the $1,000,000 compensatory verdict against Fremont County for excessive force; and the $300,000 in punitive damages awarded against Defendants Johnston, Sanger, and Fetterhoff for false arrest. (Doc. 193.)

After Ms. O'Neal filed her original Motion for Attorney Fees in August 2019, she filed a Supplemental Motion for Attorney Fees (Doc. 196), in which she seeks an award of fees for time spent litigating the original Motion for Attorney Fees. Because the Supplemental Motion for Attorney Fees has not yet been fully briefed, this Order addresses only the original Motion for Attorney Fees, in which Ms. O'Neal seeks an award of $382,750.

## II. Analysis

Under 42 U.S.C. § 1988(b), in any action to enforce a provision of § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Defendants concede Ms. O'Neal was a "prevailing party" within the meaning of § 1988(b), so this court must address the issue of what fee is reasonable. In making that assessment, this court is mindful that "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

In evaluating the reasonableness of Ms. O'Neal's claimed fees, the court will examine: (1) degree of success, (2) the reasonableness of the claimed hourly rates, and (3) the reasonableness of hours expended. *See Stroup v. United Airlines*, No. 15-cv-01389, 2018 WL 10613861, at *2–6 (D. Colo. Dec. 5, 2018).

### A.  *Degree of Success*

The "most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotations omitted).  Ms. O'Neal obviously achieved remarkable success, but the court must assess whether the failure of proof on Ms. O'Neal's *Monell* claim against Fremont County requires a reduction of her fee claim.  *See Martinez v. Valdez*, 125 F. Supp. 3d 1190, 1215 (D. Colo. 2015) ("The purpose of reducing a fee claim to reflect partial success is to eliminate compensation for hours spent solely in the pursuit of substantive claims on which the Plaintiffs did not prevail . . . .").

The Supreme Court held in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), that "[w]here the plaintiff has failed to prevail on a claim *that is distinct in all respects* from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440 (emphasis added).  The court does not consider Ms. O'Neal's *Monell* claim "distinct in all respects" from her claims against the individual Defendants.  *See Duran v. Koehler*, No. 10-cv-01569, 2014 WL 4197578, at *2 (D. Colo. Aug. 25, 2014) (describing plaintiff's excessive force claim against individual officer and *Monell* claim against municipality as "two sides of the same coin").  As the Supreme Court in *Hensley* explained, where separate claims for relief "involve a common core of facts" or are "based on related legal theories[, m]uch of

4

counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." 461 U.S. at 435. Ms. O'Neal's *Monell* claim against Fremont County and the excessive force claim against the individual Defendants arose from the same common core of facts and are based on related legal theories. Accordingly, the court will not reduce Ms. O'Neal's fee award on this basis.

### B.     *Reasonableness of Hourly Rates*

Defendants argue the hourly rates of Ms. O'Neal's attorneys are not reasonable. In determining the reasonableness of hourly rates, "the court must look to 'what the evidence shows the market commands for civil rights or analogous litigation.'" *Burch v. La Petite Academy, Inc.*, 10 Fed. Appx. 753, 755 (10th Cir. 2001) (quoting *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1255 (10th Cir. 1998)). The local market rate is typically the state or city in which counsel practices. *Ellis v. University of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1999); *Case*, 157 F.3d at 1256. The court is also entitled to consider the quality of counsel's performance in setting the fee. *Ellis*, 163 F.3d at 1203 (citing *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983)).

Plaintiffs' counsel requests the following hourly rates: $650 per hour for David Lane and Darold Killmer; $600 per hour for Mari Newman; $375 for Liana Orshan and Andy McNulty; $350 for Reid Allison; $175 for paralegals Jamie Akard and Charlotte Scull; and $150 for paralegals Sydney Wolak and Sam Weiner.

In support of these hourly rates, Ms. O'Neal produced the opinions of two experts, Sean R. Gallagher and John R. Holland. Mr. Gallagher is a respected member of the defense bar in Denver who in past cases has provided his expert opinion on the issue of attorney fees. Mr. Gallagher is familiar with civil rights litigation in Denver, having represented defendants in two civil rights cases prosecuted by Killmer, Lane & Newman. He opines that the rates for the lawyers and staff of Killmer Lane & Newman "are clearly within the range of reasonable rates charged for attorneys and paralegals with similar skill, experience, and reputation in the Denver market." (Doc. 180-12, at 4.) Mr. Holland is a respected member of the plaintiff bar in Denver, and his primary area of practice is in civil rights litigation. He has co-counseled on civil rights cases with Killmer, Lane & Newman and is very familiar with the quality of its lawyers and staff. Mr. Holland also opines that the rates charged in this case by Killmer, Lane & Newman are clearly within the range of reasonable rates charged by such law firms in these types of cases.

