IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 1:20-cv-01878-RBJ

ELISABETH EPPS,
ASHLEE WEDGEWORTH,
AMANDA BLASINGAME,
MAYA ROTHLEIN,
ZACH PACKARD,
HOLLIS LYMAN,
CIDNEY FISK,
STANFORD SMITH,
SARA FITOURI,
JACQUELYN PARKINS,
KELSEY TAYLOR,
YOUSSEF AMGHAR,
JOE DERAS,
JOHNATHEN DURAN,
MICHAEL ACKER and
CLAIRE SANNIER,

      Plaintiffs,

v.

CITY AND COUNTY OF DENVER,
DANIEL FELKINS,
DAVID ABEYTA,
CITY OF AURORA,
CORY BUDAJ,
BOARD OF COUNTY COMMISIONERS FOR JEFFERSON COUNTY, COLORADO,
JONATHAN CHRISTIAN,
KEITH VALENTINE,
DAVID MCNAMEE,
PATRICIO SERRANT,
MATTHEW BRUKBACHER,
ANTHONY TAK,
J. LNU,
PAUL PAZEN,
JOHN AND JANE DOES 1-100, and
JOHN AND JANE BOES 1-50,

      Defendants.

ORDER ON THE AURORA DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the Aurora defendants' motion for summary judgment (ECF No. 259). For the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

The parties dispute many facts, but in this section, I will note the facts on which they agree. This case arises from the protests that occurred in Denver between May 28 and June 2, 2020 following the murder of George Floyd. The protests were large, and Mayor Hancock announced a state of emergency and imposed a curfew on May 30, 2020. Denver requested help from police departments in other cities ("mutual aid departments"). The Aurora Police Department ("APD") was one of the mutual aid departments brought in to assist Denver with crowd control and civil unrest on May 30 and 31, 2020. Specifically, APD's Emergency Response Team ("ERT") was brought in to help.

On May 31, 2020 plaintiff Zachary Packard was protesting near Washington and Colfax around 9:00 p.m. ECF No. 383-10 at 261–62. An unknown officer threw a tear gas canister near Mr. Packard. Mr. Packard kicked that canister away from himself and other protesters, in the direction of a line of officers. *Id*. at 265. Mr. Packard was immediately hit with a beanbag round fired from a shotgun. [1] The round knocked him unconscious and caused significant injuries. *Id*.[2]

---

[1] A beanbag round is a sack containing lead shot.

[2] In an earlier trial Mr. Packard sought compensation for his damages against the City and County of Denver on the theory that that Denver is liable for the actions of the APD as a mutual aid department. The jury awarded $3 million. This Court has since entered judgment for those damages. The $3 million compensatory award would appear to be a cap on Mr. Packard's claim for damages against the individual Aurora officers.

Just before Mr. Packard was shot, APD Sergeant Serrant instructed officers on that line, "[i]f they start kicking that shit, go ahead and frickin' hit 'em."  ECF No. 383-15 at 21:12:26– 21:12:30.  Officer McNamee was in the line of officers near Mr. Packard.  ECF No. 383-17 at 21:09:00–21:13:00.  He fired several beanbag rounds around the time that Mr. Packard was shot. *Id*.  The parties dispute whether Officer McNamee is the officer that shot Mr. Packard.  Sergeant Brukbacher was also on the line with Officer McNamee and Sergeant Serrant.  Shortly after Mr. Packard was shot, Sergeant Brukbacher instructed officers in that line that if protesters "touch any of our gas, they get hit."  ECF No. 383-19 at 21:19:29–21:19:34.

