IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| Elisabeth Epps, *et al.*,<br><br>　　v.<br><br>City and County of Denver, *et al*. | Civ. No. 1:20-cv-1878-RBJ (consol.) |

**FITOURI PLAINTIFFS' BRIEF REGARDING MINUTE ORDER
CONCERNING PENDING MOTIONS FOR ATTORNEYS' FEES [Dkt. 441]**

Fitouri Plaintiffs, through their attorneys, Loevy & Loevy, hereby respectfully submit this brief to address the Court's minute order concerning pending motions for attorneys' fees (Dkt. 441), as follows:

**Certificate of Conferral**

On November 29, 2022, counsel for the Fitouri Plaintiffs spoke with counsel for Defendants, Andrew Ringel, regarding Plaintiffs' intention to file this brief. Defendants agree that the engagement/retainer agreements between Plaintiffs and their counsel are not relevant to the Court's determination of fees under 42 U.S.C. § 1988.

**DISCUSSION**

The Court's minute order states, "if the plaintiffs entered into engagement agreements with counsel, please provide copies of the fee agreements to the Court and opposing counsel …." Dkt. 441. As discussed below, under controlling Supreme Court and Tenth Circuit precedent, the engagement/retainer agreement between plaintiffs and their counsel are irrelevant to the Court's determination of fees under § 1988. Thus, the Fitouri Plaintiffs respectfully request that the Court reconsider this portion of its order.

1

In *Venegas v. Mitchell*, 495 U.S. 82, 83-84 (1990), an attorney who brought a successful civil rights action sought to collect both a $406,000 contingency fee, based on a contract that granted him 40% of the client's recovery, and a $75,000 statutory award of attorneys' fees under § 1988. *Id.* at 86. The question the Supreme Court considered was "whether § 1988 invalidates contingent-fee contracts that would require a prevailing civil rights plaintiff to pay his attorney more than the statutory award against the defendant." The Court concluded that the answer is no.

First, the Court observed that, "in construing § 1988, we have generally turned away from the contingent-fee model to the lodestar model of hours reasonably expended compensated at reasonable rates." *Id.* at 87; *see also Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-65 (1986); *Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *Blum v. Stenson*, 465 U.S. 886, 897, 901-02 (1984); *Homeward Bound, Inc. v. Hissom Memorial Center*, 963 F.2d 1352, 1355 (10th Cir. 1992). Section 1988 does not require the district court to "invalidate a contingent-fee agreement arrived at privately between attorney and client." *Id.* The Court explained:

> We have never held that § 1988 constrains the freedom of a civil rights plaintiff to become contractually and personally bound to pay an attorney a percentage of the recovery, if any, even though such a fee is larger than the statutory fee that the defendant must pay to the plaintiff. Indeed, court cases look the other way. Section 1988 makes the prevailing *party* eligible for a discretionary award of attorney's fees. … And just as we have recognized that it is the party's entitlement to receive the fees in the appropriate case, so have we recognized that as far as § 1988 is concerned, it is the party's right to waive, settle, or negotiate that eligibility.

*Id.* at 87-88 (citations omitted).[1] Because a money judgment recovered under § 1983 (of which the contingent fee is a part) "belongs to the injured individual," "there is little reason to believe

---

[1] *See also United Transp. Union Loc. 1745 v. City of Albuquerque*, 352 F. App'x 227, 230 (10th Cir. 2009) ("after a party asserts and secures the right to a fee award, he may assign the right to counsel, who then acquires a legally cognizable interest in collecting the proceeds.") (internal citations omitted); *Elusta v. City of Chicago*, 696 F.3d 690, 693-94 (7th Cir. 2012) (observing that this principle is "well-

2

that they may not assign part of their recovery to an attorney if they believe that the contingency arrangement will increase their likelihood of recovery." *Id.* at 88 (internal citations and alterations omitted).

