IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 1:20-cv-01878-RBJ

ELISABETH EPPS, *et al.*,

     Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,
     Defendants.

---

## ORDER REGARDING ATTORNEY'S FEES, COSTS, AND INTEREST

---

The Epps and Fitouri plaintiffs have separately moved for awards of attorney's fees and costs. ECF Nos. 378 and 380. They have also requested an award of prejudgment interest. *See* ECF No. 434. The parties have waived a hearing. The Court awards the Fitouri Plaintiffs **$1,193,071** in attorney's fees, **$22,713.16** in costs, and no prejudgment interest. The Court awards the Epps plaintiffs **$1,663,232** in attorney's fees, **$72,345.90** in costs, and no prejudgment interest with the exception that it awards prejudgment interest to plaintiff Zachary Packard on the $181,000 economic damage component of his damages at the applicable federal post-judgment rate from May 31, 2020 to the date when the Court enters its final judgment.

## I. BACKGROUND.

This case arises from protests that occurred in Denver between May 28 and June 2, 2020 following the murder of George Floyd. Twelve protesters filed two lawsuits against the City and County of Denver s("the City") that were consolidated in the present case -- seven comprising the Epps Plaintiffs and five the Fitouri Plaintiffs. In the phase of the case relevant here, plaintiffs

contended that their constitutional rights were violated when they were inappropriately subjected to "less lethal" projectiles and tear gas while they engaged in peaceful protests.

On March 25, 2022, at the conclusion of a fifteen-day trial, the jury found that eleven of the twelve plaintiffs had proven that the City was liable for both First and Fourth Amendment violations committed by police officers who were not properly trained and were acting pursuant to policies, practices, and customs of the Denver Police Department.  ECF No. 343 (Jury Verdict) at 1-7.  The jury found that the twelfth plaintiff, Ashlee Wedgeworth, had proved violations of the First Amendment but not the Fourth Amendment.  *Id.* at 6.  The jury also found that one plaintiff, Elisabeth Epps, had also proven a Fourth Amendment violation by the only police officer who was an individual defendant at the trial, Jonathan Christian.  *Id.* at 8.

The jury awarded compensatory damages against the City of $1 million to ten of the twelve plaintiffs; $3 million to plaintiff Zachary Packard; and $750,000 to Ms. Wedgeworth. The jury also awarded $250,000 in punitive damages against Officer Christian in favor of Ms. Epps.  *Id.*

On April 15, 2022 the Court entered judgment against the City consistent with the verdict.  ECF No. 360.  The judgment included an award of costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1 in an amount to be determined and indicated that the Court would consider possible awards of attorney's fees and prejudgment interest.  *Id.* at 3-4.  The judgment was not final judgment because there are still claims to be tried or otherwise resolved.

Defendants then filed post-trial motions for judgment as a matter of law or a new trial. ECF Nos. 373 and 374.  The Court denied the City's motion but granted defendant Christian's motion in part.  Ms. Epps was given the choice of accepting a remittitur of the punitive damages

award against Officer Christian to $50,000 or to have his motion for a new trial granted.  She accepted the remittitur.

Plaintiffs filed motions for awards of attorney's fees and costs.  ECF Nos. 378 and 380. They have been fully briefed, except as to taxable costs, and the parties have waived a hearing. These motions including both attorney's fees and costs are addressed in this order.  In a separate motion, ECF No. 431, the defendants asked the Court to certify the judgment in this phase of the overall case for appeal pursuant to Fed. R. Civ. P. 54(b).  Plaintiffs cross-moved for a Rule 54(b) certification subject to the Court's ruling on prejudgment interest, which they seek.  *See* ECF No. 434.  Defendants have responded in opposition to an award of prejudgment interest.  ECF No. 440.  Plaintiffs have replied.  ECF No. 442.  The Court is addressing prejudgment interest in this order.

Two phases of this case have been bifurcated for separate trial: the Fitouri Plaintiff's claims on behalf of certain protesters who were arrested for violating the City's emergency curfew have been certified as a class and will be tried commencing April 24, 2023.  Plaintiffs' claims against the "Aurora Defendants" are set for trial commencing June 19, 2023.

## II.  ATTORNEY'S FEES GENERALLY.

The Court may award reasonable attorney's fees to the prevailing party in civil rights actions.  42 U.S.C. § 1988(b).  In determining the reasonableness of attorney's fees, the Court starts with the "lodestar" (reasonable hours times reasonable rates), which is presumptively reasonable.  *See Robinson v. City of Edmund,* 160 F.3d 1275, 1281 (10th Cir. 1998).  The lodestar can be adjusted after applying factors such as those articulated in *Johnson v. Georgia*

*Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974).[1]  The Colorado Rules of Professional

Conduct provide a similar list of relevant factors.[2]

### III.  ATTORNEY'S FEES – THE FITOURI PLAINTIFFS.

I start with the application of the Fitouri plaintiffs, as it involves substantially fewer

timekeepers and time entries and in general lends itself more easily to judicial review.

### A.  Plaintiffs' Request.

The five Fitouri Plaintiffs were represented by Loevy & Loevy, a Chicago based civil

rights firm.  They seek an attorney's fee award of $1,432,885 for 3,235 hours worked.  The

Loevy & Loevy team includes four partners, two associates, a paralegal, and an office manager.

The rates and hours for which an award is requested are set forth in the following chart:

| Employee | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| Jon Loevy (founding partner) | $650 | 8.50 | $5,525.00 |
| Elizabeth Wang (partner) | $595 | 1,709.75 | $1,017,301.25 |
| Steven Art (partner) | $545 | 2.50 | $1,362.50 |
| David B. Owens (partner) | $545 | 3.25 | $1,771.25 |
| Makeba Rutahindurwa (associate) | $375 | 675.25 | $253,218.75 |
| Katie Roche (associate) | $375 | 37.25 $ | 13,968.75 |
| Brian Swift (paralegal) | $175 | 785 | $137,375.00 |
| Andy Thayer (office manager) | $175 | 13.50 | $2,362.50 |
| **TOTAL** | | **3,235.00** | **$1,432,885.00** |

ECF No. 380 at 5.

---

[1] *Johnson* lists 12 factors for courts to consider in determining reasonableness: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) preclusion of other employment; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney's; (10) the undesirability of the case; (11) the nature and relationship of the professional relationship with the client; and (12) awards in similar cases.  *Id.* at 717-19.

[2] The Colorado Rules of Professional Conduct are found as an Appendix to Chapters 18 to 20, COLORADO COURT RULES – STATE (2018).  These factors identified in Rule 1.5 are (1) time and labor required, (2) likelihood of preclusion of other employment, (3) fee customarily charged in the locality, (4) amount involved and results obtained, (5) time limitations imposed by the client or circumstances, (6) nature and length of the professional relationship, (7) experience, reputation, and ability of the lawyer(s), and (8) whether the fee is fixed or contingent.

4

In further support the Fitouri plaintiffs submitted the affidavit of Erica Grossman, a civil rights lawyer in Denver with eight years' experience and several awards and recognitions.  ECF No. 380-8 at 1-2.  Her opinion is that the Loevy & Loevy rates and hours are reasonable.  *Id.* at 4-7.  She adds that defendants' refusal to offer a reasonable settlement supports her opinion.  *Id.* at 8-9.  It is not clear how she knew about settlement offers that were or were not made, as settlement negotiations typically are confidential.

