IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01878-RBJ
(consolidated with 20-cv-01922-RBJ-MEH)

ELISABETH EPPS, *et al.*,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

    Defendants.

## DEFENDANT'S TRIAL BRIEF

Defendant City and County of Denver, Colorado ("Denver"), through undersigned counsel, hereby respectfully submit this Trial Brief, as follows:[1]

### I. NO POSSIBILITY EXISTS FOR THIS MATTER TO BE TRIED IN ONE-WEEK BASED ON THE PLAINTIFFS' PROPOSED WITNESS AND EXHIBIT LISTS

Pursuant to this Court's Order [ECF 425], the parties have exchanged preliminary witness and exhibit lists. Final preliminary witness and exhibit lists are to be submitted to this Court on April 11, 2023, the same date as this Trial Brief. [ECF 461]. Plaintiffs' witness list provided to counsel for the Defendant includes five will call witnesses and 31 may call witnesses. Plaintiffs' exhibit list consists of 442 exhibits. In a five day jury trial, equally dividing the time for each side to present its case and excluding the time for voir dire, jury instructions, opening statements and

---

[1] This Trial Brief raises issues requiring decisions by this Court either on a pretrial basis or during the trial. Counsel for Denver will be prepared to discuss these issues at the Trial Preparation Conference before this Court.

closing arguments, each side will have approximately two days for witness testimony. A typical trial day allows 5 to 5 ½ hours of testimony. No possibility whatsoever exists for Plaintiffs to call all these witnesses and introduce all these exhibits in 10-11 hours of trial time. As a result, Denver respectfully requests this Court order the Plaintiffs to provide actual, realistic witness and exhibit lists based on the limited time period for Plaintiffs' presentation of evidence as soon as possible. Denver also requests this Court order Plaintiffs to provide an Order of Proof on or before April 19, 2023.

Denver anticipates Plaintiffs will raise the number of witnesses and exhibits on Denver's lists. Counsel for Denver agrees there are too many witnesses and exhibits to be presented on Denver's witness and exhibit lists during the available trial time. However, because Denver's presentation of evidence follows the Plaintiffs' presentation it is necessarily reactive to the evidence introduced by the Plaintiffs and permitted by this Court. Denver will be able to streamline its witness and exhibit lists once the Plaintiffs do so and as a result of guidance provided by this Court at the Final Trial Preparation Conference. Denver will also be able to further reduce its planned witnesses during the trial itself based on the evidence actually allowed.

## II. MOST OF PLAINTIFFS' ANTICIPATED EVIDENCE IS IRRELEVANT TO THE ISSUES TO BE DETERMINED AT TRIAL

This Court's June 28, 2021, Order on Fitouri Plaintiffs' Motion for Class Certification defined the Arrest Class as follows:

> Those persons who were present at or during the protests in downtown Denver, Colorado, from May 30, 2020 through June 5, 2020, who were arrested for violation of emergency curfew (D.R.M.C. 1-13), and in some cases were also arrested on an accompanying charge of failure to obey a lawful order (D.R.M.C. 38-31(c)), who were taken into custody and detained for some period of time, but who were not charged with any other violations, and whose charges were dismissed.

[ECF 127, at 8 (footnote omitted)].  By its terms, the Arrest Class concerns the *fact of arrest*. Nowhere in this Court's Order is there any indication the *manner of arrest* is part of the class.  If a class member had a claim related to the manner of their arrest such as the force used to effectuate the arrest, then such a claim must be pursued separately from the arrest class.[2]  Further, there is nothing in this Court's Order suggesting conduct of the police related to any arrest class member other than their arrest is at issue.  Again, any class member who had a claim related to other actions by the police during the protests generally was required to separately litigate such a claim.  Indeed, class representatives Claire Sannier and Kelsey Taylor were Plaintiffs at last year's jury trial, testified regarding the force used to effectuate their respective arrests, and received substantial verdicts based on their non-arrest claims.

Plaintiffs' witness and exhibit lists reveal an intent to attempt to introduce evidence related to other police activities during the protests.  For example, Plaintiffs' exhibit list includes many videos introduced during the last trial and discussed by Plaintiffs' expert Norman Stamper.  Those videos show police using less-lethal weapons in a variety of different circumstances.  However, they do not show arrests of any class members.  Introduction of evidence related to police use of force as previously presented before this Court on these videos is irrelevant to the arrest class claims and its introduction at this trial would also be highly prejudicial to Denver under Fed. R. Evid. 403.

