IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01878-RBJ (consolidated with 20-cv-01922-RBJ)

ELISABETH EPPS, *et al.*,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

    Defendants.

---

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

---

After more than three years of hard-fought litigation—a path that took the parties through discovery, class certification, summary judgment, and to the eve of trial—Denver and the Curfew Arrest Class Plaintiffs have reached a proposed class action settlement that, if approved, will likely be the largest settlement of First Amendment claims in Denver's history. And, the proposed settlement is substantial when comparing the most relevant part of any class settlement: how much will individual class members receive. In all, the settlement agreement (the "Settlement") can only be characterized as precedent setting, and for the reasons explained below, is deserving of this Court's preliminary approval.

Defendant City and County of Denver ("City") has agreed to pay $4,720,000.00, from which all class members' claims (as well as attorneys' fees and claims administration expenses) will be paid. Each class member who does not exclude themselves from the class settlement will be entitled to between approximately $2,800 to $16,800 each, depending on the amount of time they spent in custody (and after payment of the costs of claims administration and attorneys' fees).

Individuals who were incarcerated for longer amounts of time will be entitled a larger share of the settlement. Because the identities of the class members have been determined through the City's records (supplemented, where necessary, by interviews conducted by Class Counsel), the Settlement does not require class members to send in claim forms. Each class member who does not exclude themselves will receive a check for their share of the fund; checks that are not cashed within a specified amount of time will be redistributed to other class members, on a *pro rata* share basis. Also important, the Settlement provides meaningful prospective relief requiring the City to refrain from imposing a selectively-enforced curfew in the future.

Given this backdrop, the Settlement should be viewed as fair, adequate, and reasonable, and well within the range of possible approval. Accordingly, the Class Plaintiffs respectfully request that the Court enter an Order (i) granting preliminary approval to the Settlement; (ii) approving the proposed notice plan, and (iii) scheduling a final fairness hearing.

**Certificate of Conferral**

Defendant Denver and the Plaintiffs have conferred, and Denver does not oppose the motion for preliminary approval. Denver agreed to the settlement, Ex. 1 (Settlement Agreement), and has reviewed and agrees to the proposed notice, Ex. 2 (proposed notice; also Ex. B to the Settlement Agreement).

**I.   FACTUAL BACKGROUND**

The Court is familiar with the facts of this case and described it in detail in its March 1, 2022, summary judgment order. Dkt. 304. The trial on the Class Plaintiffs' claims was set for April 24, 2023. The parties engaged in settlement negotiations leading up to the trial, with the assistance of Magistrate Judge Kristen L. Mix, acting as a mediator. Specifically, the parties exchanged

several letters setting forth their settlement positions in the weeks leading up to a mediation on March 30, 2023. The parties agreed to a settlement conditioned on final decisionmaker approval. *See* Dkt. 459. However, the condition was not met. With the assistance of Magistrate Judge Mix, the parties resumed negotiations. Ex. 3 (Wang Decl.) ¶ 5. The parties reached an agreement on the basic terms with the Mayor's approval on April 13, 2023. Dkt. 471. The parties then worked on drafting the terms of the written settlement agreement. Due to the changeover in City Council, Council approval was delayed for several weeks. However, on August 28, 2023, City Council approved the Settlement, a copy of which is attached as Exhibit 1.[1]

## II.     TERMS OF THE SETTLEMENT

The core terms of the Settlement are summarized below and set forth in full detail in the Settlement Agreement attached as Exhibit 1.[2]

**A.     Class Definition:** The definition of the "Class" in the Agreement is unchanged from the class certified by the Court in its certification order (Dkt. 127):

> Those persons who were present at or during the protests in downtown Denver, Colorado, from May 30, 2020 through June 5, 2020, who were arrested for violation of emergency curfew (D.R.M.C. 1-13), and in some cases were also arrested on an accompanying charge of failure to obey a lawful order (D.R.M.C. 38-31(c)), who were taken into police custody and detained for some period of time, but who were not charged with any other violations, whose charges were dismissed, and who did not previously exclude themselves from this lawsuit.

