IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01878-RBJ (consolidated with 20-cv-01922-RBJ)

ELISABETH EPPS, *et al.*,

     Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al*.,

     Defendants.

---

## CLASS PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

---

### Certificate of Conferral

Defendant Denver and the Plaintiffs have conferred, and Denver takes no position on this motion.

### Introduction

This Court having preliminarily approved the Class Action Settlement Agreement, the Class Plaintiffs ("Plaintiffs") now move for attorneys' fees pursuant to Federal Rule of Civil Procedure 23(h) for reaching that result.

Achieving this Settlement did not come quickly or easily: it was reached on the eve of trial after three years of hard-fought litigation and two rounds of mediations, including one with a well-respected former magistrate judge of this District. Far outstripping Defendant's initial offer to resolve this case for basically nuisance value, the Settlement now provides each Class Member

with the ability to receive between approximately $2,800 to $16,800 each, with most Class Members receiving approximately $11,200.[1] This is a substantial and excellent result for the Class.

In consideration for the extensive time and effort Plaintiffs and Class Counsel expended to transform a case that Defendant valued at essentially zero into the largest single settlement that Defendant has thus far agreed to from the (many) 2020 protest cases and one which provides amounts comparable to (or more than) other class-actions settlements involving protest mass arrests, Plaintiffs seek attorneys' fees in the amount of one-third (1/3) of the common fund ($4,720,000.00), or $1,573,333.33. As explained below, Class Counsel's fee request is entirely reasonable under the Tenth Circuit's factors for attorneys' fees in common fund cases.

**Class Counsel's Fee Request Satisfies Rule 23(h) and the Tenth Circuit's Factors**

Rule 23(h) provides, "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts in this Circuit generally award attorney fees in common fund cases "based on a percentage of the common fund obtained for the benefit of the class," thus "proportionately spreading payment of attorney fees among the class members." *Lucken Family Ltd. P'Ship, LLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *2-3 (D. Colo. Dec. 22, 2010); *Anderson v. Merit Energy Co.*, 2009 WL 3378526, at *2 (D. Colo. Oct. 20, 2009) ("Under Tenth Circuit law, attorneys' fees in common fund cases are generally awarded based on a reasonable percentage of the fund created."); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 953-54 (10th Cir. 1993), as expressing "a preference for

---

[1] These calculations assume that the fee award is one-third and the costs of claims administration is $29,000.

the percentage of fund method."); *see Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[T]his Court has recognized consistently that a litigant or lawyer who recovered a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). Courts look to the twelve factors articulated by the Fifth Circuit in *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Rodriguez v. 5830 Restaurant Corp.*, 2023 WL 1507195, at *8 (D. Colo. Feb. 3, 2023); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) ("Because [the *Johnson*] factors measure the attorneys' contributions, they are [ ] appropriate in setting and reviewing percentage fee awards in common fund cases."). The *Johnson* factors are: "(1) the time and labor required, (2) the novelty and difficulty of the question presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorney, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Johnson*, 488 F.2d at 717-19. As discussed below, these factors weigh in favor of granting Plaintiffs' motion.

## 1.    Time and Labor Required

Class Counsel dedicated significant resources and time to investigating, developing, litigating, and negotiating the settlement of this case. *See* Ex. 1 (Wang Decl.). Class Counsel developed the facts and legal theories for the Class claims from the very beginning of the litigation, through interviews of potential clients, class members, and witnesses, and researching the relevant

substantive law. *Id.* ¶ 5. Class Counsel pursued targeted discovery to develop evidence to survive

summary judgment on the Class claims. During discovery, Class Counsel unearthed crucial text

messages that showed that Denver selectively targeted enforcement of the curfew against

individuals engaged in protest activity. *Id.* ¶ 8. This evidence was important to the Court's denial

of summary judgment on the Class's First and Fourteenth Amendment claims. *See* Dkt. 304.

In addition to engaging in extensive discovery, *see* Ex. 1 (Wang Decl.) ¶¶ 6, 8, Class

Counsel briefed the motion for class certification and summary judgment, which took a significant

amount of time, as reflected in Class Counsel's timesheet. In addition, after the Class was certified,

Class Counsel spent a significant amount of time ensuring that Class Members were appropriately

notified and the requirements of due process satisfied. *Id.* ¶ 7. This required not only obtaining the

arrest and jail records from Denver, but also reviewing the records to ensure that only individuals

falling within the definition of the Class were included and researching public records databases

to find current addresses for the Class Members. *Id.* Many of the addresses for the Class Members

were not on the documents produced by Denver in discovery, or if they were, they were not current.

