IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01878-RBJ (consolidated with 20-cv-01922-RBJ)

ELISABETH EPPS, *et al.*,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, *et al.*,

    Defendants.

## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The Curfew Arrest Class Plaintiffs seek final approval of what is likely the largest settlement of First Amendment claims in Denver's history. The proposed settlement is substantial not only in terms of the total size of the fund ($4,720,000) but also how much individual class members will receive—on average, over $10,000 (after attorneys' fees and settlement administration expenses). It is unsurprising, then, that the Class's reaction to the settlement has been overwhelmingly positive. Since preliminary approval, the Settlement Administrator has successfully implemented the Court-approved notice plan, contacting the class members by mail and assisting them over the phone. Class Counsel has also fielded many calls and emails from class members and assisted them in answering questions about their amount of time in custody (for purposes of determining how many shares of the Settlement they would be entitled to). The class members' approval of the Settlement is borne out in the numbers: no objections have been made to the Settlement and only three class members submitted requests for exclusion. Given the low

levels of opt-outs and objections, the Court should not hesitate in granting final approval to the Settlement as it is unquestionably fair, reasonable, and adequate.

### Certificate of Conferral

Defendant Denver and the Plaintiffs have conferred, and Denver takes no position on the motion for final approval.

**I.      Factual Background**

The Court is familiar with the facts of this case and described it in detail in its March 1, 2022, summary judgment order. Dkt. 304. The facts leading to the Settlement are also described in detail in Plaintiffs' motion for preliminary approval, which Plaintiffs incorporate by reference herein. *See* Dkt. 494.

**II.     Terms of the Settlement**

The core terms of the Settlement preliminarily approved by the Court are summarized below and set forth in the Settlement Agreement. *See* Dkt. 494-1.

    **A.      Class Definition:** The definition of the "Class" in the Agreement is unchanged from the class certified by the Court in its certification order (Dkt. 127):

> Those persons who were present at or during the protests in downtown Denver, Colorado, from May 30, 2020 through June 5, 2020, who were arrested for violation of emergency curfew (D.R.M.C. 1-13), and in some cases were also arrested on an accompanying charge of failure to obey a lawful order (D.R.M.C. 38-31(c)), who were taken into police custody and detained for some period of time, but who were not charged with any other violations, whose charges were dismissed, and who did not previously exclude themselves from this lawsuit.

Dkt. 494-1 ¶ 1.1 (*compare with* Dkt. 127 at 8). Class certification is and was appropriate under Rule 23, as explained in the Court's class certification decision (Dkt. 127) and Plaintiffs' motion for class certification (Dkt. 91).

2

**B.**     **Monetary Relief:** The City has created a common fund of $4,720,000, from which all class members will be paid, as well as all settlement administration expenses and any court-approved attorneys' fee award. Dkt. 494-1 ¶¶ 1.12 (definition of "Gross Fund Value"), 3 (establishment of "Gross Fund Value"). The amount of the settlement funds that will go to class members (after Settlement Administration Expenses and any Court-approved Fee Award) is defined as the "Net Fund Value." *Id.* ¶ 1.14.

The Net Fund Value will be paid to class members according to the following formula: class members detained for up to 12 hours are entitled to 2 shares; class members detained for over 12 and up to 24 hours are entitled to 4 shares; class members detained for over 24 and up to 48 hours are entitled to 8 shares; and class members detained for over 48 hours are entitled to 12 shares. *Id.* ¶ 4.1. Each class member's amount of time in detention is presumed reflected by the arrest and detention center documents produced in discovery by the City, unless a different amount of time in detention is confirmed through an interview of the class member by class counsel. *Id.* Class members whose amount of time cannot be determined from documents produced in discovery or through an interview with Counsel will be presumed to be entitled to 4 shares. *Id.* Based on the number of exclusions (3), the number of class members in each category, the cost of settlement/claims administration (estimated to be $32,196 through completion[1]), and assuming a 1/3 of the common fund fee award ($1,573,333.33), Class Counsel calculates that class members will receive between approximately $2,949 to $17,695 each in the first round of payments. *See* 2 (Wang Decl.) ¶ 10. The amount that each class member will receive will likely be more due to uncashed checks from the first round of payments, which will be redistributed to the remaining

---

[1] *See* Ex. 1 (Murray Decl.) ¶ 8.

class members in a second round. Since the Settlement was preliminarily approved, Class Counsel and their staff have engaged in many interviews with class members concerning their time in custody and corresponding shares of the Settlement. *Id.* ¶ 7.

