<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 14, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

ZACHARY PACKARD;
JOHNATHEN DURAN,

      Plaintiffs-Appellees,

ELISABETH EPPS; ASHLEE
WEDGEWORTH; AMANDA
BLASINGAME; MAYA ROTHLEIN;
HOLLIS LYMAN; STANFORD
SMITH; SARA FITOURI;
JACQUELYN PARKINS; KELSEY
TAYLOR; JOE DERAS; CLAIRE
SANNER,

      Plaintiffs,

v.

CORY BUDAJ; PATRICIO
SERRANT; DAVID MCNAMEE;
CITY OF AURORA,

      Defendants-Appellants,

CITY AND COUNTY OF DENVER;
DANIEL FELKINS; DAVID
ABEYTA; JONATHAN CHRISTIAN;
KEITH VALENTINE; MATTHEW
BRUKBACHER; ANTHONY TAK; J.
LNU; PAUL PAZEN; DOES JOHN
AND JANE, 1-100; BOES JOHN
AND JANE, 1-50,

      Defendants.

No. 22-1365

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:20-CV-01878-RBJ)**

---

Michael T. Lowe of Bruno, Colin & Lowe, P.C., Denver, Colorado (David M. Goddard and Heidi J. Hugdahl of Bruno, Colin & Lowe, P.C. and Peter Ruben Morales and Isabelle Sabra Evans of the Office of the City Attorney, Aurora, Colorado, with him on the briefs), for Defendants-Appellants.

Robert Reeves Anderson of Arnold & Porter Kaye Scholer LLP, Denver, Colorado (Matthew J. Douglas and Brian M. Williams, Arnold & Porter Kaye Scholer LLP and Mark Silverstein and Sara R. Neel, American Civil Liberties Union of Colorado, Denver, Colorado, with him on the brief), for Plaintiff-Appellee Zachary Packard.

Elizabeth Wang of Loevy & Loevy, Boulder, Colorado, for Plaintiff-Appellee Johnathen Duran.

---

Before **ROSSMAN**, **KELLY**, and **BRISCOE**, Circuit Judges.

---

**ROSSMAN**, Circuit Judge.

Defendants have filed an interlocutory appeal, challenging the district court's denial of qualified immunity to Officer David McNamee, Officer Cory Budaj, and Sergeant Patricio Serrant. Exercising our jurisdiction under 28 U.S.C. § 1291, we discern no error in the district court's decision and affirm.

# I

Between May 28 and June 2, 2020, several large protests occurred on Denver streets in reaction to the murder of George Floyd in Minneapolis.[1] On May 30, then-Denver Mayor Michael Hancock declared a state of emergency and imposed a curfew; he also requested assistance from mutual aid police departments, including the Aurora Police Department.

At about 9 p.m. on May 31, Plaintiff Zachary Packard was protesting near downtown Denver. A police officer threw a tear gas canister near Mr. Packard, which Mr. Packard kicked "away from himself and other protesters, in the direction of a line of officers." R.1751. Almost contemporaneously, Defendant Aurora Police Department Sergeant Serrant told his officers: "If they start kicking that shit, go ahead and frickin' hit 'em." R.1752. Immediately after kicking the canister, Mr. Packard was hit in the head with a beanbag round[2] fired from a shotgun; the round knocked him unconscious and caused major injuries. One of the officers on Sergeant Serrant's line was Defendant

---

[1] We draw the following background from the district court's summary judgment order, *Vette* v. *K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1159 n.1 (10th Cir. 2021), which provides the universe of facts found or assumed by the district court that we must accept at this procedural stage, *Amundsen* v. *Jones*, 533 F.3d 1192, 1196 (10th Cir. 2008) ("Because we may review only legal issues, we must accept any facts that the district court assumed in denying summary judgment." (citation omitted)).

[2] A beanbag round is a form of less-lethal munition, consisting of a sack containing lead shot which can be deployed from a shotgun.

