FILED
United States Court of Appeals
Tenth Circuit

April 21, 2026

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ELISABETH EPPS,

Plaintiff - Appellee,

v.

JONATHAN CHRISTIAN,

Defendant - Appellant,

and

CITY AND COUNTY OF DENVER; KEITH VALENTINE,

Defendants.

No. 24-1371

---

**Appeal from the United States District Court for the District of Colorado (D.C. No. 1:20-CV-01878-RBJ)**

---

Andrew D. Ringel (Robert A. Weiner with him on the briefs), Hall & Evans, L.L.C., Denver, Colorado, for Defendant – Appellant.

Brian M. Williams, Arnold & Porter Kaye Scholer LLP (Robert Reeves Anderson, Matthew J. Douglas, and Emily M. Sartin, Arnold & Porter Kaye Scholer LLP, Denver, Colorado, Timothy Macdonald and Sara R. Neel, American Civil Liberties Union of Colorado, Orion de Nevers, Arnold & Porter Kaye Scholer LLP, Washington, DC, and Mindy Gorin, Arnold & Porter Kaye Scholer LLP, New York, New York, with him on the brief), Denver, Colorado, for Plaintiff – Appellee.

---

Before **CARSON**, **EBEL**, and **FEDERICO**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

This appeal stems from civil rights litigation brought under 42 U.S.C. § 1983 challenging the response of the Denver Police Department ("DPD") and its officers to demonstrations against police brutality sparked by the death of George Floyd at the hands of police officers in Minnesota. In this appeal, DPD officer Jonathan Christian challenges a jury's verdict finding him liable for using excessive force against Plaintiff Elisabeth Epps, in violation of the Fourth Amendment, when he shot Epps with a pepperball while she was peacefully protesting. On appeal, Officer Christian argues that 1) he was entitled to qualified immunity from Epps' Fourth Amendment claim; 2) the trial court abused its discretion in not bifurcating Epps' claim against him from the claims brought by twelve protestors, including Epps, against the City and County of Denver challenging the DPD's response to the protests; and 3) there was insufficient evidence to support the jury awarding punitive damages against Officer Christian. Having jurisdiction under 28 U.S.C. § 1291, we reject Officer Christian's arguments and AFFIRM the jury's verdict against him.

## I. FACTUAL BACKGROUND

Viewed in the light most favorable to the jury's verdict, see Harris v. City Cycle Sales, Inc., 112 F.4th 1272, 1275 (10th Cir. 2024), the evidence at trial indicated the following: George Floyd's death sparked demonstrations throughout the

United States and across the world, protesting police brutality, particularly against black people. In Denver, protests occurred from May 28 through June 2, 2020. On the second night of the protests, Officer Christian was with a group of police officers located on the south side of the Colorado state capitol. Epps, by herself and not with any other protestors, unarmed and not acting aggressively, started to cross the street walking toward the capitol's south lawn. She was not in a cross walk and was using her cell phone to record police. Officer Christian knelt on one knee, aimed his weapon at Epps, and shot a pepperball at her without any warning. A pepperball is a "less lethal" munition, a gel-like ball that is typically filled with a powdered acid that is expelled when it explodes upon impact. That acid impairs breathing, inflames skin, and causes chest tightness and pain, involuntary eye closure, and profuse tearing. It is fired from a launcher at a velocity of between 280 and 350 feet per second. After Officer Christian shot Epps, a fellow officer told him, "sarge said don't hit her." (R. v. 22, p. 81.) Epps recorded this incident on her cell phone. The incident was also recorded by Officer Christian's and other officers' body-worn cameras.

Epps testified that the pepperball hit her in the leg, leaving a deep bruise which she documented with photographs. Epps, nevertheless, continued to cross the street. Several seconds after shooting her with a pepperball, Officer Christian yelled at her to get out of the street. Epps complied.

## II. PROCEDURAL BACKGROUND

Epps sued Officer Christian under 42 U.S.C. § 1983, alleging that he violated her First and Fourth Amendment rights by shooting her with a pepperball. Epps' claim against Christian was part of a larger lawsuit brought by twelve protestors, including Epps, against the City and County of Denver and its police officers and officers from other jurisdictions aiding Denver during the protests. This appeal addresses only Epps' claim against Officer Christian.