Defendants produced no evidence, in the form of expert opinion or otherwise, to challenge the reasonableness of the hourly rates charged by Ms. O'Neal's attorneys in this case. They note that in a recent case, Judge Wiley T. Daniel determined that the rates charged by Killmer, Lane & Newman were "slightly excessive" given Judge Daniel's "careful consideration of *the parties' contradictory submissions* regarding rates for civil rights attorneys." *Stroup*, 2018 WL 10613861, at *8 (emphasis added). The

6

contradictory submissions in *Stroup* included competing experts who debated the reasonableness of the hourly rates sought. *Id.* at *6–7. In contrast to *Stroup*, in this case there are no competing experts. And the level of success achieved in this case far exceeded the verdict in the *Stroup* case, even taking into account the reduced verdict as the result of Defendants' post-trial motion. The court therefore finds that the rates charged by Ms. O'Neal's attorneys are within the range of reasonable rates charged by Denver civil rights attorneys of similar skill and experience.

### C. *Reasonableness of Hours Expended*

In determining the reasonableness of the hours expended, a court considers several factors, including: (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was allotted to specific tasks. *See Ramos*, 713 F.2d at 553-54.

The Tenth Circuit has noted that "[c]ounsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case*,

7

157 F.3d at 1250. "A district court is justified in reducing the reasonable number of hours if the attorney's time records are sloppy and imprecise and fail to document adequately how he or she utilized large blocks of time." *Id*. (internal citations and quotation marks omitted); *see also Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) ("a district court may discount requested attorney hours if the attorney fails to keep meticulous, contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks") (internal quotation marks omitted).

Once the court has adequate time records before it, "it must then ensure that the winning attorneys have exercised 'billing judgment.'" *Case*, 157 F.3d at 1250 (internal quotations omitted). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id*. "Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable." *Id*.; *see also Hensley*, 461 U.S. at 434 (expecting counsel to exercise "billing judgment" by "mak[ing] a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary"). In other words, the district court should exclude from this initial fee calculation hours that were not "reasonably expended." *Id.*

8

### *1. Imprecise or Vague Time Records*

Defendants complain of "block billing" and the imprecise and vague descriptions of work performed by Ms. O'Neal's counsel, particularly by Mr. Lane. Defendants note that Mr. Lane's billing records contain ten entries, totaling 74 hours, that describe his work either as "trial prep" or "trial and trial prep after court." (Doc. 180-2, at 7.) Although not as precise as they could be, the court finds these entries sufficient to convey the nature of the work performed. Counsel to this case have more than enough trial experience to readily understand the nature of evening trial preparation for a subsequent trial day.

Defendants also complain that in the last quarter of 2018, Mr. Lane included seven billing entries for preparing cross-examinations, without indicating which witness each entry relates to. The court considers these seven entries sufficient to convey the nature of the work. Mr. Lane handled ten cross-examinations during the course of the trial,[1] and the total amount of time Mr. Lane spent preparing those examinations was 21.4 hours—an average of 2.14 hours per witness, which the court considers commendably efficient. Finally, Defendants contend that the time records for Mr. Allison are too imprecise to assess their reasonableness. The court has reviewed the specific entries of which Defendants complain and finds them to be sufficiently detailed. Accordingly, the court will not reduce the fee award based on Defendants' assertions of imprecise or vague billing entries.

---

[1] Since Mr. Lane chose to put on the testimony of the Defendant's witnesses during Ms. O'Neal's case-in-chief, they were technically not cross-examinations

### *2.   Excessive/Duplicative Billing*

Defendants also contend some of the time claimed by Ms. O'Neal's attorneys was either excessive, unnecessary, or duplicative. Defendants point out that Mr. Lane's billing records reflect fees that should not be awarded. For instance, one billing entry is for 5.5 hours relating to "Deposition of Carolyn O'Neal." But Mr. Lane did not attend Ms. O'Neal's deposition. Instead, it was handled by Eudoxie Dickey, one of Mr. Lane's associates. Similarly, Mr. Lane listed 2.4 hours on May 12, 2017, for the deposition of Lois Largent (Doc. 180-2, at 4), yet that deposition was also handled by Ms. Dickey. (Doc. 184-3, at 2.) The court therefore concludes Ms. O'Neal's fee award should be reduced by 7.9 hours.