On May 31, 2020 Officer Budaj responded in Denver with the ERT.  Around 9:30 p.m., Officer Budaj was at the intersection of Colfax and Pearl and was assisting other APD officers in moving protesters west on Colfax.  Ex. 27 at 21:34:23–21:34:36.  Officer Budaj was armed with less lethal weaponry.  *Id*.  During his May 31 deployment, Officer Budaj fired about fifteen foam baton rounds.  ECF No. 259 at 3.  Around 9:34 p.m., plaintiff Johnathen Duran was struck in the groin by a foam round.  Ex. 21 at 21:08–21:25.  The parties dispute whether Officer Budaj is the officer that shot Mr. Duran.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute of material fact and the movant is entitled to judgement as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if there is "sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  An issue of fact is material if it is essential to the proper disposition of the claim.  *Id.* (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

The movant bears the burden of showing a lack of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  However, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.  "Conclusory statements or those based on speculation, conjecture, or surmise provide no probative value on summary judgment; nor may the nonmovant rely on 'mere reargument of his case or a denial of an opponent's allegation.'"  *Stuart v. Erickson Living Mgmt.*, No. 18-CV-01083-PAB-NYW, 2019 WL 7289016 at *2 (D. Colo. July 29, 2019) (quoting 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998)).

### III.   INDIVIDUAL DEFENDANTS

#### A.  <u>Personal Participation of the Named Individual Defendants</u>

To succeed on a § 1983 claim, a plaintiff must show that each government official defendant, through the official's own individual actions, has violated the Constitution.  *See Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010).  The individual defendants argue that they are entitled to summary judgment because plaintiffs have not presented evidence that they were personally involved in the incidents complained of.  Plaintiffs respond with evidence indicating that each individual defendant was involved in the incidents.

#### 1.   <u>Officer McNamee</u>

There is a genuine dispute of material fact concerning whether Officer McNamee was the officer that injured Mr. Packard.  There is evidence that Officer McNamee was standing in the line of officers opposite Mr. Packard when he was shot.  ECF No. 383-17 at 21:09:00–21:13:00.  There is evidence that Officer McNamee fired three beanbag rounds two to three seconds after a

siren stopped. *Id*. at 21:12:00–13. There is evidence that Mr. Packard was hit with a beanbag round between two and three seconds after what appears to be the same siren stopped. ECF No. 383-13. Plaintiffs point to additional evidence that Officer McNamee was the officer that shot Mr. Packard, but more is not needed to survive a motion for summary judgment. Plaintiffs have raised a genuine dispute of material fact that Officer McNamee was personally involved in the alleged violation of Mr. Packard's rights.

      2.    <u>Sergeant Serrant</u>

     Plaintiffs have raised a genuine dispute of material fact on whether Sergeant Serrant was personally involved in the alleged violation of Mr. Packard's rights. On Officer McNamee's body-worn camera (BWC), Sergeant Serrant can be heard to say, "[i]f they start kicking that shit, go ahead and frickin' hit 'em." ECF No. 383-15 at 21:12:26–21:12:30. Sergeant Serrant, as a sergeant, gave orders that inferior officers were supposed to obey. His order that officers shoot at protesters who kicked gas canisters is sufficient evidence to survive summary judgment on this issue.

      3.    <u>Sergeant Brukbacher</u>

     There is not a genuine dispute of material fact remaining on whether Sergeant Brukbacher was involved in the shooting of Mr. Packard for purposes of § 1983 liability. Plaintiffs point to evidence that Sergeant Brukbacher told officers the day before Mr. Packard was shot (May 30, 2020) that officers should deploy less-lethal munitions against protesters who were touching gas canisters, and that he repeated that order in the minutes following the shooting of Mr. Packard. *See* ECF Nos. 383-18 at 3, 383-19 at 21:19:29–21:19:34. However, plaintiffs do not identify any evidence that shows that Sergeant Brukbacher's May 30 instruction caused Officer McNamee or any other officer to shoot Mr. Packard, especially because Sergeant

Serrant's instruction on the subject occurred directly before Mr. Packard was shot. They do not provide evidence that any officer on the scene when Mr. Packard was shot was present when Sergeant Brukbacher gave the May 30 instruction. Nor do plaintiffs identify evidence that Sergeant Brukbacher's instructions *after* Mr. Packard was shot to shoot protesters who were touching gas canisters caused Mr. Packard's rights to be violated.