The Court further held:

> [N]either *Blanchard* nor any other of our cases has indicated that § 1988, by its own force, protects plaintiffs from having to pay what they have contracted to pay, even though their contractual liability is greater than the statutory award that they may collect from losing opponents. … In sum, § 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the "reasonable attorney's fee" that a defendant must pay pursuant to a court order. Section 1988 itself does not interfere with the enforceability of a contingent-fee contract.

*Id.* at 89-90. The Court upheld the trial court's ruling that § 1988 did not prohibit the attorney from collecting fees in excess of the statutory award, pursuant to a contingent-fee contract. *Id.*

After *Venegas*, numerous courts—including the Tenth Circuit—have reiterated the principle that § 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer, and that the lodestar is the presumptively reasonable fee. In *Iqbal v. Golf Course Superintendents Ass'n of Am.*, 900 F.2d 227, 228-29 (10th Cir. 1990), the Tenth Circuit not only affirmed "the rejection of the contingency fee agreement as providing a cap on the attorneys' fee award," but characterized the appeal by defendants as "marginal" and stated that it looked upon defendants' argument that the contingency fee was relevant to a reasonable fee "with extreme disfavor" because it was "based on overruled Tenth Circuit precedent and contrary to Supreme Court opinions." *See also, e.g.*, *Allen v. Shalala*, 48 F.3d 456, 459 (9th Cir. 1995) ("*Venegas* does not hold, or even suggest, that a district court should look first to a contingent fee contract when determining a reasonable attorney's fee. Rather, the Court

---

established" and explaining that the contingent fee contract entitled attorneys to 40% of any damages and the fee award under § 1988).

3

implicitly reaffirmed the principle that a court must use the lodestar method when computing reasonable attorney's fee awards under § 1988"); *U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1048-49 (6th Cir. 1994) ("[T]he determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel. … The uniform application of lodestar equations is preferred over an unpredictable system in which different trial judges devise their own, subjective, spontaneous formulas.");[2] *Lilly v. City of New York*, 934 F.3d 222, 227-29 (2d Cir. 2019) (discussing history of fee-shifting jurisprudence and observing that, under Supreme Court precedent, the lodestar is the presumptively reasonable fee); *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 989 n.2 (4th Cir. 1992) ("[O]ur holding that appellees are entitled to recover from Food Lion no more than reasonable attorney's fees as calculated by the lodestar approach controls only what Food Lion must pay appellees, and not what appellees may be contractually obligated to pay their attorney under a contingent-fee agreement.").

Likewise, other courts in this District have recognized that, in a fee-shifting case, "[t]he existence of a contingent fee agreement between [plaintiff] and his counsel does not justify reducing the lodestar amount of attorneys' fees owed by the Defendant." *U.S. ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 793 F. Supp. 2d 1260, 1264-65 (D. Colo. 2011) (decision on fees under 31 U.S.C § 3730(d)(2)). "By its nature, fee-shifting is designed to shift all of the costs (including attorney fees) to the loser in an action. The fact that the winner's attorneys receive compensation from another source is irrelevant to the fee award." *Id.* at 1264 (citing *Venegas*). If

---

[2] *U.S. ex rel. Taxpayers Against Fraud* was an FLSA case, which also involves fee-shifting. The Sixth Circuit's further explanation is instructive: "the [FLSA] imposes on the errant [defendant] the burden of financing plaintiff's case to the extent of court costs and a judicially determined reasonable rate of pay for plaintiff's counsel. The fact that [plaintiff] has entered into an agreement with the lawyers prosecuting the case does not impact on the statutory burden of the [defendant], as the latter must pay what the district court determines to be a reasonable rate." *Id.* at 1048.

the Court were to reduce the lodestar or hourly rate by some percentage or amount due to the existence of a contingent fee agreement, it would undermine the purpose of § 1988 and provide a windfall to the Defendants. *See id.* at 1265 (citing *Quesada v. Thomason*, 850 F.2d 537, 543 (9th Cir. 1988) (stating that a defendant obligated to pay fees under 42 U.S.C. § 1988 "should not benefit from the private [contingent fee] agreement by being permitted to pay anything less than … an otherwise reasonable lodestar fee."); *Certain v. Potter*, 330 F. Supp. 2d 576, 589 (M.D.N.C. 2004) ("Defendant's argument that [Plaintiff's attorney] might ultimately receive both the fee award and a contingency fee is not relevant to the question before this Court, that is, the determination of the reasonable fee award that *Defendant* must pay to *Plaintiff* ….")).