**B.   Defendants' Response.**

Defendants submit a report of their retained expert, William A. Rogers, III, in opposition to the Fitouri Plaintiffs' fee application.  ECF No. 414-2.  Mr. Rogers is a lawyer of 30 years' experience, primarily defending employment and civil rights litigation.  In his report he indicates that, in addition to his experience as a senior shareholder and billing attorney, he has frequently been retained as an attorney's fees expert; and he has been accepted as an expert in that area by state court judges in Adams and Pueblo counties.  ECF No. 414-2 at 3-4.  Based in part on Mr. Rogers' opinions, defendant contends that a reasonable fee would be $689,732.43.  ECF No. 414 at 12.  This is approximately 48% of the $1,432,885.00 requested.

**C.   Findings and Conclusions.**

1. Reasonable Rates.

Defendants' expert, Mr. Rogers, recommends a reduction of each timekeeper's regular hourly rate based on his experience and a survey conducted by the Colorado Bar Association in 2017 (the "2017 CBA Survey").  *See* ECF No. 414-2 at 5 (revised rate schedule).  With respect to the three individuals who recorded the vast majority of the time, he would change partner Elizabeth Wang's rate from $595 to $400 an hour; associate Makeba Rutahindurwa's rate from $375 to $225; and paralegal Brian Swift's rate from $175 to $115 an hour.  ECF No. 414-2 at 5.

Application of his rate schedule would reduce plaintiffs' application from $1,432,885 to $941,225.75.

Mr. Rogers has excellent credentials as a defense lawyer.  However, his experience does not necessarily translate to the work done by plaintiffs' lawyers in complex civil rights cases. The 2017 CBA survey has been described as flawed and not reflective of hourly rates charged by large Denver law firms.  *See First Mercury Ins. Co. v. Wonderland Homes,* No. 1:19cv00915-JLK-SKC, 2021 WL 3089155, at *5 (D. Colo. July 22, 2021).  I do not find Mr. Roger's revised rate schedule to be reflective of the hourly rates charged in the 2020-2022 timeframe in the Denver market for high-stake civil rights and other complex civil litigation.  I rely instead on the findings of several of my colleagues in the district as well as a recent case of my own:

- In *Valdez v. Motyka,* No. 15-cv-0109-WJM-STV, 2022 WL 1092182 (D. Colo. April 12, 2022), a civil rights case against the City and County of Denver and an individual Denver Police Department officer, the court found that hourly rates ranging from $575 to $595 for skilled and experienced partner-level lawyers, $375 for associates; and $100 to $200 an hour for paralegals were reasonable for the Denver market.  *Id.* at *3.

- In *First Mercury,* an insurance coverage case, the court found that rates of $650 an hour for senior partners and $375 for associates were reasonable for work performed in 2018 and 2019 by large Denver law firms in the Denver market.  *Id.* at *5.

- In *Peace Officers' Annuity and Benefit Fund of Georgia v. DaVita Inc.,* No. 17-cv-0304-WJM-NRN, 2021 WL 2981987, at *3 (D. Colo. July 15, 2021), the court found that rates ranging from $365 to $895 an hour for attorneys and $250 to $275 an hour for support staff were reasonable in an ERISA case

- In *Faulkner v. Ensign U.S. Drilling Inc.,* No. 16-cv-03017-PAB-KLM, 2020 WL 550592, at *6 (D. Colo. 2020), the court found that rates charged by class counsel in a Fair Labor Standards Act case ranging from $150 to $600 an hour were reasonable and consistent with rates charged in other cases in this district.

- In *Snyder v. ACORD Corp.,* No. 1:14-cv-01736-JLK, 2019 WL 319407, at *8 (D. Colo. Jan. 24, 2019), an insurance coverage case, the court found that rates capped at $625 an hour for experienced partners, $425 an hour for associates, and $200 an hour for paralegals were reasonable and reflective of lawyers of comparable skill and experience practicing in this district.

- In *Aragon v. Clear Water Products LLC,* 15-cv-2821-PAB-STV, 2018 WL 6620724, at *7 (D. Colo. Dec. 18, 2018), the court found that the rate charged by class counsel in an FLSA case of $600 per hour was consistent with the rates charged in other cases in this district.

- In *Shaw v. Interthinx, Inc.,* 13-cv-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. April 22, 2015), the court found that rates between $150 and $675 an hour for attorneys and staff in the states in which counsel regularly practice were reasonable for a lodestar crosscheck in an FLSA case in this district.

- In *Biax Corp. v. NVIDIA Corp.,* 13-cv-01257-PAB-MEH, 2013 WL 4051908, at *5 (D. Colo. Aug. 12, 2013), the court found that rates from $425 to $748 an hour for partners, $429 to $531 for associates, and $148 to $270 for paralegals were reasonable in the years 2011 to 2013 in a patent infringement case.

- Finally, this Court found rates in the range of $435 to $650 for highly skilled and experienced partner-level attorneys, $275 to $395 an hour for associate-level attorneys,

and $125-$235 an hour for paralegals, were reasonable for high-stake complex civil litigation in the Denver market in the years 2020-2022.  *ORP Surgical, LLP v. Howmedica Osteonics Corp.,* No. 1-20-cv-01450-RBJ, 2022 WL 16924068, at **4-6 (D. Colo. Nov. 14, 2022).  Notably, the low end of those ranges was a reduced hourly rate supplemented by a partial contingency agreement to accommodate the plaintiff who could not continue to pay the higher end rates.  *Id.* at *4.

It is highly doubtful that any of the Fitouri plaintiffs could have afforded to pay Loevy & Loevy on an hourly rate basis.  Therefore, as Mr. Rogers noted, cases like this case are usually undertaken on a contingent basis.  ECF No. 414-2 at 5.  Accordingly, judicial officers ultimately determine what is reasonable from the evidence and materials available.  In Mr. Rogers' words, "[t]he judiciary essentially *is* the marketplace."  *Id.*  I agree.

I have reviewed the credentials of the Loevy & Loevy timekeepers.  Lead counsel, Ms. Wang, has spent most of her 17-year career representing plaintiffs in § 1983 civil rights cases. *See* ECF No. 380-2  (Wang Declaration).  She is a graduate of the University of Chicago Law School; has clerked for federal judges at the district and appellate levels; and has served as legal counsel in numerous significant civil rights cases.  She has also had numerous appellate successes in civil rights cases.  She has taught civil rights courses at the University of Chicago Law School.  *Id.*  She is a zealous advocate, and I have observed her work overall to be excellent.  Her time was billed at $595 an hour.

The primary associate on her team, Makeba Rutahindurwa, graduated from the Stanford Law School in 2019.  She then spent one year clerking for a federal district judge in Nevada. She was admitted to the Illinois bar and joined Loevy & Loevy in its Chicago office in October 2020.  She was immediately assigned to this case, working under Ms. Wang's supervision.  She

attended the trial and had an active role, including presenting the opening statement on behalf of the Fitouri plaintiffs. My observation was that, given her inexperience, she did well at trial; and that she is off to a good start as a civil rights advocate.

The other principal timekeeper was paralegal Brian Swift. He graduated from the Arapahoe Community College paralegal program in 2013 and has worked full time as a paralegal at Loevy & Loevy since that time. *See* ECF No. 380-9 (Swift Declaration). I have no reason to question his skill or experience.

As for the other timekeepers, Jon Loevy, the founder of the firm; Steven Art; and David Owens have extensive academic and experience credentials that have not been questioned. ECF Nos. 380-4, 5 and 6. Associate Katie Roche graduated from the University of Chicago Law School in 2015, joined Loevy & Loevy that same year, and left the firm in late 2021. ECF No. 380-7. Again, no one has questioned her background or experience.