### III. THE EMERGENCY CURFEW WAS FACIALLY CONSTITUTIONAL

This Court's Order on Denver Defendants' Motion for Summary Judgment [ECF 304] does

---

[2] Additionally, a manner of arrest claim is necessarily grounded in the Fourth Amendment and would therefore potentially also be precluded based on this Court's summary judgment order granting summary judgment on the arrest class' Fourth Amendment claims.  [ECF 304, at 10-11].

not specify whether this Court concluded the Emergency Curfew was facially constitutional. Denver believes a fair reading of this Court's Order supports the conclusion this Court implicitly determined the Emergency Curfew was facially constitutional for several reasons. First, nothing in the Order specifically addresses a facial challenge and the standard for a facial challenge to a municipal ordinance requires analysis of whether the Emergency Curfew was "unconstitutional in all of its applications." *United States v. Salerno,* 481 U.S. 739, 745 (1987); *Scherer v. United States Forest Serv.,* 653 F.3d 1241, 1243 (10th Cir. 2011). Second, this Court's conclusion the summary judgment record supported both a "neutral curfew" and a "protest-targeted curfew" suggests a selective enforcement as-applied challenge. [ECF 304, at 5-6]. *Compare Wells v. City & Cnty. of Denver,* 257 F.3d 1132, 1151 (10th Cir. 2001) (describing selective enforcement challenge as an as-applied challenge). Third, this Court granted summary judgment on the class' Fourth Amendment claims based on the conclusion the arresting officers reasonably believed the Emergency Curfew was valid. [ECF 304, at 10-11]. The absence of any individual officer as a defendant supports the conclusion the Emergency Curfew was facially valid. Fourth, nowhere did Plaintiffs challenged the Mayor's authority to enact the Emergency Curfew or present any evidence about the intent to adopt the Emergency Curfew, let alone evidence of some unconstitutional intent animating the decision.

As postured, this is an as-applied challenge. Denver believes the facial constitutionality of the Emergency Curfew is important to assessing the admissibility of evidence at trial as well as jury instructions and as a result requests this Court specifically address the issue on a pretrial basis.

4

## IV.  NOTHING ABOUT THE RESULT OF THE PRIOR TRIAL IS RELEVANT AND INTRODUCTION OF EVIDENCE RELATED TO THE FIRST TRIAL WOULD BE PREJUDICIAL TO DENVER

Denver maintains other than during *voir dire*, nothing about last year's trial and verdict is relevant to anything at issue in this trial.  Neither Ms. Sannier nor Ms. Taylor, nor counsel for the Plaintiffs should be able to introduce any evidence related to the prior trial and its result. An such evidence is wholly irrelevant and unduly prejudicial to Denver under Fed. R. Evid. 403.

## V.  PICTURES OF GEORGE FLOYD AND DEREK CHAUVIN SHOULD NOT BE ADMITTED AT TRIAL

Plaintiffs have listed pictures of both George Floyd and Derek Chauvin as trial exhibits. Defendants object to these pictures as irrelevant and unduly prejudicial.  The fact the protests occurred following the murder of Mr. Floyd can of course be discussed at trial.  However, there is no evidentiary significance to a picture of either Mr. Floyd or Mr. Chauvin to any issue in dispute at trial and showing the jury their pictures violates Fed. R. Evid. 403 in Denver's view.

## VI.  ANY BIFURCATION OF LIABILITY AND DAMAGES REQUIRES FURTHER GUIDANCE FROM THIS COURT

While the issue has not been formally raised, Denver understands Plaintiffs may seek bifurcation of liability and damages suggesting the current trial date be utilized for a liability trial followed by subsequent proceedings involving damages.  Denver believes bifurcation presents multiple issues requiring discussion and decisions by this Court before Denver can take a formal position on the propriety of bifurcation of liability and damages.[3]

---

[3] Plaintiffs have not been consistent on this issue.  Discussion has occurred with respect to bifurcation of liability and damages, specifically after counsel for the Plaintiffs' initial proposed jury instructions and verdict form did not include damages.  Early this morning, Plaintiffs' revised jury instructions for the first time included compensatory damages.  Plaintiffs now apparently believe they can place all their liability and damages evidence on in 10-11 hours of testimony.  If

Initially, this Court's Order certifying the arrest class contemplated both liability and damages of the class being determined. [ECF 127, at 7]. Nothing in this Court's summary judgment Order altered this determination. [ECF 304]. Nothing in the parties' request to set the arrest class for trial or this Court's trial setting suggested bifurcation. [ECF 363 & 366]. Plaintiffs have not filed any motion for separate trials under Fed. R. Civ. P. 42.

Any consideration of separate trials of liability and damages for the arrest class will require careful planning by counsel for the parties and this Court. Many logistical, practical and legal questions require consideration and determination.