Ex. 1 ¶ 1.1 (*compare with* Dkt. 127 at 8).

---

[1] *See* https://denver.legistar.com/LegislationDetail.aspx?ID=6323448&GUID=3C29D91C-CC6D-455A-B191-32A4F5C1CF14&Options=&Search=

[2] The Settlement references two attachments, Exhibit A, the list of class members, and Exhibit B, the proposed notice. Since the proposed notice is already attached to this motion as Exhibit 2, Exhibit 1 contains only the Settlement and Exhibit A (list of class members).

**B.     Monetary Relief:** The City has agreed to create a common fund of $4,720,000.00, from which all class members will be paid, as well as all settlement administration expenses and any court-approved attorneys' fee award. Ex. 1 ¶¶ 1.12 (definition of "Gross Fund Value"), 3 (establishment of "Gross Fund Value"). The amount of the settlement funds that will go to class members (after Settlement Administration Expenses and any Court-approved Fee Award) is defined as the "Net Fund Value." *Id.* ¶ 1.14.

The Net Fund Value will be paid to class members according to the following formula: class members detained for up to 12 hours are entitled to 2 shares; class members detained for over 12 and up to 24 hours are entitled to 4 shares; class members detained for over 24 and up to 48 hours are entitled to 8 shares; and class members detained for over 48 hours are entitled to 12 shares. *Id.* ¶ 4.1. Each class member's amount of time in detention will be presumed reflected by the arrest and detention center documents produced in discovery by the City, unless a different amount of time in detention is confirmed through an interview of the class member by class counsel. *Id.* Class members whose amount of time cannot be determined from documents produced in discovery or through an interview with Counsel will be presumed to be entitled to 4 shares.[3] *Id.*

A professional settlement administrator—Kurtzman Carson Consultants d/b/a KCC—will be responsible for maintaining the Qualified Settlement Fund into which the City will deposit the Gross Fund Value, and KCC will be responsible for distributing the settlement amounts to the class members. *Id.* ¶¶ 1.26, 3, 4.3. The settlement amount is non-reversionary. *Id.* ¶ 3. Class Counsel will provide the list of class members (with last known addresses) to KCC for distribution

---

[3] Based on the number of class members in each category, the cost of settlement/claims administration, and assuming a 1/3 (33%) of the common fund fee award, Class Counsel calculates that class members will receive between approximately $2,800 to $16,800 each. (The amount could be more if there are uncashed checks from the first round of payments.)

of the settlement checks. *Id.* ¶ 1.3. Class members *will not* need to submit any claim form. Class members who do not exclude themselves from the settlement by the opt-out date will simply receive checks. *Id.* ¶¶ 1.27, 4.3, 8.5. This greatly simplifies the claims process and ensures that more class members will obtain compensation. The settlement checks will remain negotiable for 150 calendar days from its issuance. *Id.* ¶ 4.4. KCC will redistribute funds from any uncashed checks to other Settlement Class Members on a *pro rata* basis (within the category) in a second round of payments, if applicable. *Id.* ¶ 4.5. If necessary, uncashed checks from the second round of payments will be made to an appropriate *cy pres* recipient, for which the parties will seek Court approval. *Id.*

KCC will, under the supervision of the Court, administer the relief provided in the Settlement and provide timely reports to the parties. *Id.* ¶ 9. Based on KCC's estimate, the cost of settlement administration will be approximately $29,000. Ex. 3 ¶ 7.

**C.** **Settlement Fund Payments:** The City will pay $4,720,000 into a Qualified Settlement Fund maintained by KCC within 15 days of entry of the preliminary approval Order. Ex. 1 ¶ 1.28. KCC will send checks to Settlement Class Members via first-class U.S. Mail within 60 days of the Effective Date. *Id.* ¶ 4.3.[4] As discussed above, there may be a second round of payments to class members if there are uncashed checks from the first round of payments.