Some of the Class Members' names were also misspelled or written down on the arrest paperwork

incorrectly. This meant that Class Counsel had to spend time and resources finding the correct

information on their own. *Id.* Class Counsel then effectuated direct notice of the Court's

certification order to the Class Members. *Id.*

The parties' first mediation, in January 2022, was unsuccessful. *Id.* ¶ 10. At that time, the

parties' estimation of the value of the case was very far apart. Defendant presumably hoped that it

would be successful in dismissing the Class's claims at summary judgment, and that a jury would

not value the Plaintiffs' damages on their individual claims at the March 2022 trial very highly. It

was not until Plaintiffs—through the hard work of their counsel—were able to overcome summary judgment and obtain a $14 million verdict on the individual claims at the March 2022 trial, that the parties were able to restart negotiations in the months leading up to the scheduled April 2023 trial of the Class claims.

Class Counsel spent a significant amount of time preparing for settlement discussions and the March 2023 mediation, including gathering data on the amount of time each Class Member was in custody so that a fair proposal could be made regarding how much of the Settlement each Class Member would receive. *Id.* ¶ 12. Class Counsel also prepared intensively for trial, including drafting jury instructions, reviewing potential trial exhibits and drafting the exhibit list, drafting a trial brief and potential motions, researching damages issues, designing trial strategy, and interviewing Class Members to determine which Class Members to call to testify at the trial in support of the Class claims. *Id.* ¶ 11; *see also* Ex. 1 (Wang Timesheet) and Ex. 5 (Owens Timesheet).

Class Counsel also spent many hours drafting the Settlement Agreement and writing the motion for preliminary approval. *See* Ex. 1 (Wang Timesheet). Since preliminary approval, Class Counsel (including their paralegal) has fielded questions from Class Members and worked to ensure that Class Members receive notice and are able to reap the rewards of the Settlement. *Id.* (Wang Decl.) ¶ 17. Class Counsel will spend many more hours between now and the final approval hearing on November 20, 2023 fielding questions from and/or interviewing Class Members (about their amount of time in custody to ensure they receive the appropriate shares of the settlement), drafting a motion for final approval, addressing any objections to the Settlement, preparing for and attending the hearing, and working with the Claims Administrator to ensure the Settlement is

properly administered. *See id.* ¶ 21. Those hours yet to be incurred are not included in the timesheets filed with this motion.

The Tenth Circuit permits but does not require courts to consider the lodestar and perform a "lodestar cross-check" when determining a fee award in a common fund class action settlement. *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1265 (10th Cir. 2023) ("the district court was not required to perform a lodestar cross-check"). To date, Class Counsel has spent a total of 1,218.25 hours investigating, litigating, and negotiating the resolution of this case. *Id.* ¶ 20. The rates sought for Loevy & Loevy attorneys and paralegals are the same or similar to what was awarded by the Court last year. *Compare* Dkt. 445 *with* Ex. 1 (Wang Decl.) ¶ 20. Class Counsel's lodestar is $510,098.75.[2] The requested $1,573,333.33 (one-third of the common fund) represents an enhancement of the lodestar by a multiplier of 3, which is below the range of fee multipliers approved in Colorado in other class-action cases and is reasonable given the result obtained for the Class and the high risk of non-payment . *See Rodriguez*, 2023 WL 1507195, at *9; *Mishkin v. Zynex, Inc.*, 2012 WL 4069295, at *2 (D. Colo. Sept. 14, 2012) (collecting cases in the District of Colorado approving lodestar multipliers ranging between 2.5 and 4.2); *In re Miniscribe Corp.*, 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming fee award based on lodestar multiplier of 2.57); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (lodestar multiplier of 3.65 in the cross-check analysis was reasonable). Plaintiffs have attached the declarations and timesheets reflecting the substantial amount of time and labor spent in litigating the Class claims and obtaining this Settlement. Ex. 1 (Wang Decl. & Timesheet, with L&L Firm Resume attached as Ex. A); Ex.

---

[2] The Tenth Circuit has observed that when the lodestar is used "as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Voulgaris*, 60 F.4th at 1267 (internal quotation marks and citation omitted).

2 (Rutahindurwa Decl. & Timesheet); Ex. 3 (Thompson Decl. & Timesheet); Ex. 4 (Rauscher Decl. & Timesheet); Ex. 5 (Owens Decl. & Timesheet); Ex. 6 (Roche Decl. & Timesheet); Ex. 7 (Hilke Decl. & Timesheet); Ex. 8 (Swift Decl. & Timesheet); Ex. 9 (Loy Decl. & Timesheet); Ex. 10 (Gee Decl. & Timesheet).[3]

### 2. Novelty and Difficulty of the Question Presented by the Case

Whether the Class's First and Fourteenth Amendment claims—which alleged that the curfew was unconstitutional and unconstitutionally enforced—would survive summary judgment was never guaranteed at the outset of this case. Denver's curfew was unique; there were no other similar cases in this Circuit that had previously paved the path to success on the Class's claims, and there were few cases even outside this Circuit that involved allegations of unconstitutional curfews imposed during protests. Although Plaintiffs knew from their own experience during the protests that Denver's curfew was enforced only against those engaged in protest activity, Class Counsel had to gather information from witnesses to corroborate this and gather sufficient evidence during discovery to prove that this was a matter of Denver *policy or practice*, in order to get a jury trial against Denver. The prospects of settlement were dim before the Class claims survived summary judgment.