The Settlement Administrator (Kurtzman Carson Consultants d/b/a KCC) is responsible for maintaining the Qualified Settlement Fund into which the City has deposited the Gross Fund Value, and KCC will be responsible for distributing the settlement amounts to the class members. Dkt. 494-1 ¶¶ 1.26, 3, 4.3. The settlement amount is non-reversionary. *Id.* ¶ 3. Class Counsel will provide an updated list of class members (with last known addresses) to KCC for distribution of the settlement checks. *Id.* ¶ 1.3. Class members *will not* need to submit any claim form. The 308 class members who did not exclude themselves from the Settlement by the opt-out date will receive checks. *Id.* ¶¶ 1.27, 4.3, 8.5. This greatly simplifies the claims process and ensures that more class members will obtain compensation. The settlement checks will remain negotiable for 150 calendar days from its issuance. *Id.* ¶ 4.4. KCC will redistribute funds from any uncashed checks to other Settlement Class Members on a *pro rata* basis (within the category) in a second round of payments, if applicable. *Id.* ¶ 4.5. If necessary, uncashed checks from the second round of payments will be made to an appropriate *cy pres* recipient, for which the parties will seek Court approval. *Id.*

KCC will, under the supervision of the Court, administer the relief provided in the Settlement and provide timely reports to the parties. *Id.* ¶ 9. As of November 14, 2023, KCC estimates its total cost of administration to be $32,196. This includes costs to date as well as through completion of this matter. Ex. 1 ¶ 8.

**C.   Settlement Fund Payments:** Per the Settlement Agreement, the City paid $4,720,000 to KCC on September 11, 2023, which was deposited into a Qualified Settlement Fund

maintained by KCC on September 12, 2023. *See* Ex. 2 (Wang Decl.) ¶ 3; Dkt. 494-1 ¶ 1.28. KCC will send checks to Settlement Class Members via first-class U.S. Mail within 60 days of the Effective Date. Dkt. 494-1 ¶ 4.3. There will be a second round of payments to class members if there are uncashed checks from the first round of payments.[2]

  **D.**  **Prospective Relief:** The City has agreed not to target enforcement of any future emergency curfew order against individuals engaged in First Amendment or protest activity. *Id.* ¶ 5.

  **E.**  **Payment of Notice and Administration Expenses, Including Notice:** Payment of settlement administration expenses is included in the Gross Fund Value. *Id.* ¶¶ 1.12, 1.25, 3. The total cost of settlement administration is estimated to be $32,196. Ex. 1 ¶ 8.

  **F.**  **Attorneys' Fees:** Class Counsel filed a motion for attorneys' fees on October 10, 2023, pursuant to Fed. R. Civ. P. 23(h)(1), and published it on the class settlement website by October 12, 2023. Ex. 2 ¶ 5. Plaintiffs requested a fee and expense award of one-third of the common fund ($1,573,333.33). Dkt. 497. Any award of attorneys' fees will be paid on the same schedule as class members' claims. *See* Dkt. 494-1 ¶ 6.2. No opposition or objection has been filed or submitted to Plaintiffs' motion for attorneys' fees. *See* Ex. 1 ¶ 7.

  **G.**  **Release of Liability:** In exchange for the relief described above, each "Settlement Class Member" will be deemed to have released and forever discharged the City from any claims related to the certified claims of the Class that were left for trial against the City, relating to the constitutionality of the Emergency Curfew enacted by the City between May 30 and June 5, 2020,

---

[2] Based on the fact that there were 65 notices to class members that were returned as undeliverable (and for which KCC could not find any updated addresses), there is likely to be a second round of payments. *See* Ex. 1 ¶ 4.

and the arrests and detentions of the class members. Dkt. 494-1 ¶ 1.21. The released claims do not include any class member's individual First, Fourth, or Fourteenth Amendment claims unrelated to the constitutionality of the curfew and the arrests and detentions of the class members, or any claims not certified for class treatment by the Court and left for trial. *Id.*

### III. The Implemented Notice Plan Comports with Due Process

Prior to granting final approval to this Settlement, the Court must first consider whether the Notice to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Cordova-Gonzalez v. TW Lath-N-Stucco, Inc.*, 2023 WL 1767242, at *4 (D. Colo. Feb. 3, 2023). The "best notice practicable" does not require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process, but it often includes (as in this case) direct notice to individuals who can be identified by regular mail. *See Cordova-Gonzalez*, 2023 WL 1767242, at *5.