Officer McNamee. He fired several beanbag rounds at the time Mr. Packard was shot, but the parties dispute whether Officer McNamee was the officer who shot Mr. Packard. The district court concluded Plaintiffs raised genuine disputes of material fact as to whether Sergeant Serrant and Officer McNamee were "personally involved in the alleged violation of Mr. Packard's rights." R.1753-54.[3]

Mr. Packard kicked the canister about five to ten feet away from himself and other protesters. Critically, this action "did not pose an immediate threat," the district court concluded, "because officers were equipped with gas masks that protected them from any gas from that container." R.1763. While acknowledging officers may "not like protesters kicking gas canisters away," the district court held "there is no evidence that the kicking of gas canisters generally, or the specific instance of Mr. Packard's kicking a gas canister, posed an imminent threat to officers or anyone else." R.1764.

Protestors also were gathered two blocks west on Colfax Avenue. There, around thirty minutes after Mr. Packard was shot, Plaintiff Johnathen Duran

---

[3] Personal involvement is a threshold requirement for claims under 42 U.S.C. § 1983. *See Foote* v. *Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (explaining "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation"). Defendants have not appealed the district court's ruling on this issue. *See* Opening Br. at 8.

was shot in the groin with a foam baton round.[4] At the time he was shot, Mr. Duran was wearing a "hardhat with the word 'media,'" R.1758, "standing near the intersection of Colfax and Pearl Street, speaking with an acquaintance, and filming the protest," R.1764. Defendant Officer Budaj and other Aurora officers were at the same intersection moving protesters down the street. Officer Budaj shot roughly fifteen foam baton rounds during his deployment that evening. The parties dispute whether Officer Budaj was the officer who shot Mr. Duran. Again, the district court concluded, at this procedural stage, Plaintiffs had "raised a genuine dispute of material fact on the issue of whether Officer Budaj was involved in the alleged violation of Mr. Duran's rights." R.1755.

Based on the evidence submitted and construed in the light most favorable to the Plaintiffs, the district court concluded Mr. Duran "was in a crowd of protesters, but . . . did not pose a threat to the safety of anyone, police or otherwise." R.1764.

## B

The district court held "[t]he law is clearly established that an officer cannot shoot a protester with . . . less-lethal munitions when that protester is committing no crime more serious than a misdemeanor, not threatening

---

[4] A foam baton round is another form of less-lethal munition, consisting of a firm foam-tipped round shot from a 40-millimeter launcher.

anyone, and not attempting to flee." R.1763 (citing *Buck* v. *City of Albuquerque*, 549 F.3d 1269, 1291 (10th Cir. 2008)). Because the district court concluded neither Mr. Packard nor Mr. Duran was committing a crime, posing a threat, or attempting to flee, the district court denied qualified immunity to Officers McNamee and Budaj and Sergeant Serrant.

## II

The Defendants challenge the district court's conclusions at both prongs of the qualified immunity inquiry. They maintain their conduct under the circumstances was "objectively reasonable," and therefore could not violate constitutional rights. Opening Br. at 24. And they argue "neither *Buck* nor *Fogarty* even come close to clearly establishing the law" in the context here. *Id.* at 18.

We begin by discussing our narrow jurisdiction and the limited scope of review applicable to an interlocutory qualified-immunity appeal. We then address Defendants' arguments on both prongs of qualified immunity. For the reasons we explain, we will not disturb the district court's judgment on either issue.

## A

### 1

The Defendants—appellants here—bear the burden of establishing our jurisdiction to hear this appeal. *See* Fed. R. App. P. 28(a)(4). Ordinarily, our

jurisdiction extends only to appeals from "final decisions of the district courts of the United States." 28 U.S.C. § 1291. But among the limited exceptions to that rule, the collateral order doctrine permits interlocutory appeals over a decision "deemed final [because] it disposes of a matter separable from, and collateral to the merits of the main proceeding, too important to be denied review, and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Vette*, 989 F.3d at 1161 (quoting *Gelboim* v. *Bank of Am. Corp.*, 574 U.S. 405, 414 n.5 (2015)).