Officer Christian moved for summary judgment, asserting that he was entitled to qualified immunity from any liability to Epps. The district court denied that motion.

Officer Christian then moved to bifurcate the trial on Epps' claim against him from the trial involving the claims brought by the twelve protestors against Denver. The district court denied that motion, as well.[1]

Epps' claim against Officer Christian was then tried to a jury, along with the municipal liability claims against Denver, over the course of fifteen days. Officer Christian unsuccessfully reasserted his qualified immunity defense in his Fed. R. Civ. P. 50(a) motion for judgment as a matter of law, made at the end of Plaintiffs' case.

The jury found for Epps and against Officer Christian on her Fourth Amendment claim, and found for Officer Christian on Epps' First Amendment claim.

---

[1] When Officer Christian filed this motion to bifurcate, thirty-nine days before trial, he was joined by twenty-two other individual defendants. When trial began, he was the only remaining individual defendant.

The jury awarded Epps $1 million in compensatory damages against Denver and Officer Christian, and awarded Epps $250,000 in punitive damages against Officer Christian. At Officer Christian's request, the trial court reduced the punitive damages award against him to $50,000. Epps accepted the reduced punitive damages award in lieu of a new trial. After the jury's verdict, Officer Christian unsuccessfully renewed his motion for qualified immunity in a Rule 50(b) motion.

## III. DISCUSSION

On appeal, Officer Christian argues that the district court 1) erred in denying his post-verdict Fed. R. Civ. P. 50(b) motion for judgment as a matter of law based on his qualified immunity defense; 2) abused its discretion in refusing to bifurcate the trial on Epps' claim against him from the trial on the claims brought by multiple protestors against Denver; and 3) erred in denying his Rule 50(b) motion for judgment as a matter of law, based on his argument that there was no evidence to support the jury awarding any punitive damages against him. As we explain next, we reject each of Officer Christian's arguments and uphold the jury's verdict against him.

### A. The district court did not err in denying Officer Christian's Rule 50(b) motion for judgment as a matter of law reasserting his qualified immunity defense

To overcome Officer Christian's qualified immunity defense, Epps had to establish that the officer 1) violated her Fourth Amendment rights 2) that were clearly established at the time he shot her with a pepperball on May 29, 2020. See

Luethje v. Kyle, 131 F.4th 1179, 1187 (10th Cir. 2025). Officer Christian contends that the district court, in denying his Fed. R. Civ. P. 50(b) motion based on qualified immunity, erred in concluding Epps met both requirements.

We review the district court's Rule 50(b) decision de novo. See City of Ft. Collins v. Open Int'l, LLC, 146 F.4th 929, 937 (10th Cir. 2025) (reviewing denial of Rule 50(b) motion); Marshall v. Columbia Lea Reg'l Hosp., 474 F.3d 733, 737–38 (10th Cir. 2007) (reviewing denial of Rule 50(b) motion based on qualified immunity, addressing clearly established prong); see also Ciolino v. Gikas, 861 F.3d 296, 298–99, 302 (1st Cir. 2017) (noting, in reviewing denial of Rule 50(b) motion, that both qualified immunity inquiries present legal determinations reviewed de novo).

Because a Rule 50(b) motion is made after trial, we review the district court's decision to deny qualified immunity based on the evidence presented at trial. See Ortiz v. Jordan, 562 U.S. 180, 184 (2011); see also Dupree v. Younger, 598 U.S. 729, 734 (2023). In doing so, we view the trial evidence in the light most favorable to the verdict—here, the verdict on the Fourth Amendment claim against Officer Christian—considering whether the evidence was so one-sided on behalf of Officer Christian that he was, instead, entitled to prevail on that constitutional claim against him as a matter of law. See Marshall, 474 F.3d at 739. We draw all reasonable inferences in Epps' favor and refrain from making credibility determinations or weighing the evidence. See Mountain Dudes v. Split Rock Holdings, LLC, 946 F.3d

1122, 1125, 1130 (10th Cir. 2019) (reviewing denial of Rule 50(b) motion in civil action).[2]

**1. Epps established that Officer Christian violated her Fourth Amendment rights**

The Fourth Amendment protects individuals from "unreasonable . . . seizures." U.S. Const., amend. IV. This court has recognized a "seizure" when police intentionally apply force to a protestor with the intent to exercise physical control over the protestor. See Packard v. Budaj, 86 F.4th 859, 865 & n.7, 867 (10th Cir. 2023) ("Budaj"). In reaching that conclusion, Budaj, id. at 865 n.7, relied on Torres v. Madrid, 592 U.S. 306, 325 (2021), holding "that the application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued." See also id. at 312 ("As applied to a person, '[t]he word "seizure" readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful.'" (quoting California v. Hodari D., 499 U.S. 621, 626 (1991)). Officer Christian does not challenge application of the Fourth Amendment to the circumstances presented here.