Defendants also note that in October 2017, Mr. Lane spent 1.3 hours "prepar[ing] conventionally submitted materials for sum[mary] judgment." (Doc. 180-2, at 5.) There is no explanation for why lead counsel for Ms. O'Neal spent time preparing summary judgment exhibits. Moreover, the following day a paralegal, Charlotte Scull, spent 1.2 hours preparing what appear to be the same summary judgment materials. (Doc. 180-9, at 3.) The court finds Mr. Lane's time preparing summary judgment exhibits duplicative and unnecessary, and will further reduce the fee award by 1.3 hours.

Defendants further observe that Mr. Lane billed 2.1 hours for preparing two unopposed motions. Mr. Lane prepared a two-page unopposed motion for extension of time in which to respond to Defendants' summary judgment motion, for which he billed 1 hour, and he also

10

prepared another two-page unopposed motion to withdraw Ms. O'Neal's ADA claim, for which he billed another 1.1 hours. The court agrees these two billing entries are excessive and finds .3 hours for each motion to be a reasonable amount of time. Accordingly, the court will reduce Ms. O'Neal's fee award by another 1.5 hours of time Mr. Lane spent preparing these short, unopposed motions.

Defendants also complain that Ms. O'Neal's attorneys are attempting to collect fees for clerical tasks relating to filing or downloading of pleadings from CF/ECF. *See Castro v. First Nat'l Collection Bureau*, No. 11-cv-02298, 2012 WL 4468318, at *2 n.4 (D. Colo. Sept. 27, 2012) (routine clerical tasks are more properly considered part of overhead, and not billable). The court has reviewed the paralegals' billing records, and agrees that a reduction is necessary to account for clerical tasks. The paralegals' time entries amount to $30,337.50. The court finds it appropriate to reduce the fees for paralegal time by 25 percent. Accordingly, the court will further reduce Ms. O'Neal's fee award by $7,584.38.

Finally, Defendants argue the fee award should be reduced because Ms. O'Neal seeks to recover fees for intra-firm conferences or communications, which Defendants claim are rarely billable to a client. The court rejects this argument. To the extent such intra-firm communications resulted from some level of inefficiency occasioned by training of less experienced attorneys, Mr. Lane omitted from the fee request any hours associated with the work of Eudoxia Dickey and Eleanor Wedum, both of whom were learning from Mr. Lane how to

litigate a civil rights case.[2] Mr. Lane also avers that Ms. O'Neal's fee request "does not request fees for at least 40 hours of such conferences." (Doc. 180-1, at 6.) In addition, careful trial preparation "often requires collaboration and rehearsal," *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998), and several courts have found billing for intra-firm conferences reasonable. *See Berberena v. Coler*, 753 F.2d 629, 633 (7th Cir. 1985) (upholding fee award that included attorney time spent in meetings); *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1337 (D.C. Cir. 1982) ("[A]ttorneys must spend at least some of their time conferring with colleagues, particularly their subordinates, to ensure that a case is managed in an effective as well as efficient manner."); *Myers v. Aitkin County*, No. 14-473, 2017 WL 1134575, at *3 (D. Minn. Mar. 27, 2017) (finding reasonable attorney's fees for periodic legal team meetings, conferences, and strategy sessions); *Hargroves v. City of New York*, No. 03-CV-1668, 2014 WL 1270585, at *18 (E.D.N.Y. Jan. 6, 2014) (rejecting argument that time spent on conferences between counsel is per se excessive).

In short, the court finds that some of the fees requested by Ms. O'Neal are unnecessary, duplicative, or excessive. The court will therefore reduce Ms. O'Neal's fee award by $14,539.38, which includes 10.7 hours of Mr. Lane's time and 25 percent of paralegal time.

---

[2] Mr. Lane's affidavit does not quantify the amount of time Ms. Dickey and Ms. Wedum spent on the case, except to say that they did "dozens of hours of work," (Doc. 180-1, at 6)—which the court will presume means 24 hours.

## III.  Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Attorney Fees (Doc. 180).  The Motion is GRANTED to the extent that Ms. O'Neal is awarded attorney fees in the amount of $368,210.62, as set forth in this order.

DATED: June 10, 2020            BY THE COURT:

<ins>s/Timothy M. Tymkovich</ins>
Hon. Timothy M. Tymkovich