4.   Officer Budaj

 Plaintiffs have raised a genuine dispute of material fact on the issue of whether Officer Budaj was involved in the alleged violation of Mr. Duran's rights. There is evidence that Mr. Duran was hit in the groin thirteen seconds after the light at Colfax and Pearl turned green. ECF No. 383-21 at 21:08–21:25 min. There is evidence that the officer on the left side of the Aurora truck exiting the alley near Colfax and Pearl was the officer that shot Mr. Duran because that officer had his weapon raised at the time of the shooting and appears to shoot. *See* ECF No. 383-27 at 21:34:36. There is also evidence that the officer on the left side of that truck was Officer Budaj—part of the word police was covered on his back, and he had gray tape (which Officer Budaj had) on his helmet. *See id.*; ECF Nos. 383-30 at 21:40:51–21:48:19, 383-22 at 59, 99–101, 383-27 at 21:34:36. This is sufficient evidence to raise a genuine dispute of material fact that Officer Budaj was the officer who hit Mr. Duran at Colfax and Pearl.

**B.  Plaintiffs' First Amendment Claims**

"It has long been clearly established that the First Amendment bars retaliation for protected speech and association." *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 848 (10th Cir. 2005). A First Amendment retaliation claim requires a Plaintiff to show: (1) that he was engaged in constitutionally protected activity; (2) that defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that

activity; and (3) that the adverse action taken by defendant was substantially motivated as a response to the exercise of the constitutionally protected conduct. *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1148 (10th Cir. 2020).

1. Mr. Packard's First Amendment Claims

Defendants argue that they are entitled to summary judgment on Mr. Packard's First Amendment claims because he cannot prove the first and third elements of a First Amendment retaliation claim. *See* ECF No. 259 at 8. I agree.

On the first element, they argue that it is not established that kicking a gas canister during a protest is protected First Amendment activity. *Id.* On the third element, they argue that there is not a genuine dispute of material fact that the actions taken by Officer McNamee or Sergeant Serrant were motivated by his exercise of his First Amendment rights. Mr. Packard responds that he was engaged in clearly protected First Amendment activity: protest. ECF No. 383 at 9. On the third element, he responds that motive is a fact question and that the jury could conclude that the defendants were substantially motivated by Mr. Packard's exercise of his constitutionally protected First Amendment rights.

While I concur with Mr. Packard that protesting is clearly protected First Amendment activity, not all forms of protest are protected. For instance, if a person chose to protest the actions of the police by attempting to assassinate the Chief of Police, that would not be a protected form of protest. Whether Mr. Packard's kicking the gas canister was part of his protected speech or a separate, unprotected action, is the crux of the issue.

There is a question as to whether the kicking of the canister was speech—whether the action was "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Spence v. State of Wash.*, 418 U.S. 405, 409 (1974). In

deciding whether particular conduct possesses sufficient communicative elements to warrant First Amendment protections, courts have asked whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Id.* at 410–11.

I find that Mr. Packard's kicking of the gas canister was not speech and not protected by the First Amendment.  Mr. Packard testified at trial that his intent was not to convey a particularized message but rather to get the canister away from his fellow protesters.  ECF No. 387 at 195, 224.  Mr. Packard did not intend, with that kick, to convey a particularized message—he intended to get the harmful gas away from himself and others.[3]

I also fine that here is no genuine dispute of material fact on the third element—whoever shot Mr. Packard did so because he kicked the canister, not because he was protesting. Immediately before Mr. Packard was hit, Sergeant Serrant can be heard telling officers to shoot at people who are kicking canisters, not at people who are speaking or protesting.  ECF No. 383-15 at 21:12:26–21:12:30.  Plaintiffs do not present any evidence that it was the protesting rather than the kicking that caused Mr. Packard to be shot.