In an analogous case, the Seventh Circuit reversed a district court which reduced the attorneys' hourly rate by 30% due to a 30% contingent fee. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640-41 (7th Cir. 2011). The court held:

> The contingent fee that an attorney earns from his client and the statutory fee that an attorney recovers from the losing party represent distinct entitlements. *In reviewing a fee petition, a district court is tasked only with examining whether the rate and hours requested are reasonable; the total amount that the attorney stands to recover must not influence this determination.* We therefore vacate the award of attorneys' fees and remand to the district court to redetermine Rossiello's reasonable hourly rate without consideration of the contingent fee.

*Id.* at 640-41 (emphasis added). The court based its decision on *Venegas*. *Id.* at 642. The court further explained, "[w]hen a district court reduces an attorney's hourly rate because the attorney also stands to receive a contingent fee from the plaintiff, the defendant is no longer paying the attorney's full market value (i.e., reasonable hours multiplied by a reasonable hourly rate)." *Id.* The district court's reduction of the award due to the contingent fee "causes the defendant to receive a windfall benefit as it avoids its full fee-shifting obligation" and was not "what Congress or the Supreme Court intended." *Id.*

5

In *Maxwell*, the district court observed that the contingent fee agreement between the plaintiff and his attorneys envision that the attorneys may choose to reduce the contingent fee if a statutory fee is awarded. *Id.* at 1265. That is something that Fitouri Plaintiffs' attorneys have done in other cases; the decision whether to do that here may depend in part on the amount of the statutory fee award. Regardless, whether Plaintiffs' attorneys "will enforce their right to collect both the contingent fee as well as a statutory award, reduce it or waive it altogether is beyond the purview of the issues before the Court. Neither [plaintiff] nor his attorneys' actions with regard to each other impact the Defendant's statutory obligation to pay reasonable attorney fees…." *Id.*

And finally, Plaintiffs note that it is unusual for a court to order disclosure of attorney-client communications concerning compensation, but regardless, as discussed above, Supreme Court and Tenth Circuit authority is clear that the existence of a contingent-fee agreement between plaintiffs and their counsel is not relevant to the determination of a reasonable fee under § 1988.

## CONCLUSION

In sum, under well-established law, the terms of the retainer/engagement agreement between Plaintiffs and their counsel are not relevant to the determination of a reasonable fee in this case.[3] Plaintiffs respectfully request that the Court reconsider this portion of its minute order.

The Court's order also asks whether the parties request an evidentiary hearing. Fitouri Plaintiffs do not request an evidentiary hearing and do not believe a hearing is necessary, but if the Court has questions for the parties based on the briefing that the parties could address in a hearing, Plaintiffs' counsel are available to answer the Court's questions.

---

[3] To the extent that one of the Court's questions was whether the retainer agreement between Fitouri Plaintiffs and their counsel says anything about what counsel's hourly rate is: it does not.

Respectfully submitted,

s/ Elizabeth Wang
Counsel for Fitouri Plaintiffs

Elizabeth Wang
Loevy & Loevy
2060 Broadway, Ste. 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com
Counsel for Fitouri Plaintiffs

## CERTIFICATE OF SERVICE

I, Elizabeth Wang, an attorney, hereby certify that on December 5, 2022, I filed the foregoing via CM/ECF, thereby delivering an electronic copy to all counsel of record.

s/ Elizabeth Wang
Counsel for Fitouri Plaintiffs