For the most part I find that the hourly rates of the Loevy & Loevy timekeepers were reasonable. Ms. Wang's rate of $595 fits well within the range of rates that several colleagues in this district and I have found to be reasonable in the Denver market for lawyers of her skill and experience in handling high-stake complex civil litigation, including civil rights litigation. The rates of the three partners with whom she briefly consulted – Jon Loevy, Steven Art, and David Owens, were all within the range that I and other judges in this district have found to be reasonable for the type of work involved here.

I will make two exceptions. Ms. Wang recorded by far the most hours. I have reviewed all 31 pages of Ms. Wang's timesheets. ECF No. 380-2 at 13-43. Some of those hours appear to be for work that normally could be performed by junior lawyers. I am not criticizing that division of labor. How to staff a case depends on various factors unique to the law firm, the

case, and the assigned timekeepers.  However, for rate-shifting purposes, work that is delegable to lower-rate attorneys should not be billed to the opposing party at the senior lawyer's rate.  *See First Mercury Ins. Co. v. Wonderland Homes* case, 2021 WL 3089155, at *2 ("tasks that are easily delegable to non-professionals or less experienced associates should not be billed at a higher hourly rate"); *Extreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.,* 958 F. Supp. 2d 1238, 1258-59 (D. Colo. 2013) (partner-heavy staffing resulted in attorney's fees greater than would otherwise be reasonable

It is difficult to be precise based on the brief descriptions of time in the Loevy & Loevy timesheets.  However, in going through them I made note of hours recorded by Ms. Wang for legal research (understanding that in almost any case partners will conduct some legal research on their own), preparation of interrogatories and requests for production of documents (but excluding entries reflecting determination of what discovery to pursue and supervising or managing discovery), preparation of what appear to be relatively routine pleadings (but excluding significant pleadings like complaints and non-routine motions), and a small amount of the deposition-related time.  I find that between approximately 150 and 225 of Ms. Wang's 1709 hours could have been performed by an associate attorney.  Exercising my discretion, I elect to approve 200 of Ms. Wang's hours at the rate assigned to the two associate attorneys who performed work on the case, $375 an hour.  The rest will be charged at her regular rate, $595 an hour.

The other adjustment I will make to rates concerns Ms. Rutahindurwa.  She joined the law firm in its Chicago office in October 2020, shortly after she left her federal clerkship and passed the bar.  Her first time billed to this case was on October 7, 2020, apparently within days after joining the firm.  Mr. Rogers' opinion is that a reasonable rate for Ms. Rutahindurwa is

$225 an hour.  ECF No. 414-2 at 8.  I find that rate to be somewhat low for the Denver market for associates in large law firms assigned to high-stake complex civil litigation in the 2020-2022 timeframe.  I agree, however, that her billing rate as a brand new lawyer should be towards the low end of the reasonable range for fee-shifting purposes.  I find that a reasonable rate for her work in this case is $300 an hour.

    2.  <u>Reasonable Hours</u>.

    *a.  <u>Defendants' recommended exclusion of timekeepers</u>.*

Mr. Rogers would exclude the time billed by Andy Thayer, the Office Manager for plaintiffs' counsel, because administrative time should not be billed to the opposing party.  ECF No. 414-2 at 11.  Mr. Roger would also exclude the time billed by Jon Loevy, Steven Art, David Owens, and Katie Roche because "their involvement was too modest and unrelated to the overall litigation, and the time they did include was almost entirely interoffice communications with Ms. Wang."  ECF No. 414-2 at 13.

    *b.  <u>Defendants' recommended exclusion of time by categories</u>.*

Focusing on the three primary timekeepers (Wang, Rutahindurwa, and Swift).  Mr. Rogers' approach was to make percentage reductions for categories of what he considered to be inappropriate time.  He would exclude 15% of the time because it was recorded in 15-minute rather than in 10-minute intervals, which "inevitably increases the amount of a bill."  *Id.* at 14.  He excludes an additional 5% because plaintiffs submitted separate "timesheets" (all of the individual timekeeper's time entries) rather than an actual billing statement, making it "harder to meaningfully analyze the time."  *Id.* at 14-15.  He excludes another 2.5% to account for duplication of effort.  *Id.* at 15-16.  He does not itemize instances of duplication of effort except for eight entries totaling 49.75 hours that he believes were Ms. Rutahindurwa's observing

depositions for training purposes. *Id.* at 16. It is not clear whether he meant those hours to be examples of the 2.5% he would exclude or in addition to the recommended 2.5% reduction.

Finally, Mr. Rogers notes that Ms. Rutahindurwa, Mr. Swift, and others recorded many hours reviewing videos. Most of Mr. Swift's 785 hours were spent in six and eight hour days reviewing videos and taking notes, meaning that Mr. Swift spent almost six months reviewing videos. As an example, Mr. Swift spent almost 110 hours between January 4 and January 27, 2021 reviewing videos produced by the City of Aurora, and Ms. Rutahindurwa spent "significant time from November 3, 2020 through December 1, 2020 reviewing what appear to be the same videos." *Id.* at 17. However, while he suspects that that the video viewing hours are excessive, he defers to the defendant and the Court who have greater familiarity with the videos and whether or not the time spent on them was excessive. *Id.* at 16-17.

In addition to Mr. Rogers' three percentage-based reductions, the City adds two categorial exclusions of its own: 2.5% for "vague time entries," and 2.5% for "inter and intra-office communications." ECF No. 413 at 10-11. These five categories add up to a wholescale exclusion of 27.5% of the time. Defendant also would exclude the 49.75 hours of Ms. Rutahindurwa's time singled out by Mr. Rogers, 0.75 of an hour of Ms. Wang's time as "administrative and clerical; and the 13.5 hours of Mr. Thayer's time. *Id.* Thus, defendants would have the Court exclude $251,493.32 of the $941,225.75 left after application of Mr. Rogers' rate schedule, leaving a balance of $689,732.43.

  *c.* <u>*This Court's evaluation of counsel's hours*</u>.

To begin, I agree that Mr. Thayer's time should be excluded. In reply plaintiffs agree. ECF No. 424. I also agree with Mr. Rogers that Ms. Roche's time should be excluded. Her 37.25 hours mostly represent time getting up to speed and reviewing videos, but it appears that

she left the firm before she made a unique or significant contribution to it.  I disagree with Mr. Rogers, however, as to the three partners Jon Loevy, Steven Art, and David Owens.  While their hours were modest, totaling 14.25 hours combined, they are highly experienced lawyers whose consultation with Ms. Wang in the early stages of the case was likely quite beneficial to her and the case.

I agree with Mr. Rogers that the manner in which Loevy & Loevy submitted its timekeepers' time made it more difficult to evaluate the reasonableness of the time.  If the time entries had been integrated in the manner one would expect for a bill to a client, i.e., time entered by all timekeepers on a given day would be shown together, it would have been much easier to spot duplicative or excessive time.[3]  Mr. Rogers indicated that he did read through the time entries of the three primary timekeepers and spot some instances of duplicative or excessive time.  Ultimately, however, his approach was to identify categories of time and to recommend wholescale percentage reductions for each category.  The defendant followed suit.  I understand their approach in the circumstances.

Nevertheless, I do not agree with arbitrarily removing large categories of time, at least as applied to the Fitouri Plaintiffs.  For starters, I do not agree with a reduction of time because the time was recorded in 15-minute intervals.  Plaintiffs represent in their reply that they rounded up or down to the nearest quarter hour, and that tasks that took fewer than 10 minutes were not billed at all.  ECF No. 424 at 7-8.  They also cite authority that supports this practice.  *Lopez v. City of Chicago,* No. 01C1823, 2007 WL 4162805, at *7 (N.D. Ind. Nov. 20, 2007) ("Nor do I find [Loevy & Loevy's] practice of billing quarter-hour increments unreasonable.").  Without

---

[3] The Epps Plaintiffs did the same thing.

commenting on the use of 10 versus 15-minute intervals in general, I find that a wholescale 15% reduction due to this practice is not supported by the record.