First, the relevant evidence for a liability only trial is limited. As discussed above, Denver maintains this is a fact of arrest case only. Denver does not believe there is any dispute as to the fact each of the members of the arrest class were arrested. Indeed, the identification of the arrest class members as class members served to establish the fact of their arrests and Denver will stipulate to the fact of the arrests. Accordingly, Denver does not believe any of the arrest class members will have relevant evidence to testify about at trial. The manner of arrest is not relevant. Any individual experiences related to the fact of arrest and the length of detention for any individual class member, while potentially relevant to damages, is not relevant to liability. If Plaintiffs believe any class member has relevant evidence to liability, Denver requests this Court require an offer of proof so the issue can be determined prior to the testimony of any class member.

Second, assuming separate liability and damages trials occur, counsel for the parties and this Court will need to address how they should occur. Denver believes it neither makes sense nor

---

so, Denver can be prepared to present its damages evidence at trial. However, the matter of how damages for each class member are to be determined, and particularly those who do not testify at trial, needs to be determined.

6

is it practical to have each of the 312 class members testify in a damages proceeding. Instead, Denver would propose each side identify one or two class members in the following different categories of class members to act as bellwether class members to determine the damages for each class member: (1) class members arrested and detained for less than 12 hours; (2) class members arrested and detained between 12-24 hours; (3) class members arrested and detained between 24-48 hours; and (4) class members arrested and detained for more than 48 hours.[4] A determination of the amount of damages for each of the bellwether class members would be binding on each of them individually, and then the average for the class members chosen in one of the above four categories would be binding on the remainder of the class members in the specific category.

     No discovery occurred related to the individual class members. Accordingly, for Denver to be able to appropriately select bellwether class members to create a fair damages proceeding, Denver would need to conduct some discovery on selected class members. Denver proposes identifying five potential bellwether class members in each of the above categories and serving them each five interrogatories and five requests for production of documents. Denver would then conduct a deposition of any bellwether class member chosen by either party (other than the named class representatives who already were deposed and who testified at the prior trial). While Denver recognizes this approach is unconventional, counsel believes it makes more sense than attempting to make 312 individual damages determinations. Absent some discovery on class member damages, Denver cannot agree to any bellwether approach due to the lack of access to any

---

[4] Denver has arrest and detention records for the class members. However, a total of 27 class members had their arrest and criminal records sealed pursuant to Colorado law. An appropriate court order related to these sealed records will need to be sought and obtained before counsel for Denver can access them or produce them to counsel for the Plaintiffs.

meaningful information about the class members in comparison to the Plaintiffs' unfettered access as their counsel.

A decision would also need to be made on how to conduct a damages trial. Denver believes the most efficient and practical way to handle damages would be to hold damages hearings before this Court or before an assigned Magistrate Judge or Special Master. This would allow more streamlined proceedings and could accommodate a piecemeal presentation of damages evidence without requiring all of the bellwether class members being present at the same time and location. Alternatively, a jury trial on damages with a bellwether approach could occur with careful consideration and instruction including specifically informing a damages jury about what is occurring so that they can understand and appreciate their task in determining damages for all 312 arrest class members.

Finally, because this matter is a class action, Denver believes the contours of any damages proceeding is ultimately a decision by this Court either based on a stipulation of the parties or as this Court determines appropriate based on applicable law.[5]

---

[5] Counsel for Denver conferred with counsel for the Plaintiffs concerning this proposal. Counsel for the Plaintiffs appears to agree on a bellwether approach based on category. However, counsel for the Plaintiffs objects to a trial of damages to the Court or any discovery conducted by Denver on the class members to allow selection of bellwether class members. Plaintiffs position on discovery is that discovery concluded. Denver maintains not allowing limited discovery makes it impossible for counsel for Denver to select bellwether class members, essentially granting all access and all control to counsel for the Plaintiffs and not making the bellwether trial representative of the class as a whole.

WHEREFORE, Defendant City and County of Denver, Colorado, respectfully submits the foregoing Defendant's Trial Brief.

Dated this 11th day of April, 2023.

Respectfully submitted,

s/ Andrew D. Ringel                           .
Andrew D. Ringel, Esq.
Robert A. Weiner, Esq.
Katherine N. Hoffman, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
Telephone: (303) 628-3300
Facsimile: (303) 628-3368
E-mail: ringela@hallevans.com
weinerr@hallevans.com
hoffmank@hallevans.com

*Counsel for Defendant the City and County of Denver*

**CERTIFICATE OF SERVICE (CM/ECF)**

      I hereby certify that on this 11th day of April, 2023, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve the following all counsel of record in this matter.

                                          *s/Nicole Marion*, Legal Assistant to
                                          Hall & Evans, L.L.C.