**D.** **Prospective Relief:** The City has agreed not to target enforcement of any future emergency curfew order against individuals engaged in First Amendment or protest activity. *Id.* ¶ 5.

---

[4] The "Effective Date" is the first business day after the Court has entered an order finally approving the Settlement Agreement, following notice to the class and a final approval hearing and has entered Final Judgment (defined as "the Final Judgment and order(s) to be entered by the Court approving the Settlement Agreement and determining the Fee Award."). Ex. 1 ¶¶ 1.9, 1.10, 12.1.

E.	**Payment of Notice and Administration Expenses, Including Notice:** Payment of settlement administration expenses is included in the Gross Fund Value. *Id.* ¶¶ 1.12, 1.25, 3.

F.	**Attorneys' Fees:** The City has agreed that Class Counsel shall be entitled to a reasonable award of attorneys' fees and costs in an amount to be determined by the Court and paid from the Qualified Settlement Fund. *Id.* ¶ 6. The Settlement provides that Class Counsel's request for attorneys' fees and unreimbursed costs will be a maximum of 35% of the Gross Fund Value ("Maximum Fee Request."). *Id.* ¶ 6.1. This cap was not part of the settlement negotiations, and Class Counsel agreed to it with no additional consideration from the City. Ex. 3 ¶ 6. Consistent with Rule 23(h), Class Counsel will file a separate motion for attorneys' fees, Fed. R. Civ. P. 23(h)(1), and they intend to request 33% of the common fund—less than the maximum allowed by the Settlement.[5] Any award of attorneys' fees will be paid on the same schedule as class members' claims. *See* Ex. 1 ¶ 6.2.

G.	**Release of Liability:** In exchange for the monetary and prospective relief described above, each "Settlement Class Member" will be deemed to have released and forever discharged the City from any claims related to the certified claims of the Class that were left for trial against the City, relating to the constitutionality of the Emergency Curfew enacted by the City between May 30 and June 5, 2020, and the arrests and detentions of the class members. *Id.* ¶ 1.21. The released claims do not include any class member's individual First, Fourth, or Fourteenth Amendment claims unrelated to the constitutionality of the curfew and the arrests and detentions

---

[5] Class Counsel's forthcoming motion for attorneys' fees will be filed in short order and explain the reasonableness of Counsel's request for fees.

of the class members, or any claims not certified for class treatment by the Court and left for trial. *Id.*

## III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval of a proposed class action settlement based on a finding that the agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23 also requires consideration of whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposed settlement treats class members equitably relative to each other. *Id.* The Tenth Circuit has instructed courts to consider whether:

> (1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable.

*Tenille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (citation and internal quotation marks omitted). Accordingly, the Court should consider the Rule 23 factors but also address the Tenth Circuit's factors. *See In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021).

The first step—preliminary approval—"is at most a determination that there is … 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *German v. Holtzman Enterprises, Inc.*, 2023 WL 3585212, at *1 (D. Colo. May 22, 2023) (citation and internal quotation marks omitted). "A proposed settlement of a class action under Rule 23 should be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives" *Id.* (citation and internal quotation marks omitted). The purpose

7

of preliminary approval is for the Court "to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness." *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015) (citation and internal quotation marks omitted). Once preliminary approval is granted, class members are notified of the settlement, and the Court and parties proceed to the second step—the final fairness determination. *See* Fed. R. Civ. P. 23(e)(2). A summary version of the analysis occurs at the preliminary approval stage. Here, each factor supports the Settlement. (Plaintiffs address related/overlapping factors together below.)

### A. The Class Representatives and Class Counsel Have Adequately Represented the Class

Here, the Class Representatives and Class Counsel have adequately represented the Class. "Adequate representation is usually presumed in the absence of contrary evidence." *CO Craft, LLC v. GrubHub Inc.*, 2023 WL 3763525, at *12 (D. Colo. June 1, 2023) (citation and internal quotations omitted). The adequacy inquiry "serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Determining adequacy turns on two questions: (1) whether named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether named plaintiffs and their counsel have vigorously prosecuted the action on behalf of the class.