### 3. The Skill Requisite to Perform the Legal Service Properly

The Settlement obtained by Class Counsel for the Class would not have been achieved if

---

[3] Another way to think about why the reasonable fee award in this case is a percentage of the common fund as opposed to simply the lodestar calculation, is that in a fee-shifting case, the Court has to consider the reasonableness of ordering the defendant to pay the plaintiff's attorney's fee award. In this case, where the fee is coming out of the common fund which the defendant has already agreed to pay, the beneficiaries of the Settlement (the Class Members) are simply sharing the payment of fees to their counsel.

it were not for Class Counsel's skill and experience in litigating civil rights and class action cases. This required skill at every step of the case. Class Counsel had the vision at the beginning of the litigation to see that the curfew arrestees had viable claims, and drafted a complaint that could withstand a motion to dismiss.[4] Class Counsel conducted discovery targeted at obtaining the evidence that would support their claims (and damages), they shaped the facts and arguments at summary judgment so that the Class get a trial on their claims, and they proved (at the March 2022 trial) that they were trial lawyers who could obtain excellent results for their clients and be persuasive to a jury. All of this, in addition to Class Counsel's work at the end of the case to obtain the best settlement possible for the Class, required skill and experience to perform the legal service properly.

### 4. The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case

Loevy & Loevy spent a total of 1,218.25 hours over three years litigating the Class claims to a successful conclusion, including 586 hours incurred by lead counsel Elizabeth Wang. Class Counsel spent significant time on this case, remuneration for which was entirely contingent on the outcome of the matter. The time spent on this case precluded work on other worthwhile cases. *See Rodriguez*, 2023 WL 1507195, at *10.

### 5. The Customary Fee

The requested one-third of the common fund is well within the customary fee. Courts have generally found a one-third percentage of the common fund to be reasonable. *See Cordova-Gonzalez v. TW Lath-N-Stucco, Inc.*, 2023 WL1767242, at *7 (D. Colo. Feb. 3, 2023); *Tennille v. Western Union Co.*, 2013 WL 395514, at *16 (D. Colo. Dec. 31, 2013) ("From a percentage of the

---

[4] Indeed, Denver never filed a motion to dismiss.

fund perspective, the customary fee in this District is approximately one-third of the total economic benefit to the class."); *Lucken*, 2010 WL 5387559, at \*5-6 (same); *Paulson v. McKowen*, 2023 WL 2528783, at \*7 (D. Colo. Mar. 15, 2023) (approving one-third of the common fund as fees); *Vaszlavik v. Storage Tech. Corp.*, 2000 WL 1268824, at \*4 (D. Colo. Mar. 9, 2000) ("requested fee of 30% of settlement is well within the ordinary range of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%-50% range and is presumptively reasonable"); *Rodriguez*, 2023 WL 1507195, at \*10 (approving 33% as within the customary fee for common fund case). The Tenth Circuit recently stated, "we have not adopted a benchmark percentage for attorneys' fees from common fund settlements. And we decline to pronounce a bright-line benchmark today. Instead, we reiterate our prior recognition that awards across a range of percentages may be reasonable." *Voulgaris*, 60 F.4th at 1263-64 (affirming district court's determination that 33% was reasonable).

Class Counsel has also expended over $2,400 in unreimbursed litigation costs attributable solely to litigation of the Class claims. Ex. 1 (Wang Decl.) ¶ 22. They will cover that amount out of their fees.

### 6. Whether the Fee Is Fixed or Contingent

Class Counsel agreed to undertake the claims of the Plaintiffs on a contingent fee basis, because the amount of individual recovery at issue would not justify retention on an hourly basis. *Id.* ¶ 19. This meant that if Plaintiffs did not prevail, counsel would not have recovered any fees. "[C]ontingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation … and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys

for that risk." *In re Abrams*, 605 F.3d 238, 245-46 (4th Cir. 2010). Most individuals whose civil rights are violated by law enforcement—including Plaintiffs and the Class Members here, cannot afford to retain counsel at an hourly rate, but are willing to pay a portion of any recovery they may receive in return for successful representation. *See Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990) ("a contingency agreement is the freely negotiated expression both of a claimant's willingness to pay more than a particular hourly rate to secure effective representation, and of an attorney's willingness to take the case despite the risk of nonpayment.").