Here, the parties complied with the Court-approved notice plan and were successful in delivering individual notices to all but 65 of the 311 class members.[3] Ex. 1 ¶¶ 2-4. The notice mailed to class members informed them of the nature of the lawsuit, the definition of the class, class members' anticipated recovery under the settlement, the amount of attorneys' fees and costs sought, and a summary of class members' legal rights, including the right to object or exclude themselves from the settlement. *See* Ex. A (Notice sent by KCC) to Ex. 1; Ex. 1 ¶ 3; Fed. R. Civ.

---

[3] At the time of preliminary approval, 310 class members were identified and provided notice. After notice was sent out, Class Counsel was contacted by one individual who was also determined to be a class member, after an interview with Class Counsel. *See* Ex. 2 ¶ 8. Thus, there are 311 class members.

P. 23(c)(2)(B). The notice also provided an opportunity to obtain additional information regarding the Settlement. *See* Ex. A.

Although not everyone received an individual notice because some of the notices were returned as undeliverable and KCC could not obtain updated addresses for all of those, Rule 23(c)(2)(B) and the constitutional guarantees of due process do not require that every single class member receive individual notice. *See In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1109-11 (10th Cir. 2001); *Cordova-Gonzalez*, 2023 WL 1767242, at *5. "This is because the Rule 23 and due process inquiry 'focuses upon whether the district court gave the *best notice practicable under the circumstances* including individual notice to all members *who can be identified through reasonable effort.*'" *Cordova-Gonzalez*, 2023 WL 1767242, at *5 (quoting *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005)); *Tennille v. W. Union Co.*, 785 F.3d 422, 437 (10th Cir. 2015) (finding that mailing of settlement notice to addresses updated through post office's change-of-address database was sufficient under Rule 23 and due process). Here, before providing the Settlement Administrator with addresses for class members, Class Counsel and their staff researched the addresses for every class member on both Westlaw and LocatePlus in an attempt to locate the best address possible. Ex. 2 ¶ 6. Class Counsel provided those addresses to the Settlement Administrator, KCC. KCC then processed the names and addresses through the National Change of Address Database ("NCOA") to update any addresses on file with the United States Postal Service. Ex. 1 ¶ 2. Twenty-two addresses were found and updated via NCOA. KCC printed and mailed the notice to the names on the class list. *Id.* ¶ 3. Seventy notices were returned by the USPS with undeliverable addresses. Through credit bureau and/or other public source databases, KCC performed address searches for these

7

undeliverable notices and was able to find updated addresses for 5 class members. *Id.* ¶ 4. Ultimately, notice was directly delivered to 79% of the class and was thus reasonable. *See* Federal Judicial Center, *Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide* 3 (2010) (concluding that a notice plan that reaches at least 70% of the class is reasonable).

In addition, the Settlement received substantial press coverage, which provided further notice via publication.[4] The notice also directed class members to the settlement website—www.denvercurfewclassaction.com—that provided the notice and important court documents (including the Settlement Agreement and the motion for attorneys' fees). Ex. 2 ¶ 4. KCC established and continues to maintain a toll-free telephone number for potential class members to call and obtain information about the Settlement, request a notice, and/or seek assistance from a live operator during regular business hours. Ex. 1 ¶ 5. The hotline became operational on September 22, 2023, and as of November 9, 2023, KCC received a total of 24 calls to the telephone hotline. *Id.*

In sum, there can be no doubt that class members have received the best notice practicable under the circumstances, which meets the requirements of due process and Rule 23.