Applying this doctrine, we have found jurisdiction to review a district court's denial of qualified immunity. *Id.* at 1162. Generally, we review a grant or denial of summary judgment *de novo*. *See Helvie* v. *Jenkins*, 66 F.4th 1227, 1231 (10th Cir. 2023). But on an interlocutory appeal from a denial of qualified immunity, our jurisdiction is circumscribed. We may review *only* "abstract questions of law." *Vette*, 989 F.3d at 1162; *see also Finch* v. *Rapp*, 38 F.4th 1234, 1240 (10th Cir. 2022) ("We only review the district court's legal conclusions that the facts, in the light most favorable to [the non-movant], establish a clear violation of the Fourth Amendment . . . ."). Specifically, our jurisdiction extends to two legal issues: "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation" and "(2) whether that law was clearly established at the time of the alleged violation." *Est. of Valverde ex rel. Padilla* v. *Dodge*, 967 F.3d 1049, 1058 (10th

Cir. 2020) (quoting *Roosevelt-Hennix* v. *Prickett*, 717 F.3d 751, 753 (10th Cir. 2013)). Thus, "[a]t this stage" of litigation, "we are not at liberty to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." *Fogarty* v. *Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008). The "facts explicitly found by the district court, combined with those that it likely assumed . . . form the universe of facts upon which we base our legal review of whether defendants are entitled to qualified immunity." *Id.* "[I]f a district court concludes a reasonable jury could find certain specified facts in favor of the plaintiff, . . . we must usually take them as true—and do so even if our own *de novo* review of the record might suggest otherwise as a matter of law." *Lynch* v. *Barrett*, 703 F.3d 1153, 1159 (10th Cir. 2013) (quotation marks omitted).[5]

---

[5] The Defendants encourage us to perform *de novo* factfinding, suggesting the district court failed to identify "the particular charged conduct that it deemed adequately supported by the record." Reply Br. at 5 (quoting *Lewis* v. *Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010)); *see also* Opening Br. at 12. We decline the invitation.

*Lewis* requires district courts to "set forth with specificity the *facts*—the who, what, when, where, and why—that a reasonable jury could infer from the evidence presented by the parties." 604 F.3d at 1226. The district court's factual findings must be sufficient for us to "undertake the job of answering the question whether the defendant is entitled to qualified immunity on those facts as a matter of law." *Id.* Contrary to the Defendants' suggestion, we find the district court's order set forth the facts with sufficient specificity.

We will typically displace a district court's factual findings only where those findings are "blatantly contradicted by the record," *Lewis* v. *Tripp*, 604 F.3d 1221, 1225-26 (10th Cir. 2010) (quoting *Scott* v. *Harris*, 550 U.S. 372, 380 (2007)), and "constitute 'visible fiction,'" *Crowson* v. *Washington County*, 983 F.3d 1166, 1177 (10th Cir. 2020) (quoting *Lynch*, 703 F.3d at 1160 n.2).[6]

## 2

Sergeant Serrant and Officers McNamee and Budaj asserted a qualified immunity defense before the district court. The theory of qualified immunity "protects government officials from civil liability so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Arnold* v. *City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022) (quoting *Pearson* v. *Callahan*, 555 U.S. 223, 231 (2009)). The Supreme Court has emphasized "qualified immunity protects 'all but the

---

[6] Mr. Duran urges us to "dismiss Defendants' appeal" entirely for lack of a "legal or jurisdictional basis." Duran Br. at 19. Defendants, Mr. Duran argues, are only "raising factual questions on appeal over which this Court has no jurisdiction." *Id.* at 23.

As a statement of law, Mr. Duran is, of course, correct—we usually will not disturb the district court's factual conclusions on the issues before us in an interlocutory appeal from the denial of qualified immunity. *See Castillo* v. *Day*, 790 F3d 1013, 1018 (10th Cir. 2015). Though Defendants' briefing at times diverges from the facts as found before the district court, we also understand Defendants to present purely legal issues for appellate review that are squarely within our jurisdiction. Accordingly, we exercise that jurisdiction, while faithfully adhering to the bounds of our review.

plainly incompetent or those who knowingly violate the law.'" *City of Tahlequah* v. *Bond*, 595 U.S. 9, 12 (2021) (*per curiam*) (quoting *District of Columbia* v. *Wesby*, 583 U.S. 48, 63 (2018)).

To overcome a qualified-immunity defense, a plaintiff must show "(1) the officers' alleged conduct violated a constitutional [or statutory] right, and (2) it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Wise* v. *Caffey*, 72 F.4th 1199, 1205 (10th Cir. 2023) (quoting *Reavis ex rel. Est. of Coale* v. *Frost*, 967 F.3d 978, 984 (10th Cir. 2020)).

We will now review both prongs—*constitutional violation* and *clearly established law*.