To establish that police violated the Fourth Amendment by using excessive force to effect a seizure, the plaintiff must show that an officer's "use of force was objectively unreasonable under the circumstances." Budaj, 86 F.4th at 865–66

---

[2] See also Hicks v. Ferreyra, 64 F.4th 156, 164 (4th Cir. 2023); Tan Lam v. City of Los Banos, 976 F.3d 986, 997 (9th Cir. 2020); Wiggington v. Jones, 964 F.3d 329, 334–35 (5th Cir. 2020); Dean v. Cnty. of Gage, 807 F.3d 931, 936 (8th Cir. 2015).

(citing, e.g., Tennessee v. Garner, 471 U.S. 1, 7 (1985)). We make that reasonableness determination based on the totality of the circumstances viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," allowing "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 866 (quoting Graham v. Connor, 490 U.S. 386, 396–97 (1989)). The reasonableness assessment is "objective, disregarding officers' subjective 'underlying intent or motivation.'" Id. (quoting Graham, 490 U.S. at 397).

Budaj applied the Supreme Court's decision in Graham to determine whether the force police applied to protestors in that case was unreasonable.[3] Id. at 865–67. "In Graham, the Supreme Court 'outlined three factors that guide the reasonableness analysis: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."'" Id. at 866–67 (quoting Vette v. K-9 Unit Deputy Sanders, 989 F.3d 1154, 1169 (10th Cir. 2021) (quoting Graham, 490 U.S. at 396)). Applying this analysis specifically in the

[3] Budaj stems from litigation related to Epps' claim at issue here against Officer Christian. In that related litigation, Epps and a number of other protestors sued the City of Aurora and several of its police officers who aided the DPD in its response to the George Floyd protests. Packard v. Budaj addressed an interlocutory decision in that related litigation denying several Aurora officers qualified immunity. 86 F.4th at 862–63.

context of police using force against protestors, Budaj held that officers violate the Fourth Amendment when they "shoot a protestor with pepper balls or other less-lethal munitions when that protestor is committing no crime more serious than a misdemeanor, not threatening anyone, and not attempting to flee." Id. at 869 (record citation omitted; citing cases).[4]

Budaj, for example, addressed two incidents. In one, police shot a protestor in the head with a bean bag fired from a shotgun, after the protestor kicked a can of tear gas, thrown by police, away from protestors. Id. at 862–63. In the second, police shot a protestor, who was wearing a hard hat with the word "media" on it, "in the groin with a foam baton round" as he was standing near an intersection, talking to an acquaintance and filming the protest. Id. at 863. In Budaj, this court held that those two protestors could establish a Fourth Amendment violation based on evidence that there was "no indication that" either protestor was "committing (or had committed) [a criminal] offense of any kind"; neither protestor "posed an immediate threat to the safety of officers or others"; and neither protestor was "actively resisting arrest or attempting to flee." Id. at 866–67.

[4] Officer Christian argues that the Graham factors "are not readily applicable to these specific circumstances because" his "use of force was not an effort to arrest Ms. Epps or to seize her prior to arresting her." (Aplt. Br. 17.) In applying the Graham factors to decide whether officers used excessive force against protestors, see 86 F.4th at 865–67, Budaj rejected a similar argument that "Graham is a framework ill-suited for protest cases," id. at 867. In any event, "[t]he Graham factors are nonexclusive and not dispositive; the inquiry remains focused on the totality of the circumstances." Est. of George v. City of Rifle, 85 F.4th 1300, 1316 (10th Cir. 2023) (quoting Palacios v. Fortuna, 61 F.4th 1248, 1256 (10th Cir. 2023)).