> 2.    Mr. Duran's First Amendment Claims

Defendants argue that they are entitled to summary judgment on Mr. Duran's First Amendment claims because he cannot prove the first and third elements of a First Amendment retaliation claim.  *See* ECF No. 259 at 8.  On the first element, they argue it is not established that recording the police is protected First Amendment activity.  *Id.*  On the third element, they

---

[3] The jury in the Denver trial found that Denver was liable for violating Mr. Packard's First Amendment rights.  However, Mr. Packard was engaged in protesting and was subject to gas and pepper ball shootings at various other points.  The Court concludes that the specific act of kicking the can, which is the action triggering claims against the individual defendants, was not speech and was not protected by the First Amendment.

argue that there is not a genuine dispute of material fact that the actions taken by Officer Budaj was motivated to shoot by Mr. Duran's First Amendment conduct.  Mr. Duran responds that he was engaged in clearly protected First Amendment activity, and that there remains a genuine dispute of material fact on whether Officer Budaj was motivated by Mr. Duran's exercise of his First Amendment rights.

On the first element, defendants argue that "it is entirely unclear whether there is even a [First] Amendment right to record police activity in the [Tenth] Circuit."  ECF No. 259 at 8 (citing *Frasier v. Evans*, 992 F.3d 1003, 1019-23 & n.4 (10th Cir. 2021) (where the Tenth Circuit declined to decide whether such a right exists and analyzing and distinguishing out-of-circuit authority holding that such a right exists)).  However, Mr. Duran was doing more than just recording police actions—he was a credentialed reporter, reporting on an important, historic protest in Denver.  *See* ECF No. 91-6 at ¶¶1–3.  The Tenth Circuit has held that "'the First Amendment provides at least some degree of protection for gathering news and information, particularly news and information about the affairs of government.'"  *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1197 (10th Cir. 2017) (quoting *Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 597 (7th Cir. 2012)).

On the third element, however, defendants argue there is no evidence that Officer Budaj was motivated to shoot because of Mr. Duran's First Amendment activity.  They argue "there is no evidence that Officer Budaj saw, or could see, a hardhat with the word 'media,' at night, through smoke, more than a city block away, while Duran was moving and positioned behind protesters engaged in unlawful activity."  ECF No. 403 at 9–10.

There is no direct evidence that Officer Budaj saw the writing on Mr. Duran's hardhat or that he was motivated by it to shoot him.  Nor do I find that there is circumstantial evidence

sufficient to support that conclusion.  Officer Budaj said that he could have accurately targeted Mr. Duran from where he was positioned.  ECF No. 383-22 at 82.  The words on Mr. Duran's helmet appear to be more than four inches tall.  ECF No. 91-6 at 6.  Mr. Duran appeared to be roughly two hundred feet from the Aurora truck when he was struck, but the intersection was well lit.  ECF No. 383-21 at 21:08–21:25.  A reasonable juror could infer that Officer Budaj could perceive that Mr. Duran was a member of the media.  *See* ECF No. 27 at 21:34:36. However, I do not find that a reasonable juror could infer that Officer Budaj shot him because of that knowledge.  Without more, that is sheer speculation.  Summary judgment is warranted on Mr. Duran's First Amendment claim.

### C.  Plaintiffs' Failure to Intervene Claim

Defendants argue that summary judgment is warranted on plaintiffs' claim for failure to intervene because plaintiffs have not identified any individual defendants who failed to intervene.  ECF No. 259 at 9.  "To establish a constitutional violation under a 'failure to intervene' theory, [a plaintiff] must show: (i) the defendant officer was present at the scene; (ii) the defendant officer witnessed another officer applying force; (iii) the application of force was such that any reasonable officer would recognize that the force being used was excessive under the circumstances; and (iv) the defendant officer had a reasonable opportunity to intercede to prevent the further application of excessive force, but failed to do so."  *Erickson v. City of Lakewood, Colorado*, 489 F. Supp. 3d 1192, 1200 (D. Colo. 2020) (quoting *Martinez v. City & Cnty. of Denver*, No. 11-cv-00102-MSK-KLM, 2013 WL 5366980, at *5 (D. Colo. Sept. 25, 2013).

Here, Plaintiffs have failed to identify which individual Aurora officers they believe are liable for failure to intervene.  *See* ECF No. 153 at 81–82.  They have likewise failed to identify

any of the other elements required to establish a claim for failure to intervene.  *Id*.  They did not

respond to defendants' motion for summary judgment on Count IV.  *See* ECF No. 383.