Also, although Ms. Wang's time records covered 31 single spaced pages (ECF No. 380-2 at 13-43) and Ms. Rutahindurwa's time records covered 14 single spaced pages (ECF No. 380-3 at 5-14), I found it to be feasible, although time consuming, to examine them side by side. In doing so I was aware that both Ms. Wang and Ms. Rutahindurwa represented in their declarations that they had reviewed their time entries and culled inappropriate time. Ms. Wang recorded a total of six hours for her culling review. ECF No. 380-2 at 42. I did not find time entries specific to that task for Ms. Rutahindurwa. But given their own culling, it did not surprise me that I did not find a great deal of their time that appeared to be excessive or duplicative. Mr. Rogers himself stated that "[i]n general, I would say the timesheets reveal an effort not to submit billing that includes significant duplication of effort." ECF No. 414-2 at 15.

With respect to Ms. Wang, I identified a total of 59.75 hours that I will remove for the purpose of fee-shifting (0.5 hour for drafting a retainer agreement; 1.75 hours of what appeared to be duplicative time; 7.5 hours of what appeared to be training of associates time; and 44.0 hours of what I will classify as excessive trial time). The 44 hours is time in excess of 10 hours in a trial day. I am not suggesting that the time was not spent. I recall long, hard trial days when I was trying cases. But I suspect that once one goes beyond 10 hours on a given day, and perhaps well before that, one's efficiency diminishes. For purposes of shifting the fees to the defendant, I believe that 10 hours in a trial day is a reasonable place to draw the line. In any event, 59.75 hours is de minimis in the context of Ms. Wang's total of 1709.75 hours. The 59.75 hours do not overlap with the 200 hours to which I am assigning a lower billing rate.

With respect to Ms. Rutahindurwa, I identified what I viewed as excessive or duplicative time before looking at the specific 49.75 hours Mr. Rogers singled out.  Interestingly, I identified 48.75 of the same hours, omitting only 1.0 hour on May 25, 2021 that he excluded but I did not. In my review I identified an additional 9.25 hours on June 3 and 4, 2021; 3.0 hours on July 29, 2021; 3.0 hours on December 17, 2021; and 18.0 hours of excessive trial time (days exceeding 10 hours).  Therefore, for fee-shifting purposes, I will exclude a total of 82 hours of Ms. Rutahindurwa's time.

Finally, with respect to Mr. Swift, I elect to remove half of his hours.  I realize that the video review was a huge task -- there were more than 1,000 hours of videos to be reviewed, evaluated, organized, and edited.  *See* ECF No. 423 at 4.  The videos were critical to the plaintiffs' success in the case.  However, the primary duplication problem in this case is not the small amount of duplication between Ms. Wang and her team.  Rather, it is the inevitable duplication of effort resulting from the fact that two law firms represented two groups of similarly situated plaintiffs in the case.  Perhaps the most obvious example of that duplication is that the paralegal for the Fitouri Plaintiffs, Mr. Swift, billed 785.0 hours and the paralegal for the Epps Plaintiffs, Joseph Chang, billed 751.6 hours, a large percentage of their time being review, editing and organizing the same videos.  I do not doubt that both paralegals did an excellent job. However, billing all that duplicative time to the defendant is not reasonable.  Accordingly, I will include half of the paralegal time in the Fitouri award and half in the Epps award.

3.  Conclusion: The Lodestar.

The bottom line is that the Court finds the following rates and hours are reasonable and create the lodestar for the Fitouri Plaintiffs' fee application:

| Employee | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| Jon Loevy | $650 | 8.50 | $5,525.00 |
| Elizabeth Wang (regular rate) | $595 | 1,450 | $862,750.00 |
| Elizabeth Wang (reduced rate) | $375 | 200 | $75,000.00 |
| Steven Art (partner) | $545 | 2.50 | $1,362.50 |
| David B. Owens (partner) | $545 | 3.25 | $1,771.25 |
| Makeba Rutahindurwa (associate) | $300 | 593.25 | $177,975.00 |
| Brian Swift (paralegal) | $175 | 392.5 | $68,687.50 |
| **TOTAL** | | **3,040** | **$1,193,071.25** |

4. Johnson Factors.

Neither the plaintiffs nor the defendant have suggested any adjustment to the lodestar based on the 12 factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974), or their counterparts in the Colorado Rules of Professional Conduct. Several of the factors have either explicitly or implicitly been addressed already in this order. Most of the other *Johnson* factors either did not apply or were not addressed in the record.

I considered two *Johnson* factors in particular: the result obtained and whether the fee was contingent. Plaintiffs obtained a spectacular result, and the lawyers deserve a great deal of credit for that. Nevertheless, in my opinion as the presiding judge, the result was driven to a significant extent by the videos and the City's position at trial that the officers did essentially nothing wrong.[4] As for the contingent nature of the fee, in the *ORP v. Howmedica* case, *supra*, I increased one law firm's fee by 15% because the firm reduced its hourly rate to accommodate

---

[4] The Denver Police Department faced a particularly difficult and dangerous task during the George Floyd protests. Some purported protesters threw rocks, frozen water bottles, and other objects at the police, in some instances causing injuries. Some protesters destroyed property. Nevertheless, the combined efforts of the officers from Denver and sister agencies reduced the danger of injury and property damage for many citizens. A minority of the officers, in the heat of the moment, overreacted, and the videos dramatically showed this. Had the City candidly acknowledged this fact and the need for certain reforms, I suspect the result of the case might have been different.

the client and substituted a partial contingent fee instead.  2022 WL 16924068, at **9, 10.

However, without access to the fee agreement between the Fitouri Plaintiffs and counsel, I do not

know whether the fee was "contingent" in the sense of a typical personal injury case.  Unlike

such cases, counsel knew that if they established liability and any damages, they would likely

receive a fee award under  42 U.S.C. § 1988.

5. Award.

I conclude that the lodestar provides a reasonable attorney's fee without further

adjustment and award attorney's fees to the Fitouri Plaintiffs of **$1,193,071.25.**

## IV.  ATTORNEY'S FEES -- THE EPPS PLAINTIFFS.

### A.  **Plaintiffs' Request**.

The seven plaintiffs in the Epps group were represented by Arnold & Porter Kaye

Scholer LLP ("Arnold & Porter").  The team for which they seek fees includes six partners,

seven associates, and one paralegal.  The rates and hours for which an award is requested are as

follows:

| Employee | Hourly Rate | Hours Billed | Total Fee |
|---|---|---|---|
| R. Reeves Anderson, Partner | $595 | 315.8 | $187,901.00 |
| Ed Aro, Senior Counsel | $595 | 27.5 | $16,362.50 |
| Matthew Douglas, Partner | $595 | 644.7 | $383,596.50 |
| Timothy Macdonald, Partner | $595 | 678.7 | $403,826.50 |
| Colin O'Brien, Partner | $595 | 95.9 | $57,060.50 |
| Diana Sterk, Partner | $595 | 389 | $231,455.00 |
| Leslie Bailey, Senior Associate | $375 | 555.1 | $208,162.50 |
| Sam Callahan, Senior Associate | $375 | 34 | $12,750.00 |
| Gerardo Mijares-Shafai, Snr. Assoc. | $375 | 257.8 | $96,675.00 |
| Patrick Reidy, Senior Associate | $375 | 765.7 | $287,137.50 |
| Michael Sebba, Senior Associate | $375 | 519.2 | $194,700.00 |
| Mindy Gorin, Associate | $375 | 415.2 | $155,700.00 |
| Andreas Moffett, Associate | $375 | 519.2 | $194,700.00 |
| Joseph Chang, Senior Paralegal | $175 | 751.6 | $131,530.00 |
| **TOTAL** | | **5,969.4** | **$2,561,557.00** |

ECF No. 378 at 5-6.