The answers to these questions are no and yes, respectively. First, there are no conflicts of interest between the Class Representatives (Claire Sannier and Kelsey Taylor) or Class Counsel and the Class. Second, the Class Representatives and Class Counsel have vigorously prosecuted this case on behalf of the Class. Class Representatives have had the interests of the class in mind at every stage of litigation. Class Counsel engaged in extensive investigation and interview of class members, both during discovery and in preparation for trial, in order to fully understand the

8

strengths and weaknesses of the claims. Class Counsel also intensively litigated the claims, seeking targeted discovery from the City regarding the arrests and the curfew, briefing class certification and summary judgment, and preparing for trial. Class Counsel's discovery efforts also resulted in the production of key text messages showing that DPD policymakers—at the highest levels—implemented a policy of enforcing the curfew only against individuals engaged in protest activity. *See* Dkt. 286-20 (text messages). Obtaining this evidence was crucial to showing that Denver's enforcement policy for the curfew was not neutral (or directed at people committing acts of violence or destruction) and was instead targeted specifically at people engaged in protest activity.

### B. The Proposal Was Fairly and Honestly Negotiated at Arm's Length

The Settlement was fairly and honestly negotiated at arm's length, with the assistance of the mediator. As the Court may have observed from presiding over this litigation since its inception, the parties "vigorously advocated their respective positions throughout the pendency of the case." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). In addition, Class Counsel are experienced in constitutional litigation and class actions; "weight" should be "given to their favorable judgment as to the merits, fairness, and reasonableness of the settlement." *Rhodes*, 308 F.R.D. at 667.

### C. The Relief Provided for the Class Is Adequate

The Settlement provides substantial compensation to the Class. Class members who were in custody up to 12 hours will receive approximately $2,800; those in custody between 12-24 hours will receive approximately $5,600; those in custody between 24-48 hours will receive approximately $11,200; and those in custody over 48 hours will receive approximately $16,800. These figures are based on Class Counsel's analysis of how many individuals are in each category,

and reasonable assumptions about the cost of claims administration (approx. $29,000) and attorney's fees (approx. 33%).[6]

To put the monetary compensation to the Class in perspective, Class Counsel regularly litigates wrongful conviction cases where juries award $1 million per year of wrongful imprisonment after a trial. *See* Dkt. 380-2 ¶¶ 11-12; Dkt. 380-4 ¶¶ 10-12, 14-15, 21, 28; Dkt. 380-5 ¶¶ 4-6; Dkt. 380-6 ¶¶ 6-7; *Smith v. City of Oakland*, 538 F. Supp. 2d 1217, 1242 (N.D. Cal. 2008). Pro-rating those amounts would mean $2,739.72 per day of wrongful imprisonment. The Settlement provides for substantially more than this amount on a per day basis—and the money is guaranteed, not merely a future possibility.

Another way to evaluate the adequacy of the compensation the Settlement provides is to compare it to other class-action settlements involving protests or mass arrests at protests. The Settlement provides amounts comparable to (or more than) other such class-action settlements. *See Aichele v. City of Los Angeles*, 2015 WL 12732003, at *5 (C.D. Cal. Sept. 9, 2015) (granting final approval to class settlement in protest mass arrest case where the mean compensation per class member was approximately $10,000); *Angell v. City of Oakland*, 2015 WL 65501, at *4-5 (N.D. Cal. Jan. 5, 2015) (granting preliminary approval to class settlement in protest mass arrest case where 360 class members received approximately $2,800 each (total $1,360,000 settlement including $350,000 in attorneys' fees and costs)); *MIWON v. City of Los Angeles*, 2009 WL

---

[6] The information currently in Class Counsel's possession shows that there are 42 class members who were in custody between 0-12 hours (and thus entitled to 2 shares of the settlement); 71 people who were in custody over 12 and up to 24 hours or whose time in custody is unknown (and thus entitled to 4 shares of the settlement); 156 people who were in custody over 24 and up to 48 hours (and thus entitled to 8 shares of the settlement); and 42 people who were in custody over 48 hours (and thus entitled to 12 shares of the settlement). The monetary value of a "share" depends on (1) number of people in each category; (2) amount of attorneys' fees the court awards; and (3) the final cost claims/settlement administration.