### 7.    Any Time Limitations Imposed by the Client or the Circumstances

This factor is not relevant because this case proceeded through a normal course of litigation.

### 8.    The Amount Involved and the Results Obtained

The most important factor in any determination of whether a fee award is reasonable is the degree of success obtained. *Phelps v. Hamilton*, 120 F.3d 1126, 1132 (10th Cir. 1997). The Settlement of $4,720,000 for the class of over 300 Class members is an excellent result, and comparable (or better than) other class action settlements involving mass arrests at protests. *See* Dkt. 494 at 9-11. Another way to think about it is to analyze how much value the lawyers provided to the Class through their work and consider how much the case would have been worth without the lawyers' efforts. There are some cases that have a high inherent settlement value because of the underlying facts. In those cases, the lawyers add some value by filing a complaint and negotiating the terms of the settlement, but it would be inaccurate to say that the efforts of those lawyers produce all—or even most of—the settlement value for the class. It is there for the taking. In a case like this one, however, the value that the Class ultimately received is not low-hanging

fruit that merely requires a lawyer to step in and collect it. Rather, the value was created by the work that the lawyers have done in investigating the case, conducting discovery, certifying a class, showing Defendant would likely be held liable, and the potentially large amount of damages. The massive difference between the very low settlement offer in the January 2022 mediation and the final Settlement Agreement is attributable to the efforts of Class Counsel in defeating summary judgment and showing Defendant that it was vastly underestimating the potential damages (by obtaining a large verdict on the individual claims). An award of one-third of the benefit to the Class reasonably compensates Class Counsel for the value they added to the Class's recovery.[5]

This factor weighs in favor of a finding of reasonableness of the one-third award sought.

**9.  The Experience, Reputation, and Ability of the Attorney**

Loevy & Loevy focuses its practice on, and has extensive experience in, representing individuals whose constitutional rights were violated by law enforcement or other governmental officials. Ex. 1 (L&L Firm Resume, Ex. A). Loevy & Loevy is also very experienced in class actions—and taking them to trial, which is rare. *Id.* Plaintiffs' lead counsel, Elizabeth Wang, who billed by far the most hours on the Class claims, has extensive experience in civil rights and other complex litigation. Ex. 1 (Wang Decl.); *see also* Dkt. 380-2. In ruling on the Fitouri Plaintiffs' fee petition filed after the trial last year, this Court stated of Ms. Wang, "She is a zealous advocate, and I have observed her work overall to be excellent." Dkt. 445. The other Loevy & Loevy attorneys who helped obtain the Settlement were also experienced and skilled in civil rights and class action cases. *See* Exs. 2-7.

---

[5] *See In re Synthroid Marketing Litig.*, 264 F.3d 712, 720-21 (7th Cir. 2001) (requiring that class counsel be paid based on the value they provide for the class). This analysis is useful to consider, although the Tenth Circuit uses the 12-factor *Johnson* test.

10.     **The "Undesirability" of the Case**

Because Plaintiffs could not have afforded to hire counsel on an hourly fee basis, this case could only have been litigated via a contingency fee arrangement. The "undesirability" of the Class claims is shown by the fact that no other plaintiffs' lawyers who filed cases against Denver for claims arising out of the protests attempted to litigate a class action on behalf of the curfew arrestees. And, even lawyers experienced in litigating First Amendment cases such as the ACLU of Colorado did not attempt to litigate the constitutionality of the curfew or its enforcement. Litigating a class action case such as this one required significant time and commitment, making the Class claims undesirable to other counsel not prepared to undertake such a commitment. This was not a case where significant (or even any) recover was "there for the taking." Rather, the entire Settlement amount is due to Class Counsel's legal victories and their readiness to take the case to trial. For that, they should be compensated reasonably.

11.     **The Nature and Length of the Professional Relationship with the Client**

This factor is not relevant because Plaintiffs' counsel did not have a prior professional relationship with the Plaintiffs or any Class Member.

12.     **Awards in Similar Cases**

This factor has been discussed in connection with the customary fee factor in section 5, above.

### Conclusion

For the foregoing reasons, the Court should grant Class Counsel Loevy & Loevy's request for a fee award of one-third (1/3) of the common fund, or $1,573.333.33.

Respectfully submitted,

s/ Elizabeth Wang
Loevy & Loevy                                    David B. Owens
2060 Broadway, Ste. 460                          Loevy & Loevy
Boulder, CO 80302                                311 N. Aberdeen St., 3rd Fl.
O: 720.328.5642                                  Chicago, IL
elizabethw@loevy.com                             O: 312.243.5900
*Class Counsel*                                  david@loevy.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2023, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record in this matter.

s/ Elizabeth Wang