## IV. The Settlement Warrants Final Approval

Rule 23(e) requires judicial approval of a proposed class action settlement based on a finding that the agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23

---

[4] *See, e.g.*, https://apnews.com/article/george-floyd-2020-protest-denver-curfew-b3cf226893bc1d7b7a5700205bd9a667; https://abcnews.go.com/US/wireStory/denver-pay-47-million-settle-claims-targeted-george-102632152; https://www.denverpost.com/2023/08/28/denver-settlement-curfew-arrests-george-floyd-protests/; https://www.nytimes.com/2023/08/29/us/denver-settlement-george-floyd-protests.html; https://denvergazette.com/news/courts/denver-council-approves-settlement-nearly-5-million-protests/article_917add3e-45fc-11ee-b7ec-eb92c85ce6c3.html; https://www.cbsnews.com/colorado/news/denver-city-council-approves-4-7m-settlement-to-2020-protesters-per-court-order/; https://kdvr.com/news/local/denver-settlement-2020-protesters/.

also requires consideration of whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate;[5] and (D) the proposed settlement treats class members equitably relative to each other. *Id.* The Tenth Circuit has instructed courts to consider whether:

> (1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable.

*Tennille*, 785 F.3d at 434 (citation and internal quotation marks omitted). Accordingly, the Court should consider the Rule 23 factors but also address the Tenth Circuit's factors. *See In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021). "'The authority to approve a settlement of a class or derivative action is committed to the sound discretion of the trial court.'" *Cordova-Gonzalez*, 2023 WL 1767242, at *3 (quoting *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Here, each factor supports the Settlement. (Plaintiffs address related/overlapping factors together below.)

### A. The Class Representatives and Class Counsel Have Adequately Represented the Class

Here, the Class Representatives and Class Counsel have adequately represented the Class. "Adequate representation is usually presumed in the absence of contrary evidence." *CO Craft, LLC v. GrubHub Inc.*, 2023 WL 3763525, at *12 (D. Colo. June 1, 2023) (citation and internal quotations omitted). The adequacy inquiry "serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S.

---

[5] Subfactors under Rule 23(e)(2)(C) include: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; (iv) and any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

591, 625 (1997). Determining adequacy turns on two questions: (1) whether named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether named plaintiffs and their counsel have vigorously prosecuted the action on behalf of the class.

The answers to these questions are no and yes, respectively. First, there are no conflicts of interest between the Class Representatives or Class Counsel and the Class. Second, the Class Representatives and Class Counsel have vigorously prosecuted this case on behalf of the Class. Class Representatives have had the interests of the class in mind at every stage of litigation. Class Counsel engaged in extensive investigation and interview of class members, both during discovery and in preparation for trial. Class Counsel also intensively litigated the claims, seeking targeted discovery from the City regarding the arrests and the curfew, briefing class certification and summary judgment, and preparing for trial. Class Counsel's discovery efforts resulted in the production of key text messages showing that DPD policymakers—at the highest levels—implemented a policy of enforcing the curfew only against individuals engaged in protest activity. *See* Dkt. 286-20 (text messages). Obtaining this evidence was crucial to showing that Denver's enforcement policy for the curfew was not neutral (or directed at people committing acts of violence or destruction) and was instead targeted specifically at people engaged in protest activity.

### B.     The Proposal Was Fairly and Honestly Negotiated at Arm's Length

The Settlement was fairly and honestly negotiated at arm's length, with the assistance of the mediator, former Magistrate Judge Mix. The parties "vigorously advocated their respective positions throughout the pendency of the case." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). In addition, Class Counsel are experienced in constitutional litigation and class actions; "weight" should be "given to their favorable judgment as to the merits, fairness, and

reasonableness of the settlement." *Rhodes*, 308 F.R.D. at 667.

### C. The Relief Provided for the Class Is Adequate

The Settlement provides substantial compensation to the Class. There are 311 class members. Three class members have opted out. *See* Ex. B (Exclusion Letters) to Ex. 1. Assuming that Class Counsel will receive $1,573,333.33 in fees and expenses and settlement administration costs will be $32,196, the remaining 308 class members will receive a total of $3,112,666.67. This would be divided amongst the 308 members of the Settlement Class as follows: those who were in custody up to 12 hours would receive $2,949.30; those in custody between 12-24 hours would receive $5,898.60; those in custody between 24-48 hours would receive $11,797.20; and those in custody over 48 hours would receive approximately $17,695.80. These figures are based on Class Counsel's analysis of how many individuals are in each category, and reasonable assumptions about the cost of claims administration ($32,196) and attorney's fees ($1,573,333.33).[6] Furthermore, there is likely to be a second round of payments because checks to class members from the first round of payments go uncashed after 150 days. This could result in a substantial second-round payment to the remaining class members.[7]