## B

We begin by considering, within the confines of the facts found and assumed by the district court, whether that court erred in concluding a reasonable jury could find Messrs. Duran and Packard established a violation of their rights. We find the district court did not err.

Both Mr. Duran and Mr. Packard claim Defendants' use of force was excessive. "When an 'excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment.'" *Vette*, 989 F.3d at 1169

(quoting *Graham* v. *Connor*, 490 U.S. 386, 394 (1989)).[7] To maintain an excessive force claim, Plaintiffs must show the Defendants' use of force was objectively unreasonable under the circumstances. *Tennessee* v. *Garner*, 471 U.S. 1, 7 (1985); *Thomas* v. *Durastanti*, 607 F.3d 655, 663 (10th Cir. 2010). In considering the reasonableness of the officers' actions, we must "judge[] from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Graham*, 490 U.S. at 396, and "allow[] for the fact that police officers are often forced to make split-second judgments—in

---

[7] Plaintiffs also alleged violations of their Fourteenth Amendment rights. On appeal, Defendants argue the district court "improperly allowed the [excessive] force claims against the Aurora Officers to proceed under" both the Fourth and Fourteenth Amendments. Opening Br. at 26. We are not persuaded. At this stage in the proceedings, the Federal Rules of Civil Procedure permit the Fourth and Fourteenth Amendment claims to proceed as "alternative statements." Fed. R. Civ. P. 8(d).

As the parties correctly explain, whether an excessive force claim is properly brought under the Fourth or Fourteenth Amendment turns on whether an individual was "seized." *See* Opening Br. at 26; Duran Br. at 40; Packard Br. at 40. Given the district court's conclusion a reasonable jury could find Plaintiffs were subject to an intentional application of force, we find it difficult to imagine a circumstance in which Messrs. Packard and Duran would *not* be considered "seized" for purposes of the Fourth Amendment, and address Plaintiffs' contentions under that Amendment only. *See Torres* v. *Madrid*, 141 S. Ct. 989, 1003 (2021).

Notably, in the related Denver trial, the plaintiffs agreed to dismiss their Fourteenth Amendment claims in favor of the Fourth Amendment because Denver "admitted that the uses of force [in that case] could constitute seizures." R.1760. There has been no such admission by Defendants here.

circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," *id.* at 396-97. Our inquiry is holistic—weighing the "totality of the circumstances," *Garner*, 471 U.S. at 8-9—and objective, disregarding officers' subjective "underlying intent or motivation," *Graham*, 490 U.S. at 397.

In *Graham*, the Supreme Court "outlined three factors that guide the reasonableness analysis: (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Vette*, 989 F.3d at 1169 (quoting *Graham*, 490 U.S. at 396). We now discuss each factor.

Applying the first *Graham* factor, we consider the severity of the crime at issue. We ask whether and what kind of offense Plaintiffs allegedly committed, with an eye toward assessing whether the force used was proportionally reasonable. *Wilkins*, 33 F.4th at 1273; *cf. Casey* v. *City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007) (explaining a misdemeanor committed in a "particularly harmless manner . . . reduces the level of force that [is] reasonable for [an officer] to use"). A "minor offense—at most—support[s] the use of minimal force." *Perea* v. *Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016). The first factor will weigh against officers where the force

deployed "exceeded the minimal force that would be proportional to" the crime involved. *Id.*

Here, the record gives no indication that Messrs. Packard and Duran were committing (or had committed) an offense of *any* kind. The Defendants have not identified any laws breached or ordinances broken. This factor weighs in Plaintiffs' favor.

The second *Graham* factor, "undoubtedly the most important," *Pauly* v. *White*, 874 F.3d 1197, 1215-16 (10th Cir. 2017) (internal quotation marks, citation omitted), asks whether the facts, viewed in the light most favorable to the non-movant, support a finding that the Plaintiffs here posed an immediate threat to the safety of officers or others. In *Finch* v. *Rapp*, we explained the question of whether officers "reasonably believed" a subject "presented any threat is a genuine issue of fact for the jury to determine." 38 F.4th at 1242. And we have explained "we are not at liberty to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide." *Fogarty*, 523 F.3d at 1154. We find those principles dispositive here.