Similarly, in two cases arising from 2003 anti-war protests in Albuquerque, New Mexico, this court also held that a jury could find police used excessive force, in violation of the Fourth Amendment, by shooting peaceful protestors with less-lethal weapons. See Fogarty v. Gallegos, 523 F.3d 1147 (10th Cir. 2008); Buck v. City of Albuquerque, 549 F.3d 1269 (10th Cir. 2008). In Fogarty, the evidence, viewed in the light most favorable to the plaintiff protestor, indicated that he was unarmed, had moved from the street where the protest was occurring after police deployed tear gas, and was kneeling on the steps of a university bookstore when a police officer shot him with a pepperball. 523 F.3d at 1150–52, 1159–61. Fogarty had committed, at most, a petty misdemeanor (disorderly conduct), posed no threat to the safety of officers or others, and was neither actively resisting arrest nor trying to evade arrest by flight. Id. at 1159–61.

In Buck, after seeing police shoot a protestor next to her with a less-lethal munition, Plaintiff Camille Chavez sat down in the street as a sign of protest. 549 F.3d at 1274, 1289. "While seated on the street and not posing any threat, Ms. Chavez was subjected to tear gas and then shot repeatedly with pepper ball rounds." Id. at 1289. "[T]he severity of Ms. Chavez's purported infractions," sitting in the street, "and the degree of potential threat that she posed to an officer's and to others' safety appeared to be nil—she was lying on the ground. She also did not resist or evade arrest." Id.

Budaj, Fogarty, and Buck support the conclusion here that Epps established a claim that Officer Christian violated her Fourth Amendment rights. In fact, the jury,

when considering the evidence and relevant jury instruction, see R. v. 11, pp. 155–56 (Instruction 12), found that Officer Christian had violated Epps' Fourth Amendment rights by using unreasonable force against her.[5] There was sufficient evidence to support the jury's finding, including Epps' testimony and video evidence that Officer Christian shot Epps, without warning, with a pepperball as she walked by herself (and not in a group), unarmed and non-threatening, across the street toward the capitol. Any crime she may have been committing, including jaywalking, was minor. In light of this evidence, Officer Christian was unable to meet his Rule 50(b) burden of showing that "all of the evidence, viewed in the light most favorable to [Epps], reveals no legally sufficient evidentiary basis" for the jury to find for Epps on her Fourth Amendment claim. Burrell v. Armijo, 603 F.3d 825, 832 (10th Cir. 2010). We, therefore, conclude Epps established that Officer Christian used unreasonable force against her, violating her Fourth Amendment rights.

**2. That Fourth Amendment violation was clearly established at the time Officer Christian shot Epps with a pepperball on May 29, 2020**

In addition to proving that Officer Christian violated her Fourth Amendment rights, Epps, in order to overcome Officer Christian's potential qualified immunity defense, also had to show that the constitutional violation was clearly established at the time he shot her with a pepperball, on May 29, 2020. See Luethje, 131 F.4th at 1187. To meet her burden, Epps had to "identify 'a Supreme Court or Tenth Circuit

[5] Officer Christian does not challenge the instruction given jurors regarding Fourth Amendment violations based on the use of excessive force.

decision on point, or the clearly established weight of authority from other courts'" that previously recognized that constitutional violation. Budaj, 86 F.4th at 867–68 (quoting Klen v. City of Loveland, 661 F.3d 498, 511 (10th Cir. 2011)). While "a case precisely on point" is not required, Epps had to show that it would have been clear to a reasonable officer in Officer Christian's position in May 2020 "that his conduct was unlawful in the situation he confronted." Id. at 868 (quoting Redmond v. Crowther, 882 F.3d 927, 935 (10th Cir. 2018); City of Tahlequah v. Bond, 595 U.S. 9, 12 (2021)); see also Zorn v. Linton, 607 U.S.—, 146 S. Ct. 926, 930 (2026) ("A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." (quoting Rivas-Villegas v. Cortesluna, 595 U.S. 1, 5 (per curiam) (internal quotation marks omitted)). Such "specificity is 'especially important in the Fourth Amendment context,' where it is 'sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" Budaj, 86 F.4th at 868 (quoting Bond, 595 U.S. at 12–13 (additional quotation marks omitted)).