Defendants are entitled to summary judgment on the claim for failure to intervene.

### D.  **Plaintiffs' Excessive Force and Supervisory Liability Claims**

#### 1.    Fourteenth Amendment Issue

The individual defendants argue that plaintiffs' Fourteenth Amendment claims must be

dismissed because the Fourth Amendment is the basis for plaintiffs' claims.  ECF No. 259 at 10.

This issue came up before the Denver trial.  The solution in that instance was that Denver

admitted that the uses of force could constitute seizures and, as a result, plaintiffs agreed to

dismiss their Fourteenth Amendment claims.  I do not know if a similar meeting of the minds can

be attained for the Aurora trial.

However, as to defendants' claim that plaintiffs *cannot* recover under the Fourteenth

Amendment for the conduct of Aurora officers, I disagree.  Plaintiffs can raise a substantive due

process claim for the complained of conduct, as long as that conduct "shocks the conscience."

*Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006).  It is a difficult standard to prove

because "a plaintiff must do more than show that the government actor intentionally or recklessly

caused injury to the plaintiff by abusing or misusing government power."  *Uhlrig v. Harder*, 64

F.3d 567, 574 (10th Cir.1995)).  While plaintiffs' Fourth Amendment claims are substantially

stronger than their substantive due process claims, I cannot say that they are not entitled to bring

them.  Defendants are not entitled to summary judgment on the substantive due process claims.

#### 2.    Fourth Amendment Excessive Force Claim

Defendants argue that the Fourth Amendment excessive force claims must be dismissed

because there is no evidence that either Officer McNamee or Officer Budaj intentionally used

force against plaintiffs Packard and Duran in an excessive manner.  *Id*. at 10–11.  Plaintiffs

respond that there is evidence that the actions of Officer McNamee and Budaj were intentional and that legally, defendants misunderstand what "intentionally" means in these claims.  ECF No. 383 at 11.

Before getting into any factual dispute on whether Officer McNamee or Officer Budaj unintentionally hit Mr. Packard or Mr. Duran, I agree with plaintiffs' legal understanding of the intentionality requirement.  The "intentional application of physical force means that the force is purposefully applied," which "contrasts with an accidental or negligent, use of force.  *See Torres v. Madrid*, 141 S. Ct. 989, 991 (2021).  Denver does not contend that either officer shot by accident, only that plaintiffs cannot prove that the officers hit Messer's. Packard and Duran intentionally.

In any case, there is sufficient evidence to raise a genuine dispute of material fact on the question of whether Officer McNamee and Officer Budaj intended to use force against the plaintiffs.  Though defendants insist that there is no proof of such an intent for either officer, the fact is that there is evidence (that I have outlined in the sections above) that these officers fired munitions in the direction of Messrs. Packard and Duran and evidence that Messrs. Packard and Duran were hit with these munitions.  A reasonable juror could (but certainly does not have to) infer from these facts that Officer McNamee shot Mr. Packard intentionally, and Officer Budaj shot Mr. Duran intentionally.  Defendants are not entitled to summary judgment on the excessive force claims.

3.    Supervisory Liability

Defendants argue that they are entitled to summary judgment on the issue of supervisory liability because "there is no evidence to support the notion that either of them directed the use of *unconstitutional* force, either generally or specifically, toward any Plaintiff."  ECF No. 259 at 11

(emphasis in original).  Plaintiffs respond that "[b]oth sergeants instructed officers to use potentially lethal force without regard for the factors relevant to whether an officer's use of force is justified."  ECF No. 383 at 11–12.  As I granted summary judgment in favor of Sergeant Brukbacher above, I consider this claim only as to Sergeant Serrant.