**B.  <u>Defendants' Response</u>.**

Defense expert Mr. Rogers provided a separate report on the Epps Plaintiffs' application. ECF No. 418-1.  Based in part on his report, defendant submits that the Epps Plaintiffs should receive $689,732,43.  ECF No. 414 at 12.  This is the same amount defendant proposed for the Fitouri Plaintiffs.  It represents approximately 27% of the $2,561,557 requested.

**C.  <u>Findings and Conclusions</u>.**

1.  <u>Reasonable Rates</u>.

Arnold & Porter is a multinational law firm of nearly 1,000 lawyers with a wide variety of specialty areas, including litigation, regulatory and transactional work.  It took on the representation of seven of the twelve plaintiffs on a pro bono basis.  *See* ECF No. 444 at 1.  Lead counsel, Timothy Macdonald, received his law degree from the University of Michigan in 1996.  After clerking for a judge on the Fifth Circuit, he joined Arnold & Porter as an associate attorney, achieving partnership in 2005.  He has specialized in civil litigation, both at the trial and appellate levels, and is a Fellow of the American College of Trial Lawyers.

The other members of the team likewise have impressive backgrounds, albeit for the most part less experience than Mr. Macdonald.  They have a variety of litigation specialties including products liability, environmental law, class actions, patents, civil rights, mass torts, general commercial litigation, and appellate work.

The fee application bills partners at $595 an hour (the same as Ms. Wang for the Fitouri Plaintiffs); associates at $375 an hour (the same rate used by Loevy & Loevy for associates in the Fitouri application); and $175 an hour for the paralegal Joseph Chang (the same rate billed for Loevy & Loevy's paralegal, Brian Swift).  If the Court used the alternate rate schedule

proposed by Mr. Roberts, it would reduce the application from $2,561,557 to $1,634,238.50.  *See* ECF No. 414 at 5.  However, as with the Loevy & Loevy application, I do not agree that Mr. Rogers' alternative schedule reflects the Denver market for this type of work.

The Arnold & Porter lawyers have equally impressive credentials, and while civil rights litigation is not their singular specialty, high dollar complex civil litigation, including civil rights litigation, is.  I could quibble with the assignment of the same rate to all six partners and the same rate to all seven associates, despite variations in their specialty areas and years of experience.  I also note, as I did with respect to the Fitouri Plaintiffs' application, that $375 an hour is high for associates who were assigned to this case shortly after beginning to practice law (Mindy Gorin, Andreas Moffett).  But the overriding issue with the Epps Plaintiffs' application is hours, not rates; and adjusting the rate schedule somewhat would not ultimately matter in my evaluation.

2. <u>Reasonable Hours</u>.

a. *<u>Overview: plaintiffs' counsel's hours</u>*.

According to the Affidavit of Matthew J. Douglas, a partner in the firm, 79 different timekeepers billed more than 14,000 hours to the case.  Mr. Douglas states that nearly 60 depositions including eight Rule 30(b)(6) depositions were taken; 25 witnesses were presented; and more than 280 exhibits were admitted, including numerous excerpts from more than 1,000 hours of video footage that was produced by the defendants.  *Id.* at 18-20.

The fee application excludes the time of 65 of those timekeepers.  It "includes time for the fourteen individuals who contributed substantially to the three-week trial or to the development of evidence that was presented at trial."  ECF No. 378-1 at 18-19.  Mr. Douglas states that he wrote off 5,593 hours of time for timekeepers who were not included in the fee

application and another 2,609 hours from the remaining fourteen timekeepers. *Id.* at 20. This included "(a) any hours over 10 hours billed on any particular day, (b) hours for potentially duplicative tasks, (c) hours spent in internal conference meetings, and (d) other such hours that would normally be written off for a paying client." *Id.* at 20. In addition, Ed Aro, Senior Counsel, wrote off the majority of his time including his trial time and all other time he recorded in 2022.

  b. *Defendants' approach.*

  Although Mr. Rogers applauds Arnold & Porter for taking the case as a pro bono matter and providing many lawyers with opportunities to participate in an exciting case, he decries what he still considers to be "a grossly overstated and bloated claim for attorney's fees." ECF No. 418-1 at 15. He compares the Epps application unfavorably to the Fitouri application, suggesting that this distinction alone warrants a 50% reduction in the Epps application. *Id.* at 16.

  Mr. Rogers also recommends categorical reductions similar to those he recommended for the Fitouri Plaintiffs. He believes that despite the substantial write offs, the Epps Plaintiffs' application does not reflect the exercise of sufficient billing judgment. He again notes that his review was hindered by the practice of submitting separate "time sheets" for each of the timekeepers. *Id.* at 17. Nevertheless, he cites examples of what he found to be excessive time: associate Mindy Gorin's recording 30 hours preparing to defend a plaintiff's deposition; associate Leslie Bailey's spending 49 and 25.9 hours respectively preparing for and attending two depositions; and associate Sam Callahan and partner Reeves Anderson's spending more than 130 hours between them preparing jury instructions. Ultimately, he recommends a wholesale reduction of all time entries by 5% to account for inadequate billing judgment. *Id.* at 17.

Mr. Rogers then turns to duplication of effort.  Although he found the hours to be so excessive that it was "difficult to know where to even commence," he begins with duplication arising from inter- and intraoffice communications, citing as an example the time entries of associate Gerardo Mijares-Shafai.  He recommends a wholescale reduction of 5% to address that type of duplication.  *Id.* at 18.  He goes on to cite 31 hours claimed by three partners and three associates for attending a mediation, *id.* at 18; associates Gorin, Moffett, Sebba and Bailey's recording 142, 115, 42, and 187 hours respectively in February 2022 preparing for trial while multiple partners were also conducting their own preparations, *id.* at 18-19; and 1,350.8 hours for the attendance at trial of four partners and five associates – nine of the ten claiming 10 hours a day for each of the 15 trial days, *id.* at 18-19, *id.* at 18.  He recommends a wholescale reduction of 15% to address this additional duplication of effort.  *Id.* at 19.

Mr. Rogers also believes Arnold & Porter lawyers recorded excessive time.  This seems to overlap the lack of billing judgment and duplication of effort, and he does not recommend another percentage reduction for it.  But he provides some additional examples: associate Moffett's spending 25.3 hours preparing to attend a deposition, *id.* at 19; and paralegal Chang's spending 751 hours for review and editing of videos, coupled with substantial time entries for partners and associates doing the same thing, *id.* at 19-20.

As I have noted, the rate scale proposed by Mr. Rogers and adopted by the defendants by itself reduces the application to $1,634,238.50.  Relying in part on Mr. Rogers' hours opinions, defendants ask the Court to reduce the hours by 5% for lack of billing judgment; 15% for duplication of effort, 2.5% for vague time entries, and 5% for inter and intra-office communications and conferences.  ECF No. 414 at 12.  In addition defendants ask the Court to eliminate all of paralegal Chang's time as administrative and clerical time.  *Id.*  These reductions

would reduce the application by another $532,091.58 to $1,102,146.92.  In the end, however, those reductions do not matter, as it is the defendants' position that the fee award for the Epps Plaintiffs should be the same as for the Fitouri Plaintiffs.  *Id.*  To get there, defendants ask the Court to remove an additional $412,414,49 – a plug number.  Thus, the bottom line is the proposal that the Epps Plaintiffs be awarded $689,732.43.  *Id.*

   c. *This Court's evaluation*.