9112416, at *3-4 (C.D. Cal. June 24, 2009) (granting final approval to class settlement in protest class action where $8,797,000 (after attorney's fees) was available to 1,324 class members who sent in timely claim forms; averaging about $6,600 per class member); *Coburn v. City of Sacramento*, 2020 WL 7425345, at *2, 10-12 (E.D. Cal. Dec. 18, 2020) (granting preliminary approval to class action protest settlement providing $4,000 to each class member).[7] The Settlement in this case is especially significant because it does *not* involve any claims of excessive force—unlike most other protest class action settlements. The compensation that the Settlement provides is purely for First and Fourteenth Amendment (Equal Protection) claims arising from the City's selective enforcement of the curfew, which resulted in protestors' arrests and detention. It does not include any excessive force claims. *See* Ex. 1 ¶ 1.21. Thus, the compensation the Settlement provides is for injuries from arrest and detention, not for injuries from any excessive force that may have been used during the arrest. From that perspective, the Settlement is more than fair, reasonable, and adequate.

      **D.    Serious Factual and Legal Questions Placed the Outcome in Doubt, and Immediate Recovery Is More Valuable than the Mere Possibility of a More Favorable Outcome after Further Litigation**

Although Plaintiffs were in a strong position heading into trial, a victory at trial would not have been certain by any means. Trials always involve the risk of an adverse liability verdict or a damages award that is less than what the Settlement guarantees. For example, at a trial, the City would have presented evidence of extensive property damage and officer injuries. Although none

---

[7] *See also* https://www.acludc.org/en/press-releases/dc-pay-16-million-settle-claims-2017-inauguration-day-demonstrations (providing $1,600,000 across two lawsuits involving 300 protestors total); https://peopleslawoffice.com/chicago-city-council-settlement-class-action-civil-rights-lawsui/ (providing between $500-15,000 per class member, depending on amount of time in custody); https://www.nytimes.com/2023/07/20/nyregion/nypd-george-floyd-protesters-settlement.html (providing $9,950 per class member who had been arrested and/or subjected to use of excessive force).

of that was caused by any of the class members (by definition, they were not engaged in any violence or destruction and were arrested only for curfew violation) a jury may have been sympathetic to the City's argument that the curfew was an attempt to curb the "riots." Moreover, because excessive force claims are not part of the claims certified in this class action, the curfew arrestees may have been limited in what they could testify to regarding any excessive force used during their curfew arrests. The evidence of excessive force—especially shown in video, including from officers' own Body-Worn Camera videos—was very persuasive to the jury in the March 2022 trial; this trial would have been different. The City would have sought to limit Plaintiffs' ability to present such evidence. And finally, a jury could have found that the Plaintiffs chose to be arrested as a form of protest of the curfew, and that given (most) Plaintiffs' awareness of the curfew, they bore the consequences of their actions. Even if Plaintiffs prevailed on liability, a jury could have taken these factors into account in assessing damages.

In contrast to this uncertainty—and the delay in receiving any award if the claims were tried, since the City would be likely to appeal any judgment—the Settlement guarantees all class members a cash payment of thousands of dollars. The value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.[8] *See Rhodes*, 308 F.R.D. at 667.

In sum, the focus of negotiations never veered from a settlement that fairly compensated the Class based on the strength of their claims and the chances of securing a favorable verdict, which is what Class Counsel was able to achieve. The Settlement accounts for those risks and puts

---

[8] As a comparison, no final judgment has yet been entered on the verdict from the March 2022 trial against Denver; despite that favorable outcome, those plaintiffs are still waiting to receive the compensation the jury awarded them.

12

the class members in the best possible position in light of them. In the end, considering the monetary relief and the strength of Plaintiffs' case, especially when compared to other protest class action cases, the Settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2).