To put the monetary compensation to the Class in perspective, Class Counsel regularly

---

[6] The information in Class Counsel's possession (based on arrest and custody records as well as interviews with class members) shows that there are 42 class members who were in custody between 0-12 hours (and thus entitled to 2 shares of the settlement); 68 people who were in custody over 12 and up to 24 hours or whose time in custody is unknown (and thus entitled to 4 shares of the settlement); 155 people who were in custody over 24 and up to 48 hours (and thus entitled to 8 shares of the settlement); and 43 people who were in custody over 48 hours (and thus entitled to 12 shares of the settlement). The monetary value of a "share" depends on (1) number of people in each category; (2) amount of attorneys' fees the court awards; and (3) the final cost claims/settlement administration. If the Net Fund Value is $3,114,470.67 (which is $4,720,000 minus $1,573,333.33 in attorneys' fees and $32,196 in settlement administration expenses), then each share equals $1,474.65. *See* Ex. 2 ¶¶ 9-10.

[7] If, for example, 65 checks go uncashed and the average amount is $10,000, that would be an additional $650,000 that would be redistributed to the remaining 243 class members. That would be, on average, an additional $2,674 per class member

11

litigates wrongful conviction cases where juries award $1 million per year of wrongful imprisonment after a trial. *See* Dkt. 380-2 ¶¶ 11-12; Dkt. 380-4 ¶¶ 10-12, 14-15, 21, 28; Dkt. 380-5 ¶¶ 4-6; Dkt. 380-6 ¶¶ 6-7; *Smith v. City of Oakland*, 538 F. Supp. 2d 1217, 1242 (N.D. Cal. 2008). Pro-rating those amounts would mean $2,739.72 per day of wrongful imprisonment. The Settlement provides for substantially more than this amount on a per day basis—and the money is guaranteed, not merely a future possibility.

Another way to evaluate the adequacy of the compensation the Settlement provides is to compare it to other class-action settlements involving protests or mass arrests at protests. The Settlement provides amounts comparable to (or more than) other such class-action settlements. *See Aichele v. City of Los Angeles*, 2015 WL 12732003, at *5 (C.D. Cal. Sept. 9, 2015) (granting final approval to class settlement in protest mass arrest case where the mean compensation per class member was approximately $10,000); *Angell v. City of Oakland*, 2015 WL 65501, at *4-5 (N.D. Cal. Jan. 5, 2015) (granting preliminary approval to class settlement in protest mass arrest case where 360 class members received approximately $2,800 each (total $1,360,000 settlement including $350,000 in attorneys' fees and costs)); *MIWON v. City of Los Angeles*, 2009 WL 9112416, at *3-4 (C.D. Cal. June 24, 2009) (granting final approval to class settlement in protest class action where $8,797,000 (after attorney's fees) was available to 1,324 class members who sent in timely claim forms; averaging about $6,600 per class member); *Coburn v. City of Sacramento*, 2020 WL 7425345, at *2, 10-12 (E.D. Cal. Dec. 18, 2020) (granting preliminary approval to class action protest settlement providing $4,000 to each class member).[8] The

---

[8] *See also* https://www.acludc.org/en/press-releases/dc-pay-16-million-settle-claims-2017-inauguration-day-demonstrations; https://peopleslawoffice.com/chicago-city-council-settlement-class-action-civil-rights-lawsui/; https://www.nytimes.com/2023/07/20/nyregion/nypd-george-floyd-protesters-settlement.html.

Settlement in this case is especially significant because it does *not* involve any claims of excessive force—unlike most other protest class-action settlements. The compensation that the Settlement provides is purely for First and Fourteenth Amendment (Equal Protection) claims arising from the City's selective enforcement of the curfew, which resulted in protestors' arrests and detention. It does not include any excessive force claims. *See* Dkt. 494-1 ¶ 1.21. Thus, the compensation the Settlement provides is for injuries from arrest and detention, not for injuries from any excessive force that may have been used during the arrest. The Settlement is fair, reasonable, and adequate.

Significantly, no class member has objected to the Settlement or the motion for attorneys' fees. Ex. 1 ¶ 7. Only three class members excluded themselves from the Settlement.[9] This further shows that the settlement is fair, reasonable, and adequate. *Cordova-Gonzalez*, 2023 WL 1767242, at *6. The lack of objection and small number of exclusions demonstrates that class members overwhelmingly approve of the Settlement.