Recall, as to Mr. Duran, the district court explained "he was in a crowd of protesters," "apparently standing near the intersection . . . , speaking with an acquaintance and filming the protest." R.1764. As to Mr. Packard, the district court found he "kicked a gas canister between five and ten feet away," in the general direction of "officers . . . equipped with gas masks that protected

13

them from any gas from that canister." R.1763-64. Accordingly, the district court found a reasonable jury could conclude neither Mr. Packard nor Mr. Duran posed a threat to officers or others. This factual finding—uncontradicted by the record—binds the panel on interlocutory appeal. The second *Graham* factor accordingly weighs in favor of Plaintiffs.

Finally, the district court found no evidence that Mr. Packard or Mr. Duran were actively resisting arrest or attempting to flee and so the third *Graham* factor also weighs in Plaintiffs' favor.

With each *Graham* factor weighing in Plaintiffs' favor, and our review of the record failing to show anything to blatantly contradict the district court's factual findings, we agree with Plaintiffs that a reasonable jury could find Defendants' use of force against Mr. Duran and Mr. Packard was unconstitutionally excessive.

The Defendants' contrary arguments are unpersuasive. They contend there is no evidence Plaintiffs were intentionally targeted. They explain less-lethal munitions are not implements of "seizure," but "tool[s] to disperse crowds." Opening Br. at 22. And they argue *Graham* is a framework ill-suited for protest cases like this, where "it was a practical impossibility for the Aurora Officers here to assess an individualized threat in the circumstances presented to them." *Id.* at 23.

But construing the evidence in the light most favorable to the Plaintiffs, the district court rejected these contentions. "A reasonable juror," the district court explained, "could . . . infer . . . that Officer McNamee shot Mr. Packard intentionally, and Officer Budaj shot Mr. Duran intentionally." R.1761. We are bound by this inference and the facts supporting it. And based on this finding, we reject Defendants' suggestion that Messrs. Packard and Duran were simply unintended victims of an effort to disperse protesters.

As we have explained in analogous circumstances, to the extent Defendants argue that, "even viewing the facts favorably to" the Plaintiffs, "the force could not be viewed as unreasonable, we disagree." *Buck*, 549 F.3d at 1289. And if Defendants instead "challenge[] the district court's factual findings, we reiterate that we are without jurisdiction to review the sufficiency of the evidence as to whether a jury might conclude that the officers' use of force was excessive." *Id.* at 1289-90.

## C

We now proceed to the second prong of the qualified-immunity inquiry. Plaintiffs must show "the constitutional or statutory rights the defendant[s] allegedly violated were clearly established at the time of the conduct at issue." *Nelson* v. *McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (quoting *Albright* v. *Rodriguez*, 51 F.3d 1531, 1534-35 (10th Cir. 1995)). They must identify "a Supreme Court or Tenth Circuit decision on point, or the clearly established

weight of authority from other courts must have found the law to be as the plaintiff maintains." *Klen* v. *City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011) (quoting *Zia Trust Co. ex rel. Causey v. Montoya,* 597 F.3d 1150, 1155 (10th Cir. 2010)). We conclude Plaintiffs have also carried their burden on the clearly-established prong.

Mr. Packard and Mr. Duran need not present "a case precisely on point." *Redmond* v. *Crowther*, 882 F.3d 927, 935 (10th Cir. 2018). But the Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah*, 595 U.S. at 12 (citing *Ashcroft* v. *al-Kidd*, 563 U.S. 731, 742 (2011)). "It is not enough that a rule be suggested by then-existing precedent; the 'rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Wesby*, 583 U.S. at 63). We are doubly mindful of that command here; the Court has explained this specificity is "'especially important in the Fourth Amendment context,' where it is 'sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id.* at 12-13 (quoting *Mullenix* v. *Luna*, 577 U.S. 7, 12 (2015) (*per curiam*)).

Applying these principles, we turn to the two cases relied upon by Plaintiffs and the district court: *Fogarty* v. *Gallegos*, 523 F.3d 1147 (10th Cir. 2008), and *Buck* v. *City of Albuquerque*, 549 F.3d 1269 (10th Cir. 2008).