Whether a constitutional right was clearly established is a legal determination to be made by the court, rather than the jury. See Cavanaugh v. Woods Cross City, 718 F.3d 1244, 1255 (10th Cir. 2013). Here, the district court, relying on this court's 2008 decisions in Fogarty and Buck, ruled that it was clearly established by May 2020, when Officer Christian shot Epps with a pepperball during the George Floyd protests, "that an officer cannot shoot a protestor with pepperballs when the protestor

is committing no crime more serious than a misdemeanor, not threatening anyone, and not attempting to flee." (R. v. 11, pp. 137–38 (denying summary judgment); see also R. v. 12, p. 95 (district court decision denying Rule 50(b) motion "for largely the same reasons I identified in my order on Denver's motion for summary judgment").) We agree with the district court. As explained above, those cases—Fogarty and Buck—recognized in 2008 that shooting a non-threatening protestor with a pepperball when the protestor had committed, at most, a minor offense and was not trying to evade arrest, violated the Fourth Amendment. Those two earlier Tenth Circuit cases are sufficiently analogous to the circumstances presented here to have put a reasonable officer in Officer Christian's position on notice in May 2020 that shooting Epps with a pepper ball in the context of her peaceful behavior would violate the Fourth Amendment.

Our conclusion is bolstered by this court's recent decision in Budaj, which also relied on Fogarty and Buck to conclude that, at the time of these George Floyd protests in May and June 2020, it was clearly established "that an officer cannot shoot a protestor with pepper balls or other less-lethal munitions when that protestor is committing no crime more serious than a misdemeanor, not threatening anyone, and not attempting to flee." 86 F.4th at 868–69 (quotation marks omitted).[6]

---

[6] We agree with Officer Christian that we cannot rely on this court's 2023 decision in Budaj to create law that was clearly established when the George Floyd protests occurred in Denver in May and June 2020. We, instead, rely on Budaj for its holding that Fogarty and Buck had clearly established in 2008 that police violate the Fourth Amendment by shooting peaceful, non-threatening protestors with less-lethal munitions.

Officer Christian's arguments to the contrary are unavailing. Fogarty and Buck address circumstances sufficiently analogous to the facts presented in this case to put a reasonable officer in Officer Christian's position on notice that shooting the non-threatening Epps with a pepperball was unreasonable. For the same reason, we also reject Officer Christian's assertion that he was reasonably mistaken in believing that shooting Epps with a pepperball under these circumstances was justified.

We, therefore, uphold the district court's decision to deny Officer Christian qualified immunity.

**B. The district court did not abuse its discretion in refusing to bifurcate trial on Epps' claim against Officer Christian**

Officer Christian next argues that the district court abused its discretion in denying his Fed. R. Civ. P. 42(b) motion to bifurcate trial on Epps' claim against him from the trial involving multiple plaintiffs' claims against Denver. Rule 42(b) provides, in relevant part, that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." "District courts have broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused." United States ex rel. Bahrani v. ConAgra, Inc., 624 F.3d 1275, 1283 (10th Cir. 2010) (quoting Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1285 (10th Cir.1999)). A court abuses its discretion when it "acts in an 'arbitrary, capricious, or whimsical' manner." Fuqua v. Santa Fe Cnty. Sheriff's Off., 157 F.4th 1288, 1297 (10th Cir. 2025) (quoting Alpenglow

Botanicals, LLC v. United States, 894 F.3d 1187, 1203 (10th Cir. 2018)). We cannot say that the district court acted in such a manner in this case when the court decided not to bifurcate trial on Epps' claim against Officer Christian.

Officer Christian argues he was prejudiced by having the claim against him tried with the claims of multiple protestor plaintiffs against Denver because only a small portion of the three-week trial addressed Epps' claim against him. Denying "bifurcation is an abuse of discretion if it is unfair or prejudicial to a party." Angelo v. Armstrong World Indus., Inc., 11 F.3d 957, 964 (10th Cir. 1993). But we cannot agree that that occurred here. As the district court noted in denying Officer Christian post-judgment relief:

> [T]he jury's determination that Mr. Christian violated Ms. Epps' Fourth Amendment but not her First Amendment rights shows that the jury did not simply lump Mr. Christian's actions in with Denver's—had [jurors] done so, they would have found Mr. Christian liable for First Amendment violations against Ms. Epps, as they found Denver was liable for First Amendment violations against Ms. Epps.

(R. v. 12, p. 98.[7]) Moreover, as previously set forth above, there was evidence to support the jury's finding that Officer Christian violated Epps' Fourth Amendment rights.