A supervisor may be liable for the unconstitutional acts of his subordinates if he "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights."  *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir.1990).  Here, there is evidence that Sergeant Serrant instructed officers, including Officer McNamee, "[i]f they start kicking that shit, go ahead and frickin' hit 'em."  ECF No. 383-15 at 21:12:26–21:12:30.  He instructed officers to use substantial force against protesters without regard to whether those protesters were committing a severe crime, posed an immediate threat to officers or others, or were actively evading arrest, the factors that officers must consider in determining whether force is warranted.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989).  Sergeant Serrant knew or should have known that instructing his officers to fire without regard to the *Graham* factors, and instead based only on whether a protester kicked a gas canister, would violate protesters' right to be free from excessive force.  Not every kick of a gas canister will pose an immediate threat to officers or others, be a severe crime, or evince the resisting of arrest.  Summary judgment against Sergeant Serrant is not appropriate.

### E.  Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity will apply unless the plaintiff shows

that (1) defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time it was allegedly violated.  *Id.* at 232.

The law is clearly established that an officer cannot shoot a protester with pepper balls or other less-lethal munitions when that protester is committing no crime more serious than a misdemeanor, not threatening anyone, and not attempting to flee.  *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1291 (10th Cir. 2008).  In *Fogarty v. Gallegos*, 523 F.3d 1147, 1159–62 (10th Cir. 2008), the Tenth Circuit expanded on this proposition.  It held that an officer is not entitled to qualified immunity for "shooting [a protester] with a pepper ball or some other type of projectile" when he did not "pose[] an immediate threat to the safety of the officers or others," the protester had committed only "a petty misdemeanor," and the "police may have contributed to the need to use force."  *Id*.

4.     Qualified Immunity for the Force Used Against Mr. Packard

I agree with plaintiffs that the individual defendants are not entitled to qualified immunity for the force used against Mr. Packard.  No reasonable officer could have concluded that Mr. Packard posed an immediate threat to the safety of officers.  The evidence shows that Mr. Packard, just before he was shot, kicked a gas canister between five and ten feet away from the protesters and roughly in the direction of the officers.  ECF No. 383-10 at 15.  However, that action did not pose an immediate threat—officers were equipped with gas masks that protected them from any gas from that canister.  *See* ECF No. 383-13.

There is another reason that a reasonable officer would not have regarded Mr. Packard's kicking of the gas canister as an imminent threat.  Mr. Packard's kicking the gas canister between five and ten feet is not analogous to protesters who were throwing rocks, bottles, or other objects at officers.  A thrown object might reasonably be considered a threat by an officer.

However, a kicked object is, as a matter of common sense and physics, much less likely to be a threat to officers. A kicked item will be significantly slowed by friction as it moves along the ground—a thrown item maintains speed better, which accounts for officers' perceiving thrown rocks or bottles as a threat.

I can understand why officers did not like protesters kicking gas canisters away from the protesters. Officers were attempting to use gas to manage the crowds, and that gas might be less effective if kicked away from the crowds. However, there is no evidence that the kicking of gas canisters generally, or the specific instance of Mr. Packard's kicking a gas cannister, posed an imminent threat to officers or anyone else. Just because officers did not like the kicking of cannisters does not mean that it was an imminent threat. The individual defendants are not entitled to qualified immunity as to Mr. Packard.

     5.     <u>Qualified Immunity for the Force Used Against Mr. Duran</u>

The evidence submitted shows that when Mr. Duran was shot with a 40mm round, he was in a crowd of protesters, but that he did not pose a threat to the safety of anyone, police or otherwise. When he was shot, he was apparently standing near the intersection of Colfax and Pearl Street, speaking with an acquaintance, and filming the protest. ECF No. 91-6 at 7. Any officer should have known that shooting a less-lethal weapon at him in those circumstances was not a reasonable use of force—it is well established that such a use of force is violative of a protester's constitutional rights. *See Fogarty*, 523 F.3d at 1159–62. Officer Budaj is not entitled to qualified immunity for the use of force against Mr. Duran.

## IV.    CITY OF AURORA

Aurora argues that it is entitled to summary judgment for two reasons. The first, is that no individual officers are liable for any constitutional violations, so it cannot be as a

municipality.  ECF No. 259 at 13.  As I have determined that some claims against individual officers may proceed to trial, that argument cannot succeed.  The second is that plaintiffs have failed to raise a genuine dispute of material fact on the question of whether a policy or custom of Aurora caused plaintiffs' injuries.  *Id.*  Plaintiffs respond that the Colorado Attorney General's office found that Aurora has a practice of using excessive force, that even if there is no policy or practice of using excessive force, Aurora ratified the excessive force used by its officers during the George Floyd protests, and that the policy or ratification is so closely related to the violations that injured plaintiffs that a jury could find that the policy or ratification caused the violations.