   Regarding the large discrepancy in their hours compared to the Fitouri Plaintiffs, counsel state that they examined 22 of the 32 witnesses at trial, including 15 of the 20 witnesses who were not plaintiffs.  ECF No. 423 at 3-4.  They indicate that they were responsible for the preparation and examination of both plaintiffs' experts.  *Id.* at 4.  I accept those distinctions, and there are others.  There were two more Epps Plaintiffs.  The Epps Plaintiffs included Zackary Packard – the plaintiff with significant physical injuries requiring hospitalization – and Elizabeth Epps, who had the additional claim against the individual officer, Jonathan Christian.  I agree that counsel for the Epps Plaintiffs accepted a somewhat larger role.

   Nevertheless, I find that, for purposes of shifting fees to the defendant, the Epps application is not reasonably proportionate to the Fitouri application.  That does not mean that the staffing was not valid for other purposes such as giving many individuals an opportunity to participate in the case.  Nor does it mean that any timekeeper did not provide quality work.  They would not be working at Arnold & Porter if they did not have outstanding backgrounds and abilities.  But the fact that 79 timekeepers billed time on the case, 65 of whose time was excluded from the application, reflects the firm's decision to allow many partners, associates, and others to gain experience on an exciting and challenging pro bono case.  Despite the extensive write-offs, the Epps Plaintiffs are requesting reimbursement of approximately 6,000 hours of time, nearly

twice the time submitted by counsel for the Fitouri Plaintiffs.  The Fitouri team did largely similar work, despite their somewhat smaller role, with a much smaller team.

The 14 timekeepers as to whom fees are sought include one senior counsel (Aro); five partners (Anderson, Douglas, Macdonald, O'Brien, and Sterk); five senior associates (Bailey, Callahan, Mijares-Shafai, Reidy, Sebba); two junior associates (Gorin and Moffett); and one paralegal (Chang).  Nine of them plus another associate whose time is not included in the application (Williams) participated in the trial.  They came from the Denver (4), New York (3), Chicago (1), Washington, D.C. (1) and Los Angeles (1) offices of the firm.

Looking just at the 14 witnesses the Epps Plaintiffs called for direct examination at the trial, three partners (Macdonald, Sterk and Douglas) took eight of those witnesses.  Mr. Aro, whose experience and ability are well known to the Court) took one witness (and wrote off the time).  Five associates (Bailey, Reidy, Sebba, Gorin and Moffett) took one witness each.  The same three partners took all but one of the cross-examinations.  The sixth associate (Williams) conducted the other examination.  Mr. Macdonald did the opening and closing.  Ms. Sterk responded to defendants' Rule 50 motion.  At least one partner (Anderson) was present for large parts of the trial but did not participate directly.

This Court applauds the firm for giving multiple lawyers, particularly the six associates, an opportunity to gain experience in a federal jury trial.  It is difficult these days for lawyers, particularly associates in large national or international law firms, to obtain opportunities to participate in trials.  The Court also applauds the firm for giving numerous lawyers the opportunity to observe depositions, take depositions, draft motions, draft discovery, and sit in on conferences.  They not only gain experience but they learn by interacting with senior lawyers of the caliber of Mr. Aro, Mr. Macdonald, Ms. Sterk, and Mr. Douglas.  The issue for the Court

today, however, is to determine how much of this labor and expense can fairly be shifted to the City.

I agree with Mr. Rogers that it is unreasonable to expect the Court to go through 61 pages of timesheets, separately provided as to each of fourteen timekeepers, single-spaced, with approximately 35 to 40 rows per page, and attempt to identify instances of duplicative time, excessive time, and otherwise inefficient or inappropriate time.  Mr. Douglas has indicated that he removed 2,609 hours recorded by the fourteen timekeepers.  I appreciate that effort.  However, the examples provided by Mr. Rogers indicate that additional culling is in order.  I undertook the line by line comparison between Ms. Wang and Ms. Rutahindurwa, but an attempt to do so as to the fourteen Epps timesheets is too much to ask.  Even more importantly, the internal culling does not account for duplication between the two law firms.

I have instead used two different approaches.  First, most simply, I have used the amount I have found to a reasonable lodestar for the Fitouri Plaintiffs and increased it by one-third to account for the somewhat larger burden that Arnold & Porter had in the case.  Admittedly, one-third is a rough estimate.  It approximately tracks the comparison of numbers of witnesses called that Mr. Douglas cited in his assessment that Arnold & Porter had the larger role, and it is a reasonable number based on my sense of the firms' relative contribution to the result in the case.  That would produce a lodestar of $1,590,761.67.

Alternatively, I calculated the total hours for the three partners who played the largest role at trial: Timothy Macdonald (678.7 hours); Michael Douglas (644.7 hours); and Diana Sterk (389 hours).  That total, 1,712.4 hours, is roughly comparable to the partner hours and rates of the Loevy & Loevy partners.  I then added the hours of the three associates who had the most hours: Patrick Reidy (763.7 hours), Leslie Bailey (555.1 hours) and Andreas Moffett (519.2

hours).[5] The total for the associates is 1,838 hours, roughly three times the number of hours I approved for Ms. Rutahindurwa.  Finally, I included half of the paralegal Joseph Chang's hours (375.8 hours).  This approach includes the hours of seven timekeepers, half the number in the application, but the same number I included in the Fitouri application.  The hours are more balanced than the Loevy & Loevy hours: 1712.4 partner hours and 2213.8 associate and paralegal hours.  The total number of hours in this approach, 3,926.2, compares to 3,040 Loevy & Loevy hours.  The fee that these hours generate totals $1,735,703.00.

    3.  <u>Conclusion: the Lodestar</u>.

Neither of these approaches is precise or perfect.  However, they represent in my judgment a reasonable effort to determine reasonable hours and reasonable rates.  They do not eliminate all duplication between the two firms, but they eliminate a great deal of it; and they reduce both firms to the number of timekeepers that I find to be reasonable given the uniqueness and difficulty of the case and the adamancy of the defense mounted by the defendant.  The Court finds that a reasonable lodestar for the Epps Plaintiffs is the average of the two approaches, $1,663,232.00.

    4.  <u>Johnson Factors</u>.

Given the nature of my approach to the Epps Plaintiffs' application, the *Johnson* factors have less applicability than they otherwise might.  My approach considers, as did my assessment of the Fitouri Plaintiffs' application, most of those factors.  Like the Fitouri counsel, the Arnold & Porter firm undertook the case on something of a contingent basis.  It was a pro bono project, but none of the 12 plaintiffs could pay hourly rates anyway.  Both firms were dependent on

---

[5] Mr. Moffett had exactly the same number of hours as another associate, Michael Sebba.  Both had one witness at trial.  I chose to include Mr. Moffett because he was a relatively new lawyer for whom, like Ms. Rutahindurwa in the Fitouri plaintiffs, I will assign a lower rate of $300 per hour.

prevailing in the case – an inevitability in my view given the videos and the unbending nature of the defense – and a fee award under § 1988(b). I am not privy to the retainer agreement between the law firm and the seven plaintiffs it represented, but I believe my determination of the lodestar is sufficient without further adjustment.

    5. <u>Award</u>.

The Court awards **$1,663,232.00** in attorney's fees to the Epps Plaintiffs.

**V. COSTS: THE FITOURI PLAINTIFS.**

The Fitouri Plaintiffs claim $25,140.29 in taxable costs pursuant to 28 U.S.C. § 1920. ECF No. 379 and $7,964.60 in additional costs pursuant to 42 U.S.C. § 1988.