E.  **The Proposed Settlement Treats Class Members Equitably Relative to Each Other**

The Settlement provides an increasing number of shares to class members based on their time in custody. This treats class members equitably relative to each other, because, based on interviews and investigation by Class Counsel, individuals who were detained for longer amounts of time—especially those detained more than 48 hours—suffered exponentially greater adverse consequences. For example, some class members became increasingly despondent as the days went by and they could obtain no information about when they would be released. Some attempted self-harm. Thus, the Settlement is structured so that the number of shares that class members who were detained longer receive is greater than those who were only detained for a day or less.

The Settlement does not treat the Class Representatives any differently than the other class members. Both Ms. Taylor and Ms. Sannier will receive shares of the settlement according to the amount of time they were in custody. They did not want and the Settlement does not provide incentive awards, for example.

F.  **The Parties Believe the Settlement Is Fair and Reasonable**

The parties believe the Settlement is fair and reasonable, for the reasons discussed above. Denver City Council has approved the settlement. Here, the Court already appointed Elizabeth Wang of Loevy & Loevy as Class Counsel. Dkt. 127. Class Counsel and her firm have extensive experience litigating and settling class actions and other complex litigation of similar size and scope. *See* Dkt. 91-86; Dkt. 380-2. Based on their experience, Class Counsel are well-equipped to

13

weigh in on the strength of the settlement, and they believe that the Settlement is fair, reasonable, adequate, and deserving of preliminary approval. Ex. 3 ¶ 9; *see Tenille*, 785 F.3d at 434 (directing courts to consider the parties' own assessment of the reasonableness, fairness, and adequacy of the proposed settlement).

## IV.   THE PROPOSED METHOD OF NOTICE SHOULD BE APPROVED

When a certified class action is settled, due process and Rule 23 require that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal…." Fed. R. Civ. P. 23(e)(1). The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of the class members. Fed. R. Civ. P. 23(c)(2)(B).

To ensure that the Notice satisfies the requirements of due process and Rule 23 in both form and content, the parties have agreed to a comprehensive notice plan that is similar to—and in parts more comprehensive than—the one that the Court approved when the Class was certified and that will be effected by a professional settlement administrator (KCC). Ex. 1 ¶¶ 1.15, 1.6, 8. Notice of the settlement will be provided by direct mail, and the form of notice is attached as Exhibit 2 (Exhibit B to the Settlement). *Id.* ¶ 8.2.2. Class Counsel will also make a settlement website available to class members with information concerning the settlement. *Id.* ¶ 8.2.3.

The Notice advises class members of their rights under the settlement, including their right to be excluded from the Settlement or object to the Settlement or its terms. Ex. 2. The Notice will also direct class members to the settlement website, which will contain a copy of the full Settlement Agreement, important court documents, and the information on the Notice. The format and language the form of notice has been carefully drafted in straightforward, easy-to-read language,

which clearly informs class members of all the material aspects of the deal, such as the range of potential class member recovery, class members' right to challenge the deal, and the amount of attorneys' fees that may be sought. Additionally, and in compliance with Rule 23(e)(4), the Notice will inform class members of their renewed right to exclude themselves from the Settlement, even if they did not previously do so. *Id.* at 4.

Because the proposed notice plan effectuates direct notice to all class members identified by Defendants' records and fully apprises class members of their rights, it comports with the requirements of due process and Rule 23 and should be approved. *See Rhodes*, 308 F.R.D. at 668 (approving proposed notice by direct mail to class members identified through records).

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order (1) granting preliminary approval of the Settlement, (2) approving the form and content of the notice, and ordering that it be effectuated, (4) scheduling a final fairness hearing, and (4) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

s/ Elizabeth Wang
Loevy & Loevy
2060 Broadway, Ste. 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com
*Class Counsel*

David B. Owens
Loevy & Loevy
311 N. Aberdeen St., 3rd Fl.
Chicago, IL
O: 312.243.5900
david@loevy.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2023, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record in this matter.

s/ Elizabeth Wang

15