### D. Serious Factual and Legal Questions Placed the Outcome in Doubt, and Immediate Recovery Is More Valuable than the Mere Possibility of a More Favorable Outcome after Further Litigation

Although Plaintiffs were in a strong position heading into trial, a victory at trial would not have been certain by any means. Trials always involve the risk of an adverse liability verdict or a damages award that is less than what the Settlement guarantees. For example, at a trial, the City would have presented evidence of extensive property damage and officer injuries. Although none of that was caused by any of the class members, a jury may have been sympathetic to the City's argument that the curfew was an attempt to curb the "riots." Moreover, because excessive force

---

[9] At least one of the opt-outs, Amy Schneider, did so as part of a settlement agreement with Denver in a separate excessive force case brought relating to the protests (*Abay, et al. v. City and County of Denver*, No. 20-cv-1616-RBJ). As part of that settlement agreement, Ms. Schneider agreed to opt-out and not file any separate lawsuit relating to the curfew.

claims are not part of the claims certified in this class action, the curfew arrestees may have been limited in what they could testify to regarding any excessive force used during their curfew arrests. The evidence of excessive force—especially shown in video, including from officers' own Body-Worn Camera videos—was very persuasive to the jury in the March 2022 trial; this trial would have been different. The City would have sought to limit Plaintiffs' ability to present such evidence. And finally, a jury could have found that the Plaintiffs chose to be arrested as a form of protest of the curfew, and that given (most) Plaintiffs' awareness of the curfew, they bore the consequences of their actions. Even if Plaintiffs prevailed on liability, a jury could have taken these factors into account in assessing damages.

In contrast to this uncertainty—and the delay in receiving any award if the claims were tried, since the City would be likely to appeal any judgment—the Settlement guarantees all class members a cash payment of thousands of dollars. The value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. *See Rhodes*, 308 F.R.D. at 667.

In sum, the focus of negotiations never veered from a settlement that fairly compensated the Class based on the strength of their claims and the chances of securing a favorable verdict, which is what Class Counsel was able to achieve. The Settlement accounts for those risks and puts the class members in the best possible position in light of them. In the end, considering the monetary relief and the strength of Plaintiffs' case, especially when compared to other protest class action cases, the Settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2).

  **E. The Proposed Settlement Treats Class Members Equitably Relative to Each Other**

The Settlement provides an increasing number of shares to class members based on their

time in custody. This treats class members equitably relative to each other, because individuals who were detained for longer amounts of time—especially those detained more than 48 hours—suffered exponentially greater adverse consequences. Also, the Settlement does not treat the Class Representatives differently than other class members.

### F. The Parties Believe the Settlement Is Fair and Reasonable

The parties believe the Settlement is fair and reasonable, for the reasons discussed above. Denver City Council has approved the Settlement. Here, the Court already appointed Elizabeth Wang of Loevy & Loevy as Class Counsel. Dkt. 127. Class Counsel and her firm have extensive experience litigating and settling class actions and other complex litigation of similar size and scope. *See* Dkt. 91-86; Dkt. 380-2. Based on their experience, Class Counsel are well-equipped to weigh in on the strength of the Settlement, and they believe that the Settlement is fair, reasonable, adequate, and deserving of final approval. Ex. 2 ¶ 11; *see Tennille*, 785 F.3d at 434.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue a Final Judgment approving the Settlement Agreement, granting Class Counsel's application for the Fee Award, and dismissing the Released Claims with prejudice. A proposed order, which is consistent with the Settlement Agreement (*see* Dkt. 494-1 ¶ 11.2) is attached as Exhibit 3, and a proposed final judgment under Rule 54(b) (which must be set out in a separate document under Rule 58) is attached as Exhibit 4.

Respectfully submitted,

s/ Elizabeth Wang
Loevy & Loevy
2060 Broadway, Ste. 460
Boulder, CO 80302

David B. Owens
Loevy & Loevy
311 N. Aberdeen St., 3rd Fl.

O: 720.328.5642  
elizabethw@loevy.com  
*Class Counsel*

Chicago, IL  
O: 312.243.5900  
david@loevy.com

## CERTIFICATE OF SERVICE

  I hereby certify that on November 15, 2023, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record in this matter.

                s/ Elizabeth Wang