In *Fogarty*, the plaintiff alleged he was subjected to excessive force while present at a 2003 protest against the war in Iraq. While "standing on the campus [of the University of New Mexico]," John Fogarty was shot "with some sort of projectile, perhaps a 'pepper ball' or some other variety of 'less lethal munition.'" 523 F.3d at 1152. As he was kneeling on the steps of the campus bookstore, Mr. Fogarty was approached by officers, handcuffed, and dragged toward a police vehicle. *Id.* On interlocutory appeal, we agreed with the district court that a reasonable jury could find the officer who shot Mr. Fogarty was Albuquerque Police Department Officer Michael Fisher. *Id.* at 1154.

We then affirmed the district court's denial of qualified immunity to Officer Fisher. After applying the *Graham* factors, we held the use of less-lethal force by Officer Fisher was unreasonable because the offense Mr. Fogarty committed, if any, was minor, there was "no suggestion [Mr. Fogarty] posed an immediate threat to the safety of the officers or others," and Mr. Fogarty was "neither actively resisting arrest nor attempting to evade arrest by flight." *Id.* at 1160.

In *Buck*, too, plaintiffs were protesting at an antiwar gathering. 549 F.3d at 1274. Plaintiff Camille Chavez "sat down in the street" and "was subjected to tear gas and then shot repeatedly with pepper ball rounds." *Id.* at 1289. "Even after lying down to show that she was not a threat," Albuquerque officers "repeatedly shot" her with less-lethal ammunition. *Id.*

17

We discerned no error in the district court's denial of qualified immunity to the Albuquerque Police captain present at the scene. Applying the *Graham* factors, we affirmed the district court's conclusion that the use of force could be found unreasonable. "[T]he severity of Ms. Chavez's purported infractions and the degree of potential threat that she posed to an officer's and to others' safety appeared to be nil—she was lying on the ground." *Id.* Nor did Ms. Chavez resist, flee, or attempt to evade arrest. *Id.*

The district court here determined *Buck* and *Fogarty* "clearly established that an officer cannot shoot a protester with pepper balls or other less-lethal munitions when that protester is committing no crime more serious than a misdemeanor, not threatening anyone, and not attempting to flee." R.1763. We agree. *Fogarty* and *Buck* provide notice that the use of less-lethal munitions— "as with any other type of pain-inflicting compliance technique"—is unconstitutionally excessive force when applied to an unthreatening protester who has neither committed a serious offense nor attempted to flee. *Fogarty*, 523 F.3d at 1161. And we find the notice provided by these cases sufficient to make "clear to a reasonable officer that his conduct was unlawful" under these specific circumstances. *Id.* at 1155.

It is true, as the Defendants contend, neither *Fogarty* nor *Buck* present facts identical to those here. But "our analysis is not a scavenger hunt for prior cases with precisely the same facts and a prior case need not be exactly parallel

to the conduct here for the officials to have been on notice of clearly established law." *Reavis*, 967 F.3d at 992 (quoting *Est. of Smart ex rel. Smart* v. *City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020)); *see also Romero* v. *Story*, 672 F.3d 880, 889 (10th Cir. 2012) ("Even in novel factual circumstances, 'officials can still be on notice that their conduct violated established law.'" (quoting *Cortez* v. *McCauley*, 478 F.3d 1108, 1114-15 (10th Cir. 2007) (*en banc*))). Moreover, the factual differences identified by Defendants contradict the facts found by the district court, which bind this panel on an interlocutory posture.

For example, Defendants resist the import of *Fogarty* and *Buck* by contending neither case involved plaintiffs shot while "in the vicinity of other individuals against whom officers *were* justifiably using force." Opening Br. at 19 (emphasis added). Defendants suggest, then, that Messrs. Duran and Packard were *accidentally* shot based on their proximity to others. *See* Opening Br. at 17-18. But as we have explained, the district court affirmatively found, based on the evidence properly construed in favor of the non-movant, that a reasonable jury could find the shootings here were *intentional*. Again, that view of the facts is not blatantly contradicted by the record, and we will not displace it. *See McWilliams* v. *Dinapoli*, 40 F.4th 1118, 1123 (10th Cir. 2022) ("[W]e can reject the district court's factual determination only if it is 'so utterly discredited by [the record] that no reasonable jury could have believed it.'" (quoting *Vette*, 989 F.3d at 1164)).