---

[7] For the first time in his reply brief, Officer Christian counters this argument by perfunctorily suggesting that he was prejudiced by the jury holding him jointly and severally liable with Denver for $1 million in compensatory damages owed to Epps. Officer Christian does not assert where he raised that argument to the district court, and we could not determine that he did raise it. Nor does he argue for plain error review. He has waived this argument, in any event, by not raising it on appeal until his reply brief. See Anderson v. U.S. Dep't of Labor, 422 F.3d 1155, 1174 (10th Cir. 2005).

Officer Christian further asserts, without providing any detail, that because he was tried with Denver, "Plaintiffs introduced other incidents during the protests involving [him] which would likely not have been admitted in the absence of a joint trial." (Aplt. Br. 37.) This vague argument is not persuasive in light of Epps' claim for punitive damages against him, which required Epps to prove Officer Christian acted against her with malice.

For all these reasons, we conclude the district court did not abuse its discretion in denying Officer Christian's motion to bifurcate the trial of Epps' claims against him from the trial of multiple protestors' claims against Denver.

**C. The district court did not err in denying Officer Christian's Fed. R. Civ. P. 50(b) motion for judgment as a matter of law challenging the jury's decision to award Epps punitive damages against the officer**

"[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Burke v. Regalado, 935 F.3d 960, 1037 (10th Cir. 2019) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)); see also 11.166 (instruction 20). "It is the defendant's mental state, not the scope of the harm, that" is relevant. Eisenhour v. Weber Cnty., 897 F.3d 1272, 1281 (10th Cir. 2018).

In this case, the jury awarded Epps $250,000 in punitive damages against Officer Christian. Although the district court, post-trial, reduced that award to $50,000, the district court denied Officer Christian's Fed. R. Civ. P. 50(a) and (b)

motions arguing that there was no evidence to support awarding any punitive damages against him. Officer Christian challenges the denial of his Rule 50 motion.

This court reviews the district court's Rule 50 decision de novo. See Murphy v. Schaible, 108 F.4th 1257, 1264 (10th Cir. 2024).

> "A party is entitled to judgment as a matter of law only if the court concludes that all of the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law." . . . "The court draws all reasonable inferences in favor of the nonmoving party and does not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury."

Id. (quoting Bill Barrett Corp. v. YMC Royalty Co., 918 F.3d 760, 766 (10th Cir. 2019)).

There was sufficient evidence presented at trial from which the jury could have found that Officer Christian, when he shot Epps with a pepper ball, acted with an "evil motive or intent" or with "reckless or callous indifference" to her "federally protected rights." Burke, 935 F.3d at 1037 (quoting Smith, 461 U.S. at 56). As previously described, there was evidence that Officer Christian took a knee to aim at Epps and intentionally fired a pepperball at her, without any warning or justification. There was further evidence from which a jury could have found that, on other occasions during the multi-day George Floyd protests, Officer Christian acted in a similar manner by unjustifiably using less-lethal munitions against other non-threatening protestors. In addition, Officer Christian was recorded agreeing with a fellow officer, during the protests, that he liked shooting people. In light of this

evidence, we uphold the district court's decision denying Officer Christian's Rule 50 motions challenging the evidence supporting a punitive damages award.

## IV. CONCLUSION

We reject Officer Christian's challenges and AFFIRM the jury's verdict against him.

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

April 21, 2026

Ms. Ashley Kelliher
Office of the Denver City Attorney
Litigation Section
201 West Colfax Avenue, Department 1108
Denver, CO 80202

Mr. Andrew David Ringel
Mr. Robert Alan Weiner
Hall & Evans
1001 17th Street, Suite 300
Denver, CO 80202

**RE: 24-1371, Packard, et al v. City and County of Denver, et al**
Dist/Ag docket: 1:20-CV-01878-RBJ

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. 40(d)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rule 40 and 10th Cir. R. 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc: Robert Reeves Anderson
Orion DE Nevers
Mindy Gorin
William Daniel Hauptman
Robert Charles Huss
Timothy Macdonald
Andreas E. Moffett
Sara R. Neel
Colin M. O'Brien
Emily Sartin
Mark Silverstein
Daniel Twetten
Elizabeth Wang
Brian M Williams
Miranda Worthington
Frederick Richard Yarger

CMW/lg