"Municipal entities can be held liable for constitutional violations that are committed by their employees if a plaintiff can demonstrate that such deprivations were caused by a municipal custom or policy and that the custom or policy was adopted or maintained by the municipality with a sufficiently culpable state of mind (i.e., with reckless disregard of the potential that it might cause a constitutional deprivation)."  *Moses-El v. City & Cnty. of Denver*, 376 F. Supp. 3d 1160, 1176 (D. Colo. 2019) (citing *Harte v. Board of Commissioners*, 864 F.3d 1154, 1195 (10th Cir. 2017)).  A policy or custom can be established in numerous ways, including by informal custom that amounts to a widespread practice, decisions of final policymakers, ratification, or a failure to adequately train employees with deliberate indifference to the attendant effects.  *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1239–40 (10th Cir. 2020).

### A.  Ratification

I agree with Aurora that plaintiffs have not presented sufficient evidence to raise a genuine dispute of material fact on their *Monell* claims on a theory of ratification.  On the ratification issue, plaintiffs do not respond to Aurora's argument that summary judgment is warranted because they cannot show that Aurora ratified the allegedly unconstitutional actions of

Aurora officers.  As they have not presented evidence of ratification, they cannot proceed on a ratification theory.

### B.  Policy, Practice, or Custom and Failure to Train

However, on the theories of policy, custom, or practice and failure to train, plaintiffs have raised a genuine dispute of material fact.

### 1.    Policy, Practice, or Custom

Plaintiffs point to policies on use-of-force, use of less lethal weapons, use of body worn camera ("BWC"), and use-of-force reports as causing their injuries.  The directive on less lethal weapons states that "[u]se of less lethal weapons is justified in those proper and lawful situations requiring a degree of force greater than that provided with weaponless control techniques."  ECF No. 383-8 at 1.  It states, "justification for the use of less lethal force must be in compliance with Colorado Revised Statutes as well as appropriate components within directives."  *Id*. at 2. Specifically, as to impact munitions, the directive advises, "when using less lethal impact weapons, members should avoid targeting the head, neck, throat, heart, kidneys, spine, groin, and knee joint."  *Id*. at 3.

Plaintiffs' expert, Norman Stamper, asserts that this policy sanctioned the uses of less lethal force against Messrs. Packard and Duran.  ECF No. 383-5 at 2–3.  The Colorado Attorney General's report on the APD and the report commissioned by the APD from 21CP Solutions indicate that Aurora's use-of-force and less lethal force policies are too vague to allow officers to understand when force can legally be used and that the result is many instances of excessive force from APD officers.  *See* ECF Nos. 383-40 at 68, 383-41 at 34.  Mr. Stamper attests that requiring officers to complete accurate and timely use of force reports is important for officer accountability.  ECF No. 383-5 at 9.  There is evidence that APD policy did not require use of

force reports, because an APD Lieutenant sent an email on July 2, 2020 instructing officers to write a report for past uses of force during their mutual aid to Denver.  *Id.*  There is also evidence that it was policy not to require activation of BWCs during uses of force—the APD training on BWC focused entirely on how to use BWCs, not when they must be used.  *See* ECF No. 383-37 at 5–6.

A reasonable juror could conclude that these policies, collectively, caused the injuries to plaintiffs.  The vagueness in the policy regarding the use of less lethal force could lead to confusion on when such force is warranted.  Without consulting unspecified Colorado Statutes and Constitutional law, an officer would not know, from the text of that policy, when such force is warranted.  Further, the effect of this vagueness would be compounded by the BWC and use-of-force report policies—reasonable jurors could conclude that officers would know that even if they used force that was outside the vague less lethal force parameters, it would be unlikely that they would suffer any consequences from it.  This can be seen in the disputes in this case concerning which officers shot Mr. Packard and Mr. Duran.  Had every officer on-scene had his or her BWC activated and written a timely use-of-force report, it presumably would be easier to identify the individual officers involved.