**A. <u>Taxable Costs</u>.**

The Clerk deferred consideration of taxable costs because claims remain to be resolved and a final, appealable judgment had not been entered. *See* ECF No. 382. Because the Clerk did not address taxable costs, defendants chose did not address them. However, costs taxed by the Clerk are ultimately reviewable by this Court. I will address taxable costs here, but if the parties disagree with my award of those costs, they may file a Rule 59 motion after conferral.

I award the costs claimed with one exception. Trial transcripts can be useful during trial and for post-trial motions. However, for fee-shifting purposes, I do not find that these charges were necessarily obtained. *See Karsian v. Inter-Regional Financial Group, Inc.,* 13 F. Supp. 2d 1085, 1091 (D. Colo. 1998) ("As a general rule, taxation of costs for daily copy is not allowed absent prior court approval."); *Battenfeld of America Holding Co., Inc. v. Baird, Kurtz & Dobson,* 196 F.R.D. 613, 617 (D. Kan. 2000) (same); *Cribari v. Allstate Fire & Casualty Ins. Co.,* No. 16-cv-02450-NRN, 2019 WL 8375939, at *5 (D. Colo. Sept. 23, 2019) (disallowing

Realtime daily transcript costs).  I also note that there were many lawyers, paralegals and others present who could, and did, take notes.  The taxable costs awarded are:

| Category | Claimed | Awarded |
|---|---|---|
| 1. Fees, Clerk and Marshal: | $1,851.00 | $1,851.00 |
| 2. Fees for Transcripts Necessarily Obtained: | | |
| a.  Depositions: | $16,313.20 | $16,313.20 |
| b.  Sarah Mitchell (*Abay* testimony): | $108.90 | $108.90 |
| c.  Kevin Carlin/trial: | $4,334.98 | $0.00 |
| d.  Therese Lindblom/trial: | $2,034.87 | $0.00 |
| 3. Fees/Disbursements Printing and Witnesses: | $0.00 | $0.00 |
| 4. Fees, Exemplification and Copies | $497.34 | $497.34 |
| 5. Docket Fees under Section 1923: | $0.00 | $0.00 |
| 6. Compensation of Court Appointed Experts, etc.: | $0.00 | $0.00 |
| Total | $25,140.29 | $18,770.44 |

## B.  **Additional Costs**

Plaintiffs claim $7,964.64 in additional costs pursuant to 42 U.S.C. § 1988(b)(1).  ECF No. 380 at 14.  Defendants object only to the transportation and hotel costs for Ms. Rutahindurwa.  ECF No. 380-14.  In response plaintiff cites *M.B. v. Howard,* 555 F. Supp. 3d 1047 (D. Kan. 2021) for the proposition that prevailing parties can recover attorney travel fees. *Id.* at 1079.  However, that court disallowed travel-related costs, citing *Animal Legal Def. Fund v. v. Kelly,* No. CV 18-2657-KHV, 2020 WL 40000905 (D. Kan. July 15, 2020).  *Id.*  In *Animal Legal Def. Fund* Judge Vratil stated, "courts within this Circuit have interpreted this to mean that such fees are recoverable where the case demands particular skill or experience."  *Id.* at *7.  *See also HomeAway.com, Inc. v. City of New York,* 523 F. Supp. 3d 573, 600 (S.D.N.Y. 2021)

(awarding travel-related expenses where the out of state lawyer had extensive experience representing the same client in similar litigation).

I agree with defendants on this point. Ms. Rutahindurwa was a new associate in the Chicago office of Loevy & Loevy and was assigned to the case shortly after passing the bar and joining the firm. It is not reasonable in the circumstances to expect the City to pay Ms. Rutahindurwa's travel-related expenses. I therefore award the following additional costs:

| Category | Claimed | Awarded |
|---|---|---|
| 1. Legal Research (Pacer and Westlaw) | $2,038.18 | $2,038.18 |
| 2. Video | $51.89 | $51.89 |
| 3. Postage and communications | $352.73 | $352.73 |
| 4. Mediation | $1,499.92 | $1,499.92 |
| 5. Travel-related costs for Ms. Rutahindurwa. | $4,021.88 | $0.00 |
| Total: | $7,964.60 | $3,942.72 |

### C. **Total Costs**.

The Court awards the Fitouri Plaintiffs costs in the amount of **$22,713.16**.

## VI.  COSTS: THE EPPS PLAINTIFFS.

The Epps Plaintiffs claim $61,815.38 in "taxable costs" pursuant to 28 U.S.C. § 1920 and $34,368.67 in additional costs pursuant to 42 U.S.C. § 1988. ECF No. 378 at 21.

### A. **Taxable Costs**.

For the same reason discussed above, I decline to shift the costs of trial transcripts and real time fees to the defendant. The Court awards taxable costs as follows:

| Category | Claim | Award |
|---|---|---|
| 1. Fees, Clerk and Marshal: | $616.00 | $616.00 |

2. Fees for Transcripts Necessarily Obtained:

| | | |
|---|---|---|
| a. Depositions: | $33,152.52 | $33,152.52 |
| b. Transcript (hearing) | $125.35 | $125.35 |
| c. Transcript (Trial Prep. Conf.) | $132.30 | $132.30 |
| d. Trial transcripts and Realtime feed: | $16,964.15 | $0.00 |
| e. Transcript (Trial Prep. Conf. 2/4/22) | $87.30 | $87.30 |

| | | |
|---|---|---|
| 3. Fees/Disbursements Printing and Witnesses: | $10,517.52 | $10,517.52 |
| 4. Fees, Exemplification and Copies | $220.24 | $220.24 |
| 5. Docket Fees under Section 1923: | $0.00 | $0.00 |
| 6. Compensation of Court Appointed Experts, etc.: | $0.00 | $0.00 |
| Total | $61,815.38 | $44,851.23 |

## B. **Additional Costs.**

Defendants object only to $6,874.00 in Relativity hosting (electronic data hosting) costs.

ECF No. 414 at 13.  They state that plaintiffs provided no authority, and defendant could find

none, supporting the award of such costs under 42 U.S.C. § 1988.  Plaintiffs did not address this

objection in their reply.  ECF No. 423.

"Relativity is 'a standard document management service that allows attorneys to

organize, manage and review documents electronically in connection with litigation.'" *Massuda

v. Panda Express, Inc.,* No. 12cv9683, 2014 WL 148723, at *4 (N.D. Ill. Jan. 15, 2014).  The

*Massuda* case denied recovery of relativity costs under 28 U.S.C. § 1920(4), which allows "fees

for exemplification and the costs of making copies of any materials."  *Id.* at *6.  Other courts

have similarly declined to award hosting costs under § 1920(4).  *See, e.g., Mendoza v. Lithia

Motors, Inc.,* No. 6:16-cv-01264-AA, 2021 WL 354108, at *5 (D. Or. Feb. 2, 2021); *Consumer

Financial Protection Bureau v. Weltman, Weinberg & Reis, Co., L.P.A.,* 342 F. Supp. 3d 766,

771 (N.D. Ohio 2018); *Eolas Technologies Inc. v. Adobe Systems, Inc.,* 891 F. Supp. 2d 803, 807

(E.D. Tex. 2012).  On the other hand, this Court recently allowed a plaintiff to recover Relativity

data hosting costs under the terms of a private contract providing for an award of reasonable

expenses.  *ORP Surgical, LLP,* 2022 WL 16924068, at *13.