19

Next, Defendants contend *Fogarty* and *Buck* could not place a reasonable officer on notice that the use of less-lethal munitions is inappropriate for "an individual kicking an object, as was the case with Mr. Packard." Opening Br. at 17. But this factual difference is of little import under the circumstances. After reviewing the record and appropriately drawing inferences in Mr. Packard's favor, the district court unambiguously held "[n]o reasonable officer could have concluded that Mr. Packard posed an immediate threat to the safety of officers." R.1763. To distinguish *Fogarty* and *Buck* on the basis Defendants proffer, we would have to revisit and reject the district court's finding and conclude ourselves Mr. Packard's actions *were* threatening. But we are bound to accept, at this stage of the litigation, that a reasonable jury could conclude Plaintiffs posed no threat to the officers or anyone else. *See Finch*, 38 F.4th at 1238 ("The district court held that a reasonable jury could find that Finch was unarmed and unthreatening. We are bound by those findings for the purposes of this appeal."); *McCowan* v. *Morales*, 945 F.3d 1276, 1283-84 (10th Cir. 2019) (describing as an "essential fact[]" accepted for purposes of an interlocutory appeal the finding a plaintiff "posed no threat to anyone").

By May of 2020, when the incidents here occurred, it had been clearly established for (at least) twelve years that the deployment of less-lethal munitions on an unthreatening protester who is neither committing a serious offense nor seeking to flee is unconstitutionally excessive force.

### D

Defendant City of Aurora seeks the exercise of our discretionary pendent jurisdiction as to Plaintiffs' claims against it. "We have previously recognized the doctrine of pendent appellate jurisdiction, under which we exercise jurisdiction over an otherwise nonfinal and nonappealable lower court decision that overlaps with an appealable decision." *Moore* v. *City of Wynnewood*, 57 F.3d 924, 929 (10th Cir. 1995). But we have also held our exercise of this jurisdiction is "discretionary" and "generally disfavored." *Cox* v. *Glanz*, 800 F.3d 1231, 1255 (10th Cir. 2015) (quoting *Armijo ex rel. Chavez* v. *Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1264 (10th Cir. 1998)).

The City concedes that dismissal of the municipal claims would only be appropriate were we to conclude the Officers "are entitled to qualified immunity under the first prong of a qualified immunity analysis." Reply Br. at 26. Because we affirm the district court's conclusion that a reasonable jury could find Mr. Packard's and Mr. Duran's constitutional rights were violated, we decline to exercise pendent appellate jurisdiction over the City of Aurora's appeal.

### III

The order of the district court denying summary judgment to Sergeant Serrant and Officers McNamee and Budaj is **AFFIRMED**. We **DISMISS** the portion of the appeal relating to the district court's denial of summary

judgment to the City of Aurora for lack of appellate jurisdiction. This case is

**REMANDED** for further proceedings.

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert                                                    Jane K. Castro
Clerk of Court                                                       Chief Deputy Clerk

November 14, 2023

Mr. David M. Goddard
Ms. Heidi J. Hugdahl
Mr. Michael Turner Lowe
Bruno, Colin & Lowe
1120 Lincoln Street, Suite 1606
Denver, CO 80203

Mr. Peter Ruben Morales
City of Aurora
City Attorney's Office
15151 East Alameda Parkway, Suite 5300
Aurora, CO 80012-0000

**RE:**      **22-1365, Duran, et al v. Budaj, et al**
          Dist/Ag docket: 1:20-CV-01878-RBJ

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has
entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. 40(a)(1), any petition for rehearing must be filed within 14
days after entry of judgment. Please note, however, that if the appeal is a civil case in
which the United States or its officer or agency is a party, any petition for rehearing must
be filed within 45 days after entry of judgment. Parties should consult both the Federal
Rules and local rules of this court with regard to applicable standards and requirements.
In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length,
and no answer is permitted unless the court enters an order requiring a response. *See* Fed.
R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing
petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:      Robert Reeves Anderson
           Edwin Packard Aro
           Hollie Birkholz
           Matthew Douglas
           Katherine Hoffman
           Timothy Macdonald
           Andreas E. Moffett
           Sara R. Neel
           Colin M. O'Brien
           Andrew David Ringel
           Mark Silverstein
           Daniel Twetten
           Elizabeth Wang
           Robert Alan Weiner
           Brian M Williams

CMW/lg