2.    Failure to Train

Summary judgment is also not appropriate on plaintiffs' failure to train theory.  The standard for proving a *Monell* failure to train theory is slightly different than for policy, custom, or practice or ratification.  "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  "The deliberate indifference standard may be satisfied when the municipality has actual

or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).  It can also, in some limited circumstances, be satisfied "absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." *Id*. at 308 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 398 (1997)).

Here, plaintiffs have alleged that Aurora's training on crowd management, use of less lethal weapons, and use-of-force generally is inadequate.  Though they have presented evidence to support each of those failures, I will outline only the evidence on the failure to train on use-of-force, as that alone would be sufficient to preclude summary judgment.  The Colorado Attorney General's report lays out the instances where APD officers, have, in past, used excessive force. *See* ECF No. 383-40 at 77–86.  Though that report was written after the George Floyd protests, a reasonable juror could find that Aurora was already on notice that its training on use-of-force was deficient.  The report references specific instances of excessive force in December 2018, March 2019, August 2019, and March 2020, and noted that Aurora reported paying over $7 million in settlements for claims of excessive force and constitutional violations by APD between 2008 and 2018.  *Id*. at 13–14, 20.  This evidence is sufficient for a reasonable juror to conclude that Aurora had actual and constructive notice that its failure to train on use-of-force was likely to result in constitutional violations.  Summary judgment is inappropriate.

3.    Aurora's Potential Liability in Light of Denver's Established Liability

The Court raised concerns about Aurora's liability after Denver was determined liable at trial for First and Fourth Amendment violations committed by Aurora officers.  In its reply, Aurora shared that concern, arguing that Denver was the proper *Monell* defendant because plaintiffs asserted throughout the Denver trial that *Denver's* policies, practices, and customs caused plaintiffs' injuries.  Plaintiffs respond that "multiple tortfeasors who concurrently cause an indivisible injury are jointly and severally liable; each can be held liable for the entire injury." ECF No. 412 at 2 (quoting *Northington v. Marin*, 102 F.3d 1564, 1569 (10th Cir. 1996)).  As § 1983 claims sound in tort, they argue, there is no reason that Aurora and Denver cannot be jointly liable for their injuries.

I agree with plaintiffs.  This is a situation where both Denver and Aurora could have caused plaintiffs injury.  In the Denver case, plaintiffs who were injured by Aurora officers challenged Denver's policy or practice of permitting mutual aid officers to follow the use-of-force policies from their own jurisdictions and use weapons permitted in their own jurisdictions. Here, plaintiffs are asserting that various Aurora policies caused their injuries.  The argument is that but for Denver's policy of permitting the use of Aurora's policies, plaintiffs would not have been injured.  However, but for Aurora's deficient policies, plaintiffs also would not have been injured.  This is plausible, and the law supports such a stacking theory, as plaintiffs outlined in their surreply.  *See Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 873 (N.D. Ohio 2011) (denying summary judgment to a city and county, holding that each could be liable on a *Monell* claim for ratification); *Johnson v. Bd. of Police Comm'rs*, 370 F. Supp. 2d 892, 901–02 (E.D. Mo. 2005) (writing that "the fact that the Defendants are separate legal entities does not prevent them from acting in concert to deprive constitutional rights pursuant to a joint policy or

custom").  Summary judgment is not warranted on this ground.  However, this does raise issues as to Mr. Packard's award.  *See supra* at 2, n.2.  n. 1.

**ORDER**

1.  Defendants' motion for summary judgment (ECF No. 259) is GRANTED for all claims against Sergeant Brukbacher, Mr. Packard's First Amendment claims, Mr. Duran's First Amendment claims, and plaintiffs' failure to intervene claims.

2.  The motion is DENIED for all remaining claims.

DATED this 23rd day of September, 2022.

BY THE COURT:

_____

R. Brooke Jackson
Senior United States District Judge