The issue here is whether these costs are recoverable under 42 U.S.C. § 1988.  "[A]n

award of costs under § 1988 normally includes those reasonable out-of-pocket expenses incurred

by the attorney and which are normally charged to fee-paying clients."  *HomeAway.com, Inc.,*

523 F. Supp. 3d at 589.  This includes "such items as legal research, photocopying, postage,

transportation, and filing fees."  *Id.*  As indicated, plaintiffs did not reply to defendants'

argument that these costs should not be awarded.  They have not indicated that electronic data

hosting costs are normally incurred and charged to fee-paying clients.  In the circumstances, I

will exercise my discretion not to shift these costs to the City in this case.  The Court awards the

following additional costs to the Epps Plaintiffs:

| Category | Claim | Award |
|---|---|---|
| 1.  Relativity Hosting | $6,874.00 | $0.00 |
| 2. Westlaw Research | $26,292.00 | $26,292.00 |
| 3.  Mediation | $1,202.67 | $1,202.67 |
| Total | $34,368.67 | $27,494.67 |

### C.  Total Costs.

The Court awards the Epps Plaintiffs costs in the amount of **$72,345.90.**

### VII.  PREJUDGMENT INTEREST.

In its non-final Judgment on the jury verdict entered on April 15, 2020, the Court stated,

"FURTHER ORDERED that in the discretion of the Court, pre-judgment interest might be

awarded to the plaintiffs, and if so, in an amount to be determined."  ECF No. 360 at 4.  Neither

plaintiff has filed a motion for an award of prejudgment interest as such.  However, the parties have addressed that subject in the course of briefing cross-motions for judgment under Rule 54. *See* ECF Nos. 434 and 440.  I am not resolving the cross-motions in this order.  However, I have reviewed the portions of their briefs that addressed prejudgment interest, and I will resolve that issue in this order.

Plaintiffs seek an award of prejudgment interest.  They assert that prejudgment interest is "routinely granted" on economic damages, and that the Court has discretion to award prejudgment interest on noneconomic damages.  ECF No. 434 at 3.  Recognizing that the Court has also has discretion to determine an appropriate rate of prejudgment interest, plaintiffs note that courts in this district have variously used Colorado's statutory interest rate of 8% compounded annually; the federal post-judgment rate per 28 U.S.C. § 1961; and the IRS underpayment rate per 26 U.S.C. § 6621.  *Id.* at 4-5.  They urge the Court to "apply the Colorado statutory interest rate to fairly compensate Plaintiffs 'for being deprived of the monetary value of [their] loss from the time of the loss to the payment of judgment.'" (citing *Anixgter v. Home-Stake Prod. Co.,* 977 F.2d 1549, 1554 (10th Cir. 1992)).  *Id.* at 5.

Defendants oppose any award.  "Prejudgment interest is designed to compensate a plaintiff for the 'monetary value of his loss.'"  ECF No. 440 at 3 (quoting *White v. Wycoff,* No. 13-cv-01761-CMA-MJW, 2016 WL 9632932, at *1 (D. Colo. Aug. 7, 2016)).  Here, however, with the exception of Epps Plaintiff Zachary Packard who incurred $181,000 in medical bills, no plaintiff presented evidence of a monetary loss; and, therefore, prejudgment interest would be punitive, not compensatory.  *Id.* at 3.

"An award of prejudgment interest is within the district court's discretion."  *Resolution Trust Corp. v. Federal Savings and Loan Ins. Corp.,* 25 F.3d 1493, 1506 (10th Cir. 1994).  That

principle applies equally to actions brought under 42 U.S.C. § 1983.  *See White v. Chafin,* 862 F.3d 1065, 1066-67 (10th Cir. 2017.

The Court finds that, with the exception of Zachary Packard, an award of prejudgment interest would not be equitable or appropriate.  The other eleven plaintiffs did not establish any economic loss.  They sustained noneconomic damages that did not occur at any specific moment in time.[6]  Rather, per their testimony, their emotional and other noneconomic injuries began during the protests and have continued thereafter.  Several courts in this district have declined to award prejudgment interest on noneconomic damages.  *See, e.g., Valenzuela v. Coleman,* No. 18-cv-00329-CMA-STV, 2022 WL 2528330, at *12 (D. Colo. July 7, 2022) (prejudgment interest on noneconomic damages is not "compensatory" because it does not represent "the return of the loss of the use of money"); *Echon v. Sackett,* No. 14-cv-PAB-NYW, 2019 WL 8275344, at *10 (D. Colo. Feb. 12, 2019) ("Assessing prejudgment interest on plaintiffs' non-economic damages would be 'fundamentally at odds' with the compensatory purpose of prejudgment interest)(quoting *White v. Wycoff,* 2016 WL 9632932 at *), *aff'd,* 809 F. App'x 468 (10th Cir. 2020) (unpublished); *Clawson v. Mt. Coal Co.,* No. 01-cv-MSK-MEH, 2007 WL 201253, at *14 (D. Colo. Jan. 24, 2007) (prejudgment interest is "incompatible with the concept of noneconomic damages").

Whether or not prejudgment interest could ever be awarded on noneconomic damages, however, this Court rejects the suggestion that more money is necessary for these plaintiffs to be fairly compensated in this case.  They have received very substantial monetary awards.  In addition, their attorney's fees and costs are being paid.  I also bear in mind that we are talking

---

[6] Instruction No. 19 instructed the jury to consider "[a]ny noneconomic losses or injuries which plaintiff has had to the present time or which plaintiff will probably have in the future, including: physical and mental pain and suffering, inconvenience, emotional stress, impairment of the quality of life, loss of liberty, and the inability to exercise one's constitutional rights."  ECF No. 340 at 25.

about a total judgment exceeding $16.5 million against a governmental entity, ultimately to be paid by the taxpayers.

Mr. Packard did prove economic damages of $181,000 (medical bills).  He received an award of damages from the jury of $3,000,000.  One might wonder whether $3 million is enough to compensate him for his economic and noneconomic damages.  However, courts typically award prejudgment interest on economic damages, and I will do so here.

I do not know the exact date or dates when Mr. Packard sustained his economic damages. Defendant suggests that the prejudgment interest for Mr. Packard should run from the date of his injury, May 31, 2020.  *See* ECF No. 440 at 6.  Giving him the benefit of the doubt, the Court exercises its discretion to award prejudgment interest to Mr. Packard on $181,000 from May 31, 2020 to the date when the Court enters its final judgment.  There is no federal statutory rate for prejudgment interest.  The record contains no evidence that 8% compounded annually would be reasonable compensation for his loss of use of the money during the time period in question.  In my judgment, it would overcompensate that loss.  The Court finds that the federal post-judgment rate as determined pursuant to 28 U.S.C. § 1961 would be a reasonable rate to use for prejudgment interest for Mr. Packard in this case.

## VIII.  ORDER.

1.  The Epps Plaintiffs' motion for attorney's fees and costs, ECF No. 378, is GRANTED IN PART AND DENIED IN PART.  Attorney's fees and costs are awarded as provided in this order.

2.  The Fitouri Plaintiffs' motion for attorney's fees and costs, ECF No. 380, is GRANTED IN PART AND DENIED IN PART.  Attorney's fees and costs are awarded as provided in this order.

3.  The Epps Plaintiffs' request for an award of prejudgment interest, embedded in an exchange of briefs on separate motions, is GRANTED IN PART AND DENIED IN PART. Prejudgment interest is granted as to plaintiff Zachary Packard as provided in this order.  The request is otherwise denied.

4.  The Fitouri Plaintiffs' request for an award of prejudgment interest, embedded in an exchange of briefs on separate motions, is DENIED.

DATED this 30th day of December, 2022.

BY THE COURT:

_____

R. Brooke Jackson
Senior United States District Judge